**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No: 1:22-cv-22538 (Altman/Reid)**

| |
|---|
| PIERCE ROBERTSON, RACHEL GOLD, SANFORD GOLD, RAHIL SAYED, CHRISTOPHER EHRENTRAUT, TODD MANGANIELLO, DAN NEWSOM, WILLIAM AYER, ANTHONY DORN, DAMECO GATES, MARSHALL PETERS, and EDWIN GARRISON, on behalf of themselves and all others similarly situated, |
| Plaintiffs, |
| v. |
| MARK CUBAN and DALLAS BASKETBALL LIMITED, d/b/a DALLAS MAVERICKS |
| Defendants. |

**DEFENDANT MARK CUBAN'S AND
DALLAS BASKETBALL LIMITED'S
MOTION TO DISMISS THE
AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION

BACKGROUND

ARGUMENT

    I.    DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

        A.    Legal Standard

        B.    No General Jurisdiction Because Defendants Are Not "At Home" In Florida

        C.    No Specific Jurisdiction Over Defendants For Non-Florida Plaintiffs' Claims

        D.    No Specific Jurisdiction Over Defendants For Florida Plaintiffs' Claims

            1.    No Personal Jurisdiction Under Florida's Long-Arm Statute
            2.    Plaintiffs' Conclusory Allegations do not Satisfy the Due Process Clause

    II.    PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

        A.    Legal Standard

        B.    State Securities Claims

            1.    Defendants Are Not Secondarily Liable Under State Securities Laws
            2.    Failure to Allege Any False or Misleading Statements or Omissions
            3.    Failure to Adequately Allege Scienter

        C.    Plaintiffs Fail to State a Viable Claim Under the DJA

        D.    Consumer Fraud and Deceptive Trade Practice Claims

        E.    Failure to Satisfy Rule 9(b) Pleading Standard for Fraud Claims

    III.    Voyager is a Necessary Third Party Under Rule 19

CONCLUSION

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*AFL-CIO v. City of Miami*,
637 F.3d 1178 (11th Cir. 2011) ............................................................. 13

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) .........................................................14, 27

*Am. Express Bank, FSB v. Martin*,
200 A.3d 87 (Pa. Super. 2018)AM ......................................................... 25

*In re Am. Medical Collection Agency, Inc. Customer Data Security Breach Litig.*,
No. 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ...................... 24

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
70 Cal. Rptr. 3d 199 (Cal. Ct. App. 2007) ............................................... 20

*AREI II Cases*, 157 Cal. Rptr. 3d 368 (Cal. App. 2013) ................................ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................13, 27

*Baker v. Summit Bank*,
64 F. Supp. 2d 466 (E.D. Pa. 1999) ........................................................ 24

*Barbachano v. Standard Chartered Bank Int'l (Americas) Ltd.*,
No. 10-22961-CIV, 2014 WL 29595 (S.D. Fla. Jan. 3, 2014) ...................... 28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 13

*Beltram v. Shackleford, Farrior, Stallings & Evans*,
725 F. Supp. 499 (M.D. Fla. 1989) ......................................................... 22

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
534 F. Supp. 3d 326 (S.D.N.Y. 2021) ...................................................... 5

*Blunt v. Tripp Scott, P.A.*,
962 So. 2d 987 (Fla. 4th DCA 2007) ....................................................... 18

*Bowen v. Ziasun Techs., Inc.*,
116 Cal.App.4th 777 (2004) ................................................................. 24

*Brand Coupon Network, LLC v. Cataline Mkg. Corp.*,
No. 11-556, 2014 WL 6674034 (M.D. La. Nov. 24. 2014) ......................... 26

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*,
137 S. Ct. 1773 (2017) ...................................................................................................6, 7

*Bulpit, LLC v. DeCanio*,
Case No. 2:13-cv-14119-KMM, 2013 WL 12126313 (S.D. Fla. June 7, 2013) ....................... 13

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985)...................................................................................................10, 11

*Burris v. Green*,
No. 3:12CV521-MCR-CJK, 2016 WL 5844165 (N.D. Fla. Aug. 26, 2016) ................................ 7

*Carter v. Ford Motor Co.*,
No. 19-62646-CIV, 2021 WL 1165248 (S.D. Fla. Mar. 26, 2021)...........................................7, 8

*Cassidy v. Voyager Digital Ltd., et al.*,
Case No. 21-24441 (S.D. Fla. Dec. 24, 2021).......................................................................*passim*

*Castillo v. Allegro Resort Mktg.*,
603 F. App'x 913 (11th Cir. 2015)........................................................................................ 13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...................................................................................................6, 7

*Day v. Taylor*,
400 F.3d 1272 (11th Cir. 2005) ............................................................................................ 4

*Devane v. L'Oreal USA, Inc.*,
No. 19 CIV. 4362 (GBD), 2020 WL 5518484 (S.D.N.Y. Sept. 14, 2020)................................ 26

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ............................................................................................ 11

*Dillon v. Axxsys Int'l, Inc.*,
385 F. Supp. 2d 1307 (M.D. Fla. 2005) ...........................................................................15, 16

*Dolan v. PHL Variable Ins. Co.*,
No. 3:15-cv-01987, 2017 WL 4812308 (M.D. Pa. Oct. 25, 2017)........................................ 26

*Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*,
262 F. Supp. 2d 1334 (S.D. Fla. 1999)............................................................................... 19

*Feng v. Walsh*,
No. 19-24138-CIV-GAYLES/OTAZO-REYES, 2021 WL 8055449 (S.D. Fla.
Dec. 21, 2021)                                                                24

*Ferenchak v. Zormati*,
572 F. Supp. 3d 1284 (S.D. Fla. 2021)................................................................................ 7

IV

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) ........................................................................................................ 7

*Fox Int'l Rels. v. Fiserv Sec., Inc.*,
490 F. Supp. 2d 590 (E.D. Pa. 2007) ................................................................................ 26

*Fraser v. Smith*,
594 F.3d 842 (11th Cir. 2010)............................................................................................ 8

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
218 F.3d 1247 (11th Cir. 2000) .......................................................................................... 8

*Gadea v. Star Cruises, Ltd.*,
949 So. 2d 1143 (Fla. 3d DCA 2007) ................................................................................. 9

*Goldschmidt v. Holman*,
571 So.2d 422 (Fla. 1990) ................................................................................................ 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........................................................................................................... 6

*Gurwell v. Sea World Parks & Ent. LLC*,
No. 2:20cv312, 2021 WL 4168503 (E.D. Va. Aug. 11, 2021) ........................................ 26

*Halbert v. Credit Suisse AG*,
402 F. Supp. 3d 1288 (N.D. Ala. 2019) ........................................................................... 26

*Harding v. BMW of N. Am., LLC*,
No. 3:20-CV-00061, 2020 WL 5039439 (M.D. Tenn. Aug. 26, 2020) ............................ 26

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ........................................................................................................... 6

*Hercules Cap., Inc. v. Gittleman*,
No. 16-CV-81663, 2018 WL 395489 (S.D. Fla. Jan. 12, 2018) ...................................... 20

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*,
421 F.3d 1162 (11th Cir. 2005) .......................................................................................... 9

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ........................................................................................................ 6, 8

*Jewelmasters, Inc. v. May Dep't Stores Co.*,
840 F. Supp. 893 (S.D. Fla. 1993) ................................................................................... 13

*Kahan Novoa v. Safra Nat. Bank of New York*,
313 F. Supp. 2d 1347 (S.D. Fla. 2003) ............................................................................ 18

*Keston v. FirstCollect, Inc.*,
  523 F. Supp. 2d 1348 (S.D. Fla. 2007) ............................................................. 9

*Laker Airways, Inc. v. Brit. Airways, PLC*,
  182 F.3d 843 (11th Cir. 1999) ................................................................... 28, 30

*Lee v. Enter. Fin. Grp.*,
  No. CIV-08-1221, 2009 WL 1362605 (W.D. Okla. May 14, 2009) ...................... 26

*Lee v. First Union Nat. Bank*,
  199 N.J. 251 (2009) ........................................................................................ 24

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
  No. C-12-03694 DMR, 2014 WL 3417941 (N.D. Cal. July 11, 2014) .................. 22

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ......................................................... 8, 9, 10, 12

*Med. Society of N.J. v. AmeriHealth HMO, Inc.*,
  376 N.J. Super. 48. (App. Div. 2005) ............................................................. 23

*Mello v. Walled Lake Credit Bureau, LLC*,
  No. 13-14226-CIV, 2013 WL 12077491 (S.D. Fla. Oct. 17, 2013) .................... 28

*MidFirst Bank v. Keefe, Bruyette & Woods, Inc.*,
  No. CIV-07-1384-R, 2008 WL 11338074 (W.D. Okla. Oct. 6, 2008) ................ 26

*Minshall v. TD Evergreen*,
  No. 05 Civ. 1232, 2005 WL 8145046 (M.D. Fla. Aug. 4, 2005) ...................... 24

*Molinos Valle Del Cibao, C. por A. v. Lama*,
  633 F.3d 1330 (11th Cir. 2011) ..................................................................... 30

*In re Moon*,
  No. 96-4086, 1997 WL 34625685 (E.D. Va. Dec. 17, 1997) ........................... 24

*MSP Recovery Claims, Series LLC v. Northland Ins. Co.*,
  No. 20-CV-24176-WILLIAMS/MCALILEY, 2022 WL 2341158 (S.D. Fla.
  June 16, 2022) ................................................................................................ 9

*MSP Recovery Claims, Series LLC v. Westfield Ins. Co.*,
  No. 1:20-cv-24337-COOKE/O'SULLIVAN, 2021 WL 8343201 (S.D. Fla.
  Sept. 27, 2021) ............................................................................................... 9

*Munifi v. Abraham*,
  No. 8:21-cv-01143, 2022 WL 1422813 (C.D. Cal. Apr. 19, 2022) .................... 26

*Nicholas v. Saul Stone & Co.*,
   No. 97-CV-860, 1998 WL 34111036 (D.N.J. June 30, 1998)..................................................16, 17

*Nichols v. Yandre*,
   9 So.2d 157 (1942) ...........................................................................................................................15

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ...................................................................................................10, 12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)..........................................................................................................................19

*In re Optionable Sec. Litig.*,
   577 F. Supp. 2d 681 (S.D.N.Y. 2008) ..............................................................................................19

*Orkin Exterminating Co. v. DelGuidice*,
   790 So. 2d 1158 (Fla. 5th DCA 2001) .............................................................................................24

*Oviedo v. Ramirez*,
   No. 21-cv-23750-BLOOM/Otazo-Reyes 2022 WL 1641865 (S.D. Fla. May
   24, 2022).............................................................................................................................................9

*Pinnacle Ins. & Fin. Servs., LLC v. Sehnoutka*,
   No. 3:16-CV-546-J-34JBT, 2017 WL 3193641 (M.D. Fla. July 27, 2017) .......................................7

*Platinum Estates, Inc. v. TD Bank, N.A.*,
   No. 11-60670-CIV, 2012 WL 760791 (S.D. Fla. Mar. 8, 2012) ......................................................27

*Prunty v. Arnold & Itkin LLP*,
   753 F. App'x 731 (11th Cir. 2018)....................................................................................................8

*Regenicin, Inc. v. Lonza Walkersville, Inc.*,
   997 F. Supp. 2d 1304 (N.D. Ga. 2014)..............................................................................................25

*In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*,
   No. 2:09-2009 SMH, 2014 WL 10399651 (W.D. Tenn. Sept. 25, 2014) .........................................26

*Rego Indus., Inc. v. Am. Modern Metals Corp.*,
   91 N.J. Super. 447 (App. Div. 1966) ................................................................................................23

*Remacle v. Repperio, Inc.*,
   No. 117CV00434GBLJFA, 2017 WL 11505574 (E.D. Va. Aug. 25, 2017) ....................................26

*In re Rensin*,
   600 B.R. 870 (Bankr. S.D. Fla. 2019) ..............................................................................................30

*Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*,
   645 F. Supp. 2d 1130 (S.D. Fla. 2009)..............................................................................................11

*Rogers v. Cisco Sys., Inc.*,
  268 F.Supp.2d 1305 (N.D. Fla. 2003) ............................................................... 24

*Rollins, Inc. v. Butland*,
  951 So. 2d 860 (Fla. 2d DCA 2006) ................................................................. 24

*Rollins, Inc. v. Heller*,
  454 So. 2d 580 (Fla. 3d DCA 1984) ................................................................. 24

*Rosenstock v. Sollars*,
  No. 17-CV-81127, 2018 WL 8367072 (S.D. Fla. Jan. 24, 2018) ...................... 11

*Rubin v. Gabay*,
  979 So. 2d 988 (Fla. 4th DCA 2008) ................................................................ 18

