**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 22-CV-22538-ALTMAN/REID**

Pierce Robertson, et al., on behalf of themselves and
all others similarly situated,

     Plaintiffs,       **CLASS ACTION COMPLAINT**

v.                 **JURY DEMAND**

Mark Cuban, Dallas Basketball Limited, d/b/a
Dallas Mavericks,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR BRIEF EXTENSION OF TIME AND PAGE LIMITS TO**
**RESPOND TO DEFENDANTS' MOTION TO DISMISS [ECF NO. 41]**
**INTRODUCTION**

  Plaintiffs respectfully move the Court for an order: (1) granting a brief 30-day extension to respond to Defendants' extensive Motion to Dismiss [ECF No. 41], (2) requiring Defendants (who submitted two Sworn Declarations) to make those 2 employed declarants available for deposition (on any mutually convenient date within the next 25 days), so Plaintiff will have five days to review those materials and prepare their Opposition, and (3) a brief concomitant 10-page extension for the Opposition, which the Court previously granted to Defendants in drafting their extensive Motion. Defendants have stated that they will not make either of their declarants available for deposition.

  Plaintiffs filed this action on August 10, 2022, and the case was stayed by the Voyager bankruptcy for a few months. Defendants were finally required to file their 30-page Motion to Dismiss, [ECF No. 41], over 3 months later, on November 18, the Friday before Thanksgiving. Defendants decided they needed to submit two Sworn Declarations of: (a) Matt Wojciechowski, the Chief Financial Officer for the Dallas Mavericks, and (b) Defendant Mark Cuban, the Governor of the Mavericks, arguing that this Court does not have any personal jurisdiction over them, (but which *include some very questionable "factual" statements made under penalty of perjury,* that certainly require further questioning, as explained below). Plaintiffs respectfully request an Order, requiring Defendants to make both declarants available for deposition, anytime in the next 25 days.

1

## FACTUAL BACKGROUND

This Court already dealt with the issue of personal jurisdiction over Voyager's parent company, when they raised such an issue for dismissal, in the original pending Voyager litigation with Chief Judge Altonaga. *Cassidy v. Voyager Digital LTD, et al.,* No. 1:21-cv-24441-CMA, ECF No. 36 (S.D. Fla. March 3, 2022) (Altonaga, C.J.). In that case, it cannot be disputed that Voyager's protestations of "no connection" to South Florida proved to be false and baseless. Voyager's own compelled materials confirmed Voyager made over $28 million in sales in the State of Florida alone. Mr. Cuban has stated publicly that this litigation has no merit and that he should not be sued, that is certainly his right. However, it appears that Mr. Cuban is following down this same disingenuous path, and the Court will certainly need to decide (after all the discovery is revealed) if his declarations under penalty of perjury before this Court are, in fact, simply false statements made to quickly get out of this litigation, without producing any discovery. These are not allegations that Undersigned Counsel take lightly.

## LEGAL STANDARDS

To establish personal jurisdiction over a nonresident defendant, a plaintiff "initially need only allege sufficient facts to make out a prima facie case of jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citation omitted). Courts must accept the facts alleged as true, to the extent they are undisputed. *See id.* at 1214–15. A genuine dispute of material jurisdictional fact warrants jurisdictional discovery. *See Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd,* 722 F. App'x 870, 878 (11th Cir. 2018).

As Chief Judge Altonaga found, it is well established that the Eleventh Circuit recognizes the right to conduct limited jurisdictional discovery. *See, e.g. Eaton v. Dorchester Develop., Inc.*, 692 F.2d 727 (11th Cir. 1982) (holding that it was premature to dismiss a claim for lack of jurisdiction where plaintiffs not given opportunity through discovery to support a determination on jurisdiction); *Blanco v. Carigulf Lines*, 632 F.2d 656, 657–58 (5th Cir. 1980) (plaintiff entitled "to elicit material through discovery before [plaintiff's] claim [could] be dismissed for lack of jurisdiction" where defendant challenged plaintiff's jurisdictional allegations through an affidavit, explaining that "plaintiff was not required to depend exclusively upon defendant's affidavit for answers to that question."). While the right to jurisdictional discovery is "qualified," the only qualification is that the question of the court's jurisdiction is genuinely in dispute. *Eaton*, 692 F.2d at 729, n. 7. Once the Court is satisfied that jurisdictional facts are in dispute, the Court "does not have discretion to grant or deny" the request, rather "the element of discretion, if any, exists not with respect to whether there will be jurisdictional discovery, but rather only with respect to the form that the discovery will take." *Id.*

Although Defendants Mr. Cuban and the Mavericks dispute that this Court has any personal jurisdiction over them for these claims against them, the allegations in the Amended Complaint *and*

