# Exhibit D

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                      CASE NO. 22-CV-22538-RKA
 3
     PIERCE ROBERTSON, et al.,
 4                                        Miami, Florida
                     Plaintiff(s),
 5                                        January 6, 2023
             vs.
 6
     MARK CUBAN, et al.,
 7
                     Defendant(s).       Pages 1 - 105
 8   ----------------------------------------------------------
 9                        DISCOVERY HEARING
              TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10             BEFORE THE HONORABLE LISETTE M. REID
                  UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12

13

14   FOR THE PLAINTIFF(S):  ADAM MOSKOWITZ, ESQ.
                            JOSEPH M. KAYE, ESQ.
15                          HOWARD M. BUSHMAN, ESQ.
                            THE MOSKOWITZ LAW FIRM, PLLC
16                          2 Alhambra Plaza
                            Coral Gables, FL 33134
17                          (305) 740-1423
                            adam@moskowitz-law.com
18                          joseph@moskowitz-law.com
                            howard@moskowitz-law.com
19

20

21

22

23

24

25
```

```
 1    APPEARANCES (CONT'D)

 2

 3    FOR THE PLAINTIFF(S):   DAVID BOIES, ESQ.
                              TYLER ULRICH, ESQ.
 4                            ALEXANDER BOIES, ESQ.
                              BOIES SCHILLER & FLEXNER
 5                            333 Main Street
                              Armonk, NY 10504
 6                            (914) 749-8200
                              dboies@bsfllp.com
 7                            tulrich@bsfllp.com
                              aboies@bsfllp.com
 8

 9                            STEPHEN N. ZACK, ESQ.
                              BOIES SCHILLER & FLEXNER
10                            100 SE 2nd Street
                              Miami, FL 33131
11                            (305) 539-8400
                              szack@bsfllp.com
12

13

      FOR THE DEFENDANT(S):   STEPHEN A. BEST, ESQ.
14                            RACHEL O. WOLKINSON, ESQ.
                              BROWN RUDNICK, LLP
15                            601 Thirteenth Street NW
                              Washington, DC 20005
16                            (202) 536-1737
                              sbest@brownrudnick.com
17                            rwolkinson@brownrudnick.com

18

19                            SIGMUND WISSNER-GROSS, ESQ.
                              JESSICA N. MEYERS, ESQ.
20                            BROWN RUDNICK, LLP
                              Seven Times Square
21                            New York, NY 11036
                              (212) 209-4930
22                            swissner-gross@brownrudnick.com
                              jmeyers@brownrudnick.com
23

24

25
```

```
1    APPEARANCES (CONT'D)

2

3    FOR THE DEFENDANT(S):   ALEXANDRA LYN TIFFORD, ESQ.
                             CHRISTOPHER E. KNIGHT, ESQ.
4                            ESTHER GALICIA, ESQ.
                             FOWLER WHITE BURNETT
5                            1395 Brickell Avenue
                             Miami, FL 33131
6                            (305) 728-7539
                             atifford@fowler-white.com
7                            cknight@fowler-white.com
                             egalicia@fowler-white.com
8

9

10   TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                             Court Reporter
11                           jemancari@gmail.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    Thereupon,

 2    the following proceedings were held via Zoom videoconference:

 3              THE COURT:  Good morning.  So we are here to discuss

 4    some discovery matters in case No. 22 22538.

 5              I would like appearances from counsel.  Let's start

 6    with the plaintiffs.

 7              MR. MOSKOWITZ:  Good morning, your Honor.  Thank you

 8    again for giving us this time.  This is Adam Moskowitz, from

 9    the Moskowitz Law Firm, and with me I have my partners Joey

10    Kaye and Howard Bushman.

11              THE COURT:  OK.  Very good.

12              MR. BOIES:  Good morning, your Honor.  This is David

13    Boies, of Boies Schiller Flexner, also representing the

14    plaintiffs, and with me today I have my colleagues Steve Zack,

15    Tyler Ulrich, and Alexander Boies.

16              THE COURT:  Very good.

17              MR. BOIES:  I think those are the only people on.

18    Mr. Zack had people and he will identify them.

19              THE COURT:  OK.  Very good.

20              The defendants.

21              MR. BEST:  Good morning, your Honor.  Christopher

22    Knight, from Fowler White Burnett, and from Fowler White I also

23    have Ally Tifford and Esther Galicia.

24              The Brown Rudnick firm is also on the line.  Sig

25    Wissner-Gross, who will be handling here, of course will
```

```
 1    introduce his team.

 2              MR. WISSNER-GROSS:  Good morning, your Honor.  Happy

 3    New Year.  Joining me are Rachel Wolkinson and Steve Best, who

 4    will be participating as well.

 5              THE COURT:  OK.  I am going to switch from full view

 6    to speaker view.  Since there are so many people on the screen,

 7    it will make it a lot easier.

 8              All right.  So, Mr. Moskowitz, we will start with

 9    looking at the issues that you are concerned about and we will

10    do our best to get through all of these issues today.  I think

11    some of them are overlapping between the plaintiffs and

12    defendants.

13              MR. MOSKOWITZ:  I think they are, your Honor, and

14    thank you so much and thank you to our excellent opposing

15    counsel.  It's been wonderful dealing with them almost on a

16    daily basis.  They have all been very cooperative.

17              I think we have three issues mainly to focus on, and

18    we need a little help from your Honor just to move these things

19    along.  I have got about just five minutes.  I will go through

20    them all, and then Mr. Boies will have just one or two minutes,

21    and then we will turn it over to our fine esteemed defense

22    counsel.

23              Joey, why don't you help me with putting up the

24    slides.  I think we have like five today that I made.  They are

25    not professionally done, your Honor, so excuse me for my
```

1    creativity.

2          So let's take it from where we left off.  We left your

3    Honor at December 20th, if you remember, and at the end of the

4    hearing we said that we worked together on an extension of time

5    because we needed to do a little bit more discovery and we were

6    going to possibly add a couple of plaintiffs from Florida,

7    which is their right.

8          After the hearing the defendants changed their mind

9    and they didn't want us to do a joint motion because they said

10   some of the discovery should not be extended, some of their

11   arguments, which they have every right to raise.  So we filed

12   our own expedited motion for an extension of time until

13   February 24th.  So that's now the set date.

14         We can amend our complaint, and we are going to

15   certainly ask for leave to possibly add a couple of Florida

16   plaintiffs and make a couple of other corrections to the

17   complaint, and we made the arguments to Judge Altman that --

18   again, this is a simple case -- if these are unregistered

19   securities, if every single one of the Voyager interest

20   accounts is unregistered and Mr. Cuban did any promotion,

21   that's all that plaintiffs need to prove.  There is no

22   reliance.  It is a strict liability standard.  And we state in

23   our motion, they are still attacking plaintiffs that they

24   didn't use the phone or see this.  That's not necessary.

25         As we said, after discovery is done and the motion to

1    dismiss is ruled on, we are going to move for certification,

2    which we have already done.  We did it early in the case.  He

3    said do it after the motion to dismiss.  And we are going to

4    move for summary judgment, because that is all -- really the

5    heart of this case is are these unregistered securities and did

6    Mr. Cuban promote them.  Because if he did, the law is strict

7    liability.

8          So Judge Altman granted it.  He said there is no

9    separating of the discovery.  We are going to let the

10   plaintiffs have all of the time until February 24th.

11         Joey.

12         So what's important is your Honor ruled on three

13   issues, at least for us.  We can get the plaintiffs' documents

14   in discovery.  First your Honor ruled that we are to get all

15   jurisdictional discovery by January 3rd.  We really haven't

16   gotten any, and we are going to explain to you why we really

17   have gotten none.

18         This isn't our first rodeo.  We spent seven months

19   against Voyager doing jurisdictional discovery as well, and

20   they produced none.  Then we were able to find out that Florida

21   was one of the largest states for Voyager.  Maybe $40 million

22   were in profits.  So we understand that, and we will go through

23   that.

24         Second, we asked for just two depositions, and this is

25   months ago.  They identified four people that had personal

1    knowledge of the Voyager/Mavericks agreement, four that worked

2    for the Mavericks.  Two they said were lawyers and two were not

3    lawyers.

4         So Mr. Mackey and Mr. Tapply are the marketing

5    directors and they are in communications, and we asked for

6    their depositions.  They have not given us any dates.  And we

7    will show your Honor said you could take them in January, and

8    we said again, very reasonably, any time, anyplace, just let us

9    know.  They said they are not available.

10        Then finally we asked for a date for Mr. Cuban's

11   deposition, and they said we are going to give you one, but you

12   are going to limit your deposition of him to just jurisdiction.

13   We said why.  We had a discussion about this with your Honor.

14   Judge Altman denied the motion to stay.  We are staggering the

15   jurisdiction and the merits discovery like you wanted.  You

16   asked us to wait.  We said don't take the Mavericks' officials

17   that are attorneys, so we will wait for them too.  But what

18   grounds would it be to limit Mr. Cuban's deposition?  It is the

19   same time limits.

20        We have serious questions here about trading, insider

21   trading, how much did he receive.  These are all, as you will

22   see, going to be relevant for jurisdiction.

23        Mr. Cuban had his own Voyager account.  What is in it?

24   Is there $5?  Is there $500 million?  That's clearly relevant

25   for jurisdictional discovery because you have to say, do you

```
 1    have a financial interest in what you are doing.  So we need to
 2    find that.
 3            What happened yesterday, surprisingly, is in three
 4    weeks we have our first third-party deposition, and it is Mr.
 5    Ehrlich.  He was the CEO of Voyager.  Main guy.  So he was all
 6    set to be deposed and give us all his documents in three weeks.
 7            Mr. Cuban's counsel emails him and says, we want to
 8    let you know Judge Reid has bifurcated discovery, so you don't
 9    really have to give all your discovery, but you could just give
10    them the jurisdictional discovery.  We said, what are you
11    kidding?  Mr. Ehrlich was set five months ago for deposition;
12    he's got to produce his documents.
13            The problem is, I am sure he is going to produce a lot
14    of jurisdictional discovery that we didn't get from Mr. Cuban,
15    because we said to him, we want all documents regarding this
16    press conference.  So that is something separate.  He is not
17    going to appear today, the counsel for Mr. Ehrlich, but he may
18    object, he said, at some later date.  But what would be the
19    grounds to limit Mr. Cuban's deposition?  It is the same thing.
20            Joey, let's go to the second slide.
21            So I am not going to go through those video clips we
22    played with your Honor last week.  We played seven of them.
23            THE COURT:  We don't need to hear them again.  I
24    understand the issues.
25            MR. MOSKOWITZ:  We are not going to play them at all,
```

```
 1    but the reason they are important is because it is a major

 2    international press conference that was live on the internet --

 3             THE COURT:  No, I understand.

 4             MR. MOSKOWITZ:  -- that was planned -- I'm sorry?

 5             THE COURT:  I understand, and you did make that clear.

 6             MR. MOSKOWITZ:  Yes.

 7             THE COURT:  Let me go back to this.  There is a

 8    question as to bifurcated discovery.  Is that something the

 9    plaintiffs wanted?  Is there some reason to bifurcate

10    discovery?  Let's talk about that.

11             MR. MOSKOWITZ:  Thank you, your Honor.

12             MR. KNIGHT:  Your Honor, if we could have Mr. --

13             MR. MOSKOWITZ:  Not at all, your Honor --

14             MR. KNIGHT:  I would just --

15             MR. MOSKOWITZ:  -- for the plaintiffs.  We didn't want

16    to bifurcate anything.

17             THE COURT:  OK.

18             MR. MOSKOWITZ:  Judge Altman has decided, Judge Altman

19    said, I am not staying, I am not bifurcating discovery.

20             THE COURT:  OK.

21             MR. MOSKOWITZ:  What the defendants tried to say is

22    somehow your Honor at December 20th said there is a bifurcation

23    between jurisdiction and merits.  We agree that they had to

24    produce all their jurisdiction discovery by January 3rd and all

25    the others by January 13th.
```

```
 1              THE COURT:  Because there was a deadline that was
 2    looming, at least --
 3              MR. MOSKOWITZ:  Absolutely.
 4              THE COURT:  -- with respect to that.  OK.
 5              MR. MOSKOWITZ:  Right on point, your Honor.  But you
 6    said, if you could go to Judge Altman and you could get a
 7    little bit of time, then we don't really have to worry about
 8    these time limits.  And we did.  And Judge Altman entered an
 9    order saying, I understand that you are now getting all this
10    discovery.  You haven't yet taken Mr. Cuban's deposition after
11    five months.  Now they are going to give you a date until
12    February 24th, should give everybody time to get all of the
13    discovery because I am not staying any discovery.
14              THE COURT:  OK.
15              MR. MOSKOWITZ:  That is what Judge Altman said.
16              THE COURT:  Thank you, Mr. Moskowitz.
17              Let me see if I can turn to Mr. Knight or
18    Mr. Wissner-Gross and see if I can get a response on that
19    issue.
20              MR. WISSNER-GROSS:  Your Honor, thank you very much.
21    Actually, we have a little bit of a PowerPoint.  If we want to
22    do it issue by issue, we are happy to.
23              Maybe the best way, John, if you could take over and
24    we will address his point.
25              THE COURT:  I would like to do issue by issue.  It is
```

```
 1    a little easier for me, and that is an important issue.

 2              MR. WISSNER-GROSS:  John, if you could put up the

 3    slide dec.

 4              Just at a high level, your Honor, I think from our

 5    perspective we think that the main issue is that we do need to

 6    get jurisdictional discovery completed by mid-February.

 7              It is correct that at the December 20th conference

 8    your Honor did direct that Mr. Cuban's deposition, which has

 9    been set now for February 2nd, should focus on jurisdictional

10    discovery, and I guess I will have to fact check Mr. Moskowitz

11    as we go, but Judge Altman did not weigh in the way he

12    described it.  Judge Altman referred all discovery issues to

13    your Honor, and it is clearly within your Honor's purview to

14    decide how and in what order discovery should proceed.

15              THE COURT:  OK.

16              MR. WISSNER-GROSS:  With that context in mind, your

17    Honor, the defendants have been fully compliant with what we

18    were directed to.

19              So let's start with --

20              THE COURT:  Perhaps I should have made myself clear.

21    It may be my fault here, and I want to just jump in.

22              What we were talking about at the time was there was

23    an urgent deadline for the response to the motion to dismiss on

24    the jurisdictional issue, so I had some concern, because I

25    think at that time it wasn't possible to get all of the
```

1    discovery within the deadline that we needed.  Once you got the

2    extension, it seems to me to be more efficient to simply move

3    forward with your depositions and your discovery at this point.

4         MR. WISSNER-GROSS:  Let me address that, your Honor.

5         If we can get the slide back on.

6         Let's talk about -- John, are you able to take over?

7         A VOICE:  Yes.  One second.

8         MR. BEST:  Your Honor, while they are taking over --

9    this is Stephen Best -- also framed in that discussion at our

10   earlier hearing was the fact that we had concerns that the

11   plaintiffs, the Florida-based plaintiffs, had any standing in

12   this case.  So we can fact check again what Mr. Moskowitz has

13   said, but so far the evidence is clear there is no standing for

14   the Florida-based plaintiffs in this case, which is part and

15   parcel as to why we asked for jurisdictional discovery to go

16   first.

17        I am going to turn it back to Mr. Wissner-Gross.

18        MR. WISSNER-GROSS:  First fact check, your Honor,

19   Mr. Moskowitz just said there weren't documents produced by the

20   Mavs.  Well, that is just factually not correct.

21        On January 3rd, after a huge amount of effort,

22   reflected on this slide --

23        MR. BEST:  Sig, why don't we focus on what the court

24   has asked for, which is why there should be limited

25   jurisdictional --

```
 1              MR. WISSNER-GROSS:  We will get to that very quickly.

 2   I wanted to address this point.

 3              We produced over 1100 pages of documents on

 4   jurisdiction, all of which, if you go to the next slide,

 5   confirm that what was said in the declarations on the

 6   jurisdictional motion were all correct.  There is limited

 7   contact with Florida.  The Mavs and Mr. Cuban came here for

 8   away games.  Mr. Cuban came here a couple of times on a

 9   personal vacation.  He never met with Mr. Ehrlich at any point

10   in time, including at a crypto conference in January.

11              Go to the next slide.

12              MR. BEST:  Let me just interject, Sig.

13              Your Honor, not only did we produce all these

14   documents, but we sent a cover letter identifying, in

15   chronological form, the events that took place, citing the

16   Bates numbers for these documents, and having, if you will, a

17   full detailed chronology of the jurisdictional events at issue.

18              So not only did we produce documents, but we

19   accompanied it with work product showing a summary of the

20   chronology so that it would make it easy for plaintiffs to walk

21   through the documents we provided for them.

22              MR. WISSNER-GROSS:  So it is critical, your Honor --

23   if we go to the next slide -- to understand the significance of

24   the jurisdictional discovery, why that should be the focus,

25   plus the fact that there are three Florida plaintiffs, we
```

1    think, who have completely fabricated, manufactured claims.  We

2    think we have already seen evidence of perjury in declarations

3    they have submitted.  That is why we wanted to accelerate their

4    depositions, have them in Florida.  Unfortunately,

5    Mr. Robertson has fled the jurisdiction and is in Illinois.

6           On the issue of why it makes sense to limit

7    Mr. Cuban's deposition to jurisdictional issues, well, we

8    recognize, obviously, your Honor had made that comment at the

9    hearing on the 20th, but there are several extremely practical

10   reasons for doing so.

11          At various points, and I try to keep track of how many

12   different people Mr. Moskowitz has threatened to add to the

13   case.  By my latest calculations it is either five or six

14   additional defendants that he wants to add.  He has noticed the

15   deposition of Mr. Gronkowski, the former NFL football player.

16   He claims to have served a deposition notice on Sullivan &

17   Cromwell, the law firm for FTX, which he said he might add.

18   What they do in this lawsuit remains to be seen, although he

19   has a related case against FTX.  He has threatened to bring in

20   the National Women's Soccer League.

21          All of these, at least Mr. Gronkowski and the Women's

22   Soccer League, because of other associations of sponsorship

23   agreements or otherwise with Voyager, and he's even threatened

24   to bring in others as well.

25          It makes certainly sound sense that for Mr. Cuban, who

1 doesn't even think he should be in the case jurisdictionally,

2 to have an opportunity of having all fact -- all jurisdictional

3 issues developed, teed up, and completed before Mr. Moskowitz

4 either amends his complaint or responds to the pending motion

5 to dismiss; otherwise, we are going to be subject to more than

6 one deposition of Mr. Cuban.

7        What Mr. Moskowitz just said, frankly, I think he

8 makes it up out of thin air, unfortunately, about what he

9 thinks he is going to find at a deposition of Mr. Cuban.

10 Mr. Cuban appeared once, your Honor.

11        THE COURT:  Thank you, Mr. Wissner-Gross, and I hear

12 you.  It is just, I think on both sides of this case I am

13 hearing a lot of substantive argument and I want to simply stay

14 focused on whether the discovery should be bifurcated or not.

15        MR. WISSNER-GROSS:  Your Honor, let me tell you what

16 we are proposing and not proposing.

17        THE COURT:  OK.

18        MR. WISSNER-GROSS:  We are prepared, and we have been

19 directed, to produce merits documents beginning, on a rolling

20 basis, on January 13th.  We have begun that process.  There are

21 a lot of documents.  There were 45,000 documents that have been

22 identified.  We reviewed about 25,000 today.  We are going to

23 start producing documents on January 13th on a rolling basis,

24 although we completed the production of jurisdictional

25 documents.  We are saying, fine, go ahead, we are going to

1   produce that to you; we are going to produce on a rolling

2   basis.

3          What we are saying, though, is, as to Mr. Cuban, it

4   makes eminent sense to have his deposition limited to the issue

5   of jurisdiction.  I proposed that they are limited to the seven

6   hours, and that if they use two hours on jurisdiction, they

7   only have five hours left.  We are not going to advance that

8   position.  We think his jurisdictional deposition probably

9   needs no more than an hour or two, but it is a short

10  deposition.  Let them take that.

11         They are going to get the documents produced on a

12  rolling basis.  As far as any issue of any substantive

13  deposition, frankly, I would like to see if he is dismissed

14  from the case.  But at a minimum, if they are going to bring in

15  five or six new defendants, which Mr. Moskowitz repeatedly

16  threatens to do and he is talking about new plaintiffs, many

17  new defendants, maybe change the theory of his case, it

18  certainly makes sense to wait for Mr. Cuban's substantive

19  deposition on the merits until he knows who the defendants are,

20  what claims are in the case, etc.  There is absolutely no

21  prejudice whatsoever to the plaintiffs to do that.

22         So it is bifurcation in the sense of let's take his

23  jurisdictional deposition.  We have locked in a date.  He will

24  get documents.  Whatever he is going to do in terms of amending

25  the complaint.  Frankly, no matter what he gets it is not going

1  to solve the jurisdictional problem, which is a gating issue.

2  Let's get that completed.  The thought is, let's keep the case

3  moving.

4           Yes, we are going to produce the jurisdictional stuff

5  and we will start producing the balance of the documents on a

6  rolling basis starting on January 13.

7           We haven't even gotten to the plaintiffs, your Honor,

8  which I -- we haven't gotten any cooperation from the

9  plaintiffs.  We have gotten some documents from Voyager.

10           Your Honor, if you remember, you had suggested, after

11  we wanted to depose all 12, you said, we don't want them flying

12  in by jet.  So we said let's take the three Florida plaintiffs,

13  and we still haven't gotten their full production.  We have

14  gotten some documents.  We got some documents from Voyager.  We

15  have been trying, without success, to have the three Florida

16  plaintiffs deposed in Miami.  Mr. Robertson, we can go into it,

17  your Honor.  There are so many --

18           THE COURT:  I want to stick to the issue of the

19  bifurcated discovery and try to resolve that right away.

20           So what you are asking for is that I enter an order

21  allowing the bifurcation of discovery only with respect to

22  Mr. Cuban or with respect to the entire case?  I just want to

23  be clear on what you are requesting.

24           MR. WISSNER-GROSS:  I think that in terms of

25  deposition, I think what we have heard from Mr. Ehrlich's

```
1    counsel -- we can get to that also because I think

2    Mr. Moskowitz completely misrepresented what he said Ehrlich's

3    counsel, but that it makes perfect sense to have depositions of

4    the defendants focused initially on jurisdiction.

5         So Mr. Cuban's deposition -- we have dates for later

6    in February for Mr. Mackey and Tapply.  I don't think they will

7    add much in jurisdiction.

8         Mr. Ehrlich, his counsel had -- by the way, Mr.

9    Ehrlich was a defendant, was dismissed with prejudice, is a

10   nonparty, lives in Connecticut, represented by separate

11   counsel.  He is still the CEO of Voyager, which is in

12   bankruptcy.  There is sensitivity about the bankruptcy

13   implications of any deposition.

14        There have been three different forms of subpoena sent

15   on him.  None issued out of the Southern District of Florida.

16   For whatever reason Mr. Moskowitz didn't choose to go to

17   Connecticut to get a subpoena issued.  So it is all consensual.

18        Mr. Ehrlich's counsel, my understanding, has said,

19   look, I'm prepared to make him available on jurisdictional

20   issues.  Mr. Ehrlich has been sued in another class action

21   relating to Voyager, contrary to what Mr. Moskowitz said last

22   time where there is only one case, and he wants to defer any

23   substantive deposition of him until a later point in time.

24   Frankly, there is no prejudice to Mr. Moskowitz on that either.

25        He has offered to produce to him, I gather, various
```

1   documents.

2          THE COURT:  I can tell you, honestly my concern is

3   going to be that we will all get there to deposition and then

4   the questions will be asked and then the argument as to whether

5   some answer is jurisdictional or whether that question is only

6   jurisdictional or it goes to the merits.  There may be more

7   disputes over that than it is worth.

8          I think also for the sake of efficiency, honestly, I

9   understand that the gentlemen that we are talking about are all

10  very, very busy individuals.  If you present them for

11  deposition and you complete the depositions, they're done.

12  What about the sake of efficiency?

13          MR. BEST:  But they are not done, your Honor.  This is

14  Stephen Best.  You already heard Mr. Moskowitz say he's going

15  to amend the complaint, because he's effectively conceded that

16  the plaintiffs at present, the Florida-based plaintiffs, don't

17  have standing.  So we are going to be rehashing this either

18  through an amended complaint, one, or, two, all these

19  individual defendants that he wants to add, Mr. Gronkowski,

20  Sullivan & Cromwell, and then we are going to be back at the

21  table with people getting their shots at subsequent depositions

22  of these people.

23          So indeed, the efficient process, I would argue, is

24  that we limit this to jurisdictional discovery, because we have

25  already heard that Mr. Moskowitz is going to at least seek

```
1    leave to amend the complaint, which we are going to object to,
2    and so we are going to be in a situation where we have an
3    entire new complaint before us.  He is going to come in and say
4    since we have a new complaint, we get to take another set of
5    depositions.
6              MR. WISSNER-GROSS:  All the new defendants are going
7    to want to depose everyone.
8              So, your Honor, the way this is typically done -- we
9    understand the mandate to move forward.  We are giving you a
10   path.  Mr. Moskowitz is going to get plenty of documents.  He
11   got a thousand pages already.  I don't think it will solve his
12   jurisdictional impediment, but he will be able to see whatever
13   the communications were leading -- let's talk about what he
14   will get in document discovery.
15             He is going to see any communications between Voyager
16   and the Mavs to deal with the sponsorship agreement, the
17   communications in connection with that.  There was one press
18   conference on October 27th.  He will get everything in
19   connection with that press conference.  Unfortunately for
20   Mr. Moskowitz, there were no meetings in Florida, there was no
21   targeting of Florida, etc.  So the documents that he will get
22   are not going to help them on jurisdiction, but the documents
23   are going to give him the full story of the very limited, very
24   circumscribed relationship that the Mavs had with Voyager, who
25   also, by the way, had a business relationship with professional
```

1    athletes, with women's soccer, etc.  He is going to get all of

2    this.  So if the issue is him having sufficient information to

3    file yet another frivolous complaint or an amendment, he will

4    have it.

5           THE COURT:  Right.

6           MR. WISSNER-GROSS:  All we are saying is that by

7    directing that Mr. Cuban be deposed on all subjects, all you're

8    doing is inviting Mr. Cuban being deposed a second time when

9    the defendants come in and say they didn't have the

10   opportunity.

11          THE COURT:  Let me make sure I understand.  Your

12   motion at this point is to bifurcate discovery only with

13   respect to the depositions of which individuals?

14          MR. WISSNER-GROSS:  Well, certainly Mr. Cuban.  We

15   can't speak for Mr. Ehrlich.  A, we don't represent him.  He is

16   not before the court.  That is really not an issue for today.

17   So we represent Mr. Cuban.

18          Obviously, the Mavs' 30(b)(6) witness -- we haven't

19   talked about that -- we will make someone available, a 30(b)(6)

20   witness, on jurisdiction.  I would say there are two marketing

21   guys that they want to depose.  We will make them available on

22   jurisdiction as well.

23          We are perfectly happy to bring people back later.  We

24   think that the jurisdictional -- actually, the jurisdictional

25   context are so severable and so limited, and that is why we

```
 1    wrote Mr. Moskowitz a letter.  We went ahead and summarized all
 2    of it for him to save him some work.  We think it is actually a
 3    very easy exercise here.
 4              I can spend a minute, and I think I have already done,
 5    outlining the nature of the contacts with Florida.  They don't
 6    rise to any --
 7              THE COURT:  I understand.
 8              MR. BEST:  The depositions should be jurisdictional
 9    based only until the motion to dismiss is heard, noting that
10    all of these witnesses can and will be called again,
11    particularly since Mr. Moskowitz has already indicated to this
12    court that he is going to seek leave to amend the complaint.
13              THE COURT:  OK.
14              MR. BEST:  Thank you.
15              THE COURT:  Let me look at the motion to dismiss.  Is
16    the motion to dismiss entirely based upon jurisdiction?
17              MR. BEST:  No.
18              MR. WISSNER-GROSS:  No.  There are three elements,
19    your Honor.
20              THE COURT:  OK.
21              MR. WISSNER-GROSS:  Jurisdiction --
22              THE COURT:  That is my concern.  Go ahead.
23              MR. WISSNER-GROSS:  We said that is a gating issue.
24    We have also said that if the three Florida plaintiffs are gone
25    that under settled law in this district -- it is a diversity
```

1    case, only a state law claim, which, by the way, contrary to

2    what Mr. Moskowitz said, involves active claims of reliance.

3    So half the complaint is a consumer fraud statute which

4    requires reliance.  But if the three Florida plaintiffs are

5    gone, the balance of the plaintiffs have no standing in this

6    jurisdiction.

7              So there is a 10b-5, Rule 9b portion saying these are

8    not cognizable claims under state law of the relevant

9    jurisdictions.  Finally, we have argued that Voyager is a

10   necessary party.

11             THE COURT:  OK.

12             MR. WISSNER-GROSS:  We have told the judge that --

13             THE COURT:  Then for the sake of clarity, with respect

14   to all other discovery you're saying, I'm willing to go ahead

15   with all the other discovery.  I'm producing the documents on a

16   rolling basis.

17             MR. WISSNER-GROSS:  Yes.

18             THE COURT:  That's your statement.

19             MR. WISSNER-GROSS:  Yes, we are going to produce the

20   documents on a rolling basis.  Absolutely.

21             THE COURT:  Not just jurisdictional but every document

22   that's been requested.

23             MR. WISSNER-GROSS:  We've completed the jurisdictional

24   production.  We have done that as directed.

25             THE COURT:  OK.

1        MR. WISSNER-GROSS:  We are prepared to produce all the

2   other documents on a rolling basis beginning on January 13th.

3   Absolutely.

4        THE COURT:  OK.  All right.  So I think I understand

5   you now.

6        Let me go back to Mr. Moskowitz, Mr. Boies, and hear

7   your position on that argument.

8        MR. BOIES:  Your Honor, this is David Boies.  If I

9   could just respond to one aspect of it, and that is, counsel

10  keeps saying that they have completed their document production

11  as far as jurisdiction is concerned.  We don't agree with that.

12       One of the issues here is they take a very, very

13  limited view of what is relevant to jurisdiction.  Counsel said

14  the documents show that there is no targeting of Florida.

15  That's not what the documents show at all.

16       What they have done is they have produced documents

17  that relate to travel to Florida, not all the documents with

18  respect to marketing to Florida, not all the documents relating

19  to the targeting of Florida, not the documents that relate to

20  the fact that one of the purposes was to get people in Florida

21  to participate.  So they take a very, very limited and we think

22  unrealistically limited view of jurisdiction.

23       In addition to that, the issues in terms of

24  jurisdiction and merits are very much intertwined.  If we take

25  a deposition limited to jurisdiction, I can tell from things

1    they have written already and some of the things they have said

2    today that they are going to take the position, well, your

3    Honor, we are just asking him about his travels to Florida and

4    you ought not to get into what was his account at Voyager, what

5    was his relationship to Voyager and Voyager's marketing to

6    people in Florida, what is his responsibility for Voyager's

7    marketing to Florida.

8            All of those kinds of things are relevant not only to

9    merits but to jurisdiction, and I think it is going to be very

10   difficult to try and separate out merits from jurisdiction in

11   this deposition.

12           The third thing is the argument that they're making

13   today, which is you ought to stay the merits discovery until

14   the motion to dismiss is heard, which is what counsel just said

15   a couple of minutes ago, is exactly what they argued to Judge

16   Altman and Judge Altman wisely, in our view, said no, I am not

17   going to stay discovery.  What they are really asking is a

18   rehearing on Judge Altman's decision not to stay discovery.

19           We think that was a wise decision.  We think that was

20   the efficient decision.  It was, I think, a very considered

21   decision on Judge Altman's part.

22           THE COURT:  OK.

23           MR. MOSKOWITZ:  Your Honor, if I could just respond a

24   little to the specifics in addition to the excellent points

25   Mr. Boies made.

1          It's been now five months.  You hear from four of my

2   esteemed defense counsel they have produced thousands of

3   documents.  We got 25 documents.  That's it.

4          They are right.  They did a narrative.  They said

5   these 25 documents greatly support that we never came to Miami.

6   But what does that have to do with the press conference, and

7   that is what I started with, where I showed you Mark Cuban went

8   on the internet and he said to all of the Voyager customers

9   around the country, you need to buy this product because I am a

10  customer, I trust them, and we're trying to get our Mav fans

11  all around the country to buy them.  Then a couple of weeks

12  later he comes to Miami.  He is the keynote speaker in the

13  largest crypto conference, and he talks here -- remember I

14  showed you the clip -- he said, the Miami audience is great,

15  they're very unique.  Well, where are the documents about

16  planning that October press conference?

17          They identify four people with personal knowledge that

18  worked for the Mavericks that know about the Voyager/Mavericks

19  agreement and know about the press conference.  Mackey, Tapply,

20  and two others.  They promised to give us their deposition in

21  January.  We don't have it.

22          When they were looking for documents, did they look to

23  any documents from those four people?  We don't have a single

24  one from any of them.  So they're saying they produced

25  jurisdictional discovery.  No, they didn't.  It is like what

1   Mr. Boies said.  Yes, Mr. Cuban didn't physically come here 50

2   times, but that press conference targeted the Miami customers,

3   and it was successful.

4          We get to look at the documents.  Who were you

5   targeting?  Why did you have this national press conference?

6   Who were you trying to reach?  How did your numbers go up in

7   Florida to $40 million afterwards?

8          We are allowed to get that discovery.  That is what

9   Judge Altonaga said, and, shockingly, it was all against what

10  Voyager had said, that we have no connections to Florida.

11  Florida was one of their largest states.

12         So all we are saying is you ordered them to produce

13  all jurisdictional discovery, which includes what his financial

14  interest is.  So Mr. Cuban has a Voyager account.  If there's

15  $500 million in that account, isn't that relevant?  What if

16  there is nothing in that account and he is telling everyone in

17  the country, I'm all in, I love Voyager.  That wasn't produced.

18         So give us the jurisdictional discovery, but next week

19  all the merits are due.  So give us all of those, and then just

20  give us those two people that you promised to give us in

21  January, Mackey and Tapply.  They are the marketing director

22  and the communications director.  That is all we asked for.

23         That is why Mr. Boies said when they asked Judge

24  Altman to stay discovery, he said, I peeked at the merits, I

25  think they have a claim.  So this is all just regurgitating

1   that argument they lost, and now your Honor has ruled, just

2   give them jurisdictional discovery by January 3rd, give them

3   everything else by next week, give them three depositions.

4   That's it.  Tapply, Mackey, and Cuban.

5           We don't think it needs to be bifurcated, limited.

6   What are they scared of?  I mean, what are we going to ask

7   Mr. Cuban?  I promise you we are not going to ask for his

8   deposition again.  I can put that on the record.  No matter

9   what we do -- and I am not saying we are going to do an amended

10  complaint.  Judge Altman just gave us until February 24th if we

11  want to.  But we will make the assurance that we will not

12  depose Mr. Cuban after this February 2nd date.  We have one

13  shot at him under the federal rules, and we will use all our

14  time.

15          THE COURT:  All right.  I hear both parties.

16          While I understand, Mr. Wissner-Gross, your --

17          MR. KNIGHT:  Your Honor --

18          THE COURT:  -- argument about jurisdiction,

19  jurisdiction is much larger than just presence, and we all know

20  that.  At this point jurisdiction has become a difficult and

21  tricky question that relies upon a lot more than just physical

22  presence.

23          My concern is any limitation to jurisdiction is going

24  to be an invitation for more disputes for both sides.  It is

25  going to be a lot more efficient if you simply go forward with

1    your deposition.

2              I understand your argument that Judge Altman has given

3    me some discretion in that area, and that is why I am certainly

4    willing to hear your arguments from both sides on the issue of

5    bifurcation, but it doesn't seem to be a practical answer in

6    this type of case.

7              MR. WISSNER-GROSS:  Your Honor, if I could give it

8    another shot, just briefly.

9              THE COURT:  A motion for reconsideration.  OK.

10             MR. WISSNER-GROSS:  The reality is that they are

11   claiming targeting of Florida.  It is a false premise.  If

12   there was targeting of Florida, we would have produced

13   documents that show that.  There was a single press conference

14   in Dallas, entirely in Dallas, on January 27th -- excuse me, on

15   October 27, 2021.

16             The way this is -- I am not taking the position that

17   if they think that there are documents that give a basis for an

18   argument of targeting Florida they couldn't ask questions about

19   that.  The practical solution is, if issues come up at

20   depositions, your Honor has been very accommodating to us.  I

21   don't think it will happen.  I think this is a case where

22   limiting the subject to jurisdiction is actually quite easy.

23             MR. BEST:  Even if that's a relevant question to ask

24   in jurisdictional discovery, your Honor, and if plaintiffs had

25   taken the opportunity to give to us search terms for us to look

1    for the documents that they are now speaking that are so

2    important to their jurisdictional discovery demands, we would

3    have looked for them.  They did not.  They refused to give us

4    any search terms.  Today is the first day we have ever heard of

5    their interest in this information, which we will provide to

6    them either if anything exists, which it does not, or a

7    representation that no documents exist on these points, we are

8    happy to give that to them.

9         MR. WISSNER-GROSS:  We are happy to prioritize on the

10   rolling production all documents in connection with this press

11   conference, that Mr. Moskowitz and Mr. Boies incorrectly claim

12   was in any respect targeting Florida.  We are happy to provide

13   that on a priority basis.

14        I said that the discovery on a rolling production is

15   going to show, frankly, the solicitation of Voyager of the Mavs

16   beginning in August of 2021 to become a sponsor of the Mavs.

17   It will show the events in connection with the press

18   conference, and then after that, frankly, for Mr. Cuban, except

19   getting very limited updates, there is no presence or contact

20   with Florida.  It is not very complicated.

21        THE COURT:  OK.  So, Mr. Wissner-Gross, Mr. Best, the

22   fact that there could be this much discussion about

23   jurisdiction already tells me that this is not a clear issue,

24   and in this type of case where there's national marketing of a

25   product, it is a lot more complicated than simple physical

1   presence.

2          So I think what we will do is I am going to deny that

3   request to bifurcate the discovery for the same reasons that

4   Judge Altman does, and we will just go forward with discovery

5   in this case so that we can work efficiently.

6          I am glad that Mr. Moskowitz is willing to state at

7   this juncture, and I think that is a benefit to your client

8   Mr. Cuban, this will be the deposition for Mr. Cuban.  I think

9   that is certainly going to be more efficient from Mr. Cuban's

10  point of view.

11         Just to be absolutely clear on my ruling, no

12  bifurcated discovery.  Let's move forward with discovery on

13  both sides, both plaintiff and defendant.

14         MR. BEST:  I understand your Honor's ruling.  I want

15  to state for the record here that we have made it clear that

16  the plaintiffs don't have standing, the Florida-based

17  plaintiffs don't have standing in this case, and that unlike a

18  situation where leave to amend can be made, and indeed that

19  Judge Altman did make a ruling that he would consider leave to

20  amend, he never did it with an understanding that at present

21  that the Florida-based plaintiffs have no standing.

22         So we are in an entirely different universe here of

23  judicial consideration of leave to amend when the argument is

24  at present none of these Florida-based plaintiffs have standing

25  to be in this case, and, therefore, if there is no

1    Florida-based plaintiff that has standing, then this case

2    doesn't have standing.  I just wanted to say that for the

3    record and for your Honor's understanding.

4             Thank you.

5             THE COURT:  OK.  Thank you.

6             So we have ruled on that first issue, that issue with

7    regard to the depositions.  Let's talk about the plaintiffs'

8    discovery.

9             The depositions have been set for the plaintiff

10   representatives?

11            MR. WISSNER-GROSS:  No.  Your Honor, if I could --

12            THE COURT:  Yes.

13            MR. WISSNER-GROSS:  -- if I could come back to the

14   PowerPoint.  I will try to go through this quickly to give you

15   context.

16            THE COURT:  You want in-person depositions.  OK.

17            MR. WISSNER-GROSS:  Yes.

18            So, first of all, your Honor agreed with us on

19   December 20th we should have their depositions in Florida.  We

20   wanted to have them in Miami.  Obviously, the general rule is

21   plaintiffs should make themselves available for deposition in

22   this district.  We think the discovery we have gotten so far

23   has actually reinforced the absolute critical nature of doing

24   in-person depositions.

25            Now, just briefly, as on this slide, each of the

1    plaintiffs, and it is the same generic allegation for each

2    plaintiff, and I am focusing on the Florida plaintiffs in

3    paragraphs 7 to 9 of the amended complaint, they all claim that

4    they acted in reliance on Mr. Cuban and the Mavericks in

5    opening their accounts, in funding their accounts, in trading

6    their accounts.  So the issue of reliance is front and center

7    in the allegations of the complaint.

8         The three Florida plaintiffs also in the ill, I guess

9    it was ill-suited, unsuccessful early effort to certify a

10   class, they each filed declarations, sworn declarations, that

11   are summarized below, containing the same generic allegation

12   that they somehow were relying on Mr. Cuban and the Mavs in

13   opening up accounts at Voyager.

14        We have gotten document discovery from Voyager.  We

15   served a subpoena on them.  We made that discovery available.

16        Actually, before I even get this, I want to confirm

17   that there is some confidential information I do want to share

18   that came from Voyager.  I want to make sure there is no one on

19   the call other than attorneys and court personnel.

20        Can we just confirm that first?

21        THE COURT:  Let me see if I can go back to full view

22   and see who is here.

23        MR. BOIES:  We certainly don't want -- this is David

24   Boies.  There is certainly no one with me other than counsel.

25        MR. WISSNER-GROSS:  Right.  I'm assuming there are no

