**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No: 1:22-cv-22538 (Altman/Reid)**

PIERCE ROBERTSON, RACHEL GOLD,
SANFORD GOLD, RAHIL SAYED,
CHRISTOPHER EHRENTRAUT, TODD
MANGANIELLO, DAN NEWSOM, WILLIAM
AYER, ANTHONY DORN, DAMECO GATES,
MARSHALL PETERS, and EDWIN GARRISON,
on behalf of themselves and all others similarly
situated,

        Plaintiffs,

        v.

MARK CUBAN, et al.

        Defendants.

**DEFENDANTS MARK CUBAN'S AND DALLAS BASKETBALL LIMITED'S**
**MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**FACTUAL BACKGROUND**................................................................................4

    A.    Nine of the Named Plaintiffs Are Non-Floridians, Have No Connection to this District, and Can for the Most Part More Conveniently Testify in Dallas. ........... 4

    B.    Defendants' Witnesses, Crucial Third-Party Witnesses, and Sources of Proof Are Primarily in the N.D. Texas. ................................................................... 5

    C.    Plaintiffs' Counsel Have Engaged in Transparent Forum Shopping and Gamesmanship. ................................................................................ 6

**LEGAL STANDARD** ........................................................................................7

**ARGUMENT** ....................................................................................................8

    I.    Venue is Clearly Proper in the N.D. Texas..............................................8

    II.    The Balance of Factors Strongly Weigh in Favor of Transfer..........................8

        A.    The Convenience of the Parties, Witnesses, and the Location of Relevant Documents Weigh in Favor of Transfer. ................................... 8

        B.    The Locus of the Dispute is Dallas. ...................................... 11

        C.    This Court Lacks the Power to Compel Important Third-Party Witnesses .................................................................. 13

        D.    The Means and Governing Law Factors Are Neutral Here. ..................... 13

        E.    Plaintiffs' Choice of Forum Deserves No Weight. .................................. 14

        F.    Transfer Serves the Interests of Justice.................................................... 16

    III.    Defendants' Transfer Motion is Timely. ............................................17

    IV.    Transfer is Appropriate for the Same Reasons Under 28 U.SC. § 1406 if the Court Determines it Lacks Personal Jurisdiction Over Defendants................................20

**REQUEST FOR HEARING** ............................................................................20

**CONCLUSION** ..............................................................................................20

**S.D. FLA. L.R. 7.1 CERTIFICATION** .............................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abreu v. Pfizer, Inc.*,
No. 21-62122-CIV--MORENO/GOODMAN, 2022 WL 2355541 (S.D. Fla.
June 22, 2022) ................................................................................................................ *passim*

*Amaya v. Victoria's Secret Stores, LLC*,
No. 08-81367-CIV-RYSKAMP/VITUNAC, 2009 WL 10667492 (S.D. Fla.
Aug. 3, 2009) ................................................................................................................................8

*Balloveras v. Purdue Pharma Co.*,
No. 04-20360-CIV-MORENO, 2004 WL 1202854 (S.D. Fla. May 19, 2004) ................11, 14

*Bankers Ins. Co. v. DLJ Mortg. Cap., Inc.*,
No. 8:10-CV-419-T-27EAJ, 2012 WL 515879 (M.D. Fla. Jan. 26, 2012) ...........................18

*Brown v. Woodring*,
174 F. Supp. 640 (M.D. Pa. 1959) .........................................................................................7

*Carter v. Ford Motor Co.*,
No. 19-62646-CIV-ALTMAN, 2021 WL 1165248 (S.D. Fla. Mar. 26, 2021) .......................4

*Cassidy v. Voyager Digital Ltd.*,
No. 21-cv-24441-CMA (S.D. Fla.) ...................................................................................6, 15

*Cellularvision Tech. & Telecomms., L.P. v. Cellco P'ship*,
No. 06-60666-CIV, 2006 WL 2871858 (S.D. Fla. Sept. 12, 2006) ...................................8, 19

*Clinton v. Sec. Benefit Life Ins. Co.*,
No. 19-24803-CIV-WILLIAMS/TORRES, 2020 WL 6120565 (S.D. Fla. June
29, 2020) ................................................................................................................... *passim*

*CoronaCide, LLC v. Wellness Matrix Grp., Inc.*,
No. 820CV00816-CEH-AAS, 2021 WL 1060356 (M.D. Fla. Mar. 19, 2021) .....................19

*Cruz v. Revelex Corp.*,
No. 1:10-CV-24264-PAS, 2011 WL 1930482 (S.D. Fla. May 19, 2011) .............................12

*Culp v. Gainsco, Inc.*,
No. 0320854CIV, 2004 WL 2300426 (S.D. Fla. Oct. 1, 2004) .............................................9

*Del Monte Fresh Produce, N.A. v. Amco Ins. Co.*,
No. 1:19-CV-23917-JLK, 2020 WL 4353362 (S.D. Fla. Apr. 9, 2020) .................................7

*Dohler S.A. v. Guru*,
No. 16-23137-CIV-GAYLES, 2017 WL 4621098 (S.D. Fla. Oct. 16, 2017) .......................11

*Fontaine v. Signature Rsch., Inc.*,
  No. 1:14-CV-24028-GAYLES/TURNOFF, 2016 WL 880527 (S.D. Fla. Mar.
  8, 2016) ....................................................................................................................................13

*Garrison v. Bankman-Fried*,
  No. 22-cv-23753-KMM (S.D. Fla.) ..............................................................................6, 15

*Grasso v. Electrolux Home Prods., Inc.*,
  No. 15-20774-CIV-Scola, 2016 WL 9526495 (S.D. Fla. Apr. 8, 2016) ........................17, 18

*Harvard v. Inch*,
  408 F. Supp. 3d 1255 (N.D. Fla. 2019)...................................................................................13

*Koster v. Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947).................................................................................................................14

*Meterlogic, Inc. v. Copier Sols., Inc.*,
  185 F. Supp. 2d 1292 (S.D. Fla. 2002) ...................................................................................19

*MSPA Claims 1, LLC v. Halifax Health, Inc.*,
  No. 17-20706-CIV- LENARD-GOODMAN, 2017 WL 7803813 (S.D. Fla.
  Oct. 13, 2017) .........................................................................................................................14

*Newby v. Enron Corp.*,
  338 F.3d 467 (5th Cir. 2003) ..................................................................................................15

*Parker v. Polaris Indus.*,
  No. 06-61389-CIV-DIMITROULEAS, 2006 WL 8432621 (S.D. Fla. Dec. 28,
  2006) ........................................................................................................................................13

*In re Rational Software Sec. Litig.*,
  28 F. Supp. 2d 562 (N.D. Cal. 1998) ......................................................................................15

*Roberts v. Ehrlich*,
  No. 22-cv-09590-PKC (S.D.N.Y.)........................................................................................6, 15

*Robertson v. Cuban*,
  No. 23-mc-000001 (D. Conn.) .................................................................................................13

*Robertson v. Cuban*,
  No. 23-mc-24 (S.D.N.Y.).........................................................................................................16

*Rojas v. American Honda Motor Co.*,
  No. 19-21721-CIV-SMITH, 2019 WL 6324616 (S.D. Fla. Nov. 26, 2019) ......................8, 13

*Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*,
  No. 15-24067-CIV-ALTONAGA/O'Sullivan, 2016 WL 1546427 (S.D. Fla.
  Apr. 15, 2016) .........................................................................................................................16

*Santos Camacho v. United States*,
  No. 19-61167-CIV-ALTMAN/Hunt, 2019 WL 6130441 (S.D. Fla. Nov. 19,
  2019) ....................................................................................................................................8

