IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No: 1:22-cv-22538 (Altman/Reid)

PIERCE ROBERTSON, RACHEL GOLD,
SANFORD GOLD, RAHIL SAYED,
CHRISTOPHER EHRENTRAUT, TODD
MANGANIELLO, DAN NEWSOM, WILLIAM
AYER, ANTHONY DORN, DAMECO GATES,
MARSHALL PETERS, and EDWIN GARRISON,
on behalf of themselves and all others similarly
situated,

      Plaintiffs,

      v.

MARK CUBAN, et al.

      Defendants.

**DEFENDANTS MARK CUBAN'S AND DALLAS BASKETBALL LIMITED'S
MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND MEMORANDUM OF LAW
IN SUPPORT THEREOF**

# TABLE OF CONTENTS

FACTUAL BACKGROUND ............................................................................................................3

    A.    Plaintiffs' and the Florida Plaintiffs' Allegations .................................................. 3

    B.    Mr. Robertson and Ms. Gold Reaffirmed their False Allegations in Sworn
           Declarations Supporting Plaintiffs' Class Certification Motion............................ 4

    C.    Defendants' Investigation and Discovery Has Confirmed that the Florida
           Plaintiffs Made Material Misstatements in Court Filings and that their Claims
           Lack a Reasonable Factual and Legal Basis. .......................................................... 5

           1.    Mr. Cuban and the Mavericks Never Made Any Public Statements About
                 Voyager Prior to October 27, 2021............................................................. 5

           2.    Non-Party Voyager Produced Plaintiffs' Trade History, Which Further
                 Refuted the Florida Plaintiffs' Claims. ....................................................... 5

           3.    Ms. Gold and Mr. Robertson's Deposition Testimony Further Confirmed
                 Fatal Flaws in their Claims. ........................................................................ 7

    D.    Defendants' Counsel Repeatedly Informed Plaintiffs' Counsel of Their Clients'
           Misstatements. ........................................................................................................ 8

    E.    The Proposed Second Amended Complaint Withdraws Mr. Robertson's Claims
           and Amends Ms. Gold's Claims, Adding More False Statements. ...................... 11

LEGAL STANDARD ................................................................................................................12

ARGUMENT..............................................................................................................................13

I.    The Florida Plaintiffs' Claims Are Objectively Frivolous and Plaintiffs' Counsel Made
    Repeated Misrepresentations to the Court in Support of those Claims. .............................13

    A.    Plaintiffs' Counsel Submitted Numerous False Statements to the Court in Support
           of Ms. Gold's Objectively Frivolous Claims......................................................... 13

           1.    Plaintiff Rachel Gold falsely represented that she was a Voyager account
                 holder. ........................................................................................................ 13

           2.    Ms. Gold falsely stated that she relied on Mr. Cuban in opening her
                 husband's account....................................................................................... 13

           3.    Ms. Gold made numerous misstatements in the PSAC. ........................... 14

           4.    Ms. Gold's claims are objectively frivolous, as only purchasers may bring
                 unregistered securities claims. ................................................................... 15

    B.    Plaintiffs' Counsel Submitted Numerous False Statements in Support of Mr.
           Robertson's Frivolous Claims................................................................................ 17

           1.    Mr. Robertson's false allegations .............................................................. 17

           2.    Mr. Robertson's pre-Sponsorship Agreement transactions cannot possibly
                 support claims against Defendants.............................................................. 18

II.     Plaintiffs' Counsel Recklessly and in Bad Faith Multiplied the Proceedings. ..................18

        A.      Plaintiffs' Counsel Continued to Pursue Frivolous Claims After Defendants
                Repeatedly Alerted Plaintiffs' Counsel of the Claims' Factual and Legal
                Deficiencies......................................................................................................... 18

        B.      Defendants Are Entitled to an Award of Attorneys' Fees and Costs. .................. 20

CONCLUSION ..........................................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
    500 F.3d 1230 (11th Cir. 2007) ................................................................................................12

*Applebaum v. Fabian*,
    2020 WL 6375706 (D.N.J. Oct. 30, 2020)................................................................................16

*Asset Prot. Plans, Inc. v. Oppenheimer & Co.*,
    2011 WL 2533839 (M.D. Fla. June 27, 2011)..........................................................................16

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)..................................................................................................................16

*Buehler v. LTI Int'l, Inc.*,
    762 So. 2d 530 (Fla. Dist. Ct. App. 2000) ...............................................................................16

*Carter v. Ford Motor Co.*,
    2021 WL 1165248 (S.D. Fla. Mar. 26, 2021).............................................................................1

*Celsius Holdings, Inc. v. A SHOC Beverage, LLC*,
    2022 WL 3568042 (S.D. Fla. July 19, 2022)............................................................................20

*Davidson v. Belcor, Inc.*,
    933 F.2d 603 (7th Cir. 1991) ....................................................................................................16

*Goodman v. Tatton Enters., Inc.*,
    2012 WL 12540024 (S.D. Fla. June 1, 2012)...........................................................................12

*Maale v. Kirchgessner*,
    2011 WL 1458258 (S.D. Fla. Mar. 3, 2011).............................................................................12

*Macort v. Prem, Inc.*,
    208 F. App'x 781 (11th Cir. 2006) ...........................................................................................12

*Peer v. Lewis*,
    606 F.3d 1306 (11th Cir. 2010) ................................................................................................12

*Reid v. Madison*,
    438 F. Supp. 332 (E.D. Va. 1977) ............................................................................................16

*In re Voyager Digital Holdings, Inc.*,
    Case No.22-10943-mew (Bankr. S.D.N.Y.) ...............................................................................3

**Statutes**

15 U.S.C. § 78j .............................................................................................................................16

28 U.S.C. § 1927 .................................................................................................................... *passim*

Fla. Stat. § 48.193 .......................................................................................................................4, 17

Fla. Stat. § 517.211 .......................................................................................................................16

Fla. Stat. §§ 709.2102, 709.2103, 709.2105(2), 709.2106(1) .........................................................14

**Other Authorities**

Fed. R. Civ. P. 11 .................................................................................................................. *passim*

Defendants Mark Cuban and Dallas Basketball Limited d/b/a Dallas Mavericks (the "Defendants") submit this Motion and Memorandum of Law for Sanctions under 28 U.S.C. § 1927 ("Section 1927") (the "Section 1927 Motion") against Plaintiffs' counsel, Adam Moskowitz, Esq. and the Moskowitz Law Firm, PLLC ("Plaintiffs' Counsel").[1]  While, in partial response to at least eleven prior Rule 11 warnings, Plaintiffs' Counsel now belatedly seeks to drop Pierce Robertson (but not Rachel Gold) as a named plaintiff, the vexatious and dilatory conduct by Plaintiffs' Counsel with respect to Plaintiffs Rachel Gold and Mr. Robertson nonetheless warrants imposition of Section 1927 sanctions.

