# EXHIBIT 10

REDACTED

**brown**rudnick

*Robertson v. Cuban*, Case No. 22-cv-22538-ALTMAN/REID

Presentation for January 6, 2023 Hearing Before Magistrate Judge Reid

# Defendants' Compliance Since the December 20th Hearing: Jurisdictional Production

■ In compliance with the January 3, 2023 deadline set by the Court during the December 20, 2022 hearing (Hearing Tr. at 62:2-5; 65:7-13) and following the Court's entry of a Protective Order, Defendants reviewed a set of jurisdictional documents over the holidays.

- A total of **637,928** files were collected from Defendants and loaded onto an e-discovery platform.

- Defendants used search terms to target potentially relevant jurisdictional documents and conducted additional, targeted review of over **29,000** files potentially relating for Florida.

■ On January 3, 2023, Defendants produced all responsive, non-privileged documents related to Defendants' visits to Florida, which included **524** files.

brownrudnick

# Defendants' Jurisdictional Production Confirms the Accuracy of Defendants' Declarations

- Mr. Cuban stated in his declaration that:

  - He met with Voyager CEO Stephen Ehrlich twice—both times in Dallas (ECF No. 41-2 at ¶ 5); and

  - He periodically visits Florida "to attend Mavericks away games, to attend conferences, and on vacation" (*id.* at ¶ 8).

- Defendants' document production sets forth a documentary record confirming that:

  - In 2021, prior to when the Mavericks entered into their agreement with Voyager, Mr. Cuban traveled to Orlando and Miami to attend Magic and Heat games; and

  - In 2022, Mr. Cuban again periodically visited Florida for Magic and Heat games.

  - Also in 2022, Mr. Cuban traveled to Florida to attend the North American Bitcoin Conference where he discussed cryptocurrency generally and to attend a panel during Miami NFT Week, during which he discussed NFTs generally.

- **At no point during these trips did Mr. Cuban discuss Voyager or meet with anyone from Voyager, including Mr. Ehrlich.**

# Defendants' Compliance Since the December 20th Hearing: Deposition Status

- Defendants have informed Plaintiffs' counsel that Mr. Cuban is available for a deposition on jurisdictional issues in Dallas on February 2, 2023 at 9:00 AM.

brownrudnick

# The Court Directed that Mr. Cuban's Deposition Should Be Limited to Jurisdictional Issues

- At the December 20th hearing, the Court made clear that Mr. Cuban's early February deposition would be limited to jurisdictional issues related to his purported contacts with Florida. Hearing Tr. at 44:18-25.

| 18 | MR. BEST: So the first half week or the second full |
| 19 | week. The first full week or the first half week in February. |
| 20 | I will get a date within that range. |
| 21 | THE COURT: And now are we talking about depositions |
| 22 | limited to the jurisdictional issue at that point. I just want |
| 23 | to clarify. |
| 24 | MR. WISSNER-GROSS: That's fine with us. |
| 25 | THE COURT: OK. |

- Plaintiffs' counsel stated in a December 30th email that Plaintiffs may file a Second Amended Complaint "to include additional parties such as Voyager brand from the NFL [and] NASCAR." At various times, Plaintiffs' counsel has also indicated that he may add other parties as defendants, including the NBA, the National Women's Soccer League, and the law firm Sullivan & Cromwell (latter, counsel to FTX).

  - If Mr. Cuban's February 2nd deposition covers issues not limited to jurisdictional issues as directed by the Court, he is at risk of being deposed on merits issues a second time by these potential new parties.

- Time spent during Mr. Cuban's February 2nd deposition on jurisdictional issues should count towards the 7-hour time limit for depositions under Federal Rule of Civil Procedure 30(d).

brownrudnick

# Defendants' Compliance Since the December 20th Hearing: Jurisdictional Production

■ In an email to counsel for Mr. Ehrlich on January 4, 2023, Mr. Moskowitz wrote, "[W]e received last night the production from Mr. Cuban regarding his dealings with Mr. Ehrlich and there were just a handful of emails."

• Again, the "handful" of emails provided to Plaintiffs on January 3, 2023 consisted of **524** files.

