UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-cv-22538-ALTMAN/Reid

PIERCE ROBERTSON, *et al.*, on behalf of
themselves and all others similarly situated,

     *Plaintiffs,*

  *v.*

MARK CUBAN, *et al.*,

     *Defendants.*

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTIONS FOR SANCTIONS UNDER SECTION 1927**

As will be explained in great detail below, neither of the two (2) (of the sixteen (16) currently named Plaintiff class representatives) that are being personally attacked by Mr. Cuban did *anything* wrong; in fact, they both agreed and provided Mr. Cuban's counsel with more than 9 hours of sworn deposition testimony, produced every requested document, including hundreds of pages of responsive discovery, and complied with every discovery requirement ordered by Magistrate Judge Reid.[1]

Accordingly, the Court **must ask two questions**: (1) why would Mr. Cuban so energetically and ferociously, personally attack these 2 plaintiffs and even threaten Plaintiffs' counsel with the unusual Section 1927 sanctions [ECF No. 124], and (2) why is the main relief sought by Mr. Cuban, simply to prevent Plaintiffs from being able to file (and eventually share with the public) their proposed Amended Complaint (within the specific time limit set by this Court), now that Messrs. Cuban and Ehrlich were finally compelled (by 2 different district courts) to produce discovery as well as sworn depositions under oath.

Ironically, only this Court is now in an extremely *unique position* to answer both questions. Plaintiffs already filed their proposed Amended Class Action Complaint. ECF No. 121-1, but Mr. Cuban strenuously demanded that the entire Complaint be kept *in secret and under seal at this stage,* so only this Court has reviewed all of the new and incriminating evidence Cuban and his Mavericks previously hid, but were compelled to finally produce by this Court. Mr. Cuban was forced to admit in his sworn video deposition that all he cared about in this Global deal was how much money he was personally going to receive. Once Plaintiffs are permitted to share the specific documents and testimony with the public, the full truth as to Mr. Cuban's motivations and incentives will finally be revealed.

Even after almost a year of discovery, Mr. Cuban has so far been successful in demanding all of his incriminating discovery be kept hidden. The sole reason is because his counsel marked *every single document* and *every page of his sworn deposition* with either a "Confidential" or "Highly Confidential" designation, undeniably and clearly violating the Confidentiality Order entered by Magistrate Judge Reid, [ECF No. 65]. It simply now cannot be disputed that in granting Defendants' proposed

---

[1] Mark Cuban was so nefarious that he allegedly conducted the required "Meet and Confer" by only having his Local Counsel, Paul Huck Jr. (who has always been very professional) contact Undersigned Counsel, just a few hours before filing this Motion, to say that his client was going to file a few Motions, and he "knew" we would not be agreeing, but he had to go through the necessary "meet and confer" steps. While that certainly does not meet the spirit and intent of our Meet and Confer Rules, Plaintiffs would rather focus on the actual merits of this case, rather than deal with such unprofessional tactics.

Confidentiality Order (over Plaintiffs' objection), Magistrate Judge Reid clearly and unequivocally cautioned the parties, not once *but twice*, specifically as follows:

> [Magistrate Judge Reid]: While I appreciate [Mr. Moskowitz's] concern regarding the over-designation issue, that is *one that can be addressed by Rule 37*. **That would be an abuse if the vast majority of the documents suddenly turned up as highly confidential**.

*See* Transcript of December 12, 2022 Discovery Hearing before Magistrate Judge Reid at 51:8–11 (emphasis added).

> [Magistrate Judge Reid]: **I would add to it that the concerns about over-designation could be remedied by objections to me, that you wouldn't have to write the objection, Mr. Moskowitz. You can simply contact my chambers and we can have an informal hearing, as we are having now, and that we can also attach sanctions, which are already provided for by Rule 37, in that case of over-designation.**

*Id.,* 53:9–15 (emphasis added). There can be no dispute that this Court made it perfectly clear that sanctions *would be issued* in this case, not based on false personal attacks on Plaintiffs and their counsel, but when and if a party intentionally abused the Confidentiality Order, by falsely marking every single page of testimony as "Highly Confidential" (including the question: Can I call you Mark? A: No, it's Mr. Cuban).

### WHAT COULD MARK CUBAN BE HIDING?

As predicted by Plaintiffs' Counsel, when Defendants began producing documents and giving testimony, there was *not a single document or statement without a confidential designation*—with the most damaging material, of course, being deemed "highly confidential." Essentially, Cuban has designated everything "Highly Confidential" that he believes, was in fact "Highly Harmful" for his case. Examples of just some of the specific evidence Plaintiffs uncovered illustrate why Defendants were willing to go to such great lengths, as to incur sanctions, despite Magistrate Judge Reid's clear admonition and warning for sanctions:[2]

- The Global Partnership was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

- Defendants worked with Voyager ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[2] Plaintiffs are required, pursuant to Paragraph 9 of the Protective Order, [ECF No. 65], *at this stage,* to redact and hide all of these points from the public filing but will seek leave to file this Response *NOT under seal,* as the Amended Complaint should not be kept under seal.



