**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No: 1:22-cv-22538 (Altman/Reid)**

PIERCE ROBERTSON, RACHEL GOLD, SANFORD GOLD, RAHIL SAYED, CHRISTOPHER EHRENTRAUT, TODD MANGANIELLO, DAN NEWSOM, WILLIAM AYER, ANTHONY DORN, DAMECO GATES, MARSHALL PETERS, and EDWIN GARRISON, on behalf of themselves and all others similarly situated,

    Plaintiffs,

    v.

MARK CUBAN, et al.

    Defendants.

**DEFENDANTS MARK CUBAN'S AND DALLAS BASKETBALL LIMITED'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR
SANCTIONS UNDER 28 U.S.C. § 1927**

Defendants Mark Cuban and Dallas Basketball Limited d/b/a Dallas Mavericks (the "Defendants") submit this Reply Memorandum of Law in Support of Defendants' Motion for Sanctions under 28 U.S.C. § 1927 ("Section 1927") (ECF No. 124, the "Motion") against Plaintiffs' counsel, Adam Moskowitz, Esq. and the Moskowitz Law Firm, PLLC.

## PRELIMINARY STATEMENT

Plaintiffs'[1] response to the Motion (ECF No. 129, the "Response") confirms that sanctions are clearly warranted. Plaintiffs fail to dispute any of the critical factual and legal bases for the Motion; indeed, the record clearly establishes that Plaintiffs engaged in "(1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) [that] a dollar amount of sanctions [ ] bears a financial nexus to the excess proceedings." *Macort v. Prem, Inc.*, 208 F. App'x 781, 785–86 (11th Cir. 2006). Plaintiffs' Response is not a response at all, but classic and complete misdirection, much of which does not merit any response.[2] Plaintiffs' unreasonable and vexatious conduct since the outset of this case is well documented; Plaintiffs knew when they initially filed their Complaint that their Florida clients had no viable claims.[3] The most basic pre-suit investigation would have quickly confirmed that named-plaintiff Rachel Gold never opened a Voyager account in her name and, therefore, never "purchased" the allegedly unregistered securities in question in her name. Such pre-suit investigation would also have easily confirmed that named-plaintiff Pierce Robertson lied, *inter alia*, (i) in alleging that he opened a Voyager account in reliance on Mr. Cuban's alleged public statements about Voyager months **before** Mr.

---

[1] For the purposes of the Response, "Plaintiffs" refers to Plaintiffs' counsel Adam Moskowitz, Esq. and the Moskowitz Law Firm, PLLC.

[2] Plaintiffs begin with an irrelevant and inaccurate discussion of sealing issues and of Plaintiffs' proposed Second Amended Complaint ("PSAC"), concealing their noncompliance with the Stipulated Protective Order's (ECF No. 65) procedures, repeatedly citing the number of lawyers representing Defendants (while ignoring the fact that more than eight attorneys currently represent Plaintiffs) (ECF No. 121), and improperly seeking to inject—as the bulk of their Response—a facially untimely Rule 15 reply, as Plaintiffs failed to comply with their May 22, 2023 reply brief deadline (*see* ECF No. 126). Plaintiffs even advance an unseemly attack on Defendants' local counsel, falsely claiming that he did not comply with meet and confer requirements, while as previously noted, it actually has been Plaintiffs who routinely have flouted the meet and confer requirements.

[3] While Defendants submit, as set forth in their Motion to Dismiss (ECF No. 41), that none of Plaintiff's claims are viable, the Florida Plaintiffs' claims in particular suffer from so many further dispositive infirmities, as set forth in the Motion, that prosecution of such claims warrants the sanctions requested in the Motion.

Cuban's first and only public comments about Voyager; (ii) in alleging that he suffered damages from his participation in the Voyager Earned Program Account ("EPA") Program, the program at the center of Plaintiffs' claims, as he earned approximately ▮ in profit; and (iii) in failing to disclose, as he conceded at his deposition, that he made all of his own trading decisions.

