**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No: 1:22-cv-22538 (Altman/Reid)**

PIERCE ROBERTSON, RACHEL GOLD,
SANFORD GOLD, RAHIL SAYED,
CHRISTOPHER EHRENTRAUT, TODD
MANGANIELLO, DAN NEWSOM, WILLIAM
AYER, ANTHONY DORN, DAMECO GATES,
MARSHALL PETERS, and EDWIN GARRISON,
on behalf of themselves and all others similarly
situated,

       Plaintiffs,

       v.

MARK CUBAN, et al.

       Defendants.

**DEFENDANTS MARK CUBAN'S AND DALLAS BASKETBALL LIMITED'S**
**MOTION FOR SANCTIONS UNDER RULE 11 AND MEMORANDUM OF LAW IN**
**SUPPORT THEREOF**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

LEGAL STANDARD.........................................................................................................4

ARGUMENT.....................................................................................................................6

I.     There is No Rule 11 Basis for the Assertion that Mr. Cuban and Voyager Had Any Legal Relationship. ......................................................................................6

II.    Plaintiffs Lack a Rule 11 Basis for their Assertion that the Mavericks and Voyager Are Legal Partners...............................................................................7

III.   Ms. Gold's Claims Are Factually and Legally Frivolous. ........................................9

      A.    Plaintiff Rachel Gold falsely stated that she was a Voyager account holder. .........................................................................................................9

      B.    Ms. Gold falsely stated that she relied on Mr. Cuban in opening her husband's account.................................................................................... 10

      C.    Ms. Gold's Allegations in the PSAC Remain Essentially Unchanged..... 11

      D.    Ms. Gold's claims are legally frivolous, as only purchasers may bring unregistered securities claims. .................................................................. 13

IV.   The PSAC Adds New Material Misstatements..................................................14

      A.    ██████████████████████████████████████ ) .................... 14

      B.    ████████████████████.................................................. 15

      C.    ███████████████████████........... 16

      D.    ████████████████████████......... 16

          1.    ████████████████████████.............................. 17

          2.    ███████████████.................................... 17

V.    Plaintiffs and Counsel Knew or Should Have Known About the Factual and Legal Issues with their Claims...................................................................................18

      A.    Counsel Failed to Conduct a Reasonable Investigation............................ 18

          B.      Plaintiffs' Counsel Continued to Pursue Frivolous Claims After Defendants Repeatedly Alerted Plaintiffs' Counsel of the Claims' Factual and Legal Deficiencies................................................................................ 19

          C.      Counsel Should Have Known that the PSAC Includes Additional Misstatements. ......................................................................................... 19

VI.    The Court Should Award the Sanction of Attorneys' Fees. ..................................20

**CONCLUSION** ........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Applebaum v. Fabian*,
  2020 WL 6375706 (D.N.J. Oct. 30, 2020), *aff'd*, 2021 WL 1382331 (D.N.J.
  Apr. 13, 2021) ...................................................................................................................13

*Asset Prot. Plans, Inc. v. Oppenheimer & Co.*,
  2011 WL 2533839 (M.D. Fla. June 27, 2011) ..........................................................14

*Baker v. Alderman*,
  158 F.3d 516 (11th Cir. 1998) .........................................................................................5

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ........................................................................................................13

*Buehler v. LTI Int'l, Inc.*,
  762 So. 2d 530 (Fla. Dist. Ct. App. 2000) ...............................................................14

*Davidson v. Belcor, Inc.*,
  933 F.2d 603 (7th Cir. 1991) .........................................................................................13

*Day v. USAA Cas. Ins. Co.*,
  2020 WL 10054394 (W.D. Tex. Dec. 1, 2020) ...................................................5 n.8

*Dreyfuss v. Dreyfuss*,
  701 So. 2d 437 (Fla. 3d DCA 1997) ..............................................................................8

*Fernau v. Enchante Beauty Prod., Inc.*,
  2020 WL 5587244 (S.D. Fla. Sept. 18, 2020) ..............................................................5

*Gulisano v. Burlington, Inc.*,
  34 F.4th 935 (11th Cir. 2022) .......................................................................................18

*Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tennessee*,
  952 F. Supp. 2d 1373 (N.D. Ga. 2013) ......................................................................20

*Johnson v. 27th Ave. Caraf, Inc.*,
  9 F.4th 1300 (11th Cir. 2021) .......................................................................................20

*Kaho'okaulana v. U.S. Bank Tr., N.A.*,
  2022 WL 561904 (D. Haw. Feb. 24, 2022) .......................................................5 n.8

*Meide v. Pulse Evolution Corp.*,
  2021 WL 4459653 (M.D. Fla. Sept. 29, 2021) .........................................................18

*Nelson v. Wexford Healthcare Providers*,
　2019 WL 3946092 (S.D. Ill. Aug. 21, 2019) ...................................................5 n.8

*Porter v. Porter*,
　821 So. 2d 663 (La. Ct. App. 2002) ..............................................................8 n.11

*Reid v. Madison*,
　438 F. Supp. 332 (E.D. Va. 1977) ........................................................................13

*Trump v. Clinton*,
　2022 WL 16848187 (S.D. Fla. Nov. 10, 2022)..................................................5, 7

*Turner v. Sungard Business Systems, Inc.*,
　91 F.3d 1418 (11th Cir. 1996) ......................................................................... 19-20

*Walther v. McIntosh*,
　572 F. App'x 881 (11th Cir. 2014) .........................................................................5

*Williams v. Obstfeld*,
　314 F.3d 1270 (11th Cir. 2002) ..............................................................................8

*Worldwide Primates, Inc. v. McGreal*,
　87 F.3d 1252 (11th Cir. 1996) ................................................................................5

**Statutes**

15 U.S.C. § 78j............................................................................................. 13, 17-8

Fla. Stat. § 517.211 .............................................................................. 7-8, 13, 18

Fla. Stat. §§ 709.2102, 709.2103, 709.2105(2), 709.2106(1) ......................................12

**Other Authorities**

Fed. R. Civ. P. 11 ............................................................................... *passim*

