1  
**THE UNITED STATES DISTRICT COURT**  
**SOUTHERN DISTRICT OF FLORIDA**

2  
**MIAMI DIVISION**

3  
**CASE NO.:  22-cv-22538-RKA**

4

5

6

7

8  PIERCE ROBERTSON,                )  
et al.,                          )  
9                                   )  
            Plaintiffs,      )        June 22, 2023  
10  v.                             )  
                                 )  
11  MARK CUBAN, et al.,            )        Pages 1 - 50  
                                 )  
12              Defendants.       )  
_____/  
13

14

15

16  
DISCOVERY HEARING

17  
BEFORE THE HONORABLE LISETTE M. REID  
UNITED STATES MAGISTRATE JUDGE

18

19

20  
APPEARANCES:

21  
Counsel on behalf of the Plaintiffs:

22  
                BOIES SCHILLER & FLEXNER  
23                100 SE 2nd Street  
                Suite 2800, Miami Tower  
24                Miami, FL 33131  
                BY:  DAVID BOIES, ESQ.  
25                BY:  STEPHEN N. ZACK, ESQ.  
                BY:  TYLER E. ULRICH, ESQ.

```
 1  APPEARANCES CONTINUED:

 2
    Appearance on behalf of the Plaintiffs:
 3
                    THE  MOSKOWITZ LAW FIRM
 4                  P.O. Box 653409,
                    Miami, FL 33175
 5                  BY:  ADAM M. MOSKOWITZ, ESQ.
                    BY:  JOSEPH M. KAYE, ESQ.
 6

 7

 8  Appearance on behalf of the Defendants:

 9                  THE HUCK LAW FIRM
                    334 Minorca Avenue
10                  Coral Gables, FL 33134
                    BY:  PAUL C. HUCK, JR., ESQ.
11

12

13                  BROWN RUDNICK LLP
                    601 Thirteenth Street NW
14                  Suite 600,
                    Washington, DC 20005
15                  BY:  RACHEL O. WOLKINSON, ESQ.
                    BY:  SIGNUMD WISSNER-GROSS, ESQ.
16

17

18                  FOWLER WHITE BURNETT
                    1395 Brickell Avenue
19                  14th Floor,
                    Miami, FL 33131
20                  BY:  CHRISTOPHER E. KNIGHT, ESQ.

21

22
    Transcribed By:
23
                    BONNIE JOY LEWIS, R.P.R.
24                  7001 SW 13 Street
                    Pembroke Pines, FL  33023
25                  954-985-8875
                    caselawrptg@gmail.com
```

1                    (Thereupon, the following proceeding was held:)

2            THE COURTROOM DEPUTY:  The United States District

3     Court for the Southern District of Florida is now in session

4     with the Honorable Lisette M. Reid presiding.

5            THE COURT:  Good morning, everyone.

6            MR. MOSKOWITZ:  Good morning, Your Honor.

7            MR. BOIES:  Good morning, Your Honor.

8            MR. HUCK:  Good morning, Your Honor.

9            THE COURT:  All right.  So I have a very full screen.

10    I would like to get appearances from counsel.  I will start

11    with Plaintiffs.

12           MR. BOIES:  Good morning, Your Honor.

13           This is David Boies of Boies Schiller and Flexner

14    representing the Plaintiffs.  With me is my colleague Alexander

15    Boies also from Boies Schiller and Flexner.

16           THE COURT:  Okay.  Very good.

17           MR. MOSKOWITZ:  Good morning, Your Honor.

18           Thank you so much for this hearing.  My name is Adam

19    Moskowitz and I am here with my partner Joey Kaye who is going

20    to speak as well.

21           MR. ZACK:  Good morning, Your Honor.

22           This is Stephen Zack also with Boies Schiller and

23    Flexner.

24           MR. ULRICH:  Good morning, Judge.

25           This is Tyler Ulrich also with Boies Schiller and

1  Flexner for the Plaintiffs.

2          THE COURT:  Okay.  Very good.

3          All right.  Defendants.

4          MR. HUCK:  Good morning, Your Honor.  Paul Huck,

5  Junior, on behalf of the Defendants.

6          THE COURT:  Good morning.

7          MS. WOLKINSON:  Good morning, Your Honor.

8          This is Rachel Wolkinson from Brown Rudnick

9  representing Mr. Cuban and the Dallas Mavericks.

10          Very good.

11          MR. WISSNER-GROSS:  Sigmund Wissner-Gross of Brown

12  Rudnick for the Defendants.

13          THE COURT:  All right.

14          MR. KNIGHT:  And good morning, Your Honor.

15          Christopher Knight from Fowler White Burnett on behalf

16  of the Defendants.

17          THE COURT:  Okay.  Very good.

18          All right.  Let me see if I can change my screen to

19  view a speaker so I don't have quite so many faces in front of

20  me at the same time.

21          All right.  Let's start, is Mr. Moskowitz going to be

22  speaking on behalf of the Plaintiffs today?

23          MR. MOSKOWITZ:  I am, Your Honor.

24          THE COURT:  Okay.  Proceed.

25          MR. MOSKOWITZ:  Thank you so much and thank you so

1   much for giving us this discovery hearing.

2        It is really these hearings that have moved these

3   cases along.  We have been so appreciative for all the work

4   that Your Honor has done and we have tried to set this hearing.

5   We are glad that it is finally taking place.

6        I am just going to present, Your Honor, a five- or

7   ten-point factual background so I could get you up so speed to

8   basically what has happened up to today and, then, I am going

9   to turn it over to Mr. Boise who has had a few meet and confer

10   sessions with the Defendants.

11        THE COURT:  Okay.

12        MR. MOSKOWITZ:  Thank you, again, Your Honor.  We are

13   so appreciative.

14        Joey, if you could start, we are just going to show

15   five or six slides and I will just get you up-to-date exactly

16   where we are.

17        So let's start with --

18        MR. KAYE:  Your Honor, we just need screen sharing to

19   be enabled so I can show the presentation.

20        MR. MOSKOWITZ:  Okay.

21        THE COURT:  I will have my courtroom deputy work on

22   that for a moment.

23        MR. MOSKOWITZ:  Thank you so much, Your Honor.

24        THE COURTROOM DEPUTY:  Okay.  I have it.  I have can

25   share at a time, Judge.

```
 1          THE COURT:  Okay.  Actually, it is better if you just
 2   put anyone can share.
 3          THE COURTROOM DEPUTY:  Okay.
 4          THE COURT:  Okay.  All set?
 5          THE COURTROOM DEPUTY:  Okay.  It seems like it, yes.
 6          MR. MOSKOWITZ:  Joey?
 7          THE COURT:  I see him shaking his head.  Apparently
 8   not.
 9          THE COURTROOM DEPUTY:  All right.
10          MR. MOSKOWITZ:  Here we go.
11          THE COURT:  Okay.  Great.  Thanks.
12          MR. MOSKOWITZ:  Okay.  Thank you so much, Your Honor.
13          I wanted to start sort of with the overview because I
14   think this will give you a flavor of sort of where we are and,
15   you know, why we are raising these issues and why they are so
16   important to our case.
17          Because, obviously, we are very careful what we need
18   to push because you can imagine Joey and I get pretty inundated
19   with everything that we've got coming at us.
20          But let me show you this.  This is the statement that
21   just came out from Defendant Cuban.  This is in the Rule 11
22   attack on us and this is what he says and he says this under
23   oath:
24          He says on October 27th of 2021, I met Stephen Ehrlich
25   for the first time in Dallas when there was a short press
```

1  conference and announcing that Voyager had become a sponsor for

2  the Mavericks and that has been his theme, as Your Honor knows,

3  for the last six months.