*Schaffer Fam. Invs., LLC v. Sonnier*,
  120 F. Supp. 3d 1028 (C.D. Cal. 2015) ............................................................ 16

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) .......................................................................................... 15

*Seeman v. Oxfordshire*,
  LLC, 83 Va. Cir. 442, 2011 WL 8956202 (Suffolk Cir. Ct. Oct. 12, 2011) ....... 25

*Smith v. Cooper/T. Smith Corp.*,
  846 F.2d 325 (5th Cir. 1988) ............................................................................ 24

*St. Martinus Univ., NV v. Caribbean Health Holding, LLC*,
  Case No. 19-22278-CIV-ALTONAGA/Goodman, 2020 WL 956301 (S.D.
  Fla. Feb. 27, 2020) ..........................................................................................9

*State Farm Mutual Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery,
  LLC*,
  278 F. Supp. 3d 1307 (S.D. Fla. 2017) ............................................................ 26

*State v. Am. Tobacco Co.*,
  707 So. 2d 851 (Fla. 4th DCA 1998) ................................................................ 18

*Stone Inv. Dakota LLC v. Bastos*,
  No. 15-61406-CIV, 2016 WL 200268 (S.D. Fla. Jan. 14, 2016) ...................... 26

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
  447 F.3d 1357 (11th Cir. 2006) .......................................................................... 6

*In re Takata Airbag Prods. Liab. Litig.*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) .............................................. 6, 10, 12, 13

*Turk v. Pershing LLC*,
  No. 3:09-CV-2199, 2014 WL 12572906 (N.D. Tex. Dec. 8, 2014) ..................................15, 16

*U.S. Legal Support, Inc. v. Hofioni*,
  No. CIV. S-13-01770 LKK, 2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ..............................25

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) ...........................................................................................6

*Urling v. Helms Exterminators, Inc.*,
  468 So. 2d 451 (Fla. 1st DCA 1985).....................................................................................25

*Venetian Salami Co. v. Parthenais*,
  554 So. 2d 499 (Fla. 1989)....................................................................................................6

*In re Voyager Digital Holdings, Inc.*,
  Case No. 22-10943-mew, Adv. Proc. No. 22-01138-mew (Bankr. S.D.N.Y.)............................4

*In re Voyager Digital Holdings, Inc.*,
  Case No. 22-10943-mew (Bankr. S.D.N.Y.) ..........................................................................3

*In re Washington Mut., Inc.*,
  462 B.R. 137 (Bankr. D. Del. 2011) ....................................................................................21

*Wildes v. BitConnect Int'l PLC*,
  25 F.4th 1341 (11th Cir. 2022) ............................................................................................22

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)............................................................................................................12

*Zakinov v. Ripple Labs, Inc.*,
  No. 18-CV-06753-PJH, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020)......................................26

**Statutes**

70 Pa. Stat. § 1-503 .............................................................................................................15-17

Ala. Code § 8-6-19 ..............................................................................................................15-17

Cal. Corp. Code § 25504.1...............................................................................................15-17, 21

Fla. Stat. § 48.193 .......................................................................................................... 6, 9-10

Fla. Stat. § 517.021..................................................................................................................19

Fla. Stat. § 517.211.............................................................................................................15, 18

La. Stat. § 51:714..............................................................................................................15, 16

N.J.S.A. 2A:16-56 ..................................................................................................... 23

N.J.S.A. 2A:16-57 ..................................................................................................... 23

N.J. Stat. Ann. § 49-3-51 .......................................................................................... 22

N.J. Stat. § 49:3-71 ...................................................................................... 15, 17, 18

Okla. Stat. tit. 71, § 1-509 ........................................................................... 15, 17, 18

Tenn. Code Ann. § 48-1-122 ................................................................................14-17

Va. Code § 13.1-522 .................................................................................... 15, 16, 18

Va. Code § 59.1-198 .................................................................................................. 24

**Other Authorities**

Fed. R. Civ. P. 11 ...................................................................................................3, 4

Fed. R. Civ. P. 12 ......................................................................... 2, 13, 28, 30

Fed. R. Civ. P. 19 .............................................................................. 2, 28-30

Fed. R. Civ. P. 50 .................................................................................... 16

Fed. R. Civ. P. 9 ...........................................................................13, 25, 27, 30

Taylor Locke,
   *Mark Cuban says 80% of his investments that aren't on 'Shark Tank' are*
   *crypto-related: Here's 'where I look to invest'*,
   CNBC (Jan. 14, 2022), https://www.cnbc.com///14/percentofhis-sharktank-
   investmentsare-in-.html    21

## INTRODUCTION

Plaintiffs, most of whom reside outside of Florida, bring this putative class action against Mark Cuban ("Mr. Cuban") and Dallas Basketball Limited, d/b/a Dallas Mavericks (the "Mavericks" and, with Mr. Cuban, the "Defendants") alleging that Defendants are liable for violations of state securities and deceptive trade practices laws as a result of the announcement of a sponsorship agreement entered into between Voyager,[1] a cryptocurrency platform, and the Mavericks during an approximately 29-minute press conference held in Dallas, Texas on October 27, 2021 ("October 2021 Press Conference").[2]   Plaintiffs allege, based solely on this October 2021 Press Conference, that Defendants somehow induced Plaintiffs to each become Voyager customers, assisted in unspecified cryptocurrency transactions, and are liable for the alleged economic losses of "millions" of Voyager customers.  Plaintiffs concede in the operative amended complaint [ECF No. 34] (the "Complaint" or "Compl."), that this lawsuit was initiated only after Voyager and Holdings filed for bankruptcy, which stayed a related action in this District asserting virtually identical allegations against Voyager.[3]   However, the Complaint neglects to share the true story behind Voyager's bankruptcy, which reveals that any losses sustained by Voyager's customers are attributable to the industry-wide depression of cryptocurrency markets and a major third-party loan default by a Voyager borrower in mid-2022 (long after October 2021).  The notion that Defendants are responsible for Voyager's failure or the losses of its customers is utterly baseless.  Plaintiffs cannot proceed against the "empty pockets" of bankrupt Voyager (due to the bankruptcy stay) and have dropped all claims against Voyager's CEO, Steven Ehrlich ("Mr. Ehrlich") (who Plaintiffs dismissed with prejudice, claiming he is judgment proof), so they are instead focusing on the perceived "deep pockets" of Defendants irrespective of jurisdiction or causal harm.  This is a strike suit, plain and simple.

Among the fatal flaws of Plaintiffs' Complaint, there is clearly no personal jurisdiction over the Texas-based Defendants, and Plaintiffs have failed to carry their burden of establishing

---

[1] The sponsorship agreement is between the Mavericks and Voyager Digital Holdings, Inc. ("Holdings") (Declaration of Matt Wojciechowski ("Mavs Decl.") at ¶¶ 3-4), which is an entity Plaintiffs only mention once in their Complaint as one of the Voyager entities that filed for bankruptcy.  *See* Compl. at ¶ 4.  The Voyager entities that are the primary focus of Plaintiffs' Complaint are Voyager Digital Ltd. and Voyager Digital LLC (collectively "Voyager").

[2] While the Complaint alleges that the press conference occurred on October 28, 2021, *see* Compl. at ¶ 46, it was, in fact, held on October 27, 2021, *see* Mavs Decl. at ¶ 5 n.2.

[3] *See Cassidy v. Voyager Digital Ltd., et al.*, Case No. 21-24441 (S.D. Fla. Dec. 24, 2021) (the "*Cassidy* Action").  Plaintiffs even attach as an exhibit, and incorporate by reference, the operative complaint from the *Cassidy* Action to their Complaint against Defendants.

otherwise. This is a fundamental gating issue requiring dismissal of the case.  Defendants are not Florida residents and do not have (nor have they been alleged to have had) any Florida contacts sufficient to support an exercise of personal jurisdiction by this Court.   Additionally, the Complaint fails to state any colorable claims against Defendants, as it is predicated on alleged conduct and business products allegedly offered by Voyager and Mr. Ehrlich—not by Defendants—with only passing, out of context, and specious conclusory allegations regarding Defendants.  The slipshod nature of the Complaint, the timing of its filing, and the wholesale absence of any specific factual allegations against Defendants, powerfully underscore that the remaining state law claims asserted against Defendants are manufactured and entirely without merit.  Accordingly, the Complaint should be dismissed against Defendants on multiple grounds, including: (i) the Court lacks personal jurisdiction over Defendants; (ii) alternatively, Plaintiffs have failed to plead any viable claims against Defendants under Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules" and each a "Rule"), and the Complaint should be dismissed with prejudice and without leave to replead; and (iii) Plaintiffs have failed to join the Voyager debtors, necessary parties based on Plaintiffs' own allegations, under Rule 12(b)(7) and Rule 19, a further alternative ground for dismissal.

## BACKGROUND

According to the Complaint, Voyager has operated a publicly-traded "mobile application cryptocurrency investment service" since early 2019.  Compl. at ¶¶ 25-27.  Several years after Voyager commenced operations, went public, and engaged in all the underlying business conduct at issue in the Complaint, Mr. Cuban announced at the approximately 29-minute October 2021 Press Conference in Dallas, Texas that the Mavericks had entered into a 5-year "exclusive, integrated partnership" with Voyager, which would enable "both parties to reach a wider, global audience to raise brand awareness and drive cryptocurrency adoption around the world."  *Id.* at ¶ 46.  The October 2021 Press Conference was the first time Mr. Cuban met Mr. Ehrlich.  *See* Declaration of Mark Cuban at ¶ 5 ("Cuban Decl.").  Neither Mr. Cuban, nor any Mavericks employee, ever met Mr. Ehrlich, or any other Voyager employee, in Florida.  *See id.* at ¶ 8; Mavs Decl. at ¶ 8.[4]

Mr. Cuban is a well-known businessman and TV celebrity, who is the majority owner of the Dallas Mavericks.  Mr. Cuban resides and conducts his business in Dallas, Texas, and the

---

[4] Mr. Cuban would thereafter briefly meet Mr. Ehrlich only one more time, in Dallas, in early 2022, at a charity event held by the Mavericks.  *Id.* at ¶ 5.

Mavericks were, and remain, formed and based there. *See* Cuban Decl. at ¶¶ 2-3; Mavs Decl. ¶¶ at 2-3. Indeed, all the limited, alleged conduct by Defendants set forth in the Complaint relating to Voyager occurred solely in Dallas, Texas, not Florida. While Mr. Cuban is the beneficial owner of vacation property in Miami Beach, his direct contacts with Florida are extremely limited and do not relate in any respect to the Mavericks' business arrangement with Voyager. Mr. Cuban, typically, only visits Florida a few times each year, including when he sometimes attends Maverick games in Florida. *Id.* at ¶ 8. Similarly, while the Mavericks play "away" NBA games in Florida, the Mavericks have had no contact with Florida in connection with the Voyager business relationship. Neither Defendant specifically targeted any Florida resident during the October 2021 Press Conference, or at any time thereafter came to Florida to solicit business on behalf of Voyager or in furtherance of the alleged business relationship. *See* Cuban Decl. at ¶¶ 6-8; Mavs Decl. at ¶¶ 3-4. Plaintiffs have not alleged otherwise.

On December 24, 2021, the *Cassidy* Action was initiated against Voyager in the United States District Court for the Southern District of Florida. *See Cassidy* Action [ECF No. 1]. Like the Complaint here, the operative complaint in the *Cassidy* Action asserted deceptive trade practices claims against Voyager based on representations that the Voyager Platform was "100% Commission-Free" and alleged, as Plaintiffs do here, that Voyager's Earn Program Accounts ("EPAs") are unregistered securities that Voyager sold in violation of federal and state securities laws. *See, e.g.*, *id.* at ¶ 36. However, on July 5, 2022, Voyager and Holdings filed voluntary petitions for chapter 11 bankruptcy. Compl. at ¶ 4.[5] In support of Voyager's chapter 11 petition and first day motions, Mr. Ehrlich submitted a declaration detailing the reasons for Voyager's bankruptcy: "a short-term 'run on the bank' due to the downturn in the cryptocurrency industry generally and the default of a significant loan made to a third party." *See* Voyager Bankr. [ECF No. 15 at ¶ 1]. Specifically, Voyager had made a significant loan (15,250 Bitcoins and 350 million USDC) to a third-party cryptocurrency hedge fund in *March 2022*—five months after the October 2021 Press Conference—and, in June 2022, the fund defaulted on that loan. *See id.* at ¶¶ 55-56. The Complaint in this action makes no reference whatsoever to either the downturn in the cryptocurrency industry or the third-party loan default—the actual apparent causes of Voyager's bankruptcy; nor do (nor could) Plaintiffs in compliance with Rule 11 allege Defendants had any involvement in, or prior knowledge of, the general cryptocurrency market

---

[5] *See also In re Voyager Digital Holdings, Inc.*, Case No. 22-10943-mew (Bankr. S.D.N.Y.) ("Voyager Bankr.") [ECF No. 1]

downturn or the massive third-party loan that defaulted and led to Voyager's bankruptcy filing. As a result of Voyager's bankruptcy, the *Cassidy* Action was stayed and administratively closed on July 8, 2022.  *See Cassidy* Action [ECF No. 70].