Defendants' Motion to Dismiss both include statements made directly by Mark Cuban that make clear that Defendants' business activities in connection with the promotion, offer, and sale of the unregistered securities at issue in this lawsuit extended well beyond the borders of the State of Texas, across the country, including all throughout the State of Florida.[1] There can simply be no dispute (nor any other logical conclusion), but that Mr. Cuban and his Mavericks expressly intended for all of their Voyager promotional and marketing internet and social media materials, to reach residents here in Florida. *See, e.g.,* ECF No. 41-1 at 5:11–16 (Mark Cuban stating "And, of course, . . . the Mavs being a leader I think we are going to extend this far deeper than just Mavs fans, I think Voyager is going to be a leader amongst sports fans and crypto fans ***around the country.***") (emphasis added).

## PROCEDURAL BACKGROUND

Chief Judge Cecilia Altonaga of this Court, in the pending original Voyager litigation, held that many courts "have concluded that similar evidence of business activity within a jurisdiction is sufficient to satisfy a plaintiff's initial burden of alleging personal jurisdiction." *Cassidy v. Voyager Digital LTD, et al.,* No. 1:21-cv-24441-CMA, ECF No. 36 at 3 (S.D. Fla. March 3, 2022) (Altonaga, C.J.) (*citing Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 628, 632 (11th Cir. 1996) (affirming finding of personal jurisdiction over nonresident defendant where her "sporadic" business activities occurred in Florida); *Kinney v. Mindsize, LLC,* No. 20-62094-Civ, 2021 WL 3911859, at *4–5 (S.D. Fla. June 7, 2021) (concluding that unrebutted allegations of business activity in a state "establish at least a prima facie basis for exercising personal jurisdiction" (italics omitted))). Chief Judge Altonaga similarly ordered

---

[1] *See*, e.g., ECF No. 41-1 at 5:11–16 (Mark Cuban stating "And, of course, . . . the Mavs being a leader I think we are going to extend this far deeper than just Mavs fans, I think Voyager is going to be a leader amongst sports fans and crypto fans around the country."); Am. Compl., ¶ 49 (same); *see also id.*, ¶ 57 ("Cuban stated that '[w]e believe our partnership with Voyager will allow Mavs and NBA fans to learn more about Voyager and how they can earn more from Voyagers' platform than from traditional financial applications.'"); *id.*, ¶ 22 ("This Court has personal jurisdiction against Defendants because they conduct business in Florida, and/or have otherwise intentionally availed themselves of the Florida consumer market through the promotion, marketing, and sale of Voyager's EPAs in Florida, which constitutes committing a tortious act within the state of Florida. Defendants have also marketed and participated and/or assisted in the sale of Voyager's unregistered securities to consumers in Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice."); *id.*, ¶¶ 7–9 (Florida-resident Plaintiffs who purchased EPAs after being exposed to some or all of Defendants' misrepresentations and omissions regarding the EPAs and Deceptive Voyager Platform); *id.*, ¶ 56 ("As an incentive, Defendants Cuban and the Mavericks even ran a [nationwide] promotion shortly after the press conference where individuals who downloaded the Voyager app to invest during a certain time would receive **$100 in Bitcoin.**") (citing https://markets.businessinsider.com/news/currencies/mark-cuban-dallas-mavericks-freebitcoin-100-voyager-digital-app-2021-10 (accessed December 1, 2022)) (emphasis and alteration added).

3

Voyager to immediately make available for deposition those declarants who provided declarations in support of their Motion to Dismiss for lack of jurisdiction.

It is axiomatic that where Defendants attempt to introduce sworn declarations in support of arguments that the Court lacks jurisdiction to hear Plaintiffs' claims, courts "have the power to order the discovery of facts necessary to determine their jurisdiction over the merits[,]" Aviation One of Fla., 722 F. App'x at 878. It is obvious that where Defendants specifically rely on testimony in support of their motion to dismiss this action, that it is appropriate to require them to make those declarants available for deposition. To be sure, courts frequently recognize that a plaintiff would be prejudiced without an opportunity to conduct jurisdictional discovery, and that a plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of a jurisdictional issue. Blanco, 632 F.2d at 658. "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996), abrogated on other grounds by Samantar v. Yousuf, 560 U.S. 305 (2010); Bracewell v. Nicholson Air Serv., Inc., 748 F.2d 1499 (11th Cir. 1984) (dismissal without jurisdictional discovery is improper if allegations of complaint literally satisfy the requirements of the Long Arm Statute because "[i]nformation as to defendant's contacts with the State of Georgia or lack of them is necessarily more within the defendant's knowledge than the plaintiff's") (citation omitted).[2]

Allowing Plaintiff to seek limited jurisdictional discovery will also assist the Court in making an informed and reasoned ruling based upon all the evidence. As noted recently by the Honorable Kenneth Marra in Sierra Equity Group, Inc., v. White Oak Equity Partners, LLC., No. 08–80017–CIV, 2008 WL 1771857, *2 (S.D. Fla. April 15, 2008), "jurisdictional discovery will be useful to determine the actual extent of Defendants' contacts with Florida to determine whether this case can be resolved on its merits. Without factual discovery, the Court would be left to conjecture whether it could exercise jurisdiction over Defendants." This is particularly important where, as explained above, Defendants' arguments in their motion to dismiss for lack of personal jurisdiction contradict their own public acts and statements made before this lawsuit was filed.