```
 1    reporters, etc., participating, your Honor.

 2              THE COURT:  I can only see six people on my screen.

 3    Let me ask my courtroom deputy.

 4              MR. WISSNER-GROSS:  John, can we go to the unredacted

 5    version.

 6              THE COURT:  There are 28 people on this.

 7              A VOICE:  Yes.  I'll switch now.

 8              THE COURT:  So there may be a reporter here.  Let's

 9    see who is here present.

10              MR. WISSNER-GROSS:  Let's see if anyone identifies

11    themself who may be a reporter.  Anyone other than counsel or

12    court personnel, if they can identify themselves, and if they

13    are on the call we ask that they drop off.

14              THE COURT:  I see someone named Dan Kerns.  Who is

15    that?

16              MR. WISSNER-GROSS:  He is one of my colleagues.

17              THE COURT:  Jessica Meyers.

18              MR. WISSNER-GROSS:  Colleague.

19              THE COURT:  OK.

20              MR. MOSKOWITZ:  Sig, I am not aware of anybody else.

21              THE COURT:  Someone just left.  OK.

22              MR. WISSNER-GROSS:  John, why don't you put it back

23    on.  I think this will be helpful for your Honor to understand

24    what we are talking about.

25              So this is what we talked to you about on December
```

1    20th.  We got documents from Voyager that confirm that for

2    everyone in red, nine of the 12 plaintiffs opened their

3    accounts and made the first deposits months, if not longer,

4    prior to the October 27, 2021 press conference.

5          So they allege reliance on Mr. Cuban and the Mavs.

6          We will come to Mr. Robertson in a moment, who alleges

7    that he opened his account based on the endorsement of

8    Mr. Cuban of Voyager before he opened this account in May of

9    2021, when in fact the first statement about Voyager didn't

10   occur until October.

11         So per the comment of Mr. Best, nine of the 12 are

12   out.  They lied, frankly, in the complaint about having relied

13   on the Mavs and Mr. Cuban to open their account.  But then we

14   have Rachel Gold and Sanford Gold, two Florida plaintiffs who

15   we will come to in a moment.

16         Let's go to the next page, next slide.

17         So this is something.  We are talking about the lead

18   plaintiff Mr. Robertson.  This is why in-person deposition is

19   so critical.  He states in the complaint, and they quote from

20   him in paragraph 67, in the summer of '21 he claims that he saw

21   Mark, referring to Mr. Cuban, promoting Dogecoin and then

22   Voyager and thought he is a sound investor.  "So I downloaded

23   the app and began to play around with a very small amount of

24   money in June 2021."

25         Why is that a fabrication?  Well, Mr. Cuban didn't

```
1    announce his involvement or the Mavs involvement with Voyager
2    until October 2021 and Voyager first approached the Mavs in
3    August of 2021.  False statement number one.
4           Number two, which we found out from Voyager, not from
5    Mr. Robertson, is that he had actually deposited $30,000
6    between June and October into his account.  So heavy investment
7    by him.  Well, prior to the initial and only press conference
8    involving Voyager.
9           Let's go to the next slide.
10          THE COURT:  So this is all very good evidence, and I
11   think this is evidence, obviously, you are going to provide to
12   the court in deciding the motion, but how is this relevant to
13   the discovery dispute?
14          MR. WISSNER-GROSS:  We wanted Mr. Robertson to be
15   deposed in person in Miami.  We noticed his deposition for
16   December 22nd.  What was his response?  He disappeared to
17   Illinois, they claim, unspecified hand surgery in the middle of
18   January.  They said, well, we could make him available in Miami
19   sometime in February.
20          We want him next week, frankly.  We have asked for
21   documentation of this purported hand surgery, which they never
22   provided.
23          Bear with me, your Honor.  This, I think, will just
24   explain a little bit further.
25          Here is what we found with Mr. Robertson.  In
```

1   September of 2021, he filed, under penalty of perjury, in two

2   state court cases, where he is proceeding *pro se*, seeking to be

3   relieved of having to make filing fees and he claims that he

4   has 130, 40 dollars of assets and no other assets.  $120 in

5   bank accounts, no other assets.  We found from Voyager, not

6   from him, that he had $30,000 of assets in his Voyager account.

7   Doesn't disclose it.

8          This goes to the document production that we have

9   gotten from him.  He is claiming in his application to other

10  courts in September that he's been on disability since 2009,

11  has no income, and then, mysteriously, a year after he opens

12  his account, which he opened before Mr. Cuban even announced

13  anything about Voyager, he puts almost $200,000 in April to

14  June, 2022 into his Voyager account.

15         We don't know if it is his money, someone else's

16  money.  We have no idea.  This is illustrative of the problem

17  we are having with the plaintiffs, who clearly in the complaint

18  allege they relied on Mr. Cuban to open the account.  That's

19  false.  We don't know if it's their money, someone else's

20  money, where it came from, whether they have other crypto

21  accounts, whether they have other advisors.  None of this has

22  been given to us.

23         So Mr. Robertson, we want his deposition next week in

24  Miami.  We understand why he fled the jurisdiction.  This is

25  just based on our own personal investigation, not based on

1    anything that he's been very candid about sharing with us.  So

2    we haven't gotten all his responsive documents.  They should

3    have been produced in December.

4           Then Mr. Moskowitz has made a variety of objections,

5    which we think are meritless, like he won't give us information

6    about any other crypto accounts.  Well, what we understand

7    about crypto is you sort of need that information to find out

8    if while he is trading in this account, he is trading in other

9    accounts.  Or we haven't gotten any information on what's

10   called a wallet, which would give us information as to all

11   their crypto.  We haven't gotten this for any of them.

12          So that's Mr. Robertson.  That's emblematic of all the

13   plaintiffs.  We had submitted, your Honor, a letter that we had

14   written to Mr. Moskowitz, including a chart, showing the

15   deficiencies of all the plaintiffs' production.  He raced to

16   give us a few more documents last night, but all these issues

17   are still in play.

18          From our perspective there has been complete

19   noncompliance, complete noncompliance with the production order

20   you directed where he was supposed to produce all of these

21   documents.  He's given us floating dates that we can depose

22   Mr. Robertson and if we want to come to Illinois.  That's not

23   acceptable.

24          THE COURT:  Right.

25          MR. WISSNER-GROSS:  Let me go to the next one.

```
 1          MR. MOSKOWITZ:  Can we respond?  We have been going
 2    for about 20 minutes on this motion to dismiss hearing.
 3          MR. WISSNER-GROSS:  No, no.  Let me finish.  I will
 4    finish the other two.
 5          THE COURT:  Excuse me.
 6          MR. MOSKOWITZ:  Try not to say in the jurisdiction.
 7          THE COURT:  Excuse me.  Right now, Mr. Moskowitz, I am
 8    just trying to hear about the depositions of the plaintiffs.
 9    So I will give the defendants an opportunity to make their
10    presentation and then I will get to you, Mr. Moskowitz, so I
11    can hear what you have to say.
12          MR. WISSNER-GROSS:  Thank you, your Honor.
13          Sanford Gold.  We can be quick on Sanford Gold.  His
14    daughter Rachel Gold is the third plaintiff.  Now, both of them
15    claim to have opened their accounts months after the press
16    conference.  So query whether there was any reliance at all
17    when they claim they relied on it when they opened it months
18    later.
19          By the way, none of these three plaintiffs got that
20    $100 bonus that someone who opened, from the press conference,
21    to open it, etc.
22          THE COURT:  Let's stay focused on deposing these
23    individuals.
24          MR. WISSNER-GROSS:  So we need to depose him in
25    person.
```

```
 1              THE COURT:  OK.

 2              MR. WISSNER-GROSS:  A perfect example.  We found out

 3    from our investigation that Mr. Gold has been convicted three

 4    times over three decades for major financial fraud.  He's

 5    served serious jail time.  Not only financial fraud, he's been

 6    involved with telemarketing, boiler room scams.  He's been

 7    involved -- he was required in 2006, for one of his criminal

 8    enterprises, to pay restitution of $18 million.

 9              Go to the next page.

10              THE COURT:  So you are concerned about his veracity

11    and you feel like you should --

12              MR. WISSNER-GROSS:  I think we have a little bit of

13    concern about veracity.

14              THE COURT:  Got it.

15              MR. WISSNER-GROSS:  So he is a three-time convict

16    involved with schemes to embezzle consumers.  We need to depose

17    this person in person in Miami.  Frankly, he could be directed

18    to be deposed next week.  There is no reason why not.  We

19    should be able to do that.

20              Let's go to his daughter Rachel Gold.

21              This is one where I will borrow a phrase from my

22    friend Mr. Moskowitz.  We were stunned, we were flabbergasted

23    to find out that, from an email on December 30th from

24    Mr. Moskowitz, that she didn't even open her account.  In fact,

25    what he has claimed to us is it is her husband, Eric Rares, who
```

1    opened the account.  According to Mr. Moskowitz,

2    notwithstanding the representations to the contrary in the

3    complaint, she didn't view the press conference.  Somehow

4    Mr. Rares allegedly had seen a copy of it.

5         So by his own admission, and this goes to Mr. Best's

6    standing point, we have Mr. Moskowitz sort of conceding that

7    one of his Florida plaintiffs didn't rely on Mr. Cuban.  She

8    actually relied on her husband for his investment decisions.

9         We have done our investigation, but we have no

10   documents, not adequate documents, in terms of trading history.

11        Now, they have said that she recently gave birth to a

12   second child.

13        Go back, John.

14        Can we depose her at her house?  She needs to nurse.

15   We have offered to have one of my colleagues, Ms. Wolkinson is

16   prepared to go to her house.

17        THE COURT:  Her house is here in the Southern District

18   of Florida?

19        MR. WISSNER-GROSS:  In Coral Springs.

20        THE COURT:  Coral Springs.  OK.

21        MR. WISSNER-GROSS:  By the way, we think that Sanford

22   Gold lives there too.  I'm told it is less than an hour to

23   Miami.  So no reason why Mr. Sanford Gold can't drive that one

24   hour down to Miami to be deposed in our local counsel's office.

25        We are prepared to work with her.  Alternatively, we

1    could do it at a local office.  Our local counsel has an office

2    in Fort Lauderdale, probably half an hour away.  We are

3    prepared to depose her at her house.  Let her take the breaks

4    she needs.  Women only.  We are prepared to do that.

5           Her husband, who they have offered up to be deposed,

6    he should be deposed in Miami.  If he is the one who is the

7    real actor here who made all the decisions -- I would like to

8    accommodate her, but it just seems too complicated, with two

9    kids in the background, to depose the husband also.  I think he

10   should make that one-hour trip to Miami.

11          So we need Mr. Robertson in Miami.  We want him next

12   week.  We want Mr. Gold in Miami.  He can come next week.

13   Mr. Rares, we are willing to do him like the day after

14   Ms. Gold, but he should come to Miami.

15          Yes, have they given us proposed dates.  Well, it is

16   sometime later in January and go to Illinois for Mr. Robertson

17   and depose him on the 26th or maybe in February.  We think

18   these are perjured, bogus claims that all three of them have

19   asserted.  If they are gone, the case goes.

20          THE COURT:  OK.

21          MR. WISSNER-GROSS:  So we understand why Mr. Moskowitz

22   is scurrying to try to bring in new people.

23          Mr. Moskowitz also offered me --

24          THE COURT:  So let me hear the response from

25   Mr. Moskowitz.  Thank you, Mr. Wissner-Gross.

```
 1              MR. WISSNER-GROSS:  All right.

 2              THE COURT:  So, Mr. Moskowitz, your plaintiffs have

 3    filed an action here in Miami.  Why can't they be deposed here

 4    in Miami?

 5              MR. MOSKOWITZ:  They absolutely can, your Honor.  I

 6    mean, this is just incredible to hear these personal attacks on

 7    these investors, that they fled the jurisdiction.  I mean, just

 8    complete lies, that they do all these horrible things.

 9              THE COURT:  So what are the dates?

10              MR. MOSKOWITZ:  What we said, right after your Honor

11    ruled, we wrote them immediately after, here is a date for

12    every one of the plaintiff representatives, because they wanted

13    dates for those depositions.  We gave them.  We said we also

14    may add two additional ones.  You know we can add until almost

15    trial for class reps.  So here's two more.

16              They say, we don't want to hear about those two

17    others.  We don't even want to hear about them.  We're like,

18    OK, we're giving you an opportunity to depose them because we

19    want to be courteous and we may amend them.  So there are four

20    people from Miami and we're making them available.  So they

21    have a date for every deposition of every class rep.

22              The question for two was -- one went for hand surgery.

23    He's not fleeing the jurisdiction.  Your Honor, I know that you

24    appreciate courteousness between counsel.

25              Please don't say he fled the jurisdiction, Sig.  I
```

1   mean, that is just not right.  It is just defamation.

2           THE COURT:  Mr. Moskowitz, when can he be available in

3   Miami for deposition, Mr. Robertson?

4           MR. MOSKOWITZ:  He needed two weeks to recuperate

5   where he was.  So in three-and-a-half weeks, when he gets back,

6   he can be deposed here.  That's all we said.

7           THE COURT:  Did you give those dates?  Have you given

8   those dates to opposing counsel?

9           MR. MOSKOWITZ:  We will give them those dates.  All

10  they keep saying is these guys are all defamatory and they're

11  all crooks and they're dropping their case.  They're not

12  dropping their case.

13          The people that need to be deposed, we gave them

14  dates.  One woman is pregnant and she is breastfeeding.  She

15  does not want to go to Rachel's office.  Rachel said, well, I

16  have a lot of people who have been breastfeeding who come to my

17  office.  She doesn't feel comfortable breastfeeding her baby

18  during a deposition.  That was it, your Honor.  We don't think

19  that was so ridiculous to say a woman who is breastfeeding

20  would like to do it by Zoom.

21          THE COURT:  OK.

22          MR. MOSKOWITZ:  What is the emergency?  There is no

23  allegation she is lying.

24          THE COURT:  I think they're willing to come to her

25  home.  So that shouldn't be a problem, correct?

```
1              MR. MOSKOWITZ:  We can do it at her home.

2              THE COURT:  OK.

3              MR. MOSKOWITZ:  So we will make her available.

4              THE COURT:  So do we have dates for those?

5              MR. MOSKOWITZ:  We will send them dates in the next 30

6    days where they can depose Mr. Robertson and they can depose

7    Mr. Gold.  We gave them dates for all of the others in January,

8    as your Honor ordered.  There is no dispute here that we didn't

9    follow exactly what you said.  Give them dates in January.  We

10   did.  And for two of the seven we said we want to do it by

11   Zoom.  That was it.  There is no fleeing the jurisdiction.

12             If they want to wait for Mr. Robertson's hand from

13   surgery for another two weeks, great.  We told them that's

14   fine.  If they want to now to go to her house and do it in a

15   way least disturbing to someone who is feeding her baby, great,

16   we will do that too.

17             THE COURT:  OK.

18             MR. MOSKOWITZ:  So that's all.  This isn't a motion to

19   dismiss hearing where we have to support all these horrible

20   attack-the-victim allegations.  We have got hundreds of

21   clients.

22             Again, what we said before, your Honor, there is no

23   reliance in our claim.  I don't know how many times we can tell

24   them that, but if these are unregistered --

25             THE COURT:  Well, Mr. Moskowitz, I'm reading the
```

1    complaint and the complaint does allege reliance.

2           MR. MOSKOWITZ:  These plaintiffs do say that they

3    relied on them.

4           THE COURT:  OK.

5           MR. MOSKOWITZ:  I'm telling you to prove the claim

6    that we are certifying it is not necessary.  But they can ask

7    our clients anything they want in a full deposition.  They have

8    their statements from the motion for class cert.

9           THE COURT:  OK.

10          MR. MOSKOWITZ:  They have everything about their

11   Voyager account.  They have the subpoena from Voyager about

12   their account.  What are they saying they don't have?  Today is

13   discovery.  It is not to try to show --

14          THE COURT:  Well, I am glad that we resolved that.

15          Mr. Wissner-Gross.

16          MR. WISSNER-GROSS:  Your Honor, two things.  One, I

17   think we need to -- I think we get a feel for sort of one side

18   of Mr. Moskowitz.  I think we need to lock in the dates today,

19   frankly.  I think we need -- I haven't heard anything to

20   suggest that Mr. Gold or Mr. Robertson can't be deposed next

21   week, certainly for Mr. Gold.  There is no reason why he can't

22   come to Miami and be deposed next week.

23          As to Mr. Robertson, I haven't gotten any -- I still

24   think he fled the jurisdiction because he knew we wanted to

25   depose him on the 22nd.  We have shown you more than enough

```
 1    evidence to raise questions on his credibility.

 2           MR. BEST:  Irrespective of that, what is wrong with

 3    next week is the question.

 4           THE COURT:  OK.  So today is January 6th.  Mr. Gold

 5    lives here in South Florida and Mr. Rares is here in South

 6    Florida.

 7           What dates are they available next week,

 8    Mr. Moskowitz?

 9           MR. MOSKOWITZ:  We will have to check with them, your

10    Honor.  We asked for them for dates in January and we gave them

11    dates in January.

12           THE COURT:  Well, what were those dates that were

13    given?  What were the dates?

14           MR. MOSKOWITZ:  We gave them an email with dates for

15    every single plaintiff in January.  Now if they want to do the

16    one who is breastfeeding in Miami, they can do it at her house.

17    Sure, we will try to work on a date.

18           MR. BOIES:  We have offered to do that at her home,

19    your Honor.

20           THE COURT:  Mr. Wissner-Gross, do you have the dates

21    for these four individuals within the month of January?  What

22    do you have?

23           MR. WISSNER-GROSS:  Well, I'm looking to see.  I

24    thought they had proposed late January.

25           MR. BUSHMAN:  January 23rd for Rachel Gold, Judge.
```

```
 1              THE COURT:  OK.

 2              MR. BUSHMAN:  January 24th for Sanford Gold.

 3              THE COURT:  OK.

 4              MR. WISSNER-GROSS:  Our point is --

 5              MR. BUSHMAN:  Pierce Robertson is not in the

 6   jurisdiction.

 7              THE COURT:  And Eric Rares.

 8              MR. BUSHMAN:  The 26th.  That's it.

 9              MR. WISSNER-GROSS:  We'd like your Honor to direct

10   Mr. Robertson return and be deposed next week.  We think there

11   is strong evidence, strong evidence, that he filed a perjured

12   declaration.

13              MR. BEST:  We could go to Chicago, too.

14              THE COURT:  As I understand it, Mr. Moskowitz is

15   saying two weeks and he is available.  So he is available the

16   week of the 23rd, correct, Mr. Moskowitz?

17              MR. MOSKOWITZ:  Yes.

18              MR. WISSNER-GROSS:  Who is available the 23rd, your

19   Honor?

20              THE COURT:  Mr. Robertson will be in Miami on the week

21   of the 23rd.

22              MR. BUSHMAN:  No, your Honor.  This is Howard Bushman,

23   from the Moskowitz law firm.  Good morning.

24              Mr. Robertson is having his surgery on January 17.

25              THE COURT:  Oh, he hasn't even had the surgery yet.
```

1          MR. BUSHMAN:  He is in Illinois doing preop

2    appointments and things like that.  But he is having the

3    surgery on January 17th, and we offered to have his deposition

4    the week after in Illinois or he said he needed two weeks to

5    recover and then he could come back to Miami to have his

6    deposition taken, but Mr. Gross wanted all depositions

7    completed before January 13th.  So the impasse occurred.

8          THE COURT:  OK.  He hasn't had the surgery yet, so he

9    could be in Miami next week.

10         MR. WISSNER-GROSS:  That is what we are suggesting,

11   your Honor.

12         MR. BUSHMAN:  I don't know the answer to that, your

13   Honor.  I know he had doctor's appointments prior, but we could

14   check with him.

15         THE COURT:  Otherwise, if it wasn't next week -- I'm

16   sorry.  Mr. Boies.

17         MR. BOIES:  I'm sorry.  Go ahead, your Honor.  You

18   probably had a solution.

19         THE COURT:  So if he is not available next week, then

20   you're saying he is available the week of the 30th.  Is that

21   what I understand, Mr. Bushman?

22         MR. BUSHMAN:  We had offered him in Illinois after his

23   surgery or two weeks, he needed two weeks to recover.  I have

24   not checked with him to see after that two-week period when he

25   could come to Miami, but I am sure it is short order after

1   that.

2           MR. BOIES:  He can be available, your Honor, either

3   the week of the 23rd or 24th in Chicago or the week of the 31st

4   in Miami.

5           MR. WISSNER-GROSS:  Your Honor, we are willing --

6           MR. BOIES:  If I could just finish.

7           What we are talking about is whether these people are

8   deposed the week of the 23rd of January and the 30th, in one

9   case the 30th of January, or whether they are deposed the week

10  of -- I guess next week is the week of the 12th or something.

11          THE COURT:  The 9th.

12          MR. BOIES:  The 9th, week of the 9th.

13          I would respectfully suggest that given the dates that

14  we have agreed to that accommodate the defendants' depositions,

15  which go out much longer than this, it is not an unreasonable

16  accommodation -- we are giving them dates in January -- it is

17  not an unreasonable accommodation to have these for the weeks

18  that we have offered them dates for.

19          We will make them available.  They can be deposed.  If

20  there are any credibility issues, they will be fought out at

21  the deposition.  I don't think that there is any need to, in

22  effect, just make it uncomfortable for these people to rush

23  them through when we are not doing that with anybody else.

24          MR. BEST:  The whole case is being rushed through,

25  your Honor.  The whole case is being rushed through.

```
 1          There is literally no reason why, that we know of, why
 2   Mr. Robertson can't make himself available this upcoming week,
 3   and we'll go to Chicago.
 4          THE COURT:  So, Mr. Best -- oh, you will go to Chicago
 5   now?
 6          MR. BEST:  Yes.  We will be happy to go to Chicago
 7   next week.
 8          MR. BOIES:  It should be a place --
 9          THE COURT:  I'm sorry.  Wait.  OK.  Slow down.
10          A few minutes ago I heard he could only be deposed in
11   Miami, but now you're willing to go to Illinois.  I just want
12   to be clear.
13          MR. WISSNER-GROSS:  Our preference is Miami.  We want
14   to take him next week.  We don't believe any of the excuses
15   they're making, but we're prepared to go to Chicago.
16          THE COURT:  OK.
17          MR. WISSNER-GROSS:  We will pick the place and we will
18   pick the date.
19          THE COURT:  Well, you can't pick the date if he has a
20   doctor's appointment.  You will try to work with him on the
21   dates.
22          MR. WISSNER-GROSS:  Yes, your Honor.  We also would
23   like --
24          THE COURT:  Is that, Mr. Boies -- hold on --
25   Mr. Boies, is he available in Chicago next week?  Let's start
```

```
 1    with that.

 2              MR. BOIES:  Your Honor, I think we ought to be able to

 3    make him available in Chicago next week.  I haven't personally

 4    spoken to him.  Mr. Bushman has.  But if they want to fly to

 5    Chicago to take his deposition two weeks before he is going to

 6    be in Miami, fine.

 7              THE COURT:  That's fine.  Right.

 8              MR. BOIES:  I frankly wouldn't want to go to Chicago

 9    this time of year, but if that is what they want to do, we will

10    try to find --

11              THE COURT:  I'm glad we resolved that.

12              MR. BOIES:  We'll find a date next week.  We'll find a

13    date next week.

14              THE COURT:  So we have Mr. Robertson next week, and

15    then the week of the 23rd will be Mr. Sanford Gold, Ms. Rachel

16    Gold, and what about Eric Rares?

17              MR. WISSNER-GROSS:  Your Honor, if we could, we'd like

18    to depose Sanford Gold and Rachel Gold's husband next week.  We

19    can do that in Miami.  There is no issue with that.  We will do

20    it in Miami.  They are less than an hour away.

21              THE COURT:  So the issue with Ms. Rachel Gold is

22    you're saying you will do it at her home in Coral Springs.

23              MR. WISSNER-GROSS:  Yes, we'll do it separately.  We

24    will do that at her home, absolutely.  We are prepared to do

25    that.
```

```
 1            THE COURT:  The question is whether she is available
 2   next week at her home, the 9th.
 3            MR. WISSNER-GROSS:  No.  It is fine.  We will
 4   accommodate.  If it is the 23rd is what's proposed -- my
 5   colleague Rachel Wolkinson will be taking that deposition.  I
 6   leave it to her to speak.
 7            THE COURT:  OK.
 8            MR. WISSNER-GROSS:  The 23rd is proposed.  If that is
 9   the date -- Rachel, if you could weigh in -- we can live with
10   it.
11            MS. WOLKINSON:  I'm certainly available.
12            MR. BOIES:  So we've got Rachel Gold for the 23rd at
13   her home.
14            THE COURT:  Rachel Gold for the 23rd at her home.
15            Now you're talking about Sanford Gold.  That's not her
16   husband, that's the father, correct?
17            MR. WISSNER-GROSS:  That's the father.
18            THE COURT:  The date given was January 24th, correct?
19            MR. WISSNER-GROSS:  Right.  We'd like it next week.
20            What we'd also like is we'd like an order directing
21   that the plaintiffs produce all remaining documents that we
22   have requested, which they really haven't done at all, and a
23   date certain from your Honor to complete that.  So if they're
24   being deposed next week, we want all the documents at least 24
25   hours prior to deposition, certification, and --
```

```
1              THE COURT:  Right.  So that will be the next issue we

2     will talk about, the documents.  That will be the next issue.

3     OK.

4              MR. BEST:  On the 24th, your Honor, as you may know,

5     and certainly plaintiffs know, they scheduled Mr. Ehrlich's

6     deposition on the 25th in Connecticut.

7              THE COURT:  Mr. Ehrlich.

8              MR. BEST:  That is one reason why it would make sense

9     to have Mr. Gold's deposition next week.

10             THE COURT:  I see.  OK.  Now I understand.

11             MR. BUSHMAN:  Your Honor, this is Howard Bushman

12    again.  We went through with the plaintiffs on the dates that

13    they were available.  These were the dates that we were able to

14    get availability.