*Terra Towers Corp. v. Gelber Schachter & Greenberg, P.A.*,
  No. 22-21204-CIV-Scola, 2022 WL 2816722 (S.D. Fla. July 19, 2022) ..............................16

**Statutes**

15 U.S.C. § 78u-4 ..............................................................................................................3, 7, 15

28 U.S.C. § 1404 ..............................................................................................................1, 3, 7, 17

28 U.S.C. § 1406 ..............................................................................................................1, 3, 19

**Other Authorities**

15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
  3842 (4th ed. April 2022 Update) ......................................................................................19

15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
  3844 (4th ed. April 2022 Update) ......................................................................................17

Fed. R. Civ. P. 15 ..............................................................................................................17

Fed. R. Civ. P. 45 ..............................................................................................................13

L.R. 7.1 ..............................................................................................................................1, 20

L.R. 15.1 ............................................................................................................................17

Defendants Mark Cuban and Dallas Basketball Limited d/b/a Dallas Mavericks (the "Defendants") respectfully submit this Motion and Memorandum of Law (the "Transfer Motion") requesting transfer of venue to the Northern District of Texas ("N.D. Texas"), pursuant to 28 U.S.C. § 1404(a) or to 28 U.S.C. § 1406(a).  Pursuant to Local Rule 7.1(b), and for the reasons set forth below, Defendants request a hearing on the Transfer Motion.

## INTRODUCTION

This case never should have been filed in the Southern District of Florida (the "District"). None of the Defendants reside in the District.  None of the alleged conduct by Defendants that gave rise to the alleged claims in this purported state law class action occurred in the District. While Defendants periodically have visited Florida (mostly for NBA away games), none of their conduct in Florida was tied to any business relationship with Voyager Digital Ltd. ("Voyager"). At no point did the Defendants meet with anyone from Voyager in the District.  And none of the critical non-party witnesses can be compelled to testify in the District.

Moreover, nine of the eleven remaining named Plaintiffs[1] do not even reside in Florida, and the only named Plaintiff for whom there is any evidence he opened a Voyager Earn Program Account (a "Voyager EPA")[2] after the October 27, 2021, Dallas, Texas Press Conference (the "Press Conference") at issue in this action resides near ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3]  In any event,

---

[1] On January 23, 2023, Florida Plaintiff Sanford Gold, who has been convicted of major financial fraud three times, dismissed his claims against the Defendants due to health issues.  ECF No. 88. Of those two remaining Florida Plaintiffs, discovery obtained on January 23, 2023 from one (Rachel Gold) confirmed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Declaration of Sigmund Wissner-Gross ("Wissner-Gross Decl.") ¶¶ 16-17 (citing Wissner-Gross Ex. C, January 23, 2023 Deposition of Rachel Gold Tr. ("R. Gold Dep. Tr.") at 67:3-5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ."), *id.* at 69:3-10, 69:11-14).  Ms. Gold admitted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .  *Id.* at ¶ 17 (citing Wissner-Gross Ex. C, R. Gold Dep. Tr. at 73:15-74:6).  Ms. Gold ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮  *Id.* (citing Wissner-Gross Ex. C, R. Gold Dep. Tr. at 69:11-14).  The other remaining Florida Plaintiff, Pierce Robertson, opened an account with Voyager *five months prior* to the Press Conference, and Defendants' investigation has confirmed that Mr. Robertson submitted a perjured Declaration in this action and false statements in the Amended Complaint.  *See* ECF No. 82 at 7.

[2] The "Voyager EPA" also is known as the "Voyager Rewards Program."

[3] Upon information and belief, Plaintiff Edwin Garrison lives in ▮▮▮▮▮▮▮▮▮▮▮▮▮ .  Wissner-Gross Decl. ¶ 14(a).

it is well-settled that a proposed class representative's residence bears little, if any, weight in a forum-transfer analysis involving putative class claims. *Abreu v. Pfizer, Inc.*, No. 21-62122-CIV--MORENO/GOODMAN, 2022 WL 2355541, at *9 (S.D. Fla. June 22, 2022), *report and recommendation adopted*, No. 21-62122-CIV, 2022 WL 3370932 (S.D. Fla. Aug. 16, 2022). Additionally, where, as here, there is compelling evidence of forum shopping by Plaintiffs' counsel, and this jurisdiction has no connection to the non-Florida state law claims of at least nine of the eleven remaining Plaintiffs and the claims of the remaining two Florida Plaintiffs appear patently defective, no weight should be given to the plaintiffs' choice of forum. *Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-24803-CIV-WILLIAMS/TORRES, 2020 WL 6120565, at *8 (S.D. Fla. June 29, 2020), *report and recommendation adopted*, No. 19-24803-CIV, 2020 WL 6120554 (S.D. Fla. July 21, 2020).

By contrast, Dallas, Texas is the clear "center of gravity" for this case. All critical meetings at issue in this action occurred in Dallas. The Sponsorship Agreement, which governed the relationship between the Mavericks and Voyager, was negotiated and executed in Texas.[4] The Press Conference was held in Dallas. Recent investigation by Defendants' counsel has confirmed that Voyager employees came to Dallas on multiple occasions to meet with the Mavericks, both before and after the Press Conference. In all, Voyager employees came to Dallas at least eight (or more) times in connection with negotiation or performance of the Sponsorship Agreement at issue. Declaration of Ryan Mackey (the "Mackey Decl.") ¶ 11.[5] All relevant Mavericks employees live in or near Dallas; Mr. Cuban resides and works in Dallas; the Mavericks are based in Dallas.

But there is even more that points to Texas as the **sole jurisdiction where the most critical witnesses can easily testify**. Defendants' counsel recently learned that Erika Szychowski, Voyager's Senior Vice President of Brand Marketing & Partnership, who was Voyager's primary point of contact with the Mavericks in connection with negotiation and performance of the

---

[4] *See* ECF No. 34 ¶ 44-46 (discussing the five-year agreement between Voyager and the Mavericks that was announced at the October 27, 2021 Dallas Press Conference). The relationship between the Mavericks and Voyager was governed by the October 29, 2021 Sponsorship Agreement, ██████████████████████████████████████████████████████████████ as incorrectly alleged by Plaintiffs (*see, e.g.*, ECF No. 34 ¶ 131).

[5] The Declaration of Ryan Mackey and the Declaration of Sigmund Wissner-Gross have been filed separately via a Notice of Filing.

Sponsorship Agreement, at all relevant times lived and worked (and continues to live) in Austin, Texas. Ms. Szychowski led all efforts on behalf of Voyager to negotiate the Sponsorship Agreement, attended the Press Conference, and after the Press Conference, coordinated on behalf of Voyager all aspects of the business relationship with the Mavericks. Ex B, Mackey Decl. ¶¶ 3, 5, 9. Other Voyager employees who would be relevant trial witnesses similarly can more conveniently testify at trial in Dallas, than in Miami, and it does not appear that any Voyager witnesses can be compelled to testify in Miami.

Further, this Transfer Motion is timely; indeed, transfer motions may be filed and granted at any time during litigation, even on the eve of trial. Defendants acted with far more than "reasonable promptness" by filing this Transfer Motion while the case is still in its very early stages and promptly after confirming that critical Voyager third-party witnesses reside in Texas, and further confirming at depositions taken this past week the extent of Plaintiffs' forum shopping.[6] Indeed, only limited discovery has occurred, and Plaintiffs have until February 24, 2023, to either file a Second Amended Complaint or respond to Defendants' November 18, 2022, motion to dismiss (ECF No. 72). Thus, there is not even an operative Complaint in the case yet. If Plaintiffs file a Second Amended Complaint (rather than respond to the pending motion to dismiss), it may be some time before anyone knows what claims, if any, proceed in the case, or whether the case will be dismissed for lack of personal jurisdiction. Further, Plaintiffs have indicated that they plan to add federal securities claims and other parties. If they do so, Defendants will promptly move to dismiss such federal securities claims, which will trigger the mandatory stay of discovery under the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78u-4(b)(3)(B)), requiring a complete resetting of the Scheduling Order in this case.