Two allegedly Florida-based Plaintiffs in this action—Ms. Gold and Mr. Robertson (the "Florida Plaintiffs")—made patently false assertions in the Complaint and other filings to the Court and never had viable claims.  Defendants were forced to incur significant fees and expenses to debunk these false claims.  Even pre-suit, Plaintiffs' Counsel knew or should have known that the Florida Plaintiffs' claims were without any basis.  And Ms. Gold and Mr. Robertson's frivolous claims are particularly outrageous because without them, none of the other named Plaintiffs had any connection to Florida, as the remaining named Plaintiffs all are non-Florida residents with purported claims under non-Florida state law, thereby precluding filing this case in this District.[2]

While the entire Amended Complaint otherwise lacks any merit and should be dismissed for the reasons in Defendants' previously filed Motion to Dismiss (ECF No. 41) (Plaintiffs' proposed Second Amended Complaint (ECF 121-1, the "PSAC") fares no better), the Florida

---

[1] Defendants also reserve the right to separately seek Rule 11 sanctions against Plaintiff Rachel Gold, plaintiffs other than Pierce Robertson, and their counsel.

[2] While Plaintiffs' proposed Second Amended Complaint attempts to add three new Florida plaintiffs, those proposed plaintiffs were not named in the Complaint or Amended Complaint, and the Court has not yet granted Plaintiffs leave to amend.  The sole other Florida plaintiff in the Amended Complaint, Sanford Gold (Rachel Gold's father), a three-time convicted federal felon with a history of major financial fraud, is not the subject of the Sanctions Motion, as he was dropped as a plaintiff in early January 2023 before his scheduled deposition, based on claimed health issues. ECF No. 88. As demonstrated in Defendants' Motion to Dismiss, in the absence of any named Florida plaintiff with cognizable claims for which the Court has jurisdiction, the Court is required to dismiss the non-Florida plaintiffs' claims for lack of personal jurisdiction as this Court does not recognize pendent party jurisdiction.  *See Carter v. Ford Motor Co.*, 2021 WL 1165248, at *6 (S.D. Fla. Mar. 26, 2021) (no long-arm jurisdiction where "Plaintiffs all live outside of Florida" and plaintiffs' conduct occurred outside of Florida); ECF No. 41 at 7-8. Defendants also assert, and continue to assert, *inter alia*, the various other grounds in the Motion to Dismiss as to why the Court otherwise lacks personal jurisdiction over Defendants and why the claims are dismissible for several other reasons. *See id.* §§ I-III.

Plaintiffs' alleged claims are particularly noteworthy because they were pursued in flagrant violation of Section 1927. Regarding Ms. Gold, she never had an account with Voyager Digital, Ltd. and therefore lacks any standing to sue, something Defendants had to pry out of Ms. Gold at her deposition. *See* Ex. 1, Rachel Gold Dep., Ex. 5A. Additionally, shortly after she was deposed in late January 2023, it appears that Ms. Gold sold her home in      , Florida, and no longer resides in the State (*see* n.13, *infra*), though her counsel still falsely claims, in his PSAC,      . PSAC ¶ 66.

For his part, Mr. Robertson opened a Voyager account five months **prior to** the October 27, 2021 press conference announcing the Voyager-Mavericks Sponsorship Agreement (the "Press Conference"), the first time Defendants publicly spoke about Voyager. Discovery confirmed, *inter alia*, that Mr. Robertson executed approximately    trades before October 27, 2021, making impossible the notion that Mr. Robertson somehow "relied" on Defendants in opening his Voyager account or executing any of such   trades. Moreover, Mr. Robertson admitted at his deposition that all trading decisions were his own, he had no dispute with the interest payments paid to him by Voyager, and he      . The uncontradicted evidence is that he was paid approximately    in interest from Voyager's Earn Program Account ("EPA").

Plaintiffs' Counsel had ample time to correct these deficiencies, and, since filing the Amended Complaint on October 28, 2022, has been repeatedly put on notice that Plaintiffs' claims were legally frivolous and that Defendants intended to seek sanctions.[3] Plaintiffs' Counsel nonetheless charged forward, falsely claiming that the Florida Plaintiffs had standing to sue and refusing to own up to the falsity of the Florida Plaintiffs' allegations, causing Defendants to incur substantial, otherwise avoidable legal expenses. While Plaintiffs' Counsel has finally recognized the meritless nature of Mr. Robertson's claims and attempts to drop him as a plaintiff in the PSAC (*see* ECF No. 121-1), counsel continues to pursue Ms. Gold's frivolous claims. In any event, for Mr. Robertson's claim, Plaintiffs' Counsel's reversal comes far too late, as Defendants were forced to spend months and significant costs investigating and defending against his fabricated claims.

Defendants request all costs and legal expenses associated with defense of the Florida Plaintiffs' claims incurred since it was clear that Plaintiffs' Counsel's assertion and pursuit of the

---

[3] As discussed below, Defendants have notified Plaintiffs and Plaintiffs' counsel at least eleven times of the Rule 11 deficiencies set forth herein.

Florida Plaintiffs' claims was "objectively reckless"—beginning on August 10, 2022, when the original Complaint was filed, as the Complaint included fabricated statements that easily could have been confirmed, pre-filing, as false by Plaintiffs' Counsel. **Because Plaintiffs' Counsel continued to pursue those baseless claims, even though given at least eleven Rule 11 warnings, Defendants were forced to conduct that costly investigation themselves, fly to Florida to depose Ms. Gold and to Illinois to depose Mr. Robertson, at which both Florida Plaintiffs' own fraud was finally exposed**. For the reasons set forth below, this Court should impose sanctions on the Florida Plaintiffs' Counsel.

## FACTUAL BACKGROUND

### A.    Plaintiffs' and the Florida Plaintiffs' Allegations

On December 24, 2021, Voyager customer Mark Cassidy, represented by Plaintiffs' Counsel, filed a putative class action against Voyager. *Cassidy v. Voyager Digital Ltd.*, No. 21-cv-24441 (the "*Cassidy* Action"), ECF No. 1 (Dec. 24, 2021). Mr. Cassidy filed an amended complaint on April 28, 2022, adding claims based on the alleged sale of unregistered securities. *Cassidy* Action, ECF No. 46. On July 8, 2022, the *Cassidy* Action was stayed as a result of Voyager's bankruptcy filing. *Cassidy* Action, ECF No. 70.

On August 10, 2022, Plaintiffs asserted claims under various states' securities and consumer protection laws against Voyager CEO Stephen Ehrlich, but also against Mr. Cuban, and the Mavericks, copying and pasting large portions of their counsel's *Cassidy* Action complaints. ECF No. 1. When Voyager sought to stay this action as well, Plaintiffs' Counsel cut a deal with the Creditors Committee and Voyager debtors, dropping all aiding and abetting claims, and dropping Mr. Ehrlich as a defendant. *See In re Voyager Digital Holdings, Inc.*, Case No.22-10943-mew (Bankr. S.D.N.Y.) [ECF Nos. 18, 23]. Plaintiffs' nineteen-count Amended Complaint asserts meritless claims under various states' securities and consumer protection laws (ECF No. 34 ¶¶ 115-32), which were the subject of Defendants' Motion to Dismiss (ECF No. 41). Plaintiffs' claims are purportedly based on the Mavericks' Sponsorship Agreement with Voyager, announced during a Press Conference on October 27, 2021 in Dallas. *See* ECF No. 34 ¶¶ 46-57. While there is no personal jurisdiction over Defendants, Plaintiffs also fail to allege any of the elements necessary to hold Defendants liable for Voyager's alleged sale of unregistered securities in the

form of EPAs.[4]  ECF No. 34 ¶¶ 127, 131-32.  Plaintiffs also allege (incorrectly) that Defendants' conduct at the Press Conference amounts to a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  *Id.* ¶¶ 115-24.