■ Mr. Moskowitz mischaracterizes the entirety of Defendants' jurisdictional production, which is limited to communications related to Defendants' visits to Florida, not all communications between Defendants and Mr. Moskowitz related to Voyager.

brownrudnick

# Defendants' Compliance Since the December 20th Hearing: Merits Discovery

■ Defendants are reviewing the approximately **45,000** documents that hit on search terms and, in compliance with the Court's instruction that "January 13th is the date for rolling production to commence" (Hearing Tr. at 64:12-13), Defendants have every intention to commence merits-based rolling document production on that date.

• This is from a database of **637,928** documents.

• As Plaintiffs' counsel failed to engage on any search terms or an ESI protocol, Defendants have used reasonable search terms they have prepared in conducting document review.

• To date, Defendants have completed a first-level review of approximately 25,000 documents and are on target to begin a rolling production of responsive, non-privileged documents on January 13, 2023.

brownrudnick

# Plaintiffs Have Failed to Meet Their Discovery Obligations

▪ Despite the Court's instruction that depositions of the three Florida Plaintiffs—Pierce Robertson, Sanford Gold, and Rachel Gold—be held in Miami before the end of January (Hearing Tr. 86:2-4; 87:8-24), Mr. Robertson has fled the state to avoid being deposed and Plaintiffs have imposed various unreasonable conditions for the depositions of Ms. Gold and her father, Sanford Gold.

- Defendants served deposition notices on November 22, 2022 and noticed depositions in for the Florida Plaintiffs on December 22 (Pierce Robertson and Rachel Gold) and December 23 (Sanford Gold).

- Defendants' investigation has revealed serious questions about the Florida Plaintiffs' credibility that are best explored during in-person depositions.

▪ Plaintiffs' December 30, 2022 partial document production suffers from serious deficiencies, which Plaintiffs have failed to correct.

- Plaintiffs refuse to provide detailed transaction records, historical Voyager app portfolio balances, wallet addresses[1] from other cryptocurrency accounts, documents related to other criminal and civil cases with which Plaintiffs are involved, or any documents relating to financial advice that Plaintiffs received in connection with any transactions related to their Voyager accounts.

---

1. A cryptocurrency wallet address is a string of letters and numbers from which cryptocurrencies can be sent to and from.

brownrudnick

# In-Person Depositions Are Necessary

- "The general rule is that a plaintiff who brings suit in a particular forum may not avoid appearing for examination in that forum." *Brand Q, Inc. v. Jung GMBH Ltd. Liab. Co.*, No. 22-80769-CIV, 2022 WL 17324238, at *3 (S.D. Fla. Nov. 29, 2022) (quoting *Levick v. Steiner Transocean Ltd.*, 228 F.R.D. 671, 672 (S.D. Fla. 2005)). "In accordance with this general rule, a plaintiff *must make herself available for deposition in the judicial district in which she filed suit.*" *Id.* (emphasis added; quotation marks omitted) (rejecting plaintiffs' request for a remote deposition and a protective order preventing an in-person deposition).

- Here, there are serious credibility issues that are best addressed in-person, rather than via remote deposition.

- Each Florida Plaintiff asserted in the Amended Complaint that they:

  [P]urchased an unregistered security from Voyager in the form of an EPA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. [Plaintiff] did so *after* being exposed to some or all of Cuban's and Ehrlich's misrepresentations and omissions regarding the Deceptive Voyager Platform as detailed in this complaint, and executed trades on the Deceptive Voyager Platform *in reliance on those misrepresentations and omissions*. As a result, [Plaintiff] has sustained damages for which Cuban and Ehrlich are liable.

  ECF No. 34 ¶¶ 7-9 (emphasis added).

- Further, in support of Plaintiffs' premature class certification motion, the Florida Plaintiffs each stated in sworn declarations:

  I purchased from Voyager Digital a Voyager Earn Program Account (an 'EPA') *after* being exposed to some or all of Cuban's misrepresentations and omissions regarding the Deceptive Voyager Platform as detailed in the complaint, and thereafter funded the account with sufficient cryptocurrency assets to meet the minimum threshold for earning the interest Voyager Digital offered to pay on those holdings. To date, I have not recovered my initial investment.

  ECF No. 40-1 ¶ 3 ; ECF No. 40-2; ECF No. 40-3 (emphasis added).