- Voyager, Cuban, and the Mavericks ███████████████████████████████████████████████████████████████████████████████████████████████

- Cuban was not at all concerned with ███████████████████████████████████████████████████████████████████████████████████████

- Voyager acceded to Mark Cuban's personal demands ███████████████████████████████████████████

- Because ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- **In just** █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- Mark Cuban ████████████████████████████████████████████████████████████████████████████████████████████████████

- Defendant Mark Cuban's ███████████████████████████████████████████████████████████████████████████████████████████████████████

---

[3] We know there are many other class members—including those in Florida—who purchased EPAs as a result of the Global Press Conference, but the MAVS100 code was only active for the first <u>48 hours</u> after the Global Press Conference. This means that even if only 10% of the Florida residents who successfully used the MAVS100 code sustained damages as a result, that's still over 500 class

███████████████████████████████████████████████████████████
███████████████████████████████████████████████

- Mark Cuban and his team have filed sworn affidavits in seeking to dismiss this case, stating that there is no connection between any of these claims and the state of Florida.

The undisputed fact is that Mark Cuban has finally realized that he cannot provide any defense, as to whether these Voyager accounts and tokens are "unregistered securities"—because they are. Further, Cuban has no defense as to whether he "promoted" these illegal products—because he proudly (internally, and to date secretly) told his team ███████████████████████████ Of course, he cannot allow his own specific quote to be revealed. Mr. Cuban's continued sworn representations to this Court (as Voyager's executives did previously to Chief Judge Altonaga, in unsuccessfully seeking to have those claims also dismissed for a lack of jurisdiction) are simply absurd in that for just one example, the compelled discovery confirmed over 5,000 Florida residents were victims of just Mr. Cuban's Mavericks promotions, including specifically Plaintiff Webb, who Mr. Cuban does not even mention in his Motion, referenced or personally attacked.

Now hidden under seal before the Court (not the public), is much uncovered discovery that directly contradicts Defendants' sworn testimony that Cuban and the Mavericks did not "direct any communications regarding Voyager to any resident of Florida." ECF No. 92 at ¶ 4. Moreover, Defendants were only forced to disclose these facts, only after many motions to compel, many discovery hearings and the Court granted those motions.

## MARK CUBAN'S FALSE ATTACKS ON JUST TWO PLAINTIFFS AND COUNSEL

So, what did Mark Cuban (and his dozens of lawyers) decide was his best strategy under these specific facts? It was to vociferously attack *just one* of the current *sixteen* Named Plaintiffs and even Plaintiffs' Counsel, and try his best to draw the Court's attention away from his (and the Mavericks') own culpability and forever keep all of this damning evidence from ever facing public scrutiny.

Stated no more directly and clearly, Ms. Gold and Mr. Robertson have always provided *nothing but* complete, accurate and truthful information to the Court and to Defendants, whether Mr. Cuban likes those answers or not. Defendants made both plaintiffs sit for full-day depositions (which were voluntarily and gratuitously attended by *over a dozen defense lawyers*) to merely

---

members from Florida from a two-day period, when the Global Press Conference was rebroadcast and accessible to the public for 251 days from initial broadcast until Voyager declared bankruptcy. To put a finer point on it, even 1% of those Florida class members sustaining damages would satisfy numerosity.

confirm the exact, same information that was already provided to Defendants' because the undisputed facts are that Plaintiffs' counsel had already voluntarily provided it to them. Moreover, Defendants very early on served Voyager with their own 3rd party subpoena, where they sought and were provided any and all of the specific individual facts and circumstances for each plaintiff and their Voyager investments, including both Ms. Gold and Mr. Robertson.

Looking past all of the personal attacks, Defendants' sanctions motion is actually a disguised dispute on a legal issue regarding two (2) Plaintiffs' claims. *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.,* No. 20-21630-Civ-SCOLA/TORRES, 2022 WL 1203562, at \*10–12 (S.D. Fla. Mar. 29, 2022). The ***real*** reason Defendants press forward with this baseless motion is because they know that without it, there is absolutely no basis to oppose Plaintiffs' request to amend the complaint, avoid Magistrate Judge Reid's soon-to-come sanctions. and to reveal to the world the real reason Mr. Cuban decided to proceed with this clearly illegal activity: Money.

Merely glancing at the Table of Contents for Defendants' Opposition to Plaintiffs' Motion for Leave makes clear that their entire Opposition hinges solely on bringing this false Motion with a straight face. *See* ECF No. 127 at 2 (the only arguments are that "The Motion Should be Denied For Bad Faith" or it "Should be Held in Abeyance Pending Resolution of the Motions [sic] for Sanctions"). Defendants' opposition does not even attempt to raise a "substantial reason" why this Amended Complaint should not be allowed, instead relying entirely on their farcical contention that this Motion—which conveniently ignores the ***three new Defendants*** and ***fifteen other Plaintiffs*** are also included in the proposed Amended Complaint, three of which are from Florida—should somehow result in dismissal of this entire class action. Simply put, Defendants are showing the Court that they will use ***any*** machination at their disposal, regardless how baseless, unethical and without merit, simply to keep these facts from ever seeing the light of day. The Court should not permit Mr. Cuban to hide his misconduct any longer. Defendants' woefully deficient Motion should be denied and the Court should put an end to this sideshow and allow litigation to finally proceed in the public forum in which it was brought.