Plaintiffs utterly failed to investigate these most basic issues pre-suit, and thereafter in violation of Section 1927, refused to dismiss claims by Ms. Gold and Mr. Robertson (the "Florida Plaintiffs"), forcing Defendants to incur substantial costs that could have been avoided. Plaintiffs' unreasonable and vexatious conduct that is the subject of this Motion, involves the continued pursuit of the Florida Plaintiffs' objectively baseless claims, post-filing of the initial Complaint, until they were able to hopefully substitute in new proposed putative Florida plaintiffs to prolong this meritless action. Though Plaintiffs were put on actual notice no less than eleven times that none of their Florida-based clients had viable claims (*see* Motion, Factual Background § D), including at two hearings before Magistrate Judge Reid,[4] Plaintiffs in bad faith forged ahead with their claims. Attached as Exhibit 1 is an index of several instances where Plaintiffs were put on notice of the frivolous nature of the allegations before the Court. Notwithstanding Defendants' attempts to correct the record and numerous warnings to Plaintiffs, Plaintiffs made repeated bad-faith filings, causing Defendants to incur unnecessary expenses. Indeed, compelling evidence of Plaintiffs' tacit admission of bad faith is that two of the three Florida plaintiffs (Sanford Gold and Mr. Robertson) have voluntarily dismissed their claims against Defendants (or in Mr. Robertson's case, seek to have his claims against Defendants dismissed).[5]

---

[4] At the December 20, 2022 hearing before Magistrate Judge Reid, Defendants informed the Court and Plaintiffs that certain plaintiffs had serious standing and causation issues. *See* Motion at 8 (citing ECF No. 82-3, Dec. 20, 2022 Hearing Tr. at 30: 9-16, 35:9-10). Defendants addressed this issue in more detail during the January 6, 2023 hearing before Magistrate Judge Reid, explaining precisely why the Florida Plaintiffs both lacked standing and how they each had made false statements to the Court. *See* Motion at 9-10 (citing ECF No. 82-4, Jan. 6, 2023 Hearing Tr. at 13:13-14, 20:16-17, 24:4-6, 32:16-33:2, 36:1-10, 37:4-8, 41:24-42:1).

[5] Plaintiffs' frivolous argument that, prior to his dismissal, Mr. Gold (Ms. Gold's father) somehow offered them a jurisdictional lifeline is without merit. While Defendants did not depose Mr. Gold since he was dismissed as a plaintiff shortly before he was scheduled to be deposed, such voluntary dismissal occurred only after Defendants advised the Court that Mr. Gold had been convicted three times of major federal financial fraud, had served lengthy prison time, and Mr. Gold had been ordered to appear for a deposition. *See* ECF No. 128-10, Motion Ex. 10 at 13 (highlighting Mr. Gold's criminal history); ECF No. 77 (ordering that Mr. Gold appear and be deposed in Florida); ECF No. 88 (Mr. Gold's voluntary dismissal).

It is uncontradicted that Plaintiffs' unreasonable and vexatious conduct caused multiplication of these proceedings. As is now evident, Defendants deposed Ms. Gold and Mr. Robertson and had to file numerous applications to the Court due to Plaintiffs' bad-faith insistence that the Complaint contained factually accurate representations regarding, *inter alia*, the Florida Plaintiffs, when it did not. While Mr. Moskowitz now tries to excuse the enormous costs incurred by Defendants to expose and debunk the Florida Plaintiffs' fabricated allegations, claiming as his main excuse that he now has located other purported Florida plaintiffs, that does not absolve his sanctionable conduct with respect to Ms. Gold and Mr. Robertson, which is the focus of the Motion.[6] It is well-settled that without the Florida Plaintiffs, the Amended Complaint had to be dismissed for lack of personal jurisdiction as to all the remaining Plaintiffs, who were non-Florida residents, given that this District does not recognize pendent party jurisdiction.[7] The fact that Plaintiffs desperately needed Florida named-plaintiffs, however, was not grounds to have used the Florida Plaintiffs to allege fake claims that never should have been asserted. Plaintiffs engaged in objectively reckless conduct, forcing these proceedings to be multiplied, and causing Defendants to incur substantial costs defending against fabricated claims. Fake claims are fake claims, pure and simple, and should be subject to sanctions by the Court.