Defendants Mark Cuban and Dallas Basketball Limited d/b/a Dallas Mavericks (the "Defendants") submit this Motion for Sanctions under Federal Rule of Civil Procedure 11 ("Rule 11") and Memorandum of Law (the "Rule 11 Motion").[1]

## INTRODUCTION

The basic and time-honored requirement of Rule 11 that a party and counsel have a good-faith basis for advancing "claims" and "factual contentions" has been egregiously flouted by Plaintiffs and their counsel in their proposed Second Amended Complaint (ECF No. 121-1, the "PSAC"). Plaintiffs' counsel have willfully disregarded their duty to properly investigate claims and not advance objectively frivolous claims and fabricated contentions contradicted by the record, including for claims that require pleading with particularity. Plaintiffs and their counsel did not comply with their Rule 11 obligations here. Regrettably, after already amending their complaint and having been repeatedly notified of the lack of a good-faith basis to assert claims against Defendants, Plaintiffs' counsel have failed to correct the pleadings as outlined below. Most concerning, when confronted with specific misstatements and incorrect legal arguments, Plaintiffs' counsel did nothing and instead blindly forged ahead, clearly evidencing no regard for their own professional obligations to this Court or the Court's supervisory powers.[2] Only through costly discovery can Defendants now evidence to the Court an uncontradicted record of the repeated bad-faith assertions made by Plaintiffs. Specifically, not only is there no factual basis for the key assertions and a lack of legal support for claims, the sworn testimony and documentary evidence elicited in discovery in this case confirms that Plaintiffs' core assertions are completely false. The record evidence contradicts Plaintiffs' allegations, including as follows:[3]

- Mark Cuban is not, and never has been, a proper party to this action. The uncontradicted evidence adduced through document discovery and depositions taken

---

[1] Defendants have separately moved for sanctions against certain of Plaintiffs' counsel under 28 U.S.C. § 1927 (the "Section 1927 Motion"), based on similar underlying conduct, which "unreasonably or vexatiously" multiplied the proceedings in this action. ECF No. 124.

[2] As summarized in the Section 1927 Motion, Defendants provided Plaintiffs' counsel with at least eleven separate Rule 11 warnings, plus have provided Plaintiffs' counsel with multiple further similar admonitions since this action was commenced.

[3] As set forth in Defendants' pending Section 1927 Motion, commencing no later than November 2022, Defendants repeatedly warned Plaintiffs' counsel that the factual allegations made in the Amended Complaint were replete with objectively false contentions, including with respect to Rachel Gold and Pierce Robertson. *See* ECF No. 124, Factual Background at 8-10, 17-18.

of Dallas Mavericks ("Mavericks") personnel, Mr. Cuban, and Stephen Ehrlich (the CEO of Voyager and a signatory (on behalf of Voyager) to the Sponsorship Agreement), is that Mr. Cuban (i) was not a party to the Sponsorship Agreement, (ii) was never a legal partner or agent of Voyager, (iii) never acted, in any way, to promote Voyager in his personal capacity, and (iv) never received any compensation or benefit from Voyager in his personal capacity;

- The Mavericks also were never a legal partner or agent of Voyager.  The contractual relationship was defined solely by the Sponsorship Agreement which clearly and unequivocally stated that the Mavericks were *not* a partner or agent of Voyager. Moreover, the evidence is clear the Mavericks solely acted in accord with the contract; and

- Rachel Gold, still a named plaintiff, is not and has never been an account holder of Voyager and admitted in a text exchange that she learned about the Voyager platform and subsequently invested based on advice of a friend, not, as she falsely represented under oath and penalty of perjury, through watching a previously recorded broadcast of Mr. Cuban.

Significant expenses have been incurred by Mr. Cuban and the Mavericks defending against allegations and claims that are facially violative of Rule 11.  Had Plaintiffs' counsel honored their duty to this Court by not advancing objectively false factual allegations and claims non-compliant with Rule 11, or by conducting a reasonable investigation of their claims (which they did not do), such significant unnecessary costs would not have been incurred.  The flippant disregard by Plaintiffs' counsel of repeated Rule 11 warnings caused such unnecessary costs to be increased and exacerbated the Rule 11 violation.  Now, before this Court, the PSAC includes new false statements and demands Mr. Cuban and the Mavericks to again incur unnecessary costs defending against objectively false factual contentions and frivolous claims knowingly brought by Plaintiffs' counsel in bad faith.  The dereliction of duties to this Court must stop now.  Respectfully, sanctions are warranted and indeed mandated.

## FACTUAL BACKGROUND

For brevity's sake, and to avoid unnecessarily duplicative briefing, Defendants provide a brief summary of the relevant factual background and refer the Court to the Factual Background of Defendants' Section 1927 Motion for a more complete summary of the record to-date.  *See* ECF

No. 124 at 3-12.

For further context, Plaintiffs' Amended Complaint asserts meritless claims under various states' securities and consumer protection laws (ECF No. 34 ¶¶ 115-32), which were the subject of Defendants' Motion to Dismiss (ECF No. 41).  In the PSAC, ███████████████████████ ███████████████████████████████████████.  PSAC Counts 21-24.  Plaintiffs premise their state securities law claims on the incorrect assumption that the opening and funding of Voyager Earn Program Accounts ("EPA") constituted purchases of unregistered securities from Voyager.[4] To support her claims, Ms. Gold alleges in the Amended Complaint, in boilerplate fashion, that she:

> ***purchased an unregistered security*** from Voyager in the form of an EPA and funded the account with a ***sufficient amount of crypto assets to earn interest*** on her holdings. Plaintiff Ms. Gold did so ***after being exposed*** to some or all of Cuban's and Ehrlich's misrepresentations and omissions regarding the Deceptive Voyager Platform as detailed in this complaint, and executed trades on the Deceptive Voyager Platform ***in reliance on those misrepresentations and omissions***. As a result, Plaintiff Ms. Gold has sustained damages for which Cuban and Ehrlich are liable.[5]

ECF No. 34 ¶ 8 (emphasis added).  Ms. Gold makes an identical boilerplate allegation in the original Complaint (ECF No. 1 ¶ 35) and a similar allegation in Plaintiffs' premature class certification motion.  *See* ECF No. 40-2 Declaration of Rachel Gold in Support of Plaintiffs' Motion to Certify Nationwide Issue Class ("R. Gold Decl.") at ¶ 3.