4        I have never met Stephen Ehrlich.  I don't know who he

5  is.  I just showed up at the press conference.  There he was

6  and I have never seen him again.

7        So this is the same sworn statement, which they keep

8  pressing while trying to not allow us to get discovery because

9  if we weren't allowed to do discovery, you would read this

10 statement and say, wow, I met him for the first time on

11 October 27th and I did nothing else.  So I can't be held

12 liable.

13       What have we now found?  Because Your Honor, as

14 actually granted our motions to compel, only because you have

15 granted those motions to compel.  Mr. Cuban and Mr. Ehrlich had

16 constant contact through them and through their reps by phone

17 and e-mail for almost two months before this date.

18       So he is trying to trick you and trick us into saying

19 there was no real contact.  Even though it is during COVID

20 where nobody is meeting face-to-face anyway, but even now he is

21 continuing this false statement that I didn't meet him until

22 this very first day.  That's not true.

23       He was involved in all the negotiations with the

24 agreement.  Now we know that is true.  He personally was

25 involved in writing the press release.  Now we know that is

1   true.

2         But what are the also interesting things that we were

3   able to find?  Two important points, which will be very

4   relevant for the trial.

5         The agreement, itself, said the NBA must affirmatively

6   approve this deal and we asked so many questions to Mr. Cuban

7   and Mr. Ehrlich.  We did a request for production.  Show us

8   where the NBA approved the deal?  We got nothing.  Nothing.

9         Mr. Cuban in his depo says, oh, we talked to the NBA

10  and they gave us their approval.  We said where?  Where is the

11  proof?  We don't have any.

12        So we are now eight months into this.  There is not a

13  single document or a single e-mail.  So what did we do?  We

14  sent a third party subpoena, extremely narrow, to the NBA

15  saying give us your documents where you approved the deal.

16  That's basically it.

17        So you know ask, well, why did we ask it?  Well,

18  because it is crucial because the deal required the NBA to

19  affirmatively approve it and there's nothing in the record.

20  Well, what else did we learn?

21        This is really crazy.  Less than an hour before Mark

22  Cuban wrote his own e-mail saying I will approve the deal,

23  Steve Ehrlich gave him secret inside information that was

24  illegal to give saying I want you to know that nobody else

25  knows this in the world, but the token for Voyager will be

1    listed on the Exchange.

2           Nobody knows this information.  So it is going to go

3    up in value.  And people have been prosecuted by the SEC for

4    telling information that a token will be listed.

5           Well, when we confronted Mr. Ehrlich with this

6    because, you know, it took us a lot to find this, he says, the

7    reason I was able to tell Mark Cuban is because we had a

8    nondisclosure agreement with him.

9           Well, if you read the nondisclosure agreement, the

10   first sentence says this does not apply to Mark Cuban.  This

11   does not include Mark Cuban.  No vague there.  It does not

12   apply.  So we asked how did he give him the information?  He

13   didn't have an answer.

14          So what we asked is for the Dallas Mavericks to take

15   their corporate depo.  Your Honor allowed it to be taken seven

16   months ago.  So we said we want to take it.  We want to take it

17   in part because we want to say who did Mr. Cuban, if anyone,

18   tell this secret information to.

19          He says he didn't trade on it, but I think we are

20   entitled to ask did any of his friends or family trade on it

21   and that's all we asked because we learned in these documents

22   that Mr. Cuban admits I did a lot.  I crushed it.  That's his

23   word.  I crushed it for Voyager because I endorsed it.  And the

24   only thing I cared about is how much money I was going to get.

25          So now all those documents that relied on, you know,

1  we crushed it because I endorsed it and all I cared about is

2  how much I got, that's highly confidential.  That's Mark by Mr.

3  Cuban highly confidential.

4  When I said can you call you Mark, he says, no, you

5  have to call me Mr. Cuban.  That's highly confidential.  And

6  that is sort of where we are now that every single line and

7  page is testimony admittedly is marked highly confidential.

8  We tried to resolve this for three months and they

9  will tell you that we have.  We have written to them and we

10  have the letters that we will show you.

11  Joey, the next slide.

12  The problem when we started this case is the original

13  Voyager protective order that Judge Altonaga entered only had

14  the word confidential because at least that's based on some

15  federal rules where you can say what is confidential?

16  It is not just harmful, but their proposed

17  confidentiality or had this new game at Defendants' play where

18  they say highly confidential.  Well, what does that mean?  It

19  is not tied to any rule.

20  And they also told us you have to tell us when you

21  share any of these materials with your (inaudible).  We said

22  that's a non start.  I mean, that's just ridiculous, but Your

23  Honor said -- and turn to the next page, Joey.

24  I am going to overrule your concerns Mr. Moskowitz.

25  While I appreciate Mr. Moskowitz' concern regarding the over

1   designation issue, that is one that can be addressed by Rule

2   37.  That would be abuse if the vast majority of the documents

3   suddenly turned up as highly confidential.

4         I would add that the concern about over designation

5   could be remedied by me.  You wouldn't have to write the

6   objection, Mr. Moskowitz.

7         You can simply contact my chambers and we can have an

8   informal hearing, as we are having now, and we can also attach

9   sanctions, which are already provided by Rule 37 in that case

10  of over designation.

11        So what did Voyager's counsel and Mr. Cuban do?

12        Joey.

13        Every document we received had the line highly

14  confidential or confidential.  Every single one.  And now 26

15  exhibits, which we have attached to the amended complaint,

16  which has been admitted by Judge Altman are marked highly

17  confidential and confidential.

18        And Mr. Cuban's counsel just reiterated to us five

19  minutes ago every piece of testimony from Mr. Cuban, including

20  what is your name, is highly confidential.  So I just don't

21  understand how this could be.

22        And last night we get a letter from them saying, you

23  know what?  We are willing to negotiate with you some of these

24  designations.  Four months later we are willing to negotiate

25  some, but because they are highly confidential and

1  confidential, remember we can't repeat that.  We can't state

2  them.  We can't share them say in our discovery on third

3  parties.

4         So they accomplished their goal.  If something really

5  bad comes out, they are able to tie our hands behind our back

6  because we can't even mention these issues.

7         Joey, next page.

8         So they keep saying you never told us under the

9  protective order what your concerns are and we were very

10  careful.  I read the protective order.

11        It says if you challenge someone's designation you

12  have to give them notice within 14 days and then it is their

13  burden to prove that something is confidential or highly

14  confidential.

15        So I wrote to Mr. Huck and Mr. Best.  They know that.

16  I wrote them in October 16th.  I wrote them again the next

17  week.  I even sent them a copy of the amended complaint and I

18  said this is what we are going to file.