Plaintiffs subsequently initiated this action against Defendants and Mr. Ehrlich on August 10, 2022.  *See* ECF No. 1.  Plaintiffs' original complaint included 39 claims, including numerous aiding and abetting claims and claims directly asserted against Defendants and Mr. Ehrlich.  *See,* ECF No. 1, Counts 1, 2, 8, 9, 18, 22, 25, 26, 30, 31, 35, 36.  Through an apparent deal with the creditors committee and Voyager debtors in Voyager's bankruptcy, Plaintiffs dropped the bulk of their claims, including all aiding and abetting claims, and Mr. Ehrlich as a defendant.[6] Plaintiffs' nineteen-count Complaint now asserts claims against Defendants solely for violation of various state securities and deceptive trade practices statutes.  *See* Compl. at ¶¶ 89-242. Though Plaintiffs no longer allege that Defendants aided and abetted Voyager's alleged misconduct, Plaintiffs still allege, perhaps due to editorial sloppiness, secondary securities claims based primarily on Voyager's alleged misconduct.  *See, e.g.*, Compl. at ¶¶ 84, 183. In the operative Complaint, Plaintiffs allege that Voyager's EPAs are unregistered securities which Voyager, with assistance from Defendants, sold to the Plaintiffs.  *See, e.g., id.* at ¶¶ 102-07. Additionally, Plaintiffs assert securities fraud and deceptive trade practices claims based on Plaintiffs' allegation that Defendants, during the October 2021 Press Conference, made misrepresentations about the Voyager Platform, specifically with respect to whether cryptocurrency trades on the Voyager platform were "100% Commission-Free" and whether cryptocurrency assets held in Voyager accounts were "FDIC insured." *See, e.g., id.* at ¶ 93. But, as detailed below, Defendants did not in fact make any statements about the Voyager Platform being "100% Commission-Free" or "FDIC insured" during the press conference.[7]

---

[6] *See In re Voyager Digital Holdings, Inc.*, Case No. 22-10943-mew, Adv. Proc. No. 22-01138-mew (Bankr. S.D.N.Y.) [ECF Nos. 18, 23]. While Plaintiffs previously advised this Court that they also were considering dropping the Mavericks as a defendant, presumably because they were cognizant of this Court's lack of jurisdiction over the Mavericks and the lack of a Rule 11 basis for the claims against the Mavericks, they have not yet done so, though the amended Complaint contains no new or different allegations against the Mavericks. *See* ECF No. 12.

[7] A certified transcript of the October 2021 Press Conference is attached as Exhibit A to the Mavs Decl. (the "Voyager Tr.").  By repeatedly quoting the October 2021 Press Conference, premising Defendants' claimed liability on their participation in that conference, and citing to a video link of the conference (Compl. at ¶ 50 n.22), Plaintiffs have incorporated by reference the entire October 2021 Press Conference such that it can be considered in its entirety on this motion to dismiss.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

At bottom, there is nothing in the Complaint that connects the Defendants to Voyager's offer or sale of EPAs, any cryptocurrency trades, or representations concerning the Voyager Platform. Tellingly, Plaintiffs fail to even allege when they opened their accounts at Voyager or what cryptocurrency trades, if any, they made on the Voyager Platform;[8] and not a single named Plaintiff is alleged to have watched or attended live the October 2021 Press Conference or been exposed to a single statement attributable to the Mavericks. *See id.* at ¶¶ 7-18.[9] Further, the statements by Mr. Cuban identified in the Complaint are entirely innocuous and largely pertain to general investing in cryptocurrency, not to the Voyager Platform with which Plaintiffs take issue. *See id.* at ¶¶ 47-51. Plaintiffs even admit that Mr. Cuban expressly stated that Voyager's product was not risk-free. *See id.* at ¶ 53. In fact, at the October 2021 Press Conference, Mr. Cuban expressly warned users to "always be careful" with their money and avoid "rush[ing] into" putting a significant amount of money into their Voyager accounts. Voyager Tr. at 19:6-7, 30:20-22. With respect to certain alleged statements regarding the practices of Voyager that Plaintiffs irresponsibly attribute to Defendants, Plaintiffs concede that it was, in fact, Voyager, *not Defendants*, that actually represented that the Voyager Platform was "100% Commission-Free." *See id.* at ¶ 33. Moreover, Plaintiffs do not identify a single statement by either of the Defendants that even mentions the EPAs; and Plaintiffs do not identify a single statement *by anyone*, let alone the Defendants, pertaining to Voyager's alleged FDIC status. *See generally id.* Further, because the Complaint is devoid of any specific factual allegations concerning the contours of Defendants' relationship with Voyager (*see id.* at ¶¶ 46-50), Plaintiffs' allegations that Defendants failed to disclose material aspects of this relationship is circular and without merit. There are, simply, no allegations that remotely could, if proven true, establish that

---

[8] Plaintiff Robertson concedes he "began to play around with a very small amount of money in June 2021," implying that he opened his Voyager account well prior to the October 2021 Press Conference. Compl. at ¶ 69.

[9] The Complaint appears to include allegations regarding class members, which are not relevant on this motion. *See, e.g., id.* at ¶¶ 70-71. On a motion to dismiss, only the claims and allegations pertaining to the named Plaintiffs should be considered. *See In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 334 (S.D.N.Y. 2021) ("[C]ourts typically address only the state law claims of the named plaintiff at the motion to dismiss stage and do not address the standing and merits arguments with respect to the additional state law claims unless and until the motion to dismiss is denied and a motion for class certification is granted."). The Court, thus, should not, at this stage, entertain the allegations pertaining to the absent class members, or Plaintiffs' allegations regarding a proposed nationwide class. Defendants are separately seeking a stay of the Court's consideration of Plaintiffs' recent improper and premature filing of a class certification motion on liability, and reserve all rights on such class issues.

Defendants had any knowledge, communications, or involvement with respect to Voyager's alleged operations, the Voyager Platform, or Voyager's EPAs.  *See generally id.*

## ARGUMENT

I. **DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

A. **Legal Standard**

Plaintiff "bears the initial burden of alleging . . . sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "[V]ague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1142 (S.D. Fla. 2019) (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006)). Defendants, as here, may contest the jurisdictional allegations and/or the existence of minimum contacts via declaration.  *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).  The plaintiff must thereafter "prove by affidavit the basis upon which jurisdiction may be obtained."  *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).  It is well-settled that there are two types of personal jurisdiction, general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction permits the exercise of jurisdiction regardless of whether the claims arose from the defendant's contacts within the state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).  However, a court may exercise specific jurisdiction only if the claims arise out of or relate to the defendant's statutorily-recognized contacts with the forum state.  *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017).  Here, Plaintiffs' Complaint fails to establish either predicate for personal jurisdiction and should be dismissed on that basis alone.

B. **No General Jurisdiction Because Defendants Are Not "At Home" In Florida**

"A court may assert general jurisdiction over [non-resident individuals or] corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *see* Fla. Stat § 48.193(2). The paradigm forum for exercising general personal jurisdiction over an individual "is the individual's domicile," whereas, for a corporation, it is where the corporation is "at home" (*i.e.*, where incorporated or its principal

6

place of business is located). *Daimler AG*, 571 U.S. at 137; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (same).  Here, Defendants are not subject to this Court's general personal jurisdiction because Mr. Cuban is domiciled in Texas and the Mavericks is a Texas limited partnership with its principal place of business in Dallas, Texas. Cuban Decl. at ¶¶ 2-3; Mavs Decl. at ¶ 2; Compl. at ¶¶ 19-20. "Home" for both Defendants is, thus, in Texas and general jurisdiction may not be exercised over Defendants in Florida as to any of the Plaintiffs' claims. *See Ford Motor Co.*, 141 S.Ct. at 1024.[10]

### C.    No Specific Jurisdiction Over Defendants For Non-Florida Plaintiffs' Claims

The Court does not have specific personal jurisdiction over the Defendants with respect to the claims of the nine named Plaintiffs that reside in states other than Florida ("Non-Florida Plaintiffs").[11]  When, as here, there is no "connection between the nonresidents' claims and the forum," "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781–82.  Indeed, this Court recently held, in rejecting pendent party personal jurisdiction, that a court does not have specific jurisdiction over the claims of non-Florida plaintiffs where, exactly as here, the complaint fails to allege any nexus between a non-Florida plaintiff's claim and the forum state.  *See Carter v. Ford Motor Co.*, No. 19-62646-CIV, 2021 WL 1165248, at *6 (S.D. Fla. Mar. 26, 2021) (no long-arm jurisdiction where "Plaintiffs all live outside of Florida" and conduct as to such plaintiffs occurred outside of Florida).  This Court's ruling in *Carter* is controlling and requires dismissal

---

[10] Mr. Cuban's vacation property and periodic visits to Florida (Cuban Decl. at ¶¶ 6-8) are plainly insufficient to establish general jurisdiction over Mr. Cuban. Courts have routinely declined to exercise general jurisdiction in cases where the defendant(s) had far greater contacts with Florida than Mr. Cuban.  *See Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1291 (S.D. Fla. 2021) (finding a business address insufficient for general jurisdiction over individual not domiciled in Florida); *Pinnacle Ins. & Fin. Servs., LLC v. Sehnoutka*, No. 3:16-CV-546-J-34JBT, 2017 WL 3193641, at *11 (M.D. Fla. July 27, 2017) (finding lack of personal jurisdiction over individual defendants who did not reside in Florida, did not conduct any business in Florida on an individual basis, and traveled to Florida only in furtherance of their LLC); *Burris v. Green*, No. 3:12CV521-MCR-CJK, 2016 WL 5844165, at *8 (N.D. Fla. Aug. 26, 2016), report and recommendation adopted, 3:12CV521-MCR-CJK, 2016 WL 5844481 (N.D. Fla. Sept. 30, 2016) (no general jurisdiction over defendant with business interests in two Florida corporations, because he was not engaged in the day to day activities of those corporations).

[11] *See* Compl. at ¶¶ 10 (Plaintiff Rahil Sayed, New Jersey), 11 (Plaintiff Christopher Ehrentraut, Tennessee), 12 (Plaintiff Todd Manganiello, Louisiana), 13 (Plaintiff Dan Newsom, Alabama), 14 (Plaintiff William Ayer, Virginia), 15 (Plaintiff Anthony Dorn, California), 16 (Plaintiff Dameco Gates, California), 17 (Plaintiff Marshall Peters, Pennsylvania), 18 (Plaintiff Edwin Garrison, Oklahoma).

of the claims of the Non-Florida Plaintiffs.  As to the Non-Florida Plaintiffs, the Complaint is fatally devoid of any allegations whatsoever that connect their claims to Florida.  *See* Compl. at ¶¶ 10-18, 22-23.  The Non-Florida Plaintiffs assert claims based on the laws of their respective states, the complained of acts and omissions on which they predicate their claims did not occur in Florida, and none have alleged any cognizable injury attributable to Defendants in Florida.  In sum, the Non-Florida Plaintiffs' claims pertain to alleged conduct and harm that, at best, occurred in states other than Florida.  As in *Carter*, "[g]iven these allegations, there's really not much more to say here," as "*no court* in this Circuit has exercised personal jurisdiction over the out-of-state claims of out-of-state *named* plaintiffs."  2021 WL 1165248, at *6, 12.[12]

### D.     No Specific Jurisdiction Over Defendants For Florida Plaintiffs' Claims

The three named Plaintiffs that reside in Florida (the "Florida Plaintiffs")[13] have likewise failed to demonstrate that Defendants are subject to specific jurisdiction in Florida.  To evaluate specific jurisdiction, the Eleventh Circuit considers two questions: "(1) whether personal jurisdiction exists over the nonresident defendant[s] under Florida's long-arm statute, and (2) if so, whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 734 (11th Cir. 2018) (alteration in original) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013)).  If a plaintiff has alleged a *prima facie* case of long-arm jurisdiction, the court must then determine whether the plaintiff has fulfilled their burden of establishing that the non-resident defendant has "minimum contacts" with the forum sufficient to satisfy the due process requirements of the 14th Amendment. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000); *see also Int'l Shoe Co.*, 326 U.S. at 316; *Fraser v. Smith*, 594 F.3d 842, 848 (11th Cir. 2010). The Florida Plaintiffs have failed to satisfy their burden.