---

[2] Defendants' sole cited authority in opposition to Plaintiffs' request to depose Mr. Cuban and Mr. Wojciechowski relies entirely upon an inapposite opinion by Magistrate Judge Reinhart where he denied a motion to stay briefing on a motion to dismiss where plaintiffs completely failed to allege any facts regarding forum-related conduct or minimum contacts with Florida, nor did the complaint even reference Florida's long arm statute. Eran Fin. Servs., LLC, v. Eran Indus. Ltd., No. 21-cv-81386-BER, ECF No. 69 (Nov. 4, 2022). In that same order, Magistrate Judge Reinhart invited plaintiffs to instead move for leave to file an amended complaint to cure those pleading deficiencies, which they then did. Those pleading deficiencies are absent from Plaintiffs' amended complaint.

## THE TROUBLING ALLEGED "FACTS' WHICH NEED TO BE TESTED

We cannot forget that Voyager claimed in the *Cassidy* Action that they had "no connection" to the state of Florida and thus they should be dismissed from this case. After the Court finally granted Plaintiffs' Motion to Compel, the evidence was clear that such statements were inaccurate. The Sworn Statements made by Defendant Mr. Cuban in this case, appear to have the same problems, but in this case, they may be more serious. Mr. Cuban states the following under penalty of perjury to this Court (to support dismissal of this case):

### Defendant Cuban's "Sworn Statements" About All of his Activities in Florida

**At no time have any of the foregoing visits to Florida had any connection to Voyager. Indeed, at no time have I done anything with or in connection with Voyager while in Florida. Nor to the best of my knowledge, have I ever made any statements in Florida about Voyager or Voyager's business.**

November 15, 2022, Cuban Sworn Declaration at para. 8, [D.E. 41-2].

The Amended Complaint goes into great detail describing and explaining many events of "BITCOIN MIAMI 2022," one of the largest bitcoin international conferences in the world, and that had Voyager as one of its main sponsors. Mr. Cuban may not have attended that event.

However, what Mr. Cuban fails to mention is that he was the Keynote and Main Speaker, along with Miami-Dade Mayor Suarez, at the (much larger) North American Bitcoin Conference that was held right here in Miami, from January 17–19, 2022. Mr. Cuban goes into great detail explaining his very little (if any) connection to South Florida (maybe one Mavericks/Heat game), but somehow, he forgot to disclose that he was the Keynote Speaker at the World's Largest International Crypto Convention, mere months after signing the long-term deal between the Mavericks and Voyager to be official Partners in activities across the country.[3] Moreover, *Stephen Ehrlich was a speaker at that same event*. *See* https://www.btcmiami.com/agenda   (accessed December 1, 2022).

---

[3] Plaintiffs are now interviewing many people and witnesses about their interaction with Mr. Cuban here in Miami and at the International Event and his specific promotion of cryptocurrency. Moreover, Plaintiffs have set the deposition of a few third-party individuals, who may have specific information as to Mr. Cuban's actions in Miami and his full connections and contact with Voyager, so that the Court can better understand these sworn statements.



**January 17–19, 2020**



*Watch Mark Cuban* open the Miami Bitcoin International Conference: https://bonomotion.com/project/mark-cuban-bitcoin-conference; See Mark Cuban also speak extensively at the Miami Bitcoin Conference: https://youtu.be/vjwBfVRQPt4



https://www.globenewswire.com/news-release/2021/11/26/2341556/0/en/Billionaire-Investor-Mark-Cuban-to-Share-Stage-at-BTC-Miami-With-Mayor-Francis-X-Suarez-to-Kick-Off-Blockchain-Week.html (accessed December 1, 2022), https://youtu.be/4HqANt-6qe4?t=447 (accessed December 1, 2022). Cuban has also made other statements over the internet, broadcast nationwide, regarding Voyager: https://youtu.be/Kf6k1bLqruo?t=1580 (accessed December 1, 2022).