15             The defendants have four lawyers arguing in this

16    hearing.  They can have one lawyer cover Mr. Ehrlich's

17    deposition and one lawyer take a deposition on January 24th of

18    Mr. Gold, who has offered to either come to Miami or what we

19    did offer is to allow, because Rachel Gold is married to Eric

20    Rares and Sanford Gold is the father, to have all the

21    depositions at Ms. Gold's house.  I don't know how long the

22    defendants have proposed to take the deposition, whether they

23    need more than a few hours.  We could double track them in one

24    day and then do another one the next day to keep the setup all

25    set up.  But the 23rd and 24th were the dates that they were
```

1    available.

2              Respectfully, I ask that we keep those dates and also

3    allow us to complete our production of documents, which I know

4    your Honor will get to next and we can talk about that next.

5              THE COURT:  OK.

6              MR. WISSNER-GROSS:  We think that's wrong, your Honor.

7    We think for the reasons we have stated, and I have thought a

8    lot about it deeply, I think it is just not practical to depose

9    Sanford in his daughter's home with two kids under the age of 3

10   running around.  The correct approach, it is less than an hour

11   to go to Miami.  He is the plaintiff.  He chose to become a

12   plaintiff.  It is not inconvenient for him to come to Miami.

13   He actually might enjoy the break coming to Miami.  And we

14   think we're entitled to depose him in person at our local

15   counsel's office.

16             The same with Eric Rares.  We didn't know until

17   recently that Eric was the one who made all the decisions in

18   the account.  They have offered him as a deponent.  We will

19   take the offer.  He also should be deposed in Miami.  We can do

20   it next week.

21             THE COURT:  And I don't think there's --

22             MR. BUSHMAN:  Responding to Mr. Gross' statement about

23   Eric Rares, it is completely not true and false, but

24   irrespective, we did make him available for deposition along

25   with Ms. Gold on the same day.  They could double track those

1    depositions and do one in the morning and one in the afternoon

2    after lunch, and we offered to prepare lunch and serve it to

3    them.

4           THE COURT:  OK.  I can understand, Mr. Bushman -- I

5    hear you -- but I can understand why they would want to have

6    the deposition in a law office or in a conference room where

7    there is more control over the environment.  So it does make

8    sense.  The only problem is the date.

9           So you are accommodating Rachel Gold at home.  Sanford

10   Gold and Eric Rares, the question is what dates, and

11   accommodating them in Miami in a conference room environment

12   makes sense.  So let's get some dates for that that will work

13   with defendants' schedule, defendants' attorneys' schedule.

14          MR. WISSNER-GROSS:  Our proposal would be that they be

15   deposed towards the end of next week, simply because that will

16   give more time for the plaintiffs to complete their document

17   production.

18          THE COURT:  OK.

19          MR. WISSNER-GROSS:  We would propose, I think, the

20   12th or the 13th.  We were agnostic as to which order it goes

21   in.

22          THE COURT:  Well, let's see if that is possible.

23          MR. WISSNER-GROSS:  We can do Sanford or Eric first

24   and --

25          THE COURT:  The next thing we should talk about then

1    is the documents and what's missing with the plaintiffs'

2    document production.

3            MR. WISSNER-GROSS:  Your Honor, in your view -- again,

4    we don't care whether it is Eric or Sanford on the 12th and

5    13th, but we would want one on the 12th and one on the 13th.

6    We don't know yet how long each will be.

7            MR. BUSHMAN:  Your Honor, this is Howard Bushman.  I

8    don't even know if they are available.  Mr. Rares has a job.  I

9    don't know if Mr. Gold is available.  We gave them availability

10   dates.  I will check.

11           If your Honor wants, we could have Sanford Gold on the

12   24th, the date that he said he was available in Miami live, and

13   I will check if Mr. Rares is available maybe on the 25th or

14   possibly on the same day, and they can both come to Miami and

15   we could do two depositions in the voluminous conference rooms

16   that the defendant has, but I don't want the defendant to be

17   able to just dictate, hey, we are going to do it on X day

18   because that is the day they want to do the deposition.  It has

19   to be an availability.

20           We wanted to take Mark Cuban's deposition last month,

21   but he is not available.  I just come out and say I want it

22   next week and your Honor is just going to say, oh, OK, let's do

23   it next week.  This is not the way depositions work.

24           THE COURT:  No, that is correct.  Obviously you have

25   to check with their schedules to make sure that is going to be

```
 1   appropriate.  I'm sure you're willing to check.
 2            MR. BUSHMAN:  We will, your Honor.
 3            THE COURT:  If it can happen, it can.  If it cannot,
 4   then we will have to make different accommodations.  Correct,
 5   Mr. Wissner-Gross?
 6            MR. WISSNER-GROSS:  I'm sorry?
 7            THE COURT:  If he can, I hear counsel saying he will
 8   contact his client and see if the 12th or the 13th is
 9   appropriate for them.  If it is not, then it is not.  The dates
10   that they have given you is the 24th --
11            MR. WISSNER-GROSS:  We're not aware, based on
12   investigation, we're not aware that Mr. Gold is working.  He is
13   in his early 70s.  He lives in his daughter's house.
14            THE COURT:  He may have appointments.
15            MR. WISSNER-GROSS:  We think that -- we haven't heard
16   any hospitalization issue.  We have questions about any
17   explanations given to us.  We think he is available.
18            THE COURT:  Well, he may well be.  He may well be.
19            Let me switch the topic to discussing now the
20   documents and let's see what that would require.  That may help
21   us determine whether that deposition could occur the end of
22   next week or whether another week or so is necessary, because
23   it sounds to me, Mr. Wissner-Gross, that you want those
24   documents, you want a complete document production before the
25   deposition, and that would make sense.
```

1          MR. WISSNER-GROSS:  We want to know they have produced

2     to us whatever they have.

3          THE COURT:  What they have.  So let's talk about that

4     first before we actually nail down these dates, now that we

5     have some options on dates.

6          MR. WISSNER-GROSS:  Right.

7          THE COURT:  Let's talk about that.

8          MR. BEST:  Your Honor, this is Mr. Best.  To that

9     point, your Honor, when we are getting into the question of

10    have they produced all that which the plaintiffs have, so you

11    understand, we are in a unique situation that Voyager account

12    information is on an app and is not like document based.  You

13    can't get it from a third party.  It has to be screenshotted

14    off their app.

15         We are talking a matter of seconds for the plaintiffs

16    to screenshot basic information about their account, i.e., when

17    they opened it.  And when I say screenshot, it takes two

18    buttons on your phone, if it is an iPhone app, or if it is an

19    Android I think it is still two buttons, to screenshot it and

20    save the picture and then send it on.

21         We have not received any information from the

22    plaintiffs as to when these accounts were opened from the

23    plaintiffs or their trading activity or redemption activity,

24    which is critical to the standing piece.

25         MR. WISSNER-GROSS:  Or to the extent we received any,

```
1     it is materially incomplete.

2            We did get from Voyager, which Mr. Moskowitz has or we

3     have made available to him by Voyager, a spreadsheet

4     summarizing, where Voyager had summarized all of their trading

5     activity.  The case of Ms. Gold's didn't match up.  So there

6     are discrepancies there.

7            If we can go to the -- your Honor, I don't know if you

8     have handy, there was a January 2nd letter I submitted or was

9     submitted to the court.

10           THE COURT:  I have it.

11           MR. WISSNER-GROSS:  That is Exhibit C, a chart

12    summarizing what we thought were the deficiencies that each

13    plaintiff, not just the Florida plaintiffs, but all of them.

14    You have that available, your Honor?

15           THE COURT:  Yes, I do.

16           MR. WISSNER-GROSS:  So that goes through detailing

17    what was missing and hadn't been produced, based on our quick

18    review of what was produced on the 28th.

19           John, I don't think we need to go to that.

20           You have that available?

21           THE COURT:  I have it in front of me.

22           MR. WISSNER-GROSS:  OK.  That's fine.

23           John, we can go back to the PowerPoint.

24           THE COURT:  Those are the documents.  So let me hear

25    then from --
```

1    MR. WISSNER-GROSS:  Let me just tell you at a high

2 level what I think we need.

3    THE COURT:  OK.

4    MR. WISSNER-GROSS:  I will use Mr. Robertson as an

5 example.  That is why I refer that he represented in a court

6 proceeding he had no money in September 2021.  If this guy is

7 claiming that he relied on Mark Cuban to open his account,

8 although he opened it months before the press conference, we

9 need to have all the information of the source of funding.  We

10 think it is very likely that this wasn't even -- we don't know

11 if it is even his money.  Some of it was cash that came in,

12 crypto came in.  So we need to know the source of funding.  We

13 haven't gotten that.  It applies to all the plaintiffs.

14    We need to know if he had other crypto accounts.

15 Because the way this world operates, we need to have his

16 information, what is called the wallet information, that will

17 show us insight into all other crypto trading.  That will be

18 relevant.  If one of these plaintiffs was simultaneously

19 trading in another account with particular crypto that they

20 were doing here, that may impact questions of reliance on

21 Mr. Cuban, which we don't think there is.

22    We don't have the full picture for these people.

23 Where did the money come from, what the source was for the

24 money coming in, other crypto accounts, did they have other

25 brokerage accounts.  We have heard that in the case of Ms. Gold

1   she relied on her husband.  We don't know if any of these

2   other -- now we are talking more broadly of all, both

3   plaintiffs, we don't know if they had investment advisors.  We

4   don't know any of that.

5        Now in terms of lawsuits, which impact their

6   credibility, we had to do our own investigation and found out

7   the prior bankruptcies by Mr. Robertson under a different name,

8   his 20 arrests, multiple court proceedings.  Same thing for

9   Sanford Gold.  There are other plaintiffs in the case who have

10  very, very serious, at least one has a very, very serious

11  several-page criminal history.  That alone impacts credibility.

12       For now what we are focusing on is we want all the

13  documents as soon as possible of the Florida plaintiffs so we

14  can prepare for their depositions.  We have gotten some from

15  them.  Mr. Moskowitz has objected to the relevancy of other

16  crypto accounts, other brokerage accounts, anyone else they

17  rely on.  I don't know whether he is still insisting on that

18  objection.

19       Other than a claim of privilege, we think we should

20  get the full years of what they have, and if they don't have

21  it, just tell us they don't have it reasonably in advance of

22  their deposition.  I have said 24 hours before, but if we

23  depose them Thursday and Friday, as long as I have all of their

24  documents, let's say, noon next Wednesday, with a certification

25  as to the Florida plaintiffs, we don't have anything else other

1    than what we've given you, we can go forward.  That's fine.

2         THE COURT:  OK.  So let me hear from the plaintiffs'

3    side on that.  Who will be addressing that?

4         MR. MOSKOWITZ:  Thank you, your Honor.  I will speak

5    first and then Mr. Bushman can add in.

6         We immediately, after your Honor's last ruling,

7    because that was the first time our plaintiffs' documents were

8    due.  Again, I'm going to talk about for five months we have

9    been trying to get documents from Mr. Cuban about his account,

10   etc.  We got nothing.  But we said to them, we will give you

11   dates for each of the depositions and we will give you all of

12   their documents regarding their Voyager account.

13        What did they do?  They went to Voyager, because they

14   are aligned with them, and they were able to get every document

15   regarding our accounts at Voyager.  They also had these

16   declarations that our clients filed prior, when we moved for

17   class certification.  So anything that relates to anything from

18   the Voyager account -- did I use the bonus, what did I see of

19   Mr. Cuban -- all of that will be produced to them, we said,

20   period.  There's no resistance.  There is no delay.  They just

21   asked for it.  We said, we are producing it all, you will get

22   everything about their Voyager account.  So that was clear.

23        I just need to state one other thing.  The only two

24   depositions that we have been waiting for for three months are

25   the two Mavericks employees.  Your Honor said to Mr. Boies at

 1   the last conference, you can get those depositions in January

 2   before the plaintiffs are deposed because you've been waiting

 3   for five months for depositions.  So I know we are going to get

 4   to them, but Mr. Mackey and Mr. Tapply, these are the

 5   communications directors at the Mavericks.  We don't have a

 6   date for them in January, and that's when Mr. Boies said, your

 7   Honor, we would like to have their dates before we give the

 8   plaintiffs because they just asked for the plaintiffs after

 9   they denied the motion to stay.  We have been asking for these

10   people with personal knowledge for three months.  Your Honor

11   ruled -- I have the quote.  You said:  Yes, you will give it to

12   them in January.

13        So I'm happy to give all these plaintiff deposition

14   dates, but we have been asking for just two depositions of the

15   Mavericks, Mr. Tapply and Mr. Mackey, because they were

16   identified as having personal knowledge.  We just want the same

17   standards to apply to them.  We want their documents and we

18   want their depositions in January before these plaintiffs.

19        In terms of our plaintiffs, we're not hiding anything.

20   Anything about the Voyager account, about what they saw about

21   Mark Cuban, about was they relied upon, we are going to give it

22   to them and they can ask any and all questions about it.

23        THE COURT:  OK.  When will you be producing those

24   documents?

25        MR. MOSKOWITZ:  Howie, you have a better idea.

1           MR. BUSHMAN:  Your Honor, there is what the defendants

2     are telling you they want now and what they asked for in

3     discovery, right.  So when you ask for all documents regarding

4     all communications regarding Voyager, right, we have to then

5     search emails, search text messages, which we did.  We hired an

6     eDiscovery vendor to do that, pull all of that information and

7     put that on a system, which I believe everything has been

8     uploaded to that system today.  There were thousands of hits

9     for that.  So now we have to go through that because if

10    somebody was, for example, a Star Treck Voyager fan, all of

11    that will come up.  So we are going to go through those

12    documents.

13          We should be able to make a full production next week.

14    It should be able to go through the documents in short order.

15          MR. BEST:  To be clear --

16          MR. BUSHMAN:  The real rub that, I think -- I'm sorry.

17    I was interrupted by Mr. Best again.

18          THE COURT:  Mr. Best, I'm listening to Mr. Bushman.

19          Go ahead.

20          MR. BUSHMAN:  The other thing that we did is we also

21    produced screenshots of the Voyager app, which showed when they

22    made their initial deposit.  I am not 100 percent clear sitting

23    here today we did that for every plaintiff, but certainly we

24    will, and we can do that by next week as well.  I believe we

25    have done it for all the Florida reps, absolutely.

1          I think the real rub goes to the fishing expedition

2     that defendants want to do as to every plaintiff's financials.

3     They want to look at other crypto accounts, other banking

4     institutions and things like that, which we think goes well

5     beyond anything relevant in this particular case.

6          I mean, for example, they talk about efficiency as it

7     relates to Mr. Cuban.  What if we wanted every marketing

8     agreement that Mr. Cuban and the Mavericks ever entered into to

9     see what kind of due diligence they did on those types of

10    accounts and then we show that they didn't do any due diligence

11    here for this Voyager account.  It doesn't make sense.

12         They either looked at Voyager and they made a deposit

13    in Voyager, it came from their bank account, that's fine.  To

14    go beyond that, what are they looking at in other crypto

15    accounts, what are they looking at on the Blockchain, what are

16    they looking at in other investment accounts in other brokerage

17    firms.  All of this spirals into just madness of the relevant

18    information, when the only thing that matters here is Voyager.

19         They are going to tell you, Judge, that every

20    allegation we have and every piece of discovery we have as it

21    relates to Mr. Cuban has to be Voyager related.  They can't

22    then come back and say, well, we want everything under the sun

23    regarding every plaintiff's financials, which is what their

24    discovery requests ask for.  That just doesn't make any sense.

25         Nor have they provided us with any type of case law or

```
 1    cases that show that when you make an allegation of purchasing
 2    an unregistered security that somehow you're entitled to, the
 3    defendant is entitled to get your entire financial background
 4    from a particular plaintiff who filed a case.  They haven't
 5    done that.
 6          So what I would respectfully suggest is that we
 7    deliver to them all of the Voyager confirmation.  If they want
 8    to ask questions at the deposition about where did the money
 9    come from, what did you do with it, and they will answer those
10    questions because I can't make a relevancy objection at a
11    deposition, or I can but I can't instruct them not to answer.
12    If they have further questions and want further documents, they
13    can seek those.
14          At this stage it is a complete fishing expedition.  It
15    is beyond anything I have ever seen in any case I have ever
16    done relating to a plaintiffs' discovery, to ask for literally
17    their entire financial background and history for the temerity
18    to bring a lawsuit against our client.
19          MR. WISSNER-GROSS:  Your Honor, can I briefly respond?
20          THE COURT:  So I hear you saying, Mr. Bushman, that
21    you're willing to produce all documents that would relate to
22    any of your clients' investments in Voyager.
23          MR. BUSHMAN:  Correct.
24          THE COURT:  And related to Voyager platform, the
25    information that they may have received with respect or from
```

1    Voyager.

2            The personal financial information, are you including

3    in that, for instance -- I just want to make sure I

4    understand -- documents relating to any investment accounts

5    with any brokerage firm person or entity?  You're objecting to

6    that?

7            MR. BUSHMAN:  Yes, your Honor.

8            THE COURT:  Source of funds.  Are you objecting to

9    that?

10           MR. BUSHMAN:  When you do a screenshot, it shows that

11   the deposit was made from a checking, from their checking

12   account or whatever bank account it was.  So it is in the app.

13           THE COURT:  The source of funds is in the app.

14           MR. BUSHMAN:  Yes.

15           THE COURT:  So you're talking about documents related

16   to other investments and other investment accounts.  Let me

17   make sure I understand.

18           MR. WISSNER-GROSS:  Request --

19           THE COURT:  Documents relating to third-party advice

20   with respect to Voyager.  Any objection to that?

21           MR. BUSHMAN:  I couldn't hear you.  Mr. Gross started

22   speaking while you were speaking, your Honor, so I couldn't

23   hear you.

24           MR. WISSNER-GROSS:  Apologize.

25           THE COURT:  Documents relating to third-party advice

1  with respect to Voyager or other crypto investments.

2         MR. BUSHMAN:  No.  With respect to Voyager, we will

3  produce.  With respect to other crypto investments, what does

4  it matter if somebody invested in some other crypto asset and

5  got advice to invest in that other crypto asset if it doesn't

6  relate to Voyager.  If it relates to Voyager, we will produce

7  it, including text messages, emails, and, of course, they are

8  going to sit for a deposition and talk about it.

9         Other investment and other investment firms and

10 brokerage accounts is completely irrelevant.  It is really

11 harassive --

12         THE COURT:  OK.

13         MR. BUSHMAN:  -- and par for the course in this case.

14         THE COURT:  I just want to make sure we are clear on

15 all your objections.

16         No prior criminal history or involvement in

17 litigation.  What about that?

18         MR. BUSHMAN:  Typically, that would be more of an

19 interrogatory, but we are pulling the documents that we have

20 access to and we will produce them.

21         THE COURT:  With regard to criminal history and

22 involvement in other litigation.  OK.

23         MR. BUSHMAN:  I believe we had an objection, your

24 Honor, as to temporalness as far as something longer than, say,

25 10 years ago or 15 years ago, but we will produce what's

```
 1    relevant and what is in our possession --

 2                THE COURT:  OK.

 3                MR. BUSHMAN:  -- as best as we can.

 4                THE COURT:  All right.  So it comes down to other

 5    crypto investments and other documents relating to other

 6    investments, but other than that you're willing to produce.

 7                MR. BUSHMAN:  Yes.  Yes, your Honor.

 8           I want to make clear, just because the defendants were

 9    able to find information on the internet about our particular

10    clients as far as their past criminal history or what have you

11    doesn't mean they have documents in their possession regarding

12    that particular event that might have occurred 10, 15, 20 years

13    ago, but we'll search to see if they have actual documents in

14    their possession.  That's why I said it was probably better

15    suited for an interrogatory, where they would ask you

16    questions -- have you ever been convicted of a felony over the

17    last ten years -- and we would answer it as best that we can.

18                THE COURT:  OK.

19                MR. BUSHMAN:  I can't sit here today saying somebody

20    has a file about some criminal conviction from a decade ago or

21    longer.

22                THE COURT:  All right.  I think I understand you.

23    Then your ability to, the timing in which you would provide

24    those documents, what's the holdup?  How long will that take?

25                MR. BUSHMAN:  There really isn't a holdup, your Honor.
```

1    It was a situation where we wanted to make sure we made a

2    thorough production.

3         We had an eDiscovery vendor go in and pull the emails

4    and pull the text messages and then they upload it to their

5    software, their Relativity software, and then we are able to

6    review it and produce it in an orderly fashion.  Also so that

7    the defendants can search and use it in a way that they feel is

8    necessary, as I've had in every discovery production.

9         We got everything uploaded.  We, I believe, are

10   starting to review it today.  By next week we should be able to

11   produce.  By Thursday probably, maybe earlier.

12        THE COURT:  Next week Thursday?

13        MR. BUSHMAN:  We can try on a rolling basis to produce

14   documents, and we have made two productions already.  Whether

15   the defendants like to mischaracterize it as scurrying or

16   whatever, but we are producing as we get and we are producing

17   more.

18        THE COURT:  OK.  You believe you will have it all

19   produced by the end of next week.

20        MR. BUSHMAN:  Yes, your Honor.

21        THE COURT:  I didn't catch the date.  You said the

22   Thursday?

23        MR. BUSHMAN:  I said Thursday, but if you want to give

24   us until the 13th and then that will give them a week to review

25   the documents before the depositions start on the 23rd.

```
 1                THE COURT:  OK.

 2                MR. WISSNER-GROSS:  We were hoping to take some

 3    depositions next week, your Honor.

 4                THE COURT:  I understand.

 5                All right.  So, Mr. Wissner-Gross, we have had a

 6    thorough discussion now on what they are able to produce, why

 7    they're taking some time, because they need to make sure that

 8    they review all of the documents before they give them to you.

 9    Where are we now?

10                MR. WISSNER-GROSS:  Well, I still would like for the

11    Florida plaintiffs -- I'm happy to prioritize to get the

12    Florida plaintiffs first in the interest of efficiency.  It

13    sounds like from Mr. Bushman that Thursday was possible.  If he

14    gets it to us by end of business Wednesday, we could still do

15    depositions on Thursday and Friday.

16                THE COURT:  Assuming the individuals are available,

17    but those were not the dates that they have given you.

18                MR. WISSNER-GROSS:  Yes.  As I said, Sanford Gold

19    doesn't seem to be working.  I think we should have --

20                THE COURT:  We can't say what his availability is if

21    he is not there.

22                MR. WISSNER-GROSS:  OK.  OK.

23                MR. BUSHMAN:  Your Honor, we would try our best, and

24    we always try our best.

25                I don't appreciate the defense counsel's
```

1    characterization of the plaintiffs filed a lawsuit and

2    therefore they must be available at any minute on any whim.  We

3    will make them available as we can make them available.  I have

4    no idea if they are available next week.

5         They served discovery on all of the plaintiffs.  So we

6    did a collection for all of the plaintiffs, not just the three

7    Florida plaintiffs.  If they did discovery as to just those

8    three Florida plaintiffs, we probably would have had production

9    done already, but they did everybody.  So we pulled everybody

10   and we are uploading everybody.  We are uploading more and more

11   as we go.  This was not an easy process to do so, but we wanted

12   to be sure --

13        THE COURT:  I hear that.

14        MR. BUSHMAN:  -- we wanted to make sure we did it one

15   time and not piecemeal.

16        What I would say is production by next Friday

17   definitely, and then I can work on Mr. Gold for the following

18   week, though the 24th is the one he said he was definitely

19   available.  I know he helps care for Ms. Gold's children from

20   time to time.  So I have to make sure that all gets taken care

21   of.

22        Mr. Rares, who is the other deponent, I doubt he is

23   going to have much information.  It was Ms. Gold, contrary to

24   Mr. Gross' mischaracterization here at the hearing, it was

25   Ms. Gold that chiefly was responsible for the investing.  So

 1   Mr. Rares will probably be a very short deposition, but we will

 2   try and make him available.  We will check his availability.  I

 3   will try and work with Mr. Gross off line, as I work with all

 4   my defense counsel, to get a date.  This isn't something we

 5   should be bothering your Honor with.  We will try and get it,

 6   be big boys and big girls and get it taken care of.

 7            MR. WISSNER-GROSS:  Your Honor, if they can get --

 8            MR. BEST:  Sig, let me take over.

 9            MR. WISSNER-GROSS:  OK.

10            MR. BEST:  OK.  I'm OK with defense's position on

11   their production save one thing, your Honor.  Again, as I

12   explained to you, it takes less than five minutes to screenshot

13   your activity up from your account and send it to us, despite

14   the fact that they were obligated to provide that to us to date

15   and have, in fact, made a production of other screenshots, they

16   have not done that.  So I want to get off this idea and the

17   rouse that their production is so voluminous.  If we can

18   prioritize it and they can get us the basic screenshot

19   information and essential screenshot information of their

20   Florida-based clients' accounts at Voyager, that would satisfy

21   our needs.

22            Secondly, as regards their financial information, it

23   is critical to know how they funded their accounts because you

24   can only open up an account at Voyager either through a cash

25   deposit or a crypto deposit, and if it is in crypto, that means

1    that they are well versed in the universe of cryptocurrency,

2    have established accounts before, and have been trading

3    cryptocurrency prior to their opening of the Voyager account.

4    So it is extraordinarily relevant for this litigation.

5            THE COURT:  OK.

6            MR. BEST:  Thank you.

7            THE COURT:  All right.  So I hear two things there.

8    You would like to prioritize the screenshots from the Florida

9    individuals.

10           Is that something that you can do, Mr. Bushman?

11           MR. BUSHMAN:  I believe we have produced the

12   screenshots.  If Mr. Best --

13           THE COURT:  OK.

14           MR. BUSHMAN:  Maybe it is better off line he can show

15   me an example of the screenshot he wants.

16           I believe we produced screenshots showing the first

17   investment, showing the deposit, showing the trading going on,

18   but if there is some other screenshots that he wants -- I mean,

19   technically we would have to screenshot every piece and page of

20   the Voyager app, which would be probably thousands of different

21   machinations, in order to fully comply with their discovery

22   request.

23           So I will get with Mr. Best after this call --

24           MR. BEST:  It's their trading activity.

25           MR. BUSHMAN:  -- he can show me exactly -- I'm sorry.

```
1    I don't like to be interrupted, Mr. Best.

2          He can show me exactly what he wants.  Maybe we are

3    miscommunicating or maybe it is just I produced it for some and

4    not all, and I will be happy to do that today, your Honor.  I

5    will get with Mr. Best and we will figure it out.

6          THE COURT:  Thank you, Mr. Bushman.

7          Mr. Best, can you hold off a moment, please.

8          MR. BEST:  It is as basic as --

9          THE COURT:  Mr. Best, Mr. Best, I am going to have to

10   ask you to hold off for just a moment so I can finish hearing

11   what Mr. Bushman has to say and ask him one more question.

12   Thank you.

13         So you are going to meet with or discuss with Mr. Best

14   later what he needs from these trading apps from the Voyager

15   trading app, and I think that that will be helpful, so you can

16   then make the Florida individuals a priority.

17         I want to point out something in Exhibit C that I have

18   here, which is the chart for Mr. Swissner-Gross -- it's

19   actually Wissner-Gross.  Sigmund.  Got it.  Wissner-Gross -- is

20   that there isn't anything here about Eric Rares.

21         MR. WISSNER-GROSS:  That is because he is not a named

22   plaintiff and he is the husband --

23         THE COURT:  Got it.

24         MR. WISSNER-GROSS:  -- of Rachel Gold.

25         THE COURT:  So everything that is Rachel Gold.  OK.  I
```

```
 1    understand.

 2            MR. WISSNER-GROSS:  They just told us recently that he

 3    is the one who made the trading decisions.

 4            THE COURT:  OK.

 5            MR. BUSHMAN:  Not true, your Honor.  He keeps saying

 6    that.  I have told him multiple times -- I have said it

 7    multiple times it is not true.  Ms. Gold made the trading

 8    decisions.  She used marital funds to fund the account and sign

 9    up the account but sign up the account in her husband's name.

10            THE COURT:  OK.

11            MR. BUSHMAN:  She clearly has standing under Eleventh

12    Circuit and Southern District of Florida case law on that

13    particular issue.

14            THE COURT:  OK.

15            MR. BUSHMAN:  We decided to make Mr. Rares available

16    for deposition in case they had questions.  He will have very

17    limited knowledge.

18            THE COURT:  I see.

19            MR. BUSHMAN:  We are going to make him available for

20    deposition.

21            MR. BEST:  Your Honor --

22            THE COURT:  I guess the thing is, yes, so if Mr. Rares

23    is not even a plaintiff, how is it that he is being deposed in

24    this case?

25            MR. BUSHMAN:  Well, we made him available, your
```

1    Honor --

2              MR. BEST:  Your Honor --

3              MR. BUSHMAN:  -- because it was his --

4              THE COURT:  Excuse me.  I'm asking Mr. Bushman.

5              MR. BUSHMAN:  I'm sorry.  I can't --

6              THE COURT:  I'm trying to ask Mr. Bushman.

7              MR. BUSHMAN:  One person at a time, please.

8              We made him available for deposition in case we were

9    going to potentially add him as a class representative.

10             THE COURT:  I see.

11             MR. BUSHMAN:  Because it was his account, even though

12   Ms. Gold made all of the decisions for that account and,

13   frankly, made all the decisions for Mr. Sanford Gold's account

14   as well.

15             THE COURT:  I understand.

16             MR. BUSHMAN:  As they will find out in testimony.

17             THE COURT:  OK.  All right.  Thank you very much.

18             Mr. Best.  So then your other concern was that the

19   crypto --

20             MR. BEST:  If I may just respond to that.  Your Honor,

21   so you know, the reason why this all came to light is because

22   Mr. Moskowitz told us in an email that Rachel Gold was a

23   nominee account and did no trading activity and it was all her

24   husband who opened the account and traded in it and offered him

25   up as a deponent.

```
 1        THE COURT:  OK.

 2        MR. BEST:  I have no idea how to respond to what we

 3   are just hearing now, but that is -- literally, I can read you

 4   the email or we can find it in the next two minutes and read

 5   you the email that Mr. Moskowitz sent to us.

 6        THE COURT:  It is OK, Mr. Best.  We have limited time

 7   and I don't want to go any further with that.  Since the

 8   plaintiffs are offering this gentleman up for deposition, I

 9   think we don't really need to go any further.  All that will be

10   revealed during the deposition and as you get more evidence in

11   the case.

12        I want to talk to you about what your Kerns were with

13   the objections.  I think that is really much more relevant or

14   pressing, is that the information regarding crypto investments.

15   I hear an argument that, Mr. Bushman, that the plaintiffs other

16   cryptocurrency investments is relevant to show, I'm assuming,

17   their level of sophistication in this type of market.  How do

18   you address that?

19        MR. BUSHMAN:  First, their level of sophistication is

20   irrelevant to the claims at issue.  Number two, your Honor,

21   whether or not they traded in crypto and then moved their

22   assets to Voyager, the reason why they moved their assets to

23   Voyager will be produced.  It is whether or not they invested

24   in some other crypto company and, to be honest with you, I

25   don't really understand crypto as well as some.  I could throw
```

1    out names like Blockchain and all this other stuff, but whether

2    or not they invested in company A and put money in company A

3    has nothing to do with whether or not and what they did --

4            THE COURT:  On their reliance upon --

5            MR. BUSHMAN:  -- to put their money into Voyager.

6            THE COURT:  On their reliance upon Mr. Cuban.  OK.

7            MR. BUSHMAN:  Correct.  Correct.  I mean, if they had

8    some sort of reliance upon Mr. Cuban, then they relied upon

9    Mr. Cuban and that will be produced.  If they invested in X

10   other company and that company is still active and moving and

11   going and they have money in that account, the defendants don't

12   have a right to go on a fishing expedition to get every

13   financial document that these plaintiffs have, and that is what

14   they have asked for, your Honor.

15           You have to look at their request.  Their request is

16   basically everything and anything.  If they want to amend their

17   request and send us over another request that is much more

18   tailored to what money they put into a Voyager account or where

19   that money came from from a Voyager account, which we are

20   producing anyway, but if they want to be more specific, I'm

21   happy to deal with that.

22           It is way overbroad.  It is crazy overbroad.  I have

23   never -- nobody would ever file a lawsuit against a particular

24   company if they had to produce all information regarding their

25   entire financial background in order to allow the case to go

1    forward.  It is extraordinarily overbroad, beyond anything

2    that's in the realm.

3            THE COURT:  I agree with you that it is overbroad to

4    ask about all other investments.  As far as cryptocurrency

5    investments, if they are asking simply where the cryptocurrency

6    came from for them to make the trade into Voyager, I do think

7    that would be relevant for purposes of showing that they do

8    have some sophistication in the cryptocurrency market and they

9    were moving from one cryptocurrency market or platform,

10   essentially, to another.

11           MR. MOSKOWITZ:  Your Honor, I think I have --

12           MR. BUSHMAN:  We will agree to produce.

13           MR. MOSKOWITZ:  I think I have a resolution.

14           MR. BUSHMAN:  We will agree to produce --

15           THE COURT:  I'm sorry.  I am getting two different

16   people speaking at the same time.

17           Mr. Bushman or Mr. Moskowitz --

18           MR. BUSHMAN:  I defer to Mr. Moskowitz.

19           THE COURT:  -- you're on the same side.

20           Mr. Moskowitz.

21           MR. MOSKOWITZ:  I'm trying to help my friend out.

22           I think we can make this easier, Judge, because we

23   hear you.  They can ask in the deposition whatever they want.

24   Let's just make it clear.  Anything they want to ask in their

25   deposition, they can ask.  If they want to ask where the money

1    came, if they want to ask how many crypto did you invest in,

2    that's one thing.

3        What Howard is talking about is what is their duty to

4    go back and find documents.  So I think if they really have an

5    interest, which isn't relevant to the claim, but if they want

6    to spend their time in their deposition asking them about their

7    prior history or did they invest in crypto, I say we let them.

8    I say that's fine.  But what we are talking about now is we

9    want to make sure that we have complied with our obligations to

10   provide the documents that they have within their possession --

11       THE COURT:  I understand.

12       MR. MOSKOWITZ:  -- and I think everything about

13   Voyager for a mom-and-pop investor, that's hard to do.

14       We hired an ESI company and they're going through

15   texts and they're going through their databases.  They don't

16   know how to do it themselves.  So we are getting them all.

17       I think the fair compromise, extremely fair, is you go

18   at it, whatever you want to ask them, you go at it if it

19   relates to their investment.  If you want to go on a fishing

20   expedition for seven hours, go do it.

21       THE COURT:  Well, I think what we are talking about,

22   as I see in deficiencies here, Mr. Moskowitz, according to

23   defendants, is they didn't receive any documents identifying

24   the source of funds for any transfers into the account, into

25   the Voyager account.

```
 1              MR. BEST:  Correct.

 2              THE COURT:  So they are looking for documents

 3    identifying the source funds for transfers into the Voyager

 4    account.  I do think that is a reasonable request.

 5              MR. MOSKOWITZ:  Absolutely, your Honor.

 6              THE COURT:  OK.

 7              MR. MOSKOWITZ:  I think Mr. Bushman said anything that

 8    relates to the Voyager trading, such as where did that money

 9    come from, that should be there.  I agree.

10              THE COURT:  OK.

11              MR. MOSKOWITZ:  We don't disagree that anything about

12    the Voyager trades, where did that money come from, where did

13    that money go, I think that is all fair game.

14              THE COURT:  All right.  Thank you.

15              MR. BUSHMAN:  I believe we produced it, your Honor,

16    for at least most, if not all, of the plaintiffs.  It says

17    where did it come from.  Checking account.  So it didn't come

18    from a crypto firm.  It came from a checking account.

19              THE COURT:  I see.

20              MR. BUSHMAN:  Do they want the account number, the

21    bank, the routing number, maybe some blank checks?

22              THE COURT:  Then they will have to be more specific.

23              MR. BUSHMAN:  If it comes from a crypto firm, it will

24    say it there.  If it doesn't say it, we will go find it.

25              THE COURT:  OK.
```

```
 1              MR. WISSNER-GROSS:  Your Honor, could we --
 2              MR. BEST:  For instance, Robertson funded his Voyager
 3    account with cryptocurrency.  We have no information from the
 4    plaintiffs as to the source of funds.
 5              MR. WISSNER-GROSS:  We don't know if it is his
 6    crypto --
 7              MR. MOSKOWITZ:  Ask him.  You are going to depose him
 8    for seven hours.
 9              MR. WISSNER-GROSS:  This is a little bit
10    unfortunate --
11              MR. BEST:  With all due respect, I am speaking to the
12    court.
13              THE COURT:  Sorry.  Sorry.  Sorry.
14              MR. WISSNER-GROSS:  Excuse me.  This is --
15              THE COURT:  One person at a time.  One person at a
16    time.
17              MR. WISSNER-GROSS:  This is a double standard.
18              THE COURT:  It is not possible for me to handle that.
19    OK.
20              MR. WISSNER-GROSS:  Your Honor --
21              THE COURT:  So what I am hearing is that you want more
22    information.  You will have the information with regard to
23    where the money came from, the source, and that's what you are
24    asking for here on your document request.  If you need further
25    information, you can get that through the deposition, and
```

```
1    that's fine.

2           MR. WISSNER-GROSS:  Your Honor, with respect to

3    Mr. Robertson, we just have a specific concern.

4           THE COURT:  And you will be able to address those.

5           MR. WISSNER-GROSS:  The money in the account may not

6    be his.  He is claiming damages.  We have no idea if he is

7    trading other people's money.  We have no idea.

8           THE COURT:  All right.

9           MR. WISSNER-GROSS:  And there is a fact pattern there

10   that really, going into a deposition, has red flags all over

11   it.  So knowing the source and if he -- again, if people have

12   other crypto accounts and they are actively trading in other

13   crypto accounts -- with these accounts, you open an account and

14   then you are buying and selling crypto.  If they are actively

15   engaging in a similar pattern in other accounts, in other

16   crypto accounts --

17          MR. BUSHMAN:  And let me --

18          THE COURT:  That sounds like something you might want

19   to file a motion on and I can take a look at if there is

20   something specific --

21          MR. BUSHMAN:  Right.  Your Honor, the defendant should

22   be very --

23          THE COURT:  -- but I am not hearing in enough specific

24   argument right now to be able to rule on that issue.