In short, Defendants have promptly filed this Transfer Motion upon confirmation of facts demonstrating that a transfer to the N.D. Texas is clearly warranted because (i) the N.D. Texas is the forum most convenient for key trial witnesses, and (ii) Plaintiffs' counsel's filing of this action in this District with three defective Florida Plaintiffs and nine non-Florida Plaintiffs was blatant forum shopping. In any event, there is no prejudice to Plaintiffs if the case is transferred to the forum where it should and could have been filed in the first instance: the N.D. Texas.

---

[6] Rachel Gold was deposed at her home in ███████████ on January 23, 2023, and Pierce Robertson was deposed in Chicago, Illinois on January 26, 2023. Wissner-Gross Decl. ¶¶ 16, 18.

For the reasons set forth below, this Court should transfer the claims to the N.D. Texas pursuant to 28 U.S.C. § 1404(a) or, in the alternative, 28 U.S.C. § 1406(a).

## FACTUAL BACKGROUND

A.      **Nine of the Named Plaintiffs Are Non-Floridians, Have No Connection to this District, and Can for the Most Part More Conveniently Testify in Dallas.**

In the October 28, 2022, Amended Complaint (ECF No. 34), twelve named Plaintiffs from nine states asserted various purported class, state law claims against Defendants.  As noted, the remaining two Florida Plaintiffs either lack standing (Rachel Gold, ███████████████████ ████████ or have filed a completely fabricated set of claims (Pierce Robertson).  The nine non-Florida Plaintiffs reside in Alabama, California, Louisiana, New Jersey, Oklahoma, Pennsylvania, Tennessee, and Virginia.

Other than the defective claims of the two remaining Florida Plaintiffs, this action has no connection to this District.  Indeed, as this Court held in *Carter v. Ford Motor Co.*, for the nine non-Florida Plaintiffs, this action must be dismissed for lack of personal jurisdiction inasmuch as this Court does not recognize pendant party jurisdiction. No. 19-62646-CIV-ALTMAN, 2021 WL 1165248, at *6 (S.D. Fla. Mar. 26, 2021); *see* ECF No. 41 at 7-8 (citing *Carter*).  Defendants, for their part, had no claim-related contacts with the District.  As set forth in detail in Defendants' pending motion to dismiss, all pertinent alleged claim-related events by Defendants occurred in Dallas, Texas.  ECF No. 41 at 7-13.  The Mavericks negotiated their agreement with Voyager while in Dallas.  ECF No. 41-1 ¶ 3.  No meeting ever took place in Florida between Mr. Cuban or the Mavericks and anyone from Voyager.  *Id.*; ECF No. 41-2 ¶ 8.  While Plaintiffs mischaracterize statements made by Mr. Cuban at the Press Conference, Plaintiffs concede all such statements were made in Dallas.  *See* ECF No. 34 ¶¶ 4, 47-57.

Further, Defendants have provided Declarations averring that neither Mr. Cuban nor the Dallas Mavericks had any claim-related contacts with this District (*id.* at ¶¶ 6-8; ECF No. 41-2 ¶ 6-8), and that any visits by Mr. Cuban to Florida were completely unrelated to the Mavericks' business with Voyager (ECF No. 41-1 ¶¶ 6, 8; ECF No. 41-2 ¶ 8).  Neither jurisdictional discovery, nor any other discovery that Defendants have been producing on a rolling basis, has revealed any claim-related contact with Florida that would contradict, in any respect, Defendants'

Declarations.[7]  Wissner-Gross Decl. ¶¶ 5-6; *see also* ECF No 82-11, January 3, 2023 Letter to Plaintiffs' Counsel.  Discovery produced to-date has confirmed, consistent with Mr. Cuban's Declaration, that he only briefly met Voyager CEO, Steve Ehrlich, twice—in Dallas, not Florida. Wissner-Gross Decl. ¶¶ 5-6.  Finally, following the Press Conference, communications by the Mavericks with Voyager took place almost entirely in Dallas, either in person or via videoconference with Voyager or Mavericks personnel located in Texas—and if not Texas, in states other than Florida.  Ex B, Mackey Decl. ¶¶ 3-5.

### B.    Defendants' Witnesses, Crucial Third-Party Witnesses, and Sources of Proof Are Primarily in the N.D. Texas.

It is undisputed that Defendants' witnesses and other key third-party witnesses are primarily located in Texas.  As an initial matter, Messrs. Cuban and Mackey and Mr. Mackey's assistants live in Dallas, Texas, where the Mavericks' corporate offices are located and all hard copy documents are stored, and any other potentially relevant employees of the Mavericks—who would have personal knowledge concerning the Voyager Sponsorship Agreement and the Press Conference—live in or near Dallas, Texas.  *See, e.g.*, Ex B, Mackey Decl. ¶ 4.

Moreover, discovery has confirmed that the Mavericks' primary point of contact from Voyager, Erika Szychowski, lived in Austin, Texas at all relevant times.  *Id.* at ¶ 5.  She negotiated key features of the Sponsorship Agreement while working from Austin, and post-execution, regularly communicated with Mavericks employees via video conference or phone calls from Austin, or in person in Dallas.  *Id* at ¶ 3; *see also id.* at ¶ 8 ("From August 2021 through June 2022, I participated in approximately 20 videoconferences with Ms. Szychowski and other Voyager employees, and many more phone calls, generally on a weekly (and at times during the

---

[7] Realizing they lack a sufficient basis to establish personal jurisdiction over Defendants in this District, Plaintiffs attempt to conflate Mr. Cuban's general discussion of cryptocurrency and non-fungible tokens ("NFTs") with the discussion of Voyager's cryptocurrency platform.  Although Plaintiffs make much of Mr. Cuban's comments about cryptocurrency and NFTs at two conferences in Florida (*see, e.g.*, ECF No. 80 at 3; ECF No. 71 at 2 n.2), Mr. Cuban never referenced Voyager once during such interviews and his comments had absolutely nothing to do with the Voyager EPAs or the Sponsorship Agreement between the Mavericks and Voyager, and are fully consistent with Mr. Cuban's Declaration. *See* ECF No. 41-2 ¶ 8 (stating that Mr. Cuban periodically visited Florida "to attend Mavericks away games, to attend conferences, and on vacation").  Video of these conferences is publicly available (and was available when Plaintiffs filed their initial Complaint) and demonstrates that Mr. Cuban discussed neither Voyager nor any of Voyager's products at these conferences.

negotiations, daily) basis in connection with initially the negotiation of the Sponsorship Agreement, and after its execution, the parties' performance of the Sponsorship Agreement. At all times, again, Ms. Szychowski was working in Austin, Texas."); ECF No. 41-1 ¶ 3 ("At no point did anyone associated with the Mavericks conduct any negotiations with Voyager in connection with the Sponsorship Agreement in Florida. Nor have the Mavericks at any point since execution of the Sponsorship done anything in Florida in connection with the Sponsorship Agreement."). Indeed, Ms. Szychowski still lives in Austin today.  Ex B, Mackey Decl. ¶ 6.