Plaintiffs premise their claims on the incorrect assumption that the opening and funding of the EPAs constituted purchases of unregistered securities from Voyager.[5]  To support their claims, the Florida Plaintiffs allege in the Amended Complaint, in boilerplate fashion, that they each:

> *purchased an unregistered security* from Voyager in the form of an EPA and funded the account with a *sufficient amount of crypto assets to earn interest* on his [or her] holdings. Plaintiff [] did so *after being exposed* to some or all of Cuban's and Ehrlich's misrepresentations and omissions regarding the Deceptive Voyager Platform . . . , and executed trades on the Deceptive Voyager Platform *in reliance on those misrepresentations and omissions*. . . .

*Id.* ¶¶ 7-8 (emphasis added).  Plaintiffs made identical boilerplate allegations in the original Complaint.  ECF No. 1 ¶¶ 34-35.  Mr. Robertson further falsely alleges:

> So, I *first heard about Voyager from Mark Cuban*. The dogecoin hype was at its peak and I was thinking about investing in crypto. This *was back in the summer of 2021*. I *saw Mark promoting dogecoin and then Voyager and thought "he's a sound investor," so I downloaded the app and began to play around with a very small amount of money in June 2021*. . . .

ECF No. 34 ¶ 69 (emphasis added).  Mr. Robertson made an identical false allegation in the original Complaint.  ECF No. 1 ¶ 115.

**B.    Mr. Robertson and Ms. Gold Reaffirmed their False Allegations in Sworn Declarations Supporting Plaintiffs' Class Certification Motion.**

Mr. Robertson and Ms. Gold made similar false statements in Plaintiffs' November 15, 2022 class certification motion (ECF No. 40), which was denied as premature (ECF No. 45).  Mr. Robertson and Ms. Gold each swore under penalty of perjury in filed Declarations:

> *I purchased from Voyager Digital a Voyager Earn Program Account . . . after being exposed to some or all of Cuban's misrepresentations and omissions* regarding the Deceptive Voyager Platform as detailed in the complaint, and *thereafter funded the account with sufficient cryptocurrency assets to meet the*

---

[4] The Section 1927 Motion does not require the Court to determine any issue presented in the prior Motion to Dismiss (ECF No. 41).  Rather, the Section 1927 Motion is based on fabricated or otherwise false factual contentions advanced by Plaintiffs, and the legal implications of such falsity, which Plaintiffs knew or should have known pre-suit.

[5] Defendants dispute that any opening or funding of the EPAs constitutes the purchase of a security, but this issue need not be addressed for purposes of the Section 1927 Motion, as the Florida Plaintiffs' claims are frivolous without needing to reach the unregistered security issue.

*minimum thresholds for earning the interest* Voyager Digital offered . . . .

ECF No. 40-1, Decl. of Pierce Robertson in Support of Plaintiffs' Mot. to Certify Nationwide Issue Class ("Robertson Decl.") at ¶ 3 (emphasis added); ECF No. 40-2, Decl. of Rachel Gold in Support of Plaintiffs' Mot. to Certify Nationwide Issue Class ("R. Gold Decl.") at ¶ 3 (emphasis added).

    **C.**     **Defendants' Investigation and Discovery Has Confirmed that the Florida Plaintiffs Made Material Misstatements in Court Filings and that their Claims Lack a Reasonable Factual and Legal Basis.**

        1.    *Mr. Cuban and the Mavericks Never Made Any Public Statements About Voyager Prior to October 27, 2021.*

After devoting significant amounts of time and resources to investigate Plaintiffs' allegations, Defendants confirmed, as Plaintiffs' Counsel knew or should have known when the Complaint was filed, that neither Defendant ever made a public statement about Voyager prior to the Press Conference. Though Mr. Robertson specifically alleged to have "first heard about Voyager from Mark Cuban" in Summer 2021 (ECF No. 34 ¶ 69) and to have opened a Voyager EPA "after being exposed" to Mr. Cuban's statements (*id.* ¶ 7), discovery confirmed

      (Ex. 2, Feb. 14, 2023 Dep. of Ryan Mackey Tr. ("Mackey Dep. Tr.") at 245:11-246:2). Indeed, the Mavericks were not even first approached by Voyager about a potential sponsorship deal until on or about August 19, 2021, and sponsorship negotiations commenced on September 8, 2021, making the notion that the Defendants were publicly talking about a sponsorship deal with Voyager prior to such first contact facially and objectively nonsensical. ECF No. 91, Decl. of Ryan Mackey ¶ 3; *see*

. Additionally, discovery confirmed that Mr. Cuban first funded his personal Voyager account in September 2021, shortly after the Mavericks' discussions with Voyager commenced.[6]

        2.    *Non-Party Voyager Produced Plaintiffs' Trade History, Which Further Refuted the Florida Plaintiffs' Claims.*

On or about December 29, 2022, non-party Voyager produced, pursuant to subpoena, account information and full trading history for the named Plaintiffs, after Plaintiffs stalled at making such production. Defendants were stunned by account information and trading history, which Plaintiffs' Counsel should have analyzed prior to commencing this action. Voyager's

---

[6] Defendants understand that Mr. Cuban first opened a Voyager account in August 2021 after Voyager first approached the Mavericks about a potential sponsorship agreement.

production confirmed, *e.g.*, that Ms. Gold lied in claiming that she opened an account in her name. Instead, the account Ms. Gold attempted to open

. ECF No. 92-2 (under seal), Decl. of Sigmund S. Wissner-Gross in Support of Defendants' Mot. to Transfer ("Wissner-Gross Decl."), Ex. B at Rob-Voyager-00000006. On December 30, 2022, when confronted with this fact, Plaintiffs' Counsel admitted to Defendants that Ms. Gold did not open an account in her own name. ECF No. 82-7, Dec. 30, 2022 Email from Adam Moskowitz at 8. Plaintiffs' Counsel nevertheless subsequently vexatiously insisted, without citing any legal authority, that Ms. Gold "clearly has standing under Eleventh Circuit and Southern District of Florida case law," forcing Defendants to incur further significant expense in preparing for and taking Ms. Gold's Florida deposition and in conducting other discovery. ECF No. 82-4, Jan. 6, 2023 Hearing Tr. at 78:11-13.

Plaintiffs' Voyager trade history further confirmed that Mr. Robertson—like eight other named Plaintiffs[7]—opened, funded, and actively used his Voyager account well prior to the Press Conference, and thus objectively could not have relied on any statement by Defendants about Voyager in deciding to open his account. Mr. Robertson first opened his account in (ECF No. 92-3, Wissner-Gross Decl. Ex B. at Rob-Voyager-00000004) and funded his account in (Ex. 3 Rob-Voyager-00000016 (excerpted) at 1), **before** the Press Conference. Indeed, Mr. Robertson made deposits worth (*id.* at 1-3) and engaged in approximately transactions **before** the Press Conference (*id.* at 4-6). Voyager paid Mr. Robertson approximately in interest based on the cryptocurrency he deposited into his EPA, and Mr. Robertson . *See id* at 1-3.