9

# In-Person Depositions Are Necessary (Continued)

However, 9 of the 12 Plaintiffs (including Pierce Robertson) opened accounts and deposited funds *prior to October 27, 2021*, the date of the Voyager Press Conference, when the Mavericks announced they were working with Voyager, making factually impossible any claimed reliance on Defendants' statements about Voyager in opening their accounts.

| Plaintiff | State | First Deposit | First Trade |
|---|---|---|---|
| Marshall Peters | PA | | |
| Rahil Sayed | NJ | | |
| Anthony Dorn | CA | | |
| William Ayer | VA | | |
| Dan Newsom | GA | | |
| Dameco Gates | CA | | |
| Todd Manganiello | LA | | |
| Christopher Ehrentraut | TN | | |
| Pierce Robertson | FL | | |
| Edwin Garrison | OK | | |
| Rachel Gold | FL | | |
| Sanford Gold | FL | | |

CONFIDENTIAL

brownrudnick

# In-Person Depositions Are Necessary (Continued)

## Lead Plaintiff Robertson's Credibility Issues

- In the Amended Complaint, Mr. Robertson states:

  So, I *first heard about Voyager from Mark Cuban*. The dogecoin hype was at its peak and I was thinking about investing in crypto. This was back *in the summer of 2021*. I saw Mark promoting dogecoin and then Voyager and thought "he's a sound investor," so I downloaded the app and began to play around with *a very small amount* of money in June 2021.

  ECF 34 No. ¶ 67 (emphasis added).

- In fact—even accepting the allegations of the Amended Complaint as true— Defendants never publicly discussed Voyager prior to the October 27, 2021 Press Conference. *See* ECF No. 34 ¶ 46.

- Though Mr. Robertson claims to have only "began to play around with a very small amount of money in June 2021," *he actually deposited over $30,000 between June and October 2021*, prior to the Voyager Press Conference.

CONFIDENTIAL

brownrudnick

# In-Person Depositions Are Necessary (Continued)

## Lead Plaintiff Robertson's Credibility Issues

- Despite depositing over ▮▮▮▮ in his Voyager account by September 2, 2021 (including ▮▮ on September 2, 2021 alone), Mr. Robertson appears to have submitted sworn statements in September 2021 in other Florida proceedings under penalty of perjury where he failed to disclose any crypto assets (including cash he had recently transferred to his Voyager account), and falsely claimed to have ▮▮▮▮▮

I understand that I will be required to make payments for costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, although I may agree to pay more if I choose to do so.

4. I have other assets: (Circle "yes" and "fill in the value of the property, otherwise circle "No")

| | | | | |
|---|---|---|---|---|
| Cash | ☐ Yes $ ___ ☒ No | Savings account | Yes $ ___ | |
| Bank account(s) | ☒ Yes $ 175.26 ☐ No | Stocks/bonds | Yes $ ___ | ☒ No |
| Certificate of deposit or | ☐ Yes $ ___ ☒ No | Homestead Real Property* | Yes $ 117,000 | ☒ No |
| Money market accounts | ☐ Yes $ ___ ☒ No | Motor Vehicle* | Yes $ 1,000 | ☒ No |
| Boats* | ☐ Yes $ ___ ☒ No | Non-homestead real property/real estate* | Yes $ ___ | ☒ No |
| | | Other assets* | Yes $ ___ | ☒ No |

Check one  I ( ) DO ☒ DO NOT expect to receive more assets in the near future.  The asset is ___

5. I have total liabilities and debts of $ ___ as follows:  Motor Vehicle $ ___  Home $ 10,000  Boat ___
$ ___ Non-homestead Real Property $ ___  Child Support paid direct $ ___  Credit Cards $ 14,771.86
Medical Bills $ 607  Cost of medicines (monthly) $ 212  Other $ ___ (No)

6. I have a private lawyer in this case........ Yes ☐

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. I attest that the information I have provided on this application is true and accurate to the best of my knowledge.

Signed on  9-14  2021

Year of Birth  1981  Last 4 digits of Driver License or ID Number ___

Email address: ___

Signature of Applicant for indigent status
Print Full Legal Name  Nathan Cawthon
Phone Number/s: 407-415-5529

- Approximately one year after opening his Voyager account, between April 19, 2022 and June 19, 2022, Mr. Robertson deposited approximately ▮▮▮▮ into his Voyager account.