## BRIEF BACKGROUND FACTS

### a.   The Voyager/Mavericks Litigation.

Defendants have taken every attempt to delay this litigation, filing numerous Motions to stay all discovery and to prevent any and all depositions (except for the few Plaintiffs' depositions, which they demanded). All of the Defendants' motions to stay discovery were denied by the Court. Plaintiffs initiated this proposed nationwide action on August 10, 2022, and quickly filed the first amended complaint two months later, on October 28, 2022 (namely to drop Mr. Ehrlich as a Defendant). *See* ECF Nos. 1, 34. Plaintiffs filed a motion to quickly certify a class of all individuals who were offered and/or sold Voyager Earn Program Accounts ("EPAs"). Plaintiffs alleged that these two Defendants marketed and promoted the EPAs, which are unregistered "securities" as defined by federal and state law, and, as has been found by the Securities and Exchange Commission and numerous state securities regulators. This litigation has been proceeding expeditiously and enough discovery was uncovered so that the parties could be ready for the February 2024 trial date.

On December 7, 2022, the Court entered its Order Setting Trial and Pre-Trial Schedule, giving Plaintiffs until January 24, 2023 to amend pleadings or join additional parties. ECF No. 58. The same day, the Court entered an Order extending the deadline for Plaintiffs to respond to Defendants' Motion to Dismiss, [ECF No. 41], to January 3, 2023. ECF No. 59. The Parties attended an extensive discovery hearing on December 20, 2023, where Magistrate Judge Reid made rulings regarding the Parties' discovery disputes, including compelling Defendants to finally produce all responsive documents (that they had been stonewalling for many months) and overruling Cuban's objections and requiring depositions both Defendant Mark Cuban and Mavericks executives personally involved in the Voyager/Mavericks Partnership at issue. Plaintiffs sought and were granted an extension of time until February 24, 2023 to "either respond to the Defendants' Motion to Dismiss [ECF No. 41] or file an Amended Complaint by February 24, 2023." *See* ECF No. 72.

### THE TRUE FACTS REGARDING THESE TWO PLAINTIFFS

Due to the failing health of a former Plaintiff, Sanford Gold,[4] Plaintiffs routinely sought leave to substitute and add additional class representative plaintiffs. ECF No. 80. The Court explained that "we've already held, *see* [ECF No. 72], that the Plaintiffs must … file a second amended complaint by February 24, 2023. If the Plaintiffs want to add additional putative class representatives, therefore,

---

[4] There is no doubt that Plaintiff Sanford Gold was an account holder who signed up with Voyager after the Cuban press conference and Defendants do not dispute he had standing to bring these specific claims.

they may do so by seeking leave to file a second amended complaint." *See* ECF No. 86. Plaintiffs have strictly followed the Court's directions.

Once this discovery was completed, and after Mr. Cuban and Mr. Ehrlich were finally deposed, the Parties sought two joint 30-day stays, so the Parties could explore other issues that were ***specifically explained to Chambers over the telephone***, which brought the February 24, 2023 deadline to April 24, 2023, and denied as moot the Defendants' pending Motion to Dismiss, [ECF No. 41] and Motion to Transfer Venue, [ECF No. 90]. *See* ECF Nos. 110, 112. With no pending motions and the case administratively closed pending the completion of the stay, on April 24, 2023, Plaintiffs sought leave to: (1) reopen the case; (2) file the Second Amended Complaint; and (3) file the Second Amended Complaint under seal. *See* ECF No. 113. After the Parties briefed that motion, the Court reopened the case and directed Plaintiffs to file the Motion under seal, attaching the proposed Second Amended Complaint as an exhibit, and to litigate the issue of unsealing before Magistrate Judge Reid. *See* ECF No. 117. The Motion to Amend is now pending before the Court and Plaintiffs respectfully request that it be granted and will work with Magistrate Judge Reid, to ensure that none of this important and incriminating non-confidential evidence continues to be kept secret and under seal. *See* ECF No. 121.

While Plaintiffs have been requesting to move this case extremely efficiently and expeditiously, it has been Defendants who have slowed down these proceedings. ***First,*** Defendants used their direct connections with bankrupt Voyager (via Voyager's CEO, Mr. Ehrlich) to arrange expedited production to them of all of the Plaintiffs' information (personal information, registration dates, Voyager trading histories, etc.).[5] These documents came within a few days of their request. Ironically, Defendants would not provide any of these documents to Plaintiffs directly, instead requiring Plaintiffs' counsel to go to Voyager (which they did). ***Second,*** Defendants demanded that all Plaintiffs appear live (not via Zoom) in Defendants' counsels' offices for depositions. Plaintiffs sought to accommodate all of Defendants' deposition requests, but asked that Plaintiff Rachel Gold, a mother who was still nursing her newborn child, be deposed in her home or via Zoom. Defendants refused and demanded that she appear for an in-person deposition "at Fowler White with only women in the

---

[5] This cooperation between Voyager, their former CEO and Mark Cuban is in stark contrast with Voyager's response when Plaintiffs served a 3rd party subpoena on Voyager to get the same type of information on Defendant Cuban's Voyager account and other Mavericks' representatives, including whether any illegal trades were performed. As demonstrated in the Second Amended Complaint, Plaintiffs still have serious questions about this information.