Defendants respectfully submit that there is no basis for the Florida Plaintiffs to have ever been part of the filed action; indeed, this lawsuit is frivolous and was filed in the utmost bad faith. Worse, Plaintiffs forged ahead despite repeated warnings as to the lack of any factual predicate to the claims. Defendants respectfully seek reimbursement, at a minimum, for all fees and costs incurred in investigating and defending Ms. Gold and Mr. Robertson's claims (including, *inter alia*, fees and costs incurred in deposing the Florida Plaintiffs and in preparing applications to the Court related to the Florida Plaintiffs' frivolous claims) after it became objectively clear that the

---

[6] On May 22, 2023, Defendants served a Rule 11 motion on Plaintiffs and Plaintiffs' counsel with respect to the frivolous factual and legal contentions in the PSAC. Under Rule 11, Plaintiffs have until June 12, 2023 to cure the Rule 11 deficiencies identified in the PSAC, and reserve all rights on such Rule 11 motion accordingly. If no cure occurs by June 12, 2023, Defendants will seek Rule 11 sanctions with respect to the PSAC.

[7] *See* Defendants' November 18, 2022 Motion to Dismiss (ECF No. 41) at 7-8 (noting that absent at least one Florida plaintiff, the remaining then-eight non-Florida plaintiffs, under controlling law, could not pursue any state law claims before this Court) (citing *Carter v. Ford Motor Co.*, No. 19-62646-CIV, 2021 WL 1165248, at *6 (S.D. Fla. Mar. 26, 2021) (no long-arm jurisdiction where "Plaintiffs all live outside of Florida" and conduct as to such plaintiffs occurred outside of Florida)).

continued pursuit of the Florida Plaintiffs' claims was frivolous, which Defendants submit was known to Plaintiffs' counsel pre-suit. Responding to Plaintiffs' repeated misrepresentations to the Court related to the Florida Plaintiffs and Plaintiffs' continued acts of bad faith have materially increased Defendants' legal costs. Further, sanctions in this instance are necessary to "deter" Plaintiffs—and future counsel acting in bad faith—from engaging in similar vexatious conduct. Imposing sanctions here will send a clear message to practitioners in this District that fabricating allegations and claims will not be tolerated.[8]

## ARGUMENT

I. **Plaintiffs' Counsel Have Engaged In Unreasonable and Vexatious Conduct—in Bad Faith—That Has Multiplied the Proceedings.**

As set forth in Defendants' Motion at 12, an attorney's conduct is unreasonable and vexatious where the attorney engages in "objectively reckless conduct" that supports a finding of bad faith. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007). Courts in this District have held that an attorney's *repeated instances of making misrepresentations to [the Court] . . . demonstrate [the attorney's] objective and subjective bad faith*," thus demonstrating unreasonable and vexatious conduct. *Goodman v. Tatton Enters., Inc.*, 2012 WL 12540024, at *31 (S.D. Fla. June 1, 2012), *report and recommendation adopted*, 2012 WL 12540103 (S.D. Fla. Aug. 14, 2012) (emphasis added); *see* Motion at 12 (citing cases). Further, Section 1927 sanctions are intended to deter an "attorney's similar activities in the future." *Goodman*, 2012 WL 12540024, at *32.