Plaintiffs' state securities claims, as alleged in the Amended Complaint (and in the PSAC), are also premised on the flawed assertion that Mr. Cuban and the Mavericks are either legal partners or agents of Voyager.  *See, e.g.*, ECF No. 34 ¶ 131.  In Defendants' Motion to Dismiss, Defendants cited conclusive caselaw refuting both arguments, and argued, *inter alia*, that Defendants were not subject to personal jurisdiction in this District.  ECF No. 41 at 17-19.

The Court granted Plaintiffs limited jurisdictional discovery to contest Defendants' personal jurisdiction defense.  ECF No. 45.  That discovery confirmed that Defendants lack any claim-related contacts to Florida and exposed numerous false statements in Plaintiffs' original and

---

[4] Defendants dispute that any opening or funding of the EPAs constitutes the purchase of a security, but this issue need not be addressed for purposes of the Rule 11 Motion, as Plaintiffs' claims are frivolous without needing to reach the unregistered security issue.

[5] While Plaintiffs had dropped Mr. Ehrlich as a named defendant with prejudice in the Amended Complaint, Plaintiffs strangely still alleged that Mr. Ehrlich was liable to Ms. Gold.

amended pleadings, as, *inter alia*, Plaintiff Pierce Robertson falsely stated that he relied on Mr. Cuban in deciding to open his Voyager account and Ms. Gold never herself opened a Voyager account.  *See* ECF No. 124, Factual Background § C.[6]  After Defendants repeatedly alerted Plaintiffs of the legal and factual deficiencies in their filings with this Court (*see* ECF No. 124, Factual Background § D), Defendants served Plaintiffs with a Rule 11 motion (which was not filed, pursuant to Rule 11(c)).[7]  Without formally responding to this Rule 11 motion, Plaintiffs provided a draft second amended complaint, which proposed dropping the claims of Mr. Robertson, but continued to assert Rule 11-violative claims on behalf of Ms. Gold and added new fabricated factual contentions, among other frivolous additions.  Though Defendants alerted Plaintiffs of the Rule 11 issues with this new proposed complaint, on May 9, 2023, Plaintiffs filed a motion for leave to amend and filed the PSAC under seal.  ECF Nos. 121, 121-1.  The PSAC modifies, but does not correct, Ms. Gold's false allegations.  PSAC ¶¶ 66, 93.  Plaintiffs also continue to falsely assert in the PSAC, *inter alia*, that Defendants are legal partners of Voyager (though discovery confirmed this was not the case), and the PSAC, in an effort to weave a made-up narrative, contains a variety of new, fabricated alleged "facts" already confirmed by discovery not to be accurate.

## LEGAL STANDARD

Defendants seek sanctions under Rule 11(b)(2) and (3) because, in the PSAC, Plaintiffs assert factual contentions contradicted by discovery taken and claims with no legal basis.  Rule 11 provides that all "pleading[s], written motion[s], or other paper[s]—whether by signing, filing, submitting or later advocating for it" must be certified by an attorney "to the best of the person's knowledge, information, and belief, ***formed after an inquiry reasonable under the circumstances***" that:

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[6] Defendants have only been afforded the opportunity to depose Ms. Gold and Mr. Robertson.  Defendants believe that the other Plaintiffs similarly have advanced frivolous claims and reserve all rights in such regard to seek Rule 11 sanctions as to their factual allegations as well.

[7] Defendants did not file their first Rule 11 motion because, by dropping Mr. Robertson's claims, Plaintiffs partially corrected some of the Amended Complaint's frivolous allegations that were the subject of the first Rule 11 motion.

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Civ. P. 11(b) (emphasis added). "The Eleventh Circuit requires a 'two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware they were frivolous.'" *Trump v. Clinton*, 2022 WL 16848187, at *2 (S.D. Fla. Nov. 10, 2022) (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). As here, "Rule 11 sanctions are properly assessed (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Id.* (citing *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001)).[8]

"A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis." *Fernau v. Enchante Beauty Prod., Inc.*, 2020 WL 5587244, at *2 (S.D. Fla. Sept. 18, 2020). In other words, Rule 11 "imposes an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and the applicable standard is one of reasonableness under the circumstances." *Walther v. McIntosh*, 572 F. App'x 881, 883 (11th Cir. 2014) (quotation marks omitted). If the attorney failed to make a reasonable inquiry, then "the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). Moreover, a "deliberate indifference to obvious facts " is grounds for sanctions. *Baker*, 158 F.3d at 524. Where, as here, Plaintiffs have had an opportunity to take evidentiary discovery, advancing

---

[8] Plaintiffs' PSAC is subject to the requirements of Rule 11, even though the Court has not ruled on the merits of Plaintiffs' request for leave to amend (ECF No. 124). Rule 11 applies to all "pleading[s], written motion[s], or other paper[s]" filed with the Court, including the PSAC. Fed. R. Civ. P. 11(b). It is well-established that "by presenting a proposed Amended Complaint to the court, [plaintiffs] are certifying under Rule11(b) of the Federal Rules of Civil Procedure that it is not being presented for an improper purpose and that the claims therein are not frivolous and will be supported by facts." *Kaho'okalani v. U.S. Bank Tr., N.A.*, 2022 WL 561904, at *3 (D. Haw. Feb. 24, 2022); *see also Day v. USAA Cas. Ins. Co.*, 2020 WL 10054394, at *6 (W.D. Tex. Dec. 1, 2020) ("Plaintiff has violated Rule 11(b)(1), (b)(2) and(b)(3) in . . . his Proposed Complaint (Dkt. # 1-1) . . . by making two unsubstantiated allegations that appear intended only to harass"); *Nelson v. Wexford Healthcare Providers*, 2019 WL 3946092, at *3 (S.D. Ill. Aug. 21, 2019) ("Plaintiffs are WARNED that . . . proposed amended complaints . . . that do not comply with [Rule 11(a)' signature] requirement will be stricken pursuant to Rule11(a).").

frivolous factual contentions contradicted by the discovery taken is a particularly acute violation of Rule 11.