19        We don't think there is anything here that is highly

20  confidential.  There is no formula of Coca-cola.  There is no

21  this is how much money I am making.  It is Mark Cuban saying

22  all I cared about was the money.

23        So we have given them notice and we told them there

24  are certain documents Plaintiffs has that were marked

25  confidential, but we are not requiring you to keep them under

1 seal.  That's what the protective order requires.

2          Not marking the document, but does the party require

3 you to keep it sealed.  The only thing that we thought needed

4 to be sealed is a third party document from Voyager, which said

5 these are the three thousand or four thousand Florida residents

6 that used the Voyager code.

7          Because, remember, they said there is no connection to

8 Florida and nobody has used that code and they tried to move

9 Rule 11 sanctions against us.  Nobody used the code.  Now we

10 know three thousand people used the code, but we redacted their

11 names because we didn't want those people's names to be

12 disclosed.  That's all we thought needed to be redacted.

13          Next slide, Joey.

14          So here's the events as we start from the case.  Judge

15 Altman denied their motion to stay.  They actually asked to

16 stay discovery and he peeked at the merits and said I am not

17 staying any discovery in this case.  That's how we started.

18          Then, we went to Your Honor and Your Honor denied

19 their request to bifurcate discovery.  So there is no stay of

20 discovery.  Recently after the extension that we asked Judge

21 Altman for and we told Judge Altman why we wanted the

22 extension, we wanted to be clear, he reopened this case.

23          So now we are starting again.  We filed our amended

24 complaint.  We served one request to the NBA basically for

25 documents did you approve the deal.  We set a depo for them

1    after and we asked a corporate rep of the Mavericks because we

2    took the corporate rep of Mark Cuban previously.  That's all we

3    did.

4            Next slide.

5            So what did the Defendants do?  Did they work with us?

6    Did they meet and confer?  They said we will not let you file

7    any amended complaint with the Court.  Judge Altman here's

8    fifty reasons why the Plaintiffs should not be able to proceed

9    with an amended complaint.

10           They said you cannot file anything that has our

11   confidential designation.  And then, they said we oppose any

12   discovery until after the Court decides whether to allow the

13   amendment.  That was their sole grounds for objecting to our

14   discovery.

15           We know now that Judge Altman granted leave.  So

16   that's gone.  But what else did they do?  They wrote us a

17   letter that said the proposed amended complaint has meritless

18   arguments.  If we don't drop this meritless lawsuit

19   immediately, we are going to be subject to Rule 11 sanctions.

20           I have never been threatened like that in a case.  If

21   you proceed with these harmful allegations, we are going to

22   move for Rule 11 against you.  So the Judge allows the amended

23   complaint.  They file motions for sanctions under 1927, which

24   was just preposterous that we are vexating (phonetic) the

25   litigation.  We want to spend more money.

1          They sent seven lawyers to depose one of our clients,

2     but it is our fault that we are spending money.  And then, when

3     that is denied, they file a motion for Rule 11 that Mr. Boise

4     and I are somehow cheap.  That's denied by the Court, I think,

5     in five minutes.  And that's right, the Court said denied, you

6     may raise this later.

7          Next slide, Joey.

8          So where are we?  Four days ago we get a letter from

9     them.  Not four months ago when we had our meet and confers.

10    Four days ago and it says we will consider changing some of our

11    designations, but not the most harmful ones.  Those we are

12    going to stick on.

13         And then last night we get a two-page letter at 10:56

14    from Mr. Huck; 10:56 before this hearing we get a letter saying

15    we are now extending the time to respond to the amended

16    complaint because we have three new Defendants.  So under the

17    local rule they will respond together.

18         So we have decided now that you can serve those people

19    with the unredacted amended complaint because Mr. Huck and I

20    spoke last week.  And I said to him, can we serve this

21    complaint before we have our hearing with Judge Reid?  And he

22    said I don't know.  I don't know.  Because we don't know what

23    Judge Reid is going to unseal.  So that's why we haven't served

24    it on these three people.

25         And then, for the first time last night at 10:56 they

1  say you shouldn't be allowed to ask the documents from the NBA

2  because Mr. Ron Kalski (phonetic), he's going to be prejudiced

3  when he comes in the case if you get that.

4        Final slide.

5        So the real issue here, Judge, is four and-a-half

6  months ago when you said to them, please don't designate every

7  single line of your testimony as highly confidential because

8  that really will slow up this case.  It will tie our hands

9  behind our back.  There will be sanctions.

10        For four and-a-half months they did not relent.  It

11  was at 10:56 last night that they say, you know what?  We will

12  talk to Mr. Boise.  So yesterday, Mr. Boise had a call with

13  them about those and I am going to turn it over to Mr. Boise

14  now who could just talk about what he had as discussions.

15        David.

16        MR. BOISE:  Well --

17        THE COURT:  Go ahead, Mr. Boise.

18        MR. BOISE:  Thank you, Your Honor.  David Boise for

19  the Plaintiffs.

20        I think that there are a couple of broad threshold

21  issues with respect to which it would be helpful to get the

22  Court's guidance.  I think after that there will still be

23  probably some individual issues that the parties will need to

24  talk about.

25        But I think the two broad issues are first with

1   respect to sort of the burden of who has to try to narrow this

2   down.

3        Our view, as Mr. Moskowitz has indicated, is that they

4   can't just designate or should not be able to just designate

5   the entire Cuban deposition as highly confidential.

6        And we have to now go through line by line and tell

7   them all the reasons why each line ought not to be confidential

8   or highly confidential.

9        We think that there is an issue here of overbreadth of

10  designation.  They will speak for themselves, but my

11  understanding is that their position is that they can designate

12  it that way and we, then, have the burden of going through it.

13       Related to that is the issue of respect to the amended

14  complaint.  We gave them the amended complaint.  We said we

15  think all of the stuff in there is non confidential.

16       They continued to say that certain things in there are

17  confidential and we think are not.  And indeed, could not

18  constitutionally be sealed given the fact that this is a Court

19  document.

20       But their view is that we now need to go through and

21  tell them why we disagree with each one of those as opposed to

22  them bearing the burden of telling us why they think it is

23  justified.

24       And a second broad question that I think the Court's

25  guidance would be helpful is their position is that anything

1   that came out of a contractual discussion with Voyager is

2   highly confidential or confidential.

3          For example, we have a line in the complaint saying

4   that they were misleading the NBA.  They think that is properly

5   designated as highly confidential or confidential.  We don't

6   think it is.  Broad things like that I think it would help to

7   have the Court's guidance on.

8          We think that the confidentiality designation for the

9   Defendants is limited to highly sensitive business data, their

10  profits, and their revenues.  Perhaps contractual arrangements

11  they have with certain parties.  Things like that, but

12  particularly in a Court document it should not be sealed.

13         And as I say, I think there is actually constitutional

14  issues with respect to the sealing of other kinds of

15  information.

16         Now, even once we get guidance from the Court on those

17  issues, I think there is still going to be some issues for us

18  to discuss amongst ourselves, but I do think that we need the

19  Court's guidance on those two broad issues.

20         THE COURT:  Okay.  Very good.

21         And I think that makes sense.  Let me start with

22  finding out who else is on the Zoom here who may not be an

23  attorney or a law clerk on this case.