### 1.     No Personal Jurisdiction Under Florida's Long-Arm Statute

Plaintiffs' conclusory jurisdictional allegations, which are confined to one paragraph of the Complaint (¶ 22), are plainly insufficient to establish a *prima facie* case of long-arm

---

[12] *See also id.* at *6 ("[W]hen evaluating the exercise of specific jurisdiction, a court 'must decide whether the [plaintiffs'] claims arise out of or relate to one of [the defendant's] contacts with Florida,' and adding that, '[i]n the absence of such a connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'") (alteration in original) (quoting *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 14-15 (11th Cir. 2018)).

[13] *See* Compl. at ¶¶ 7 (Plaintiff Pierce Robertson), 8 (Plaintiff Rachel Gold), 9 (Plaintiff Sanford Gold).

jurisdiction over Defendants.  Plaintiffs outright fail to plead that Defendants have any relevant jurisdictional contacts with Florida, whether it be (a) conducting business in Florida (Defendants' business operations are based in Texas), *see* Fla. Stat. § 48.193(1)(a)(1); Cuban Decl. at ¶¶ 6-8.; Mavs Decl. ¶¶ at 6-8;[14] (b) torts committed outside Florida but those which harmed individuals in Florida (Defendants have committed no torts, *see infra* Sections II(B-D)), *see* Fla. Stat. § 48.193(1)(a)(2); or (c) legally-relevant harm caused to individuals in Florida (Plaintiffs only plead economic injury, which is insufficient), *see* Fla. Stat. § 48.193(1)(a)(6)(a).[15] Finally, Florida Plaintiffs have failed to allege any Florida-related tortious conduct by Defendants in support of Plaintiffs' asserted causes of action—Count 4 (FDUTPA) and Count 5 (FSIPA). *See* Fla. Stat. § 48.193(1)(a) (requiring that the cause of action "aris[e] from" one of the nine enumerated provisions therein); *Louis Vuitton*, 736 F.3d at 1352 (Section 48.193(1)(a) "authorizes jurisdiction . . . *only as those contacts related to the plaintiff's cause of action*" (emphasis added)).  Plaintiffs' rote recitation of the subsections of Florida's long-arm statute does not and cannot satisfy, as a matter of law, the  requirement that there is some "direct affiliation, nexus, or substantial connection between the cause of action and the activities within the state." *St. Martinus Univ., NV v. Caribbean Health Holding, LLC,* Case No. 19-22278-CIV-ALTONAGA, 2020 WL 956301, at *10 (S.D. Fla. Feb. 27, 2020) (internal quotation marks and citation omitted).[16] The Florida Plaintiffs have failed to establish that any tortious conduct

---

[14] *See Oviedo v. Ramirez*, No. 21-cv-23750-BLOOM/Otazo-Reyes 2022 WL 1641865, at *6 (S.D. Fla. May 24, 2022) (no specific jurisdiction where plaintiff failed to allege claim "arose out of Sunflower's business transactions with the Florida-based companies, or that the cause of action arose out of Orchard's office in Florida"); *MSP Recovery Claims, Series LLC v. Westfield Ins. Co.*, No. 1:20-cv-24337-COOKE/O'SULLIVAN, 2021 WL 8343201, at *4 (S.D. Fla. Sept. 27, 2021) (finding that "vague and conclusory" allegations regarding defendants' business activity were insufficient to establish personal jurisdiction because they "failed to allege sufficient connexity"); *compare Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (describing relevant factors as the operation of an office in Florida, maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of revenue gleaned from Florida clients) *with* Cuban Decl. at ¶¶ 6-8.

[15] *Compare MSP Recovery Claims, Series LLC v. Northland Ins. Co.*, No. 20-CV-24176-WILLIAMS/MCALILEY, 2022 WL 2341158, at *5 (S.D. Fla. June 16, 2022) ("In this Circuit it is clear that jurisdiction is 'not proper under § 48.193(1)(a)(6)' where the plaintiff 'has alleged only economic injuries.'") *with* Compl. at ¶¶ 121, 139, 170, 221 (alleging damages on account of "the amount of their lost investments" and "paying undisclosed commissions").

[16] Moreover, "any doubts about the applicability of the statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1352 (S.D. Fla. 2007); *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007). Thus, Florida's long-arm statute is strictly construed in favor of defendants.

occurred in Florida for purposes of Section 48.193(1)(a)(2).  Plaintiffs have not and cannot allege that the October 2021 Press Conference in Dallas, Texas—which is the core of their allegations—was directed to or targeted Florida.  *See id.*[17]  Plaintiffs have, thus, failed to establish jurisdiction over Defendants under Florida's long-arm statute.

### 2. Plaintiffs' Conclusory Allegations do not Satisfy the Due Process Clause

Even if, *arguendo*, the Florida Plaintiffs satisfied the underlying prerequisites of Florida's long-arm statute (which they have not), the Court nonetheless cannot exercise personal jurisdiction over the Defendants because it would offend due process and the "minimum contacts" requirement.  Courts in the Eleventh Circuit apply a three-part test when evaluating whether the exercise of personal jurisdiction over a defendant comports with due process: (1) whether the claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Takata*, 396 F. Supp. 3d at 1148. The plaintiff bears the burden on the first two prongs, which, if satisfied, shifts the burden to the defendant to demonstrate that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*  None of these elements are satisfied here.

*First*, the "arising out of or relatedness" prong requires the Court to "focus on the direct causal relationship between the defendant, the forum, and the litigation," *Louis Vuitton*, 736 F.3d at 1355–56, such that the "contact" must be a but-for cause of the tort. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009). "[T]he causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign . . . .'" *See id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As explained *supra* Section I(D)(1), the precise conduct on which the Florida Plaintiffs tether their

---

[17]  Notably, none of the Plaintiffs allege when they opened their Voyager accounts, that they attended or watched the October 2021 Press Conference live, or participated in the limited $100 dollar "bonus" program for Voyager customers discussed during October 2021 Press Conference.  Instead, Plaintiffs cryptically allege, without any specificity, only that they were "exposed to some or all" of Mr. Cuban's alleged statements at some unspecified time.  Compl. at ¶¶ 7-18.

claims occurred in Texas, and there are *no* allegations that Defendants' non-Voyager connections to Florida (which are, in any event, extremely limited) are those out of which the claims arose.

*Second*, the Defendants have not purposefully availed themselves of the privileges of Florida by "deliberately engag[ing] in significant activities . . . or creat[ing] continuing obligations with residents of the forum." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc*., 593 F.3d 1249, 1268 (11th Cir. 2010). The purposeful availment inquiry provides that "[t]he focus must always be on the nonresident defendant's conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum," which "ensures that a defendant will not be subject to jurisdiction based solely on 'random,' 'fortuitous,' or 'attenuated' contacts" it makes by interacting with other persons affiliated with the State." *Id.* (citing *Burger King*, 471 U.S. at 475). It is precisely these types of "random" and "attenuated" contacts with Florida—which are insufficient to establish jurisdiction—that the Florida Plaintiffs appear to rely on in their futile attempt to establish jurisdiction over Defendants. Plaintiffs allege they were "exposed to some or all of Cuban's" statements (*see* Compl. at ¶¶ 7-18), but the Complaint is devoid of a single allegation: (i) that Defendants actually made any statements in Florida or concerning Florida; (ii) connecting Defendants' conduct to an obligation that Defendants had to the citizens of Florida; or (iii) identifying any "privileges" Defendants claimed that would create an obligation to Florida citizens sufficient for the exercise of jurisdiction. Defendants' limited involvement with Voyager occurred solely in Dallas, Texas, during a single press conference held several years after Voyager began operations; and the Plaintiffs have not alleged that Mr. Cuban's statements at this press conference, which were hosted on a Mavericks' website for Mavericks' fans by Dallas-based employees of the Mavericks, targeted Florida residents in any way. Mavs Decl. at ¶¶ 4-5. Moreover, the Dallas-based operation of such a website is legally insufficient to constitute purposeful availment by a non-resident defendant in Florida. Even if any of the Florida Plaintiffs had viewed the October 2021 Press Conference on the Maverick's website (something Plaintiffs do not even allege), "mere operation of [a] . . . website alone [does not] give rise to purposeful availment *anywhere* the website can be accessed." *Rosenstock v. Sollars*, No. 17-CV-81127, 2018 WL 8367072, at *3 (S.D. Fla. Jan. 24, 2018) (second alteration in original) (quoting *Louis Vuitton*, 736 F.3d at 1357); *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1155 (S.D. Fla. 2009). A contrary rule would render the operator of any website like the Mavericks', with common features such as video viewing and "fan" pages,

subject to universal personal jurisdiction in all 50 states – a clear violation of Supreme Court jurisprudence and other controlling law.[18]

Finally, even if Plaintiffs met their burden on the first two prongs (which they do not), exercising personal jurisdiction over Defendants would nonetheless offend traditional notions of fair play and substantial justice.  The following factors considered in this inquiry all weigh against exercising personal jurisdiction over the Defendants: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358 (internal quotation marks and citation omitted).  The "primary concern" of this fairness test is the burden on the defendant, and whether such burden would be unreasonable and offend traditional notions of fair play and substantial justice. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  Due process is offended where, as here, "the burden placed upon the defendant is incommensurate with the benefits and protections the defendant has received within the forum," which here, are next to nothing in Florida.  *See Oldfield*, 558 F.3d at 1221 n.30.  Here, there is no doubt that Defendants are "at home" in Texas, not Florida. *See* Cuban Decl. at ¶¶ 2-3, 7-8; Mavs Decl. at ¶¶ 2, 7-8.  Moreover, Mr. Cuban's business operations are based in Dallas, Texas and he visits Florida, at most periodically, and never in connection with the alleged business relationship with Voyager. Cuban Decl. at ¶¶ 2-4, 6, 8. Indeed, Plaintiffs claims are based solely upon statements Mr. Cuban made during the October 2021 Press Conference in *Texas*, not Florida.  Thus, if evidence exists to support Plaintiffs' claims (which it does not), such evidence (including witnesses) is available in Texas, not Florida. Simply put, there is *no* "affiliation" between the state of Florida and the underlying controversy and no "activity" by Mr. Cuban related to the claims in the Complaint, nor has Mr. Cuban sought "benefits and protections" of Florida's laws. *See Takata*, 396 F. Supp. 3d at 1148.

---

[18] *See Jennings v. AC Hydraulics AS*, 383 F.3d 546, 550 (7th Cir. 2004) ("Premising personal jurisdiction on the maintenance of a website, without some 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction . . . . This scheme would go against the grain of the Supreme Court's jurisprudence which has stressed that, although technological advances may alter the analysis of personal jurisdiction, those advances may not eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants."); *Sportschannel New England Ltd. P'ship v. Fancaster, Inc.*, No. 09-cv-11884-NG, 2010 WL 3895177, at *6-7 (D. Ma. Oct. 1, 2010) ("I refuse to find that every website with [common] characteristics subjects itself to universal jurisdiction.").

Thus, personal jurisdiction cannot be exercised over Defendants in Florida. *See Jewelmasters, Inc. v. May Dep't Stores Co.*, 840 F. Supp. 893, 895 (S.D. Fla. 1993).[19]

Plaintiffs' barebone pleadings, devoid of any specific factual allegations connecting any of Defendants' alleged conduct to Florida, fail to establish general or specific personal jurisdiction over the Defendants. All told, apart from the alleged presence of the three Florida Plaintiffs in Florida (which cannot serve as a basis for personal jurisdiction), the Complaint does not allege any connection between the Florida Plaintiffs' claims and the state of Florida. Plaintiffs' claims against Defendants should, accordingly, be dismissed for lack of personal jurisdiction.

## II.   PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs' claims against Defendants are, alternatively, subject to dismissal with prejudice and without leave to replead under Rule 12(b)(6) and Rule 9(b).

### A.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim requires factual allegations that establish all of the material elements of a cause of action. *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011). A complaint "requires more than labels and conclusions" to survive a motion to dismiss pursuant to Rule 12(b)(6) and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals," "conclusory statements," and mere "legal conclusions" do not suffice and need not be accepted as true. *Iqbal*, 556 U.S. at 678. Claims sounding in fraud are subject to the heightened pleadings standard of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, plaintiff must allege: (1) the precise statements, documents, or

---

[19] *See also Takata*, 396 F. Supp. 3d at 1142 (collecting cases): *e.g.*, *Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 916 (11th Cir. 2015) (*per curiam*) (affirming dismissal for lack of personal jurisdiction where plaintiff alleged that defendant had "contacts with [Florida] 24/7 and 365 days a year," yet "made no specific factual allegations of these contacts"); *Bulpit, LLC v. DeCanio*, Case No. 2:13-cv-14119-KMM, 2013 WL 12126313, at *4 (S.D. Fla. June 7, 2013) (finding "no basis" to exercise specific jurisdiction under Florida long-arm statute where plaintiff alleged the defendant "conduct[ed] business throughout interstate commerce and in all fifty states of the United States . . . and in particular conduct[ed] business in the Southern District of Florida").

misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendant gained by the alleged fraud. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). A plaintiff must allege these specific facts with respect to each defendant's participation in the alleged fraud. *Id.* Plaintiffs' Complaint fails to comply with Rules 8(a), 9(b), and 12(b)(6). Since this is effectively Plaintiffs' third attempt at pleading,[20] if the Court reaches these grounds for dismissal, the Complaint should be dismissed with prejudice and without leave to replead.