### Defendant Cuban's Sworn Statement on his Contacts with Voyager

**. . . . I met Steve Ehrlich of Voyager for the first time, in Dallas, when there was a short press conference, announcing that Voyager had become a sponsor for the Mavericks. I may have briefly met Mr. Ehrlich on one other occasion, in Dallas, when the Mavericks held an annual charity event for a foundation run by the Mavericks which was attended by a number of people.**

*See* November 15, 2022, Cuban Sworn Declaration at para. 5, [D.E. 41-2].

However, as page one of the Amended Complaint begins, Mark Cuban also previously said (when he was not yet facing this lawsuit):

I … am a [Voyager and Steve Ehrlich] customer and *I've been a customer for several months now* I like to use it, it's easy, it's cheap, it's fast, and the pricing is actually really good, so we find it as a perfect fit for our Mavs fans and reaching Mavs fans of all ages… it's as close to risk free as you're going to get … just the ability to make that much more on your savings as an individual and as a business is a huge opportunity.

– Defendant Mark Cuban (Governor, Dallas Mavericks)

[ECF No. 34], at p. 1 and ¶ 49 (emphasis added).



Similarly, the Amended Complaint includes statements made by Stephen Ehrlich that call into question Cuban's claims that he does not know Ehrlich, including that

> Mark is a tremendous advisor to me and we have a great relationship. He is a big believer in crypto. Sometimes the value someone brings is not what the public sees but where they give you guidance and help behind the scenes.

Am. Compl., ¶ 62.

Given that Plaintiffs' allegations certainly "literally satisfy" the requirements for pleading personal jurisdiction over Defendants, *Bracewell,* 748 F.2d 1499, and further given that all of these varying conflicting statements and facts raise a "A genuine dispute of material jurisdictional fact," *Aviation One of Fla., Inc.,* 722 F. App'x at 878, jurisdictional discovery is warranted, and Plaintiffs respectfully submit the Court should allow them a sufficient extension of time on briefing their Opposition to Defendants' Motion to Dismiss so that they may take the discovery necessary to resolve those issues.

## CONCLUSION

Plaintiffs respectfully request an order giving Plaintiffs a sufficient extension of time (30 days) to respond to Defendants' Motion to Dismiss the Amended Complaint (with the holidays), so that Plaintiffs can prepare a proper Opposition, and depose these 2 declarants to fully explore these crucial issues before briefing them. Plaintiffs respectfully submit a 30-day extension of time should be sufficient for Defendants to make these 2 declarants available for deposition and give time for Plaintiff to prepare and file a proper Response. However, given that the next thirty (30) days include the end of the year and the holidays (bringing the response deadline to January 2, 2023), should these two declarants be unavailable for deposition within this 30-day period, Plaintiffs are certainly amenable (if accepted by the Court) to setting the depositions by January 15, should the Court grant Plaintiffs an appropriate extension to prepare and file their brief in order to do so (until January 20). That will also

allow the parties time to resolve any and all objections that are raised next week by Defendants to the already outstanding, narrow discovery.

Plaintiffs respectfully request the Court enter an Order granting Plaintiffs a brief 30-day extension of time (or 43 days, if Defendants need more time to make their declarants available for deposition) to respond to Defendants' Motion to Dismiss the Amended Complaint, [ECF No. 41]. That procedure is certainly not going to slow down this expeditious process, but will allow the necessary and required discovery, so this important issue can be properly decided and: (1) allow the parties to expeditiously resolve any and all of Defendants' objections to Plaintiffs' outstanding discovery, (2) allow Plaintiffs to take the handful of third party depositions currently scheduled or being scheduled, including that of former longtime Dallas Mavericks general manager Donnie Nelson, (3) allow Plaintiffs to begin organizing dates for Defendants for their depositions, which Defendants recently unilaterally set, and (4) allow Plaintiffs to start the process of gathering any responsive materials Defendants have requested.

## **S.D. FLA. L.R. 7.1 CERTIFICATION**

Counsel for the Movants has made reasonable efforts to confer with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve it, and report that **Defendants do not agree to make either deponent available for deposition.**

Dated: December 1, 2022                          Respectfully submitted,

By: */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
Barbara C. Lewis
barbara@moskowitz-law.com
Florida Bar No. 118114
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

By: */s/ David Boies*
David Boies
(Admitted *Pro Hac Vice*)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504

Phone: (914) 749–8200
dboies@bsfllp.com

By: */s/ Stephen Neal Zack*
Stephen Neal Zack
Florida Bar No. 145215
Hon. Ursula Ungaro (Ret.)
Florida Bar No. 200883
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., Suite 2800
Miami, FL 33131
Office: 305-539-8400
szack@bsfllp.com
uungaro@bsfllp.com

*Co-Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed on December 1, 2022, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*
ADAM M. MOSKOWITZ
Florida Bar No. 984280