25          MR. BUSHMAN:  Correct.  Your Honor, the defendant
```

1   should be very careful what they wish for because Mark Cuban

2   said he was all in, he was a Voyager investor, he put his money

3   in, blah, blah, blah.  Are we entitled to compare his crypto,

4   all of his crypto investments across all of his crypto

5   platforms to see if he truly was all in with Voyager or whether

6   he just had a nominal investment compared to all of his other

7   ones.

8          So we have to make sure that we keep our eye on the

9   ball.  We have to make sure we keep ourself very, very narrow,

10   or else once we start to splinter, what is good for the goose

11   is good for the gander, and then we will start asking for a

12   whole bunch more stuff as it relates to Mr. Cuban.

13          MR. MOSKOWITZ:  Well, Mr. Bushman, clearly whatever

14   ruling we get --

15          MR. BUSHMAN:  There is the eye on the ball.

16          MR. MOSKOWITZ:  Whatever ruling we get about what

17   account information is required, of course it is going to

18   require to Mr. Cuban's account.  If we have to tell you every

19   plaintiff's money that came in, where did it go, why wouldn't

20   that apply to Mr. Cuban?

21          MR. WISSNER-GROSS:  Because your clients are the ones

22   that are alleged are lying.

23          THE COURT:  OK.  Thank you, counsel.  I am going to

24   have to ask that everybody stop for a moment.  We have only

25   about ten minutes left and I have one more issue that we want

```
 1    to address.

 2              MR. BEST:  If I may on this last point, your Honor.

 3    This is Stephen Best.

 4              It is as easy as this.  Is Mr. Robertson funding his

 5    Voyager account in his name with his money or with other

 6    people's money?

 7              The reason why that is important is because at about

 8    the same time he was noting in court filings his indigency

 9    status, we have reason to believe that he may have been funding

10    his account with other people's money, which goes to his

11    standing, because of course we have to believe that he is not

12    going to make a fraudulent filing in another court of Florida,

13    at the same time he is funding his crypto account with $30,000.

14    That is a very relevant issue, and that is one of the reasons

15    I'm bringing it up in its simplest form, we would like to get

16    clarity on.

17              THE COURT:  Thank you.

18              Let's move on to the final topic that we can discuss

19    today, which would be the depositions of Mr. Mackey and

20    Mr. Tapply.  These are individuals from the basketball, the

21    Mavericks.

22              MR. MOSKOWITZ:  Yes, your Honor.  We asked in an

23    interrogatory --

24              THE COURT:  Have dates been presented to the

25    plaintiffs with regard to their depositions?
```

| | |
|---|---|
| 1 | MR. MOSKOWITZ:  So we have asked in an interrogatory |
| 2 | who has personal knowledge about the Voyager/Mavericks contract |
| 3 | and about the press conference.  Who planned it?  How did you |
| 4 | target the people?  What were the education that you were going |
| 5 | to provide to the different people?  We know it reached |
| 6 | Florida, but those are things that we can contest later.  We |
| 7 | need the discovery. |
| 8 | So Mr. Boies raised the issue last week in the hearing |
| 9 | and he said, if we are going to set any of the plaintiff's |
| 10 | depositions, which are brand new because those weren't sought |
| 11 | until after the motion to stay, we could at least take some of |
| 12 | the Maverick depositions.  You are letting Mr. Cuban go 90 days |
| 13 | away, but how about Mr. Mackey and Mr. Tapply, because they're |
| 14 | the communications directors.  Your Honor said, I see no reason |
| 15 | why you can't depose them in January.  Mr. Boies said, thank |
| 16 | you very much for that ruling, your Honor. |
| 17 | So they were supposed to go before any of these |
| 18 | plaintiffs, because they're not Mr. Cuban, they're not |
| 19 | billionaires.  We have been asking them for a couple of months. |
| 20 | Your Honor ended the ruling with, I see no reason they |
| 21 | shouldn't be produced in January. |
| 22 | So we followed up and asked them in a meet and confer, |
| 23 | and their response was, we don't have any dates for you for |
| 24 | either of them in January, period.  We said, please, reconsider |
| 25 | that before we have to go back to Judge Reid.  Here's the |

```
 1   transcript.  She told Mr. Boies, you can definitely get these

 2   two people in January.  Judge Altman denied the motion to stay.

 3   They're just asking for two.  And we don't have a date.

 4           THE COURT:  OK.  Mr. Wissner-Gross.  Who is going to

 5   handle that?

 6           MR. WISSNER-GROSS:  Your Honor, I think,

 7   unfortunately, that Mr. Moskowitz has mischaracterized the

 8   transcript.  As I recall, and I'm happy to go back, I think we

 9   said we are not sure of their availability.

10           We have gone back to check their availability.

11   They're available between February 25th and February 28th.  We

12   have asked if those dates would work.  We have asked for dates

13   for them for March.  Some of this gets tied into their work at

14   the Mavs in terms of other commitments.

15           We have been advised --

16           MR. BEST:  Including the All-Star Game, which they are

17   utterly and completely consumed with during this period of

18   time.

19           THE COURT:  Mr. Best, I really appreciate your

20   comments but it is hard for me to hear both you and

21   Mr. Wissner-Gross, and since you are both on the same team, so

22   to speak, I will hear what Mr. Wissner-Gross has to say.

23           MR. WISSNER-GROSS:  They are available in Dallas

24   during the period February 25 to February 28.

25           THE COURT:  Why can't they be available earlier?
```

```
1          MR. WISSNER-GROSS:  They're just not.  I mean, our

2    understanding is they are not available.  As Mr. Best said,

3    they have other commitments with the Mavs.

4          THE COURT:  Because of work commitments?

5          MR. WISSNER-GROSS:  Yes.

6          THE COURT:  So, Mr. Moskowitz, why do you need to

7    depose them before the February 25th date?

8          MR. MOSKOWITZ:  Your Honor, this was the only

9    depositions we were seeking.  Now the discovery has been

10   pending five months.  These are individuals that the Mavericks

11   identified under oath as having personal knowledge of the

12   Voyager/Maverick connection and the press conference.  This is

13   their marketing director.  So if there is anybody who is going

14   to know about jurisdictional discovery, it is going to be them.

15         THE COURT:  OK.

16         MR. MOSKOWITZ:  We know that the January 3rd

17   discovery, your Honor, those 25 documents, they didn't include

18   a single document from any of those four individuals.  So

19   clearly it falls within jurisdictional discovery, but as

20   Mr. Boies told you, how is it fair if we have been asking for

21   four months for these two individuals and he said you can give

22   Mr. Cuban 90 days, he may be some billionaire, although he was

23   on CNBC yesterday talking about cryptocurrency, but give him

24   three months.  But just these two regular professionals that

25   have personal knowledge, you are going to give them November,
```

1    December, January, a pass for all of this, when now Judge

2    Altman has finally set a deadline of February 24th?  They

3    ironically want to give us the day after we have to do it?

4         Your Honor ruled, and with have the transcript.  If

5    they need the transcript -- you said to Mr. Boies:  What would

6    you like.  He said:  Judge, I would just like them in January.

7    And you said:  I see no reason why that can't happen.

8         That is how we ended up.  That was your Honor's ruling

9    December 20th.  So you had given them six weeks to give us any

10   two dates for these individuals, that are not the President of

11   the United States.  There is no apex affidavits.  There is no

12   affidavits in the record that they have some incredible

13   responsibility.

14        You told Mr. Boies:  I think getting them in January,

15   if they're demanding plaintiffs' depositions, that's

16   reasonable.  And we never got it.  Now we are up to January 6th

17   and we still don't have their deposition.

18        I think it is reasonable for you to order them within

19   the next 30 days to give us one day in any location -- we will

20   go fly out there -- to take each of their depositions.  Judge

21   Altman denied the motion to stay.  This is all we have.  We are

22   not asking for ten depositions.  We asked for two, and the only

23   reason we picked them is they identified them as personal

24   knowledge about the Voyager/Mavericks contract and about the

25   press conference where Mr. Cuban says I'm targeting all of the

```
 1   Mav fans around the country.  We think that's reasonable.
 2             THE COURT:  Mr. Moskowitz, when did they identify
 3   these two witnesses?
 4             MR. MOSKOWITZ:  I believe in August to state early
 5   December.
 6             THE COURT:  OK.  Mr. Wissner-Gross, I'm very concerned
 7   that the first date they are available is the date after the
 8   motion must be filed.  I'm very concerned.  There must be some
 9   way to get them earlier than that.
10             MR. WISSNER-GROSS:  Your Honor, first of all, let's
11   correct the record.  He said that they were identified four to
12   five months ago.  They were first identified in November.
13             THE COURT:  OK.
14             MR. WISSNER-GROSS:  Not four to five months ago.
15             THE COURT:  All right.
16             MR. WISSNER-GROSS:  In November in a discovery
17   response.  I don't remember when.  It was thereafter that he
18   requested their deposition.  So not four to five months ago.
19   They were first identified in November and then in December at
20   the hearing.
21             As I recall -- I can go back and check the
22   transcript -- I had indicated that we weren't sure about their
23   availability.  I know Mr. Boies interjected in the end, well,
24   gee, we'd like to take them.  These are senior executives.
25   Mr. Best has talked about their commitments.  They are not
```

```
 1    retired like some of the plaintiffs.
 2              THE COURT:  I understand.
 3              MR. WISSNER-GROSS:  They have travel and other
 4    commitments.  I actually -- we could give them dates in March,
 5    but would it be any different if he wants March?  These are the
 6    first dates.  I haven't spoken to them.  This is what been
 7    communicated to me as the earliest availability.
 8              THE COURT:  OK.  Well, here's the court's concern.
 9    Because we have an extended deadline now of February 24th,
10    their depositions are needed prior to that.
11              MR. WISSNER-GROSS:  He can say as much as he wants
12    that they are relevant to jurisdiction.  They have nothing to
13    do with jurisdiction.  You know what, he is going to get
14    document production on a rolling basis --
15              THE COURT:  So then maybe what we need to do --
16              MR. WISSNER-GROSS:  -- starting on the 13th.  If he
17    sees --
18              THE COURT:  -- is have their document production to
19    show that they don't have any knowledge.
20              When will their documents be produced?
21              MR. WISSNER-GROSS:  Let's prioritize that on a rolling
22    production.  He is not bashful.  If he thinks that there is a
23    credible basis, that he really needs them on the issues of
24    jurisdiction, for example, we can come back to the court.
25              THE COURT:  OK.  So let me go back to that.  When were
```

```
 1    documents requested from those individuals?
 2              MR. WISSNER-GROSS:  Unfortunately, I haven't been
 3    involved.  It is the associates.  My understanding is that
 4    there was a general search which would have covered them as
 5    well as part of the process by which the jurisdictional
 6    documents were produced.  So I think there was a search within
 7    the Mavs organization for any hits for Florida or contacts that
 8    would have been relevant.
 9              MR. MOSKOWITZ:  Your Honor, this is my concern.  Your
10    Honor, this is my concern.  When we got the jurisdictional
11    discovery, OK, and that is why I played those videoconferences
12    for you.  This is a national press conference where he says
13    we're targeting our Mavs fans all across the country, and Steve
14    Ehrlich is saying the reason we got Mark Cuban is he is
15    nationwide known, famous, for cryptocurrency, and two weeks
16    later or a few weeks later Mark Cuban comes to Miami and he is
17    the headliner in the conference.  So that is the targeting that
18    Mr. Boies asked you about.
19              They went and somehow got all the documents from these
20    four people that know about the conference and there is not a
21    single document about how they planned the press conference,
22    who they targeted.  I mean, this is --
23              MR. WISSNER-GROSS:  No, no, no.
24              MR. MOSKOWITZ:  Can I finish?
25              This is a great corporation.  They plan things very
```

```
 1    carefully.  So they know who they are targeting.  They know who
 2    they want to go after.  Mr. Cuban says, we're going to do
 3    education around the country, we're going to reach all of our
 4    fans.  Where are the documents about all of that, where their
 5    marketing people are going to target?  How much was the
 6    response?  We know 40 million was sold in the State of Florida.
 7    It was a very successful press conference.
 8            So what I'm saying is they went through, they said
 9    they did a check.  They didn't because they didn't produce one
10    document from these four.  So let's get their documents next
11    week and let's get a date within the month to depose these two
12    people.
13            In any other case besides a billion dollar damage case
14    like we have here two depositions and their documents would be
15    nothing.  We just went through the investors that are
16    struggling.  Here we want two Mav executives that in November
17    were identified as having personal knowledge.  Not just
18    involved, they had personal knowledge.  We want all their
19    documents within -- it was supposed to be January 3rd.  Give
20    them another week and give us their documents by the end of
21    January so we can use it before the February 24th deadline.  We
22    think that's very reasonable.
23            MR. WISSNER-GROSS:  Your Honor, I'm advised, and this
24    is the qualification -- I didn't personally do the document
25    review -- I am advised in realtime that in connection with the
```

1   January 3rd production that any jurisdictional documents these

2   two individuals would have had have been reviewed.  In other

3   words, there's been no self-selection.

4          Again, I come to the point that I think Mr. Moskowitz

5   is embellishing substantially in terms of the -- at the press

6   conference itself what actually Mr. Ehrlich said is he is

7   looking at an opportunity for developing crypto in Dallas.  You

8   won't find any reference to Florida.

9          THE COURT:  I'm struggling to understand.  There's a

10  lot --

11         MR. WISSNER-GROSS:  That becomes -- in any event,

12  we're happy --

13         THE COURT:  Mr. Wissner-Gross, I'm struggling to

14  understand something here.  OK.  There were documents requested

15  at some point from representatives of the Mavericks regarding

16  the press conference?

17         MR. WISSNER-GROSS:  The request is -- documents in

18  connection with the press conference are part of the general

19  review that I said is going on.  We are going to be giving

20  rolling production on the 13th.

21         THE COURT:  And those documents have not yet been

22  produced.

23         MR. WISSNER-GROSS:  What we did is we accelerated the

24  production for January 3rd for any documents, regardless of

25  from whom, that would relate to any contacts by either the

1    Mavs, and these two individuals work for the Mavs, or Mr. Cuban

2    with Florida.  So if Mr. Cuban, for example --

3             THE COURT:  OK.

4             MR. WISSNER-GROSS:  -- if he had a family vacation in

5    Florida, it was produced.

6             For the Mavs, the search was done to see if there are

7    any contacts whatsoever by the Mavs in any respect to the State

8    of Florida.

9             THE COURT:  That's Florida.

10            MR. WISSNER-GROSS:  Yes.

11            THE COURT:  Now we are talking about press conferences

12   and promotions.

13            MR. WISSNER-GROSS:  There's only one press conference

14   on January -- excuse me, on October 27, 2021 in Dallas.  One.

15   That's it.

16            THE COURT:  OK.

17            MR. WISSNER-GROSS:  No --

18            MR. BOIES:  Your Honor --

19            THE COURT:  OK.  So have you produced the documents

20   with respect to that?

21            MR. BOIES:  Your Honor, can I just address one thing?

22   They said that they produced all the jurisdictional documents.

23            THE COURT:  Right.

24            MR. BOIES:  The problem is, what they did, and this is

25   what they said, they produced all the documents with respect to

```
1    travel.
2             THE COURT:  Exactly.
3             MR. BOIES:  Jurisdiction is broader than that.
4             THE COURT:  Than physical presence.  That is what I am
5    trying to get at with Mr. Wissner-Gross.
6             MR. BOIES:  It's been almost a month, not quite a
7    month, it was almost a month since they were told to produce
8    people in January.  I know people are busy.  Most of my
9    practice is representing large corporations.  Executives make
10   themselves available for depositions in court cases,
11   particularly when it is a one-day deposition in federal court.
12   So it just can't be that these two people can't be made
13   available for a deposition in January.
14            THE COURT:  It seems to me that that is the case.
15            We are going on cross-purposes, Mr. Wissner-Gross.  If
16   you are talking about, yes, you produced documents with respect
17   to connections with Florida, but we are talking about
18   connections with respect to promotion of cryptocurrency by
19   Mr. Cuban, and it is bigger than that.  So my concern is this.
20            These two individuals have been identified by your
21   company, by your client as individuals having that knowledge.
22   They need to be available for depositions before, significantly
23   before February 24 in order for their knowledge, their
24   testimony, their information to be part of the response with
25   regard to jurisdiction.
```

```
 1            MR. WISSNER-GROSS:  Your Honor, can we --

 2            THE COURT:  So let's go back and see if you can

 3    discuss with them their availability prior to February 24th,

 4    and it would at least have to be within the first two weeks of

 5    February.

 6            MR. WISSNER-GROSS:  So are you talking about their

 7    knowledge with respect to issues pertaining to jurisdiction or

 8    more generally?

 9            THE COURT:  Well, let's not say jurisdiction because

10    when we say that word we don't have the same understanding.

11            MR. WISSNER-GROSS:  Your Honor, we respectfully submit

12    that we are happy to prioritize the production, the rolling

13    production to focus on documents, for example, on the press

14    conference --

15            THE COURT:  Good.

16            MR. WISSNER-GROSS:  -- whatever role they had with the

17    press conference.  Let's do that.  Then if the plaintiffs think

18    that there is a basis for --

19            THE COURT:  No, prioritize it for before the end of

20    January.

21            MR. WISSNER-GROSS:  I am talking about not deposition,

22    but let's give them the documents.

23            THE COURT:  Good.

24            MR. WISSNER-GROSS:  I don't think there is a credible

25    basis --
```

```
 1              THE COURT:  Let's start with that.  Documents before

 2    the end of January.  But then deposition.

 3              MR. WISSNER-GROSS:  Let's prioritize that and let the

 4    plaintiffs make -- because I don't think they will be able to

 5    make the case -- let them make the case as to why they

 6    absolutely need to have these two individuals before the 24th.

 7              I mean, they are going to have, as I said, on a

 8    rolling basis all the documents that relate to the press

 9    conference, relating to any interactions, the Mavs with Voyager

10    after the press conference, relating to the approach to the

11    Mavs that was by Voyager beginning in August.  They will have

12    that.

13              MR. MOSKOWITZ:  Your Honor, we are back-pedaling now.

14              MR. BOIES:  Allen, Allen, Allen, can I just say

15    something?

16              THE COURT:  Excuse me.  Everyone.  Everyone.  Hold on

17    just a minute.

18              Mr. Wissner-Gross, I don't want to have to come back

19    on this issue, and I don't see any reason to.  I think, yes, I

20    agree you should prioritize your document production for that

21    before the end of January, but I would like for you to go back

22    to these individuals, Mr. Mackey and Mr. Tapply, and get dates

23    prior to February 24th for their depositions.

24              MR. WISSNER-GROSS:  We will go back and consult with

25    them, your Honor.  As I said, I am not the one in contact with
```

1    them.   I mean, I was told that they have other commitments.

2            THE COURT:   I understand.

3            MR. WISSNER-GROSS:   Business commitments.   These are

4    the dates they are available.   I did not want to give dates in

5    March.   I figure that I could do March, but I tried to figure

6    out what the earliest date was available.

7            Respectfully, your Honor, I still think that the

8    articulation of the concept that because the law is that if

9    there is a press conference in Dallas that that provides a

10   basis for jurisdiction in Florida is just not supported in the

11   law.

12           THE COURT:   And we can argue that.   We can argue that,

13   but I don't want to go down that road.   That is the allegation

14   that's been made and the discovery needs to be then produced

15   prior to the 24th.   We have already asked Judge Altman for an

16   extension and he has been very generous in granting that.   So

17   we want to work within that extension.

18           As I understand it, you are going to prioritize any

19   document discovery for those gentlemen before the end of

20   January and then go back to them and get a date prior to the

21   24th of February for their deposition.

22           MR. WISSNER-GROSS:   On a rolling basis, as I said.   We

23   explained to you the process we are going through.

24           We spent a lot of time and effort.   They can minimize

25   as they want.   We did produce a lot of documents on

1    jurisdiction.  The fact that it doesn't show what they want it

2    to show, and it's confirmatory exactly what is in the

3    declaration, doesn't mean that we haven't done a lot of work to

4    produce everything.

5         THE COURT:  I appreciate that.

6         MR. WISSNER-GROSS:  We hear you, your Honor.  So I

7    will go back and we will speak internally.

8         THE COURT:  I appreciate that.  OK.  So we have

9    resolved that.  So going back to the issue with regard to the

10   depositions of the plaintiffs.  Because there are documents

11   still to be produced in advance of their depositions, and we

12   don't know yet their availability for the dates on the 12th and

13   the 13th, what I propose is that both sides work as quickly as

14   possible to get those documents in order and produce, plaintiff

15   should produce the rest of the documents requested as we have

16   discussed.  However, we have to be cognizant of the fact that

17   there are schedules involved.

18        The dates of January 23rd and 24th have already been

19   offered, and they certainly fall within the month of January

20   and are well within the discovery period for February 24 that

21   the court has extended.  So if it has to be that those

22   depositions are on the 23rd and 24th, I see no prejudice to the

23   defendants, and that the only give them more time to review the

24   documents that the plaintiffs are producing by the end of next

25   week.

 1              So having heard all of the arguments, I think that has

 2      resolved most of the major issues that we needed to look at

 3      today.

 4              MR. MOSKOWITZ:  The only remaining issue, Judge, is a

 5      small one but it relates to jurisdiction.  One of the

 6      components by the Supreme Court is whether you have a financial

 7      interest when you're targeting that district.  They have

 8      already told us that Mr. Cuban had his own Voyager account.

 9      He's very happy with it.  He traded in it for a few months.

10      All we have been asking for is give us the information for

11      Mr. Cuban's trading account, and we'd like to have that next

12      week.  We thought that was --

13              MR. BEST:  Your Honor, I'll make this clear, your

14      Honor.  At the same time they turn over the trading information

15      for their Florida-based clients, we'll turn over the trading

16      information, now that we understand that this is not a

17      jurisdictional discovery deposition for Cuban, we will be

18      turning it over as well.

19              MR. BUSHMAN:  We turned it over last night, your

20      Honor.

21              MR. MOSKOWITZ:  We turned ours over, and this is

22      just -- David.

23              MR. BOIES:  If they say they will turn it over when we

24      turn it over, we ought to accept that and we ought to make

25      clear that we be sure we turn ours over and then we want to ask

```
 1    them for theirs.

 2              MR. BEST:  Thank you very much.

 3              THE COURT:  That sounds like an excellent plan.

 4              All right.  Thank you, gentlemen.

 5              (Adjourned)

 6

 7                    C E R T I F I C A T E

 8

 9         I hereby certify that the foregoing is an accurate

10    transcription to the best of my ability of the digital audio

11    recording in the above-entitled matter.

12

13    January 9, 2023          s/ Joanne Mancari
                                Joanne Mancari, RPR, CRR, CSR
14                              Court Reporter
                                jemancari@gmail.com
15