> **C.**    **Plaintiffs' Counsel Have Engaged in Transparent Forum Shopping and Gamesmanship.**

The conduct of Miami-based Plaintiffs' counsel strongly suggests that they raced to file this purported class action in this District against Defendants without any credible connection to this District for at least ten of the twelve initial Plaintiffs.  The timing of this action's filing, shortly after counsel's initial case against Voyager (*Cassidy v. Voyager Digital Ltd.*, No. 21-cv-24441-CMA (S.D. Fla.)) was stayed due to Voyager's bankruptcy filing, and its contents illustrate the suspect nature of such filing.  Plaintiffs' counsel basically cut and paste the core pleadings of the *Cassidy* case, added Mark Cuban and the Mavericks as defendants (despite a complete lack of claim-related contacts with Florida), and then added Voyager's CEO, Stephen Ehrlich, as a third defendant.  After suggesting that they might drop the Mavericks as a defendant (ECF No. 12 at 2 (asserting that Plaintiffs' then-forthcoming amended complaint "may include dismissing some parties (such as the Mavericks)")), Plaintiffs' counsel when confronted with Voyager's stay application in the Bankruptcy Court, instead dismissed the claims against Mr. Ehrlich with prejudice.  This flip-flopping simply illustrates the forum shopping at play here.  ECF No. 26.

Plaintiffs' counsel's filing of other actions and seeking to be appointed as Lead Counsel in other Voyager-related litigation further underscores the forum shopping at play.  Plaintiffs' Lead Co-Counsel, Adam Moskowitz and David Boies, are seeking to be named as Lead Counsel in a Voyager-related securities class action in the Southern District of New York, *Roberts v. Ehrlich*, which, according to Plaintiffs' counsel, contains similar allegations to this action (though Mr. Cuban and the Mavericks are not parties to the New York action).  *See* No. 22-cv-09590-PKC, ECF Nos. 18-19 (S.D.N.Y. Jan. 10, 2023).  Additionally, Plaintiffs' counsel—who represents, among others, Oklahoma resident Edwin Garrison, one of the named Plaintiffs in this action—has filed in this District a putative class suit against FTX and various celebrities, including Tom Brady,

Gisele Bundchen, and Stephen Curry, with Mr. Garrison as a named plaintiff in that case as well. *Garrison v. Bankman-Fried*, No. 22-cv-23753-KMM (S.D. Fla.). As discussed in more detail in Section II(E), *infra*, Plaintiffs' counsel, as part of their gamesmanship, have sought discovery in this action that has no conceivable relevance to Plaintiffs' claims here, and are using the Court's order denying a stay of discovery to improperly attempt to secure pertinent discovery in the unrelated FTX suit and to support their efforts to become lead counsel in *Roberts*.

Moreover, after initially asserting only state law claims in this action, Plaintiffs have now indicated that they intend to add federal securities claims. *See* ECF No. 80 at 3, 5 (stating that proposed new Plaintiffs will assert that Defendants promoted Voyager EPAs "in direct violation of federal and state securities laws"). Thus, Plaintiffs appear to be holding back their federal claims in an attempt to circumvent the mandatory stay of discovery under the PSLRA which will be imposed once Defendants, as is certain, file a motion to dismiss any Second Amended Complaint.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "A motion to transfer venue should be granted upon a showing that the transferee venue is clearly more convenient than the venue chosen by the plaintiff." *Del Monte Fresh Produce, N.A. v. Amco Ins. Co.*, No. 1:19-CV-23917-JLK, 2020 WL 4353362, at \*1 (S.D. Fla. Apr. 9, 2020). Transfer can be ordered in a variety of circumstances, and "the decision [to transfer] is left to the sound discretion of the court." *Brown v. Woodring*, 174 F. Supp. 640, 644 (M.D. Pa. 1959).

In assessing a transfer motion, courts "engage in a two-prong inquiry . . . : first, the Court must determine whether the action could have initially been brought in the destination forum; and second, the Court must balance the private and public factors to determine if transfer is justified." *Abreu*, 2022 WL 2355541, at \*9. If an action could have initially been brought in the transferee forum, then courts generally consider the following factors to assess whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of

forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Santos Camacho v. United States*, No. 19-61167-CIV-ALTMAN/Hunt, 2019 WL 6130441, at *3 (S.D. Fla. Nov. 19, 2019) (Altman, J.) (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

## ARGUMENT

I. **Venue is Clearly Proper in the N.D. Texas.**

It is undeniable that the action against Defendants could have been brought in the N.D. Texas. The N.D. Texas has general jurisdiction over both Mr. Cuban, who resides in Dallas, Texas (ECF No. 41-2 ¶ 2), and the Mavericks, which is a Texas limited partnership with its principal place of business in Dallas, Texas (ECF No. 41-1 ¶ 2). Further, the N.D. Texas has specific jurisdiction over both Defendants, since, as discussed in Section II(B), *infra*, Dallas, Texas is the locus of operative facts related to Plaintiffs' allegations as to Defendants.[8]

II. **The Balance of Factors Strongly Weigh in Favor of Transfer.**

A. **The Convenience of the Parties, Witnesses, and the Location of Relevant Documents Weigh in Favor of Transfer.**

The first through third factors, *i.e.*, the convenience of the parties, witnesses, and the location of documents, all support transfer here. In fact, the second factor—the convenience of witnesses, including the most important non-party witness—alone warrants transfer to the N.D. Texas. "[T]he convenience of witnesses is one of the most important factors in determining whether granting transfer is appropriate." *Amaya v. Victoria's Secret Stores, LLC*, No. 08-81367-CIV-RYSKAMP/VITUNAC, 2009 WL 10667492, at *4 (S.D. Fla. Aug. 3, 2009). Further, "[t]he convenience to non-party witnesses warrants even more consideration." *Abreu* 2022 WL 2355541, at *16; *Cellarvision Tech. & Telecomms., L.P. v. Cellco P'ship*, No. 06-60666-CIV, 2006 WL 2871858, at *3 (S.D. Fla. Sept. 12, 2006) ("The convenience of non-party witnesses is an important, if not the most important, factor in determining whether a motion for transfer should be granted."). For example, in *Rojas v. American Honda Motor Co.*, in ordering a transfer, where

---

[8] Even though Mr. Ehrlich has been dismissed with prejudice as a named defendant, it is apparent due to his extensive personal contacts with and visits to Dallas, that he also would have been subject to personal jurisdiction in the N.D. Texas had the initial Complaint in this action been filed in the N.D. Texas.

plaintiff brought a putative class action related to alleged defects in Honda Civic transmissions, the court concluded that "[b]ased on the allegations in the complaint, it is likely that the majority of discovery and documents will be produced by Defendants" and "given the nature of the claims, the majority of the witnesses are likely to be associated with Defendants, who are located in California." No. 19-21721-CIV-SMITH, 2019 WL 6324616, at *3-*4 (S.D. Fla. Nov. 26, 2019).

Similarly, in *Culp v. Gainsco, Inc.*, a court in this District transferred a case to the N.D. Texas where there were at least seven potential witnesses that resided in the N.D. Texas, including two individual defendants and witnesses on behalf of the corporate defendant, compared with three potential witnesses who resided in the District. No. 0320854CIV, 2004 WL 2300426, at *5 (S.D. Fla. Oct. 1, 2004). The *Culp* court reasoned that "transfer to the Northern District of Texas would ease the burden of depositions and trial testimony on the majority of the potential trial witnesses, named and unnamed. Pre-trial and trial proceedings in the Northern District of Texas would also reduce the costs of travel and expense reimbursement for many witnesses located within the Dallas–Fort Worth area." *Id.* at *6.