---

[7] Though the Section 1927 Motion focuses on Plaintiffs' Counsel's pursuit of the Florida Plaintiffs' claims, Defendants reserve the right to move for sanctions in connection with the claims of the other eight Plaintiffs—Marshall Peters, Rahil Sayed, Anthony Dorn, William Ayer, Dameco Gates, Dan Newsom, Todd Manganiello, and Christopher Ehrentraut—who each also assert frivolous claims based on Voyager transactions that took place prior to October 27, 2021. For example, documentary evidence confirmed that Mr. Gates opened his account about five months **prior to** the Press Conference and **never** made any deposits into his Voyager account after the Press Conference. Though Defendants sought to take the depositions of all named Plaintiffs, the Court directed Defendants to first take the depositions of the named Florida Plaintiffs, Pierce Robertson, Rachel Gold, and former Plaintiff Sanford Gold. *See* ECF No. 77 (setting dates for depositions of the Florida-based Plaintiffs).

3. *Ms. Gold and Mr. Robertson's Deposition Testimony Further Confirmed Fatal Flaws in their Claims.*

At her January 2023 deposition, Ms. Gold ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Ex. 4, Rachel Gold Dep. Tr. (excerpted) ("R. Gold Dep. Tr.") at 67:3-5 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *id.* at 69:3-10 ("Q.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮."). Ms. Gold admitted that she wrote in a text message that she ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 90:22-

91:13; Ex. 1, R. Gold Dep., Ex. 5A.  Ms. Gold never ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4, R. Gold. Dep. Tr. at 69:11-14 ("▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮"). Instead, her account was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮" *Id.* at 73:15-74:6; *see* ECF No. 92-2, Wissner-Gross Decl. Ex. B at Rob-Voyager-

00000006.   Further, Ms. Gold's Facebook messenger chats illustrated, and her deposition

testimony confirmed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 4, R. Gold. Dep. Tr. at 80:8-12,

156:2-4; *see also* Gold Ex. 5 (Gold to Keuning: "Your [sic] the one who told me about voyager.").

Ms. Gold also discussed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 166:16-21.

Similarly, Mr. Robertson confirmed at his deposition ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 5, Pierce Robertson Dep. Tr.

(excerpted) ("Robertson Dep. Tr.") at 42:19-25.  Mr. Robertson testified ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 125:23-126:3.  Though Defendants' counsel

informed Mr. Robertson that there was no evidence that Mr. Cuban made any public statements

about Voyager before the Press Conference—making Mr. Robertson's claims of reliance

objectively impossible—Mr. Robertson further lied at his deposition, falsely asserting under oath

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮." *Id.* at 108:14-16.  Mr. Robertson then perjuriously testified

under oath that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ refusing to admit that

he had fabricated the claim about having heard Mr. Cuban speak about Voyager in the Spring of

2021 before Mr. Robertson opened his Voyager account.  *Id.* at 109:3-24.  Following Mr.

Robertson's insistence that he relied on this supposed video in opening his Voyager account,

Defendants' counsel asked Mr. Robertson to take time during the lunch break to work with Plaintiffs' Counsel



*Id.* at 108:20-25. Mr. Robertson

. Ex. 6, Stephen Ehrlich

Dep. Tr. (excerpted) ("Ehrlich Dep. Tr.") at 310:25-311:7, 312:9-21. Thus, Mr. Robertson has lied on several occasions in this case: he lied in the statements attributed to him in the Complaint and Amended Complaint; he lied in the sworn statements he made in his signed Declaration; and he lied repeatedly at his deposition.[8] Further, Mr. Robertson confirmed that,

*Id.* at 140:14-25.

### D. Defendants' Counsel Repeatedly Informed Plaintiffs' Counsel of Their Clients' Misstatements.

As it became clear that the Florida Plaintiffs' filings to this Court were replete with falsehoods regarding their own trading histories, Defendants, beginning in November 2022, repeatedly put Plaintiffs' Counsel on notice about the seriousness of this matter. Plaintiffs' Counsel, however, ignored or otherwise cavalierly dismissed these warnings:

- On November 22, 2022, Defendants' counsel sent a letter to Plaintiffs' Counsel requesting prompt discovery of the named Plaintiffs because of "serious Rule 11 issues as to the standing of virtually all of the named plaintiffs to pursue claims against our clients . . . ." ECF No. 49-3, Nov. 22, 2022 Letter to Adam Moskowitz at 2.

- On December 1, 2022, Defendants again told Plaintiffs' Counsel that Defendants' early examination of Plaintiffs' claims exposed standing issues. ECF No. 49-1, Dec. 1, 2022 Letter to Adam Moskowitz at 3.

- During a December 20, 2022 discovery hearing before Magistrate Judge Reid, Defendants' counsel reiterated Defendants' "serious questions about the plaintiffs, their standing and causation issues," as Defendants' investigation showed "that at least eight of the 12 named plaintiffs opened their Voyager account" prior to the Press Conference. ECF No. 82-3, Dec. 20, 2022 Hearing Tr. at 30: 9-16, 35:9-10.

---

[8] Defendants have previously alerted the Court to Mr. Robertson's chronic history of prior arrests, personal bankruptcies, and prior filing of false sworn statements about his financial condition with other Florida courts. ECF No. 71, at 2-3 n.2; ECF No. 82-4, Jan. 6, 2023 Hearing Tr. at 37:25-38:7, 63:5-8. Given that Mr. Robertson's prior history of misconduct and false filings was a matter of public record, Plaintiffs' Counsel had a duty to investigate Mr. Robertson's false statements before selecting him as the lead Plaintiff in the Complaint and advancing lies by Mr. Robertson in the Complaint and Amended Complaint.

- On December 27, 2022, Defendants emailed Plaintiffs' Counsel stating that "each of your three Florida-based clients [including Ms. Gold and Mr. Robertson] opened their Voyager accounts before the announcement of a Voyager sponsorship agreement with the Dallas Mavericks." Ex. 7, Dec. 27, 2022 Email from Stephen Best to Adam Moskowitz at 1.[9]

- The next day, Defendants' counsel again emailed Plaintiffs' Counsel about these "very serious Rule 11 concerns about [his] clients' claims." Ex. 8, Dec. 28, 2022 Email from Adam Moskowitz at 1.  Defense counsel emphasized, "we want to underscore the seriousness of our Rule 11 concerns here. We do not believe there ever were any good faith grounds for this nuisance lawsuit to have been asserted by the Plaintiffs against [Defendants] . . . ." *Id.* at 3.  Plaintiffs' Counsel replied, "Thanks . . . long email, but you can bill by the hour." *Id.* at 1.