- Mr. Robertson, who has a lengthy arrest record, now appears to have fled the jurisdiction for unspecified hand surgery in Illinois.

- Mr. Robertson should be required to appear to be deposed in person in Miami.

CONFIDENTIAL

brownrudnick

12

# In-Person Depositions Are Necessary (Continued)
## Plaintiff Sanford Gold's Credibility Issues

- Mr. Gold has a long history of serious financial fraud and has at least three federal convictions over three decades for significant financial criminal fraud.

- In his most recent financial fraud (Case No. 06-cr-20114-JEM-6), for which he was sentenced to 108 months' incarceration, Mr. Gold was a "loader" in what the Department of Justice deemed a "boiler room telemarket[ing] . . . scam" related to the fraudulent sale of internet kiosks.

  - Mr. Gold served as a "loader[]" in the scam, calling purchasers within a few days or weeks to solicit an additional investment, falsely claiming, for example, that another person had cancelled a large order of kiosks for sale at a discounted rate. Press Release, *Eleven Boiler Room Telemarketers Charged with Business Opportunity Scams*, U.S. Department of Justice (May 12, 2006).

- Mr. Gold was ordered to pay a total of *$18,027,118.78* in restitution to his victims. Press Release, *Pantheon Holdings*, U.S. Department of Justice (Dec. 21, 2006 update).

13

brownrudnick

# In-Person Depositions Are Necessary (Continued)

## Plaintiff Sanford Gold's Credibility Issues

■ Previously, Mr. Gold was convicted in *another* federal wire fraud scheme (Case No. 96-cr-00220-DLG-1), which defrauded businesses nationwide out of over $20 million over a 16-year period in what the Fort Lauderdale Sun-Sentinel described as "one of the country largest illegal telemarketing operations." Warren Richey, *5 Plead Guilty in Telemarketing Fraud*, South Florida Sun-Sentinel (Mar. 14, 1996).

• The fraudulent company, Sun Advertising, sold embossed pens and key chains to businesses.

• Salesman such as Mr. Gold falsely informed prospective customers that they had won a valuable prize, but to qualify for the prize they had to place a significant order for pens or key chains.

• Mr. Gold was sentenced to 36 months' imprisonment for his role in what the U.S. Attorney described as "the systematic fleecing of small businesses throughout the country." *Id.*

■ Finally, in the 1980s, Mr. Gold was convicted of *yet another* boiler room scheme related to the fraudulent sale of oil and gas leases. Case No. 83-00754-Cr-DAVIS.

■ Mr. Gold should be required to appear to be deposed in person in Miami.

brownrudnick

14

# In-Person Depositions Are Necessary (Continued)

Plaintiff Rachel Gold's Credibility Issues

■ Though Ms. Gold (the daughter of co-Plaintiff Sanford Gold) asserted that she opened Voyager accounts in reliance on Defendants' alleged statements, Plaintiffs' counsel has conceded that was false and asserted in a December 30, 2022 email that Ms. Gold *did not even open a Voyager account in her own name*.

• Instead, according to Plaintiffs' counsel, Ms. Gold's husband Eric Rare, opened a Voyager account after *he, but not Ms. Gold*, allegedly viewed the October 27, 2021 Press Conference.

■ Defendants' counsel is prepared to depose Ms. Gold at a local conference room in Coral Springs (where Defendants understand she lives) with only women in the room, or alternatively at her home to accommodate her needs. Defendants also believe that Mr. Rare can best can be deposed in Miami the day after Ms. Gold is deposed, given the relative proximity of his home to Miami.

brownrudnick

# In-Person Depositions Are Necessary (Continued)

Plaintiff Rachel Gold's Credibility Issues

- Ms. Gold's Voyager account was



Source: Rob-Voyager-00000006

CONFIDENTIAL

16

brownrudnick

# Plaintiffs' Document Production is Insufficient

- Though the Court ordered Plaintiffs to produce documents by December 22, 2022 (Hearing Tr. at 66:13-18), Plaintiffs waited until December 27, 2022 to make their production.

- Plaintiffs' allegedly reasonable reliance on Defendants' statements and conduct is extremely relevant.