room." *See* Email from S. Wisner-Gross dated December 28, 2023 (attached as **Exhibit A**). This required an additional hearing before Magistrate Judge Reid in which the Court agreed with Plaintiffs and allowed the deposition to go forward in Ms. Gold's home.[6]

Once the depositions were finally scheduled, Defendants' counsel had numerous questions about the data and reached out to Undersigned Counsel on many occasions, for clarification on many issues informally. *See* Declaration of Howard Bushman dated May 23, 2023 (attached as **Exhibit B**). Plaintiffs' counsel made every attempt to answer each and every question Defendants raised prior to each of the depositions, to streamline the questioning. *Id* at ¶¶ 4–14. Indeed, there were *over a dozen calls and emails exchanged* between Plaintiffs' counsel (mainly Mr. Bushman) and Defendants' counsel regarding additional information that Defendants kept requesting prior to these Plaintiffs depositions.[7]

After compelling production of discovery from Mr. Cuban and his Mavericks, Plaintiffs agreed with Magistrate Judge Reid, that they would make available all of the requested Plaintiffs for depositions, as well as all of their responsive materials. The Parties in fact, coordinated and confirmed all of these specific facts, many times, as follows:

**Pierce Robertson:**

The Court ordered that Mr. Robertson's deposition may occur during the week of January 9, 2023 in Illinois. He is available on Thursday January 12, 2023, but if you would like some more time, or like time to review any and all of his materials, he is also available on January 26, 2023. Further, if you would like the deposition live in Miami, the week of February 6, 2023 works as well.

…

Further, we produced screen shots from the Voyager app last Thursday night which show the deposits made and the accounts those deposits came from. If those are not the screen shots Stephen was talking about at the hearing, please send me an exemplar of what you want and we will make every endeavor to obtain same and produce it immediately. We will also attempt to expedite his production so that you have the documents in advance of any deposition.

**Rachel Gold, Eric Rares, and Sanford Gold:**

---

[6] The Defendants tasked three in-person attorneys to attend (traveling in a luxury SUV), as well as 3 additional attorneys appearing by Zoom.

[7] For example, on January 9, 2023, Mr. Bushman sent an email outlining the current depositions and discovery process, Plaintiff willingly agreed to make available any and all named plaintiffs for deposition and expedited the production of their materials.

> The Court has ordered take Rachel Gold's deposition in her home live on January 23, 2023.
>
> As I stated at the hearing today, Ms. Gold created a family account with marital assets under her husband's name, Eric Rares. Ms. Gold ran the account with full authority. Sanford Gold signed up for an account after consultation with Rachel Gold, and Ms. Gold (as his authorized representative) ran Sanford's account with his permission.

*Id.* at ¶ 8. (Email from H. Bushman to S. Best dated January 9, 2023).

Leading up to these depositions, Plaintiffs' counsel even agreed to have an extensive phone call on Sunday afternoon, January 15, 2023 to further detail all of Ms. Gold's activities. *Id.* at ¶ 10. [8]

The proposed Amended Complaint, ¶¶ 66–68, details these exact allegations, confirmed by counsel ***prior to the deposition*** and even during the deposition by Ms. Gold herself:

66. Rachel Gold is a citizen and resident of Coral Springs, Florida. She is a natural person over the age of 21 and is otherwise *sui juris.*[9] While in Florida, Ms. Gold purchased, repurchased, invested, reinvested, deposited and/or transferred additional funds to her EPA after being exposed to some or all of the Voyager Promoters' misrepresentations and omissions regarding the Voyager Platform as detailed in this complaint, and executed trades on the Voyager Platform after those misrepresentations and omissions were made.

67. While in Coral Springs, Florida, on January 7, 2022, Ms. Gold, individually and as attorney-in-fact for her husband Eric Rare's, used marital funds to purchase an unregistered security from Voyager in the form of an EPA and funded the account with a sufficient amount of crypto assets to earn interest on her holdings. The Gold family account was opened in the name of Ms. Gold's husband Eric Rares. At all relevant times, Ms. Gold was authorized to open the family account in the name of her husband and make all purchases and deposits in the account. Ms. Gold further repurchased, reinvested, deposited, and/or transferred additional funds into her EPA throughout 2022, and earned interest on certain holdings, until Voyager collapsed.

68. Ms. Gold was exposed to some or all of the Voyager Promoters' misrepresentations and

---

[8] Many specific facts were again repeated and reiterated on that call, such as Ms. Gold attempted to sign up for Voyager in her own name, but those deposits did not go through. *Id.* Defendants were made aware that Ms. Gold then signed up for Voyager using marital monies and her husband's name. *Id.* These facts were ultimately confirmed in Ms. Gold's deposition and Defendants' counsel had ample opportunity to question Ms. Gold on all of these issues. *Id.*

[9] Despite moving to Tennessee in March 2023, the allegations concerning Ms. Gold's residency are accurate because citizenship of the parties is determined ***at the time the original complaint is filed*** and "any changes in a party's citizenship that occur after filing are irrelevant." *See Harris v. Garner*, 216 F.3d 970, 983 (11th Cir. 2000); *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) ("jurisdiction, once attached, is not impaired by a party's later change of domicile."). *Buechel v. Young Bock Shim*, 2012 WL 12905648, at *2 (M.D. Fla. Apr. 26, 2012) ("[j]urisdiction is unaffected by subsequent changes in the citizenship of the parties"); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (citizenship is determined at the time the complaint is filed); *Adderley v. Three Angels Broad. Network, Inc.,* 2019 WL 7189887, at *3 (S.D. Fla. Dec. 26, 2019) (same).