While Plaintiffs never had a Rule 11 basis to file the initial Complaint, it is their sanctionable conduct after filing the initial Complaint that is the basis for sanctions being awarded on the Motion. The Eleventh Circuit expressly forbids pursuing post-suit fictitious claims, such

---

[8] Plaintiffs' Response also addresses subjects regarding the PSAC that are utterly irrelevant to the Motion and contains a vicious, false *ad hominem* attack on Mr. Cuban, *e.g.*, (1) fabricating alleged facts in the PSAC regarding Mr. Cuban (which are addressed in Defendants' recently served Rule 11 motion), (2) publicly disclosing confidential material in violation of the Stipulated Protective Order (ECF No. 65), and (3) misstating unsealing procedures (which are not before this Court, and which must be raised with Magistrate Judge Reid). While confidentiality issues have no bearing on the Motion, Plaintiffs misstate the procedures for unsealing and de-designating under the operative Stipulated Protective Order. As Defendants' Rule 11 motion will demonstrate, if the Rule 11 violations are not cured, the PSAC is replete with other fabricated allegations; further, as Plaintiffs are well aware, *inter alia*, (i) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

as occurred here. As the Eleventh Circuit held in *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991), "filing a lawsuit is not a gratuitous license to conduct infinite forays in search of evidence. When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *See also id.* ("On this record, we have no difficulty in finding that these appellants unreasonably and vexatiously multiplied these proceedings."). Section 1927 sanctions are clearly warranted where, as here, the "attorney knowingly or recklessly pursue[s] a frivolous claim," *Coleman v. Oasis Outsourcing, Inc.*, 779 F. App'x 649, 653 (11th Cir. 2019). As Plaintiffs' own authorities confirm, Section 1927 sanctions are appropriate for conduct that "*prolongs proceedings after the complaint is filed.*" *Worldspan Marine Inc. v. Comerica Bank*, 2022 WL 16701245, at *2 (S.D. Fla. Oct. 15, 2022) (emphasis added), *report and recommendation adopted,* 2022 WL 16701618 (S.D. Fla. Nov. 3, 2022), cited in Response at 12. Here, it is undisputed that Plaintiffs' counsel have in bad faith *prolonged* the proceedings, at a minimum, as to Ms. Gold and Mr. Robertson.

Plaintiffs improperly pursued the Florida Plaintiffs' frivolous claims until they were able to find substitute, putative class members. Courts have rejected such "bait and switch" tactics in a variety of contexts, including to deny Rule 15 motions. *See Miller v. Mercedes–Benz USA*, 2009 WL 1393488, at *1 (C.D. Cal., May 15, 2009) (denying class certification and motion to substitute due to "inadequacy of the named class representatives," and noting "[t]he Court does not appreciate, or approve of, this bait-and-switch tactic."); *Hitt v. Arizona Beverage Co., LLC*, 2009 WL 4261192, at *6 (S.D. Cal. Nov. 24, 2009) (denying motion for leave to amend, where motion to dismiss was fully briefed and "granting the Motion to Amend would effectively moot the Plaintiff-specific work Defendants have done"); *see also Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *3 (C.D. Cal., Sept.10, 2009).

### A.  Plaintiffs' Counsel Acted—and Still Act—in Bad Faith with Respect to Ms. Gold.

Plaintiffs' Response regarding Ms. Gold misdirects in an attempt to fabricate a factual dispute, but does not address the core of Ms. Gold's deceptive conduct (that she was never a Voyager account holder), which Plaintiffs must have been aware of pre-suit, and at the latest, when directly confronted in late December, 2022. The question is not, as Plaintiffs would have it, whether Ms. Gold was partially truthful at her deposition when confronted with her lies, but rather, whether Plaintiffs engaged in unreasonable and vexatious conduct in bad faith that prolonged the proceedings. *See Amlong*, 500 F.3d at 1241. It is undisputed that even after confronted in late

December 2022 with records showing that Ms. Gold was never a Voyager account holder, Plaintiffs refused to drop her as a plaintiff, forcing Defendants to incur substantial legal costs investigating and debunking Ms. Gold's frivolous claims. *See* ECF No. 82-7, Dec. 30, 2022 Email from Adam Moskowitz at 8.[9] While Ms. Gold should never have been included as a named Plaintiff, had Plaintiffs simply dropped Ms. Gold as a plaintiff when these fatal facts were raised with Plaintiffs in late December, 2022, it would not have been necessary to fly to Florida to depose Ms. Gold, and other significant discovery expenses could have been avoided by Defendants.[10]

It is settled law, which is not disputed by Plaintiffs, that only a customer who has purchased an alleged security has standing to pursue an unregistered securities claim. *See* Motion at 15-17.[11] Here, Ms. Gold did not open a Voyager account in her own name, was never a Voyager customer, and never engaged in any transaction in an account in her name. That alone ends her claims. Nothing in the Response disputes that.