## ARGUMENT

**I.      There is No Rule 11 Basis for the Assertion that Mr. Cuban and Voyager Had Any Legal Relationship.**

Mr. Cuban and Voyager never had any legal relationship.  The Sponsorship Agreement, produced to Plaintiffs during discovery and the basis for Plaintiffs' claims against Defendants, is solely between Voyager and the Mavericks.  *See* ECF No. 92-1, Sponsorship Agreement.[9]  It is objectively apparent that Mr. Cuban is not a party to the agreement and did not even sign the Sponsorship Agreement on behalf of the Mavericks.  Both Mr. Cuban and Mr. Ehrlich similarly testified without contradiction that Voyager's agreement was solely with the Mavericks and that Voyager had no legal relationship, of any kind, with Mr. Cuban, individually.  ███████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████

In spite of the uniform, undisputed evidence that Mr. Cuban lacked any legal relationship with Voyager, Plaintiffs refuse to drop their claims against Mr. Cuban.  Though the PSAC drops any contention that Mr. Cuban was a director or officer of Voyager, in an attempt to hold Mr. Cuban secondarily liable for Voyager's alleged misconduct, Plaintiffs continue to falsely allege that ████████████████████████████ (PSAC ¶ 348) or ████████████████████████ (*id.* ¶ 391).  Plaintiffs also falsely allege that ████████████████████████████████

---

[9] Defendants are advised that Voyager's bankruptcy counsel produced a copy of the Sponsorship Agreement to Plaintiffs' counsel shortly after the initial Complaint in this action was filed.  Thus, it appears that Plaintiffs' counsel were aware of the terms of the Sponsorship Agreement prior to filing the Amended Complaint in this action.

███████████████████████████████████████████████████

████████████████████   As these assertions are contradicted by the factual record and are unsupported by applicable law, Rule 11 sanctions are warranted. *See Trump*, 2022 WL 16848187, at *2.

## II.   Plaintiffs Lack a Rule 11 Basis for their Assertion that the Mavericks and Voyager Are Legal Partners.

Plaintiffs' attempt to attach secondary liability to the Mavericks because they are Voyager's "partner[]" is equally frivolous.[10]  The Sponsorship Agreement between Voyager and the Mavericks explicitly confirmed that ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████.

In the face of this overwhelming and undisputed evidence of the non-existence of a legal partnership, Plaintiffs disingenuously allege that Voyager and the Mavericks are legal partners because they colloquially referred to one another as "partners." *See, e.g.*, PSAC ¶ 28.  But, as Defendants previously asserted in their Motion to Dismiss, mere use of the colloquial phrase "partner" to describe a routine business relationship with a third party does not create a formal legal partnership.  ECF No. 41 at 19 (citing *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1351 (S.D. Fla. 1999), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000)).  Though Plaintiffs have identified precisely zero legal authority or contradictory facts to rebut the argument set forth in Defendants' Motion to Dismiss, Plaintiffs fail to drop the frivolous allegation that Voyager and Defendants were legal partners.

---

[10] Plaintiffs' theory that the Mavericks were "agents" of Voyager is also without merit, as the Sponsorship Agreement is ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████.  Nevertheless, given the seriousness of Rule 11 issues, at this time, Defendants move for Rule 11 sanctions only with respect to Plaintiffs' false allegation that the Mavericks and Voyager were legal partners, and reserve the right to seek sanctions for the frivolous "agent" claims as well if they are not dropped by Plaintiffs.

The foregoing are fatal defects as well to any claim that either the Mavericks, or even more ludicrously, Mr. Cuban, acted as Voyager's "partner" for purposes of Fla. Stat. § 517.211.  To form a legal partnership under Florida law, "there must be [1] a 'community of interest in performance of a common purpose, [2] joint control or right of control, [3] joint propriety of interest in subject matter, [4] right to share in the profits, and [5] duty to share in any losses which may be sustained. ***These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership***." *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 439 (Fla. 3d DCA 1997) (emphasis added); *see Williams v. Obstfeld*, 314 F.3d 1270, 1275 (11th Cir. 2002) (citing *Dreyfuss*).[11]  As should have been evident to Plaintiffs' counsel, and discovery has confirmed in any event, none of these basic legal requirements were ever present or satisfied here.

Further, the state securities laws addressing the sale of unregistered securities of all eleven states (at issue in the PSAC) only attach secondary liability to certain individuals, such as directors, officers, partners, agents, and broker dealers, if other requirements and conditions for application of such securities laws are otherwise satisfied (which they were not).  *See, e.g.*, Fla. Stat. § 517.211. Thus, if a defendant is not acting as a director, officer, partner, or agent, such state securities laws are not applicable, without even reaching or considering the other elements or conditions for their application.  This factual and legal gating issue is not satisfied here.  The PSAC continues to falsely allege that the ███████████████████████████████████████████████████████ ██████████████████████████████████████.  *See, e.g.*, PSAC ¶¶ 148 (████████████████████████ ███████████████████████), 235 (same), 348 (alleging Defendants ███████████████████████). Both labels are blatantly false, and, given the foregoing factual and legal impediments, Plaintiffs' partnership allegation rises to the level of frivolousness required to merit Rule 11 sanctions at this juncture.