24         Is there someone here who is not an attorney in the

25  case or a law clerk?  Who is Barbara Lewis?

1          MR. MOSKOWITZ:  She's a lawyer in my office, Your

2    Honor.  In the Moskowitz law firm.  She is an attorney.

3          THE COURT:  David Mayo (phonetic).

4          MR. MAYO:  Hello, Judge.

5          I was about to speak up.  This is David Mayo from New

6    York Research, which is a bankruptcy media company.  I am just

7    observing.

8          THE COURT:  Okay.  Jonathan White?

9          MR. WHITE:  Good morning.

10         I am an attorney with Brown Rudnick and Associates.

11         THE COURT:  Okay.  Howard Bushman.

12         MR. BUSHMAN:  Yes, Your Honor.

13         Howard Bushman from the Moskowitz law firm this

14   morning.  How are you.

15         THE COURT:  Okay.  And then, I see an iPhone and I am

16   not sure who that is.

17         MR. MOSKOWITZ:  I think that is Steve Zack.

18         MR. ZACK:  I believe that is mine, yes.

19         THE COURT:  Okay.  Very good.  So the only person who

20   is not an attorney, or a law clerk, or court personnel is Mr.

21   Mayo?

22         MR. MAYO:  Mayo; yes, that's correct, Judge.

23         THE COURT:  Okay.  All right.  So because we are going

24   to be discussing whether certain matters should be highly

25   confidential or confidential, meaning for only the attorneys

1  and the people involved in the case, I would like to excuse you

2  from the hearing because I think we are now going into the

3  subject matter.  And it would be more appropriate for you not

4  to be here because of the issues that are going to be

5  discussed.

6            MR. MAYO:  Understood, Judge.  Thank you.  I will drop

7  off.

8            THE COURT:  All right.  Thank you, sir.

9            THE COURTROOM DEPUTY:  And Judge, I just want to make

10 sure that that was a reporter that called.

11           THE COURT:  That might have been him.

12           THE COURTROOM DEPUTY:  I mean, I sent him the

13 information yesterday.

14           THE COURT:  Yes, I think that would have been him.  He

15 said he was a reporter.

16           THE COURTROOM DEPUTY:  Okay.

17           THE COURT:  Okay.  All right.  So let's start with

18 looking at the parties' protective order.  Why don't you direct

19 me to that, Plaintiffs, and let's just look at it altogether.

20           MR. BOISE:  I have it here, Judge.  It's ECF number 65

21 in the case and Paragraph 12, I believe, is the pertinent

22 paragraph.

23           THE COURT:  Okay.  I am going to pull it up on my own

24 computer and it will make it much easier for me to see.  So you

25 said number 65, Paragraph number -- what page?

1              MR. BOISE:  I think it is Page 11, Your Honor.

2              This is David Boise.  I think it is Page 11, Paragraph

3      12 relates to how you challenge confidentiality designations.

4              THE COURT:  Okay.  So the party objecting to

5      designation was notified counsel for the designating party of

6      the objected to materials by specific Bates numbers in a

7      deposition, a page number, and state the grounds for the

8      objection.  Unless we were going to limit the objection to the

9      materials for which the party have specific good faith need to

10     use or disclose in this litigation.

11             MR. BOISE:  I think what all could be helpful, Your

12     Honor, if we look at on Page 2 highly confidential attorney

13     eyes only.  How that order defines that type of so-called

14     highly confidential information.

15             THE COURT:  So that's very clear.

16             Financial account information, Social Security

17     numbers, bank account numbers, credit card numbers, sensitive

18     personal information, and information that would result in

19     significant competitive or commercial disadvantage.

20             Okay.  So looking at Paragraph 12, it would seem that

21     the party objecting to the designation was notified counsel of

22     the state the grounds for the objection, but in this case, it

23     is the entire deposition transcript.  Not any specific parts.

24             So the Plaintiffs are making a general objection where

25     they are stating their grounds as basically how can every

single thing in Mr. Cuban's designation fall within the

specific types of evidence that the agreement states is

confidential.

Okay. So I think I have the Plaintiffs' position.

Defendants, who will be speaking on behalf of the

Defendants on this issue?

MS. WOLKINSON:  Paul Huck.

Paul, are you on?

THE COURT:  He is muted.

MR. HUCK:  I was muted.

THE COURT:  Okay.

MR. HUCK:  Apologies, Your Honor.  I will be speaking

to this.

And Your Honor, you focused exactly on Paragraph 12

which has been frankly our frustration for a number of months

in this process because what you didn't hear was the number of

times that we have asked the Plaintiffs to engage in the meet

and confer process that is required by Paragraph 12 so that we

can focus issues, we can agree on things that could be

D-designated, and where we have specific disagreements we can

bring them to the Court.

We can focus the issues so that if they are about

contractual agreements, whether it is with, for example, the

NBA, or third parties, or issues relating to the relationship

with Voyager, we can kind of bring those to you in a way that

1  is easily presentable and we can get concrete rulings from the

2  Court and we can move forward.  That is typical of litigation.

3         And we are finally able to begin that conversation.

4  Mr. Boise got involved and it was extremely constructive

5  yesterday and earlier this morning and we are in that process

6  now.

7         So all I can say to that is the Plaintiffs and the

8  Defendants are working in that process.  We expect that there

9  will be agreements and disagreements between the two sides in

10  that and we will bring it pursuant to Paragraph 12 as

11  appropriate to the Court when we need judicial intervention.

12         Specifically as to the deposition we have begun a

13  discussion with them in the way that professionals have that

14  conversation.  And when we have disagreements about parts of

15  the deposition transcript, we will bring that to the Court so

16  that the Court can make a specific ruling.

17         One of the things that I think is important to

18  remember about that provision in Paragraph 12 is that the party

19  that is seeking to D-designate has to inform you -- well, first

20  the designating party and then ultimately the Court, what there

21  is.  What is the need to use or disclose in a litigation in a

22  manner that is not already provided for and permitted by the

23  protective order.

24         So, for example, if the only reason to use the

25  information is so that you can kind of bandy it about in the

1  press, that is not something that would be appropriate under

2  Paragraph 12.  If there is a restriction in your ability to,

3  for example, question a third party using that information,

4  well, then that certainly is something that would fall within

5  Paragraph 12 and is something to discuss amongst the parties.

6         And then, if we can't agree to that to come to the

7  Court to ask the Court to put in parameters so that you can

8  have third party depositions and show documents to third

9  parties that are protected under the protective order.

10        There is no dispute about that.  We are all

11  professionals here.  We have done this many times and we know

12  how to handle that process.

13        I did want to briefly touch on just the more general

14  points about discovery that Mr. Moskowitz had touched on

15  because what he didn't talk about was Judge Altman's recent

16  order vacating the current scheduling order.

17        And recognizing that with three of the Defendants

18  coming into the case, first of all, all the Defendants are

19  going to have the same date to respond once all the new

20  Defendants have been properly served.  So that is going to be

21  coordinated.

22        Our time to file our motion to dismiss has been

23  suspended until that occurs.  And in addition, Judge Altman --

24        THE COURT:  I'm so sorry.  So, Mr. Huck, before you go

25  on to that topic, I want to finish the confidentiality issue.