### B. State Securities Claims

Though not expressly styled as such, Plaintiffs' securities-law claims against Defendants appear to assert secondary violations of state securities laws, based on Defendants' alleged conduct as agents or partners of Voyager who provided material assistance to or personally participated in Voyager's two alleged underlying securities violations—Voyager's sale of the Voyager EPAs without registration[21] and Voyager's alleged misrepresentations made in connection with the sale of the Voyager EPAs.[22] Plaintiffs fail to state any securities claims against Defendants. *First*, Plaintiffs fail to allege facts sufficient to establish that Defendants are secondarily liable for the alleged violations of state securities laws. *Second*, Plaintiffs have not alleged that Defendants made any false or misleading statements concerning the Voyager Platform or EPAs.[23] *Finally*, Plaintiffs have failed to allege that Defendants acted with the requisite scienter.

---

[20] The first attempt was via the same counsel in the *Cassidy* Action, the second the initial complaint in this action, and the third, the amended Complaint in this action.

[21] Plaintiffs assert such claims under: (i) New Jersey Statutes Annotated Section 49:3-60 (Count 2); (ii) the Florida Securities and Investor Protection Act Section 517.07 (Count 5); (iii) Louisiana Section 51:705 (Count 7); (iv) Code of Alabama, Chapter 6, Section 8-6-17 (Count 9); (v) Code of Virginia Section 13.1-507 (Count 11); (vi) California Corporate Code Section 25110 (Count 13); (vii) the Pennsylvania Securities Act, 70 Pennsylvania Statute Section 1-201 (Count 15); and (viii) the Tennessee Securities Act, Tennessee Code Section 48-1-104(a) (Count 17).

[22] Plaintiffs assert such claims under: (i) New Jersey Statutes Annotated Section 49:3-52 (Count 2); (ii) Code of Alabama, Chapter 6, Section 8-6-17 (Count 9); (iii) Code of Virginia Section 13.1-502 (Count 11); (iv) California Corporate Code Section 25401 (Count 13); (v) the Pennsylvania Securities Act, 70 Pennsylvania Statute Section 1-401 (Count 15); (vi) the Tennessee Securities Act, Tennessee Code Section 48-1-121 (Count 17); and (vii) the Oklahoma Uniform Securities Act, 17 Oklahoma Statute Section 1-102(32) (Count 19).

[23] The Court need not determine whether the Voyager EPAs constitute securities, as Plaintiffs' allegations are insufficient to state a claim regardless of whether Voyager's EPAs were unregistered securities. Defendants reserve the right to argue that the EPAs did not constitute

1.     **Defendants Are Not Secondarily Liable Under State Securities Laws**

Plaintiffs' state-law securities claims (Counts 2, 5, 7, 9, 11, 13, 15, and 17) attempt to extend liability to those tangentially involved in the sale of alleged securities.  Such claims fail because only certain individuals, such as directors, agents, or legal partners of the issuer, that "personally participated" or "materially assisted" in the primary violation can be held secondarily liable for the violation of state securities laws.  *See* N.J. Stat. § 49:3-71(d); Fla. Stat. § 517.211(1); Ala. Code § 8-6-19(c); La. Stat. § 51:714(B); Va. Code § 13.1-522(C); Cal. Corp. Code § 25504.1; 70 Pa. Stat. § 1-503(a); Tenn. Code Ann. § 48-1-122(g); Okla. Stat. tit. 71, § 1-509(G)(4).[24]  Plaintiffs' allegations concerning Defendants' conduct fail to satisfy these requirements

    *a.*     ***Defendants Neither Personally Participated in Nor Materially Assisted the Sale of the Voyager EPAs***

Plaintiffs' claim (Count 5) under the Florida Securities and Investor Protection Act (the "FSA") cannot be sustained because Plaintiffs have not adequately alleged that Defendants personally participated in the sale of the EPAs. The FSA only imposes liability on the seller of a security and "every director, officer, partner, or agent of or for the seller, if [such person] personally participated or aided in making the sale."  Fla. Stat. § 517.211(1).  The requirement that a defendant personally participate or aid in making a sale necessarily "implies some activity in inducing the purchaser to invest."  *See Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005) (citing *Nichols v. Yandre*, 9 So.2d 157, 160 (1942)).  The defendant must have actively and directly, rather than passively, derivatively, or by attribution or imputation, influenced or induced the investor to buy.  *See id.*  No amount of involvement in the business of the seller will overcome the absence of personal participation or aid in the making of a sale.  *See id.* at 1313; *see also Turk v. Pershing LLC*, No. 3:09-CV-2199, 2014 WL 12572906, at *4 (N.D. Tex. Dec. 8, 2014) (dismissing FSA claim because allegations that defendant was a "behind-the-scenes actor in" the underlying scheme did not amount to "conduct that could be construed as inducement").

Likewise, Plaintiffs' failure to adequately allege that Defendants materially assisted or aided a state securities law violation requires dismissal of Counts 2 (New Jersey), 7 (Louisiana),

---

securities, as there is substantial authority that the EPAs, which are akin to a depository offering interest on a bank deposit, are not securities. *See SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).
[24] Unlike other states, Louisiana limits secondary liability to "every dealer or salesman who participates in any material way in the [unlawful] sale" of securities.  La. Stat. § 51:714(B).

9 (Alabama), 11 (Virginia), 13 (California), 15 (Pennsylvania), and 17 (Tennessee).  Similar to the FSA, these states only extend liability to agents who "materially aid" an underlying securities law violation.  N.J. Stat. § 49:3-71(d); Ala. Code § 8-6-19(c); Va. Code § 13.1-522(C); Cal. Corp. Code § 25504.1; 70 Pa. Stat. § 1-503(a); Tenn. Code Ann. § 48-1-122(g); Okla. Stat. tit. 71, § 1-509(G)(4); La. Stat. § 51:714(B).  To establish secondary liability "for materially aid[ing] in the sale of a security, the plaintiff must demonstrate that the broker-dealer's involvement in the sale is considerable, significant or substantial."  *Nicholas v. Saul Stone & Co.*, No. 97-CV-860, 1998 WL 34111036, at *19 (D.N.J. June 30, 1998), *aff'd,* 224 F.3d 179 (3d Cir. 2000) (alteration in original) (internal quotation marks and citation omitted).  It is "not enough that a person provided material assistance in a larger scheme to defraud if that person had no role or involvement in the part of the scheme that constituted a violation of the securities laws."  *Schaffer Fam. Invs., LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1045 (C.D. Cal. 2015) (referencing Cal. Corp. Code § 25504.1).

Here, Plaintiffs' claim under the FSA must be dismissed because Plaintiffs do not adequately allege that Defendants "participated in" the sale of Voyager EPAs.  In support of their claim under the FSA, Plaintiffs allege only that: (1) "Defendants are directors, officers, partners and/or agents of Voyager;" and (2) "Voyager, with Defendants' material assistance, offered and sold the unregistered EPAs to Plaintiffs and the members of the Class."  *See* Compl. at ¶¶ 131-32.  These conclusory statements, absent any specific factual allegations (which do not exist), are, simply, woefully insufficient to sustain a claim under the FSA.  *See Dillon*, 385 F. Supp. 2d at 1313 (granting Rule 50(b) motion dismissing FSA claim where plaintiffs offered evidence only of defendant's involvement in furtherance of seller's business but not to the sale of securities by the seller); *Turk*, 2014 WL 12572906, at *4 (dismissing claim under FSA claim where plaintiffs failed to allege defendant had any meaningful interfacing with seller's investors or that it was active at the point of purchase of CDs).  Nor are Plaintiffs' allegations sufficient to sustain a claim under the securities laws of New Jersey, Louisiana, Alabama, Virginia, California, Pennsylvania, Tennessee and Oklahoma, in support of which Plaintiffs, likewise, allege only that Defendants "materially assisted" or "actively participated in" Voyager's offer and sale of the EPAs, or "promoted the Voyager EPAs" to Plaintiffs and Class members, without any supporting factual allegations.  *See* Compl. at ¶¶ 106, 147, 164, 179, 194, 208, 211, 229, 242; *see, e.g.*, *AREI II Cases*, 157 Cal. Rptr. 3d 368, 380 (Cal. App. 2013) (dismissing secondary liability claim under Cal. Corp. Code § 25504.1 because plaintiffs failed to allege that defendant

offered "material assistance in some aspect of the alleged violation of section 25401"); *Nicholas*, 1998 WL 34111036, at \*19-20 (dismissing New Jersey securities claims for secondary liability where there were insufficient allegations that defendant gave "substantial and knowing assistance in the sale of securities").

Notably absent from the Complaint is any allegation that Defendants participated in any of Voyager's operations, let alone in the enrollment and use of EPAs, or even knew how the Voyager Platform operated. Plaintiffs do allege a "partnership" between Defendants and Voyager, but do not allege the necessary formal "legal partnership," nor make any specific allegations concerning the contours of Defendants' alleged relationship with Voyager or how Defendants "materially assisted" Voyager in the sale of the EPAs. In fact, the Complaint *does not*: (i) *identify a single statement concerning Voyager's EPAs* made by either of the Defendants, (ii) allege that Defendants had an active relationship with Voyager when Plaintiffs opened their accounts at Voyager; (iii) allege that Defendants had any direct contact with any of the Plaintiffs; (iv) even identify when any of the Plaintiffs allegedly became customers of Voyager and opened their respective EPAs; and (v) allege any Plaintiff participated in the limited $100 reward program Mr. Cuban announced at the October 2021 Press Conference. In short, Plaintiffs have not alleged facts sufficient to hold Defendants secondarily liable for securities violations under any of the state securities laws invoked in the Complaint and such claims should be dismissed.

### b. Defendants Are Not Voyager's Agents or Partners that Can Be Secondarily Liable

All of Plaintiffs' claims for secondary violations of state securities law also fail because they have failed to sufficiently allege that Defendants are Voyager's agents or partners. Plaintiffs do allege, in conclusory fashion, that "Defendants are directors, officers, partners and/or agents of Voyager," but they fail to set forth any facts that could conceivably support any such relationship. *See* Compl. at ¶ 131. As an initial matter, it is an utter fabrication to suggest that Mr. Cuban or the Mavericks are "directors" or "officers" of Voyager. With respect to any claim of "agency" or "partnership," Plaintiffs' allegations are insufficient to satisfy Section 517.211(1) or similar requirements under the other relevant states' securities laws.[25]

---

[25] *See* N.J. Stat. § 49:3-71(d); Ala. Code § 8-6-19(c); Va. Code § 13.1-522(C); Cal. Corp. Code § 25504.1; 70 Pa. Stat. § 1-503(a); Tenn. Code Ann. § 48-1-122(g); Okla. Stat. tit. 71, § 1-509(G)(4) (all limiting secondary liability to agents, partners, directors, and other categories, such as broker-dealers, which are not relevant here).

"[I]n the context of section 517.301, [Florida courts give the] term ['agent'] . . . its common definition, meaning representation of a principal." *Rubin v. Gabay*, 979 So. 2d 988, 990 (Fla. 4th DCA 2008).  To allege such a relationship, Plaintiffs must allege either actual or apparent agency.  *Kahan Novoa v. Safra Nat. Bank of New York*, 313 F. Supp. 2d 1347, 1354 (S.D. Fla. 2003).  To establish actual agency, Plaintiffs must show that "(1) the purported principal . . . acknowledge[s] that the agent . . . will act for it; (2) the agent must accept the undertaking; and (3) the principal must have control over the agent's actions." *Id.* (citing *Goldschmidt v. Holman*, 571 So.2d 422, 425 n. 5 (Fla. 1990)).  For apparent agency, "a plaintiff must show that: (1) the principal held out the agent as possessing sufficient authority to embrace the particular act at issue, or permitted the agent to have such authority; (2) the plaintiff had reason to believe that the agent had the authority he assumed to exercise; and (3) the plaintiff relied thereon in good faith." *Id.* at 1354-55.