16

17

18

19

20

21

22

23

24

25
```

A VOICE: [2]  13/7 35/7
MR. BEST: [34]  4/21 13/8 13/23 14/12
20/13 23/8 23/14 23/17 30/23 32/14 48/2
49/13 51/24 52/6 55/4 55/8 60/8 66/15
75/8 75/10 76/6 76/24 77/8 78/21 79/2
79/20 80/2 84/1 85/2 85/11 88/2 90/16
104/13 105/2
MR. BOIES: [21]  4/12 4/17 25/8 34/23
48/18 50/17 51/2 51/6 51/12 52/8 53/2
53/8 53/12 54/12 98/18 98/21 98/24 99/3
99/6 101/14 104/23
MR. BUSHMAN: [60]  48/25 49/2 49/5
49/8 49/22 50/1 50/12 50/22 55/11 56/22
58/7 59/2 66/1 66/16 66/20 68/23 69/7
69/10 69/14 69/21 70/2 70/13 70/18
70/23 71/3 71/7 71/19 71/25 72/13 72/20
72/23 73/23 74/14 76/11 76/14 76/25
78/5 78/11 78/15 78/19 78/25 79/5 79/5
79/7 79/11 79/16 80/19 81/5 81/7 82/12
82/14 82/18 84/15 84/20 84/22 86/17
86/21 86/25 87/15 104/19
MR. KNIGHT: [3]  10/12 10/14 29/17
MR. MOSKOWITZ: [54]  4/7 5/13 9/25
10/4 10/6 10/11 10/13 10/18 10/21 10/21
11/3 11/5 11/15 26/23 35/20 40/1 40/6
44/5 44/10 45/4 45/9 45/22 46/3 46/3
46/5 46/18 47/2 47/5 47/10 48/9 48/14
49/17 64/4 65/25 82/11 82/13 82/21
83/12 84/5 84/7 84/11 85/7 87/13 87/16
88/22 89/1 91/8 91/16 93/4 95/9 95/24
101/13 104/4 104/21
MR. WISSNER-GROSS: [132]
MS. WOLKINSON: [1]  54/11
THE COURT: [231]

**$**
$100 [1]  40/20
$120 [1]  38/4
$18 [1]  41/8
$200,000 [1]  38/13
$30,000 [3]  37/5 38/6 88/13
$40 [2]  7/21 28/7
$5 [1]  8/24
$500 [2]  8/24 28/15

**'**
'21 [1]  36/20

**1**
10 [2]  70/25 71/12
100 [2]  2/10 66/22
105 [1]  1/7
10504 [1]  2/5
10b-5 [1]  24/7
1100 [1]  14/3
11036 [1]  2/21
12 [3]  18/11 36/2 36/11
12th [6]  51/10 57/20 58/4 58/5 59/8
103/12
13 [1]  18/6
130 [1]  38/4
1395 [1]  3/5
13th [13]  10/25 16/20 16/23 25/2 50/7
57/20 58/5 58/5 59/8 72/24 94/16 97/20
103/13
1423 [1]  1/17
15 [2]  70/25 71/12
17 [1]  49/24
1737 [1]  2/16

17th [1]  59/3

**2**
20 [3]  40/2 63/8 71/12
20005 [1]  2/15
2006 [1]  41/7
2009 [1]  38/10
202 [1]  2/16
2021 [10]  30/15 31/16 36/4 36/9 36/24
37/2 37/3 38/1 62/6 98/14
2022 [1]  38/14
2023 [2]  1/5 105/13
209-4930 [1]  2/21
20th [7]  6/3 10/22 12/7 15/9 33/19 36/1
92/9
212 [1]  2/21
22 [1]  4/4
22-CV-22538-RKA [1]  1/2
22538 [1]  4/4
22nd [2]  37/16 47/25
23rd [15]  48/25 49/16 49/18 49/21 51/3
51/8 53/15 54/4 54/8 54/12 54/14 55/25
72/25 103/18 103/22
24 [4]  54/24 63/22 99/23 103/20
24th [23]  6/13 7/10 11/12 29/10 49/2
51/3 54/18 55/4 55/17 55/25 58/12 59/10
74/18 92/2 94/9 96/21 100/3 101/6
101/23 102/15 102/21 103/18 103/22
25 [4]  27/3 27/5 90/24 91/17
25,000 [1]  16/22
25th [4]  55/6 58/13 90/11 91/7
26th [2]  43/17 49/8
27 [3]  30/15 36/4 98/14
27th [2]  21/18 30/14
28 [2]  35/6 90/24
28th [2]  61/18 90/11
2nd [4]  2/10 12/9 29/12 61/8

**3**
30 [4]  22/18 22/19 46/5 92/19
305 [3]  1/17 2/11 3/6
30th [4]  41/23 50/20 51/8 51/9
31st [1]  51/3
33131 [2]  2/10 3/5
33134 [1]  1/16
333 [1]  2/5
3rd [8]  7/15 10/24 13/21 29/2 91/16
92/19 97/1 97/24

**4**
40 [2]  38/4 96/6
45,000 [1]  16/21
4930 [1]  2/21

**5**
50 [1]  28/1
536-1737 [1]  2/16
539-8400 [1]  2/11

**6**
601 [1]  2/15
67 [1]  36/20
6th [2]  48/4 92/16

**7**
70s [1]  59/13
728-7539 [1]  3/6
740-1423 [1]  1/17
749-8200 [1]  2/6
7539 [1]  3/6

**8**
8200 [1]  2/6
8400 [1]  2/11

**9**
90 [2]  89/12 91/22
914 [1]  2/5
9b [1]  24/7
9th [4]  51/11 51/12 51/12 54/2

**A**
ability [2]  71/23 105/10
able [17]  7/20 13/6 21/12 41/19 53/2
55/13 58/17 64/14 66/13 66/14 71/9 72/5
72/10 73/6 86/4 86/24 101/4
aboies [1]  2/7
about [98]  5/9 5/19 8/18 8/20 10/10 11/7
12/22 13/6 16/8 16/22 17/16 19/12 20/9
20/12 21/13 22/19 26/3 27/15 27/18
27/19 29/18 30/18 31/22 33/7 35/24
35/25 36/9 36/12 36/17 38/13 39/1 39/6
39/7 40/2 40/8 41/10 41/13 44/16 44/17
47/10 47/11 51/7 53/16 54/15 55/2 56/4
56/8 56/22 57/25 59/16 60/3 60/7 60/16
64/8 64/9 64/22 65/20 65/20 65/20 65/21
65/22 67/6 68/8 69/15 70/8 70/17 71/9
71/20 77/20 80/12 82/4 83/3 83/6 83/8
83/12 83/21 84/11 87/16 87/25 88/7 89/2
89/3 89/13 91/14 91/23 92/24 92/24
93/22 93/25 95/18 95/20 95/21 96/4
98/11 99/16 99/17 100/6 100/21
above [1]  105/11
above-entitled [1]  105/11
absolute [1]  33/23
absolutely [10]  11/3 17/20 24/20 25/3
32/11 44/5 53/24 66/25 84/5 101/6
accelerate [1]  15/3
accelerated [1]  97/23
accept [1]  104/24
acceptable [1]  39/23
access [1]  70/20
accommodate [3]  43/8 51/14 54/4
accommodating [3]  30/20 57/9 57/11
accommodation [2]  51/16 51/17
accommodations [1]  59/4
accompanied [1]  14/19
according [2]  42/1 83/22
account [62]  8/23 26/4 28/14 28/15
28/16 36/7 36/8 36/13 37/6 38/6 38/12
38/14 38/18 39/8 41/24 42/1 47/11 47/12
56/18 60/11 60/16 62/7 62/19 64/9 64/12
64/18 64/22 65/20 67/11 67/13 69/12
69/12 75/13 75/24 76/3 78/8 78/9 78/9
79/11 79/12 79/13 79/23 79/24 81/11
81/18 81/19 83/24 83/25 84/4 84/17
84/18 84/20 85/3 86/5 86/13 87/17 87/18
88/5 88/10 88/13 104/8 104/11
accounts [33]  6/20 34/5 34/5 34/6 34/13
36/3 38/5 38/21 39/6 39/9 40/15 60/22
62/14 62/24 62/25 63/16 63/15 65/15
67/3 67/10 67/15 67/16 69/4 69/16 70/10
75/20 75/23 76/2 86/12 86/13 86/13
86/15 86/16
accurate [1]  105/9
across [2]  87/4 95/13
acted [1]  34/4
action [2]  19/20 44/3
active [2]  24/2 81/10
actively [2]  86/12 86/14
activity [6]  60/23 60/23 61/5 75/13 76/24

**A**

activity... [1]  79/23
actor [1]  43/7
actual [1]  71/13
actually [13]  11/21 22/24 23/2 30/22
33/23 34/16 37/5 42/8 56/13 60/4 77/19
94/4 97/6
adam [3]  1/14 1/17 4/8
add [11]  6/6 6/15 15/12 15/14 15/17
19/7 20/19 44/14 44/14 64/5 79/9
addition [2]  25/23 26/24
additional [2]  15/14 44/14
address [7]  11/24 13/4 14/2 80/18 86/4
88/1 98/21
addressing [1]  64/3
adequate [1]  42/10
Adjourned [1]  105/5
admission [1]  42/5
advance [3]  17/7 63/21 103/11
advice [3]  69/19 69/25 70/5
advised [3]  90/15 96/23 96/25
advisors [2]  38/21 63/3
affidavits [2]  92/11 92/12
after [26]  6/8 6/25 7/3 11/10 13/21 18/10
29/12 31/18 38/11 40/15 43/13 44/10
44/11 50/4 50/22 50/24 50/25 57/2 64/6
65/8 76/23 89/11 92/3 93/7 96/2 101/10
afternoon [1]  57/1
afterwards [1]  28/7
again [15]  4/8 6/18 8/8 9/23 13/12 23/10
29/8 46/22 55/12 58/3 64/8 66/17 75/11
86/11 97/4
against [5]  7/19 15/19 28/9 68/18 81/23
age [1]  56/9
agnostic [1]  57/20
ago [11]  7/25 9/11 26/15 52/10 70/25
70/25 71/13 71/20 93/12 93/14 93/18
agree [7]  10/23 25/11 82/3 82/12 82/14
84/9 101/20
agreed [2]  33/18 51/14
agreement [4]  8/1 21/16 27/19 67/8
agreements [1]  15/23
ahead [6]  16/25 23/1 23/22 24/14 50/17
66/19
air [1]  16/8
al [2]  1/3 1/6
ALEXANDER [2]  2/4 4/15
ALEXANDRA [1]  3/3
Alhambra [1]  1/16
aligned [1]  64/14
all [161]
All-Star [1]  90/16
allegation [6]  34/1 34/11 45/23 67/20
68/1 102/13
allegations [3]  34/7 46/20
allege [3]  36/5 38/18 47/1
alleged [1]  87/22
allegedly [1]  42/4
alleges [1]  36/6
Allen [3]  101/14 101/14 101/14
allow [3]  55/19 56/3 81/25
allowed [1]  28/8
allowing [1]  18/21
Ally [1]  4/23
almost [5]  5/15 38/13 44/14 99/6 99/7
alone [1]  63/11
along [2]  5/19 56/24
already [14]  7/2 15/2 20/14 20/25 21/11
23/4 23/11 26/1 31/23 72/14 74/9 102/15
103/18 104/8

also [19]  4/13 4/22 4/24 13/9 19/1 20/8
41/25 52/24 61/8 61/10 65/9 71/6 76/1
54/20 56/2 56/1 61/23 66/20 72/6
Alternatively [1]  42/25
although [4]  15/18 16/24 62/8 91/22
Altman [21]  6/17 7/8 8/14 10/18 10/18
11/6 11/8 11/15 12/11 12/12 26/16 26/16
28/24 29/10 30/2 32/4 32/19 90/2 92/2
92/21 102/15
Altman's [2]  26/18 26/21
Altonaga [1]  28/9
always [1]  73/24
am [31]  5/5 9/13 9/21 10/19 10/19 11/13
13/17 16/12 26/16 27/9 29/9 30/3 30/16
32/2 32/6 34/2 35/20 40/7 47/14 50/25
66/22 77/9 82/15 85/11 85/21 86/23
87/23 96/25 99/4 100/21 101/25
amend [9]  6/14 20/15 21/1 23/12 32/18
32/20 32/23 44/19 81/16
amended [3]  20/18 29/9 34/3
amending [1]  17/24
amendment [1]  22/3
amends [1]  16/4
amount [2]  13/21 36/23
Android [1]  60/19
announce [1]  37/1
announced [1]  38/12
another [12]  19/20 21/4 22/3 30/8 46/13
55/24 59/22 62/19 81/17 82/10 88/12
96/20
answer [6]  20/5 30/5 50/12 68/9 68/11
71/17
any [68]  6/20 7/16 8/6 8/8 11/13 13/11
14/9 17/12 17/12 18/8 19/13 19/22 21/15
23/6 27/23 27/24 29/23 31/4 31/12 39/6
39/9 39/11 40/16 47/23 51/20 51/21
52/14 59/16 59/16 60/21 60/25 63/1 63/4
65/22 67/10 67/24 67/25 68/15 68/22
69/4 69/5 69/20 74/2 74/2 80/7 80/9
83/23 83/24 89/9 89/17 89/23 91/18 92/9
92/19 94/5 94/19 95/7 96/13 97/1 97/8
97/11 97/24 97/25 98/7 98/7 101/9
101/19 102/18
anybody [3]  35/20 51/23 91/13
anyone [3]  35/10 35/11 63/16
anyplace [1]  8/8
anything [19]  10/16 31/6 38/13 39/1 47/7
47/19 63/25 64/17 64/17 65/19 65/20
67/5 68/15 77/20 81/16 82/1 82/24 84/7
84/11
anyway [1]  81/20
apex [1]  92/11
Apologize [1]  69/24
app [9]  36/23 60/12 60/14 60/18 66/21
69/12 69/13 76/20 77/15
appear [1]  9/17
appearances [4]  1/11 1/19 2/23 4/5
appeared [1]  16/10
application [1]  38/9
applies [1]  62/13
apply [2]  65/17 87/20
appointment [1]  52/20
appointments [3]  50/2 50/13 59/14
appreciate [5]  44/24 73/25 90/19 103/5
103/8
approach [2]  56/10 101/10
approached [1]  37/2
appropriate [2]  59/1 59/9
apps [1]  77/14
April [1]  38/13

are [240]
argue [3]  20/23 102/12 102/12
argued [2]  24/9 26/15
arguing [1]  55/15
argument [11]  16/13 20/4 25/7 26/12
29/1 29/18 30/2 30/8 43/22 80/15 86/24
arguments [4]  6/11 6/17 30/4 104/1
Armonk [1]  2/5
around [6]  27/9 27/11 36/23 56/10 93/1
96/3
arrests [1]  63/8
articulation [1]  102/8
as [94]  5/4 6/25 7/19 8/21 10/8 12/11
13/15 15/24 17/3 17/12 17/12 20/4 22/22
24/24 25/11 25/11 33/25 39/10 46/8
47/23 49/14 55/4 56/18 57/20 60/22 62/4
63/13 63/13 63/23 63/23 63/25 65/16
66/24 67/2 67/6 67/20 70/24 70/24 70/24
71/3 71/3 71/10 71/10 71/17 72/8 72/15
72/16 73/18 74/3 74/7 74/11 75/3 75/11
75/22 77/8 77/8 79/9 79/14 79/16 79/25
80/10 80/25 80/25 82/4 82/4 83/22 84/8
85/4 87/12 88/4 88/4 90/8 91/2 91/11
91/19 92/23 93/21 94/7 94/11 94/11 95/4
95/5 96/17 99/21 101/5 101/7 101/25
102/18 102/22 102/25 103/13 103/13
103/15 104/18
ask [28]  6/15 29/6 29/7 30/18 30/23 35/3
35/13 47/6 56/2 65/22 66/3 67/24 68/8
68/16 71/15 77/10 77/11 79/6 82/4 82/23
82/24 82/25 82/25 83/1 83/18 85/7 87/24
104/25
asked [23]  7/24 8/5 8/10 8/16 13/15
13/24 20/4 28/22 28/23 37/20 48/10
64/21 65/8 66/2 81/14 88/22 89/1 89/22
90/12 90/12 92/22 95/18 102/15
asking [18]  18/20 26/3 26/17 65/9 65/14
79/4 82/5 83/6 85/24 87/11 89/19 90/3
91/20 92/22 104/10
aspect [1]  25/9
asserted [1]  43/19
asset [2]  70/4 70/5
assets [6]  38/4 38/4 38/5 38/6 80/22
80/22
associates [1]  95/3
associations [1]  15/22
assuming [3]  34/25 73/16 80/16
assurance [1]  29/11
at [97]  5/9 6/3 6/3 7/13 9/18 9/25 10/13
10/22 11/2 12/4 12/7 12/22 12/25 13/3
13/9 14/9 14/10 14/17 15/8 15/11 15/21
16/9 17/14 20/16 20/20 20/21 20/25
29/20 30/19 32/6 32/20 32/24 34/13
40/16 42/14 43/1 43/3 46/1 48/16 48/18
51/20 53/22 53/24 54/2 54/12 54/14
54/22 54/24 55/21 56/14 57/9 62/1 63/10
64/15 64/25 65/5 67/3 67/12 67/14 67/15
67/16 68/8 68/10 68/14 74/2 74/24 75/20
75/24 79/7 80/20 81/15 82/16 83/18
83/18 84/16 85/15 85/15 86/19 86/7
88/13 89/11 90/13 93/19 97/5 97/7 97/15
99/5 100/4 104/2 104/14
athletes [1]  22/1
atifford [1]  3/6
attack [1]  46/20
attacking [1]  6/23
attacks [1]  44/6
attorneys [2]  8/17 34/19

**A**

attorneys' [1] 57/13
audience [1] 27/14
audio [1] 1/9 105/10
August [4] 31/16 37/3 93/4 101/11
availability [11] 55/14 58/9 58/19 73/20
75/2 90/9 90/10 93/23 94/7 100/3 103/12
available [56] 8/9 19/19 22/19 22/21
33/21 34/15 37/18 44/20 45/2 46/3 48/7
49/15 49/15 49/18 50/19 50/20 51/2
51/19 52/2 52/25 53/3 54/1 54/11 55/13
56/1 56/24 58/8 58/13 58/24 58/13 58/21
59/17 61/3 61/14 61/20 73/16 74/2 74/3
74/3 74/4 74/19 75/2 78/15 78/19 78/25
79/8 90/11 90/23 90/25 91/2 93/7 99/10
99/13 99/22 102/4 102/6
Avenue [1] 3/5
aware [3] 35/20 59/11 59/12
away [5] 14/8 18/19 43/2 53/20 89/13

**B**

baby [2] 45/17 46/15
back [29] 10/7 13/5 13/17 20/20 22/23
25/6 33/13 34/21 35/22 42/13 45/5 50/5
61/23 67/22 83/4 89/25 90/8 90/10 93/21
94/24 94/25 100/2 101/13 101/18 101/21
101/24 102/20 103/7 103/9
back-pedaling [1] 101/13
background [4] 43/9 68/3 68/17 81/25
balance [2] 18/5 24/5
ball [2] 87/9 87/15
bank [4] 38/5 67/13 69/12 84/21
banking [1] 67/3
bankruptcies [1] 63/7
bankruptcy [2] 19/12 19/12
based [17] 13/11 13/14 20/16 23/9 23/16
32/16 32/21 32/24 33/1 36/7 38/25 38/25
59/11 60/12 61/17 75/20 104/15
bashful [1] 94/22
basic [3] 60/16 75/18 77/8
basically [1] 81/16
basis [19] 5/16 16/20 16/23 17/2 17/12
18/6 24/16 24/20 25/2 30/17 31/13 72/13
94/14 94/23 100/18 100/25 101/8 101/22
102/22
basketball [1] 88/20
Bates [1] 14/16
be [140]
Bear [1] 37/23
because [52] 6/5 6/9 7/4 7/6 8/25 9/15
10/1 11/1 11/13 12/24 15/22 19/1 20/15
20/24 27/9 44/12 44/18 47/24 55/19
57/15 58/18 59/22 62/15 64/7 64/13 65/2
65/8 65/15 66/9 68/10 71/8 73/7 75/23
77/21 79/3 79/11 79/21 82/22 87/1 87/21
88/7 88/11 89/10 89/13 89/18 91/4 94/9
96/9 100/9 101/4 102/8 103/10
become [3] 29/20 31/16 56/11
becomes [1] 97/11
been [50] 5/15 5/16 12/9 12/17 16/18
16/21 18/15 19/14 19/20 24/22 27/1
30/20 33/9 38/10 38/22 39/1 39/3 39/18
40/1 41/3 41/5 41/6 45/16 61/17 64/9
64/24 65/2 65/9 65/14 66/7 71/16 76/2
88/9 88/24 89/19 90/15 91/9 91/20 94/6
95/2 95/8 97/2 97/3 97/21 99/6 99/20
102/14 102/16 103/18 104/10
before [31] 1/10 16/3 21/3 22/16 34/16
36/8 38/12 46/22 50/7 53/5 59/24 60/4
62/8 63/22 65/2 65/7 65/18 72/25 73/8

76/2 89/17 89/25 91/7 96/21 99/22 99/23
100/3 101/1 101/6 102/9 102/19
began [1] 36/23
beginning [4] 16/19 25/2 31/16 101/11
begun [1] 16/20
being [5] 22/8 51/24 51/25 54/24 78/23
believe [12] 52/14 66/7 66/24 70/23 72/9
72/18 76/11 76/16 84/15 88/9 88/11 93/4
below [1] 34/11
benefit [1] 32/7
besides [1] 96/13
best [31] 2/13 5/3 5/10 11/23 13/9 20/14
31/21 36/11 52/4 60/8 66/17 66/18 71/3
71/17 73/23 73/24 76/12 76/23 77/1 77/5
77/7 77/9 77/9 77/13 79/18 80/6 88/3
90/19 91/2 93/25 105/10
Best's [1] 42/5
better [3] 65/25 71/14 76/14
between [12] 5/11 10/23 11/25 37/6 44/24
90/11
beyond [4] 67/5 67/14 68/15 82/1
bifurcate [4] 10/9 10/16 22/12 32/3
bifurcated [6] 9/8 10/8 16/14 18/19 29/5
32/12
bifurcating [1] 10/19
bifurcation [4] 10/22 17/22 18/21 30/5
big [2] 75/6 75/6
bigger [1] 99/19
billion [1] 96/13
billionaire [1] 91/22
billionaires [1] 89/19
birth [1] 42/11
bit [6] 6/5 11/7 11/21 37/24 41/12 85/9
blah [3] 87/3 87/3 87/3
blank [1] 84/21
Blockchain [2] 67/15 81/1
bogus [1] 43/18
BOIES [28] 2/3 2/4 2/4 2/9 4/13 4/13
4/15 5/20 25/6 25/8 26/25 28/1 28/23
31/11 34/24 50/16 52/24 52/25 64/25
65/6 89/8 89/15 90/1 91/20 92/5 92/14
93/23 95/18
boiler [1] 41/6
bonus [2] 40/20 64/18
borrow [1] 41/21
both [12] 16/12 29/15 29/24 30/4 32/13
32/13 40/14 58/14 63/2 90/20 90/21
103/13
bothering [1] 75/5
boys [1] 75/6
brand [1] 89/10
break [1] 56/13
breaks [1] 43/3
breastfeeding [5] 45/14 45/16 45/17
45/19 48/16
Brickell [1] 3/5
briefly [3] 30/8 33/25 68/19
bring [6] 15/19 15/24 17/14 22/23 43/22
68/18
bringing [1] 88/15
broader [1] 99/3
broadly [1] 63/2
brokerage [5] 62/25 63/16 67/16 69/5
70/10
BROWN [3] 2/14 2/20 4/24
brownrudnick.com [4] 2/16 2/17 2/22
2/22
bsfllp.com [4] 2/6 2/7 2/7 2/11
bunch [1] 87/12
BURNETT [2] 3/4 4/22

BUSHMAN [21] 1/15 4/10 49/22 50/21
50/25 51/1 51/7 53/8 57/4 60/6 60/19
73/13 76/10 77/6 77/11 79/4 79/6 80/15
82/17 84/7 87/13
business [3] 21/25 73/14 102/3
busy [2] 20/10 99/8
but [87] 8/11 8/17 9/9 9/17 9/18 10/1
11/5 12/11 12/13 14/14 14/18 15/9 17/9
17/14 19/3 20/13 21/12 21/22 24/4 24/21
26/9 27/6 28/2 28/18 29/11 30/5 36/13
37/12 39/16 42/9 43/8 43/14 46/24 47/6
50/2 50/6 50/13 50/25 52/11 52/15 53/4
53/9 55/25 56/23 57/5 58/5 58/16 58/21
61/13 63/22 64/10 65/4 65/14 66/23
68/11 70/19 70/25 71/6 71/13 72/16
72/23 73/17 74/9 74/11 75/1 76/18 78/9
80/3 81/1 81/20 83/5 83/8 86/23 89/6
89/13 90/20 91/19 91/23 91/24 94/5
99/17 100/22 101/2 101/21 102/5 102/13
104/5
buttons [2] 60/18 60/19
buy [2] 27/9 27/11
buying [1] 86/14

**C**

calculations [1] 15/13
call [3] 34/19 35/13 76/23
called [3] 23/10 39/10 62/16
came [15] 14/7 14/8 27/5 34/18 38/20
62/11 62/12 67/13 79/21 81/19 82/6 83/1
84/18 85/23 87/19
can [101] 6/14 7/13 11/17 11/18 13/5
13/12 18/16 19/1 20/2 23/4 23/10 25/25
29/8 32/5 32/18 34/20 34/21 35/2 35/4
35/12 39/21 40/1 40/11 40/13 42/14
43/12 44/5 44/14 45/2 45/6 46/1 46/6
46/6 46/23 47/6 48/16 51/2 51/19 53/19
54/9 55/16 56/9 56/19 57/4 57/5 57/23
58/14 59/3 59/3 59/7 61/7 61/23 63/14
64/1 64/5 65/1 65/22 66/24 68/11 68/13
68/19 71/3 71/17 72/7 72/13 74/3 74/17
75/7 75/17 75/18 75/24 76/10 76/14
76/25 77/2 77/7 77/10 77/15 80/3 80/4
82/22 82/23 82/25 85/25 86/19 88/18
89/6 90/1 91/21 93/21 94/11 94/24 95/24
96/21 98/21 100/1 100/2 101/14 102/12
102/12 102/24
can't [19] 22/15 42/23 44/3 47/20 47/21
52/2 52/19 60/13 67/21 68/10 68/11
71/19 73/20 79/5 89/15 90/25 92/7 99/12
99/12
candid [1] 39/1
cannot [1] 59/3
care [4] 58/4 74/19 74/20 75/6
careful [1] 87/1
carefully [1] 96/1
case [50] 1/2 4/4 6/18 7/2 7/5 13/12
13/14 15/13 15/19 16/1 16/12 17/14
17/17 17/20 18/2 18/22 19/22 24/1 30/6
30/21 31/24 32/5 32/17 32/25 33/1 43/19
45/11 45/12 51/9 51/24 51/25 61/5 62/25
63/9 67/5 67/25 68/4 68/15 70/13 78/12
78/16 78/24 79/8 80/11 81/25 96/13
96/13 99/14 101/5 101/5
cases [3] 38/2 68/1 99/10
cash [2] 62/11 75/24
catch [1] 72/21
center [1] 34/6
CEO [2] 9/5 19/11
cert [1] 47/8

**C**

certain [1]  54/23
certainly [13]  6/15 15/25 17/18 22/14 30/3 32/9 34/23 34/24 47/21 54/11 55/5 66/23 103/19
certification [4]  7/1 54/25 63/24 64/17
certify [2]  34/9 105/9
certifying [1]  47/6
change [1]  17/17
changed [1]  6/8
characterization [1]  74/1
chart [3]  39/14 61/11 77/18
check [13]  12/10 13/12 13/18 48/9 50/14 58/10 58/13 58/25 59/1 75/2 90/10 93/21 96/9
checked [1]  50/24
checking [4]  69/11 69/11 84/17 84/18
checks [1]  84/21
Chicago [10]  49/13 51/3 52/3 52/4 52/6 52/15 52/3 53/5 53/8
chiefly [1]  74/25
child [1]  42/12
children [1]  74/19
choose [1]  19/16
chose [1]  56/11
CHRISTOPHER [2]  3/3 4/21
chronological [1]  14/15
chronology [2]  14/17 14/20
Circuit [1]  78/12
circumscribed [1]  21/24
citing [1]  14/15
cknight [1]  3/7
claim [11]  24/1 28/25 31/11 34/3 37/17 40/15 40/17 46/23 47/5 63/19 83/5
claimed [1]  41/25
claiming [4]  30/11 38/9 62/7 86/6
claims [9]  15/1 15/16 17/20 24/2 24/8 36/20 38/3 43/18 80/20
clarity [2]  24/13 88/16
class [7]  19/20 34/10 44/15 44/21 47/8 64/17 79/9
clear [16]  10/5 12/20 13/13 18/23 31/23 32/11 32/15 52/12 64/22 66/15 66/22 70/14 71/8 82/24 104/13 104/25
clearly [6]  8/24 12/13 38/17 78/11 87/13 91/19
client [4]  32/7 59/8 68/18 99/21
clients [6]  46/21 47/7 64/16 71/10 87/21 104/15
clients' [2]  68/22 75/20
clip [1]  27/14
clips [1]  9/21
CNBC [1]  91/23
cognizable [1]  24/8
cognizant [1]  103/16
colleague [2]  35/18 54/5
colleagues [3]  4/14 35/16 42/15
collection [1]  74/6
come [30]  21/3 22/9 28/1 30/19 33/13 36/6 36/15 39/22 43/12 43/14 45/16 45/24 47/22 50/5 50/25 55/18 56/12 58/14 58/21 62/23 66/11 67/22 68/9 84/9 84/12 84/17 84/17 94/24 97/4 101/18
comes [4]  27/12 71/4 84/23 95/16
comfortable [1]  45/17
coming [2]  56/13 62/24
comment [2]  15/8 36/11
comments [1]  90/20
commitments [7]  90/14 91/3 91/4 93/25 94/4 102/1 102/3

communicated [1]  94/7
communications [8]  8/5 21/13 21/15 21/17 28/22 65/5 65/4 89/14
compare [1]  87/3
compared [1]  87/6
complaint [21]  6/14 6/17 16/4 17/25 20/15 20/18 21/1 21/3 21/4 22/3 23/12 24/3 29/10 34/3 34/7 36/12 36/19 38/17 42/3 47/1 47/1
complete [9]  20/11 39/18 39/19 44/8 54/23 56/3 57/16 59/24 68/14
completed [7]  12/6 16/3 16/24 18/2 24/23 25/10 50/7
completely [5]  15/1 19/2 56/23 70/10 90/17
compliant [1]  12/17
complicated [3]  31/20 31/25 43/8
complied [1]  83/9
comply [1]  76/21
components [1]  104/6
compromise [1]  83/17
conceded [1]  20/15
conceding [1]  42/6
concept [1]  102/8
concern [11]  12/24 20/2 23/22 29/23 41/13 79/18 86/3 94/8 95/9 95/10 99/19
concerned [5]  5/9 25/11 41/10 93/6 93/8
concerns [1]  13/10
confer [1]  89/22
conference [42]  9/16 10/2 12/7 14/10 21/18 21/19 27/6 27/13 27/16 27/19 28/2 28/5 30/13 31/11 31/18 36/4 37/7 40/16 40/20 42/3 57/6 57/11 58/15 62/8 65/1 89/3 91/12 92/25 95/12 95/17 95/20 95/21 96/7 97/6 97/16 97/18 98/13 100/14 100/17 101/9 101/10 102/9
conferences [1]  98/11
confidential [1]  34/17
confirm [4]  14/5 34/16 34/20 36/1
confirmation [1]  68/7
confirmatory [1]  103/2
Connecticut [3]  19/10 19/17 55/6
connection [7]  21/17 21/19 31/10 31/17 91/12 96/25 97/18
connections [3]  28/10 99/17 99/18
consensual [1]  19/17
consider [1]  32/19
consideration [1]  32/23
considered [1]  26/20
consult [1]  101/24
consumed [1]  90/17
consumer [1]  24/3
consumers [1]  41/16
CONT'D [2]  2/1 3/1
contact [4]  14/7 31/19 59/8 101/25
contacts [4]  23/5 95/7 97/25 98/7
containing [1]  34/11
contest [1]  89/6
context [3]  12/16 22/25 33/15
contract [2]  89/2 92/24
contrary [4]  19/21 24/1 42/2 74/23
control [1]  57/7
convict [1]  41/15
convicted [2]  41/3 71/16
conviction [1]  71/20
cooperation [1]  18/8
cooperative [1]  5/16
copy [1]  42/4

Coral [4]  1/16 42/19 42/20 53/22
corporation [1]  95/25
corporations [1]  99/9
correct [16]  12/7 13/20 14/6 45/25 49/16 54/16 54/18 56/10 58/24 59/4 68/23 81/7 81/7 84/1 86/25 93/11
corrections [1]  6/16
could [36]  8/7 9/9 10/12 11/6 11/6 11/23 12/2 25/9 26/23 30/7 31/22 33/11 33/13 37/18 41/17 43/1 49/13 50/5 50/9 50/13 50/25 51/6 52/10 53/17 54/9 55/23 56/25 58/11 58/15 59/21 73/14 80/25 85/1 89/11 94/4 102/5
couldn't [3]  30/18 69/21 69/22
counsel [22]  4/5 5/15 5/22 9/7 9/17 19/1 19/3 19/8 19/11 19/18 23/5 25/13 26/14 27/2 34/24 35/11 43/1 44/24 45/8 59/7 75/4 87/23
counsel's [3]  42/24 56/15 73/25
country [6]  27/9 27/11 28/17 93/1 95/13 96/3
couple [7]  6/6 6/15 6/16 14/8 26/15 27/11 89/19
course [5]  4/25 70/7 70/13 87/17 88/11
court [21]  1/1 3/10 13/23 22/16 23/12 34/19 35/12 37/12 38/2 61/9 62/5 63/8 85/12 88/8 88/12 94/24 99/10 99/11 103/21 104/6 105/14
court's [1]  94/8
courteous [1]  44/19
courteousness [1]  44/24
courtroom [1]  35/3
courts [1]  38/10
cover [2]  14/14 55/16
covered [1]  95/4
crazy [1]  81/22
creativity [1]  6/1
credibility [4]  48/1 51/20 63/6 63/11
credible [2]  94/23 100/24
criminal [6]  41/7 63/11 70/16 70/21 71/10 71/20
critical [5]  14/22 33/23 36/19 60/24 75/23
Cromwell [2]  15/17 20/20
crooks [1]  45/11
cross [1]  99/15
cross-purposes [1]  99/15
CRR [2]  3/9 105/13
crypto [40]  14/10 27/13 38/20 39/6 39/7 39/11 62/12 62/14 62/17 62/19 62/24 63/16 67/3 67/14 70/1 70/3 70/4 70/5 71/5 75/25 75/25 79/19 80/14 80/21 80/24 80/25 83/1 83/7 84/18 84/23 85/6 86/12 86/13 86/14 86/16 87/3 87/4 87/4 88/13 97/7
cryptocurrency [11]  76/1 76/3 80/16 82/4 82/5 82/8 82/9 85/3 91/23 95/15 99/18
CSR [2]  3/9 105/13
CUBAN [32]  1/6 6/20 7/6 8/23 9/14 14/7 14/8 15/25 16/6 16/9 16/10 17/3 18/22 22/7 22/8 22/14 22/17 27/7 28/1 28/14 29/4 29/7 29/12 31/18 32/8 32/8 34/4 34/12 36/5 36/8 36/13 36/21 36/25 38/12 38/18 42/7 62/7 62/21 64/9 64/19 65/21 67/7 67/8 67/21 81/6 81/8 81/9 87/1 87/12 87/20 89/12 89/18 91/22 92/25 95/14 95/16 96/2 98/1 98/2 99/19 104/8 104/17
Cuban's [13]  8/10 8/18 9/7 9/19 11/10 14/8 15/25 15/25 32/9 58/20 87/18

## C

Cuban's... [1] 104/11
customer [1] 27/10
customers [2] 27/8 28/2
CV [1] 1/2

## D

daily [1] 5/16
Dallas [6] 30/14 30/14 90/23 97/7 98/14 102/9
damage [1] 96/13
damages [1] 86/6
Dan [1] 35/14
databases [1] 83/15
date [29] 6/13 8/10 9/18 11/11 17/23 29/12 44/11 44/21 48/17 52/18 52/19 53/12 53/13 54/9 54/18 54/23 57/8 58/12 65/6 72/21 75/4 75/14 90/3 91/7 93/7 93/7 96/11 102/6 102/20
daughter [2] 40/14 41/20
daughter's [2] 56/9 59/13
DAVID [5] 2/3 4/12 25/8 34/23 104/22
day [11] 31/4 43/13 55/24 55/24 56/25 58/14 58/17 58/18 92/3 92/19 99/11
days [4] 46/6 89/12 91/22 92/19
dboies [1] 2/6
DC [1] 2/15
deadline [6] 11/1 12/23 13/1 92/2 94/9 96/21
deal [2] 21/16 81/21
dealing [1] 5/15
dec [1] 12/3
decade [1] 71/20
decades [1] 41/4
December [12] 6/3 10/22 12/7 33/19 35/25 37/16 39/3 41/23 92/1 92/9 93/5 93/19
decide [1] 12/14
decided [2] 10/18 78/15
deciding [1] 37/12
decision [4] 26/18 26/19 26/20 26/21
decisions [7] 42/8 43/7 56/17 78/3 78/8 79/12 79/13
declaration [2] 49/12 103/3
declarations [5] 14/5 15/2 34/10 34/10 64/16
deeply [1] 56/8
defamation [1] 45/1
defamatory [1] 45/10
defendant [10] 1/7 2/13 3/3 19/9 32/13 58/16 58/16 68/3 86/21 86/25
defendants [24] 4/20 5/12 6/8 10/21 12/17 15/14 17/15 17/17 17/19 19/4 20/19 21/6 22/9 40/9 55/15 55/22 66/1 67/2 71/8 72/7 72/15 81/15 83/23 103/23
defendants' [3] 51/14 57/13 57/13
defense [4] 5/21 27/2 73/25 75/4
defense's [1] 75/10
defer [2] 19/22 82/18
deficiencies [3] 39/15 61/12 83/22
definitely [3] 74/17 74/18 90/1

delay [1] 64/20
deliver [1] 48/7
demanding [1] 123
demands [1] 31/2
denied [4] 8/14 65/9 90/2 92/21