Here, both Defendants reside in Dallas. ECF No. 34 ¶¶ 19-20 (alleging that Mr. Cuban is a Texas resident and that the Mavericks is a Texas limited partnership); ECF No. 41-1 ¶ 2 (declaring that the Mavericks are a Texas limited partnership based in Dallas, Texas); ECF No. 41-2 ¶ 2 (declaring that Mr. Cuban resides in Dallas, Texas). Defendants' witnesses and key non-party witnesses are located either in or near Dallas, Texas. All of the Mavericks employees— including Senior Vice President Ryan Mackey and Senior Director Kyle Tapply—who led negotiations of the Sponsorship Agreement and managed the Mavericks' day-to-day relationship with Voyager live and work in Dallas, Texas. Mackey Decl. ¶¶ 3-5. Similarly, Mr. Cuban, whose involvement with Voyager was relatively limited, resides and maintains an office in Dallas, Texas. ECF No. 41-2 ¶ 2. All other Mavericks employees who had any involvement with either the negotiation of the Sponsorship Agreement or any aspect of the Sponsorship Agreement's performance all reside and/or work in Dallas. *Id.* at ¶ 4. All of Defendants' relevant physical records are housed in Dallas, Texas. Further, the Mavericks hired an outside local Dallas vendor to assist in taping the Press Conference. *Id.* at ¶ 3. And to the extent it is necessary to inspect any of the Mavericks' physical facilities relevant to the Sponsorship Agreement, those facilities are in Dallas.

Further, recent investigation by Defendants' counsel has confirmed that the most important non-party witnesses live in close proximity to the N.D. Texas. Most significantly, a key Voyager witness, Erika Szychowski, Voyager's SVP of Brand Marketing & Partnerships lived and worked in Austin, Texas at all relevant times and still lives in Austin. Mackey Decl. ¶ 6 n.1. Ms. Szychowski was Voyager's lead marketing contact with the Mavericks, made multiple visits to Dallas, and had regular calls with Mr. Mackey. *Id.* at ¶¶ 3, 5. Additionally, the following important, relevant non-party witnesses from Voyager, including Ms. Szychowski, will likely provide relevant testimony regarding the Mavericks' negotiation of the Sponsorship Agreement with Voyager and on the performance of the Sponsorship Agreement after its execution, and are located in states other than Florida (and/or more conveniently can testify in Dallas):

- Erika Szychowski (Austin, TX). Ms. Szychowski is a Senior Vice President of Brand Marketing & Partnerships at Voyager.
- Steve Ehrlich (CT). Mr. Ehrlich is co-founder and CEO of Voyager.
- Pam Kramer (San Francisco, CA). Ms. Kramer is the Chief Marketing Officer at Voyager.
- Meghan Leaver (Park City, UT). Ms. Leaver is a Director of Brand Partnerships at Voyager.
- Kara Galloway (Phoenix, AZ). Ms. Galloway is a Senior Manager of Brand Partnerships at Voyager.
- Brooke Jones (Brooklyn, NY). Ms. Jones is a Senior Events & Activations Manager at Voyager.

*Id.* at ¶ 6; Wissner-Gross Decl. ¶ 10. The following non-party witnesses from ███████ ██████—the entity that contacted Mr. Mackey in August 2021 to first suggest potential opportunities with Voyager (Mackey Decl. ¶ 2)— will likely provide relevant testimony regarding the introduction of Voyager to the Mavericks:



*Id.* at ¶ 7; Wissner-Gross Decl. ¶ 11.

While two of the current Plaintiffs reside in Florida, one of those two, Pierce Robertson, has lived outside this District, in ████████████ at all relevant times. Wissner-Gross Decl. ¶ 13. In any event, the Florida Plaintiffs' residency bears no weight here. In a putative class action,

"plaintiffs will reside all over the country, and any two given states will likely be of equal convenience as a forum." *Clinton*, 2020 WL 6120565, at *5 (internal quotation marks omitted). Moreover, Plaintiff Edwin Garrison lives in ███████████████, much closer to Dallas than Florida. Wissner-Gross Decl. ¶ 14(a). Mr. Garrison is the sole non-Florida Plaintiff who allegedly opened an operational Voyager EPA after the Press Conference; all other non-Florida Plaintiffs opened their Voyager EPAs prior to the Press Conference, making impossible their allegation that they opened their accounts after purported "expos[ure]" to Mr. Cuban's statements about Voyager. *See* ECF 34 ¶¶ 7-18; Wissner-Gross Decl. ¶ 15.[9] Moreover, at least six of the nine remaining non-Florida Plaintiffs live closer to Dallas than Miami.[10] Further, because Plaintiffs' "testimony [on the substantive merits] is unlikely to be required as [they seek to be] merely [] class representative[s]," *Abreu*, 2022 WL 2355541, at *18 (first alteration in original) (quoting *Balloveras v. Purdue Pharma Co.*, No. 04-20360-CIV-MORENO, 2004 WL 1202854, at *2 (S.D. Fla. May 19, 2004)), their choice of forum should be accorded no weight.

### B.     The Locus of the Dispute is Dallas.

The fourth factor, the locus of operative facts, also strongly favors the N.D. Texas. "The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Abreu*, 2022 WL 2355541, at *13. "To determine the locus of operative facts, courts look to where the events from which the claim arises occurred" (*Clinton*, 2020 WL 6120565, at *6), and attempt to identify the "center of gravity" of the litigation (*Dohler S.A. v. Guru*, No. 16-23137-CIV-GAYLES, 2017 WL 4621098, at *8 (S.D. Fla. Oct. 16, 2017)).

Here, Dallas—not Miami—is undoubtedly the "center of gravity" of this action. Indeed, Miami has absolutely no connection to the claims actually asserted in this case. The Sponsorship Agreement between Voyager and the Mavericks, which is the purported support (*see* ECF No. 34 ¶¶ 45-46) for Plaintiffs' false claim that Defendants acted as Voyager "directors, officers, partners

---

[9] Rachel Gold admitted at her deposition that ████████████████████████████████████████ (Wissner-Gross Decl. ¶ 17 (citing R. Gold Dep. Tr. at 71:17-21), though she falsely asserts in the Amended Complaint that she was injured by opening an account for herself at Voyager (*see* ECF No. 34).
[10] These six Plaintiffs are (i) Edwin Garrison, who lives in ███████████████; (ii) Anthony Dorn, who lives in ████████████████; (iii) Dan Newsom, who lives in ███████████, Alabama; (iv) Christopher Ehrentraut, who lives in ████████████████ (v) Dameco Gates, who lives in ████████████████; and (vi) Todd Manganiello, who lives in ███████████, Louisiana. Wissner-Gross Decl. ¶ 14.

and/or agents" in the sale of alleged unregistered securities (*id.* at ¶ 131), was negotiated and executed in Dallas, Texas (ECF No. 41-1 ¶ 3).  The Press Conference, upon which Plaintiffs so heavily rely as the basis of purported liability, took place in Dallas, Texas.  *Id.* at ¶ 4.  Following the Press Conference, the vast majority of communications between Voyager and the Mavericks took place in Dallas either in person or via videoconference with Voyager, with Mavericks personnel located in Texas—with no communications occurring in Florida.  Mackey Decl. ¶¶ 4-5, 8.  Between August and June 2022, Mr. Mackey (based in Texas) alone participated in no fewer than approximately twenty videoconferences and weekly phone calls with Ms. Szychowski and other employees of Voyager, while Ms. Szychowski was working from home in Austin, Texas.  *Id.* at ¶¶ 8, 11.  Indeed, not a single meeting of any nature between the Defendants and Voyager ever occurred in Florida.  *See id.* at ¶¶ 4-5, 8.