Once Voyager produced documents reflecting trading activity in the named Plaintiffs accounts, Defendants had yet further specific proof of the Amended Complaint's factual inaccuracies (as to the named Plaintiffs' trading claims).  On December 30, 2022, Defendants informed Plaintiffs' Counsel (1) that documents confirmed that Mr. Robertson "opened his account months before the announced sponsorship agreement" and (2) "[b]y your admission, Rachel Gold has no standing in that she never opened any account with Voyager, much less relied on any statements from Mark Cuban on behalf of the Mavericks." Ex. 9, Dec. 30, 2022 Email to Adam Moskowitz at 1 (referring to Mr. Moskowitz's December 30, 2022 email in which he admits that Ms. Gold did not open an account in her own name, ECF No. 82-7 at 8).  That same day, in a filing with the Court, Defendants emphasized Mr. Robertson's false statements concerning his reliance on Mr. Cuban's non-existent statements about Voyager prior to the Press Conference in multiple Court filings.  ECF No. 70 at 2, 2-3 n.2.

Defendants' continued warnings to Plaintiffs' Counsel were simply rebuffed or ignored. On January 3, 2023, Defendants told Plaintiffs, "[w]e do not believe a Rule 11 ground ever existed for this case, and while you are being permitted to take jurisdictional discovery, we urge you to consider the Rule 11 implications of pursuing claims against parties who lack any requisite jurisdictional ties to Florida." ECF No. 82-11, Jan. 3, 2023 Letter to Adam Moskowitz at 4-5.

On January 6, 2023, the parties appeared before Magistrate Judge Reid for another discovery hearing.  Defendants' counsel again informed Plaintiffs' Counsel and the Court that "the evidence is clear there is no standing for the Florida-based plaintiffs in this case." ECF No. 82-4,

---

[9] While Defendants subsequently learned that Sanford Gold apparently opened a Voyager EPA several months after the Press Conference (assisted by his daughter), Mr. Gold's claims were otherwise fabricated and he was dropped as a named plaintiff prior to his deposition. ECF No. 88.

Jan. 6, 2023 Hearing Tr. at 13:13-14; *see id.* at 20:16-17, 24:4-6, 32:16-33:2. Defendants informed the Court that the evidence confirmed that Ms. Gold did not open her own Voyager account (*id.* at 41:24-42:1) and that Mr. Robertson and eight other Plaintiffs falsely claimed to have opened their accounts in reliance on Mr. Cuban's non-existent pre-Sponsorship Agreement statements about Voyager (*id.* at 36:1-10, 37:4-8). Based on their investigation, Defendants' counsel prepared a PowerPoint presentation for the Court, which explained that (i) Plaintiffs inaccurately stated that they opened Voyager EPAs in reliance on Mr. Cuban's statements about Voyager, (ii) nine of the twelve original Plaintiffs, including Mr. Robertson, opened their Voyager EPAs before the Press Conference, making reliance objectively impossible, (iii) Mr. Robertson's statement that he heard about Voyager from Mr. Cuban in the Summer 2021 was false, and (iv) Ms. Gold never even opened a Voyager account in her own name. Ex. 10, Jan. 6, 2023 PowerPoint Presentation at 9-11, 15-16.

In a January 17, 2023 filing, Defendants again informed Plaintiffs and the Court that Ms. Gold never opened her own Voyager account. ECF No. 82 at 7. Similarly, Defendants stated that "Defendants' investigation has indicated that Pierce Robertson opened a Voyager account in May 2021, and document discovery obtained from Voyager has confirmed that Mr. Robertson funded his Voyager EPA on June 18, 2021, well before the October 27, 2021 Press Conference." *Id.* Plaintiffs replied by rotely and vexatiously insisting that Ms. Gold and all other Plaintiffs, including Mr. Robertson, had standing to assert all their claims, without providing any legal or factual basis for those assertions. ECF No. 85 at 1 n.3. In Defendants' January 31, 2023 Motion to Transfer Venue to the Northern District of Texas, Defendants noted that Ms. Gold lacks standing and that Plaintiff Pierce Robertson has filed "a completely fabricated set of claims." ECF No. 90 at 4; *see also* ECF No. 92, Wissner-Gross Decl. ¶¶ 17, 19.

On February 22, 2023, Defendants served (but, pursuant to Rule 11(c) did not file) a Rule 11 sanctions motion on Plaintiffs. The unfiled Rule 11 motion, like this Section 1927 Motion, recited in detail the Florida Plaintiffs' misstatements and the futility of their claims, putting counsel on further notice of their sanctionable conduct. More recently, as Plaintiffs note in a recent Court filing, Plaintiffs' Counsel sent Defendants' a draft proposed second amended complaint. ECF No. 121 at 2. Upon reviewing the draft proposed second amended complaint, Defendants again informed Plaintiffs' Counsel of Rule 11 issues with the draft and that the draft contained numerous, new inaccuracies.

### E.   The Proposed Second Amended Complaint Withdraws Mr. Robertson's Claims and Amends Ms. Gold's Claims, Adding More False Statements.

On May 9, 2023, Plaintiffs filed a motion for leave to amend (ECF No. 121), attaching Plaintiffs' PSAC (ECF No. 121-1). ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████ (PSAC ¶ 66), although Defendants believe she moved to Tennessee shortly after her January 2023 deposition (*see* n.13, *infra*).  Plaintiffs' Counsel further alleges in the PSAC that:

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████

*Id.* (emphasis added).  Plaintiffs' Counsel then states ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████."  *Id.* ¶ 67.  Further, Ms. Gold states that she:

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

*Id.* ¶ 68 (emphasis added).  Ms. Gold's new allegations simply present a modified but still false historical narrative, as Plaintiffs' Counsel has known the truth all along—as Ms. Gold testified herself, she tried to open a Voyager account ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████o.  Ex. 4, R. Gold Dep. Tr. at 80:13-25.

**LEGAL STANDARD**

Defendants seek sanctions under 28 U.S.C. § 1927. Under Section 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 "sets out a three-prong, conjunctive test: (1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) a dollar amount of sanctions that bears a financial nexus to the excess proceedings." *Macort v. Prem, Inc.*, 208 F. App'x 781, 785–86 (11th Cir. 2006).

An attorney's conduct is unreasonable and vexatious where the attorney engages in "objectively reckless conduct" that supports a finding of bad faith. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007). Under Section 1927, a finding of "bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.* at 1239. "Thus, objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently," and "a district court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings." *Id.* at 1241. Courts in this District have held that an attorney's "***repeated instances of making misrepresentations to [the Court] . . . demonstrate [the attorney's] objective and subjective bad faith***," thus demonstrating unreasonable and vexatious conduct. *Goodman v. Tatton Enters., Inc.*, 2012 WL 12540024, at *31 (S.D. Fla. June 1, 2012), *report and recommendation adopted*, 2012 WL 12540103 (S.D. Fla. Aug. 14, 2012) (emphasis added); *see Maale v. Kirchgessner*, 2011 WL 1458258, at *4 (S.D. Fla. Mar. 3, 2011), *report and recommendation adopted*, 2011 WL 1458147 (S.D. Fla. Apr. 15, 2011) (party's "repeated assertion of a demonstrably false argument constitutes evidence of bad faith" in assessing sanctions under the court's inherent authority).

"Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Section 1927 sanctions are intended to deter an "attorney's similar activities in the future." *Goodman*, 2012 WL 12540024, at *32.