  - Plaintiffs assert in the Amended Complaint that they relied on Mr. Cuban's statements in engaging in transactions on the Voyager platform (ECF 34 ¶¶ 7-9) and that Defendants either "actively assisted" (*id.* ¶ 106) or "personally participated or aided" (*id.* ¶ 127) in Voyager's allegedly unlawful sale of securities.

    - Defendants cannot have "actively assisted" or "personally participated" in transactions that occurred before the Mavericks' relationship with Voyager commenced.

  - There is no evidence that any of the Florida Plaintiffs sought or received the $100 bonus for opening an account after the Press Conference, further undercutting any claim of reliance.

  - All three Florida Plaintiffs assert claims for violations of New Jersey and Florida's fraud and consumer protection statutes.

- Accordingly, information as to the timing, quantity, and reasons of each Plaintiffs' specific trading history is relevant to the defense of these claims, as evidence that Plaintiffs invested and traded in the Voyager accounts either before the October 27, 2021 Press Conference or well after the Press Conference, and made entirely individual trading decisions having no connection to Defendants, weighs against any conceivable inference of reliance.

  - Similarly, documents relating to Plaintiffs' non-Voyager cryptocurrency and other investment accounts is relevant, as the existence of any such accounts increases the likelihood that Plaintiffs used Voyager's services for reasons unrelated to any alleged statements by Defendants. Plaintiffs also need to provide evidence of the source of funds for their accounts to confirm whether they invested their own, or someone else's, money or crypto.

brownrudnick

# Plaintiffs' Document Production is Insufficient

- Even taking into account Plaintiffs' last-minute supplemental production late last night, Plaintiffs have not produced detailed trade histories or provided information on the date they opened their Voyager accounts for all Plaintiffs.

- Instead, Plaintiffs primarily produced cell phone screenshots like this one, which provide only the day and month, but not year, for transactions.

- Even if the screenshots were sufficient, Plaintiffs failed to produce screenshots of all transactions.
  - For example, we have reason to believe that Mr. Robertson engaged in ██████ perhaps with a questionable source of funds, but did not produce all corresponding screenshots.

**Screenshot from a document produced by Mr. Robertson.**



Source: ROBERTSON_CUBAN_00027

CONFIDENTIAL

18

brownrudnick

# Issues of Third-Party Discovery Are Not Yet Ripe

■ Plaintiffs have noticed third-party depositions of Voyager CEO, Stephen Ehrlich, the New York-based law firm Sullivan & Cromwell, LLP, and former NFL player Robert Gronkowski.

■ While Defendants strongly doubt the relevance of either Sullivan & Cromwell's or Mr. Gronkowski's testimony, this issue is not yet ripe for the Court's consideration, as both third parties have yet to respond to their respective subpoenas.

● Sullivan & Cromwell has represented non-party FTX in matters completely unrelated to those relevant here.

● Plaintiffs' counsel has separate litigation pending relating to FTX, and it would be entirely inappropriate for Plaintiffs' counsel to use this proceeding as a fishing expedition for the separate, unrelated action.

● While Mr. Gronkowski had a business relationship with non-party Voyager, he has had no professional relationship with either Mr. Cuban or the Mavericks.

brownrudnick

# Defendants' Requests

Defendants request that the Court order that:

1. Mr. Cuban's February 2nd deposition is limited to jurisdictional issues, and time spent at the deposition counts towards the 7-hour time limit for depositions.

2. In-person depositions of the three Florida Plaintiffs and Ms. Gold's husband, Eric Rare, take place in Florida by January 13, 2023.

3. At least 24 hours prior a Plaintiff's deposition, and no later than January 13, 2023, Plaintiffs are to produce:

   a) Detailed trading (buy/sell) and funding (deposit/withdrawal) data for each Plaintiff, from the date Plaintiff opened an account to the present;

   b) Historical Voyager app portfolio balances;

   c) All crypto currency accounts, other than those on the Voyager Platform, including wallet addresses;

   d) All documents relating to any cases where any plaintiff has been either a plaintiff or defendant, including all civil cases and all criminal cases; and

   e) All documents relating to any financial advice any of the plaintiffs received, including any advice in connection with any transactions made within their Voyager accounts after such accounts were opened.

brownrudnick