omissions regarding the Voyager Platform. For example, Ms. Gold, while in Coral Springs, Florida viewed the October 2021 press conference as detailed below. Ms. Gold was aware of the Mavs reward code but it was expired by the time she signed up for her family account. Also, while in her home in Coral Springs, Florida, she researched the Voyager platform and viewed statements from Cuban regarding Voyager's safety and that "USDC was a very wise, safe investment choice and that it was better than just leaving your money in the bank." It was "a very wealthy, successful man like Mark Cuban['s] endorse[ment]" of Voyager, and statements regarding its "risk-free" nature that put Ms. Gold "over the edge of actually really investing in Voyager." Ms. Gold "relied on the validity of [Cuban's] word that it was a safe platform that he himself was investing in." Cuban's and the Maverick's endorsement of the Voyager platform led Ms. Gold to purchase, repurchase, invest, reinvest, deposit, and/or transfer additional funds into her EPA, as well as keep the EPA open until Voyager's collapse.

*See* ECF No. 121-1 at ¶¶ 66–68.

As to the former Named Plaintiff, Mr. Pierce Robertson, defense counsel had similar questions regarding Mr. Robertson's trading history and withdrawals from the platform. *Id.* at ¶ 12. Defendants' counsel requested much additional information, including but not limited to his deposit transactions, and the amount of the final balance of his account on the date of the Voyager Bankruptcy. *Id.* Plaintiffs' counsel responded in less than twenty-four hours with all of the information. *Id.* Defense counsel also requested, more than once, that Plaintiffs' counsel confer with Mr. Robertson on certain issues and provide more information. *Id.* Mr. Bushman complied with each and every one of these requests (via email and cell phone). *Id.* All of the information provided to Defendants regarding Mr. Robertson was 100% accurate and confirmed at his in-person deposition.[10]

## THE ADDITIONAL PLAINTIFFS FROM FLORIDA AND OTHER STATES

A key fact that was certainly omitted from Cuban's baseless Motions for Sanctions, is that in addition to Ms. Gold, the second Amended Complaint contains claims from fifteen (15) additional Plaintiffs residing in eleven states. *See* ECF No. 121-1. Cuban has carefully reviewed the proposed Complaint, so they know all of the full details regarding each of these Florida Plaintiffs, but Cuban could not mention those facts because his main requested relief is simply to not allow the Second Amended Complaint to ever see the light of day. Three of these new Plaintiffs are from Florida.

For example, Florida Plaintiff Todd Webb, signed up to Voyager on October 30, 2021 after he was exposed to some or all of Defendants' misrepresentations and omissions regarding the Voyager Platform. *Id.* at ¶¶ 99-101. For example, while in Florida, Mr. Webb conducted research on

---

[10] Defendants' counsel staffed Mr. Robertson's deposition with four (4) in-person lawyers and two (2) in attendance by Zoom. Plaintiffs had one lawyer attend in person.

cryptocurrency, and as a fan of Mark Cuban, he became aware of and viewed the October 2021 press conference and signed up for a Voyager account. *Id.* Mr. Webb used the Mavs100 promotion code from the Mavericks when he made his initial purchase. *Id.* Cuban's endorsement of the Voyager platform caused Mr. Webb to purchase, repurchase, invest, reinvest, deposit, and/or transfer additional crypto into his EPA, as well as keep the EPA open until Voyager's collapse. *Id.*

Florida Plaintiff Dominik Karnas signed up for Voyager after watching "the October 2021 press conference with Cuban and the Mavericks, and reviewed articles as well as internet and social media postings regarding the partnership, which caused him to view Voyager as the safer, more reputable, and most risk-free crypto platform." *Id.* at ¶¶ 72-74. Mr. Karnas further repurchased, reinvested, deposited, and/or transferred additional funds into his EPA throughout the remainder of 2021 and 2022, and earned interest on certain holdings, until Voyager collapsed. *Id.*

Florida Plaintiff Anthony Shnayderman originally signed to Voyager on April 8, 2021. *Id.* at ¶¶105-107. Shnayderman was exposed to some or all of Defendants' misrepresentations and omissions regarding the Voyager Platform. *Id.* Mr. Shnayderman reviewed articles on the Internet as well as social media postings regarding Voyager's Partnerships with Defendants and Defendants' endorsements, which caused him to view Voyager as the safer, more reputable, and most risk-free crypto platform. *Id.* Defendants' endorsements of the Voyager Platform caused Mr. Shnayderman to purchase, repurchase, invest, reinvest, deposit, and/or transfer additional funds into his EPA, and to purchase, repurchase, invest, and/or reinvest in VGX Tokens as well as keep the EPA open and hold VGX tokens until Voyager's collapse. *Id.*

Additional Plaintiffs from Oklahoma, New Jersey, Tennessee, Louisiana, Georgia, Virginia, California, Pennsylvania, Massachusetts, and Connecticut have similar facts and circumstances as the Florida Plaintiffs and each will justify certifying the proposed classes.