In any event, while Plaintiffs point to a purported recasting of Ms. Gold's false version of

---

[9] Plaintiffs do not dispute, in either their Response or in the Declaration submitted by Howard Bushman, that they knew by late December, 2022 that Ms. Gold was never a Voyager customer. Further, it is undisputed that Voyager does not recognize joint accounts; thus, since Ms. Gold did not personally hold a Voyager account, she lacked any standing to sue.

[10] Plaintiffs' argument, raised for the first time, that Ms. Gold's husband had signed a "Durable Power of Attorney" on December 30, 2019, Response at 13, n. 11, does not alter the outcome. First, Ms. Gold testified at her deposition that ████████████████████████ ████████████████████. *See* ECF No. 128-4, Motion, Ex. 4, R. Gold. Dep. Tr. at 52:11-15. Second, Plaintiffs belatedly produced cell phone pictures of a purported "Durable Power of Attorney" on **Friday, May 26, 2023** to support a contention that ████████████████ ██████████, **four months after Ms. Gold's deposition** and in flagrant violation of Magistrate Judge Reid's order that Ms. Gold produce all documents by late December 2022, well in advance of her deposition. *See* ECF No. 82-3, Dec. 20, 2022 Hearing Tr. at 66:13-18 (Court ordering production of Plaintiffs' documents by December 22, 2022). This flippant disregard of the Court's discovery order is yet another example of sanctionable conduct by Plaintiffs. In any event, the purported "Durable Power of Attorney" is completely irrelevant to whether Ms. Gold, herself, was a customer of Voyager—which she was not, and should be disregarded for purposes of the Motion.

[11] As previously noted by Defendants, it is Defendants' position that no unregistered securities are at issue here. *See* ECF No. 41, Motion to Dismiss at 24. While this issue need not be addressed on this Motion, Plaintiffs' underlying assumption—that Voyager's EPA program, or the VGX token were unregistered securities, and that Defendants "promoted" them—is erroneous. And as of the date of this filing, the SEC has not initiated action against Voyager or Mr. Ehrlich with respect to issues relating to offerings of unregistered securities, due in large part, upon information and belief, that the Voyager EPA program functioned akin to the stock loan model, ████████████████████████████████████████████████████████████████████████████.

**PAGE 6**

her story in the PSAC with new misstatements, they fail to cure the fundamental flaw in her claim (that she was never a Voyager customer), nor dispute that her story in the Amended Complaint was a complete lie.  Ms. Gold did not "purchase[] an unregistered security from Voyager" and "fund[] the account with a sufficient amount of crypto assets to earn interest on *her* holdings"[12] (ECF No. 34 ¶ 8) (emphasis added), and the nearly identical sworn statement in support of Plaintiffs' class certification motion is equally false (*see* ECF No. 40-2, R. Gold Decl. at ¶ 3). While Plaintiffs appear to have been well aware long before late December, 2022 that Ms. Gold lacked viable claims, as explained in Defendants' Motion, they certainly were aware at the latest by late December, 2022 that Magistrate Judge Reid had directed that Defendants would take Ms. Gold's deposition, and that all costs associated with that deposition could have been avoided had Plaintiffs dropped Ms. Gold's claims, or never pursued them in the first place, given her obvious lack of customer status.  *See* Exhibit 2, Decl. of Sigmund S. Wissner-Gross (noting Plaintiffs' counsel's late December, 2022 admission that Ms. Gold was not a Voyager account holder).