While Defendants reserve the right to seek Rule 11 sanctions on the bogus "agent" claim, at a minimum, Rule 11 sanctions should be imposed unless Plaintiffs immediately drop any false

---

[11] The same limitations apply to other states' law and would bar any hypothetical claim of an "oral" partnership.  *See, e.g.*, *Porter v. Porter*, 821 So. 2d 663, 671 (La. Ct. App. 2002) ("To establish the existence of a partnership without a written agreement, the plaintiff has the burden of proving that (1) the alleged partners mutually agreed to form a partnership and to participate in the profits which would accrue from the business in determined proportions; (2) they agreed to share in the losses as well as the profits of the partnership; and (3) the property or stock of the enterprise formed a community of goods in which each party has a proprietary interest.").

claim that the Mavericks and Voyager were at any point legal partners.[12]

## III.  Ms. Gold's Claims Are Factually and Legally Frivolous.

### A.  Plaintiff Rachel Gold falsely stated that she was a Voyager account holder.

Rule 11 sanctions against Ms. Gold and her counsel are warranted, as she submitted multiple false statements with no reasonable factual basis in filings with the Court and pursued claims long after Ms. Gold and counsel knew that she ***never*** was a Voyager account holder and thus her claims were legally barred.[13]  Ms. Gold (i) asserted in the Amended Complaint that she "purchased an unregistered security from Voyager in the form of an EPA and funded the account with a sufficient amount of crypto assets to earn interest on **her** holdings" (ECF No. 34 ¶ 8) (emphasis added) and (ii) made a nearly identical sworn statement in support of Plaintiffs' class certification motion (ECF No. 40-2, R. Gold Decl. at ¶ 3).  Those statements were false.  Ms. Gold testified at her deposition that ███████████████████████████████████████████ ██████  ECF No. 124-4, R. Gold Dep. Tr. at 67:3-5, 69-3-10.  During her deposition, Ms. Gold produced a screenshot of a text message saying that she ████████████████████████████ ████████████████████████████████████  ECF No. 124-1, R. Gold Dep., Ex. 5A. ███████████████████████████████████████████████████████████ ████████████  ECF No. 124-4, R. Gold Dep. Tr. at 69:11-14 █████████████ ███████████████████████████████████████████████████████  Rather,

---

[12] The balance of Plaintiffs' legal claims in the PSAC, which merely repeat the same basic legal theories set forth in the Amended Complaint (adding several other state law claims), lack any good-faith basis, and Defendants reserve all Rule 11 rights with respect to them as well.  For example, at least nine of the eleven state law consumer protection claims sought to be asserted in the PSAC (including under Florida state law) are legally barred because they are based on alleged unregistered securities claims, which by itself prohibits the assertion of such state law consumer protection claims.  This point was made in Defendants' Motion to Dismiss as to all but possibly one of the nine state law consumer protection claims in the Amended Complaint, and has not been rebutted by Plaintiffs.  *See* ECF No. 41 at 24, 24 n.33.  Defendants also note that Plaintiffs, despite having robust personal jurisdiction discovery, have failed to demonstrate that personal jurisdiction exists over Defendants, something that Defendants will address in a motion to dismiss the PSAC, if necessary.

[13] Defendants believe that Rule 11 required Plaintiffs' counsel, at a minimum, to have confirmed, prior to filing the Complaint, that Ms. Gold did not have a Voyager account in her name, that the account that was opened was not in her name, and that the funds used to fund such account were not her personal funds.  *See* Argument § V, *infra*.  Since, as set forth in the Section 1927 Motion, this point was made to Plaintiffs' counsel based on the discovery provided by Ms. Gold and her husband themselves, it is unconscionable that Plaintiffs still include Ms. Gold as a named Plaintiff in the PSAC.

Ms. Gold's account was ██████████████████████████████████████████ *Id.*

at 73:15-74:6; *see* ECF No. 92-2, Wissner-Gross Decl. Ex. B at Rob-Voyager-00000006. ██

████████████████████████████████████████████████████████████ (*id.* at

69:7-10).[14]

> ### B.    Ms. Gold falsely stated that she relied on Mr. Cuban in opening her husband's account.

In support of Plaintiffs' Class Certification Motion, which was denied, Rachel Gold made

the following sworn statement:

> *I purchased from Voyager Digital a Voyager Earn Program Account (an "EPA")*
> *after being exposed to some or all of Cuban's misrepresentations and omissions*
> regarding the Deceptive Voyager Platform as detailed in the complaint, and
> *thereafter funded the account with sufficient cryptocurrency assets to meet the*
> *minimum thresholds for earning the interest* Voyager Digital offered to pay on
> those holdings. To date, I have not recovered my initial investment.

ECF No. 40-2 Declaration of Rachel Gold in Support of Plaintiffs' Motion to Certify Nationwide

Issue Class ("R. Gold Decl.") at ¶ 3.

Between the filing of this Declaration and the filing of the PSAC, discovery has confirmed

this statement to be demonstrably false. The clear evidentiary record confirms that Rachel Gold

instead learned about Voyager through her friend, ████████████████████████████████

██████████████

████████████████████████████████████████████████

ECF No. 124-12, ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

───────────────

[14] ████████████████████████████████████████████████.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████

### C.   Ms. Gold's Allegations in the PSAC Remain Essentially Unchanged.

Knowing these above facts, Plaintiffs' counsel nonetheless filed its PSAC in complete disregard to the known facts and their obligations under Rule 11 to this Court:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████

PSAC ¶ 66 (emphasis added). ███████████████████████

███████████████████████████████████████████████
██████████████████ (*id.* ¶ 66 (emphasis added)). ████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████ Additionally, in direct contradiction to Ms. Gold's deposition testimony, Ms. Gold falsely alleges that █████████████████

██████████████████████████████████████████. PSAC ¶¶ 66-68. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ (*id.* ¶ 68), she testified ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████[15]