1          I am keeping all of this in my head and keeping all

2    the balls in the air.  So what I understand you to say is

3    yesterday you started to meet and confer regarding the

4    designation for the deposition.

5          MR. HUCK:  Yes.  And other things as well.

6          We had provided -- even though we didn't have to we

7    wanted to keep the ball rolling and so we provided proposed

8    redactions to the second amended complaint so that it could be

9    publically filed.

10          And we have also initiated, you know, started our

11    discussions with Plaintiffs' counsel about that.  We may agree

12    on those things.  We may disagree on some.  And when we have

13    those points, then we will bring them, you know, kind of in a

14    package to the Court so that you have something concrete to

15    look at.

16          THE COURT:  Okay.  So you expect to continue that meet

17    and confer for the next week or -- I want to try to get a sense

18    of the timeframe.

19          MR. HUCK:  Sure.  Well, the protective order gives us

20    14 days to do that.  And so we --

21          THE COURT:  (Inaudible) days from the date of the

22    deposition to state whether you want to designate or not.

23          MR. HUCK:  After notification on production and there

24    is a 14-day period to engage in.  And so, now we have started

25    the meet and confer process.

1           Now, I will give you a caveat to that, Your Honor.  As

2    was mentioned, I think there are 3400 pages that are attached

3    as exhibits to the complaint.

4           Many of those have confidentiality designations under

5    the protective order.  That is going to take some time if we

6    are talking about the underlying exhibits themselves to the

7    complaint.

8           If we are talking only about the paragraphs that are,

9    you know, containing the factual allegations and hold aside the

10   underlying documents itself, it can go a little smoother.  But

11   if we have to go through 3500 pages of documents, that is going

12   to take some time.

13          THE COURT:  Okay.  All right.  So let me then go back

14   to Mr. Boise on this.

15          Since you are meeting and conferring and working this

16   out is there any -- you don't need for the Court, then, to rule

17   on anything specifically today?

18          MR. BOISE:  Well, Your Honor, here is the problem.

19          The protective order sets forth a lengthy and

20   complicated process when we have to challenge designations.  We

21   said that at the time it was entered.  We opposed it.

22          And one of the things the Court said at that time was

23   that you would be very careful to scrutinize over-designations.

24   We think this is a case of very substantial over-designations.

25          The problem that it puts us in -- and I can go through

1    it with just some examples for the Court.  They have designated

2    the entire deposition of Mr. Cuban.  That is the over-

3    designation that if we have to now go through the meet and

4    confer on everything that is in that deposition, that is

5    obviously very lengthy.

6              THE COURT:  So you are saying that they are over-

7    designations and they are putting the burden on you to say

8    which parts should not --

9              MR. BOISE:  Exactly right, Your Honor.

10             And for example, with respect to the amended

11   complaint, we told them last April that we gave them a copy.

12   We told them we thought there was nothing in there that was

13   probably confidential.

14             We think that ought to shift the burden to them to

15   justify it.  Not make us now go through every one of those.  I

16   mean, for example, they -- let me just give you a couple of

17   examples of things that they have designated and these were

18   things that we talked about in our meet and confer.

19             We said, Paragraph 17, Mr. Cuban and Mr. Ehrlich had

20   extensive daily discussions regarding the specifics of the

21   global partnership.  How can that be confidential?

22             We said this.  We alleged that they have disclosed

23   confidential inside information that may be embarrassing.  They

24   may even dispute it, but that cannot be something that is

25   highly confidential.

1        So our concern here is that if we simply say, okay,

2  take another 14 days --

3        THE COURT:  Right.

4        MR. BOISE:  And just (inaudible).

5        THE COURT:  You have need a ruling on how should this

6  process work.

7        MR. BOISE:  Yes.

8        THE COURT:  So, Mr. Huck, my concern is this.

9        While I have seen situations where as soon as the

10  deposition is over, the attorneys say everything is

11  confidential in this deposition.

12        The reality of it is in a 500-page deposition once you

13  have tried to designate everything as confidential, the burden

14  now comes on you after the Plaintiffs have said, well, you

15  know, they are objecting to that and that's just not possible

16  that everything can be confidential in that deposition.

17        Now, the burden is on you to show, okay, well, this

18  part should be confidential for this reason and this part

19  should be confidential for this reason.  I think the

20  Plaintiffs, the party, I understand has to object and say why.

21  And in this case, Plaintiffs have objected and said why.

22        Which specific parts of the deposition transcript are

23  you designating?

24        MR. HUCK:  Let me unmute myself here, Your Honor.

25        And Your Honor, one thing to remember, of course, is

1   that the case was stayed very shortly -- by virtual agreement

2   of the parties -- very shortly after Mr. Cuban's deposition was

3   taken.  And I agree with you that the normal course is you take

4   the deposition in order to preserve things.  You say we are

5   going to designate everything and then you go back and you use

6   a less blunt tool to do that.

7          And as we said to Mr. Boise we have no problems doing

8   that.

9          THE COURT:  The question is who is going to do that

10  rather than --

11         MR. HUCK:  I just said we have no problem going back

12  and doing that.

13         THE COURT:  Who is going to do that?

14         MR. HUCK:  The Defendants on Mr. Cuban's deposition.

15         And so circumstances because of the way the case kind

16  of was going and there was a pause in it, what one normally

17  would expect to have kind of occurred over the next, I don't

18  know, month after the deposition transcript gets back was kind

19  of put on hold for a while.

20         So we have no problem doing that whatsoever.  And that

21  is exactly why having those kinds of conversations are really

22  what should be going on as we are working through these, the

23  confidentiality.

24         You know, another --

25         THE COURT:  I am all for conversations between

1  attorneys.

2         MR. HUCK:  And I understand --

3         THE COURT:  I really want that to happen.

4         MR. HUCK:  I understand.

5         THE COURT:  So all I want to do is try to set up the

6  framework so that you understand that at this point the burden

7  is on you to designate specific portions of the transcript and

8  to say why, right?

9         And if you agree that two weeks should be the

10 appropriate time for that to happen, I am fine with that.  At

11 the conclusion of two weeks, should the parties then decide

12 they want to come back and get specific rulings on specific

13 portions, you know, of the transcript, that's fine, too.

14        I just wanted to sort of set the ground rules so

15 everybody knows what is expected and we don't come back in two

16 weeks or more in the same place.  That would frustrate you and

17 me, right?

18        So, okay, I think everyone understands, right?  Okay.

19        MR. HUCK:  Yes, Your Honor.

20        MR. BOISE:  Yes, Your Honor.

21        THE COURT:  Thank you.

22        Okay.  Mr. Huck, I know you wanted to also talk about

23 with regard to the amended complaint.  Same thing.  If there

24 are particular documents that are attached to the amended

25 complaint, you are also going to discuss that within the next

1  two weeks?

2          MR. HUCK:  Well, what we have already done is provided

3  -- and Your Honor has a copy of it -- our proposed redactions

4  to the second amended complaint which is solely for purposes of

5  publically filing it.

6          And that's why I did want to discuss the issue of -- I

7  think it was raised a little earlier -- of serving the

8  complaint.  Either the protective order is the way it defines a

9  party is elastic.