Here, Plaintiffs have not alleged either an actual or apparent agency relationship under Florida law or that of any other state.[26]  In terms of actual agency, Plaintiffs do not allege Defendants acted on Voyager's behalf in connection with the sale of the Voyager EPAs or in connection with any cryptocurrency trades in any Voyager account, so Plaintiffs have not alleged that Voyager "acknowledge[d]" and Defendants accepted the agency relationship.  Further, the Complaint does not allege that Voyager maintained any control over Defendants' conduct, instead alleging that Defendants acted of their own accord, thus defeating any potential finding of actual agency.  *State v. Am. Tobacco Co.*, 707 So. 2d 851, 854 (Fla. 4th DCA 1998); *Blunt v. Tripp Scott, P.A.*, 962 So. 2d 987, 989 (Fla. 4th DCA 2007).  Plaintiffs' apparent agency argument is, likewise, fatally flawed.  Plaintiffs fail to allege a good-faith belief that Defendants were acting on Voyager's behalf, rather than as independent parties involved in a sponsorship agreement.  *See, e.g.*, Compl. at ¶¶ 46-47.  While Plaintiffs allege *Mr. Ehrlich* stated that Defendant Cuban was an "advisor" to Ehrlich and he and Mr. Cuban supposedly had "a great relationship" (*id.* at ¶ 60), this is insufficient to support any agency relationship between *Voyager* and Mr. Cuban.

Section 517.211(1)'s reference to "partner" (and that of the various other state statutes) must also be construed pursuant to that term's common legal definition—that of a formal legal

---

[26] Notably, Plaintiffs do not allege to have attended or watched this press conference.  Instead, the Complaint repeatedly—and vaguely—alleges that Plaintiffs were "exposed to some or all" of Defendants' statements.  *See* Compl. at ¶¶ 7-18, 78.

partnership—rather than the more colloquial definition.   Section 517.021's use of the term "partner" or "partnership" reflects that the drafters were referencing formal legal partnerships and not informal associations of individuals.  *See* Fla. Stat. § 517.021(2)(a)(3) (referencing "[t]he partners of a partnership"); Fla. Stat. § 517.021(13) (referencing various corporate forms, including "a corporation, trust, partnership, association, or other legal entity"); Fla. Stat. § 517.021(15) (similarly referencing various corporate forms, including "a corporation, trust, or unincorporated association or partnership of any kind").   Mere use of the colloquial phrase "partner" does not create a formal legal partnership.  *See Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1351 (S.D. Fla. 1999), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000) (holding that a party could not reasonably have expected to have entered a formal partnership with another party based on that party's alleged promises of a "lasting partnership").   Because Plaintiffs do not allege any formal legal partnership between Defendants and Voyager (there was none)—under Florida law or that of any jurisdiction—Defendants cannot be held vicariously liable as Voyager partners.

### 2.        Failure to Allege Any False or Misleading Statements or Omissions

Plaintiffs' claims for securities fraud (Counts 2, 9, 11, 13, 15, 17, and 19) also fail because Plaintiffs have not alleged that Defendants made any false or misleading statements.  As an initial matter, the statements by Mr. Cuban identified in the Complaint do not relate to the EPAs, the commissions on the Voyager Platform or Voyager's FDIC status.  Further, Plaintiffs ignore that Defendant Cuban expressly warned potential Voyager customers that the product was *not* risk free (Compl. at ¶ 53), that they should "always be careful" with their money, and that they should not "rush into" anything or "put all your money" into a Voyager account. Voyager Tr. at 19:6-19.[27]  Instead, Plaintiffs cite, without context, several statements allegedly made by Mr. Cuban during the approximately half-hour October 2021 Press Conference that are either accurate or constitute non-actionable opinion statements.  These statements can be summarized as follows: (a) Mr. Cuban accurately stated that the Voyager platform was an easy way to get started investing in cryptocurrency, that the Voyager platform allowed users to purchase 60+

---

[27] When considering Plaintiffs' securities fraud claims, the Court should consider the full context of Defendants statements, which should not be "viewed in a vacuum," as "[t]he reasonable investor understands that a statement of opinion in its full context."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190-91 (2015); *see In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008) (considering language "omitted from plaintiffs' partial quotation in the [c]omplaint" to determine whether a statement was misleading).

types of cryptocurrency assets, and that it was inexpensive to get started on the Voyager platform (Compl. at ¶¶ 47, 55); (b) Mr. Cuban accurately stated that he was a Voyager customer and expressed his opinion that the pricing was "actually really good" (*id.* at ¶ 49); (c) Mr. Cuban stated that Voyager platform was user-friendly and that he believed Voyager offered good pricing (*id.* at ¶ 51); and (d) Mr. Cuban explained his understanding that Voyager was offering relatively high variable interest rates, and that he was "not here trying to sell you it's 100% risk free," but that in his opinion use of Voyager was less risky than other cryptocurrency purchases (*id.* at ¶ 53).

Mr. Cuban's statements about the pricing and his personal experience with the Voyager Platform are opinions that cannot constitute the basis for a fraud-based claim, particularly because there is no allegation that he did not truly believe the Voyager Platform was user-friendly or offered "really good" pricing.  *See Hercules Cap., Inc. v. Gittleman*, No. 16-CV-81663, 2018 WL 395489, at *22 (S.D. Fla. Jan. 12, 2018) (holding that defendant's statement that the company had "really been crushing it lately" was "enthusiastic optimism" that amounted to "nonactionable opinion" which could not form the basis of a fraudulent misrepresentation); *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199, 224 (Cal. Ct. App. 2007) (noting that representations that amounted to "puffery" or nonactionable opinion could not be fraudulent).  Further, Defendant Cuban's statement regarding the riskiness of Voyager is accurate and not misleading.  Defendant Cuban plainly warns prospective users at the October 2021 Press Conference that Voyager was *not* "100% risk free," to "always be careful" when spending their money, and that they should not rush to put all their money into cryptocurrency. *See* Voyager Tr. at 19:6-13, 25:43.  Mr. Cuban clearly warned potential Voyager customers to be careful and measured when using the Voyager Platform, rendering his other statements at the October 2021 Press Conference incapable of a misleading meaning. All other statements Plaintiffs allege to be misleading were made by other parties—either Voyager or Mr. Ehrlich; and Defendants cannot be held liable for such statements, as there is no allegation that Defendants had any basis to know they might have been inaccurate.

### 3.  Failure to Adequately Allege Scienter

California Plaintiffs' claim under California securities laws (Count 13) also fails because they do not sufficiently allege that Defendants knew of Voyager's alleged violations of California securities laws.   California Corp. Code § 25504.1 limits liability for material assistance of a state securities law violation to those who act "with intent to deceive or defraud."

Cal. Corp. § 25504.1.  Accordingly, to state their claim based on Defendants' alleged "material assistance" of Voyager (Compl. at ¶ 194), California Plaintiffs must allege that Defendants materially benefitted from Voyager's alleged securities violation with knowledge of Voyager's underlying alleged misconduct.  *See In re Washington Mut., Inc.*, 462 B.R. 137, 143-44 (Bankr. D. Del. 2011) (the "intent to deceive or defraud" requirement under Cal. Corp. Code § 25504.1 requires an allegation that defendant knew of, rather than merely recklessly disregarded, the underlying violation).

Here, California Plaintiffs fail to even allege that Defendants should have had *any knowledge* that Voyager was violating state securities laws.[28]  The Complaint is devoid of any factual allegations supporting Defendants' actual knowledge or Voyager's alleged misconduct. California Plaintiffs summarily allege that Defendants possessed "knowledge of and participat[ed] in Voyager's non-compliance" with securities laws.  Compl. at ¶ 189.  But as support for these allegations, Plaintiffs only allege that Defendant Cuban "is a proponent of investment in the cryptocurrency and Non-Fungible Token . . . markets" and that he invests in cryptocurrencies or companies involved with cryptocurrencies.  *Id.* at ¶ 45.  Indeed, the Jon Stewart interview with Mr. Cuban that Plaintiffs apparently cite to demonstrate his knowledge of Voyager's alleged wrongdoing nowhere mentions Voyager; in a limited section of the interview, Mr. Cuban discusses blockchain technology generally and his views on the future use of "smart contracts"—not Voyager or the company's allegedly fraudulent platform.[29]  Plaintiffs do not allege why Defendants knew or should have known how the Voyager Platform worked or whether the Voyager EPAs were securities.  *See, e.g.*, *id.* at ¶ 92.  Indeed, there is absolutely no evidence, and certainly nothing alleged in the Complaint, that Mr. Cuban had any idea how the Voyager Platform commission structure operated, including whether Voyager was, as alleged by Plaintiffs, charging undisclosed commissions on cryptocurrency trades.  Further underscoring Defendants' lack of relevant knowledge, Mr. Cuban repeatedly deferred to Mr. Ehrlich when asked questions about how the Voyager Platform worked or the services offered by Voyager

---

[28] As noted by Holdings in its currently pending Chapter 11 bankruptcy proceedings, "the central issue in the [proposed amended complaint] is the Debtors' compliance with relevant securities law, as contemplated by the representations and warranties in the Sponsorship Agreement."  *See* Voyager Bankr. [ECF No. 31 at 5] (Debtors Reply Brief in Support of its Motion to Stay).

[29] *See* Compl. at ¶ 46 (citing Taylor Locke, *Mark Cuban says 80% of his investments that aren't on 'Shark Tank' are crypto-related: Here's 'where I look to invest'*, CNBC (Jan. 14, 2022), https://www.cnbc.com/2022/01/14/mark-cuban-says-80percent-of-his-non-shark-tank-investments-are-in-crypto.html).

during the October 2021 Press Conference. *See, e.g.*, Voyager Tr. at 10:22-11:24, 24:22-25:15. Furthermore, the Voyager debtors represented to the bankruptcy court that Holdings had actually assured the Mavericks that its practices complied with applicable securities laws. *See* n.28, *supra*. Defendants, thus, cannot be liable for allegedly fraudulent securities sales by Voyager (or Holdings) under California law.

### C.     Plaintiffs Fail to State a Viable Claim Under the DJA

Plaintiffs' claim under the New Jersey Declaratory Judgments Act ("DJA") (Count 3), which seeks an order declaring that (i) the "EPAs were securities required to be registered with the SEC and state regulatory authorities," (ii) the Voyager Platform "did not work as represented," and (iii) Defendant Cuban "was paid exorbitant sums of money to peddle Voyager to the nation" (Compl. at ¶ 114), is also infirm for multiple reasons.[30] *First*, the claim cannot be sustained on behalf of any Plaintiff other than New Jersey resident Rahil Sayed. *See* Compl. at ¶ 10; N.J. Stat. Ann. § 49:3-51 (limiting the scope of the New Jersey Securities Law to the circumstances where a sale, offer to sell, purchase, or offer to purchase was made in New Jersey).

---

[30] To the extent the DJA claim is a veiled attempt to hold Defendants directly liable for the "sale" of alleged securities in violation of New Jersey securities laws based on the alleged "solicit[ation]" of Plaintiffs' alleged purchases (Compl. at ¶ 114), any such direct liability claim must fail, as the Complaint fails to sufficiently allege that Defendants solicited Plaintiffs' opening of Voyager EPA accounts. Unlike in *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1343 (11th Cir. 2022), *cert. denied sub nom. Arcaro v. Parks*, No. 22-267, 2022 WL 16909192 (U.S. Nov. 14, 2022), which Plaintiffs appear to rely on, where defendants were promoters who "posted thousands of videos" with the single-minded aim of persuading people to purchase an unregistered cryptocurrency tied to a Ponzi scheme, Plaintiffs here allege only that Defendants were limited, collateral participants in Voyager's general marketing efforts and attended a single Dallas, Texas press conference in late October 2021. *See Beltram v. Shackleford, Farrior, Stallings & Evans*, 725 F. Supp. 499, 500 (M.D. Fla. 1989). Plaintiffs do not allege that Defendants specifically encouraged Plaintiffs to open Voyager EPAs or make any cryptocurrency trades in their Voyager accounts. *Wildes* is further inapposite, as that case addressed potential federal liability for the unregistered sale of securities using a broad definition of "seller" (*see id.* at 1346), which has not been adopted by New Jersey in interpreting the definition of "seller" under the state's securities laws. *Lord Abbett Mun. Income Fund, Inc. v. Asami*, No. C-12-03694 DMR, 2014 WL 3417941, at *15 (N.D. Cal. July 11, 2014), *aff'd,* 653 F. App'x 553 (9th Cir. 2016). In any event, any direct claim under New Jersey securities law fails because Plaintiffs have failed to allege any of the Plaintiffs were in privity with the Defendants. *See id.* (holding that 49:3–71(a), which prohibits the unregistered or fraudulent sale of a security requires privity in order to establish liability). Defendants reserve the right to address any other bases for dismissal of a direct securities claim on reply.