deny [1] 32/2
deponent [3] 56/18 74/22 79/25
depose [23] 18/11 21/7 22/21 29/12 39/21 40/24 41/16 42/14 43/3 43/9 43/17 44/18 46/6 46/6 47/25 53/18 56/8 56/14 63/23 85/7 89/15 91/7 96/11
deposed [24] 9/6 18/16 22/7 22/8 37/15 41/18 42/24 43/5 43/6 44/3 45/6 45/13 47/20 47/22 49/10 51/8 51/9 51/19 52/10 54/24 56/19 57/15 65/2 78/23
deposing [1] 40/22
deposit [6] 66/22 67/12 69/11 75/25 75/25 76/17
deposited [1] 37/5
deposition [80] 8/11 8/12 8/18 9/4 9/11 9/19 11/10 12/8 15/7 15/15 15/16 16/6 16/9 17/4 17/8 17/10 17/13 17/19 17/23 18/25 19/5 19/13 19/23 20/3 20/11 25/25 26/11 27/20 29/8 30/1 32/8 33/21 36/18 37/15 38/23 44/21 45/3 45/18 47/7 50/3 50/6 51/21 53/5 54/5 54/25 55/6 55/9 55/17 55/17 55/22 56/24 57/6 58/18 58/20 59/21 59/23 62/25 63/18 68/11 70/8 75/1 78/16 78/20 79/8 80/8 80/10 82/23 82/25 83/6 85/25 86/10 92/17 93/18 99/11 99/13 100/21 101/2 102/21 104/17
depositions [51] 7/24 8/6 13/3 15/4 19/3 20/11 20/21 21/5 22/13 23/8 29/3 30/20 33/7 33/9 33/16 33/19 33/24 40/8 44/13 50/6 51/14 55/21 57/1 58/15 58/23 63/14 64/11 64/24 65/1 65/3 65/14 65/18 72/25 73/3 73/15 88/19 88/25 89/10 91/22 91/9 92/15 92/20 92/22 94/10 96/14 99/10 99/22 101/23 103/10 103/11 103/22
deposits [1] 36/3
deputy [1] 35/3
described [1] 12/12
despite [1] 75/13
detailed [1] 14/17
detailing [1] 61/16
determine [1] 56/17
developed [1] 16/3
developing [1] 97/7
dictate [1] 58/17
did [54] 6/20 7/2 7/5 7/6 8/21 10/5 11/8 12/8 12/11 14/13 14/18 27/4 27/22 28/5 28/6 31/3 32/19 32/20 45/7 46/10 55/19 56/24 61/2 62/23 62/24 64/13 64/18 64/18 66/5 66/20 66/23 67/9 68/8 68/9 74/6 74/7 74/9 74/14 79/23 81/3 83/1 83/7 84/8 84/12 84/12 84/17 87/19 89/3 93/2 96/9 97/23 98/24 102/4 102/25
didn't [24] 6/9 6/24 19/4 10/15 19/16 22/9 27/25 28/1 36/9 36/25 41/24 42/3 42/7 46/8 56/16 61/5 67/10 72/21 83/23 84/17 91/17 96/9 96/9 96/24
different [9] 15/12 19/14 32/22 59/4 63/7 76/20 82/15 89/5 94/6
difficult [2] 26/10 29/20
digital [2] 1/9 105/10
diligence [1] 67/9 67/10
direct [2] 12/8 49/9
directed [5] 12/18 16/19 24/24 39/20 41/17

directing [2] 22/7 54/20
director [3] 28/21 28/23 89/13
directors [3] 8/5 65/5 89/14
disability [1] 38/10
disagree [1] 84/11
disappeared [1] 37/16
disclose [1] 38/7
discovery [79] 1/9 4/4 6/5 6/10 6/25 7/9 7/14 7/15 7/19 8/15 8/25 9/8 9/9 9/10 9/14 10/8 10/10 10/19 10/24 11/10 11/13 11/13 12/6 12/10 12/12 12/14 13/1 13/3 13/15 14/24 16/14 18/19 18/21 20/24 21/14 22/12 24/14 24/15 26/13 26/17 26/18 27/25 28/8 28/13 28/18 28/24 29/2 30/24 31/2 31/17 32/3 32/4 32/12 32/12 33/8 33/22 34/14 34/15 37/13 47/13 66/5 67/20 67/24 68/16 72/8 74/5 74/7 76/21 89/7 91/9 91/14 91/17 91/19 93/16 95/11 102/14 102/19 103/20 104/17
discrepancies [1] 61/6
discretion [1] 30/3
discuss [4] 4/3 77/13 88/18 100/3
discussed [1] 103/19
discussing [1] 59/19
discussion [4] 8/13 13/9 31/22 73/6 23/15 23/16 26/14 40/2 46/19
dismiss [10] 7/1 7/12 12/23 16/5 23/9
dismissed [2] 17/13 19/9
dispute [2] 37/13 46/8
disputes [2] 20/7 29/24
district [8] 1/1 1/1 19/15 23/25 33/22 42/17 78/12 104/7
disturbing [1] 46/15
diversity [1] 23/25
do [79] 5/10 6/5 6/9 7/3 8/25 11/22 11/25 12/5 15/19 17/16 17/21 17/24 27/6 29/9 29/9 32/2 34/17 41/19 43/1 43/4 43/13 44/8 45/20 46/1 46/4 46/10 46/14 46/16 47/2 48/15 48/16 48/18 48/20 48/22 53/9 53/19 53/19 53/22 53/23 53/24 53/24 55/24 56/19 57/1 57/23 58/15 58/17 58/18 58/22 61/15 63/6 64/13 66/6 66/24 67/2 67/10 68/9 69/10 73/14 74/11 76/10 77/4 80/17 81/3 82/6 82/7 83/13 83/16 83/20 84/4 84/20 91/6 92/3 94/13 94/15 96/2 96/24 100/17 102/5
doctor's [2] 50/13 52/20
document [20] 21/14 24/21 25/10 34/14 38/8 57/16 58/2 59/24 60/12 64/14 81/13 85/24 91/18 94/14 94/18 95/21 96/10 96/24 101/20 102/19
documentation [1] 37/21
documents [116]
does [7] 27/6 31/6 32/4 45/15 47/1 57/7 70/3
doesn't [13] 16/1 30/5 33/2 38/7 45/17 67/11 67/24 70/5 71/11 73/19 84/24 103/1 103/23
Dogecoin [1] 36/21
doing [8] 7/19 9/1 15/10 22/8 33/23 50/1 51/23 62/20
dollar [1] 96/13
dollars [1] 38/4
don't [73] 5/23 8/16 9/8 9/23 11/7 13/23 18/11 19/6 20/16 21/11 22/15 23/5 25/11 27/21 27/23 29/5 30/21 32/16 32/17 34/23 35/22 38/15 38/19 44/16 44/17 44/25 45/18 46/23 47/12 50/12 51/21 52/20 58/6 58/8 58/9

**D**

don't... [35]  58/16 61/7 61/19 62/10
62/21 62/22 63/1 63/3 63/4 63/17 63/20
63/21 63/25 65/5 73/25 77/1 80/7 80/9
80/25 81/11 83/15 84/11 85/5 89/23 90/3
92/17 93/17 94/19 100/10 100/24 101/4
101/18 101/19 102/13 103/12
done [18]  5/25 6/25 7/2 20/11 20/13
21/8 23/4 24/24 25/16 42/9 54/22 66/25
68/5 68/16 74/9 75/16 98/6 103/3
double [3]  55/23 56/25 85/17
doubt [1]  74/22
down [5]  42/24 52/9 60/4 71/4 102/13
downloaded [1]  36/22
drive [1]  42/23
drop [1]  35/13
dropping [2]  45/11 45/12
due [5]  28/19 64/8 67/9 67/10 85/11
during [1]  45/18 80/10 90/17 90/24
duty [1]  83/3

**E**

each [7]  33/25 34/1 34/10 58/6 61/12
64/11 92/20
earlier [4]  13/10 72/11 90/25 93/9
earliest [2]  94/7 102/6
early [4]  7/2 34/9 59/13 93/4
easier [1]  5/7 12/1 82/22
easy [5]  14/20 23/3 30/22 74/11 88/4
eDiscovery [2]  66/6 72/3
education [2]  89/4 96/3
effect [1]  51/22
effectively [1]  20/15
efficiency [4]  20/8 20/12 67/6 73/12
efficient [3]  13/2 20/23 26/20 29/25 32/9
efficiently [1]  32/5
effort [3]  13/21 34/9 102/24
egalicia [1]  3/7
Ehrlich [11]  9/5 9/11 9/17 14/9 19/8 19/9
19/20 22/15 55/7 95/14 97/6
Ehrlich's [5]  18/25 19/7 19/18 55/5 55/16
either [11]  15/13 16/4 19/24 20/17 31/6
51/2 55/18 67/12 75/24 89/24 97/25
elements [1]  23/18
Eleventh [1]  78/11
else [6]  29/3 35/20 51/23 63/16 63/25
87/10
else's [2]  38/15 38/19
email [5]  41/23 48/14 79/22 80/4 80/5
emails [4]  9/7 66/5 70/7 72/3
embellishing [1]  97/5
embezzle [1]  41/16
emblematic [1]  39/12
emergency [1]  45/22
eminent [1]  17/4
employees [1]  64/25
end [12]  6/3 57/15 59/21 72/19 73/14
93/23 96/20 100/19 101/2 101/21 102/19
103/24
ended [2]  89/20 92/8
endorsement [1]  36/7
engaging [1]  86/15
enjoy [1]  56/13
enough [2]  47/25 86/23
enter [1]  18/20
entered [2]  11/8 67/8
enterprises [1]  41/8
entire [5]  18/22 21/3 68/3 68/17 81/25
entirely [1]  23/16 30/14 32/22
entitled [5]  56/14 68/2 68/3 87/3 105/11

**F**

entity [1]  69/5
environment [2]  57/7 97/11
Eric [11]  41/25 42/3 53/16 55/19 56/16
56/17 56/23 57/10 57/23 58/4 77/20
ESI [1]  83/14
ESQ [14]  1/14 1/14 1/15 2/3 2/3 2/4 2/9
2/13 2/14 2/19 2/19 3/3 3/3 3/4
essential [1]  75/19
essentially [1]  82/10
established [1]  76/2
esteemed [2]  5/21 27/2
ESTHER [2]  3/4 4/23
et [2]  1/3 1/6
etc [6]  17/20 21/21 22/1 35/1 40/21
64/10
even [14]  15/23 16/1 18/7 30/23 34/16
38/12 41/24 44/17 49/25 58/8 62/10
62/11 78/23 79/11
event [2]  71/12 97/11
events [3]  14/15 14/17 31/17
ever [6]  31/4 67/8 68/15 68/15 71/16
81/23
every [18]  6/11 6/19 24/21 44/12 44/21
44/21 48/15 64/14 66/23 67/2 67/7 67/19
67/20 67/23 72/8 76/19 81/12 87/18
everybody [5]  11/12 74/9 74/9 74/10
87/24
everyone [5]  21/7 28/16 36/2 101/16
101/16
everything [11]  21/18 29/3 47/10 64/22
66/7 67/22 72/9 77/25 81/16 83/12 103/4
evidence [8]  13/13 15/2 37/10 37/11
48/1 49/11 49/11 80/10
exactly [6]  26/15 46/9 76/25 77/2 99/2
103/2
example [8]  41/2 62/5 66/10 67/6 76/15
94/24 98/2 100/13
excellent [5]  5/14 26/24 105/3
except [1]  31/18
excuse [8]  5/25 30/14 40/5 40/7 79/4
85/14 98/14 101/16
excuses [1]  52/14
executives [3]  90/24 96/16 99/9
exercise [1]  23/3
Exhibit [2]  61/11 77/17
exist [1]  31/7
exists [1]  31/6
expedited [1]  6/12
expedition [4]  67/1 68/14 81/12 83/20
explain [2]  7/16 37/24
explained [2]  75/12 102/23
explanations [1]  59/17
extended [3]  6/10 94/9 103/21
extension [5]  6/4 6/12 13/2 102/16
102/17
extent [1]  60/25
extraordinarily [2]  76/4 82/1
extremely [2]  15/9 83/17
eye [2]  87/8 87/15

**F**

fabricated [1]  15/1
fabrication [1]  36/25
fact [15]  12/10 13/10 13/12 13/18 14/25
16/2 25/20 31/22 36/9 41/24 75/14 75/15
86/9 103/1 103/16
factually [1]  13/20
fair [4]  83/17 83/17 84/13 91/20
fall [1]  103/19
falls [2]  93/24 93/24

false [4]  30/11 37/3 38/19 56/23
family [1]  98/4
famous [1]  95/15
fan [1]  66/10
fans [4]  27/10 93/1 95/13 96/4
far [7]  13/13 17/12 25/11 33/22 70/24
71/10 82/4
fashion [1]  72/6
father [3]  54/16 54/17 55/20
fault [1]  12/21
February [24]  6/13 7/10 11/12 12/6 12/9
19/6 29/10 29/12 37/19 43/17 90/11
90/11 90/24 90/24 91/7 92/2 94/9 96/21
99/23 100/3 100/5 101/23 102/21 103/20
federal [2]  29/13 99/11
feeding [1]  46/15
feel [4]  41/11 45/17 47/17 72/7
fees [1]  38/3
felony [1]  71/16
few [5]  39/16 52/10 55/23 95/16 104/9
figure [3]  77/5 102/5 102/5
file [4]  22/3 71/20 81/23 86/19
filed [9]  6/11 34/10 38/1 44/3 49/11
64/16 68/4 74/1 93/8
filing [2]  38/3 88/12
filings [1]  88/8
final [1]  88/18
finally [3]  8/10 24/9 92/2
financial [11]  9/1 28/13 41/4 41/5 68/3
68/17 69/2 75/22 81/13 81/25 104/6
financials [2]  67/2 67/23
find [14]  7/20 9/2 16/9 39/7 41/23 53/10
53/12 53/12 71/9 79/16 80/4 83/4 84/24
97/8
fine [5]  5/21 16/25 46/14 53/6 53/7 54/3
61/22 64/1 67/13 83/8 86/1
finish [5]  40/3 40/4 51/6 77/10 95/24
firm [8]  1/15 4/9 4/24 15/17 49/23 69/5
84/18 84/23
firms [2]  67/10 70/9
first [25]  7/14 7/18 9/4 13/16 13/18 31/4
33/6 33/18 34/20 36/3 36/9 37/2 57/23
60/4 64/5 64/7 73/12 76/16 80/19 93/7
93/10 93/12 93/19 94/6 100/4
fishing [4]  67/1 68/14 81/12 83/19
five [15]  5/19 5/24 9/11 11/11 15/13 17/7
17/15 27/1 64/8 65/3 75/12 91/10 93/12
93/14 93/18
FL [3]  1/16 2/10 3/5
flabbergasted [1]  41/22
flags [1]  86/10
fled [5]  15/5 38/24 44/7 44/25 47/24
fleeing [2]  44/23 46/11
FLEXNER [3]  2/4 2/9 4/13
floating [1]  39/21
FLORIDA [71]  1/1 1/4 6/6 6/15 7/20
13/11 13/14 14/7 14/25 15/4 18/12 18/15
19/15 20/16 21/20 21/21 23/5 23/24 24/4
25/14 25/17 25/18 25/19 25/20 26/3 26/6
26/7 26/7 28/10 28/11 30/11 30/12 30/18
31/12 31/20 32/16 32/21 32/24 33/1
33/19 34/2 34/8 36/14 42/7 42/18 48/5
48/6 61/13 63/13 63/25 66/25 73/11
73/12 74/7 74/8 75/20 76/16 77/16 78/12
88/12 89/6 95/7 96/6 97/8 98/2 98/5
98/8 98/9 99/17 102/10 104/15
Florida-based [5]  13/11 13/14 20/16
32/16 32/21 32/24 33/1 75/20 104/15
fly [2]  53/4 92/20
flying [1]  18/11

**F**

focus [5]  5/19 12/9 13/23 14/24 100/13
focused [1]  16/14 19/4 40/22
focusing [2]  34/2 63/12
follow [1]  46/9
followed [1]  89/22
following [2]  4/2 74/17
football [1]  15/15
foregoing [1]  105/9
form [2]  14/15 88/15
former [1]  15/15
forms [1]  19/14
Fort [1]  43/2
forward [7]  13/3 21/9 29/25 32/4 32/12 64/1 82/1
fought [1]  51/20
found [5]  37/4 37/25 38/5 41/2 63/6
four [15]  7/25 8/1 27/1 27/17 27/23 44/19 48/21 55/15 91/18 91/21 93/11 93/14 93/18 95/20 96/10
fowler [6]  3/4 3/6 3/7 3/7 4/22 4/22
fowler-white.com [3]  3/6 3/7 3/7
framed [1]  13/9
frankly [12]  16/7 17/13 17/25 19/24 31/15 31/18 36/12 37/20 41/17 47/19 53/8 79/13
fraud [3]  24/3 41/4 41/5
fraudulent [1]  88/12
Friday [3]  63/23 73/15 74/16
friend [1]  41/22 82/21
frivolous [1]  22/3
front [2]  34/6 61/21
FTX [2]  15/17 15/19
full [9]  5/5 14/17 18/13 21/23 34/21 47/7 62/22 63/20 66/13
fully [2]  12/17 76/21
fund [1]  78/8
funded [2]  75/23 85/2
funding [6]  34/5 62/9 62/12 88/4 88/9 88/13
funds [6]  69/8 69/13 78/8 83/24 84/3 85/4
further [6]  37/24 68/12 68/12 80/7 80/9 85/24

**G**

Gables [1]  1/16
GALICIA [2]  3/4 4/23
game [2]  84/13 90/16
games [1]  14/8
gander [1]  87/11
gather [1]  19/25
gating [2]  18/1 23/23
gave [8]  29/10 42/11 44/13 45/13 46/7 48/10 48/14 58/9
gee [1]  93/24
general [3]  33/20 95/4 97/18
generally [1]  100/8
generic [2]  34/1 34/11
generous [1]  102/16
gentleman [1]  80/8
gentlemen [3]  20/9 102/19 105/4
get [68]  5/10 7/13 7/14 9/14 11/6 11/12 11/18 12/6 12/25 13/5 14/1 17/11 17/24 18/2 19/1 19/17 20/3 21/4 21/10 21/14 21/18 21/21 22/1 25/20 26/4 27/10 28/4 28/8 34/16 40/10 47/17 55/14 56/4 57/12 60/13 61/2 63/20 64/9 64/14 64/21 65/1 65/3 68/3 72/16 73/11 75/4 75/5 75/6 75/7 75/16 75/18 76/23 77/5 80/10 81/12

85/25 87/14 87/16 88/15 90/1 93/9 94/13
98/10 96/11 95/23 102/25 103/4
gets [5]  17/25 45/23 73/14 74/20 90/13
getting [7]  11/9 20/21 31/19 60/9 82/15 83/16 92/14
girls [1]  75/6
give [51]  8/11 9/6 9/9 9/9 11/11 11/12 21/23 27/20 28/18 28/19 28/20 28/20 29/2 29/22 29/3 30/7 30/17 30/25 31/3 31/8 33/14 39/5 39/10 39/16 40/9 45/7 45/9 46/9 57/16 64/10 64/11 65/7 65/11 65/13 65/21 72/23 74/24 73/8 91/21 91/23 91/25 92/3 92/9 92/19 94/4 96/19 96/20 100/22 102/4 103/23 104/10
given [14]  8/6 30/2 38/22 39/21 43/15 45/7 48/13 51/13 54/18 59/10 59/17 64/1 73/17 92/9
giving [5]  4/8 21/9 44/18 51/16 97/19
glad [3]  32/6 47/14 53/11
gmail.com [2]  3/10 105/14
go [80]  5/19 7/22 9/20 9/21 10/7 11/6 12/11 13/15 14/4 14/11 14/23 16/25 18/16 19/16 23/22 24/14 25/6 28/6 29/25 32/4 33/14 34/21 35/4 36/16 37/9 39/25 41/9 41/20 42/13 42/16 43/16 45/15 46/14 49/13 50/17 51/15 52/3 52/4 52/6 52/11 52/15 53/8 56/11 61/7 61/19 61/23 64/1 66/9 66/11 66/14 66/19 67/14 72/3 74/11 80/7 80/9 81/12 81/25 83/4 83/17 83/18 83/19 83/20 84/13 84/24 87/19 89/12 89/17 89/25 90/8 92/20 93/21 94/25 96/2 100/2 101/21 101/24 102/13 102/20 103/7
goes [9]  20/6 38/8 42/5 43/19 57/20 61/16 67/1 67/4 88/10
going [97]  5/5 6/6 6/14 7/1 7/3 7/9 7/16 8/11 8/12 8/22 9/13 9/17 9/21 9/25 11/11 13/17 16/5 16/9 16/22 16/25 17/1 17/7 17/11 17/14 17/24 17/25 18/4 20/3 20/14 20/17 20/20 20/25 21/1 21/2 21/3 21/6 21/10 21/15 21/22 21/23 21/23 23/12 24/19 26/2 26/9 26/17 29/6 29/7 29/9 29/23 29/25 31/15 32/2 32/9 37/11 40/1 40/1 53/5 58/17 58/22 58/25 64/8 65/3 65/21 66/11 67/19 70/8 74/23 76/17 77/9 77/17 77/13 78/19 79/9 81/11 83/14 83/15 85/7 86/10 87/17 87/23 88/12 89/4 89/9 90/4 91/13 91/14 91/25 94/18 96/2 96/3 96/5 97/19 97/19 99/15 101/7 102/18 102/23 103/9
Gold [44]  36/14 36/14 40/13 40/13 40/14 41/3 41/20 42/22 42/23 43/12 43/14 46/7 47/20 47/21 48/4 48/25 49/2 53/15 53/16 53/18 53/21 54/12 54/14 54/15 55/18 55/19 55/20 56/25 57/9 57/10 58/9 58/11 59/12 62/25 63/9 73/18 74/17 74/23 74/25 77/24 77/25 78/7 79/12 79/22 Gold's [6]  53/18 55/9 55/21 61/5 74/19 79/13
gone [4]  23/24 24/5 43/19 90/10
good [14]  4/3 4/7 4/11 4/12 4/16 4/19 4/21 5/2 37/10 49/23 87/10 87/11 100/15 100/23
goose [1]  87/10
got [20]  5/19 9/12 13/1 18/14 21/11 27/3 36/1 40/19 41/14 46/20 54/12 64/10 70/5 72/9 77/19 77/23 92/16 95/10 95/14 95/19
gotten [6]  7/16 7/17 18/7 18/8 18/9 18/13 18/14 33/22 34/14 38/9 39/2 39/9 39/11 47/20 63/14 63/14

granted [1]  7/8
granting [1]  7/6
great [4]  27/14 46/13 46/15 95/25
greatly [1]  27/5
Gronkowski [3]  15/15 15/21 20/19
gross [28]  2/19 2/22 4/25 11/18 13/17 16/11 29/16 31/21 43/25 47/15 48/20 50/6 59/5 59/23 69/21 73/5 75/3 77/18 77/19 77/19 90/4 90/21 90/22 93/6 97/13 99/5 99/15 101/18
Gross' [2]  56/22 74/24
grounds [2]  8/18 9/19
guess [4]  12/10 34/8 51/10 78/22
guy [2]  9/5 62/6
guys [2]  22/21 45/10

**H**

had [48]  4/18 7/25 8/13 8/23 10/23 12/24 13/10 13/11 15/8 18/10 19/8 21/24 21/25 28/10 30/24 37/5 38/6 39/13 39/13 42/4 48/24 49/25 50/8 50/13 50/22 61/4 62/6 62/14 63/3 63/6 64/15 70/23 72/3 72/8 73/5 74/8 78/16 81/7 81/24 87/6 92/9 92/16 97/2 98/4 100/16 104/8
hadn't [1]  61/17
half [3]  24/3 43/2 45/5
hand [4]  37/17 37/21 44/22 46/12
handle [2]  85/18 90/5
handling [1]  4/25
handy [1]  61/8
happen [3]  30/21 59/3 92/7
happened [1]  9/3
happy [15]  5/2 11/22 22/23 31/8 31/9 31/12 52/6 65/13 73/11 77/4 81/21 90/8 97/12 100/12 104/9
harassive [1]  70/11
hard [2]  83/13 90/20
has [56]  9/8 10/18 12/8 13/12 13/24 15/5 15/12 15/14 15/19 15/19 19/18 19/20 19/25 23/11 28/14 29/1 29/20 30/2 30/20 33/1 33/23 38/4 38/11 38/21 39/4 39/18 41/3 41/25 43/1 52/19 53/4 55/18 58/8 58/16 58/18 60/13 61/2 63/10 63/15 66/7 67/21 71/20 77/11 78/11 81/8 86/10 89/2 90/7 90/22 91/9 92/2 93/25 102/16 103/21 103/21 104/1
hasn't [2]  49/25 50/8
have [291]
haven't [19]  7/15 11/10 18/7 18/8 18/13 22/18 39/2 39/9 39/11 47/19 47/23 53/3 54/22 59/15 62/13 68/4 94/6 95/2 103/3
having [13]  14/16 16/2 22/2 36/12 38/3 38/17 49/24 50/2 65/16 91/11 96/17 99/21 104/1
he [192]
he's [12]  9/12 15/23 20/14 20/15 38/10 39/1 39/21 41/4 41/5 41/6 44/23 104/9
headliner [1]  95/17
hear [26]  9/23 16/11 25/6 27/1 29/15 30/4 40/8 40/11 43/24 44/6 44/16 44/17 57/5 59/7 61/24 64/2 68/20 69/21 69/23 74/13 76/7 80/15 82/23 90/20 90/22 103/6
heard [11]  18/25 20/14 20/25 23/9 26/14 31/4 47/19 52/10 59/15 62/25 104/1
hearing [16]  1/9 6/4 6/8 13/10 15/9 16/13 40/2 46/19 55/16 74/24 77/10 80/3 85/21 86/23 89/8 93/20
heart [1]  7/5

**H**

heavy [1]  37/6
held [1]  4/2
help [5]  5/18 5/23 21/22 59/20 82/21
helpful [2]  35/23 77/15
helps [1]  74/19
her [31]  41/24 41/25 42/8 42/14 42/14
42/16 42/17 42/25 43/3 43/3 43/3 43/5
43/8 45/17 45/24 46/1 46/3 46/14 46/15
48/16 48/18 53/22 53/24 54/2 54/6 54/13
54/14 54/15 63/1 78/9 79/23
here [38]  4/3 4/25 8/20 12/21 14/7 14/8
23/3 25/12 27/13 28/1 32/15 32/22 34/22
35/8 35/9 37/25 42/17 43/7 44/3 44/3
44/11 45/6 46/8 48/5 48/5 52/20 66/23
67/11 67/18 71/19 74/24 77/18 77/20
83/22 85/24 96/14 96/16 97/14
here's [3]  44/15 89/25 94/8
hereby [1]  105/9
hey [1]  58/17
hiding [1]  65/19
high [2]  12/4 62/1
him [48]  8/12 9/7 9/15 19/15 19/19 19/23
19/25 21/23 22/22 22/15 23/2 23/2 26/3
29/13 36/20 37/7 37/18 37/20 38/6 38/9
40/24 43/11 43/13 43/17 47/25 50/14
50/22 50/24 52/14 52/20 53/3 53/18 54/12
56/14 56/18 56/24 61/3 75/2 77/11 78/6
78/19 78/25 79/8 79/9 79/24 85/7 85/7
91/23
himself [1]  52/2
hired [2]  66/5 83/14
his [72]  5/1 8/23 9/6 9/12 11/24 16/4
17/4 17/8 17/17 17/22 19/8 21/11 26/3
26/4 26/5 26/6 28/13 29/7 36/7 37/1
37/6 37/15 37/16 38/6 38/9 38/12 38/14
38/15 38/23 39/2 40/13 41/7 41/10 41/20
42/5 42/7 42/8 48/1 49/24 50/3 50/5
50/22 53/5 56/9 59/8 59/13 59/13 62/7
62/11 62/15 63/8 64/9 73/20 75/2 79/3
79/11 85/2 85/5 86/6 87/2 87/3 87/4
87/4 87/6 88/4 88/5 88/5 88/8 88/10
88/10 88/13 104/8
history [7]  42/10 63/11 68/17 70/16
70/21 71/10 83/7
hits [2]  66/8 95/7
hold [4]  52/24 77/7 77/10 101/16
holdup [2]  71/24 71/25
home [10]  45/25 46/1 48/18 53/22 53/24
54/2 54/13 54/14 56/9 57/9
honest [1]  80/24
honestly [1]  20/2 20/8
Honor [144]
Honor's [5]  12/13 32/14 33/3 64/6 92/8
HONORABLE [1]  1/10
hoping [1]  73/2
horrible [2]  44/8 46/19
hospitalization [1]  59/16
hour [7]  17/9 42/22 42/24 43/2 43/10
53/20 56/10
hours [8]  17/6 17/6 17/7 54/25 55/23
63/22 83/20 85/8
house [8]  42/14 42/16 42/17 43/3 46/14
48/16 55/21 59/13
how [21]  8/21 12/14 15/11 28/6 37/12
46/23 55/21 58/6 71/24 75/23 78/23 80/2
80/17 83/1 83/16 89/3 89/13 91/20 92/8
95/21 96/5
howard [7]  1/15 1/18 4/10 49/22 55/11
58/7 83/3

However [1]  103/16
howie [1]  55/25
huge [1]  13/21 123
hundreds [1]  46/20
husband [9]  41/25 42/8 43/5 43/9 53/18
54/16 63/1 77/22 79/24
husband's [1]  78/9

**I**

I'll [2]  35/7 104/13
I'm [40]  10/4 19/19 24/14 24/15 28/17
34/25 42/22 46/25 47/5 48/23 50/15
50/17 52/9 53/11 54/11 59/1 59/6 64/8
65/13 66/16 66/18 73/11 75/10 76/25
79/4 79/5 79/6 80/16 81/20 82/15 82/21
88/15 90/8 92/25 93/6 93/8 96/8 96/23
97/9 97/13
I've [1]  72/8
i.e [1]  90/16
idea [7]  38/16 65/25 74/4 75/16 80/2
86/6 86/7
identified [10]  7/25 16/22 65/16 91/11
92/23 93/11 93/12 93/19 96/17 99/20
identifies [1]  35/10
identify [4]  4/18 27/17 35/12 93/2
identifying [3]  14/14 83/23 84/3
if [152]
ill [2]  34/8 34/9
ill-suited [1]  34/9
Illinois [8]  15/5 37/17 39/22 43/16 50/1
50/4 50/22 52/11
illustrative [1]  38/16
immediately [2]  44/11 64/6
impact [2]  62/20 63/5
impacts [1]  63/11
impasse [1]  50/7
impediment [1]  21/12
implications [1]  44/6 92/12
important [5]  7/12 10/1 12/1 31/2 88/7
in [341]
in-person [3]  33/16 33/24 36/18
include [1]  91/17
includes [1]  28/13
including [5]  14/10 39/14 69/2 70/7
90/16
income [1]  38/11
incomplete [1]  61/1
inconvenient [1]  56/12
incorrectly [1]  31/11
incredible [2]  44/6 92/12
indeed [2]  20/23 32/18
indicated [2]  23/11 93/22
indigency [1]  88/8
individual [1]  20/19
individuals [19]  20/10 22/13 40/23 48/21
73/16 76/9 77/16 88/20 91/10 91/18
91/21 92/10 95/1 97/2 98/1 99/20 99/21
101/6 101/22
information [33]  22/9 31/5 34/17 39/5
39/7 39/9 39/10 60/12 60/16 60/21 62/9
62/16 62/16 66/6 67/18 68/25 69/2 71/9
74/23 75/19 75/19 75/22 85/24 87/14 89/24
85/3 85/22 85/22 85/25 87/17 99/24
104/10 104/14 104/16
initial [2]  37/7 66/22
initially [1]  19/4
insider [1]  8/20
insight [1]  62/17
insisting [1]  63/17
instance [2]  69/3 85/2

institutions [1]  67/4
instruct [1]  68/12
interactions [1]  101/9
interest [7]  6/19 9/1 28/14 31/5 73/12
83/5 104/7
interject [1]  14/12
interjected [1]  93/23
internally [1]  103/7
international [1]  10/2
internet [3]  10/2 27/8 71/9
interrogatory [4]  70/19 71/15 88/23 89/1
interrupted [2]  66/17 77/1
intertwined [1]  25/24
into [16]  18/16 26/4 37/6 38/14 60/9
62/17 67/8 67/17 81/5 81/18 82/6 83/24
83/24 84/3 86/10 90/13
introduce [1]  5/1
invest [3]  70/5 83/1 83/7
invested [4]  70/4 80/23 81/2 81/9
investigation [5]  38/25 41/3 42/9 59/12
63/6
investing [1]  74/25
investment [11]  37/6 42/8 63/3 67/16
69/4 69/16 70/9 70/9 76/17 83/19 87/6
investments [11]  68/22 69/16 70/1 70/3
71/5 71/6 80/14 80/16 82/4 82/5 87/4
investor [3]  36/22 83/13 87/2
investors [2]  44/7 96/15
invitation [1]  29/24
inviting [1]  22/8
involved [6]  41/6 41/7 41/16 95/3 96/18
103/17
involvement [4]  37/1 37/1 70/16 70/22
involves [1]  24/2
involving [1]  37/8
iPhone [1]  60/18
ironically [1]  92/3
irrelevant [2]  70/10 80/20
irrespective [2]  48/2 56/24
is [461]
isn't [7]  7/18 28/15 46/18 71/25 75/4
77/20 83/5
issue [36]  11/19 11/22 11/22 11/25
11/25 12/1 12/5 12/24 14/17 15/6 17/4
17/12 18/1 18/18 22/2 22/16 23/23 30/4
31/23 33/6 33/6 34/6 53/19 53/21 55/1
55/2 59/16 78/13 80/20 86/24 87/25
88/14 89/8 101/19 103/9 104/4
issued [2]  19/15 19/17
issues [17]  5/9 5/10 5/17 7/13 9/24
12/12 15/7 16/3 19/20 25/12 25/23 30/19
39/16 51/20 94/23 100/7 104/2
it [278]
it's [7]  5/15 27/1 38/19 76/24 77/18 99/6
103/2
its [1]  88/15
itself [1]  97/6

**J**

jail [1]  41/5
January [63]  1/5 7/15 8/7 10/24 10/25
13/21 14/10 16/20 16/23 18/6 25/2 27/21
28/21 29/2 30/14 37/18 43/16 46/7 46/9
48/4 48/10 48/11 48/15 48/21 48/24
48/25 49/2 49/24 50/3 50/7 51/8 51/9
51/16 54/18 55/17 61/8 65/1 65/6 65/12
65/18 89/15 89/21 89/24 90/2 91/16 92/1
92/6 92/14 92/16 96/19 96/21 97/1 97/24
98/14 99/8 99/13 100/20 101/2 101/21
102/20 103/18 103/19 105/13

**J**

jemancari [2] 3/10 105/14
JESSICA [2] 2/19 35/17
jet [1] 18/12
jmeyers [1] 2/22
Joanne [3] 3/9 105/13 105/13
job [1] 58/8
Joey [4] 4/9 5/23 7/11 9/20
John [8] 11/23 12/2 13/6 35/4 35/22
 42/13 61/19 61/23
Joining [1] 5/3
joint [1] 6/9
joseph [2] 1/14 1/18
judge [33] 1/10 6/17 7/8 8/14 9/8 10/18
 10/18 11/6 11/8 11/15 12/11 12/12 24/12
 26/15 26/16 26/18 26/21 28/9 28/23
 29/10 30/2 32/4 32/19 48/25 67/19 82/22
 89/25 90/2 92/1 92/6 92/20 102/15 104/4
judgment [1] 7/4
judicial [1] 32/23
jump [1] 12/21
juncture [1] 32/7
June [3] 36/24 37/6 38/14
jurisdiction [48] 8/12 8/15 8/22 10/23
 10/24 14/4 15/5 17/5 17/6 19/4 19/7
 21/22 22/20 22/22 23/16 23/21 24/6
 25/11 25/13 25/22 25/24 25/25 26/9
 26/10 29/19 29/20 29/23 30/22
 31/23 38/24 40/6 44/7 44/23 44/25 46/11
 47/24 49/6 94/12 94/13 94/24 99/3 99/25
 100/7 100/9 103/1 104/5
jurisdictional [43] 7/15 7/19 8/25 9/10
 9/14 12/6 12/9 12/24 13/15 13/25 14/6
 14/17 14/24 15/7 16/2 16/24 17/8 17/23
 18/1 18/4 19/19 20/5 20/6 20/24 21/12
 22/24 23/24 23/8 24/21 24/23 27/25
 28/13 28/18 29/2 30/24 31/2 91/14 91/19
 95/5 95/10 97/1 98/22 104/17
jurisdictionally [1] 16/1
jurisdictions [1] 24/9
just [84] 5/18 5/19 5/20 7/24 8/8 8/12 9/9
 10/14 12/4 12/21 13/19 13/20 14/12 16/7
 16/12 18/22 24/21 25/9 26/3 26/14 26/23
 28/19 28/25 29/1 29/10 29/19 29/21 30/8
 32/4 32/11 33/2 33/25 34/20 35/21 37/23
 38/25 40/8 43/8 44/6 44/7 45/1 45/1
 51/6 51/22 52/11 56/8 58/17 58/21 58/22
 61/13 62/1 63/21 64/20 64/23 65/8 65/14
 65/16 67/17 67/24 69/3 70/14 71/8 74/6
 74/7 77/3 77/10 78/2 79/20 80/3 82/24
 86/3 87/6 90/3 91/1 91/24 92/6 96/15
 96/17 98/21 99/12 101/14 101/17 102/10
 104/22

**K**

KAYE [2] 1/14 4/10
keep [7] 15/11 18/2 45/10 55/24 56/2
 87/8 87/9
keeps [2] 25/10 78/5
Kerns [2] 35/14 80/12
keynote [1] 27/12
kidding [1] 9/11
kids [2] 43/9 56/9
kind [1] 67/9
kinds [1] 9/20
knew [1] 47/24
KNIGHT [3] 3/3 4/22 11/17
know [47] 8/9 9/8 27/18 27/19 29/19
 38/15 38/19 44/14 44/23 46/23 50/12
 50/13 52/1 55/4 55/5 55/21 56/3 56/16

**L**

large [1] 99/9
larger [1] 29/19
largest [5] 7/21 27/13 28/11
last [10] 9/22 19/21 39/16 58/20 64/6
 65/1 71/17 88/2 89/8 104/19
late [1] 48/24
later [11] 9/18 19/5 19/23 22/23 27/12
 40/18 43/16 77/14 89/6 95/16 95/16
latest [1] 15/13
Lauderdale [1] 43/2
law [13] 1/15 4/9 7/6 15/17 23/25 24/1