When Voyager and the Mavericks met in person, they did so in Dallas at the Mavericks' corporate offices or at the Mavericks home games.  Mr. Mackey, on behalf of the Mavericks, met with Ms. Szychowski, on behalf of Voyager, at least four times in 2021 and at least four times in 2022.  *Id.* at ¶ 5.  For example, on October 14 and 26, 2021, during the lead-up to execution of the Sponsorship Agreement, Mr. Mackey met with Ms. Szychowski (and others from Voyager) at the Mavericks Dallas facilities.  *Id.* at ¶ 9.  During one visit, on October 26 and October 28, 2021, Mr. Mackey attended two Mavericks games with Ms. Szychowski and other Voyager employees at American Airlines Arena in Dallas, Texas.  *Id.*  Voyager employees continued to attend Mavericks home games and meet with Mavericks employees in Dallas throughout the two companies' relationship.  *Id.* at ¶¶ 5, 11.  Thereafter, on December 17, 2021, Ms. Szychowski joined Mr. Ehrlich for an educational presentation to Mavericks employees on cryptocurrency, in Dallas.  *Id.* at ¶ 10.  Voyager employees requested tickets for Mavericks home games on October 26, 2021, October 28, 2021, December 15, 2021, February 8, 2022, March 3rd, 4th, and 5th, 2022, April 10, 2022, and May 20, 2022.  *Id.* at ¶ 11.

By contrast, this District's connection to the claims asserted in this case, as noted, is nonexistent, other than the presence in Florida of two of the remaining named Plaintiffs, one whom

does not even reside in this District.  Moreover, Defendants' claim-related contacts with Florida are non-existent.  *See* ECF No. 41 at 7-13.[11]

### C.    This Court Lacks the Power to Compel Important Third-Party Witnesses

The fifth factor, the ability to compel third-party witnesses, also weighs strongly in favor of transfer.  "The Eleventh Circuit has affirmed that the 'inability to compel third-party witnesses or the production of documents from those witnesses ... is both unusually extreme and materially unjust.'"  *Fontaine v. Signature Rsch., Inc.*, No. 1:14-CV-24028-GAYLES/TURNOFF, 2016 WL 880527, at *5 (S.D. Fla. Mar. 8, 2016) (quoting *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011)); *see Parker v. Polaris Indus.*, No. 06-61389-CIV-DIMITROULEAS, 2006 WL 8432621, at *3 (S.D. Fla. Dec. 28, 2006) (weighing this factor in favor of transfer where numerous non-party witnesses could testify about the events in question where it was "unlikely that those witnesses are subject to compulsory process in this Court").  As discussed in Section II(A), critical third-party witnesses reside in Texas (or otherwise outside of this District), and thus this Court cannot compel their attendance at trial under Federal Rule of Civil Procedure 45(c).  None of these key non-party witnesses can they be compelled to testify in this District.[12]

### D.    The Means and Governing Law Factors Are Neutral Here.

The sixth factor, the relative means of the parties, is neutral here.  In a putative class action such as this one, the means factor "hold[s] little to no weight. Were it otherwise, a putative class action plaintiff would have the de facto ability to choose his preferred forum irrespective of any consideration any time the defendant was a wealthy corporation."  *Abreu*, 2022 WL 2355541, at *20.  Similarly, the seventh factor, the transferee forum's familiarity with governing law, is neutral. "The forum's familiarity with governing law is one of the least important factors in determining a

---

[11] While Plaintiffs purport to represent a putative alleged subclass of "thousands" of unidentified Florida residents who opened Voyager EPAs (ECF No. 34 ¶¶ 3(b), 74(2)), courts discount the location of residence of putative class members when deciding a transfer motion, and a class had not yet been certified.  *See, e.g., Cruz v. Revelex Corp.*, No. 1:10-CV-24264-PAS, 2011 WL 1930482, at *2-*3 (S.D. Fla. May 19, 2011) (ordering transfer despite plaintiffs' allegation that "countless class members reside in the Southern District [of Florida]").  In any event, it is reasonable to assume that far more absent class members reside in Texas than Florida.

[12] Mr. Ehrlich's recent filing of a motion to quash in the District of Connecticut (where he resides) of his non-party deposition is further support for the notion that it is not anticipated that any Voyager witness will voluntarily appear at trial in this District.  *Robertson v. Cuban*, Movant Stephen Ehrlich's Motion to Quash and for a Protective Order, No. 23-mc-000001, ECF No. 1 (D. Conn. Jan. 18, 2023).

motion to transfer, especially where no complex questions of foreign law are involved." *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1264-65 (N.D. Fla. 2019) (internal quotations marks and citation omitted). Here, Plaintiffs seek to advance (albeit speciously) a nationwide class under New Jersey law (ECF No. 34 ¶¶ 89-114), and Plaintiffs assert claims under nine separate states' securities and consumer protection statutes (*id.* at ¶¶ 89-242). This Court and a court in the transferee forum are equally well situated to address Plaintiffs' claims. Further, the alleged Florida state law claims are only two of the nineteen claims in the Amended Complaint, and courts in this District in any event recognize that other federal district courts are fully capable of applying Florida law. *See, e.g.*, *Rojas*, 2019 WL 6324616, at *4. Plaintiffs have retained co-Lead Counsel who have an ability to litigate in other forums. Mr. Moskowitz has sought to be appointed Lead Counsel in a Voyager-related securities class action pending in the Southern District of New York. And his co-counsel, Boies Schiller Flexner LLP has approximately 300 attorneys, has offices throughout the country, and has litigated other cases in the N.D. Texas.

### E.    Plaintiffs' Choice of Forum Deserves No Weight.

The eighth factor, Plaintiffs' choice of forum, should be given no weight here for several reasons. First, where, as here, "the case involves a putative class action, the plaintiff's choice of forum is given less than normal deference." *Abreu*, 2022 WL 2355541, at *11 (internal quotation marks and citation omitted); *see, e.g.*, *Balloveras*, 2004 WL 1202854, at *1 ("[T]he plaintiff's choice of forum is given less than normal deference . . . where the suit is a class action."). The Supreme Court recognizes that "where there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).[13] Second, "courts give less deference to a [p]laintiff's chosen forum where," as is the case here (*see* Section II(B), *supra*), "the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff[.]" *MSPA Claims 1, LLC v. Halifax Health, Inc.*, No. 17-20706-CIV- LENARD-GOODMAN, 2017 WL 7803813, at *3 (S.D. Fla. Oct. 13, 2017) (quotation marks omitted) (citing cases). Third, "a plaintiff's choice of a forum warrants less deference if there is *any* indication

---

[13] To the extent consideration is given to where the named Plaintiffs more conveniently can testify, the N.D. Texas is a far more convenient forum than the Southern District of Florida for most of the remaining named Plaintiffs, as noted in Section II(A), *supra*.

that plaintiff's choice of forum is the result of forum shopping." *Clinton*, 2020 WL 6120565, at *8 (emphasis added) (internal quotation marks omitted).

For example, in *Abreu*, the court assigned "no weight" to the plaintiff's choice of forum in its Section 1404 analysis where plaintiff's counsel filed multiple class actions, suggesting forum shopping.  Plaintiff filed a putative class action against defendant Pfizer for claims based on Pfizer's voluntary recall of Chantix, a smoking cessation drug.  2022 WL 2355541, at *12-*13.  Plaintiff's counsel had filed several other similar putative class actions in districts throughout the country.  *Id.* at *22.  Because "[p]laintiff's counsel has taken calculated steps in filing, serving, and dismissing cases -- all seemingly with the intent to choose what it views as the best jurisdiction in which to proceed -- the [court found] it appropriate to examine the actions of [p]laintiff's counsel in assessing this factor."  *Id.* at *13.  The court concluded that plaintiff's counsel had engaged in forum shopping, as counsel had engaged in "procedural gamesmanship," such as filing multiple similar litigations and engaging in voluntary dismissals in counsel's search for the most favorable forum.  *Id* at *22-*23.