## ARGUMENT

I.    **The Florida Plaintiffs' Claims Are Objectively Frivolous and Plaintiffs' Counsel Made Repeated Misrepresentations to the Court in Support of those Claims.**

A.    **Plaintiffs' Counsel Submitted Numerous False Statements to the Court in Support of Ms. Gold's Objectively Frivolous Claims.**

1.    *Plaintiff Rachel Gold falsely represented that she was a Voyager account holder.*

Section 1927 sanctions against Plaintiffs' Counsel are warranted, as they submitted multiple false statements in filings with the Court and continued their frivolous pursuit of Ms. Gold's claims long after they knew that she *never* was a Voyager account holder.[10]  Ms. Gold (i) asserted in the Amended Complaint that she "purchased an unregistered security from Voyager in the form of an EPA and funded the account with a sufficient amount of crypto assets to earn interest on **her** holdings" (ECF No. 34 ¶ 8) (emphasis added) and (ii) made a nearly identical sworn statement in support of Plaintiffs' class certification motion (ECF No. 40-2, R. Gold Decl. at ¶ 3).

Those statements were false, as Ms. Gold testified that



(Ex. 4, R. Gold Dep. Tr. at 67:3-5, 69-3-10), which according to Plaintiffs, constituted the "purchase" of an unregistered security (*see* ECF No. 34 ¶ 130 (alleging violations of Florida securities law, as "Voyager sold and offered to sell the unregistered EPAs to Plaintiffs and members of the Class")).  And contrary to her sworn statements, Ms. Gold

(Ex. 4, R. Gold Dep. Tr. at 67:3-5), but instead premised

(*id.* at 69:7-10).[11]

2.    *Ms. Gold falsely stated that she relied on Mr. Cuban in opening her husband's account.*

Though Ms. Gold alleges that she relied on "[Messrs.] Cuban and Ehrlich's misrepresentations and omissions regarding the Deceptive Voyager Platform," in executing trades on Voyager's platform (ECF No. 34 ¶ 8), she testified at her deposition

---

[10] Defendants believe it is apparent that Plaintiffs' Counsel knew or should have known, prior to filing the Complaint, that Ms. Gold did not have a Voyager account in her name, that the account that was opened was not in her name, and that the funds used to fund such account were not her personal funds.  *See* Argument § II(A), *infra*.

[11] Ms. Gold's husband, Eric Rares, is not a named Plaintiff in the case.



(Ex. 4, R. Gold Dep. Tr. at 80:8-12).  Ms. Gold stated

*Id.* at 153:17-19.  Ms. Gold followed

.  *See* Ex. 12, Facebook Chat Between Rachel Gold and                        , RGOLD_CUBAN_00160 at 161-62.  On January 7, 2022, Mr. Keuning advised Ms. Gold to purchase Polkadot (*id.* at RGOLD_CUBAN_00162), and, on January 8, 2022, Mr. Rares purchased                (Ex. 13, RGOLD_CUBAN_00148 at 148).  On March 19, 2022,            recommended Avalanche (Ex. 12, RGOLD_CUBAN_00160 at 161), and, over the next two weeks, Mr. Rares purchased        of Avalanche (Ex. 13, RGOLD_CUBAN_00148 at 149).  Further, Ms. Gold discussed her husband's investments on Voyager with her financial advisor,          .  Ex. 4, R. Gold. Dep. Tr. at 166:16-21; *see* Ex. 11, Text Messages Between Rachel Gold and        , RGOLD_CUBAN_00157-58.  At no point during her deposition did Ms. Gold state that she relied on Mr. Cuban or Mr. Ehrlich in deciding "which cryptocurrencies to purchase" in her husband's name, confirming as false her statements regarding reliance on Messrs. Cuban and Ehrlich.

3.    *Ms. Gold made numerous misstatements in the PSAC.*

While Plaintiffs' Counsel, seemingly acknowledging the falsity of Ms. Gold's prior misstatements, unsuccessfully tries to conceal those inaccuracies by now vaguely claiming that

[12] Ms. Gold's claims remain frivolous, as only purchasers, not spouses of purchasers, have legal standing to bring unregistered securities claims. PSAC ¶ 67; *see* Section I(A)(4), *infra*.  In any event, Ms. Gold testified at her deposition that

.  Ex. 4, R. Gold. Dep. Tr. at 52:11-15.  Under Florida law, spouses do not automatically have power of attorney over one another, as power of attorney is only granted to an "attorney in fact" via a writing signed by the principal and two witnesses, except in certain, inapplicable circumstances. *See* Fla. Stat. §§ 709.2102, 709.2103, 709.2105(2),

---

12

709.2106(1).

Further, Ms. Gold adds new, knowingly false statements in the PSAC. Though acknowledging that Mr. Rares, not Ms. Gold, purchased Voyager EPAs, Plaintiffs' Counsel still falsely asserts that ███████████████████████████████████████████████████████

█████████████████████████████." PSAC ¶ 66 (emphasis added). Ms. Gold's indication that ████████████████████████████████████████████ is also false. *Id.* ¶ 66. ████████████████████████████████████████████████████████████████████

████████████████████████████████. *See* Ex. 13, RGOLD_CUBAN_00148 at 148-50.

Further, in direct contradiction to Ms. Gold's deposition testimony, Plaintiffs' Counsel claim in the PSAC ████████████████████████████████████████████████████

████████████████████. PSAC ¶¶ 66-68. Though Ms. Gold asserts that she ██████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████ (*id.*), she testified at her deposition that ██████████████████████████████

██████████ (Ex. 4, R. Gold. Dep. Tr. at 80:8-12). Ms. Gold stated that she ██████████

████████████████████████████████████████████████████████████████████

██████████. *Id.* at 153:17-19 (emphasis added).[13]

4.    *Ms. Gold's claims are objectively frivolous, as only purchasers may bring unregistered securities claims.*

Even if Ms. Gold had sufficiently corrected her prior misstatements in the PSAC, her claims continue to be legally frivolous, as she did not purchase Voyager EPAs. Plaintiffs' Counsel's continued pursuit of Ms. Gold's legally frivolous claims justifies Section 1927 sanctions. It is well settled that only purchasers of alleged securities, not their spouses, have standing to bring the claims asserted by Ms. Gold. And while the PSAC tries to get around this

---

[13] Additionally, Defendants believe that Ms. Gold's statement in the ████████████████████

████████████████. *See* PSAC ¶ 66. Public records indicate that Ms. Gold and her husband, Eric Rares, sold their house in Coral Springs on March 20, 2023, and photographs in a mid-February 2023 real estate listing of their house reveal a vacant house. *See* ████████████████████████████, realtor.com/realestateandhomes-detail/ ████████████████████████████. Public records further reveal that Ms. Gold purchased a house in Dunlop, Tennessee on February 15, 2023, shortly after her deposition in this case, and that she and her husband transferred registration of their vehicles from Florida to Tennessee on February 28, 2023.