## LEGAL ARGUMENT

### a. Defendants' threats for sanctions are not new and are baseless.

There is simply no factual basis here to even consider the unusual (and not often requested) Section 1927 sanctions. Under 28 U.S.C. § 1927, an "attorney . . . who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Macort v. Prem, Inc.*, 208 F. App'x 781, 785 (11th Cir. 2006) (internal quotations omitted; alterations in original). In the Eleventh Circuit, a district court must employ the following principles:

11

> [T]he statute sets out a three-prong, conjunctive test: (1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) a dollar amount of sanctions that bears a financial nexus to the excess proceedings.

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir.1997). All three requirements **must** be met before sanctions are imposed. *Id.* Because of the penal nature of § 1927, it is to be strictly construed. *Id.* at 1395; *Cole-Parmer Instrument Co., LLC v. Prof'l Labs., Inc.,* 2023 WL 2915810, at *3 (S.D. Fla. 2023).

It is illogical (at best) for Defendant Mr. Cuban, who has continuously complained to this Court that Plaintiffs are moving "too quickly" and request dates that are "too soon," to now argue (with a straight face) that Plaintiffs have been trying to delay this litigation. The Eleventh's Circuit's requirements have their own standards. The first requirement is satisfied "only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007) (citation omitted). In determining whether sanctions are appropriate under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *Cottingham v. Wal-Mart Stores E., LP.*, 2022 WL 329212, at *2 (S.D. Fla. Jan. 17, 2022). In fact, "an attorney's conduct must be particularly egregious to warrant the imposition of sanctions" because the "attorney must knowingly or recklessly pursue a frivolous claim." *Worldspan Marine Inc. v. Comerica Bank*, 2022 WL 16701245, at *6–7 (S.D. Fla. Oct. 15, 2022).

The second requirement is only satisfied when an attorney's conduct "results in proceedings which would not have been conducted otherwise." *Daniels v. Sodexo, Inc.*, 2013 WL 4008744, at *7 (M.D. Fla. Aug. 5, 2013) (citing *Peterson*, 124 F.3d at 1396); *see also, e.g., Skanska USA Civil West Cal. Dist. Inc. v. Nat'l Interstate Ins. Co.*, 551 F.Supp.3d 1010 (S.D. Cal. 2021) (declining to award Section 1927 sanctions where they did not "bear a financial nexus" to any "excess proceedings"). As for the final requirement, any sanction award must not be excessive in relation to the underlying misconduct. Section "1927 'is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Weinstock v. Storm Tight Windows, Inc.*, 2021 WL 3239460, at *6 (S.D. Fla. July 20, 2021).

b. **Filing a Complaint or Amended Complaints Does Not Violate Section 1927.**

Defendants (Mot. at 18–19) somehow argue that just the filing of a Complaint, (even with many other named plaintiffs) somehow triggers 28 U.S.C. § 1927, but the law on this is crystal clear in that "Section 1927 does not apply to the initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiple or prolong proceedings after the complaint is filed." *Worldspan Marine Inc. v. Comerica Bank,* 2022 WL 16701245, at *2 (S.D. Fla. Oct. 15, 2022); *Matter of Yagam*, 796 F.2d 1165, 1187 (9th Cir. 1986)). This would include applying Section 1927 to pre-litigation investigations, as § 1927 applies only to unnecessary filings after a lawsuit has begun in federal court.

12

*See Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006); *Wilson v. Deutsche Bank Nat'l Tr. Co.,* 2022 WL 1592624, at *3 (S.D. Fla. Apr. 12, 2022). Defendants certainly do not, and cannot, point to any unnecessary or vexatious filings in this case other than a reference to Plaintiffs' Complaint and/or the October 28, 2022 Amended Complaint (which did not have any substantive factual changes other than effecting the removal of former Defendant Ehrlich).

### c.   Defendants' Motion Merely Details Disputes on the Merits and Litigation.

The purpose of section 1927 sanctions is to deter costly meritless maneuvers, but certainly not to deter novel legal arguments or cases of first impression. *Suazo v. NCL (Bahamas), Ltd.,* 822 F.3d 543, 556 (11th Cir. 2016) (denying sanctions raising novel theory of recovery). Here, Defendants' motion for sanctions concerns issues the Court has yet to decide, but this Court has "peeked" at the merits of these claims, and denied Defendant Cuban's Motion to Stay all discovery.[11]

### d.   Plaintiffs' Counsel Has Worked to Move This Litigation Forward Efficiently

Defendants erroneously argue that although this Court has not ruled on the merits of any of Plaintiffs' claims, that these claims are still somehow "without merit" (because they say so), and pursuing any of those claims should subject Plaintiffs' Counsel to sanctions under § 1927. That proposition is preposterous and illogical.[12] All of the Named Plaintiffs, including both Plaintiff Gold and former Plaintiff Robertson, have always been forthright and honest in prosecuting these claims.