      **B.**    **Plaintiffs Acted in Bad Faith With Respect to Pierce Robertson.[13]**

Plaintiffs only half-heartedly respond regarding Mr. Robertson.  Mr. Robertson lied in the Amended Complaint, he lied in his sworn class action Declaration, and he lied at his deposition, taken at his request in Chicago, Illinois.  Motion at 7-8.  And worse, Plaintiffs knew about Mr. Robertson's bad acts from the beginning of the action.  Importantly, after Defendants discovered Mr. Robertson's serial lies through their own investigation and confronted Plaintiffs with Mr. Robertson's false claims in open court on January 6, 2023, Plaintiffs did not dismiss his claims, forcing Defendants to incur yet further expenses in preparing for and deposing Mr. Robertson.

At issue is whether Plaintiffs' conduct in advancing Mr. Robertson's serial perjury should be sanctioned, not as Plaintiffs would have it, whether Mr. Robertson's lies created hypothetical disputed issues of fact (they do not).  Here, it is clear that Plaintiffs engaged in unreasonable and

---

[12] Those statements were false, as Ms. Gold testified that she never opened a Voyager EPA in her own name (ECF No. 128-4, Motion Ex. 4, R. Gold Dep. Tr. at 67:3-5, 69-3-10), which according to Plaintiffs, constituted the alleged "purchase" of an unregistered security (*see* ECF No. 34 ¶ 130).  And contrary to her sworn statements, Ms. Gold never funded an account in her own name (ECF No. 128-4, Motion Ex. 4, R. Gold Dep. Tr. at 67:3-5), but instead premised her claims on alleged losses from her husband's Voyager account (*id.* at 69:7-10).

[13] Plaintiffs' discussion of the back and forth that preceded Ms. Gold and Mr. Robertson's depositions after they were ordered by Magistrate Judge Reid to appear and be deposed is irrelevant, as such unnecessary depositions never should have occurred, because Plaintiffs should have never included these two Plaintiffs as parties to the case.

vexatious conduct in bad faith, prolonging these proceedings regarding Mr. Robertson. *See Amlong*, 500 F.3d at 1241. As with Ms. Gold, Mr. Robertson was recklessly and improperly included as a plaintiff, and Plaintiffs should be sanctioned for the substantial legal expenses Defendants incurred to expose and debunk Mr. Robertson's multiple lies.

A central aspect of Mr. Robertson's lies was that he claimed, in the Amended Complaint, to have "purchased an unregistered security from Voyager in the form of an EPA" after allegedly being exposed to Defendants' "misrepresentations and omissions" regarding the EPA program. And, importantly, as a result, he "sustained damages" for which he alleged Defendants are liable. *See* ECF No. 34 ¶ 7. However, it is unassailable, and Plaintiffs must have known pre-suit, that Mr. Robertson was never harmed by Defendants' conduct. A basic pre-suit review of his trading records would have confirmed this as ████████████████████████████████████████████████████████████████████████████. *See* Motion at 6, Ex. 3 Rob-Voyager-00000016 at 1-3. When confronted by Defendants concerning Mr. Robertson's serious standing and causation issues, including around the time of the December 20, 2022 hearing before Magistrate Judge Reid, Plaintiffs improperly refused to drop Mr. Robertson as a plaintiff, unnecessarily prolonging the proceedings.

Further, Plaintiffs refused to drop Mr. Robertson's baseless claims long after they should have known that he could not possibly have opened his Voyager account in reliance on hearing Mr. Cuban speak about Voyager. Motion at 17 (citing ECF No. 34 ¶ 69). Though at the January 6, 2023 hearing, Defendants confronted Plaintiffs with the fact that Defendants' investigation revealed that the public record conclusively indicated that Mr. Cuban's first public remarks about Voyager occurred on October 27, 2021, Plaintiffs refused to back down and insisted on proceeding with Mr. Robertson's deposition, instead of simply dismissing him as a plaintiff, further multiplying the proceedings. At his deposition, Mr. Robertson[14] refused to admit to his serial lies