While Plaintiffs' counsel, seemingly acknowledging the falsity of Ms. Gold's prior misstatements, unsuccessfully tries to conceal her previous misstatements by now vaguely and contrary to her testimony claiming that she acted ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████. PSAC ¶ 67; *see* Argument § III(D), *infra*. In any event, Ms. Gold testified ███ ██████████████████████████████████████████ ECF No. 124-4, R. Gold. Dep. Tr. at 52:11-15. Under Florida law, spouses do not automatically have power of attorney over one another, as power of attorney is only granted to an "attorney in fact" via a writing signed by the principal and two witnesses, except in certain, inapplicable circumstances. *See* Fla. Stat. §§ 709.2102, 709.2103, 709.2105(2), 709.2106(1).[16] And even if, *arguendo*, she was acting as "attorney-in-fact for her husband" (which she was not), Ms. Gold would thereby be violating Voyager's Customer Agreement by using Mr. Rares's biographical information, and likely, Mr. Rares's cell phone (to enter SMS verification codes), to intentionally skirt Voyager's "Know Your Customer" rules designed to prevent opening up a Voyager account in someone else's name and

---

[15] Additionally, Defendants believe that Ms. Gold's statement in the ████████████ ████████████████████ *See* PSAC ¶ 66. Public records indicate that Ms. Gold and her husband, Eric Rares, sold their house in ██████████████████████, and photographs in a ████████████████████ estate listing of their house reveal a vacant house. *See* ███ ███████████████████████████████████ Public records further reveal that Ms. Gold purchased a house in ████████ ███████████████████████, shortly after her deposition in this case, and that she and ██████████████████████████████████

[16] Ms. Gold did not produce any signed document executed by her husband and two witnesses demonstrating that she was an attorney in fact for Mr. Rares.

making trades in that person's name.   *See* Voyager Customer Agreement § 12(E), https://www.investvoyager.com/useragreement/ ("Customer . . . certifies that the information contained in . . . the Account application . . . is complete, true, and correct [and that] Customer understands that Voyager may take steps to verify the accuracy of the information Customer provides to Voyager in the Voyager Account application [and] to verify Customer identity or protect against fraud. . . ."); *see also* ECF No. 124-6, Ehrlich Dep. Tr. at 345:7-13 ██████████

████████████████████████████████████████████████████████████████████████████

(emphasis added).

### D.    Ms. Gold's claims are legally frivolous, as only purchasers may bring unregistered securities claims.

Even if Ms. Gold had sufficiently corrected her prior objectively false statements in the PSAC, her claims continue to be legally frivolous, as she did not purchase a Voyager EPA.  Only purchasers of alleged securities, not their spouses, have standing to bring the claims asserted by Ms. Gold.  And while the PSAC tries to get around this requirement by inaccurately claiming she acted ████████████████████████████████████████ opened in the name of "Ms. Gold's husband, Eric Rares," discovery confirmed that Voyager did not permit joint accounts, and the account documents only identify Eric Rares as the named account holder.[17] More importantly, the Florida Securities and Investor Protection Act expressly limits a seller's liability, or the liability of a secondary participant who "participated or aided in the making of the sale," to persons who "*purchas[ed] the security*."  Fla. Stat. § 517.211(2) (emphasis added).  The Supreme Court has long held "that *only a purchaser* or seller of a security has standing to bring a private 10b-5 securities fraud action for money damages."  *Applebaum v. Fabian*, 2020 WL 6375706, at *6 (D.N.J. Oct. 30, 2020) (emphasis added), *aff'd*, 2021 WL 1382331 (D.N.J. Apr. 13, 2021) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)).  Under *Blue Chip*, spouses of purchasers do not have standing to bring Rule 10b-5 claims.  *Davidson v. Belcor, Inc.*, 933 F.2d 603, 608 (7th Cir. 1991) (holding that the ex-wife who had neither sold nor purchased the shares in question did "not have standing to sue under the anti-fraud provisions of the federal securities laws"); *see also Reid v. Madison*, 438 F. Supp. 332, 335 (E.D. Va. 1977) (following *Blue Chip* and holding that the wife of a stockholder lacked standing to bring a

---

[17]  Voyager's CEO, Mr. Ehrlich, confirmed ███████████████████████████████████ ████████████████████████████████████████████ ECF No. 124-6, Ehrlich Dep. Tr. at 347:16-17.

securities fraud claim under Section 10(b) of the Exchange Act, as she was not a "purchaser" of the security in question).

Similarly, Florida's "Section 517.211 states *only that a purchaser or seller of a security is entitled to relief*." *Asset Prot. Plans, Inc. v. Oppenheimer & Co.*, 2011 WL 2533839, at *5 (M.D. Fla. June 27, 2011) (emphasis added) (holding that a "mere 'holder' of a security has no claim" under the Florida Securities and Investor Protection Act); *Buehler v. LTI Int'l, Inc.*, 762 So. 2d 530, 532 (Fla. Dist. Ct. App. 2000) ("Because [defendant who asserted a counterclaim for violation of the Florida Securities and Investor Protection Act] is not a purchaser of a security from [plaintiff and counterclaim defendant] . . . [defendant and counterclaim plaintiff] cannot avail itself of the remedy provided in section 517.211.").

███████████████████████████████████████ (ECF No. 124-4, R. Gold Dep. Tr. at 67:3-5, 69:3-10; PSAC ¶ 67), she cannot be a "purchaser" as a matter of law and therefore cannot bring a claim under Florida securities law. Indeed, per the Amended Complaint, Ms. Gold is not even a putative class member. *See* ECF No. 34 ¶ 74(1), (defining the purported "Nationwide Class" as "[a]ll persons or entities in the United States who, within the applicable limitations period, *purchased or enrolled* in an EPA") (emphasis added); ¶ 75(2) (defining the purported "Florida Subclass" as "[a]ll persons or entities in the state of Florida who, within the applicable limitations period, *purchased or enrolled* in an EPA") (emphasis added); *see also* PSAC ¶ 322(1-2) (similarly defining the purported Nationwide Class and Florida Subclass).