10          So it anticipate the position of new Plaintiffs and

11  new Defendants.  So anybody who is served in the case is

12  subject to the terms of this protective order and its

13  provisions.

14          So there really isn't any impediment from that

15  perspective of serving the newly added Defendants with copies

16  of the complaint.  There's, you know, the reason we think --

17          THE COURT:  Unredacted.

18          MR. HUCK:  Right.  Unredacted.  What I think they

19  should also be served with and maybe the Court just gives

20  direction is a copy of the protective order so they are aware

21  of it.  And you know, so they understand what their obligations

22  are under it since they are coming in new to the case.

23          And then, what may make sense also is to also give a

24  copy of at least the currently proposed -- so there is no delay

25  -- the currently proposed redacted complaint so they can

1   understand at least what one of the parties think should be

2   redacted from what is publically filed.

3        And then, just to give them some parameters since they

4   haven't been -- but at a minimum there is zero restriction on

5   their ability to be served with an unredacted complaint since

6   they are parties and subject to the protective order.

7        The others are more what I think are just kind of

8   (inaudible) for the incoming party to the case.

9        And in terms of working through those redactions, the

10  only purpose of that is to have a publically filed document

11  which, of course, is required under the rules.

12       But that is going to take -- the allegations of the

13  complaint themselves, if you look at our proposed redactions,

14  are not onerous in terms of the amount.  We can go through

15  those.

16       If we are also going to be talking, though, about the

17  underlying documents from which the allegations arise that is

18  going to take a while because with 3500 pages attached that

19  will take longer than two weeks to work through.

20       And in that perspective I do think that the burden

21  really is on them under Paragraph 12 of this protective order

22  to come back to us and say we want to use this in our

23  publically filed document and we don't think it is confidential

24  because X, Y, or Z.

25       And then we can have a conversation about that and the

1   reason we want to have it D-designated is because otherwise we

2   can't use it in a way that is otherwise permitted by the

3   protective order, right?

4        Because the protective order allows the parties to use

5   the designated information within, you know, certain guardrails

6   and the whole notion of D-designating is I can't use it the way

7   I need to use it because of those guardrails.

8        So I think the burden should be on them as it is under

9   the protective order for that exercise.  We went ahead and

10  provided them with what we think are appropriate redactions.

11  We could go through that with them.  We started that

12  conversation.

13       Some of the information is based on information that

14  was designated confidential by I believe Voyager.  So by a

15  third party.  So to the extent that Plaintiffs want to have

16  that information D-designated, that is a process that has to

17  run with Voyager since that was a designated party and that is

18  what is contemplated under the protective order.

19       THE COURT:  Okay.  So, Mr. Boise, now we are talking

20  about the attachments to the amended complaint.  And so from

21  your point of view, everything that you have attached you

22  believe shouldn't be designated.

23       Do I understand that correctly?

24       MR. BOISE:  That is correct, Your Honor.

25       And while 3500 pages in one sense seems like a lot,

1    with all of the lawyers working on this case, we are going

2    literally through hundreds of thousands of pages of documents.

3    So I don't think going through those pages is that much of a

4    burden.

5           But we have told them we don't think that this is

6    confidential.  We think the burden ought to be on them now to

7    justify it.  Particularly with a document that is a Court

8    document, like a complaint.

9           THE COURT:  Right.  Let me look at this amended

10   complaint.  I think I looked at it before this hearing and I

11   saw that there were a number of things, but let me just briefly

12   look at that list of attachments.

13          Some of the exhibits I got the impression were of some

14   transcripts that were already of things that were public

15   interviews, YouTube.  If it is on YouTube how can it be

16   designated as confidential?

17          Let me go back and take some more of these.  I'm just

18   not seeing why it would take quite so long of more than two

19   weeks.

20          MR. MOSKOWITZ:  There are 25 exhibits, Your Honor.

21          THE COURT:  Are there particular exhibits, Mr. Huck,

22   that you are concerned about?  I'm looking at just a sampling

23   of them and I am not seeing that we are talking about things

24   that would be even debatable.

25          MR. HUCK:  Your Honor, and not everything in there is

1  denominated confidential, right?  So it's the information,

2  which is designated confidential which to that extent the

3  Plaintiffs need to follow the procedure under the protective

4  order.

5          I mean, they just can't say we don't think any of this

6  is confidential that has been deemed confidential either by

7  Voyager, or by the Defendants, and that's enough under the

8  terms of the protective order.

9          Now, you know, the burden is on them to come and tell

10 us why not and then we have the meet and confer.

11         THE COURT:  Right.

12         MR. HUCK:  And then if we have a disagreement we bring

13 it to the Court.

14         THE COURT:  I understand.  So help me understand

15 exactly which ones those are.  I have the amended complaint

16 open and let's cruise through it.

17         For instance, I am looking at Exhibit 14 to

18 Document 155, which I believe to be the sealed amended

19 complaint.  I see on the bottom left the words confidential.

20 It appears to be a letter sent by e-mail from Stephen Ehrlich

21 to Mark Cuban.  Some e-mails.

22         When I see the word confidential on the bottom

23 left-hand side of the page, who has made that designation?

24 Just so I can understand what I'm looking at.

25         MR. BOISE:  My understanding, Your Honor, and Mr. Huck

 1   will correct me if I'm wrong, those are from the Voyager

 2   documents.  Those confidentiality designations are all from

 3   Voyager.  From the documents that came from Mavericks, all

 4   those designations are from the Mavericks.

 5          The particular documents that you are talking about I

 6   think came from the Mavericks and I think that designation came

 7   from the Defendants.

 8          THE COURT:  Okay.  So how many of these documents will

 9   have confidential designations on them if someone can help me

10   with that?

11          MR. HUCK:  I think it is 26 of the 31 documents are

12   confidential.

13          THE COURT:  Okay.

14          MR. BOISE:  That came from Mark Cuban and were

15   designated confidential from Mark Cuban; 26 of the 31.

16          THE COURT:  Okay.  So 26, Cuban confidential and the

17   remaining -- what would that be, seven?

18          MR. BOISE:  Five.

19          THE COURT:  Let's see.  I'm not that good at math.

20          Okay.  So of the 26 documents I just want to narrow

21   down, Mr. Huck, what you would be working on.  And if you or

22   your attorneys have designated these documents as confidential

23   at some point I am assuming that's when they were turned over

24   during discovery.

25          MR. HUCK:  That's correct, Your Honor.

1          THE COURT:  Right.  And now the Plaintiffs are stating

2     that we want to attach them to our amended complaint to some

3     degree.  So their reasoning is the documents are needed for the

4     pleadings to be complete in the case.

5          So by attaching them, Mr. Boise, aren't you stating,

6     well, here is my reason.  I believe they are not confidential.

7          MR. BOISE:  Exactly, Your Honor.

8          THE COURT:  Okay.  So, then, Mr. Huck, I think it is

9     on you now to come back with, well, no, you don't need them for

10    your amended complaint, or for whatever reason they should

11    remain confidential.