*Second*, Plaintiffs invoke the DJA for an improper purpose. "[T]he purpose of a declaratory judgment proceeding is to provide a means by which rights, obligations and status may be adjudicated in cases involving a controversy that has not yet reached the state at which either party may seek a coercive remedy." *Rego Indus., Inc. v. Am. Modern Metals Corp.*, 91 N.J. Super. 447, 452-53 (App. Div. 1966). Thus, "there is ordinarily no reason to invoke the provisions of the [DJA] where another adequate remedy is available." *Id.* at 453. Here, Plaintiffs have no claim under the DJA because, according to Plaintiffs' own pleadings, their "rights" have already been violated and Plaintiffs have other available remedies, as evidenced by the *eighteen* other Counts of the Complaint that would necessarily resolve the factual issues for which Plaintiffs seek a declaratory judgment. *See id.* at 453-53 (dismissing claim under DJA where "the parties have reached a stage where rights have been breached" and "all [plaintiff] has left is a claim for damages"). Plaintiffs' have "rights" with respect to the Voyager Platform and EPAs were, allegedly, violated when Plaintiffs became Voyager customers utilizing EPAs; and whether Defendants participated in the violation of such rights would necessarily be resolved by Plaintiffs' claims under state securities and consumer fraud claims. In sum, the controversy has reached the stage where a declaratory judgment is not an appropriate remedy.[31]

**D.    Consumer Fraud and Deceptive Trade Practice Claims**

Plaintiffs' state law consumer fraud and deceptive trade practices claims[32] also fail for multiple reasons. *First*, the purported misrepresentations and omissions that form the basis of these claims were made in the context of securities transactions. Specifically, Plaintiffs contend that these misrepresentations and omissions were made to induce the Plaintiffs to use the

---

[31] Furthermore, the DJA explicitly provides that declaratory relief cannot be sought or entered when the rights of a non-party to the suit would be impacted thereby. *See* N.J.S.A. 2A:16-56; N.J.S.A. 2A:16-57. Accordingly, and set forth more fully in Section III, *infra*, Plaintiffs' claim under the DJA cannot survive because Voyager and Holdings are not parties to this suit, but their rights would be impacted by a declaration as to whether the EPAs are unregistered securities, the Voyager Platform works as represented, or Voyager paid Defendant Cuban any money (it did not). *See Med. Society of N.J. v. AmeriHealth HMO, Inc.*, 376 N.J. Super. 48, 56. (App. Div. 2005) (dismissing declaratory judgment claim where indispensable parties were not joined to the suit).

[32] Plaintiffs assert claims under the New Jersey Consumer Fraud Act (Count 1), the Florida Deceptive and Unfair Trade Practices Act (Count 4), Louisiana's Unfair Trade Practices and Consumer Protection Law (Count 6), the Alabama Deceptive Trade Practices Act (Count 8), the Virginia Consumer Protective Act (Count 10), California's Unfair Competition Law Business & Professional Code (Count 12), the Pennsylvania Unfair Trade Practices and Consumer Protection Laws (Count 14), the Tennessee Consumer Protection Act (Count 16), and the Oklahoma Consumer Protection Act (Count 18).

Voyager Platform and EPAs for cryptocurrency trades and that they were damaged in the amount of their lost securities investments. *See, e.g.*, *id.* at ¶¶ 92-93 121, 139.  All but possibly one of the consumer fraud and deceptive trade practices statutes invoked by Plaintiffs, however, do not apply to claims arising from securities transactions.[33]  While Defendants reserve all rights as to whether the EPAs were unregistered securities, such claims must be dismissed since the theory advanced by Plaintiffs (that the EPAs are securities) renders such claims subject to dismissal as a matter of law.

      *Second*, Plaintiffs fail to allege damages that are recoverable under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which requires Plaintiffs to establish "actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).  "Actual damages" are defined as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984).  "Actual damages" *do not* include "actual consequential" damages.  *Orkin Exterminating Co. v. DelGuidice*, 790 So. 2d 1158, 1162 (Fla. 5th DCA 2001).  In their Complaint, Plaintiffs allege they have been damaged "by paying undisclosed commissions on cryptocurrency trades on the Voyager Platform and in the amount of their lost investments" on the Voyager Platform.  *See* Compl. at ¶ 121.  "Lost investments" on the Voyager Platform are not "actual" damages, but rather consequential damages that are not recoverable under FDUTPA. *See, e.g.*, *In re Am. Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No.

---

[33] *Lee v. First Union Nat. Bank*, 199 N.J. 251, 261 (2009) (Count 1); *Feng v. Walsh*, No. 19-24138-CIV-GAYLES/OTAZO-REYES, 2021 WL 8055449, at *13-14 (S.D. Fla. Dec. 21, 2021) (plaintiffs failed to state a FDUTPA claim because "FDUPTA does not apply to securities claims" and plaintiffs' "allegations regarding their lost investments are rooted in securities transactions") (Count 4); *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1316 (N.D. Fla. 2003) (dismissing FDUTPA claim predicated on securities transactions because FDUTPA does not regulate securities) (Count 4); *Minshall v. TD Evergreen*, No. 05 Civ. 1232, 2005 WL 8145046, at *1 (M.D. Fla. Aug. 4, 2005) (dismissing FDUTPA count on basis that "FDUTPA does not apply to claims arising from securities transactions") (Count 4); *Smith v. Cooper/T. Smith Corp.*, 846 F.2d 325, 328 (5th Cir. 1988), modified, 886 F.2d 755 (5th Cir. 1989), on reh'g (Dec. 5, 1989) (Count 6); *Bowen v. Ziasun Techs., Inc.*, 116 Cal.App.4th 777, 788 (2004) (Count 12); *Baker v. Summit Bank*, 64 F. Supp. 2d 466, 467-68 (E.D. Pa. 1999) (Count 14); *cf. In re Moon*, No. 96-4086, 1997 WL 34625685, at *21 (E.D. Va. Dec. 17, 1997) (quoting Va. Code § 59.1-198) (dismissing VCPA claim because underlying transaction was not a "consumer transaction" as defined by the VCPA) (Count 10).  Defendants could not locate any authority addressing whether the Alabama Deceptive Trade Practices Act (Count 8) or the Oklahoma Consumer Protection Act (Count 18) applies to securities transactions.

19-md-2904, 2021 WL 5937742, at *28 (D.N.J. Dec. 16, 2021) (dismissing FDUTPA claim where plaintiffs failed to allege that defendants' conduct reduced the value of the "property that is the subject of the consumer action," finding that allegations of fraudulent charges, expended time, purchase of monitoring services and hacked accounts are unrecoverable); *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985) (holding that FDUTPA did not allow for recovery of special or consequential damages, such as the costs of repairs necessitated by defendant's subpar services).  Plaintiffs FDUTPA claim is, thus, subject to dismissal on this basis as well.

*Third*, courts interpreting the Virginia Consumer Protective Act ("VCPA") (Count 10), California's Unfair Competition Law (Business & Professional Code § 17200) ("UCL") (Count 12), and the Pennsylvania Unfair Trade Practices and Consumer Protection Laws ("UTPCPL") (Count 14) have held that claims pursuant to these statutes fail if plaintiff is not an actual customer or consumer vis-à-vis the specific defendant.  *See U.S. Legal Support, Inc. v. Hofioni*, No. CIV. S-13-01770 LKK, 2013 WL 6844756, at *15 (E.D. Cal. Dec. 20, 2013) (dismissing plaintiff's § 17200 claim because plaintiff was not a consumer of defendants' services); *Am. Express Bank, FSB v. Martin*, 200 A.3d 87, 97 (Pa. Super. 2018) (dismissing plaintiff's UTPCPL claim where "by his own admissions he is not a UTPCPL 'consumer' with respect to the Bank because he obtained no goods or services from the Bank"); *Seeman v. Oxfordshire*, LLC, 83 Va. Cir. 442, 2011 WL 8956202, at *3 (Suffolk Cir. Ct. Oct. 12, 2011) (dismissing VCPA claim against defendant who did not sell or use the defective product, but acted only as the seller's agent in the transaction with the plaintiff).  Here it is undisputed that Plaintiffs were customers of Voyager, not the Defendants, so Plaintiffs' claims under the VCPA, UCL, and UTPCPL fail.

*Finally*, as set forth in Section II.E, *infra*, Plaintiffs' consumer fraud and deceptive trade practices claims fail because Plaintiffs have not satisfied Rule 9(b) heightened pleading standard applicable to such claims.

### E.     Failure to Satisfy Rule 9(b) Pleading Standard for Fraud Claims

Virtually all of Plaintiffs state securities and deceptive trade practices claims (the "Fraud Claims") fail for the additional reason that they are not plead with the specificity required by Rule 9(b).[34]  Plaintiffs' Fraud Claims rest upon four alleged misrepresentations or omissions that

---

[34] Rule 9(b) applies to the following claims: Count 1 (NJ Consumer Fraud Act), Count 2 (NJ securities fraud) and Count 3 (NJ DJA), *Regenicin, Inc. v. Lonza Walkersville, Inc.*, 997 F. Supp. 2d 1304, 1314-15 (N.D. Ga. 2014) (holding that Rule 9(b)'s heightened pleading standard

sound classically in fraud, but which are not pleaded with any modicum of specificity, and in key respects are statements that the Complaint alleges were not even made by Defendants, but by Voyager or the now-dismissed Mr. Ehrlich: (i) "concealing Defendant's specific roles and interests in Voyager;" (ii) failing to disclose Defendants' use to "instill trust" in investors; (iii) stating that Voyager Platform was "100% Commission-Free;" and (iv) stating that funds held in the Voyager Platform are FDIC insured.  *See, e.g.*, Compl. at ¶ 93.

With respect to the alleged misrepresentations ((iii) and (iv)), Plaintiffs *do not identify a single statement* by either Defendant Cuban or Defendant Mavericks concerning Voyager's commissions or FDIC status; and Plaintiffs allege that it was Voyager, *not Defendants*, that represented that the Voyager Platform was "100% Commission-Free." *See id.* at ¶ 33.  In fact, Plaintiffs do not even claim to have been "exposed" to any statements by the Mavericks concerning the Voyager Platform.  *See id.* at ¶¶ 7-18 (claiming to have become a customer "after being exposed to some or all of Cuban's and Ehrlich's misrepresentations and omissions regarding the Deceptive Voyager Platform").  Nor do Plaintiffs identify a single statement by

---

applies to claims for violation of New Jersey Consumer Fraud Act and New Jersey Uniform Securities Law); Count 4 (FDUTPA), *State Farm Mutual Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017); Count 5 (FSA), *Stone Inv. Dakota LLC v. Bastos*, No. 15-61406-CIV, 2016 WL 200268, at *4 n.3 (S.D. Fla. Jan. 14, 2016); Count 6 (LA Unfair Trade Practices), *Brand Coupon Network, LLC v. Cataline Mkg. Corp.*, No. 11-556, 2014 WL 6674034, at * 5 (M.D. La. Nov. 24. 2014); Count 8 (AL Deceptive Trade Practices Act), *Devane v. L'Oreal USA, Inc.*, No. 19 CIV. 4362 (GBD), 2020 WL 5518484, at *4 (S.D.N.Y. Sept. 14, 2020) (applying heightened pleading standard of Rule 9(b) to AL Deceptive Trade Practices Act, dismissing claims for failure to allege "with particularity the circumstances constituting fraud"); Count 9 (AL securities fraud), *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1321 (N.D. Ala. 2019); Count 10 (VCPA), *Gurwell v. Sea World Parks & Ent. LLC*, No. 2:20cv312, 2021 WL 4168503, at *4 (E.D. Va. Aug. 11, 2021); Count 11 (VA securities fraud), *Remacle v. Repperio, Inc.*, No. 117CV00434GBLJFA, 2017 WL 11505574, at *7 (E.D. Va. Aug. 25, 2017); Count 12 (UCL), *Munifi v. Abraham*, No. 8:21-cv-01143, 2022 WL 1422813, at *3 (C.D. Cal. Apr. 19, 2022); Count 13 (CA securities fraud), *Zakinov v. Ripple Labs, Inc.*, No. 18-CV-06753-PJH, 2020 WL 922815, at *18 (N.D. Cal. Feb. 26, 2020); Count 14 (UTPCPL), *Dolan v. PHL Variable Ins. Co.*, No. 3:15-cv-01987, 2017 WL 4812308, at *4 (M.D. Pa. Oct. 25, 2017); Count 15 (PA securities fraud), *Fox Int'l Rels. v. Fiserv Sec., Inc.*, 490 F. Supp. 2d 590, 614 (E.D. Pa. 2007), order corrected (May 7, 2007); Count 16 (TN Consumer Protection Act), *Harding v. BMW of N. Am., LLC*, No. 3:20-CV-00061, 2020 WL 5039439, at *2 (M.D. Tenn. Aug. 26, 2020); Count 17 (TN securities fraud), *In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*, No. 2:09-2009 SMH, 2014 WL 10399651, at *3 (W.D. Tenn. Sept. 25, 2014); Count 18 (OK Consumer Protection Act), *Lee v. Enter. Fin. Grp.*, No. CIV-08-1221, 2009 WL 1362605, at *3 (W.D. Okla. May 14, 2009); Count 19 (OK securities fraud), *MidFirst Bank v. Keefe, Bruyette & Woods, Inc.*, No. CIV-07-1384-R, 2008 WL 11338074, at *1 (W.D. Okla. Oct. 6, 2008).