 24/8 49/23 57/6 67/25 78/12 102/8
 102/11
law.com [3] 1/17 1/18 1/18
lawsuit [4] 15/18 68/18 74/1 81/23
lawsuits [1] 63/5
lawyer [2] 55/16 55/17
lawyers [3] 8/2 8/3 55/15
lead [1] 36/17
leading [1] 21/13
League [2] 15/20 15/22
least [10] 7/13 11/2 15/21 20/25 46/15
 54/24 63/10 84/16 89/11 100/4
leave [7] 6/15 21/1 23/12 32/18 32/19
 32/23 54/6
left [5] 6/2 6/2 17/7 35/21 87/25
less [4] 42/22 53/20 56/10 75/12
let [29] 7/9 8/8 9/8 10/7 11/17 13/4 14/12
 16/15 17/10 22/11 23/15 25/6 34/21 35/3
 39/25 40/3 43/3 43/24 59/19 61/24 62/1
 64/2 69/16 75/8 83/7 86/17 94/25 101/3
 101/5
let's [39] 4/5 6/2 9/20 10/10 12/19 13/6
 17/22 18/2 18/12 18/12 21/13 32/12 33/7
 35/8 35/10 36/16 37/9 40/22 41/20 52/25
 57/12 57/22 58/22 59/20 60/3 60/7 63/24
 82/24 88/18 93/10 94/21 96/10 96/11
 100/2 100/9 100/17 100/22 101/1 101/3
letter [4] 14/14 23/1 39/13 61/8
letting [1] 89/12
level [4] 12/4 62/2 80/17 80/19
liability [6] 6/22 7/7
lied [1] 36/12
lies [1] 44/8
light [1] 79/21
like [38] 4/5 5/24 8/15 11/25 17/13 27/25
 39/5 41/11 43/7 43/13 44/17 45/20 49/9
 50/2 52/23 53/17 54/19 54/20 54/20
 60/12 65/7 67/4 72/15 73/10 73/13 76/8
 77/1 81/1 86/18 88/15 92/6 92/6 93/24
 94/1 96/14 101/21 104/11 105/3
likely [1] 62/10
limit [5] 8/12 8/18 9/19 15/6 20/24
limitation [1] 29/23
limited [14] 13/24 14/6 17/4 17/5 21/23
 22/25 25/13 25/21 25/22 25/25 29/5
 31/19 78/10 80/6
limiting [1] 30/22
limits [2] 6/19 17/8
line [3] 4/24 75/3 76/14
LISETTE [1] 1/10
listening [1] 66/18
literally [3] 52/1 68/16 80/3
litigation [3] 70/17 70/22 76/4
little [9] 5/18 6/5 11/7 11/21 12/1 26/24
 37/24 41/12 85/9
live [3] 10/2 54/9 58/12
lives [4] 19/10 42/22 48/5 59/13
LLP [2] 2/14 2/20
local [4] 42/24 43/1 43/1 56/14
location [1] 92/1
lock [1] 47/18
locked [1] 17/23
long [4] 55/21 58/6 63/23 71/24
longer [4] 36/3 51/15 70/24 71/21
look [9] 19/19 23/15 27/22 28/4 30/25
 67/3 81/15 86/19 104/2
looked [2] 31/3 67/12
looking [8] 5/9 27/22 48/23 67/14 67/15
 67/16 84/2 97/7
looming [1] 11/2
lost [1] 29/1
lot [13] 5/7 9/13 16/13 16/21 29/21 29/25
 31/25 45/16 56/8 97/10 102/24 102/25
 103/3
love [1] 28/17
lunch [2] 57/2 57/2
lying [2] 45/23 87/22
LYN [1] 3/3

**M**

machinations [1] 76/21
Mackey [10] 8/4 19/6 27/19 28/21 29/4
 65/4 65/15 88/19 89/13 101/22
made [7] 5/24 6/17 12/20 15/8 26/25
 32/15 32/18 34/15 36/3 39/4 43/7 56/17
 61/3 66/22 67/12 69/11 72/1 72/14 75/15
 78/3 78/7 78/25 79/8 79/12 79/13 99/12
 102/14
madness [1] 67/17
MAGISTRATE [1] 1/10
main [3] 2/5 9/5 12/5
mainly [1] 5/17
major [3] 10/1 41/4 104/2
make [59] 5/7 6/16 10/5 14/20 19/19
 22/11 22/19 22/21 29/11 32/19 33/21
 34/18 37/18 38/3 40/9 43/10 46/3 51/19
 51/22 52/2 53/3 55/8 56/24 57/7 58/25
 59/4 59/25 66/13 67/11 67/24 68/1 68/10
 69/3 69/17 70/14 71/8 72/1 73/7 74/3
 74/3 74/14 74/20 75/2 77/16 78/15 78/19
 82/6 82/22 82/24 83/9 87/8 87/9 88/12
 99/9 101/4 101/5 101/5 104/13 104/24
makes [7] 15/6 15/25 16/8 17/4 17/18
 19/3 57/12
making [3] 26/12 44/20 52/15
Mancari [3] 3/9 105/13 105/13
mandate [1] 21/9
manufactured [1] 15/1
many [6] 5/6 15/11 17/16 18/17 46/23
 83/1
March [5] 90/13 94/4 94/5 102/5 102/5
marital [1] 78/8
MARK [9] 1/6 27/7 36/21 58/20 62/7
 65/21 87/1 95/14 95/16
market [3] 80/17 82/8 82/9
marketing [10] 8/4 22/20 25/18 26/5 26/7

**M**

marketing... [5]  28/21 31/24 67/7 91/13 96/5
married [1]  55/19
match [1]  61/5
materially [1]  61/1
matter [5]  17/25 29/8 60/15 70/4 105/11
matters [2]  4/4 67/18
Mav [3]  27/10 93/1 96/16
Maverick [2]  89/12 91/12
Mavericks [14]  8/1 8/2 27/18 27/18 34/4 64/25 65/5 65/15 67/8 88/21 89/2 91/10 92/24 97/15
Mavericks' [1]  8/16
Mavs [21]  13/20 14/7 21/16 21/24 31/15 31/16 34/12 36/5 36/13 37/1 37/2 90/14 91/3 95/7 95/13 98/1 98/1 98/6 98/7 101/9 101/11
Mavs' [1]  22/18
may [20]  9/17 12/21 20/6 35/8 35/11 36/8 44/14 44/19 55/4 59/14 59/16 59/18 59/20 62/20 68/25 79/20 86/5 88/2 88/9 91/22
maybe [11]  7/21 11/23 17/17 43/17 58/13 72/11 76/14 77/2 77/3 84/21 94/15
me [49]  4/9 4/14 5/3 5/23 5/25 10/7 11/17 12/11 13/2 13/4 14/12 16/15 22/11 23/15 25/6 30/3 30/14 31/23 34/21 34/24 35/3 37/23 39/25 40/3 40/5 40/7 43/23 43/24 59/19 59/23 61/21 61/24 62/1 64/2 69/16 75/8 76/15 76/25 77/2 79/4 85/14 85/18 86/17 90/20 94/7 94/25 98/14 99/14 101/16
mean [13]  29/6 44/6 44/7 45/1 67/6 71/11 76/18 81/7 91/1 95/22 101/7 102/1 103/3
means [1]  75/25
meet [2]  77/13 89/22
meetings [1]  21/20
meritless [1]  39/5
merits [11]  8/15 10/23 16/19 17/19 20/6 25/24 26/9 26/10 26/13 28/19 28/24
messages [3]  66/5 70/7 72/4
met [1]  14/9
MEYERS [2]  2/19 35/17
Miami [45]  1/4 2/10 3/5 18/16 27/5 27/12 27/14 28/2 33/20 37/15 37/18 38/24 41/17 42/23 42/24 43/6 43/10 43/11 43/12 43/14 44/3 44/4 44/20 45/3 47/22 48/16 49/20 50/5 50/9 50/25 51/4 52/11 52/13 53/6 53/19 53/20 55/18 56/11 56/12 56/13 56/19 57/11 58/12 58/14 95/16
mid [1]  12/6
mid-February [1]  12/6
middle [1]  37/17
might [4]  15/17 56/13 71/12 86/18
million [5]  7/21 8/24 28/7 28/15 41/8 96/6
mind [2]  6/8 12/16
minimize [1]  102/24
minimum [1]  17/14
minute [3]  23/4 74/2 101/17
minutes [8]  5/19 5/20 26/15 40/2 52/10 75/12 80/4 87/25
mischaracterization [1]  74/24
mischaracterize [1]  72/15
mischaracterized [1]  90/7
miscommunicating [1]  77/3
misrepresented [1]  19/2
missing [2]  58/1 61/17

moment [1]  85/15 89/23
moment [5]  36/13 92/15 77/7 77/10 87/24
money [27]  36/24 38/15 38/16 38/19 38/20 62/6 62/11 62/23 62/24 68/8 81/2 81/5 81/11 81/18 81/19 82/25 84/8 84/12 84/13 85/23 86/5 86/7 87/2 87/19 88/5 88/6 88/10
month [7]  48/21 58/20 96/11 99/6 99/7 99/7 103/19
months [21]  7/18 7/25 9/11 11/11 27/1 36/3 40/15 40/17 62/8 64/8 64/24 65/3 65/10 89/19 91/10 91/21 94/24 93/12 93/14 93/18 104/9
more [32]  6/5 13/2 16/5 17/9 20/6 29/21 29/24 29/25 31/25 32/9 39/16 44/15 47/25 55/23 57/7 57/16 63/2 70/18 72/17 74/10 74/10 77/11 80/10 80/13 81/17 81/20 84/22 85/21 87/12 87/25 100/8 103/23
morning [7]  4/3 4/7 4/12 4/21 5/2 49/23 57/1
moskowitz [61]  1/14 1/15 1/17 1/18 1/18 4/8 4/9 5/8 11/16 12/10 13/12 13/19 15/12 16/3 16/7 17/15 19/2 19/16 19/21 19/24 20/14 20/25 21/10 21/20 23/1 23/11 24/2 25/6 31/11 32/6 39/4 39/14 40/7 40/10 41/22 41/24 42/1 42/6 42/6 43/25 44/2 45/2 46/25 47/18 48/6 49/14 49/16 49/23 61/2 63/15 79/22 80/5 82/17 82/18 82/20 83/22 90/7 91/6 93/2 97/4
moskowitz-law.com [1]  1/17 1/18 1/18
most [3]  84/16 99/8 104/2
motion [25]  6/9 6/12 6/23 6/25 7/3 8/14 12/23 14/6 16/4 22/12 23/9 23/15 23/16 26/14 30/9 37/12 40/2 46/18 47/8 65/9 86/19 89/11 90/2 92/21 93/8
move [7]  5/18 7/1 7/4 13/2 21/9 32/12 88/18
moved [1]  64/16 80/21 80/22
moving [3]  18/3 81/10 82/9
Mr [15]  9/4 9/11 9/17 10/12 14/9 18/25 19/8 19/8 19/18 19/20 22/15 55/5 55/7 55/16 97/6
Mr. [265]
Mr. Best [19]  31/21 36/11 52/4 60/8 66/17 66/18 76/12 76/23 77/1 77/5 77/7 77/9 77/9 77/13 79/18 80/6 90/19 91/2 93/25
Mr. Best's [1]  42/5
Mr. Boies [19]  5/20 25/6 26/25 28/1 28/23 31/11 50/16 52/24 52/25 64/25 65/6 89/8 89/15 90/1 91/20 92/5 92/14 93/23 95/18
Mr. Bushman [16]  50/21 53/4 57/4 64/5 66/18 68/20 73/15 76/7 76/7 77/11 79/4 79/6 80/15 82/17 84/7 87/13
Mr. Cuban [53]  6/20 7/6 8/23 9/14 14/7 14/8 15/25 16/6 16/9 16/10 17/3 18/22 22/7 22/8 22/14 22/17 28/1 28/14 29/7 29/12 31/18 32/8 32/8 34/4 34/12 36/5 36/8 36/13 36/21 36/25 38/12 38/18 42/7 62/21 64/9 64/19 67/7 67/8 67/21 81/6 81/8 81/9 87/12 87/20 89/12 89/18 91/22 92/25 96/2 98/1 98/2 99/19 104/8
Mr. Cuban's [12]  8/10 8/18 9/7 9/19 11/10 12/18 15/7 17/18 19/5 32/9 87/18 104/11
Mr. Gold [10]  41/3 43/12 46/7 47/20

47/21 48/4 55/18 58/9 59/12 74/17
Mr. Gold's [1]  55/9
Mr. Gronkowski [3]  15/15 15/21 20/19
Mr. Gross [3]  50/6 69/21 75/3
Mr. Gross' [2]  56/22 74/24
Mr. Knight [1]  11/17
Mr. Mackey [7]  8/4 19/6 65/4 65/15 88/19 89/13 101/22
Mr. Moskowitz [53]  5/8 11/16 12/10 13/12 13/19 15/12 16/3 16/7 17/15 19/2 19/16 19/21 19/24 20/14 20/25 21/10 21/20 23/11 23/11 24/2 25/6 31/11 32/6 39/4 39/14 40/7 40/10 41/22 41/24 42/1 42/6 43/21 43/23 43/25 44/2 45/2 46/25 47/18 48/6 49/14 49/16 61/2 63/15 79/22 80/5 82/17 82/18 82/20 83/22 90/7 91/6 93/2 97/4
Mr. Rares [9]  42/4 43/13 48/5 58/8 58/13 74/22 75/1 78/15 78/22
Mr. Robertson [25]  15/5 18/16 36/6 36/18 37/5 37/14 37/25 38/23 39/12 39/22 43/11 43/16 45/3 46/6 47/20 47/23 49/10 49/20 49/24 52/2 53/14 62/4 63/7 86/3 88/4
Mr. Robertson's [1]  46/12
Mr. Sanford [3]  42/23 53/15 79/13
Mr. Swissner-Gross [1]  77/18
Mr. Tapply [6]  8/4 65/4 65/15 88/20 89/13 101/22
Mr. Wissner-Gross [19]  11/18 13/17 16/11 29/16 31/21 43/25 47/15 48/20 59/5 59/23 73/5 90/4 90/21 90/22 93/6 97/13 99/5 99/15 101/18
Mr. Zack [1]  4/18
Ms. [13]  42/15 43/14 53/15 53/21 55/21 56/25 61/5 62/25 74/19 74/23 74/25 78/7 79/12
Ms. Gold [7]  43/14 56/25 62/25 74/23 74/25 78/7 79/12
Ms. Gold's [3]  55/21 61/5 74/19
Ms. Rachel [2]  53/15 53/21
Ms. Wolkinson [1]  42/15
much [16]  5/14 8/21 11/20 19/7 25/24 29/19 31/22 51/15 74/23 79/17 80/13 81/17 89/16 94/15 96/5 105/2
multiple [3]  63/8 78/6 78/7
must [3]  74/2 93/8 93/8
my [26]  4/9 4/14 5/25 12/21 15/13 19/18 20/2 23/22 27/1 29/23 32/11 35/2 35/3 35/16 41/21 42/15 45/16 54/4 75/4 82/21 95/3 95/9 95/10 99/8 99/19 105/10
myself [1]  12/20
mysteriously [1]  38/11

**N**

nail [1]  60/4
name [3]  63/7 78/9 88/5
named [2]  35/14 77/21
names [1]  81/1
narrative [1]  27/4
narrow [1]  87/9
national [4]  15/20 28/5 31/24 95/12
nationwide [1]  95/15
nature [2]  23/5 33/23
necessary [6]  6/24 24/10 47/6 59/22 72/8
need [32]  5/18 6/21 9/1 9/23 12/5 27/9 39/7 40/24 41/16 43/11 45/13 47/17 47/18 47/19 51/21 55/23 61/19 62/2 62/9 62/15 62/16 64/23 73/7 80/9 85/24

**N**

need... [6]  89/7 91/6 92/5 94/15 99/22
101/6
needed [7]  6/5 13/1 45/4 50/4 50/23
94/10 104/2
needs [8]  17/9 29/5 42/14 43/4 75/21
77/14 94/23 102/14
never [6]  14/9 27/5 32/20 37/21 81/23
92/16
new [10]  2/21 5/3 17/15 17/16 17/17
21/3 21/4 21/6 43/22 89/10
next [62]  14/4 14/11 14/23 28/18 29/3
36/16 36/16 37/9 37/20 38/23 39/25 41/9
41/18 43/11 43/12 46/5 47/20 47/22 48/3
48/7 49/10 50/9 50/15 50/19 51/10 52/7
52/14 52/25 53/3 53/12 53/13 53/14
53/18 54/2 54/19 54/24 55/1 55/2 55/9
55/24 56/4 56/4 56/20 57/15 57/25 58/22
58/23 59/22 63/24 66/13 66/24 72/10
72/12 72/19 73/3 74/4 74/16 80/4 92/19
96/10 103/24 104/11
NFL [1]  15/15
night [2]  39/16 104/19
nine [2]  36/2 36/11
no [71]  1/2 4/4 6/21 7/8 10/3 13/13 17/9
17/20 17/25 19/24 21/20 21/20 23/17
23/18 24/5 25/14 26/16 27/25 28/10 29/8
31/7 31/19 32/11 32/21 32/25 33/11
34/18 34/24 34/25 38/4 38/5 38/11 38/16
40/3 40/3 41/18 42/9 42/23 45/22 46/8
46/11 46/22 47/21 49/22 52/1 53/19 54/3
58/24 62/6 64/20 64/20 70/2 70/16 74/4
79/23 80/2 85/3 86/6 86/7 89/14 89/20
92/7 92/11 92/11 95/23 95/23 95/23 97/3
98/17 100/19 103/22
nobody [1]  81/23
nominal [1]  87/6
nominee [1]  79/23
noncompliance [2]  39/19 39/19
none [6]  7/17 7/20 19/15 32/24 38/21
40/19
nonparty [1]  19/10
noon [1]  63/24
Nor [1]  67/25
nothing [5]  28/16 64/10 81/3 94/12 96/15
notice [1]  15/16
noticed [2]  15/14 37/15
noting [2]  23/9 88/8
notwithstanding [1]  42/2
November [5]  91/25 93/12 93/16 93/19
96/16
now [38]  6/13 11/9 11/11 12/9 25/5 27/1
29/1 31/1 33/25 35/7 40/7 40/14 42/11
46/14 48/15 52/5 52/11 54/15 55/10
59/19 60/4 63/2 63/5 63/12 66/2 66/9
73/6 73/9 80/3 83/8 86/24 91/9 92/1
92/16 94/9 98/11 101/13 104/16
number [6]  37/3 37/4 80/20 84/20 84/21
numbers [2]  14/16 28/6
nurse [1]  42/14
NW [1]  2/15
NY [2]  2/5 2/21

**O**

oath [1]  91/11
object [2]  9/18 21/1
objected [1]  63/15
objecting [2]  69/5 69/8
objection [4]  63/18 68/10 69/20 70/23

objections [3]  39/4 70/15 80/15
obligated [1]  82/3
obligations [1]  8/23
obviously [5]  15/8 22/18 33/20 37/11
58/24
occur [2]  36/10 59/21
occurred [2]  50/7 71/12
October [8]  21/18 27/16 30/15 36/4
36/10 37/2 37/6 98/14
off [8]  6/2 35/13 60/14 75/3 75/16 76/14
77/7 77/10
offer [2]  55/19 56/19
offered [13]  19/25 42/15 43/5 43/23
48/18 50/3 50/22 51/18 55/18 56/18 57/2
79/24 103/19
offering [1]  80/8
office [7]  42/24 43/1 43/1 45/15 45/17
56/15 57/6
officials [1]  8/16
oh [3]  49/25 52/4 58/22
OK [85]  4/11 4/19 5/5 10/17 10/20 11/4
11/14 12/15 16/17 23/13 23/20 24/11
24/25 25/4 26/22 30/9 31/21 33/5 33/16
35/19 35/21 41/1 42/20 43/20 44/18
45/21 46/2 46/17 47/4 47/9 48/4 49/1
49/3 50/8 52/9 52/16 54/7 55/3 55/10
56/5 57/4 57/18 58/22 61/22 62/3 64/2
65/23 70/12 70/22 71/2 71/18 72/18 73/1
73/22 73/22 75/9 75/10 75/10 76/5 76/13
77/25 78/4 78/10 78/14 79/17 80/1 80/6
81/6 84/6 84/10 84/25 85/19 87/23 90/4
91/15 93/6 93/13 94/8 94/25 95/11 97/14
98/3 98/16 98/19 103/8
on [176]
once [3]  13/1 16/10 87/10
one [68]  5/20 6/19 7/21 8/11 13/7 16/6
19/22 20/18 21/17 25/9 25/12 25/20
27/24 28/11 29/12 34/18 34/24 35/16
37/3 39/25 41/7 41/21 42/7 42/15 42/23
43/6 43/10 44/12 44/22 45/14 47/16
47/17 48/16 51/8 55/8 55/16 55/17 55/23
55/24 56/17 57/1 57/1 58/5 58/5 62/18
63/10 64/23 74/14 74/18 75/11 77/11
78/3 79/7 82/9 83/2 85/15 85/15 87/25
88/14 92/19 96/9 98/13 98/14 98/21
99/11 101/25 104/5 104/5
one-day [1]  99/1
one-hour [1]  43/10
ones [3]  44/14 87/7 87/21
only [26]  4/17 14/13 14/18 17/7 18/21
19/22 20/5 22/12 23/9 24/1 26/8 35/2
37/7 41/5 43/4 52/10 57/8 64/23 67/18
75/24 87/24 91/8 92/22 98/13 103/23
104/4
open [7]  36/13 38/18 40/21 41/24 62/7
75/24 86/13
opened [12]  36/2 36/7 36/8 38/12 40/15
40/17 40/20 42/1 60/17 60/22 62/8 79/24
opening [3]  34/5 34/13 76/3
opens [1]  38/11
operates [1]  62/15
opportunity [6]  6/12 22/10 30/25 40/9
44/18 97/7
opposing [2]  5/14 45/8
options [1]  60/5
or [73]  5/20 6/24 11/17 15/13 15/23 16/4
16/14 17/9 17/15 18/22 20/5 20/6 20/18
22/3 31/6 31/19 35/11 37/1 39/9 43/17
47/20 50/4 50/23 51/3 51/3 51/9 51/10
55/18 57/6 57/20 57/23 58/4 58/13 59/8

59/23 59/22 60/18 60/23 60/23 60/25
60/21 61/8 67/23 68/11 68/25 69/3 69/12
70/1 70/16 70/25 71/10 71/20 72/15
75/25 77/3 77/13 80/4 80/13 80/21 80/23
81/2 81/3 81/18 82/9 82/17 83/7 87/5
87/10 88/5 95/7 95/16 98/1 100/7
order [13]  11/9 12/14 18/20 39/19 50/25
54/20 57/20 66/14 76/21 81/25 92/18
99/23 103/14
ordered [2]  28/12 46/8
orderly [1]  72/6
organization [1]  95/7
other [69]  6/16 15/22 24/14 24/15 25/2
34/19 34/24 35/11 38/4 38/5 38/9 38/20
38/21 39/6 39/8 40/4 62/14 62/17 62/24
62/24 63/2 63/9 63/15 63/16 63/19 63/25
64/23 66/20 67/3 67/3 67/14 67/16 67/16
69/16 69/16 70/1 70/3 70/4 70/5 70/9
70/9 70/22 71/4 71/5 71/5 71/6 74/22
75/15 76/18 79/18 80/15 80/24 81/1
81/10 82/4 86/7 86/12 86/12 86/15 86/15
87/6 88/5 88/10 90/14 91/3 94/3 96/13
97/2 102/1
others [5]  10/25 15/24 27/20 44/17 46/7
otherwise [3]  15/23 16/5 50/15
ought [5]  26/4 26/13 53/2 104/24 104/24
our [43]  5/10 5/14 5/21 6/12 6/14 6/23
7/18 9/4 12/4 13/9 26/16 27/10 29/13
38/25 39/18 41/3 42/9 42/24 43/1 46/23
47/7 49/4 52/13 56/3 56/14 57/14 61/17
63/6 64/7 64/15 64/16 65/19 68/18 71/1
71/9 73/23 73/24 75/21 83/9 87/8 91/1
91/16 96/3
ours [2]  104/21 104/25
ourself [1]  87/9
out [20]  7/20 16/8 19/15 26/10 36/12
37/4 39/7 41/2 41/23 51/15 51/20 58/21
63/6 77/5 77/17 79/16 81/1 82/21 92/20
102/6
outlining [1]  23/5
over [20]  5/21 11/23 13/6 13/8 14/3 20/7
41/4 57/7 71/16 75/8 81/17 86/10 104/14
104/15 104/18 104/19 104/21 104/23
104/24 104/25
overboard [4]  81/22 81/22 82/1 82/3
overlapping [1]  5/11
own [6]  6/12 8/23 38/25 42/5 63/6 104/8

**P**

page [4]  36/16 41/9 63/11 76/19
pages [3]  1/7 14/3 21/11
par [1]  70/13
paragraph [1]  36/20
paragraphs [1]  34/3
parcel [1]  13/15
part [5]  13/14 26/21 95/5 97/18 99/24
participate [1]  25/21
participating [2]  5/4 35/1
particular [7]  62/19 67/5 68/4 71/9 71/12
78/13 81/23
particularly [2]  23/11 99/11
parties [1]  29/15
partners [1]  4/9
party [5]  9/4 24/10 60/13 69/19 69/25
pass [1]  92/1
past [1]  71/10
path [1]  21/10
pattern [2]  86/9 86/15
pay [1]  41/8
pedaling [1]  101/13

## P

peeked [1]  28/24
penalty [1]  38/1
pending [2]  16/4 91/10
people [34]  4/17 4/18 5/6 7/25 15/12 20/21 20/22 22/23 25/20 26/6 27/17 27/23 28/20 35/2 35/6 43/22 44/20 45/13 45/16 51/7 51/22 62/22 65/10 82/16 86/11 89/4 89/5 90/2 95/20 96/5 96/12 99/8 99/8 99/12
people's [3]  86/7 88/6 88/10
per [1]  36/11
percent [1]  66/22
perfect [2]  19/3 41/2
perfectly [1]  22/23
Perhaps [1]  12/20
period [6]  50/24 64/20 89/24 90/17 90/24 103/20
perjured [2]  43/18 49/11
perjury [2]  15/2 38/1
person [12]  33/16 33/24 36/18 37/15 40/25 41/17 41/17 56/14 69/5 79/7 85/15 85/15
personal [14]  7/25 14/9 27/17 38/25 44/6 65/10 65/16 69/2 89/2 91/11 91/25 92/23 96/17 96/18
personally [1]  53/3 96/24
personnel [2]  34/19 35/12
perspective [2]  12/5 39/18
pertaining [1]  100/7
phone [2]  6/24 60/18
phrase [1]  41/21
physical [3]  29/21 31/25 99/4
physically [1]  28/1
pick [3]  52/17 52/18 52/19
picked [1]  92/23
picture [2]  60/20 62/22
piece [3]  60/24 67/20 76/19
piecemeal [1]  74/15
PIERCE [2]  1/3 49/5
place [3]  14/15 52/8 52/17
plaintiff [20]  1/4 1/14 2/3 32/13 33/1 33/9 34/2 36/18 40/14 44/12 48/15 56/11 56/12 61/13 65/13 66/23 68/4 77/22 78/23 103/14
plaintiff's [4]  67/2 67/23 87/19 89/9
plaintiffs [83]  4/6 4/14 5/11 6/6 6/16 6/21 6/23 7/10 10/9 10/15 13/3 13/11 13/14 14/20 14/25 17/16 17/21 18/7 18/9 18/12 18/16 20/16 20/16 23/24 24/4 24/5 30/24 32/16 32/17 32/21 33/24 33/21 34/1 34/2 34/8 36/2 36/14 38/17 39/13 40/8 40/19 42/7 44/2 47/2 54/21 55/5 55/12 57/16 60/10 60/15 60/22 60/23 61/13 62/13 62/18 63/3 63/9 63/13 63/25 65/2 65/8 65/8 65/18 65/19 73/11 73/12 74/1 74/5 74/6 74/7 74/8 80/8 80/15 81/13 84/16 85/4 88/25 89/18 94/1 100/17 101/4 103/10 103/24
plaintiffs' [8]  7/13 33/7 39/15 58/1 64/2 64/7 68/16 92/15
plan [2]  95/25 105/3
planned [3]  10/4 89/3 95/21
planning [1]  27/16
platform [2]  68/24 82/9
platforms [1]  87/5
play [3]  9/25 36/23 39/17
played [3]  9/22 9/22 95/11
player [1]  15/15
Plaza [1]  1/16

please [4]  44/25 77/7 79/7 89/24
PLLC [1]  1/15
plus [1]  14/25
point [16]  11/5 11/24 13/3 14/2 14/9 19/23 22/12 29/20 32/10 42/6 49/4 60/9 77/17 88/2 97/4 97/15
points [3]  15/11 26/24 31/7
pop [1]  83/13
portion [1]  24/7
position [5]  17/8 25/7 26/2 30/16 75/10
possession [4]  71/1 71/11 71/14 83/10
possible [6]  12/25 57/22 63/13 73/13 85/18 103/14
possibly [3]  6/6 6/15 58/14
potentially [1]  79/9
PowerPoint [3]  11/21 33/14 61/23
practical [4]  15/9 30/5 30/19 56/8
practice [1]  99/9
preference [1]  52/13
pregnant [1]  45/14
prejudice [4]  17/21 19/9 19/24 103/22
premise [1]  30/11
preop [1]  50/1
prepare [2]  57/2 63/14
prepared [9]  16/18 19/19 25/1 42/16 42/25 43/3 43/4 52/15 53/24
presence [5]  29/19 29/22 31/19 32/1 99/4
present [5]  20/10 20/16 32/20 32/24 35/9
presentation [1]  40/10
presented [1]  88/24
President [1]  92/10
press [34]  9/16 19/2 21/17 21/19 27/6 27/16 27/19 28/2 28/5 30/13 31/10 31/17 36/4 37/7 40/15 40/20 42/3 62/8 89/3 91/12 92/25 95/12 95/21 96/7 97/5 97/16 97/18 98/11 98/13 100/3 100/17 101/8 101/10 102/9
pressing [1]  80/14
prior [14]  36/4 37/7 50/13 54/25 63/7 64/16 70/16 76/3 83/7 94/10 100/3 101/23 102/15 102/20
prioritize [10]  31/9 73/11 75/18 76/8 94/21 100/12 100/19 101/3 101/20 102/18
priority [2]  31/13 77/16
privilege [1]  63/19
pro [1]  38/2
probably [8]  17/8 43/2 50/18 71/14 72/11 74/8 75/1 76/20
problem [6]  9/13 18/1 38/16 45/25 57/8 98/24
proceed [1]  12/14
proceeding [2]  38/2 62/6
proceedings [2]  4/2 63/8
process [5]  16/20 20/23 74/11 95/5 102/23
produce [34]  9/12 9/13 10/24 14/13 14/18 16/19 17/1 17/1 18/4 19/25 24/19 25/1 28/12 39/20 54/21 68/21 70/3 73/6 70/20 70/25 71/6 72/6 72/11 72/13 73/6 81/24 82/12 82/14 96/9 99/7 102/25 103/4 103/14 103/15
produced [34]  7/20 13/19 14/3 17/11 25/16 27/2 27/24 28/17 30/12 39/3 60/1 60/10 61/17 61/18 64/19 66/21 72/19 76/11 76/16 77/3 80/23 81/9 84/15 89/21 94/20 95/6 97/22 98/5 99/18 99/25

99/16 102/14 103/11
producing [9] 16/23 18/3 94/15 94/21 65/23 72/16 72/16 81/20 103/24
product [3]  14/19 27/9 31/25
production [30]  16/24 18/13 24/24 25/10 31/10 31/14 38/8 39/15 39/19 56/3 57/17 58/2 59/24 66/13 72/2 72/8 74/8 74/6 75/11 75/15 75/17 94/14 94/18 94/22 97/1 97/20 97/24 100/12 100/13 101/20
productions [1]  72/14
professional [1]  21/25
professionally [1]  5/25
professionals [1]  91/24
profits [1]  7/22
promise [1]  29/7
promised [2]  27/20 28/20
promote [1]  7/6
promoting [1]  36/21
promotion [2]  6/20 99/18
promotions [1]  98/12
proposal [1]  57/14
propose [2]  57/19 103/13
proposed [6]  17/5 43/15 48/24 54/4 54/8 55/22
proposing [2]  16/16 16/16
prove [2]  6/21 47/5
provide [7]  31/5 31/12 37/11 71/23 75/14 83/10 89/5
provided [3]  14/21 37/22 67/25
provides [1]  102/9
pull [3]  66/6 72/3 72/4
pulled [1]  74/9
pulling [1]  70/19
purchasing [1]  68/1
purported [1]  37/21
purposes [3]  25/20 82/7 99/15
purview [1]  12/13
put [8]  12/2 29/8 35/22 66/7 81/2 81/5 81/18 87/2
puts [1]  38/13
putting [1]  5/23

## Q

qualification [1]  96/24
query [1]  40/16
question [10]  10/8 20/5 29/21 30/23 44/22 48/3 54/1 57/10 60/9 77/11
questions [12]  8/20 20/4 30/18 48/1 59/16 62/20 65/22 68/8 68/10 68/12 71/16 78/16
quick [2]  40/13 61/17
quickly [3]  14/1 33/14 103/13
quite [1]  30/22 99/6
quote [2]  36/19 65/11

## R

raced [1]  39/15
RACHEL [19]  2/14 5/3 36/14 40/14 41/20 45/15 48/25 53/15 53/18 53/21 54/5 54/9 54/12 54/14 55/19 57/9 77/24 77/25 79/22
Rachel's [1]  45/15
raise [2]  6/11 48/1
raised [1]  89/8
Rares [17]  41/25 42/4 43/13 48/5 49/7 53/16 55/20 56/16 56/23 57/10 58/8 58/13 74/22 75/1 77/20 78/15 78/22
reach [2]  28/6 96/3
reached [1]  89/5
read [2]  80/3 80/4

R

reading [1] 46/25
real [3] 43/7 66/16 67/1
reality [1] 30/10
really [17] 7/4 7/15 7/16 9/9 11/7 22/16
26/17 54/22 70/10 71/25 80/9 80/13
80/25 83/4 86/10 90/19 94/23
realm [1] 82/2
realtime [1] 96/25
reason [18] 10/1 10/9 19/16 41/18 42/23
47/21 52/1 55/8 79/21 80/22 88/7 88/9
89/14 89/20 92/7 92/23 95/14 101/19
reasonable [5] 84/4 92/16 92/18 93/1
96/22
reasonably [2] 8/8 63/21
reasons [4] 15/10 32/3 56/7 88/14
recall [2] 90/8 93/21
receive [2] 8/21 83/23
received [18] 6/10 60/25 68/25
recently [3] 42/11 56/17 78/2
recognize [1] 15/8
reconsider [1] 89/24
reconsideration [1] 30/9
record [5] 29/8 32/15 33/3 92/12 93/11
recording [2] 1/9 105/11
recover [2] 50/5 50/23
recuperate [1] 45/4
red [2] 36/2 86/10
redemption [1] 60/23
refer [1] 62/5
reference [1] 97/8
referred [1] 12/12
referring [1] 36/21
reflected [1] 13/22
refused [1] 31/3
regard [6] 33/7 70/21 85/22 88/25 99/25
103/9
regarding [10] 9/15 64/12 64/15 66/3
66/4 67/23 71/11 80/14 81/24 97/15
regardless [1] 97/24
regards [1] 75/22
regular [1] 91/24
regurgitating [1] 28/25
rehashing [1] 20/17
rehearing [1] 26/18
REID [3] 1/10 9/8 89/25
reinforced [1] 33/23
relate [6] 25/17 25/19 68/21 70/6 97/25
101/8
related [18] 15/19 67/21 68/24 69/15
relates [8] 64/17 67/7 67/21 70/6 83/19
84/8 87/12 104/5
relating [9] 19/21 25/18 68/16 69/4 69/19
69/25 71/5 101/9 101/10
relationship [3] 21/24 21/25 26/5
Relativity [1] 72/5
relevancy [2] 63/15 68/10
relevant [20] 8/22 8/24 24/8 25/13 26/8
28/15 30/23 37/12 62/18 67/5 67/17 71/1
76/4 80/13 80/16 82/7 83/5 88/14 94/12
95/8
reliance [13] 6/22 24/2 24/4 34/4 34/6
36/5 40/16 46/23 47/1 62/20 81/4 81/6
81/8
relied [9] 36/12 38/18 40/17 42/8 47/3
62/7 63/1 65/21 81/8
relies [1] 29/21
relieved [1] 38/3
rely [2] 42/7 63/17
relying [1] 34/12

remaining [2] 54/21 104/4
remains [1] 15/18
remember [4] 8/3 8/10 27/13 93/17
rep [1] 44/21
repeatedly [1] 17/15
reporter [4] 3/10 35/8 35/11 105/14
reporters [1] 35/1
represent [2] 22/15 22/17
representation [1] 31/7
representations [1] 42/2
representative [1] 79/9
representatives [3] 33/10 44/12 97/15
represented [2] 19/10 62/5
representing [2] 4/13 99/9
reps [2] 44/15 66/25
request [10] 32/3 69/18 76/22 81/15
81/15 81/17 81/17 84/4 85/24 97/17
requested [6] 24/22 54/22 93/18 95/1
97/14 103/15
requesting [1] 18/23
requests [1] 67/24
require [1] 59/20 87/18
required [2] 41/7 87/17
requires [1] 24/4
resistance [1] 64/20
resolution [1] 82/13
resolve [1] 18/19
resolved [4] 47/14 53/11 103/9 104/2
respect [20] 11/4 18/21 18/22 22/13
24/13 25/18 31/12 68/25 69/20 70/1 70/2
70/3 85/11 86/2 98/7 98/20 98/25 99/16
99/18 100/7
respectfully [5] 51/13 56/2 68/6 100/11
102/7
respond [6] 25/9 26/23 40/1 68/19 79/20
80/2
Responding [1] 56/22
responds [1] 16/4
response [8] 11/18 12/23 37/16 43/24
89/23 93/17 96/6 99/24
responsibility [2] 26/6 92/13
responsible [1] 74/25
responsive [1] 39/2
rest [1] 103/15
restitution [1] 41/8
retired [1] 94/1
return [1] 49/10
revealed [1] 80/10
review [8] 61/18 72/6 72/10 72/24 73/8
96/25 97/19 103/23
reviewed [1] 16/22 97/2
ridiculous [1] 45/19
right [34] 5/8 6/7 6/11 11/5 18/19 22/5
25/4 27/4 29/15 34/25 39/24 40/7 44/1