Here, the record reflects classic forum shopping.  Plaintiffs' counsel filed this action only after its claims against Voyager were stayed in the *Cassidy* action.  After briefly suggesting that Plaintiffs might drop the Mavericks as a defendant (ECF No. 12 at 2), Plaintiffs' counsel instead brokered a deal with then-defendant Stephen Ehrlich, Voyager's CEO, dismissing claims against him with prejudice to avoid a stay in this action.  ECF No. 26.

Plaintiffs' counsel's conduct, in filing other putative class actions and seeking to be appointed Lead Counsel in other Voyager-related class litigation, confirms that counsel is forum shopping via multiple actions before ultimately proceeding in the forum and case that counsel deems most favorable to Plaintiffs.  Adam Moskowitz and David Boies are seeking to be named lead counsel in a Voyager-related securities class action in the Southern District of New York, *Roberts v. Ehrlich*, that contains similar allegations to this action.  *See* No. 22-cv-09590-PKC, ECF Nos. 18-19 (S.D.N.Y. Jan. 10, 2023) (seeking to be appointed lead counsel because the *Roberts* operative complaint asserts claims that are "materially identical" to those set forth in this and other actions).  Further, after asserting only state law claims against Defendants during the first several months of this action, Plaintiffs have now indicated that they intend to add federal securities claims if they file a Second Amended Complaint on February 24, 2023.  *See* ECF No. 80 at 3, 5.  In other words, Plaintiffs have held back their federal claims to avoid a stay of discovery

under the PSLRA.  *See* 15 U.S.C. § 78u-4(b)(3)(B).  This is precisely the gamesmanship that the PSLRA was designed to prohibit, as courts routinely acknowledge.  *See, e.g.*, *Newby v. Enron Corp.*, 338 F.3d 467, 473 (5th Cir. 2003); *see also In re Rational Software Sec. Litig.*, 28 F. Supp. 2d 562, (N.D. Cal. 1998) (affirming stay of discovery in state court action pursuant to the PSLRA). This further underscores why this case should be transferred to the N.D. Texas.

Plaintiffs' counsel also have filed an action in this District against FTX, Tom Brady, Gisele Bundchen, Stephen Curry, and various other celebrities (*Garrison v. Bankman-Fried*, No. 22-cv-23753-KMM (S.D. Fla.)), and appear to be improperly attempting to use non-party discovery in this action in support of that suit or even of a Florida state court FTX action they have filed.  The lawsuits have entirely different defendants and involve claims against different companies.  Mr. Cuban and the Mavericks had absolutely no connection or involvement with FTX, and it is an abuse to the discovery process for Plaintiffs' counsel to attempt to fish in one case (where discovery has not yet been stayed) to assist their efforts in the FTX cases or to get otherwise unavailable discovery in the pending Southern District of New York securities class action where Mr. Cuban and the Mavericks also are not parties.

For example, Plaintiffs served the law firm of Sullivan & Cromwell LLP ("S&C") with a deposition subpoena in this action, seeking S&C's deposition on January 27, 2023.  S&C has moved to quash in the Southern District of New York, correctly arguing that "Plaintiffs are attempting a textbook fishing expedition," as the firm is not a party to this action, has never represented a party to this action, and has never represented Voyager.  *Robertson v. Cuban*, Sullivan & Cromwell LLP's Motion to Quash and for a Protective Order, No. 23-mc-24, ECF No. 1-1 at 2 (S.D.N.Y. Jan. 27, 2023).  S&C, who has served as counsel to FTX in certain matters since July 2021, including FTX's pending bankruptcy proceeding, informed Plaintiffs' counsel that it had no information regarding the Voyager EPAs in question here.  *Id.*  Though S&C asserted in its objection to Plaintiffs' subpoena that Plaintiffs lacked a good-faith basis for its harassing discovery request, Plaintiffs' counsel apparently failed to substantively respond, instead engaging in "a belligerent approach to enforcing the [s]ubpoena, repeatedly threatening to appear at [S&C's] offices."  *Id.* at 3.

### F.    Transfer Serves the Interests of Justice.

In these circumstances, Plaintiffs' "obvious forum shopping outweighs any marginal advantage [they] may have on this factor based on the efficacy of the case remaining in this

District." *Abreu*, 2022 WL 2355541, at \*23.  Regardless of the relative burden on the docket of this Court and that of the N.D. Texas, "[e]fficiency . . . is not the only consideration under this factor. Instead, a court must also examine what is required by the interests of justice." *Id.* at \*22. Further, transfer here will not result in any inefficiencies or result in a delay of trial, as (i) the case is still in its early stages, evidenced best by Plaintiffs' intimation that they intend to file a Second Amended Complaint; (ii) if Plaintiffs add a federal securities claim, that will result in an immediate motion to dismiss and a mandatory stay of discovery, and (iii) all discovery to date here will be available in the transferee forum.  *See Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*, No. 15-24067-CIV-ALTONAGA/O'Sullivan, 2016 WL 1546427, at \*7 (S.D. Fla. Apr. 15, 2016).  Moreover, if the Court orders the transfer of this action to the N.D. Texas, the transferee court can decide the pending motion to dismiss, a fairly routine practice where a transfer motion has been granted with a motion to dismiss pending.  *See, e.g.*, *Terra Towers Corp. v. Gelber Schachter & Greenberg, P.A.*, No. 22-21204-CIV-Scola, 2022 WL 2816722, at \*1 (S.D. Fla. July 19, 2022) ("Because the Court finds transfer of this case to the United States District Court for the Southern District of New York appropriate, it declines to opine on the pending motions to dismiss.").

## III.   Defendants' Transfer Motion is Timely.

Defendants' Transfer Motion is clearly timely.  Indeed, Defendants' counsel are filing it immediately after deposing the remaining Florida Plaintiffs (where their lack of standing or the bogus nature of their claims has been confirmed) and shortly after first learning that the most critical non-party Voyager witnesses either live in Texas or more easily can appear at trial in Texas than Florida.  It is undisputed that the N.D. Texas is the locus of the dispute and the most convenient forum for the witnesses and parties.  "[A]n action may certainly be transferred under § 1404(a) at any time during the pendency of a case." *Grasso v. Electrolux Home Prods., Inc.*, No. 15-20774-CIV-Scola, 2016 WL 9526495, at \*3 (S.D. Fla. Apr. 8, 2016).  Indeed, "Section 1404(a) motions have been held proper . . . after the jury has failed to agree at trial—indeed, even after final judgment, when modification of the decree is at issue."  15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3844 (4th ed. April 2022 Update) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (transferring action from Oklahoma to Michigan after the Oklahoma court granted judgment on

plaintiff's claims so that the Michigan court could decide the remaining counterclaims and third-party complaint).

Defendants' Transfer Motion is well within the timeframe that other courts in this District have held to have been filed with "reasonable promptness."  *Clinton*, 2020 WL 6120565, at *2. The Transfer Motion is being filed approximately three months after the Court indicated that it intended to lift its stay on the litigation and Plaintiffs filed the October 28, 2022 Amended Complaint (ECF No. 34) and even prior to Plaintiffs' anticipated filing of a Second Amended Complaint.  Further, Defendants have filed the Transfer Motion only approximately three months after the Court ordered that the case be administratively reopened by the filing of the Amended Complaint on October 28, 2022.  ECF No. 34.  Moreover, Plaintiffs' prosecution of this case has been a moving target, as Plaintiffs dismiss parties (Defendant Ehrlich and Plaintiff Sanford Gold so far), threaten to add new claims and new parties, and, even tried unsuccessfully to add two new plaintiffs in violation of Federal Rule of Civil Procedure 15 and Local Rule 15.1.  *See* ECF No. 86 (denying Plaintiffs' motion to add additional putative class representatives for failure to follow proper procedures for amendment); ECF No. 80 at 3, 5 (previewing that Plaintiffs' will amend to add federal securities claims); ECF No. 82-7, December 30, 2022 Email from Adam Moskowitz at p. 2 of 30 (stating that Plaintiffs were contemplating amendment to include additional parties), p. 8 of 30 (explaining in Item 7 that Plaintiffs "will be adding to all of the other class representatives by interlineation and/or in our first [*sic*][14] amended complaint").