fact by inaccurately claiming ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ discovery confirmed
that Voyager did not permit joint accounts, and the account documents solely identified the account
as in the name of Eric Rares.[14] More importantly, the Florida Securities and Investor Protection
Act expressly limits a seller's liability, or the liability of a secondary participant who "participated
or aided in the making of the sale," to persons who "*purchas[ed] the security*." Fla. Stat. §
517.211(2) (emphasis added). The Supreme Court has long held "that *only a purchaser* or seller
of a security has standing to bring a private 10b-5 securities fraud action for money damages."
*Applebaum v. Fabian*, 2020 WL 6375706, at *6 (D.N.J. Oct. 30, 2020) (emphasis added), *aff'd*,
2021 WL 1382331 (D.N.J. Apr. 13, 2021) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421
U.S. 723 (1975)). Under *Blue Chip*, spouses of purchasers do not have standing to bring Rule 10b-
5 claims. *Davidson v. Belcor, Inc.*, 933 F.2d 603, 608 (7th Cir. 1991) (holding that the ex-wife
who had neither sold nor purchased the shares in question did "not have standing to sue under the
anti-fraud provisions of the federal securities laws"); *see also Reid v. Madison*, 438 F. Supp. 332,
335 (E.D. Va. 1977) (following *Blue Chip* and holding that the wife of a stockholder lacked
standing to bring a securities fraud claim under Section 10(b) of the Exchange Act, as she was not
a "purchaser" of the security in question).

Similarly, Florida's "Section 517.211 states *only that a purchaser or seller of a security
is entitled to relief*." *Asset Prot. Plans, Inc. v. Oppenheimer & Co.*, 2011 WL 2533839, at *5
(M.D. Fla. June 27, 2011) (emphasis added) (holding that a "mere 'holder' of a security has no
claim" under the Florida Securities and Investor Protection Act); *Buehler v. LTI Int'l, Inc.*, 762 So.
2d 530, 532 (Fla. Dist. Ct. App. 2000) ("Because [defendant who asserted a counterclaim for
violation of the Florida Securities and Investor Protection Act] is not a purchaser of a security from
[plaintiff and counterclaim defendant] . . . [defendant and counterclaim plaintiff] cannot avail itself
of the remedy provided in section 517.211.").

Because Ms. Gold ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 4, R. Gold
Dep. Tr. at 67:3-5, 69:3-10; PSAC ¶ 67), she cannot be a "purchaser" as a matter of law and
therefore cannot bring a claim under Florida securities law. Indeed, as per the Amended

---

[14] Voyager's CEO, Ehrlich, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6,
Ehrlich Dep. Tr. at 347:16-17.

Complaint, Ms. Gold is not even a putative class member. *See* ECF No. 34 ¶ 74(1), (defining the purported "Nationwide Class" as "[a]ll persons or entities in the United States who, within the applicable limitations period, ***purchased or enrolled*** in an EPA") (emphasis added); ¶ 75(2) (defining the purported "Florida Subclass" as "[a]ll persons or entities in the state of Florida who, within the applicable limitations period, ***purchased or enrolled*** in an EPA") (emphasis added); *see also* █████████████████████████████████████████████████████████████████████████

Further, while Ms. Gold did not open a Voyager EPA in her own name, she cannot state a claim under the FDUTPA regardless, since it is well-settled that an alleged sale of unregistered securities cannot support a claim under FDUTPA. *See* ECF No. 41 at 24 n.33 (citing cases).

**B.      Plaintiffs' Counsel Submitted Numerous False Statements in Support of Mr. Robertson's Frivolous Claims.**

Plaintiffs' Counsel repeatedly included Mr. Robertson's assertions in the Amended Complaint and in sworn Declarations submitted to the Court that also are contradicted by evidence obtained in discovery, including at his deposition.

1.      *Mr. Robertson's false allegations*

Mr. Robertson falsely asserted in the Amended Complaint that he "first heard about Voyager from Mark Cuban" in the Summer 2021, around the time he allegedly downloaded the Voyager app. ECF No. 34 ¶ 69. The Amended Complaint also alleged that Mr. Robertson purchased and funded Voyager EPAs "with a sufficient amount of crypto assets to earn interest on his holdings" and that he did so "after being exposed to some or all of Cuban's and Ehrlich's misrepresentations and omissions regarding the Deceptive Voyager Platform as detailed in this complaint, and executed trades on the Deceptive Voyager Platform in reliance on those misrepresentations and omissions." *Id.* ¶ 7. Mr. Robertson made a similar false statement in a sworn Declaration submitted to the Court in support of Plaintiffs' class certification motion. ECF No. 40-1 ¶ 3. During his deposition, Mr. Robertson doubled-down on this lie and, under oath, falsely asserted that he █████████████████████████████████████████████████████

█████████████████████████████████████████ " Ex. 5, Robertson Dep. Tr. 108:14-16.

Mr. Robertson's statements are objectively false because neither Mr. Cuban nor the Mavericks publicly discussed Voyager at any time before October 27, 2021, when the Mavericks announced their Sponsorship Agreement with Voyager. When confronted during his deposition about this transparent fabrication, Mr. Robertson ████████████████████████████████

████████████████████████████████████████████████████████████████████████



. *Id.* at 109:1-5.

In a stunning display of circular logic and perjury, Mr. Robertson asserted

*Id.* at 109:6-14. Before filing the original Complaint, Plaintiffs' Counsel had ample opportunity and a Rule 11 obligation to search Mr. Cuban and the Mavericks' online statements for evidence supporting Mr. Robertson's false claims that Defendants publicly discussed Voyager months before the announcement of the Sponsorship Agreement. Such evidence does not exist.

> 2. *Mr. Robertson's pre-Sponsorship Agreement transactions cannot possibly support claims against Defendants.*

Logic dictates that, while Defendants dispute that they materially assisted in the sale of any alleged Voyager-related securities during or after the Press Conference, Defendants objectively could neither materially assist Voyager's alleged securities violations nor take part in deceptive trade practices, as alleged in the Amended Complaint, related to Mr. Robertson's Voyager transactions that occurred *before Defendants' first involvement with Voyager*.

## II. Plaintiffs' Counsel Recklessly and in Bad Faith Multiplied the Proceedings.

### A. Plaintiffs' Counsel Continued to Pursue Frivolous Claims After Defendants Repeatedly Alerted Plaintiffs' Counsel of the Claims' Factual and Legal Deficiencies.

First, had Plaintiffs' Counsel conducted even a minimal factual and legal investigation into the Florida Plaintiffs' claims—as required by Rule 11—they would have known pre-suit that their claims are meritless. Plaintiffs' Counsel's failure to conduct any such investigation suggests that their filing of the Florida Plaintiffs' claims was reckless and in bad faith. Plaintiffs' Counsel also recklessly continued to pursue these claims after Defendants repeatedly warned them—via letters, emails, Court filings, and during hearings before Magistrate Judge Reid—that these claims were objectively frivolous, materially increasing Defendants' defense costs. As set forth in detail in Section D of the Factual Background, *supra*, Defendants warned Plaintiffs' Counsel at least eleven times about sanctionable issues with their Amended Complaint, starting no later than on November 22, 2022.