### 1.   Plaintiff Gold Provided All Truthful Testimony.

In the Amended Complaint, Plaintiff alleges that Ms. Gold "purchased an unregistered security from Voyager in the form of an EPA and funded the account with a sufficient amount of crypto assets

---

[11]      Defendants are also simple wrong on the facts. Defendants erroneously maintain that the only Plaintiffs that have standing are "only: (1) people who signed up to the Voyager platform after October 27, 2021, and (2) who solely relied on Mark Cuban. Further, Defendants state that Ms. Gold does not have standing because she signed up her account in her husband's name. Plaintiffs will address all of these erroneous contentions at the appropriate time as necessary, e.g. in a response to a motion to dismiss, and will show Defendants that Plaintiffs and class members have standing to bring these claims, and that Ms. Gold's facts are sufficient to provide standing for herself and *as an attorney-in-fact on behalf of her husband.* Ms. Gold is the attorney in fact for her husband, Mr. Rares, pursuant to a Durable Power of Attorney that Mr. Rares executed on December 30, 2019, appointing her as such. The POA grants Ms. Gold with "the full power and authority to exercise or perform all and any act, power, duty, right or obligation whatsoever that [Mr. Rares] has," For example, Defendants LAO argue that the word "purchase" must be only the initial signing up or payment for the Voyager unregistered security, by solely the account holder, and not any reinvestment or continued holding of the security qualifies. Again, this is a merits issue, as Plaintiffs disagree with Defendants' interpretation of the law. However, it is on this false factual basis Defendants somehow manufacture claims of "fraud" because some Plaintiffs, may or may not, fit into their constrained and narrow definitions.

to earn interest on her holdings." *See* Amend. Comp, No. 34, at ¶ 8.[13] This statement has always been truthful. As Defendants well know, "her husband's" Voyager account (Mot. at 13) was a Voyager account that was opened, funded, and managed by Ms. Gold. It was Ms. Gold who opened the account. *See* Gold Tr. 125:21–126:4 ("actually tried to go into the account I originally opened and change the name, but I couldn't do that, so I ended up just saying, Okay. Never mind. I'll just open a brand-new account and put Eric's e-mail address with all of Eric's information, and that's why the second account was opened"); 128:10–130:9 (discussing each step Ms. Gold took to open and register the account). It was also Ms. Gold who funded the account and managed it. *See* Gold Tr. 131:5–11 ("And did you put in the funds? Yes"); 181:16–17 ("I had control over [the account], which I funded"); *Id.* 140:11–12 ("Did you make this purchase? Yes").[14]

Incredibly and falsely, Defendants argue that "[a]t no point during her deposition did Ms. Gold state that she relied on Mr. Cuban" (Mot. at 14) even though her deposition transcript is riddled with voluminous testimony confirming her reliance specifically on Mark Cuban's statements in deciding to invest with Voyager. *See e.g.,* Gold Tr. 179:20–180:1 ("And after watching that conference and hearing that [Mark Cuban] himself invests in Voyager, I felt that it was a safe platform for crypto. At the time, I didn't know about different exchanges very well, and that's what brought me to feel comfortable purchasing crypto on the Voyager app."); 172:20-23 ("the statements from Mark Cuban [] allowed me to have a lot of trust in the Voyager platform").

To muddy the waters and argue the absurd, Defendants argue that Ms. Gold testified that she "*just* listen[ed] to [Mr. Keuning]" for investment advice including making purchases on Voyager (Mot. at 14). Once again, Defendants statements are again simply false. In fact, Defendants questioned Ms. Gold on this statement and Ms. Gold explained clearly what her statement meant. *See* Gold Tr. 154:2–6 ("And when you say, quote, I just listen to him, are you referring to [Mr. Keuning]? Yes, but it's not

---

[13] Defendants argue that the proposed Amended Complaint falsely alleges that Ms. Gold invested in VGX Tokens (Mot. at 20) *that is simply not true.* The proposed Amended Complaint states that Ms. Gold invested in an EPA "*and/or* purchased, repurchased, invested, *and/or* reinvested in VGX Tokens" (SAC 67).

[14] Similarly, Ms. Gold's allegations in the Complaint that she purchased the EPA and funded it after she was "exposed to some or all of Cuban's [] misrepresentations and omissions" about Voyager are equally truthful and honest. She testified no different at her deposition: "[W]hat led me to have the trust in the Voyager platform itself, what got me over the edge to feel confident in that, was Mr. Cuban's statements." Gold Tr. 192:6–9.

in the sense of I am only listening to him. It's, I'm listening to him on investments to make.").[15] Defendants have not, and cannot, point to a single statement or instance where Ms. Gold was dishonest or untruthful.

### 2.   Former Plaintiff Robertson Also Only Provided Accurate Information.

Defendants accuse Mr. Robertson of being untruthful because he said he recalled Mark Cuban discussing Voyager in an online video in April of 2021, and then signed up and deposited funds into his Voyager account. Robertson Tr. 108:14-19 and 278:8-14. Mr. Robertson also testified that he deposited funds after the October 27, 2021 press conference starring Defendant Cuban, and further, kept his account open "because of Mark Cuban being fully behind Voyager in his statements." *See Id.* 297:10-12. Mr. Robertson testified: "I invested everything I had. I was feeling like I could trust [Mark Cuban's] lead with that, and that's what I did." *Id.* 297:12-14. Defendants do not dispute that Mr. Robertson deposited funds and earned interest from his Voyager account after October 27, 2021.[16] Defendants dispute that Mark Cuban or the Mavericks ever spoke publicly about Voyager prior to the October 27, 2021 conference wherein he successfully promoted Voyager. This would have been a disputed factual issue at trial.[17]