---

[14] Defendants repeatedly advised Plaintiffs that Mr. Robertson had been arrested no less than eight times (most recently on December 31, 2022), had apparently filed for two personal bankruptcies (under a different name), and had recently lied about his financial condition in at least two other Florida legal proceedings. *See Pierce Robertson v. Shawn Portocarrero*, 2021-CA-2237, Seminole County, Florida (9/14/2021) (Mr. Robertson filed for civil indigent status despite, at the time, having ████ in his Voyager account in September, 2021); *Pierce Robertson v. Dep't of Correction*, ECF No. 6, Case No. 21-CV-1538 (M.D. Fla.) (9/29/2021) (same). Bizarrely, in their Response, Plaintiffs ignore Mr. Robertson's prior legal problems and claim that Mr. Robertson's only prior misconduct was "an unfortunate younger incident" (Response at n.16).

when confronted with the fact that Mr. Cuban never publicly referenced Voyager prior to October 27, 2021 (five months *after* Mr. Robertson opened his Voyager account), and incredibly, perjuriously claimed that he ███████████████████████████████████ ████████████████████████████████████ ECF No. 128-5, Motion Ex. 5, Robertson Dep. Tr. at 108:14-16.  In short, everything that Mr. Robertson alleged in the Amended Complaint, stated in a sworn Declaration, and testified to at his deposition about the circumstances under which he opened a Voyager account was 100% false, which Plaintiffs knew long prior to such deposition.  Underscoring the sanctionable nature of Plaintiffs' position, rather than concede that Mr. Robertson had repeatedly lied, Plaintiffs now take the absurd and contrived position that they "dispute" that Defendants never "spoke publicly about Voyager prior to the October 27, 2021 conference."[15]  Response at 15.

### C.    Defendants Are Entitled to an Award of Attorneys' Fees and Costs.

Defendants seek reimbursement for all fees and costs incurred after it became objectively clear that continued pursuit of the Florida Plaintiffs' claims was frivolous, which Defendants submit was known to Plaintiffs' counsel pre-suit.  *See Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, 2022 WL 3568042, at *3-*4 (S.D. Fla. July 19, 2022) (awarding reasonable costs and attorneys' fees incurred after defendants filed their motion to dismiss, after which "[t]he fatal flaws in Plaintiff's case should have been apparent").  Plaintiffs were notified of the specific fatal flaws of Ms. Gold's claims no later than late December 2022, and the specific fatal flaws of Mr. Robertson's claims no later than January 6, 2023 in open court, well prior to their depositions. *See* ECF No. 128-10, Motion Ex. 10 (highlighting flaws and false statements).  Plaintiffs' continued pursuit of the Florida Plaintiffs' frivolous claims constitutes a "willful abuse of the judicial process" justifying Section 1927 sanctions.  *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993).  Plaintiffs' conduct increased costs on both the Court and Defendants, burdened the Court with unnecessary litigation and motion practice, and caused unnecessary delay.

---

[15] Plaintiffs' defense of Mr. Robertson otherwise is pure misdirection. They claim that the issue of whether Mr. Cuban or the Mavericks publicly spoke about Voyager prior to the October 27, 2021 Press Conference "would have been a disputed factual issue at trial."  Response at 15. In fact, such allegation by Mr. Robertson that he heard Mr. Cuban discussing Voyager in ███████ ████████████████ is pure fabrication.  Plaintiffs' ploy of fabricating alleged facts, and then claiming that this raises a disputed issue of fact is an elementary violation of Rule 11.  Given that Plaintiffs have elevated this tactic of pleading fabricated facts in the PSAC, Defendants have addressed this unprofessional tactic by Plaintiffs in their recently served Rule 11 motion.

Plaintiffs' reckless behavior demonstrates a blatant disregard for the principles of fairness, efficiency, and the expeditious administration of Court proceedings, and Plaintiffs owe the Court a duty to cooperate to best serve that end.  Thus, at a minimum, Defendants are entitled to recover all attorneys' fees and costs incurred after the fatal flaws of the Florida Plaintiffs' claims became objectively apparent.