## IV.     The PSAC Adds New Material Misstatements.

The rambling, 165-page PSAC contains multiple, material factually incorrect allegations. Rule 11 sanctions are appropriate here because, at a minimum, the following new allegations in the PSAC conflict with the factual record or are intended to mislead:

A.     ████████████████████████████████████████████████[18]





**B.**

Plaintiffs and their counsel are well aware that there is no evidence to support the false allegation that Mr. Cuban promoted Voyager on two trips to Miami in early 2022 or met Mr. Ehrlich on either of these trips, which was a centerpiece of Plaintiffs' prior efforts to secure jurisdictional discovery. These false allegations served as the focal point of Plaintiffs' prior entirely misplaced arguments that personal jurisdiction over Defendants existed in this District. *See, e.g.*, ECF Nos. 48, 51, 64-1 (highlighting Plaintiffs' now-disproved allegations that Mr. Cuban promoted Voyager in Miami in person and likely met with Mr. Ehrlich while in Miami for a cryptocurrency conference). Thereafter, Plaintiffs obtained document production from Defendants and took the deposition of Mr. Cuban and of Voyager's CEO.

(Ex. 1, Cuban Dep. Tr. at 283:5-12), and that there is no evidence that Mr. Cuban even

Though discovery disproved these now discredited jurisdictional allegations, Plaintiffs, flouting such undisputed evidence, instead now falsely allege that "on information and belief [Mr.

19

Cuban] also ███████████████████████████████████████
██████████████████████████████. PSAC ¶ 242. But use of the phrase "on information and belief" is not a license to fabricate facts, and cannot be used as a ruse to allege jurisdictional facts that have been debunked.

C. ████████████████████████████████████████████
████████████████████████████

Plaintiffs also now advance in the PSAC an entirely false narrative, contrary to the discovery that Plaintiffs obtained, that ████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████ *Id.* The jurisdictional discovery taken by Plaintiffs, however, confirmed Mr. Cuban's statement in his Declaration that he first met Mr. Ehrlich the day of the 30-minute Press Conference in Dallas on October 27, 2021, and the second and last time Mr. Cuban briefly met Mr. Ehrlich was during an early 2022 charity event in Dallas. ECF No. 41-2, Decl. of Mark Cuban ¶ 5.



D. **Further Frivolous or Misleading Allegations Violative of Rule 11**

While the foregoing are open-and-shut instances of false or baseless allegations—*e.g.*, fabricated quotes, imaginary business meetings, and the like—the pattern of bad faith is broader, extending to casual mischaracterization of key documents, strategic withholding of facts learned in discovery, and other manipulations, asserted to advance allegations that in reality do not have a good-faith basis. For example:

---

[20] Ex. 2, Ehrlich Dep. Tr. 401:19-21 (██████████████████████████
███).

1. 

2.



V.     **Plaintiffs and Counsel Knew or Should Have Known About the Factual and Legal Issues with their Claims.**

   A.     **Counsel Failed to Conduct a Reasonable Investigation.**

Plaintiffs' counsel violated their Rule 11 obligations by including false allegations in their initial Complaint and the Amended Complaint, as "even the most minimal investigation would have alerted" counsel to the glaring factual impediments to Plaintiffs' claims. *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 943 (11th Cir. 2022) (affirming district court's award of Rule 11 sanctions where counsel failed to properly investigate defendant corporation's full legal name). Had counsel, for example, reviewed Ms. Gold's account statements and trading history prior to filing the Complaint, they would have known her claims lacked a factual basis, as Ms. Gold never opened a Voyager account in her own name—and thus did not "purchase" the allegedly unregistered securities in question. Failure to properly investigate whether a plaintiff in an alleged securities action actually purchased the securities in question alone warrants sanctions. *Meide v. Pulse Evolution Corp.*, 2021 WL 4459653, at *2 (M.D. Fla. Sept. 29, 2021). In *Meide*, a *pro se* plaintiff brought securities fraud claims in his own name under Rule 10b-5 and Florida Stat. § 517.211 (Second Am. Compl., *Meide v. Pulse Evolution Corp.*, No. 3:18-CV-1037-MMH-MCR, ECF No. 88 ¶¶ 116-26, 150-56), even though his business was the entity that purchased the securities in question (*Meide*, 2021 WL 4459653, at *2). In awarding sanctions against the *pro se* plaintiff, the court reasoned that plaintiff's decision to bring a "securities fraud claim . . . in his own name, without making any attempt to address [his company's] status as the actual purchaser of the securities and [plaintiff's] apparent lack of standing to bring that claim" made the claim "factually and legally frivolous." *Id.* at *10.[23] Given the detailed evidentiary record that has been uncovered by Defendants as to Ms. Gold since filing of the Amended Complaint, there is no basis, consistent with Rule 11, for Plaintiffs to continue to advance Ms. Gold as a proposed Plaintiff.

Furthermore, while Plaintiffs may not have had a copy of the Sponsorship Agreement prior to filing the initial Complaint in this action, Plaintiffs' counsel obtained a copy of the agreement from Voyager's bankruptcy counsel shortly thereafter, and were fully aware, prior to filing the Amended Complaint, that neither Mr. Cuban nor the Mavericks were legal partners or agents of Voyager. Once in possession of the Sponsorship Agreement, Plaintiffs had a duty of good faith to

---

[23] Defendants have not obtained any of the trading records of any of the six new proposed plaintiffs and reserve all Rule 11 rights as to their allegations, if Plaintiffs are permitted to file the PSAC.

the Court to not submit allegations that directly contradict that agreement's clear terms and should never have alleged in the Amended Complaint (or in the PSAC) that Mr. Cuban and the Mavericks were legal partners with Voyager, or that either was an agent of Voyager (in addition to Plaintiffs' other fabricated allegations against Mr. Cuban and the Mavericks).  Nor did Plaintiffs have any basis to allege that Mr. Cuban contracted with Voyager, that he received personal compensation from Voyager for alleged services he never performed, that he allegedly made statements at the October 27, 2021 Press Conference that a cursory review of the transcript of the Press Conference confirms he never made, or that he had "daily discussions" with Mr. Ehrlich.  Indeed, Plaintiffs are well aware that they never had any basis whatsoever under the operative facts and applicable law to assert any claims against either Mr. Cuban or the Mavericks.