12         Am I wrong?

13         MR. HUCK:  Your Honor, if all the Plaintiffs need to

14    do is say we don't think they are confidential and we want to

15    attach them because we need to put them in our complaint, if

16    that is what is sufficient under the protective order for them

17    to say why it is not confidential then -- which I don't agree

18    with -- but if that is what meets the threshold, then, yes,

19    Your Honor, we would have a meet and confer about it and either

20    agree or disagree.

21         But, I don't think just saying I need it because I

22    want to attach it to my complaint.  Most complaints, other

23    than, you know, if it were a breach of contract action, we

24    would attach the actual operative contract, that might be a

25    document which is necessary for a complaint.  But most

1  complaints aren't necessary to attach extraneous material even

2  if allegations in the complaint are based on them.

3         So I don't agree with the premise -- Mr. Boise's

4  premise that just by attaching it as an exhibit, I have done

5  enough to say why I don't think it should be confidential.

6         But if that were enough, then, yes, then we would --

7  the burden would be on us to in the meet and confer to explain

8  why.  And then, if we didn't reach an agreement, then we would

9  come before the Court with that.

10        Because, otherwise, I mean, if you take it to a

11 logical extension, any time you have let's see you have -- to

12 use the example that was I think earlier, the Coca-cola secret

13 formula.

14        THE COURT:  Right.

15        MR. HUCK:  You know, I would just attach the formula

16 as an exhibit to my complaint.  Therefore, it is not

17 confidential.

18        THE COURT:  Right.

19        MR. HUCK:  That can't be the rule, obviously.

20        MR. BOISE:  Your Honor, that's not the rule we are

21 talking about here.  That really is not anything like close to

22 what we are talking about.

23        I said at the outset --

24        MR. HUCK:  I understand that .  I understand it.  I

25 was just taking it to the logical extreme.

1        MR. BOISE:  But I'm saying I think -- and I said this

2   at the outset.  I think there are certain materials that are

3   properly designated as confidential and can be sealed even if

4   they are part of the Court document.

5        But under the law and I think constitutionally that

6   threshold is very high and we are talking about 26 documents.

7   We are not talking about a huge number of documents.

8        I think the designated party ought to bear the burden

9   of justifying why they are continuing to claim confidentiality

10  on these documents.

11       THE COURT:  I think that's reasonable in this

12  particular case, Mr. Huck.  And I do think that that is really

13  going to end up being the most sufficient way to work here.

14       MR. HUCK:  Okay.  Your Honor, we will -- I guess what

15  we will do is we will have the universe of what will be, at

16  least for now, the deposition transcript for Mr. Cuban.

17       THE COURT:  Right.

18       MR. HUCK:  And then, the exhibits to the complaint and

19  the allegations, which we have identified as -- which we think

20  should be redacted for the publically filed complaint.

21       THE COURT:  Right.

22       MR. HUCK:  Right.

23       THE COURT:  The 26 exhibits.  Now as far as the five

24  that --

25       MR. HUCK:  Right.  Some of them we can't do that

1    because they are the Voyager ones.  So we will just focus on

2    the ones which are the ones that have been designated by the

3    Defendants.

4         THE COURT:  All right.  Just the ones that are

5    designated by Defendants.

6         And then, who does the Voyager, Mr. Boise?

7         MR. BOISE:  We will contact Voyager immediately after

8    this call and start the same process with them.

9         THE COURT:  Okay.  Very good.

10        Okay.  I think we have a plan.  What else do we need

11   to discuss today?

12        MR. BOISE:  We have an issue that Mr. Huck started to

13   raise, which was related to when they respond to our complaint.

14        Now, we do understand that the general rule is that

15   all people ought to respond at the same time.  However, in this

16   particular case, this case has been going on for many months.

17   They know what the complaint says.  They have had it for a

18   while.

19        We think they are the main Defendant here and that

20   they should answer the complaint and we can begin to move

21   forward.  We don't think that they ought to, in this particular

22   circumstance, wait until these three new people have been

23   served.

24        We could have filed a separate complaint against these

25   three people.  If we had filed a separate complaint against

1   these three people, it would have gone to Your Honor as a

2   belated case.  It would have been consolidated for discovery,

3   but they would not have been able to avoid answering the

4   existing complaint and we think that they ought to go forward.

5            The second issue which is related --

6            THE COURT:  So let me ask you this.

7            Hasn't Judge Altman already ruled on that issue?  That

8   in a multiple Defendant case, the parties must file their

9   answer and their timing is when the last Defendant is served.

10            MR. BOISE:  Yes, Your Honor.  He has ruled on that.

11            He has not, I believe, ruled on that in the specific

12   context of these three people who have been added late where

13   they have the amended complaint.  And perhaps that we need to

14   in view of Judge Altman's order perhaps we need to refer to

15   this to Judge Altman.

16            But we think that what he ruled before was not

17   applicable here.  But I understand the point that the Court is

18   making about Judge Altman already having focused on this.

19   Although, in our view, in a different context.

20            MR. HUCK:  I would just reiterate, yes, Judge Altman

21   has already ruled on this.  The Plaintiffs would be asking this

22   Court to contradict that order by Judge Altman which --

23            THE COURT:  I'm not that brave.

24            MR. HUCK:  I was going to say I would not ask you to

25   do that.  I don't think Mr. Boise is really asking you to do

1  that.

2          MR. BOISE:  I wasn't meaning to --

3          MR. HUCK:  That's going to create confusion.  That's

4  going to create a lot of confusion in the case.

5          THE COURT:  Okay.  All right.

6          MR. BOISE:  I wasn't meaning, Your Honor, to ask the

7  Court obviously to overrule Judge Altman and I withdraw the

8  request in court as to the issue as to who the appropriate

9  recipient of our application is.

10         The other issue is one which I think Judge Altman has

11 already also ruled on and this time in our favor, which is

12 whether discovery should go forward.  I think that it is clear

13 from Judge Altman's prior rulings that he has ruled that

14 discovery is to go forward and is not to be stayed pending

15 answers or further motions.

16         THE COURT:  I will agree with that.

17         Is there any dispute as to that?

18         MR. HUCK:  Yes, Your Honor.

19         In terms of efficiency.  So the scheduling order is

20 vacated.  So we don't have any of the kind of looming and

21 impending deadlines which were coming up in which everybody was

22 aware of.

23         And in the order vacating the scheduling order the

24 Judge said -- Judge Altman said that the Defendants had asked

25 the Court to vacate the operative scheduling order so that the

1    newly added Defendants could have input on the schedule and the

2    Court can most efficiently coordinate adjudication of the

3    Plaintiffs' claims against all of the Defendants and the Court

4    also added and that makes sense.

5           So while discovery is not stayed what makes sense is

6    to the extent we are going to be proceeding with discovery

7    relating, for example, with depositions where normally all the

8    parties would attend the deposition or at least have notice of

9    it and choose to attend or not.

10          And whether that is of another party or of a third

11   party, it makes sense to have that coordinated with all the

12   parties once they are before the Court.

13          And so, we think it makes sense if we are going to

14   proceed with depositions to do it once everybody is kind of

15   under the umbrella of the Court and can participate in it.

16          Because, otherwise, you are going to hear objections

17   from these new Defendants at some point.  Hey, I didn't have an

18   opportunity to participate in that deposition and I have a due

19   process right to participate in that deposition.  We've got to

20   do it over again and that doesn't make any sense from an

21   efficiency standpoint.