Defendants that was rendered misleading by the alleged omissions ((i) and (ii)).  This vague and conclusory[35] pleading, which does not even identify the allegedly deceptive statements at issue, cannot satisfy the heightened pleading standard of Rule 9(b).  *See, e.g.*, *Am. Dental Ass'n*, 605 F.3d at 1291-92  (finding plaintiffs did not satisfy Rule 9(b) pleading standard where they could not point to a single specific misrepresentation by Defendants regarding how Plaintiffs would be compensated); *State Farm*, 278 F. Supp. 3d at 1328 (dismissing FDUTPA claim against defendants where "all references to the Individual Defendants are conclusory").

Critically, Plaintiffs also fail to identify which specific statements from Defendants they were exposed to and the manner in which they were misled by such statements.  *See* Compl. at ¶¶ 7-18 (claiming to have been "exposed to some or all of Cuban's" statements); *Am. Dental Ass'n*, 605 F.3d at 1292 (dismissing fraud claims where plaintiffs failed to "allege the manner in which they were misled by the documents").[36]  While the Complaint does detail some Plaintiffs' purported reasons for becoming a Voyager customer, Plaintiffs simply claim hearing, at some unspecified time, that Mr. Cuban was an investor in, or that the Mavericks were doing business with, Voyager, or that they heard about the alleged "free Bitcoin/Dallas Mavericks deal," but do not allege if they became Voyager customers prior to that time or even participated in the limited $100 reward program.  *See* Compl. at ¶¶ 68-71.  It is factually accurate, and Plaintiffs do not allege otherwise, that Mr. Cuban was a customer of Voyager and that the Mavericks offered, for a limited 48-hour period, $100 worth of "free Bitcoin," so these statements cannot serve as the basis of a fraud-based claim. In sum, Plaintiffs have failed to plead any of the facts necessary to satisfy Rule 9(b)'s heightened pleading standard for the Fraud Claims.  The Fraud Claims, accordingly, should also be dismissed with prejudice and without leave to replead on this basis as well.

---

[35] To plead Voyager's purported fraud, Plaintiffs rely on the opinions and analyses of purported "experts" that have not been qualified as such by this Court, and do not appear to be either attorneys or true securities experts.  These "expert" opinions should not be given any weight on a motion to dismiss nor considered in evaluating whether Plaintiffs have satisfied Rule 9(b)'s pleading standard, because they are not factual allegations.  *See Iqbal*, 556 U.S. at 678; *Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-60670-CIV, 2012 WL 760791, at *3-4 (S.D. Fla. Mar. 8, 2012).

[36] The only specific statement by Mr. Cuban allegedly "seen," was allegedly seen by a Class Member, not a named Plaintiff.  *See* Compl. at ¶ 71.  But, as set forth in n.9, *supra*, allegations pertaining to an absent class member are irrelevant and, in any event, this Class Member completely misstates what Mr. Cuban actually said.  *Compare id.* at ¶ 71 *with id.* at ¶ 53.

### III.   Voyager is a Necessary Third Party Under Rule 19

This case, at its core, is all about the conduct of Voyager and Mr. Ehrlich.  Plaintiffs make no pretense about the central role of Voyager, even attaching a copy of the *Cassidy* complaint against Voyager as an exhibit to their Complaint, thereby making the allegations of the now-stayed Voyager action part of this action.  In the event, *arguendo*, the Court does not dismiss the Complaint on the numerous grounds set forth above, this case cannot proceed in the absence of the joinder of the Voyager debtors as necessary parties.  Because all claims against Voyager and Holdings are subject to the bankruptcy stay, this action, alternatively, should be dismissed under Rule 19 unless the stay is lifted, and Voyager can be joined as a necessary party.

In deciding a motion to dismiss under Rule 12(b)(7), courts first "decide whether an absent party is required in the case under Rule 19(a).  If the party is a required party, the court must order that the person be made a party." *Barbachano v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-22961-CIV, 2014 WL 29595, at *4 (S.D. Fla. Jan. 3, 2014) (internal quotation marks and citations omitted).  If a required party cannot be joined, "the court must consider if, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19 provides that "[a] person . . . must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).  The Eleventh Circuit has held that "complete relief" cannot be provided under Rule 19(a)(1)(A) if either (i) plaintiff alleges that the unnamed defendant is "an active participant in the allegations made in the complaint that are critical to the disposition of important issues of the litigation;" or (ii) plaintiff's allegations "necessarily require that a court evaluate [the unnamed party's] conduct in relation to [plaintiff]." *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 847-48 (11th Cir. 1999) (holding non-party was an "active participant in the allegations," where plaintiff alleged that the non-party "conspired with" defendant in engaging in the allegedly wrongful conduct); *see also Mello v. Walled Lake Credit Bureau, LLC*, No. 13-14226-CIV, 2013 WL 12077491, at *5 (S.D. Fla. Oct. 17, 2013) (requiring joinder where plaintiff failed to join her husband and co-obligor in a Fair Debt Collection Practices Act claim against defendant credit bureau, as plaintiff's husband "could 'emerge as an active participant' in the allegations" against defendant) (quoting *Laker Airways, Inc.*, 182 F.3d at 848)).

Plaintiffs' failure to include the Voyager debtors violates Rule 19, because (i) Voyager is an active, central participant in the conduct alleged in the Complaint and (ii) assessing

Defendants' potential liability requires the Court to evaluate and determine whether the Voyager debtors' underlying conduct was unlawful. As the Complaint makes clear, the *Voyager debtors'* conduct, not that of the Defendants, is fundamental to and at the core of this litigation. Accepting Plaintiffs' allegations as true (solely for purposes of this motion): the *Voyager debtors'*, not Mr. Cuban, are the ones who violated state securities laws through the sale of allegedly unregistered securities (*see* Compl. at ¶¶ 102, 206, 221, 239, 253, 264, 286, 304 (claiming that Voyager sold unregistered securities)); *Voyager* created "[t]he Deceptive Voyager Platform . . . based upon false representations and other deceptive conduct" (*id.* ¶ 28); *Voyager*, offered "interest-bearing cryptocurrency accounts" (the EPAs) that Plaintiffs claim are unregistered securities (*id.* ¶¶ 30-31); and *Voyager* allegedly misrepresented that "offered trades that were '100% Commission-Free'" while *Voyager* "secretly charged exorbitant commissions on each trade" by maintaining an intentionally widespread on cryptocurrencies listed on its platform (*id.* ¶¶ 33, 35-36). This is unsurprising, as the Complaint alleges a course of conduct by Voyager for several years, beginning in February 2019, long prior to the October 2021 Press Conference (*id.* at ¶¶ 25-31); and, as noted *supra*, the Voyager debtors represented to the bankruptcy court that the 2022 crash in the cryptocurrency industry generally and the default on a large third-party loan in mid-2022 were the precipitating causes of Voyager's bankruptcy filing, events which occurred long after the October 2021 Press Conference and had no connection to the Defendants. Further, a comparison of the allegations in the Complaint and the amended class action complaint in the *Cassidy* Action confirms that Plaintiffs' claims against Defendants here are otherwise inextricably intertwined with allegations against Voyager.[37]

Plaintiffs urge the Court to hold Mr. Cuban liable only because of the Mavericks' loose affiliation with Voyager based on the October 2021 Press Conference. *See id.* ¶¶ 131, 195 (claiming that Mr. Cuban is liable as an "agent[] of Voyager"). While misplaced (Mr. Cuban at no time acted as an "agent" of Voyager), any such holding will necessarily require the Court to evaluate Voyager's conduct in relation to Plaintiffs. Mr. Cuban's alleged liability is entirely contingent on a holding that *Voyager* sold unregistered securities or that *Voyager* engaged in

---

[37] The Complaint and the *Cassidy* amended class action complaint share many of the same allegations concerning Voyager's alleged conduct. *Compare, e.g.*, Compl. at ¶¶ 32-33 *with* ECF 34-1, *Cassidy* Action Amended Class Action Complaint at ¶¶ 69-70 (describing Voyager's platform); *and* Compl. at ¶¶ 38-39 *with Cassidy* Action Amended Class Action Complaint at ¶¶ 78-79 (describing Voyager's order routing system); *see also* Compl at ¶ 43 (referencing so-called "expert" reports attached to the *Cassidy* amended class action complaint).

deceptive practices; and Plaintiffs' declaratory relief relates almost solely to Voyager's conduct, thereby directly implicating Voyager's interests. *See* Compl. at ¶ 114; Section II(C), *surpa*. Because Plaintiffs' claims "necessarily require" the Court to evaluate Voyager's conduct and, thus, implicate Voyager's interests, this action cannot proceed without Voyager's joinder. *See Laker Airways, Inc.,* 182 F.3d at 848. Since the Voyager debtors are required parties, Plaintiffs must name them as defendants. If Plaintiffs cannot do so due to the bankruptcy stay, then "equity and good conscience" requires dismissal of the case under Rule 19(b). *In re Rensin*, 600 B.R. 870, 888 (Bankr. S.D. Fla. 2019) (quoting Fed. R. Civ. P. 19(b)).[38] Accordingly, if Plaintiffs cannot name the Voyager debtors as defendants, the Court should dismiss the Complaint.

## CONCLUSION

Defendants respectfully request that Plaintiffs' Complaint be dismissed for lack of personal jurisdiction over Defendants. Alternatively, the (i) Complaint should be dismissed, with prejudice and without leave to replead, for failure to adequately plead any claim pursuant to Rule 12(b)(6) and/or Rule 9(b), or (ii) dismissed pursuant to Rule 12(b)(7) for failure to join necessary parties under Rule 19.

---

[38] In addition to "pragmatic considerations," courts consider whether "a judgment rendered in the person's absence might prejudice that person or the existing parties" and whether the plaintiff "would have an adequate remedy if the action were dismissed for non-joinder." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011). *In re Rensin* is instructive: the Court dismissed claims pursuant to Rule 19(b), holding that the bankruptcy trustee was a necessary third party in an action seeking a declaratory judgment concerning the trustee's contractual rights, reasoning that it could not bind the third party and there was "no way to tailor the relief to make this Court's ruling binding." 600 B.R. at 888. Likewise, Plaintiffs seek relief as to whether Voyager sold securities in violation of state securities and consumer fraud statutes. Further weighing in favor of dismissal is the fact that Plaintiffs "would have an adequate remedy if the action were dismissed for non-joinder," as they can continue litigation against Voyager once the stay is lifted in Voyager's bankruptcy action. *See Molinos Valle*, 633 F.3d at 1344.

Respectfully submitted this 18 Day of November 2022,


/s/ Christopher E. Knight
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:   (305) 789-9201

*-and-*

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email:  sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email:  rwolkinson@brownrudnick.com

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
Telephone (202) 536-1755

*-and-*

31

SIGMUND WISSNER-GROSS, ESQ.
*Pro Hac Vice*
Email:  swissner-gross@brownrudnick.com

JESSICA N. MEYERS, ESQ.
*Pro Hac Vice*
Email:  jmeyers@brownrudnick.com

BROWN RUDNICK LLP
Seven Times Square
New York, NY  11036
Telephone:  (212) 209-4930


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18, 2022, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

## SERVICE LIST

Adam M. Moskowitz, Esq.
Joseph M. Kaye, Esq.
Barbara C. Lewis, Esq.
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, Florida 33134
E-mail: adam@moskowitz-law.com
Email: joseph@moskowitz-law.com
Email: barbara@moskowitz-law.com

*Counsel for Plaintiffs and the Proposed
Classes*

**VIA CM/ECF**

David Boies, Esq.
*Pro Hac Vice*
Boies Schiller Flexner LLP
333 Main Street
Armonk, NY  10504
Email:  dboies@bsfllp.com

*Co-Counsel for Plaintiffs and the Proposed
Classes*

**VIA CM/ECF**

Stephen Neal Zack, Esq.
szack@bsfllp.com
Ursula Ungaro, Esq.
uungaro@bsfllp.com
Boies Schiller Flexner LLP
100 S.E. 2nd St., Suite 2800
Miami, FL 33131

*Co-Counsel for Plaintiffs and the Proposed
Classes*

**VIA CM/ECF**