44/10 45/1 53/7 54/17 61/6 66/3
66/4 71/4 71/22 73/5 76/7 79/17 81/12
84/14 86/8 86/21 86/24 93/15 98/23
105/4
rise [1] 23/6
RKA [1] 1/2
road [1] 102/13
ROBERTSON [28] 1/3 15/5 18/16 36/6
36/18 37/5 37/14 37/25 38/23 39/12
39/22 43/11 43/16 45/3 46/6 47/20 47/23
49/5 49/10 49/20 49/24 52/2 53/14 62/4
63/7 85/2 86/3 88/4
Robertson's [1] 46/12
rodeo [1] 7/18
role [1] 100/16
rolling [1] 16/19 16/23 17/1 17/12 18/6

24/16 24/20 25/3 31/10 31/14 72/13
88/14 94/21 97/23 100/19 101/8 102/22
room [3] 41/6 57/6 57/11
rooms [1] 58/15
rouse [1] 75/17
routing [1] 84/21
RPR [2] 3/9 105/13
rub [2] 66/16 67/1
RUDNICK [3] 2/14 2/20 4/24
rule [3] 24/7 33/20 86/24
ruled [8] 7/1 7/12 7/14 29/1 33/6 44/11
65/11 92/4
rules [1] 29/13
ruling [9] 32/11 32/14 32/19 64/6 87/14
87/16 89/16 89/20 92/8
running [1] 56/10
rush [1] 51/22
rushed [2] 51/24 51/25
rwolkinson [1] 2/17

S

said [90] 6/4 6/9 6/25 7/3 7/8 8/2 8/7 8/8
8/9 8/11 8/13 8/16 9/10 9/15 9/18 10/19
10/22 11/6 11/15 13/13 13/19 14/5 15/17
16/7 18/11 18/12 19/2 19/18 19/21 23/23
23/24 24/2 25/13 26/1 26/14 26/16 27/4
27/8 27/14 28/1 28/9 28/10 28/23 28/24
31/14 37/18 42/11 44/10 44/13 45/6
45/15 46/9 46/10 46/22 50/4 58/12 63/22
64/10 64/19 64/21 64/25 65/6 65/11
71/4 72/21 72/23 73/18 74/18 78/6 84/7
87/2 89/9 89/14 89/15 89/24 90/9 91/2
91/21 92/5 92/6 92/7 93/11 96/8 97/6
97/19 98/22 98/25 101/7 101/25 102/22
sake [3] 20/8 20/12 24/13
same [17] 8/19 9/19 32/3 34/1 34/11
56/16 56/25 58/14 63/8 65/16 82/16
82/19 88/8 88/13 90/21 100/10 104/14
Sanford [18] 36/14 40/13 40/13 42/21
42/23 49/2 53/15 53/18 54/15 55/20 56/9
57/9 57/23 58/4 58/11 63/9 73/18 79/13
satisfy [1] 75/20
save [3] 23/2 60/20 75/11
saw [2] 36/20 65/20
say [32] 8/25 10/21 20/14 21/3 22/9
22/20 33/2 40/6 40/11 44/16 44/25 45/19
47/2 58/21 58/22 60/17 63/24 67/22
70/24 73/20 74/16 77/11 83/7 83/8 84/24
84/24 90/22 94/11 100/9 100/10 101/14
104/23
saying [21] 11/9 16/25 17/3 22/6 24/7
24/14 25/10 27/24 28/12 29/9 45/10
47/12 49/15 50/20 53/22 59/7 68/20
71/19 78/5 95/14 96/8
says [5] 9/7 84/16 92/25 95/12 96/2
sbest [2] 2/16
scams [1] 41/6
scared [1] 29/6
schedule [2] 57/13 57/13
scheduled [1] 55/5
schedules [2] 58/25 103/17
schemes [1] 41/16
SCHILLER [3] 2/4 2/9 4/13
screen [2] 5/6 35/2
screenshot [9] 60/16 60/17 60/19 69/10
75/12 75/18 75/19 76/15 76/19
screenshots [6] 66/21 75/15 76/8 76/12
76/16 76/18
screenshotted [1] 60/13
scurrying [2] 43/22 72/15

S

se [2]  2/10 38/2
search [9]  30/25 31/4 66/5 66/5 71/13
72/7 95/4 95/6 98/6
second [5]  7/24 9/20 13/7 22/8 42/12
Secondly [1]  75/22
seconds [1]  60/15
securities [2]  6/19 7/5
security [1]  68/2
see [34]  6/24 8/22 11/17 11/18 17/13
21/12 21/15 34/21 34/22 35/2 35/9 35/10
35/14 48/23 50/24 55/10 57/22 59/8
59/20 64/18 67/9 71/13 78/18 79/10
83/22 84/19 87/5 89/14 89/20 92/7 98/6
100/2 101/19 103/22
seek [3]  20/25 23/12 68/13
seeking [2]  38/2 91/9
seem [2]  30/5 73/19
seems [3]  13/2 43/8 99/14
seen [4]  15/2 15/18 42/4 68/15
sees [1]  94/17
selection [1]  97/3
self [1]  97/3
self-selection [1]  97/3
selling [1]  86/14
send [4]  46/5 60/20 75/13 81/17
senior [1]  93/24
sense [12]  15/6 15/25 17/4 17/18 17/22
19/3 55/8 57/8 57/12 59/25 67/11 67/24
sensitivity [1]  19/12
sent [3]  14/14 19/14 80/5
separate [1]  9/16 19/10 26/10
separately [1]  53/23
separating [1]  7/9
September [3]  38/1 38/10 62/6
serious [4]  8/20 41/5 63/10 63/10
serve [1]  57/2
served [4]  15/16 34/15 41/5 74/5
set [9]  6/13 9/6 9/11 12/9 21/4 33/9
55/25 89/9 92/2
settled [1]  23/25
setup [1]  55/24
seven [7]  2/20 7/18 9/22 17/5 46/10
83/20 85/8
severable [1]  22/25
several [2]  15/9 63/11
several-page [1]  63/11
share [1]  34/17
sharing [1]  39/1
she [15]  41/24 42/3 42/7 42/11 42/14
43/4 45/14 45/14 45/17 45/23 54/1 63/1
78/8 78/11 90/1
shockingly [1]  28/9
short [4]  17/9 50/25 66/14 75/1
shot [2]  29/13 30/8
shots [1]  20/21
should [32]  6/10 11/12 12/9 12/14 12/20
13/24 14/24 16/1 16/14 23/8 33/19 33/21
39/2 41/11 41/19 43/6 43/10 43/14 52/8
56/19 57/25 63/19 66/13 66/14 72/10
73/19 75/5 84/9 86/21 87/1 101/20
103/15
shouldn't [2]  45/25 89/21
show [17]  8/7 25/14 25/15 30/13 31/15
31/17 47/13 62/17 67/10 68/1 76/14
76/25 77/2 80/16 94/19 103/1 103/2
showed [3]  27/7 27/14 66/21
showing [6]  14/19 39/14 76/16 76/17
76/17 82/7
shown [1]  47/25

shows [1]  69/10
side [1]  24/1
sides [5]  16/12 23/4 30/4 32/13 103/13
Sig [6]  4/24 13/23 14/12 35/20 44/25
75/8
SIGMUND [2]  2/19 77/19
sign [2]  78/8 78/9
significance [1]  14/23
significantly [1]  99/22
similar [1]  86/15
simple [2]  6/18 31/25
simplest [1]  88/15
simply [5]  13/2 16/13 29/25 57/15 82/5
simultaneously [1]  62/18
since [7]  5/6 21/4 23/11 38/10 80/7
90/21 99/7
single [6]  6/19 27/23 30/13 48/15 91/18
95/21
sit [2]  70/8 71/19
sitting [1]  66/22
situation [1]  21/2 32/18 60/11 72/1
six [4]  15/13 17/15 35/2 92/9
slide [10]  9/20 12/3 13/5 13/22 14/4
14/11 14/23 35/25 36/16 37/9
slides [1]  5/24
Slow [1]  52/9
small [2]  36/23 104/5
so [186]
soccer [2]  15/20 15/22 22/1
software [2]  72/5 72/5
sold [1]  96/6
solicitation [1]  31/15
solution [2]  30/19 50/18
solve [2]  18/1 21/11
some [37]  4/4 5/11 6/10 6/10 9/18 10/9
12/24 18/9 18/14 18/14 20/5 23/2 26/1
30/3 34/17 57/12 60/5 62/11 63/14 70/4
71/20 73/2 73/7 76/18 77/3 80/24 80/25
81/8 82/8 84/21 89/11 90/13 91/22 92/12
93/8 94/17 95/15
somebody [3]  66/10 70/4 71/19
somehow [5]  10/22 34/12 42/3 68/2
95/19
someone [7]  22/19 35/14 35/21 38/15
38/19 40/20 46/15
something [12]  9/16 10/8 36/17 51/10
70/24 75/4 76/10 77/17 86/18 86/20
97/14 101/15
sometime [1]  37/19 43/16
soon [1]  63/13
sophistication [3]  80/17 80/19 82/8
sorry [12]  10/4 50/16 50/17 52/9 59/6
66/16 76/25 79/5 82/15 85/13 85/13
85/13
sort [4]  39/7 42/6 47/17 81/8
sought [1]  89/10
sound [2]  15/25 36/22
sounds [4]  59/23 73/13 86/18 105/3
source [10]  62/9 62/12 62/23 69/8 69/13
83/24 84/3 85/4 85/23 86/11
South [2]  48/5 48/5
SOUTHERN [4]  1/1 19/15 42/17 78/12
speak [5]  22/15 54/6 64/4 90/22 103/7
speaker [2]  5/6 27/12
speaking [5]  31/1 69/22 69/22 82/16
85/11
specific [5]  81/20 84/22 86/3 86/20
86/23
specifics [1]  26/24
spend [2]  23/4 83/6

spent [2]  7/18 102/24
spirals [1]  67/23
splinter [1]  87/10
spoken [2]  53/4 94/6
sponsor [1]  31/16
sponsorship [2]  15/22 21/16
spreadsheet [1]  61/3
Springs [3]  42/19 42/20 53/22
Square [1]  2/20
stage [1]  68/14
staggering [1]  8/14
standard [2]  6/22 85/17
standards [1]  65/17
standing [14]  13/11 13/13 20/17 24/5
32/16 32/17 32/21 32/24 33/1 33/2 42/6
60/24 78/11 88/11
Star [2]  66/10 90/16
start [10]  4/5 5/8 12/19 16/23 18/5 52/25
72/25 87/10 87/11 101/1
started [2]  27/7 69/21
starting [3]  18/6 72/10 94/16
state [10]  6/22 24/1 24/8 32/6 32/15 38/2
64/23 93/4 96/6 98/7
stated [1]  56/7
statement [2]  24/18 36/9 37/3 56/22
statements [1]  47/8
states [6]  1/1 1/10 7/21 28/11 36/19
92/11
status [1]  88/9
statute [1]  24/3
stay [11]  8/14 16/13 26/13 26/17 26/18
28/24 40/22 65/9 89/11 90/2 92/21
staying [2]  10/19 11/13
STEPHEN [5]  2/9 2/13 13/9 20/14 88/3
Steve [3]  4/14 5/3 95/13
stick [1]  18/18
still [13]  6/23 18/13 19/11 39/17 47/23
60/19 63/17 73/10 73/14 81/10 92/17
102/7 103/11
stop [1]  87/24
story [1]  21/23
Street [3]  2/5 2/10 2/15
strict [2]  6/22 7/6
strong [2]  49/11 49/11
struggling [3]  96/16 97/9 97/13
stuff [3]  18/4 81/1 87/12
stunned [1]  41/22
subject [2]  16/5 30/22
subjects [1]  22/7
submit [1]  100/11
submitted [4]  15/3 39/13 61/8 61/9
subpoena [2]  19/14 19/17 34/15 47/11
subsequent [1]  20/21
substantially [1]  97/5
substantive [4]  16/13 17/12 17/18 19/23
success [1]  18/15
successful [2]  28/3 96/7
such [1]  84/8
sued [1]  19/20
sufficient [1]  22/2
suggest [3]  47/20 51/13 68/6
suggested [1]  18/10
suggesting [1]  50/10
suited [2]  34/9 71/15
Sullivan [2]  15/16 20/20
summarized [3]  23/1 34/11 61/4
summarizing [2]  61/4 61/12
summary [2]  7/4 14/19
summer [1]  36/20
sun [1]  67/22

## S

support [7] 27/5 46/19
supported [1] 102/10
supposed [3] 39/20 89/17 96/19
Supreme [1] 104/6
sure [21] 9/13 22/11 34/18 48/17 50/25
  58/25 59/1 69/3 69/17 70/14 72/1 73/7
  74/12 74/14 74/20 83/9 87/8 87/9 90/9
  93/22 104/25
surgery [9] 37/17 37/21 44/22 46/13
  49/24 49/25 50/3 50/8 50/23
surprisingly [1] 9/3
swissner [2] 2/22 77/18
swissner-gross [1] 2/22
switch [3] 5/5 35/7 59/19
sworn [1] 34/10
system [2] 66/7 66/8
szack [1] 2/11

## T

table [1] 20/21
tailored [1] 81/18
take [27] 6/2 8/7 8/16 11/23 13/6 17/10
  17/22 18/12 21/4 25/12 25/21 25/24 26/2
  43/3 52/14 53/5 55/17 55/22 56/19 58/20
  71/24 73/2 75/8 86/19 89/11 92/20 93/24
taken [5] 11/10 30/25 50/6 74/20 75/6
takes [1] 60/17 75/12
taking [4] 13/8 30/16 54/5 73/7
talk [13] 10/10 13/6 21/13 33/7 55/2 56/4
  57/25 60/3 60/7 64/8 67/6 70/8 80/12
talked [2] 22/19 35/25 93/25
talking [19] 12/22 17/16 20/9 35/24
  36/17 51/7 54/15 60/15 63/2 69/15 83/3
  83/8 83/21 91/23 98/11 99/16 99/17
  100/6 100/21
talks [1] 27/13
Tapply [10] 8/4 19/6 27/19 28/21 29/4
  65/4 65/15 88/20 89/13 101/22
target [2] 89/4 96/5
targeted [2] 28/2 95/22
targeting [13] 21/21 25/14 25/19 28/5
  30/11 30/12 30/18 31/12 92/25 95/13
  95/17 96/1 104/7
team [2] 5/1 90/21
technically [1] 76/19
teed [1] 16/3
telemarketing [1] 41/6
tell [8] 16/15 20/2 25/25 46/23 62/1
  63/21 67/19 87/18
telling [3] 28/16 47/5 66/2
tells [1] 31/23
temerity [1] 68/17
temporalness [1] 70/24
ten [3] 71/17 87/25 92/22
terms [10] 17/24 18/24 25/23 30/25 31/4
  42/10 63/5 65/19 90/14 97/5
testimony [2] 79/16 99/24
text [3] 66/5 70/7 72/4
texts [1] 83/15
than [24] 16/5 17/9 20/7 29/19 29/21
  31/25 34/19 34/24 35/11 42/22 47/25
  51/15 53/20 55/23 56/10 63/19 64/1
  70/24 71/6 75/12 93/9 99/3 99/4 99/19
thank [23] 4/7 5/14 5/14 10/11 11/16
  11/20 16/11 23/14 33/4 33/5 40/12 43/25
  64/4 76/6 77/6 77/12 79/17 84/14 87/23
  88/17 89/15 105/2 105/4
that [530]
that's [40] 6/13 6/21 6/24 8/24 24/18
  24/22 25/15 27/3 29/4 30/23 38/18 39/12
  39/12 39/22 45/8 46/18 49/8 53/1
  54/15 54/16 54/23 56/6 61/22 64/1 65/6
  67/13 71/14 82/2 83/2 83/8 83/13 85/23
  86/1 92/15 93/1 96/22 98/9 98/15 102/14
their [110]
theirs [1] 105/1
them [112]
themself [1] 35/11
themselves [4] 33/21 35/12 83/16 99/10
then [50] 5/20 5/21 7/20 8/10 11/7 20/3
  20/4 20/20 24/13 27/11 28/19 31/18 33/1
  36/13 36/21 38/11 39/4 40/10 50/5 50/19
  53/15 55/24 57/25 59/4 59/9 60/20 61/25
  64/5 66/4 67/10 67/22 71/23 72/4 72/5
  72/24 74/17 77/16 79/18 80/21 81/8
  84/22 86/14 87/11 93/19 94/15 100/17
  101/2 102/14 102/20 104/25
theory [1] 17/17
there [97] 5/6 6/21 7/8 8/24 8/24 10/7
  10/9 10/22 11/1 12/22 12/13 13/13 13/19 13/24
  14/6 14/25 15/9 16/20 16/21 17/20 18/17
  19/12 19/14 19/22 19/24 20/3 20/6 21/17
  21/20 21/20 22/20 23/18 24/7 25/14
  28/16 30/12 30/13 30/17 31/19 31/22
  32/25 34/17 34/18 34/24 34/25 35/6 35/8
  39/18 40/16 41/18 42/22 44/19 45/22
  46/8 46/11 46/22 47/21 49/10 51/20
  51/21 52/1 53/19 57/7 61/5 61/6 61/8
  62/21 63/9 64/20 66/1 66/8 71/25 73/21
  76/7 76/18 77/20 84/9 84/24 86/9 86/9
  86/19 87/15 91/13 92/11 92/11 92/20
  93/8 94/22 95/4 95/6 95/20 97/14 98/6
  100/18 100/24 102/9 103/10 103/17
there's [7] 28/14 31/24 56/21 64/20 97/3
  97/9 98/13
thereafter [1] 93/17
therefore [2] 32/25 74/2
Thereupon [1] 3/12
these [66] 5/10 5/18 6/18 7/5 8/21 11/8
  14/13 14/16 15/21 20/18 20/22 23/10
  24/7 27/5 31/7 32/24 39/16 39/20 40/19
  40/22 43/18 44/6 44/8 45/10 46/19
  46/24 47/2 48/21 51/7 51/17 51/22 55/13
  60/4 60/22 62/18 62/22 63/1 64/15 65/4
  65/9 65/13 65/18 77/14 81/13 86/13
  88/20 89/17 90/11 91/10 91/21 91/24
  92/10 93/3 93/24 94/5 95/19 96/10 96/11
  97/1 98/1 99/12 99/20 101/6 101/22
  102/3
they [294]
they're [20] 20/11 26/12 27/15 27/24
  45/10 45/11 45/11 45/24 52/15 54/23
  73/7 83/14 83/15 89/13 89/18 89/18 90/3
  90/11 91/1 92/15
thin [1] 16/8
thing [11] 9/19 26/12 57/25 63/8 64/23
  66/20 67/18 75/11 78/22 83/2 98/21
things [11] 5/18 25/25 26/1 26/8 44/8
  47/16 50/2 67/4 76/7 89/6 95/25
think [103] 4/17 5/10 5/13 5/17 5/24 12/4
  12/5 12/25 15/11 15/12 16/1 16/7 16/12
  17/8 18/24 18/25 19/1 19/6 20/8 21/11
  22/24 23/2 23/4 25/4 25/21 26/9 26/19
  26/19 26/20 28/25 29/5 30/17 30/21
  30/21 32/2 32/7 32/8 33/22 35/23 37/11
  37/23 39/5 41/12 42/21 43/9 43/17 45/18
  45/24 47/17 47/17 47/18 47/19 47/24
  49/10 51/21 53/2 56/6 56/7 56/8 56/14
  56/19 57/16 59/16 59/18 61/19
  62/2 62/10 62/21 63/18 65/16 67/1 67/4
  62/22 75/9 77/13 80/9 80/13 82/6 82/11
  82/13 82/22 83/4 83/12 83/17 83/21 84/4
  84/7 84/13 90/6 90/8 92/14 92/18 93/1
  95/6 96/22 97/4 100/17 100/24 101/4
  101/19 102/7 104/1
thinks [2] 16/9 94/22
third [6] 9/4 26/12 40/14 60/13 69/19
  69/25
third-party [3] 9/4 69/19 69/25
Thirteenth [1] 2/15
this [131]
thorough [2] 72/2 73/6
those [38] 4/17 9/21 26/8 27/23 28/19
  28/20 44/13 44/16 45/7 45/8 45/9 46/4
  48/12 56/2 56/25 59/23 61/24 65/1 65/23
  66/11 67/9 68/9 68/13 71/24 73/17 74/7
  86/4 89/6 89/10 90/12 91/17 91/18 95/1
  95/11 97/21 102/19 103/14 103/21
though [3] 17/3 74/18 79/11
thought [6] 18/2 36/22 48/24 56/7 61/12
  104/12
thousand [1] 21/11
thousands [3] 27/2 66/8 76/20
threatened [3] 15/12 15/19 15/23
threatens [1] 17/16
three [24] 5/17 7/12 9/3 9/6 14/25 18/12
  18/15 19/14 23/18 23/24 24/4 29/3 34/8
  40/19 41/3 41/4 41/15 43/18 45/5 64/24
  65/10 74/6 74/8 91/24
three-time [1] 41/15
through [22] 5/10 5/19 7/22 9/21 14/21
  20/18 33/14 51/23 51/24 51/25 55/12
  61/16 66/9 66/11 66/14 75/24 83/14
  83/15 85/25 96/8 96/15 102/23
throw [1] 80/25
Thursday [7] 63/23 72/11 72/12 72/22
  72/23 73/13 73/15
tied [1] 90/13
TIFFORD [2] 3/3 4/23
time [37] 4/8 6/4 6/12 7/10 8/8 8/19 11/7
  11/8 11/12 12/22 12/25 14/10 19/22
  19/23 22/8 29/14 41/5 41/15 53/9 57/16
  64/7 73/7 74/15 74/20 74/20 79/7 80/6
  82/16 83/6 85/15 85/16 88/8 88/13 90/18
  102/24 103/23 104/14
times [7] 2/20 14/8 28/2 41/4 46/23 78/6
  78/7
timing [1] 71/23
today [19] 4/14 5/10 5/24 9/17 16/22
  22/16 26/2 26/13 31/4 47/12 47/18 48/4
  66/8 66/23 71/19 72/10 77/4 88/19 104/3
together [1] 6/4
told [12] 24/12 42/22 46/13 78/2 78/6
  79/22 90/1 91/20 92/14 99/7 102/1 104/8
too [5] 8/17 42/22 43/8 46/16 49/13
took [1] 14/15
topic [2] 59/19 88/18
towards [1] 57/15
track [3] 15/11 55/23 56/25
trade [1] 82/6
traded [3] 79/24 80/21 104/9
trades [1] 84/12
trading [24] 8/20 8/21 34/5 39/8 39/8
  42/10 60/23 61/4 62/17 62/19 76/2 76/17
  76/24 77/14 77/15 78/3 78/7 79/23 84/8
  86/7 86/12 104/11 104/14 104/15
TRANSCRIBED [2] 1/9 3/9
transcript [5] 90/1 90/8 92/4 92/5 93/22
transcription [1] 105/10

**T**

transfers [2] 83/24 84/3
travel [3] 25/17 94/3 99/1
travels [1] 26/3
Treck [1] 66/10
trial [1] 44/15
tricky [1] 29/21
tried [2] 10/21 102/5
trip [1] 43/10
true [3] 56/23 78/5 78/7
truly [1] 87/5
trust [1] 27/10
try [16] 15/11 18/19 26/10 33/14 40/6
43/22 47/13 48/17 52/20 53/10 72/13
73/23 73/24 75/2 75/3 75/5
trying [8] 18/15 27/10 28/6 40/8 64/9
79/6 82/21 99/5
tulrich [1] 2/7
turn [8] 5/21 11/17 13/17 104/14 104/15
104/23 104/24 104/25
turned [2] 104/19 104/21
turning [1] 104/18
two [58] 5/20 7/24 8/2 8/2 17/6 17/9
20/18 22/20 27/20 28/20 36/14 37/4 38/1
40/4 43/8 44/14 44/15 44/16 44/22 45/4
46/10 46/13 47/16 49/15 50/4 50/23
50/23 50/24 53/5 56/9 58/15 60/11 60/19
64/23 64/25 65/14 72/14 76/7 80/4 80/20
82/15 90/2 90/3 91/21 91/24 92/10 92/22
93/3 95/15 96/11 96/14 96/16 97/2 98/1
99/12 99/20 100/4 101/6
two-week [1] 50/24
TYLER [2] 2/3 4/15
type [4] 30/6 31/24 67/25 80/17
types [1] 67/9
typically [2] 21/8 70/18

**U**

ULRICH [2] 2/3 4/15
uncomfortable [1] 51/22
under [9] 23/25 24/8 29/13 38/1 56/9
63/7 67/22 78/11 91/11
understand [38] 7/22 9/24 10/3 10/5
11/9 14/23 20/9 21/9 22/11 23/7 25/4
29/16 30/2 32/14 35/23 38/24 39/6 43/21
49/14 50/21 55/10 57/4 57/5 60/11 69/4
69/17 71/22 73/4 78/1 79/15 80/25 83/11
94/2 97/9 97/14 102/12 102/18 104/16
understanding [6] 19/18 32/20 33/3 91/2
95/3 100/10
unfortunate [1] 85/10
unfortunately [5] 15/4 16/8 21/19 90/7
95/2
unique [2] 27/15 60/11
UNITED [3] 1/1 1/10 92/11
universe [2] 32/22 76/1
unlike [1] 32/17
unrealistically [1] 25/22
unreasonable [2] 51/15 51/17
unredacted [1] 35/4
unregistered [5] 6/18 6/20 7/5 46/24
68/2
unspecified [1] 37/17
unsuccessful [1] 34/9
until [14] 6/12 7/10 11/11 17/19 19/23
23/9 26/13 29/10 36/10 37/2 44/14 56/16
72/24 89/11
up [21] 5/23 12/2 16/3 16/8 28/6 30/19
34/13 43/5 55/25 61/5 66/11 75/13 75/24
79/9 78/9 79/25 80/8 88/15 89/22 92/8
92/16

upcoming [1] 52/3
updates [1] 31/13
upload [1] 72/4
uploaded [2] 66/8 72/9
uploading [2] 74/10 74/10
upon [7] 23/16 29/21 65/21 81/4 81/6
81/8 81/8
urgent [1] 12/23
us [49] 4/8 6/9 7/13 8/6 8/8 8/16 9/6 21/3
27/20 28/18 28/19 28/20 28/20 29/10
30/20 30/25 30/25 31/23 35/18 39/2 39/11
39/5 39/10 39/16 39/21 41/25 43/15 56/3
59/17 59/21 60/2 62/17 63/21 67/25
72/24 73/14 75/13 75/14 75/18 78/2
79/22 80/5 81/17 92/3 92/9 92/19 96/20
104/8 104/10
use [7] 6/24 17/6 29/13 62/4 64/18 72/7
96/21
used [1] 78/8
utterly [1] 90/17

**V**

vacation [2] 14/9 98/4
variety [1] 39/4
various [2] 15/11 19/25
vendor [2] 66/6 72/3
veracity [2] 41/10 41/13
versed [1] 76/1
version [1] 35/5
very [48] 4/11 4/16 4/19 5/16 8/8 11/20
14/1 20/10 20/10 21/23 21/23 23/3 25/12
25/12 25/21 25/21 25/24 26/20 26/20
27/15 30/20 31/19 31/20 36/23 37/10
39/1 62/10 63/10 63/10 63/10 63/10 75/1
78/16 79/17 86/22 87/1 87/9 87/9 88/14
89/16 93/6 93/8 95/25 96/7 96/22 102/16
104/9 105/2
via [1] 4/2
victim [1] 46/20
video [1] 9/21
videoconference [1] 4/2
videoconferences [1] 95/11
view [5] 5/5 5/6 25/13 25/22 26/16 32/10
34/21 42/3 58/3
voluminous [2] 58/15 75/17
Voyager [92] 6/19 7/19 7/21 8/1 8/23 9/5
15/23 18/9 18/14 19/11 19/21 21/15
21/24 24/9 26/4 26/5 27/8 27/18 28/10
28/14 28/17 31/15 34/13 34/14 34/18
36/1 36/8 36/9 36/22 37/1 37/2 37/4
37/8 38/5 38/6 38/13 38/14 47/11 47/11
60/1 61/2 61/3 61/4 64/12 64/13 64/15
64/18 64/22 65/20 66/4 66/10 66/21
67/11 67/12 67/13 67/18 67/21 68/7
68/22 68/24 69/1 69/20 70/1 70/2 70/6
70/6 75/20 75/24 76/3 76/20 77/14 80/22
80/23 81/5 81/18 81/19 82/6 83/13 83/25
84/3 84/8 84/12 85/2 87/2 87/5 88/5
89/2 91/12 92/24 101/9 101/11 104/8
Voyager's [2] 26/5 26/6
Voyager/Maverick [1] 91/12
Voyager/Mavericks [4] 8/1 27/18 89/2
92/24

**W**

wait [5] 8/16 8/17 17/18 46/12 52/9
waiting [2] 64/24 65/2
walk [1] 14/20
wallet [2] 39/10 62/16

want [90] 6/9 9/7 9/15 10/15 11/21 12/21
20/11 32/14 33/16 34/16 34/17 34/18
34/23 37/20 38/23 39/22 43/11 43/12
44/16 44/17 44/19 45/15 46/10 46/12
46/14 47/7 48/15 52/11 52/13 53/4 53/8
53/9 54/24 57/5 58/5 58/16 58/18 58/21
59/23 59/24 60/1 63/12 65/16 65/17
65/18 66/2 67/2 67/3 67/22 68/7 68/12
69/3 70/14 71/8 72/23 75/16 77/17 80/7
80/12 81/16 81/20 82/23 82/24 82/25
83/1 83/5 83/9 83/18 83/19 84/20 85/21
86/18 87/25 92/3 96/2 96/16 96/18
101/18 102/4 102/13 102/17 102/25
103/1 104/25
wanted [16] 8/15 10/9 14/2 15/3 18/11
33/2 33/20 37/14 44/12 47/24 50/6 58/20
67/7 72/1 74/11 74/14
wants [9] 15/14 19/22 20/19 58/11 76/15
76/18 77/2 94/5 94/11
was [90] 7/21 9/5 9/5 9/11 10/2 10/4
11/1 11/1 12/22 12/22 13/10 14/5 19/9
19/9 21/17 21/20 25/20 26/4 26/5 26/19
26/19 26/20 28/3 28/9 28/11 30/12 30/13
31/12 34/9 37/16 39/20 40/16 41/7 44/22
45/5 45/18 45/19 46/11 54/18 56/17
58/12 61/8 61/8 61/17 61/18 62/11 62/18
62/23 64/7 64/22 65/21 66/10 66/17
69/11 69/12 71/14 72/1 73/13 74/11
74/18 74/23 74/24 74/25 79/3 79/11
79/18 79/22 79/23 87/2 87/2 87/5 88/8
89/23 91/8 91/22 92/8 93/17 95/4 95/6
96/5 96/6 96/7 96/19 98/5 98/6 99/7
101/11 102/1 102/6 104/12
Washington [1] 2/15
wasn't [4] 12/25 28/17 50/15 62/10
way [15] 11/23 12/11 19/8 21/8 21/25
24/1 30/16 40/19 42/21 46/15 58/23
62/15 72/7 81/22 93/9
we [634]
we'd [7] 49/9 53/17 54/19 54/20 54/20
93/24 104/11
we'll [6] 52/3 53/12 53/12 53/23 71/13
104/15
we're [13] 27/10 44/17 44/18 44/20
52/15 56/14 59/11 59/12 65/19 95/13
96/2 96/3 97/12
we've [3] 24/23 54/12 64/1
Wednesday [2] 63/24 73/14
week [62] 9/22 28/18 29/3 37/20 38/23
41/18 43/12 43/12 47/21 47/22 48/3 48/7
49/10 49/16 49/20 50/4 50/9 50/15 50/19
50/20 50/24 51/3 51/3 51/8 51/9 51/10
51/10 51/12 52/2 52/7 52/14 52/25 53/3
53/12 53/13 53/14 53/15 53/18 54/2
54/19 54/24 55/9 56/20 57/15 58/22
58/23 59/22 59/22 66/13 66/24 72/10
72/12 72/19 72/24 73/3 74/4 74/18 89/8
96/11 96/20 103/25 104/12
weeks [16] 9/4 9/6 27/11 45/4 45/5
46/13 49/15 50/4 50/23 50/23 51/17 53/5
92/9 95/15 95/16 100/4
weigh [2] 12/11 54/9
well [40] 5/4 7/19 13/20 15/7 15/24
22/14 22/22 26/2 27/15 36/25 37/7 37/18
39/6 43/15 45/15 46/25 47/14 48/12
48/23 52/19 57/22 59/18 59/18 59/18
66/24 67/4 67/22 73/10 76/1 78/25 79/14
80/25 83/21 87/13 93/23 94/8 95/5 100/9
103/20 104/18

## W

went [8]   23/1 27/7 44/22 55/12 64/13
95/19 96/8 96/15
were [54]   4/2 6/5 7/20 7/22 8/2 8/2 12/18
12/22 14/6 16/21 21/13 21/20 27/22 28/4
28/6 34/12 41/22 41/22 48/12 48/12
48/13 55/13 55/13 55/13 55/25 55/25
57/20 60/22 61/12 62/20 64/7 64/14
65/15 66/8 69/22 71/8 73/2 73/17 75/14
79/8 80/12 82/9 89/4 89/4 89/17 91/9
93/11 93/12 93/19 94/25 95/6 96/17
97/14 99/7
weren't [3]   13/19 89/10 93/22
what [139]
what's [6]   7/12 39/9 54/4 58/1 70/25
71/24
whatever [11]   17/24 19/16 21/12 60/2
69/12 72/16 82/23 83/18 87/13 87/16
100/16
whatsoever [2]   17/21 98/7
when [33]   22/8 27/22 28/23 32/23 36/9
40/17 40/17 45/2 45/5 50/24 51/23 60/9
60/16 60/17 60/22 64/16 65/6 65/23 66/3
66/21 67/18 68/1 69/10 92/1 93/2 93/17
94/20 94/25 95/10 99/11 100/10 104/7
104/23
where [35]   6/2 19/22 21/2 27/7 27/15
30/21 31/24 32/18 38/2 38/20 39/20
41/21 45/5 46/6 46/19 57/6 61/4 62/23
68/8 71/15 72/1 73/9 81/18 82/5 82/25
84/8 84/12 84/12 84/17 85/23 87/19
92/25 95/12 96/4 96/4
whether [21]   16/14 20/4 20/5 38/20
38/21 40/16 51/7 51/9 54/1 55/22 58/4
59/21 59/22 63/17 72/14 80/21 80/23
81/1 81/3 87/5 104/6
which [51]   6/7 6/11 7/2 12/8 13/14 13/24
14/4 15/17 17/15 18/1 18/8 19/11 21/1
22/13 24/1 24/3 26/13 26/14 28/13 31/5
31/6 37/4 37/21 38/12 39/5 39/10 51/15
54/22 56/3 57/20 60/10 60/24 61/2 62/21
63/5 66/5 66/7 66/21 67/4 67/23 71/23
76/20 77/18 81/19 83/5 88/10 88/19
89/10 90/16 95/4 95/5
while [4]   13/8 29/16 39/8 69/22
whim [1]   74/2
WHITE [3]   3/4 4/22 4/22
white.com [3]   3/6 3/7 3/7
who [41]   4/25 5/3 15/1 15/25 17/19
21/24 28/4 28/6 34/22 35/9 35/11 35/14
36/6 36/14 38/17 40/20 41/25 43/5 43/6
43/7 45/16 45/16 45/19 46/15 48/16
49/18 55/18 56/17 63/9 64/3 68/4 74/22
78/3 79/24 89/2 89/3 90/4 91/13 95/22
96/1 96/1
whole [3]   51/24 51/25 87/12
whom [1]   97/25
why [39]   5/23 7/16 8/13 13/15 13/23
13/24 14/24 15/3 15/6 22/25 28/5 28/23
30/3 35/22 36/18 36/25 38/24 41/18
42/23 43/21 44/3 47/21 52/1 52/1 55/8
57/5 62/5 71/14 73/6 79/21 80/22 87/19
88/7 89/15 90/25 91/6 92/7 95/11 101/5
will [139]
willing [10]   24/14 30/4 32/6 43/13 45/24
51/5 52/11 59/1 68/21 71/6
wise [1]   26/19
wisely [1]   26/16
wish [1]   87/1
WISSNER [23]   2/19 4/25 11/18 13/17

16/11 29/16 31/21 43/25 47/15 48/20
49/3 59/23 73/5 83/16 90/3 90/2
90/22 93/6 97/14 99/5 99/15 101/18
WISSNER-GROSS [4]   2/19 4/25 77/19
77/19
within [13]   12/13 13/1 48/21 83/10 91/19
92/18 95/6 96/11 96/19 100/4 102/17
103/19 103/20
without [1]   18/15
witness [2]   22/18 22/20
witnesses [2]   23/10 93/3
WOLKINSON [4]   2/14 5/3 42/15 54/5
woman [2]   45/14 45/19
Women [1]   43/4
women's [3]   15/20 15/21 22/1
won't [2]   39/5 97/8
wonderful [1]   5/15
word [1]   100/10
words [1]   97/3
work [18]   14/19 23/2 32/5 42/25 48/17
52/20 57/12 58/23 74/17 75/3 75/3 90/12
90/13 91/4 98/1 102/17 103/3 103/13
worked [3]   6/4 8/1 27/18
working [2]   59/12 73/19
world [1]   62/15
worry [1]   11/7
worth [1]   20/7
would [54]   4/5 8/18 9/18 10/14 11/25
14/20 17/13 20/23 22/20 30/12 31/2
32/19 39/10 43/7 45/20 51/13 52/22 55/8
57/5 57/14 57/19 58/5 59/20 59/25 65/7
68/6 68/21 70/18 71/15 71/17 71/23
73/10 73/23 74/8 74/16 75/20 76/8 76/19
76/20 81/23 82/7 88/15 88/19 90/12 92/5
92/6 94/5 95/4 95/8 96/14 97/2 97/25
100/4 101/21
wouldn't [2]   53/8 87/19
written [2]   26/1 39/14
wrong [2]   48/2 56/6
wrote [2]   23/1 44/11

## Y

year [3]   5/3 38/11 53/9
years [5]   63/20 70/25 70/25 71/12 71/17
yes [28]   10/6 13/7 18/4 24/17 24/19 28/1
33/12 33/17 35/7 43/15 49/17 52/6 52/22
53/23 61/15 65/11 69/7 69/14 71/7 71/7
72/20 73/18 78/22 88/22 91/5 98/10
99/16 101/19
yesterday [2]   9/3 91/23
yet [7]   11/10 22/3 49/25 50/8 58/6 97/21
103/12
York [1]   2/21
you [220]
you're [14]   22/7 24/14 50/20 52/11 53/22
54/15 59/1 68/2 68/21 69/5 69/15 71/6
82/19 104/7
you've [1]   65/2
your [179]

## Z

ZACK [3]   2/9 4/14 4/18
Zoom [3]   4/2 45/20 46/11