The amount of time a case has been pending "is not a controlling factor" in deciding whether a transfer motion is timely, but is instead just "one circumstance a court may consider" in its assessment.  *Bankers Ins. Co. v. DLJ Mortg. Cap., Inc.*, No. 8:10-CV-419-T-27EAJ, 2012 WL 515879, at *4 (M.D. Fla. Jan. 26, 2012), *report and recommendation adopted sub nom. Bankers Ins. Co. v. Bank of New York Mellon*, No. 8:10-CV-419-T-27EAJ, 2012 WL 523629 (M.D. Fla. Feb. 16, 2012).  "[W]here . . . there is a strong nexus to the transferee forum and a tenuous connection to the transferor forum, *[a] ten-month delay* in filing the motion itself is not determinative particularly where the delay in the filing of the motion will not result in a delay of the trial date."  *Grasso*, 2016 WL 9526495, at *3 (emphasis added).  The Court in *Grasso* reasoned:

---

[14] As Plaintiffs filed their first Amended Complaint on October 28, 2022 (ECF No. 34), Plaintiffs' counsel's December 30, 2022 email referencing subsequent amendment could only have been referencing what would be the second amended complaint.

> Just because this Court has committed judicial resources to this case does not mean that those efforts will be wasted upon transfer. To the contrary, the transferee court will reap the benefits of those efforts in that certain issues have been streamlined by this Court's rulings and discovery is now well underway. The only inefficiencies precipitated by the transfer, which would have arisen regardless of whether the movant had sought transfer early or late in the litigation, relate to certain administrative burdens associated with the logistics of transferring a case. This factor, however, plays into the Court's assessment only minimally.

*Id.* at \*4; *see also Clinton*, 2020 WL 6120565, at \*3 (finding transfer motion timely where filed "a mere five months after service of the initial complaint" and "three weeks after Plaintiffs filed their amended complaint" was timely).

Here, the Transfer Motion has been filed five and a half months after Plaintiffs filed their initial complaint and the case was administratively closed for approximately two of those five and a half months.  All discovery before this Court and all of this Court's rulings on the scope of discovery will be equally applicable in the N.D. Texas.  Though discovery is ongoing, the case is still in its very early stages, as Defendants' motion to dismiss (ECF No. 41) is still pending and has not yet been fully briefed, and the claims that will be included in a Second Amended Complaint—and whether any will survive a renewed motion to dismiss—are still unknown.

Further, the timing of this Transfer Motion is more than reasonably prompt, as Defendants' counsel have only recently learned of the presence of a critical Voyager witness who lives in Texas and have now confirmed the extent of Plaintiffs' forum shopping by virtue of the depositions taken last week of the remaining two Florida Plaintiffs.  Similarly, Defendants' counsel only recently confirmed that virtually all, if not all, of Voyagers' relevant in-person meetings with Mavericks employees took place in Dallas, Texas.  *See* Section II(B), *supra*.  "The convenience of non-party witnesses is an important, if not the most important, factor in determining whether a motion for transfer should be granted," and, before knowing the identity and location of these third-party witnesses, Defendants' counsel could not reasonably have known that transfer was warranted. *Cellularvision Tech. & Telecomms.*, 2006 WL 2871858, at \*3.

## IV.   Transfer is Appropriate for the Same Reasons Under 28 U.SC. § 1406 if the Court Determines it Lacks Personal Jurisdiction Over Defendants.

For the same reasons, transfer is also entirely appropriate if the Court agrees with Defendants' arguments, as set forth in their motion to dismiss, that the Court lacks personal jurisdiction over Defendants.  *See* ECF No. 41 at 6-13.  28 U.S.C. § 1406(a) "authorize[s] the

transfer of [a] cas[e] . . . whether the court in which it was filed had personal jurisdiction over the defendants or not." *CoronaCide, LLC v. Wellness Matrix Grp., Inc.*, No. 820CV00816-CEH-AAS, 2021 WL 1060356, at *10 (M.D. Fla. Mar. 19, 2021) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)).  In any event, the Court's ruling on personal jurisdiction does not impact the Court's transfer analysis as "both statutes involve the same requirement."  *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1302 n.6 (S.D. Fla. 2002) (applying reasoning from a case involving a motion to transfer under Section 1406 to a motion seeking transfer under Section 1404); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3842 (4th ed. April 2022 Update) ("Although some federal courts favor one statute over the others[] in fact the transfer provision applied—whether Section 1404(a) or Section 1406(a) . . . — generally has little or no effect on the case or the transfer motion itself.").  Once the case is transferred to the N.D. Texas, the transferee court can decide the remaining grounds set forth by Defendants for dismissal of either the Amended Complaint or the Second Amended Complaint (if Plaintiffs file a Second Amended Complaint on February 24, 2023).

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), Defendants request a hearing to address this Transfer Motion.  These issues are best addressed at a hearing, which would supplement the parties' briefing, and during which the Court could directly question the parties.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that the Court transfer the action to the N.D. Texas.

## S.D. FLA. L.R. 7.1 CERTIFICATION

Defendants' counsel has conferred with Plaintiffs' counsel via videoconference in a good-faith effort to resolve the issue of whether this action should be transferred to the N.D. Texas, and report that Plaintiffs do not agree that the case should be transferred.

Respectfully submitted this 31st Day of January 2023.

/s/ Christopher E. Knight
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:     (305) 789-9200
Facsimile:     (305) 789-9201

-and-

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@thehucklawfirm.com

THE HUCK LAW FIRM
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (305) 441-2299
Telecopier: (305) 441-8849

-and-

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email:  sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email:  rwolkinson@brownrudnick.com

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
Telephone (202) 536-1755

*-and-*

SIGMUND WISSNER-GROSS, ESQ.
*Pro Hac Vice*
Email:  swissner-gross@brownrudnick.com

JESSICA N. MEYERS, ESQ.
*Pro Hac Vice*
Email:  jmeyers@brownrudnick.com

BROWN RUDNICK LLP
Seven Times Square
New York, NY 11036
Telephone:  (212) 209-4930

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2023, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

## SERVICE LIST

Adam M. Moskowitz, Esq.
Joseph M. Kaye, Esq.
Barbara C. Lewis, Esq.
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, Florida 33134
E-mail: adam@moskowitz-law.com
Email: joseph@moskowitz-law.com
Email: barbara@moskowitz-law.com

*Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**

Stephen Neal Zack, Esq.
szack@bsfllp.com
Hon. Ursula Ungaro, Esq.
uungaro@bsfllp.com
Boies Schiller Flexner LLP
100 S.E. 2nd St., Suite 2800
Miami, FL 33131

*Co-Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**

**DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS
PAGE 23**

David Boies, Esq.
*Pro Hac Vice*
Boies Schiller Flexner LLP
333 Main Street
Armonk, NY  10504
Email:  dboies@bsfllp.com

*Co-Counsel for Plaintiffs and the Proposed
Classes*

**VIA CM/ECF**