There can be no doubt that, by December 30, 2022 at the latest, Plaintiffs' Counsel knew

of Ms. Gold's failure to be a Voyager account holder, as, on that day, *Plaintiffs' Counsel* admitted to this defect after being confronted with the inconsistencies between Plaintiffs' claims and the documents that Voyager had produced. ECF No. 82-7, Dec. 30, 2022 Email from Adam Moskowitz at 8 (after Voyager had produced customer account records). Defendants repeatedly informed Plaintiffs' Counsel that since they conceded Ms. Gold was not a Voyager account holder, she lacked standing to bring claims against Defendants. Ex. 9, Dec. 30, 2022 Email to Adam Moskowitz; ECF No. 82-11, Jan. 3, 2023 Letter to Adam Moskowitz at 4-5; ECF No. 82-4, Jan. 6, 2023 Hearing Tr. at 13:13-14; *see id*. at 20:16-17, 24:4-6, 32:16-33:2; 41:24-42:1; Ex. 10, Jan. 6, 2023 PowerPoint Presentation at 15-16; ECF No. 82 at 7; ECF No. 90 at 4. Plaintiffs' Counsel nevertheless continued to frivolously assert, without authority, to the Court that Ms. Gold had standing, thus vexatiously multiplying the proceedings and requiring Defendants to needlessly take her deposition and other discovery. ECF No. 82-4, Jan. 6, 2023 Hearing Tr. at 78:11-13; ECF No. 85 at 1 n.3. Unsurprisingly, Ms. Gold confirmed at her deposition

. ECF No. 92-3, R. Gold Dep. Tr. at 67:3-5, 69:3-10.

By no later than January 6, 2023, Defendants' counsel made clear to Plaintiffs' Counsel that Mr. Robertson had falsely claimed that he heard about Voyager from Mr. Cuban in the Summer 2021 and that Defendants' investigation confirmed that neither Mr. Cuban nor the Mavericks ever made any public statements regarding Voyager prior to the October 27, 2021 Press Conference. *See* Ex. 10, Jan. 6, 2023 PowerPoint Presentation at 11. At the January 6, 2023 hearing, Defendants' counsel explained that Mr. Robertson's statement that he opened his Voyager account in the summer of 2021 in reliance on statements from Mr. Cuban was a fabrication, as "Mr. Cuban didn't announce his involvement or the Mavs involvement with Voyager until October 2021 and Voyager first approached the Mavs in August of 2021." ECF No. 82-4, Jan. 6, 2023 Hearing Tr. at 36:25-37:3. Plaintiffs' Counsel has never identified a single fact demonstrating that Defendants made any public statements regarding Voyager prior to the Press Conference. That is because none exist—and Defendants have confirmed the same. Accordingly, Plaintiffs' Counsel was undoubtedly aware that the Florida Plaintiffs made factually inaccurate statements in Court filings and were pursuing frivolous legal claims. Plaintiffs' Counsel's insistence on their continued pursuit of Mr. Robertson's claims vexatiously multiplied the proceedings, unnecessarily increasing Defendants' costs and legal fees.

Moreover, Plaintiffs' Counsel's recent proposed withdrawal of Mr. Robertson's claims

does not obviate the need for sanctions.[15] Section 1927 sanctions are still appropriate where, as here, plaintiff only withdrew meritless claims after months of needless litigation. *See Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, 2022 WL 3568042, at *3 (S.D. Fla. July 19, 2022). In *Celsius Holdings*, the court awarded Section 1927 sanctions where plaintiff pursued obviously frivolous claims for approximately four months after defendants filed their motion to dismiss before voluntarily dismissing its claims one week prior to a hearing at which it would have been required to justify its false claims. *Id.* at *1-*3. Similarly here, counsel's withdrawal of Mr. Robertson's claims came too late, as Defendants were needlessly forced to spend time and money investigating and defending his claims long after the motion to dismiss was filed.

**B.     Defendants Are Entitled to an Award of Attorneys' Fees and Costs.**

Defendants seek to recover their reasonable fees and costs incurred after it became objectively clear that continued pursuit of the Florida Plaintiffs' claims was frivolous. *See Celsius Holdings*, 2022 WL 3568042, at *3-*4 (awarding reasonable costs and attorneys' fees incurred after defendants filed their motion to dismiss, after which "[t]he fatal flaws in Plaintiff's case should have been apparent"). As discussed in Section II(A), *supra*, the fatal flaws in the Florida Plaintiffs' claims should have been apparent prior to the filing of the Complaint. Plaintiffs' Counsel was notified of the specific fatal flaws of Ms. Gold's claims no later than December 30, 2022, and the specific fatal flaws of Mr. Robertson's claims no later than January 6, 2023, well prior to their depositions. At a minimum, Defendants are entitled to recover all attorneys' fees and costs incurred after the fatal flaws of the Florida Plaintiffs' claims became objectively apparent.[16]

**CONCLUSION**

Defendants respectfully request that the Court grant the Section 1927 Motion and award Defendants reasonable attorneys' fees and costs.

**CERTIFICATE OF GOOD-FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movants/Defendants conferred with Plaintiffs' counsel via telephone conference in a good faith

---

[15] As Plaintiffs' PSAC does not withdraw Ms. Gold's claims, Plaintiffs' Counsel continues to vexatiously increase costs through frivolous pursuit of her claims that counsel knows are meritless.
[16] Defendants are prepared to submit expense and billing statements, as directed by the Court, in the event the Court grants the Section 1927 Motion.

effort to resolve the issues raised in this Motion and Memorandum of Law for sanctions under 28 U.S.C. § 1927, but have been unable to resolve those issues.

Respectfully submitted this 15th day of May 2023.

/s/ Christopher E. Knight
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:     (305) 789-9201

-and-

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@thehucklawfirm.com

THE HUCK LAW FIRM
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (305) 441-2299
Telecopier: (305) 441-8849

-and-

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email: sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email: rwolkinson@brownrudnick.com

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
Telephone (202) 536-1755

-and-

SIGMUND WISSNER-GROSS, ESQ.
*Pro Hac Vice*
Email: swissner-gross@brownrudnick.com

JESSICA N. MEYERS, ESQ.
*Pro Hac Vice*
Email: jmeyers@brownrudnick.com

BROWN RUDNICK LLP
Seven Times Square
New York, NY 11036
Telephone: (212) 209-4930

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2023, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Christopher E. Knight
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

## SERVICE LIST

Adam M. Moskowitz, Esq.
Joseph M. Kaye, Esq.
Barbara C. Lewis, Esq.
Howard M. Bushman, Esq.
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, Florida 33134
E-mail: adam@moskowitz-law.com
Email: joseph@moskowitz-law.com
Email: barbara@moskowitz-law.com
Email: howard@moskowitz-law.com

*Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**

David Boies, Esq.
*Pro Hac Vice*
Boies Schiller Flexner LLP
333 Main Street
Armonk, NY 10504
Email: dboies@bsfllp.com

*Co-Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**

Stephen Neal Zack, Esq.
szack@bsfllp.com
Hon. Ursula Ungaro (Retired), Esq.
uungaro@bsfllp.com
Tyler E. Ulrich, Esq.
tulrich@bsfllp.com
Boies Schiller Flexner LLP
100 S.E. 2nd St., Suite 2800
Miami, FL 33131

*Co-Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**

Jose M. Ferrer, Esq.
Mark Migdal & Hayden
80 S.W. 8th Street, Suite 1999
Miami, FL 33130
Email: jose@markmigdal.com

*Co-Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**