### 3.   Defendants' Continued Threats of Sanctions.

Defendant Cuban's current threats of sanctions are certainly not new, but started immediately and have lasted for the duration of this case. From November 2022 through February 2023,

---

[15] Ms. Gold's decision to invest with Voyager ultimately came down to Defendants: "The reason that I chose the Voyager app to end up trading the cryptos that [Mr. Keuning] was telling me he was doing was because of Mark Cuban."). Gold Tr. 154:21–23; *see also id.* 160:14-19 ("[T]he exchange in which I purchased them on, which is the only reason I don't have access to those funds now, regardless if they went up or down, is from statements that Mark Cuban made, which gave me the assurance that it was a safe platform to invest on."); 155:17–19 ("I was only listening to Mark Cuban and taking what he said to purchase it on the Voyager platform.").

[16] Defendants continue to attempt to slander Mr. Robertson's reputation by referencing an unfortunate younger incident with certainly no conviction. One assumes that Mr. Cuban will also say the accusations against him by the Securities Exchange Commission of insider trading when he sold stock in a metasearch Internet company called Mamma.com in 2004 are also not relevant to these proceedings.

[17] Mr. Robertson is not proceeding as a Class Representative in part, because his continued participation as a representative was superfluous, given there are four other adequate and typical Florida resident representatives and sixteen (16) total proposed representative plaintiffs in the SAC. He may still be a member of the proposed Classes proposed in the SAC. See proposed Amended Complaint at ¶ 322.

Defendants admit that they made sanctions threats "at least eleven times" within a 3-month period (Mot. at 8–10). Of course, this Court has never found that Plaintiffs' claims are questionable.

Further, it is the Defendants who have multiplied these proceedings and driven up the costs of litigation by actively attempting to stonewall and prevent discovery, such as the depositions of former defendant Stephen Ehrlich (unsuccessfully seeking a last-minute protective order from the district court in Connecticut) and Mr. Mark Cuban. Despite representing to Magistrate Judge Reid that Defendants would negotiate in good faith relating to whether in person or Zoom deposition would be sufficient, Defendants refused to negotiate the issue at all and required in-person depositions in Chicago, Illinois, and Coral Springs, Florida. *See* Letter from C. Knight to Magistrate Judge Reid dated December 19, 2022 (attached as Exhibit C). In fact, Defendants had four (4) attorneys travel to Chicago for a single, in-person deposition of former proposed Plaintiff Representative Robertson, with an additional two (2) attorneys appearing via Zoom. As to Ms. Gold's deposition, three in-person attorneys attended, as well as three (3) attorneys appearing by phone. Plaintiffs were shocked at the over-staffing and over-billing of these two depositions.

## CONCLUSION

It is extremely unfortunate that Mark Cuban's Counsel decided to personally attack Plaintiffs, and even Undersigned Counsel, all in an attempt to prevent the truth from being revealed. Mr. Cuban proudly publicly touts that he utilized this "scorched earth" litigation against the SEC, when he was alleged to have utilized similar insider trading information. Such questionable tactics are unfortunate and an awful example of a lack of professionalism before this Court. The Court should not condone such tactics, and Plaintiffs respectfully request the Motion be denied and leave should be granted to file the proposed Amended Complaint. As instructed, the parties will then litigate the issue of what, if anything, of the Amended Complaint must be kept under seal before Magistrate Judge Reid.

Dated:  May 24, 2023                                          Respectfully submitted,

**By: /s/ Adam M. Moskowitz**                    **By: /s/ David Boies**
Adam M. Moskowitz                                      David Boies
Florida Bar No. 984280                                  (admitted *pro hac vice*)
adam@moskowitz-law.com                          Alexander Boies
Joseph M. Kaye                                            (admitted *pro hac vice*)
Florida Bar No. 117520                                  Brooke Alexander
joseph@moskowitz-law.com                        (admitted *pro hac vice*)
Barbara C. Lewis                                          **BOIES SCHILLER FLEXNER LLP**
barbara@moskowitz-law.com                       333 Main Street
Florida Bar No. 118114                                 Armonk, NY 10504
**THE MOSKOWITZ LAW FIRM, PLLC**       Phone: (914) 749–8200
2 Alhambra Plaza, Suite 601                         dboies@bsfllp.com
Coral Gables, FL 33134                                aboies@bsfllp.com
Telephone: (305) 740-1423                           balexander@bsfllp.com

*Co-Counsel for Plaintiffs and the Class*            Stephen Neal Zack
                                                                   Florida Bar No. 145215
                                                                   **BOIES SCHILLER FLEXNER LLP**
                                                                   100 SE 2nd St., Suite 2800
                                                                   Miami, FL 33131
                                                                   Office: 305-539-8400
                                                                   Fax: 305-539-1307
                                                                   szack@bsfllp.com

                                                                   *Co-Counsel for Plaintiffs and the Class*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed on May 24, 2023, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

                                              By: */s/  Adam M. Moskowitz*
                                                     ADAM M. MOSKOWITZ
                                                     Florida Bar No. 984280

17