**II.     The Balance of the Response Raises Irrelevant Issues, Misstates the Record, or Should Otherwise Be Disregarded.**

Defendants seek Section 1927 sanctions for Plaintiffs' vexatious conduct after the filing of the initial Complaint, as set forth herein and in the Motion.  Defendants urge the Court to disregard any colloquy in the Response beyond the specific discussion relating to the Florida Plaintiffs,[16] and in particular, disregard Plaintiffs' extensive deceptive colloquy regarding the PSAC, seeking to shift responsibility for their Section 1927 violations onto Mr. Cuban, and their desperate attempt to include in their Response false statements in the PSAC that are subject to either Defendants' opposition to Plaintiffs' Rule 15 motion or subject to the recently served Rule 11 motion, as utterly irrelevant to Defendants' Motion.

## CONCLUSION

Defendants respectfully request that the Court grant the Motion and award Defendants reasonable attorneys' fees and costs.

---

[16] Defendants note that any alleged facts as to the new proposed Plaintiffs are similarly irrelevant to the Motion, other than confirming that the Florida Plaintiffs were included as named plaintiffs as part of a classic bait and switch effort.  No discovery has been taken of the new proposed plaintiffs, and Plaintiffs' self-serving arguments as to when such new proposed plaintiffs opened their Voyager accounts and any other details as to them should be disregarded for purposes of determination of this Motion.

Respectfully submitted this 31st day of May 2023.

/s/ *Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:    (305) 789-9201

*-and-*

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@lawsonhuckgonzalez.com

LAWSON HUCK GONZALEZ, PLLC
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (850) 825-4334

*-and-*

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email:  sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email:  rwolkinson@brownrudnick.com

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
Telephone (202) 536-1755

*-and-*

SIGMUND WISSNER-GROSS, ESQ.
*Pro Hac Vice*
Email:  swissner-gross@brownrudnick.com

JESSICA N. MEYERS, ESQ.
*Pro Hac Vice*
Email:  jmeyers@brownrudnick.com

BROWN RUDNICK LLP
Seven Times Square
New York, NY  11036
Telephone:  (212) 209-4930

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 31, 2023, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                */s/ Christopher E. Knight*
                CHRISTOPHER E. KNIGHT, ESQ.
                Fla. Bar No. 607363
                Email: cknight@fowler-white.com

**SERVICE LIST**

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>Joseph M. Kaye, Esq.<br>Barbara C. Lewis, Esq.<br>Howard M. Bushman, Esq.<br>The Moskowitz Law Firm, PLLC<br>2 Alhambra Plaza, Suite 601<br>Coral Gables, Florida 33134<br>E-mail: adam@moskowitz-law.com<br>Email: joseph@moskowitz-law.com<br>Email: barbara@moskowitz-law.com<br>Email: howard@moskowitz-law.com<br><br>*Counsel for Plaintiffs and the Proposed Classes*<br><br>**VIA CM/ECF** | Stephen Neal Zack, Esq.<br>szack@bsfllp.com<br>Hon. Ursula Ungaro (Retired), Esq.<br>uungaro@bsfllp.com<br>Tyler E. Ulrich, Esq.<br>tulrich@bsfllp.com<br>Boies Schiller Flexner LLP<br>100 S.E. 2nd St., Suite 2800<br>Miami, FL 33131<br><br>*Co-Counsel for Plaintiffs and the Proposed Classes*<br><br>**VIA CM/ECF** |
| David Boies, Esq.<br>*Pro Hac Vice*<br>Boies Schiller Flexner LLP<br>333 Main Street<br>Armonk, NY 10504<br>Email:  dboies@bsfllp.com<br><br>*Co-Counsel for Plaintiffs and the Proposed Classes*<br><br>**VIA CM/ECF** | Jose M. Ferrer, Esq.<br>Mark Migdal & Hayden<br>80 S.W. 8th Street, Suite 1999<br>Miami, FL 33130<br>Email: jose@markmigdal.com<br><br>*Co-Counsel for Plaintiffs and the Proposed Classes*<br><br>**VIA CM/ECF** |