> **B.   Plaintiffs' Counsel Continued to Pursue Frivolous Claims After Defendants Repeatedly Alerted Plaintiffs' Counsel of the Claims' Factual and Legal Deficiencies.**

Defendants' Motion to Dismiss further alerted Plaintiffs' counsel that, *inter alia*, Plaintiffs' allegation that Defendants and Voyager were legal partners lacked a plausible legal basis.  *See* ECF No. 41 at 17-19, 23-25.  Further, Plaintiffs continued to pursue Ms. Gold's claims after defense counsel repeatedly warned them—via letters, emails, Court filings, and during hearings before Magistrate Judge Reid—that these claims were objectively frivolous.  As set forth in detail in Section D of the Factual Background of Defendants' Section 1927 Motion (ECF No. 124), Defendants' counsel alerted Plaintiffs' counsel at least eleven times about Rule 11 issues with their Amended Complaint, starting no later than on November 22, 2022.  There can be no doubt that Plaintiffs' counsel was aware of all Rule 11 issues with Plaintiffs' claims.

> **C.   Counsel Should Have Known that the PSAC Includes Additional Misstatements.**

Further, prior to Plaintiffs' filing of the PSAC, Defendants' counsel sent Plaintiffs' counsel a letter informing them of several of the blatant misstatements identified in Argument § IV. Plaintiffs proceeded nonetheless to submit the PSAC to the Court though they knew or should have known that these new factual allegations are objectively false, and did not "likely have evidentiary support" since discovery had already demonstrated them as false.  The duty to make a reasonable inquiry into the factual and legal basis for one's claims is continuing in nature.

> [A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those

pleadings and motions after learning that they cease to have any merit.
*Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996).  A litigant no longer has a reasonable belief that its factual contentions will "likely have evidentiary support after a reasonable opportunity for further investigation or discovery" where, as here, counsel "ignore[s] evidence in its possession that directly contradicts the factual allegations" in question.  *Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tennessee*, 952 F. Supp. 2d 1373, 1385 (N.D. Ga. 2013) (awarding sanctions where "documents in [plaintiff's] possession cast further doubt on the truthfulness of its claim").

## VI.    The Court Should Award the Sanction of Attorneys' Fees.

Rule 11(c)(4) expressly permits the recovery of attorneys' fees, and "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."  Fed. R. Civ. P. 11(c)(1).  Accordingly, Defendants respectfully request the Court jointly and severally sanction the Plaintiffs and their counsel.  The Eleventh Circuit has held that "[i]mposing a financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless suits."  *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1316 (11th Cir. 2021).  Here, the Plaintiffs and their counsel's frivolous pursuit of their claims led Defendants to needlessly devote a significant amount of time and resources investigating, defending, and disproving these meritless claims; preparing for and taking Ms. Gold's deposition; preparing numerous communications alerting Plaintiffs' counsel to their claim deficiencies; and in preparing the Rule 11 Motion.[24]  If ever there was a case warranting the imposition of Rule 11 sanctions on Plaintiffs and their counsel, this is it.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that the Court grant the Rule 11 Motion and award Defendants reasonable costs and attorneys' fees.

## S.D. FLA. L.R. 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movants/Defendants engaged with Plaintiffs' counsel in a good faith effort to resolve the issues raised in this Rule 11 Motion.  Specifically, on June 12, 2023, Defendants emailed Plaintiffs' counsel to set a time for a telephone call to discuss the relief requested in this Motion; Plaintiffs'

---

[24] Defendants are prepared to submit expense and billing statements, as directed by the Court, in the event the Court grants the Rule 11 Motion.

counsel responded by email that Plaintiffs do not consent to the relief and indicated that a call was not necessary.

Respectfully submitted this 13th day of June 2023.

*/s/ Christopher E. Knight*

CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:     (305) 789-9201

*-and-*

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@thehucklawfirm.com

THE HUCK LAW FIRM
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (305) 441-2299
Telecopier: (305) 441-8849

*-and-*

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email:  sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email:  rwolkinson@brownrudnick.com

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
Telephone (202) 536-1755

*-and-*

SIGMUND WISSNER-GROSS, ESQ.
*Pro Hac Vice*
Email:  swissner-gross@brownrudnick.com

JESSICA N. MEYERS, ESQ.
*Pro Hac Vice*
Email:  jmeyers@brownrudnick.com

BROWN RUDNICK LLP
Seven Times Square
New York, NY  11036
Telephone:  (212) 209-4930

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on May 22, 2023, I caused a copy of the attached Defendants Mark Cuban's and Dallas Basketball Limited's Motion for Sanctions Under Rule 11 and Memorandum of Law in Support Thereof to be served on Plaintiffs' counsel of record in the above captioned case by sending the same to said counsel via U.S. First Class Mail, pursuant to Rule 5 of the Federal Rules of Civil Procedure.

DATED: June 13, 2023

*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

## SERVICE LIST

Adam M. Moskowitz, Esq.
Joseph M. Kaye, Esq.
Barbara C. Lewis, Esq.
Howard M. Bushman, Esq.
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, Florida 33134
E-mail: adam@moskowitz-law.com
Email: joseph@moskowitz-law.com
Email: barbara@moskowitz-law.com
Email: howard@moskowitz-law.com

*Counsel for Plaintiffs and the Proposed Classes*

David Boies, Esq.
*Pro Hac Vice*
Boies Schiller Flexner LLP
333 Main Street
Armonk, NY  10504
Email:  dboies@bsfllp.com

*Co-Counsel for Plaintiffs and the Proposed Classes*

Stephen Neal Zack, Esq.
szack@bsfllp.com
Hon. Ursula Ungaro (Retired), Esq.
uungaro@bsfllp.com
Tyler E. Ulrich, Esq.
tulrich@bsfllp.com
Boies Schiller Flexner LLP
100 S.E. 2nd St., Suite 2800
Miami, FL 33131

*Co-Counsel for Plaintiffs and the Proposed Classes*

Jose M. Ferrer, Esq.
Mark Migdal & Hayden
80 S.W. 8th Street, Suite 1999
Miami, FL 33130
Email: jose@markmigdal.com

*Co-Counsel for Plaintiffs and the Proposed Classes*