22          THE COURT:  Well --

23          MR. MOSKOWITZ:  Your Honor, if I can briefly respond

24   to that because I think we've talked to Mr. Huck about this.

25   We don't want delay.  That's clearly what we want.  You know,

1   when Ron Kalski joins the case, I really don't think his

2   concerns are going to be that he wasn't there for a deposition

3   that was taken.

4        But what we have said to them is let's just get the

5   documents from the NBA.  We have a subpoena.  We want the

6   documents.  Of course the new Defendants would love to see what

7   documents are there as well.  Meaning, you can't really imagine

8   that they are going to be against asking the NBA did you

9   approve this deal?

10       So what we have agreed to already to be reasonable is

11  let us get the documents from the NBA and we will put off the

12  deposition.  Let's just get the documents so that we stop

13  staying this case for now four months because the Judge has

14  said there is no stay to discovery.

15       So you can't sort of hypothetically say Mr. Ron Kalski

16  who we don't represent may somehow have a problem with getting

17  additional discovery because we finally served the NBA with the

18  subpoena.  They have the subpoena.

19       We invited them to come today like we did with Mr.

20  Ehrlich.  When Mr. Ehrlich had problems, Your Honor addressed

21  him as well and we would like to see those documents from the

22  NBA.  I can't imagine there would be any prejudice to anybody

23  to just get more information on these relevant issues.

24       MR. HUCK:  Your Honor, may --

25       THE COURT:  Let me try and make sure I understand what

1    you are saying, Mr. Moskowitz.  You are saying, okay, I will

2    agree that some discovery could be stayed for now until the

3    three Defendants are served, but I want my subpoena to the NBA

4    to go forward.

5         Do I understand that correctly?

6         MR. MOSKOWITZ:  Yes, Your Honor.

7         The reason I say it is because we would have served

8    them last week.  I asked Paul Huck when we had the call for the

9    hearing, what do you want me to do because I don't want to

10   violate something for Judge Reid before she rules on what is

11   redacted or not.  What do you think?

12        He did not say you could go ahead and serve that with

13   an unredacted copy.  We heard that last night.  So tomorrow we

14   are going to serve them.

15        But, yes, Your Honor, I would like to at least go

16   forward with the document requests and we will put off the depo

17   of the NBA and the corporate rep of the Mavericks until we

18   serve them, which will be next week.

19        THE COURT:  Right.  Fine.

20        MR. HUCK:  May I just respond?  If I can just respond

21   for a second.  As to the NBA, I don't represent the NBA.  I

22   think the subpoena issued out of the Southern District of New

23   York and whatever issues are going to relate to -- and I think

24   they objected to it or, you know, responded to it in some way.

25        I think that all gets litigated up there.  So, you

1  know, that is beyond the purview of this hearing, I believe.

2          As to this is the second time I've heard it, you know,

3  what I specifically said to Mr. Moskowitz during our

4  conversation is that there are lots of different ways to skin a

5  cat.

6          I apologize, Your Honor, that I didn't particularly

7  that I have this one during my conversation with Mr. Moskowitz

8  in terms of serving the unredacted on the new parties.

9          So *mea culpa* on that one for not having come up with

10  every single way to skin a cat.  I don't think Mr. Moskowitz

11  had come up with it either during our conversation.

12          So I apologize to the Court for that.  But getting

13  back to the NBA, I think that is going to get litigated up in

14  the Southern District of New York to the extent anything gets

15  litigated about it.  I think the subpoena is already issued.

16          THE COURT:  Let me just get some clarification.

17          Mr. Moskowitz, are you talking about a New York

18  subpoena?

19          MR. MOSKOWITZ:  We served a subpoena with them.

20          And if they want to raise some type of connective

21  order like Mr. Ehrlich, we are absolutely happy to go to

22  whatever court they may think (inaudible).

23          All we are discussing now, Your Honor, is Mark Cuban's

24  objection to that subpoena.

25          Obviously, you know, any other issue with any other

 1   court, we will deal with.  We went to Connecticut District

 2   Court and we defeated Mr. Ehrlich's protective order.  If the

 3   NBA files anything in another court, we will deal with that.

 4          All we are asking Your Honor is Mr. Cuban also said I

 5   object to the NBA subpoena.  To the extent that they have an

 6   objection, we would certainly like Your Honor just to overrule

 7   their objection.

 8          MR. BOISE:  Or, Your Honor, if I could --

 9          THE COURT:  Can I ask one question first?

10          Because what I have, I have a document responsive

11   objections of the nonparty National Basketball Association to a

12   Rule 45 subpoena to testify at a deposition in a civil action.

13          And that is a document that seems to be purported to

14   be filed here or with regard to the Southern District of

15   Florida.

16          I'm just trying to understand where that document

17   comes into play.  Are we talking about the deposition or just

18   the subpoena for --

19          MR. BOISE:  Your Honor, I think that document is a

20   document that if we can't resolve things with the NBA we would

21   bring before Your Honor to resolve.  I think for purposes of

22   today's hearing all we have to do is say that with respect to

23   document issues, there is no stay.

24          And this is one of the few instances in which Mr.

25   Moskowitz is taking a softer line than I am.  I would have

1  thought that the deposition can go ahead as well, but I agree

2  with him that we can put off the depositions until we serve

3  these people, which we will do promptly.

4       But, I think the key thing is that there is no general

5  stay of discovery.  I think that is what Judge Altman has ruled

6  and I think that is what is appropriate.

7       MR. HUCK:  And Your Honor, our objection is the NBA

8  was primarily because of the deposition issue.

9       THE COURT:  Okay.  So we are all in agreement then

10  that it is okay to proceed with the subpoena for the documents.

11  That's wonderful.  I am very happy to hear that.

12       MR. HUCK:  Thank you, Your Honor.

13       THE COURT:  Anything else?

14       MR. BOISE:  Nothing from us, Your Honor.

15       THE COURT:  Okay.  But, yes, with respect to

16  everything else, I certainly agree that there is no stay in

17  discovery simply because there is no order setting deadlines

18  for discovery doesn't mean that the stay that I expect the

19  parties to proceed accordingly.

20       Okay.  Very good.

21       MR. BOISE:  Thank you, Your Honor.

22       THE COURT:  It is a pleasure.  And hopefully all of

23  this will be resolved in the next two weeks and you won't need

24  me.

25       MR. BOISE:  That will be our goal.

1          THE COURT:  That will be the goal.  But, anyway, it is

2    a pleasure.  Have a good afternoon.

3          MR. BOISE:  Thank you, Your Honor.

4          MR. MOSKOWITZ:  Thank you very much, Your Honor.  We

5    appreciate the time.

6          THE COURTROOM DEPUTY:  Court is in recess.

7           (Thereupon, the proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5   accurate transcript of the audio recorded proceedings in the

6   above-entitled matter.

7

8

9

10  06/23/23                          Bonnie Joy Lewis,
                              Registered Professional Reporter
11                               CASE LAW REPORTING, INC.
                                7001 Southwest 13 Street,
12                              Pembroke Pines, Florida 33023
                                     954-985-8875
13

14

15

16

17

18

19

20

21

22

23

24

25