# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**Case No: 1:22-cv-22538 (Altman/Reid)**

| |
|---|
| PIERCE ROBERTSON, *et al.*, |
| Plaintiffs, |
| v. |
| MARK CUBAN, *et al.*, |
| Defendants. |

# DEFENDANTS' OMNIBUS
# MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
# AND INCORPORATED MEMORANDUM OF LAW AND REQUEST FOR HEARING

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

ALLEGATIONS OF THE SECOND AMENDED COMPLAINT ...........................2

    I.      Voyager's Cryptocurrency Platform and Earn Program Accounts........................ 2

    II.     Allegations Regarding the Mavs and Mark Cuban................................ 3

    III.   Allegations Regarding Victor Oladipo .................................. 4

    IV.   Allegations Regarding Robert Gronkowski .............................. 4

LEGAL STANDARD ....................................................................................5

ARGUMENT .............................................................................................6

    I.      Plaintiffs State No Viable Securities Law Claims. ................................. 6

         A.    The Voyager EPAs Are Not Securities.................................... 6

             1.     The Voyager EPAs Are Commodities, Not Securities. .................. 6

             2.     The Voyager EPAs Are Not Investment Contracts Under *Howey*. .................................................... 7

             3.     The Voyager EPAs Are Not Security Notes Under *Reves*. .......... 10

         B.    Defendants' "Promotion" Does Not Give Rise to "Seller" Liability........ 12

         C.    Defendants Are Not Secondarily Liable. ................................. 17

    II.     Plaintiffs State No Viable Consumer Fraud and Deceptive Trade Practice Claims. ......................................................... 21

         A.    Plaintiffs Fail to Allege Consumer Fraud With Particularity Under Rule 9(b). ...................................................... 22

         B.    Defendants' Alleged Conduct Is Not Unfair, Deceptive, or Unlawful. ........................................................... 24

             1.     The Mavs' Statements Are Not Materially Misleading................. 24

             2.     Plaintiffs Do Not Allege Unlawful Conduct Attributed to Oladipo....................................................... 25

             3.     Plaintiffs Fail to Allege Unlawful Conduct By Gronkowski........ 25

         C.    Plaintiffs Fail to Plead Causation and Damages. ....................... 27

         D.    The Court Should Strike State Law Claims Asserted Under the Laws of States in Which No Plaintiff Resides................................... 29

    III.   Cuban and the Mavs Did Not Promote VGX. ....................................... 30

    IV.   Plaintiffs State No Viable Conspiracy Claims........................................ 30

    V.    Plaintiffs State No Viable Claim Under the DJA. ................................. 31

VI.     Plaintiffs' SAC Is an Impermissible "Shotgun" Pleading. ................................... 31

VII.    Voyager is a Necessary Third Party Under Rule 19. ............................................ 32

VIII.   The Mavs and Cuban Should be Dismissed for Lack of Personal
        Jurisdiction. ....................................................................................................... 33

        A.      No Jurisdiction Under Florida Long-Arm Statute. ................................... 33

        B.      Defendants Cannot Satisfy Due Process Standard of Purposeful
                Availment. ................................................................................................ 34

        C.      Fiduciary Shield Doctrine Confirms Lack of Jurisdiction
                Over Cuban. ............................................................................................. 35

**CONCLUSION** ...........................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*,
    511 So.2d 992 (Fla. 1987)..................................................................................................33

*Alfasigma USA, Inc. v. EBM Med., LLC*,
    2018 WL 1604961 (E.D. La. Apr. 3, 2018) .......................................................................21

*Alunni v. Dev. Res. Grp., LLC*,
    2009 WL 2579319 (M.D. Fla. Aug. 18, 2009) ....................................................................7

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ...........................................................................5, 23, 24, 27

*Am. Express Bank, FSB v. Martin*,
    200 A.3d 87 (Pa. Super. 2018)...........................................................................................22

*AnywhereCommerce, Inc. v. Ingenico Inc.*,
    2023 WL 2694043 (D. Mass. Mar. 29, 2023)....................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................5

*Asset Prot. Plans, Inc. v. Oppenheimer & Co.*,
    2011 WL 2533839 (M.D. Fla. June 27, 2011)..........................................................10, 11, 12

*Baker v. Summit Bank*,
    64 F. Supp. 2d 466 (E.D. Pa. 1999) ...................................................................................22

*Banco Espanol de Credito v. Sec. Pac. Nat'l Bank*,
    763 F. Supp. 36 (S.D.N.Y. 1991).................................................................................8, 10

*Banco Espanol de Credito v. Sec. Pac. Nat'l Bank*,
    973 F.2d 51 (2d Cir. 1992)...........................................................................................11, 12

*Baptist Hosp., Inc. v. Baker*,
    84 So. 3d 1200 (Fla. Dist. Ct. App. 2012) .........................................................................21

*Barbachano v. Standard Chartered Bank Int'l (Americas) Ltd.*,
    2014 WL 29595 (S.D. Fla. Jan. 3, 2014) ...........................................................................32

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................5

*Beltram v. Shackleford, Farrior, Stallings & Evans*,
    725 F. Supp. 499 (M.D. Fla. 1989)................................................................13, 16

*Benedict v. Amaducci*,
    1995 WL 413206 (S.D.N.Y. July 12, 1995) ..............................................................12

*Benson v. JPMorgan Chase Bank, N.A.*,
    2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) ..........................................................26

*Berkebile v. Brantly Helicopter Corp.*,
    337 A.2d 893 (Pa. 1975)...........................................................................................27

*Billions v. White and Stafford Furniture Co., Inc.*,
    528 So.2d 878 (Ala. Civ. App. 1988) .......................................................................28

*Blackwell v. Kleemann*,
    2010 WL 11507770 (M.D. Fla. July 1, 2010) ..........................................................33

*Bowen v. Ziasun Techs., Inc.*,
    116 Cal. App. 4th 777 (2004) ...................................................................................22

*Brand Coupon Network, LLC v. Cataline Mkg. Corp.*,
    2014 WL 6674034 (M.D. La. Nov. 24. 2014) .........................................................22

*Brichant v. Wells Fargo Bank, N.A.*,
    2012 WL 4461668 (M.D. Tenn. Sept. 25, 2012) .....................................................28

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ...................................................................22, 23, 24

*Brown v. Rairigh*,
    363 So. 2d 590 (Fla. Dist. Ct. App. 1978) ..................................................................6

*Bruhl v. Pricewaterhousecoopers, Int'l*,
    2007 WL 997362 (S.D. Fla. Mar. 27, 2007)............................................................24

*California Med. Ass'n v. Aetna Health of California Inc.*,
    532 P.3d 250 (Cal. 2023) ..........................................................................................28

*Carmouche v. Carnival Corp.*,
    36 F. Supp.3d 1335 (S.D. Fla. 2014) ........................................................................33

*Carroll v. Diamond Resorts Mgmt. Inc.*,
    2015 WL 11202373 (S.D. Fla. Oct. 19, 2015)..........................................................18

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ................................................................................25

*Casper Sleep, Inc. v. Mitcham*,
 204 F. Supp. 3d 632 (S.D.N.Y. 2016) .................................................................................26

*In re Cendant Corp. Sec. Litig.*,
 190 F.R.D. 331 (D.N.J. 1999) ...............................................................................................16

*Checchio v. Evermore Fitness, LLC*,
 271 A.3d 829 (N.J. App. Div. 2022) ...................................................................................19

*In re Checking Acct. Overdraft Litig.*,
 694 F.Supp.2d 1302 (S.D. Fla. 2010) ..................................................................................29

*In re CNL Hotels & Resorts, Inc.*,
 2005 WL 2291729 (M.D. Fla. Sept. 20, 2005) ....................................................................13

*Cocklereece v. Moran*,
 532 F. Supp. 519 (N.D. Ga. 1982) .......................................................................................11

*Contour Prods., Inc. v. Albecker*,
 2009 WL 10646653 (S.D. Fla. Jun. 2, 2009) .......................................................................33

*Cooper v. King*,
 1997 WL 243424 (6th Cir. May 9, 1997) ..............................................................................9

*Dabush v. Mercedes-Benz USA, LLC*,
 874 A.2d 1110 (N.J. Super. Ct. App. Div. 2005)..................................................................28

*Dane v. UnitedHealthcare Ins. Co.*,
 974 F.3d 183 (2d Cir. 2020)..................................................................................................29

*Day v. Taylor*,
 400 F.3d 1272 (11th Cir. 2005) ...........................................................................................25

*De Ford v. Koutoulas*,
 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023) .....................................................................13

*Deckebach v. La Vida Charters, Inc. of Fla.*,
 867 F.2d 278 (6th Cir. 1989) .................................................................................................7

*Devane v. L'Oreal USA, Inc.*,
 2020 WL 5518484 (S.D.N.Y. Sept. 14, 2020).....................................................................22

*Dillon v. Axxys Int'l, Inc.*,
 385 F. Supp. 2d 1307 (M.D. Fla. 2005).....................................................................16, 20, 21

*Dinaco, Inc. v. Time Warner, Inc.*,
 346 F.3d 64 (2d Cir. 2003).....................................................................................................18

*Doe v. SuccessfulMatch.com*,
 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ............................................................21, 24

*Dolan v. PHL Variable Ins. Co.*,
 2017 WL 4812308 (M.D. Pa. Oct. 25, 2017) ...........................................................22

*Dreyfuss v. Dreyfuss*,
 701 So. 2d 437 (Fla. Dist. Ct. App. 1997) ...............................................................18

*Dubois v. Maritimo Offshore Pty Ltd.*,
 422 F. Supp. 3d 545 (D. Conn. 2019).......................................................................22

*Durell v. Sharp Healthcare*,
 183 Cal. App. 4th 1350 (2010) ...........................................................................24, 28

*eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*,
 519 F. Supp. 3d 1129 (S.D. Fla. 2021) .....................................................................13

*Edwards v. McMillen Cap., LLC*,
 574 F. Supp. 3d 52 (D. Conn. 2021).........................................................................28

*Elson v. Geiger*,
 506 F. Supp. 238 (E.D. Mich. 1980)...........................................................................9

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
 633 F. Supp. 3d 425 (D. Mass. 2022) .......................................................................21

*In re Ethereummax Investor Litig.*,
 2023 WL 6787827 (C.D. Cal. Jun. 6, 2023) ........................................................14, 25

*Farrell v. Royal Caribbean Cruises, Ltd.*,
 2013 WL 178242 (S.D. Fla. Jan. 2, 2013) ................................................................20

*Fed. Trade Comm'n Fla. v. All US Mktg. LLC*,
 2017 WL 2256650 (M.D. Fla. May 22, 2017)...........................................................26

*Fed. Trade Comm'n v. All US Mktg. LLC*,
 2017 WL 9398643 (M.D. Fla. Apr. 13, 2017)...........................................................26

*Feldman v. BRP US, Inc.*,
 2018 WL 8300534 (S.D. Fla. Mar. 28, 2018)...........................................................29

*Feng v. Walsh*,
 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021) ...........................................................22

*Fernau v. Enchante Beauty Prod., Inc.*,
 847 F. App'x 612 (11th Cir. 2021) ...........................................................................23

*First Citizens Fed. Sav. & Loan Ass'n v. Worthen Bank & Tr. Co., N.A.*,
    919 F.2d 510 (9th Cir. 1990) ...................................................................................8

*Fitzpatrick v. Vital Pharms., Inc.*,
    2021 WL 6776238 (S.D. Fla. June 7, 2021) ..........................................................24

*Gavigan v. Celebrity Cruises, Inc.*,
    843 F.Supp.2d 1254 (S.D. Fla. 2011) ....................................................................20

*Goldschmidt v. Holman*,
    571 So.2d 422 (Fla. 1990)......................................................................................19

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*,
    485 F.3d 1233 (11th Cir. 2007) .............................................................................13

*Gurwell v. Sea World Parks & Ent. LLC*,
    2021 WL 4168503 (E.D. Va. Aug. 11, 2021) ........................................................22

*Hampton v. Gen. Motors, LLC*,
    631 F. Supp. 3d 1041,1049-50 (E.D. Okla. 2022) ................................................21

*Harding v. BMW of N. Am., LLC*,
    2020 WL 5039439 (M.D. Tenn. Aug. 26, 2020) ...................................................22

*Harman v. Harper*,
    1990 WL 121073 (9th Cir. Aug. 21, 1990).........................................................8, 9

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999) .................................................................................5

*Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*,
    2020 WL 12991889 (Va. Cir. Ct. Nov. 13, 2020) .................................................28

*Hines v. FiServ, Inc.*,
    2010 WL 1249838 (M.D. Fla. Mar. 25, 2010) ......................................................21

*Hoffman v. Hampshire Labs, Inc.*,
    963 A.2d 849 (N.J. App. Div. 2009).......................................................................21

*Hosner v. State*,
    353 So. 3d 74 (Fla. Dist. Ct. App. 2022) .................................................................6

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*,
    660 F. App'x 850 (11th Cir. 2016) .........................................................................27

*Intelligent Digit. Sys., LLC v. Visual Mgmt. Sys., Inc.*,
    683 F. Supp. 2d 278 (E.D.N.Y. 2010) ................................................................9, 12

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
224 So. 3d 316 (Fla. Dist. Ct. App. 2017) ............................................................12

*Jeanne Piaubert v. Sefrioui*,
2000 WL 194149 (9th Cir. Feb. 17, 2000) ............................................................11

*Kahan Novoa v. Safra Nat. Bank of New York*,
313 F. Supp. 2d 1347 (S.D. Fla. 2003) ................................................................19

*Kitroser v. Hurt*,
85 So. 3d 1084 (Fla. 2012).....................................................................................35

*KrunchCash LLC v. Craig*,
2023 WL 2487230 (S.D. Fla. Mar. 13, 2023) ......................................................34

*Kumbrink v. Hygienic Corp.*,
2016 WL 5369334 (S.D. Fla. Sept. 26, 2016) ......................................................34

*Laker Airways, Inc. v. Brit. Airways, PLC*,
182 F.3d 843 (11th Cir. 1999) ..............................................................................32

*Lee v. Enter. Fin. Grp.*,
2009 WL 1362605 (W.D. Okla. May 14, 2009) ....................................................22

*Lee v. First Union Nat. Bank*,
971 A.2d 1054 (N.J. 2009).....................................................................................22

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
306 F. Supp. 3d 629 (S.D.N.Y. 2018)...................................................................26

*Lombardo v. Johnson & Johnson Consumer Companies, Inc.*,
124 F. Supp. 3d 1283 (S.D. Fla. 2015) ................................................................28

*Louis Vuitton Malletier, S.A. v. Mosseri*,
736 F.3d 1339 (11th Cir. 2013) ......................................................................33, 34

*Lynn v. Christner*,
184 F. App'x 180 (3d Cir. 2006)...........................................................................30

*Lynn v. Fort McClellan Credit Union*,
2013 WL 5707372 (N.D. Ala. Oct. 21, 2013) ......................................................21

*Madison v. Hollywood Subs, Inc.*,
997 So. 2d 1270 (Fla. Dist. Ct. App. 2009) .........................................................19

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
2011 WL 4389689 (C.D. Cal. May 5, 2011) ........................................................15

*Marksman Sec. Corp. v. P.G. Sec., Inc.*,
2021 WL 6498217 (S.D. Fla. Oct. 12, 2021) ........................................................................25

*Martorana v. Progressive Direct Ins. Co.*,
2023 WL 2465639 (D. Mass. Mar. 10, 2023) ........................................................................22

*Marty v. Anheuser-Busch Cos., LLC*,
43 F. Supp. 3d 1333 (S.D. Fla. 2014) ..................................................................................27

*Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.*,
376 N.J. Super. 48. (App. Div. 2005) ..................................................................................31

*Melton v. Century Arms, Inc.*,
243 F. Supp. 3d 1290 (S.D. Fla. 2017) ................................................................................13

*Meshinsky v. Nichols Yacht Sales, Inc.*,
541 A.2d 1063 (N.J. 1988) ..................................................................................................29

*Mobil Oil Corp. v. Bransford*,
648 So. 2d 119 (Fla. 1995) ..................................................................................................19

*Molinos Valle Del Cibao, C. por A. v. Lama*,
633 F.3d 1330 (11th Cir. 2011) .....................................................................................32, 33

*Montcalm Cnty. Bd. of Comm'rs v. McDonald & Co. Sec., Inc.*,
833 F. Supp. 1225 (W.D. Mich. 1993) ................................................................................13

*In re Moon*,
1997 WL 34625685 (E.D. Va. Dec. 17, 1997) ....................................................................22

*Munifi v. Abraham*,
2022 WL 1422813 (C.D. Cal. Apr. 19, 2022) ......................................................................22

*Orkin Exterminating Co. v. DelGuidice*,
790 So. 2d 1158 (Fla. Dist. Ct. App. 2001) ........................................................................29

*People v. Park*,
151 Cal. Rptr. 146 (Cal. Ct. App. 1978) ..............................................................................18

*Piccioli v. Faust Heating & A/C Co.*,
2023 WL 3270881 (Pa. Super. Ct. May 5, 2023) ................................................................28

*Pinter v. Dahl*,
486 U.S. 622 (1988) ..........................................................................................13, 15, 16

*Pop v. Lulifama.com LLC*,
2023 WL 4661977 (M.D. Fla. July 20, 2023) ......................................................................28

*Porter v. Porter*,
  821 So. 2d 663 (La. Ct. App. 2002)................................................................18

*Portes v. Tan*,
  2014 WL 463140 (N.J. Super. Ct. App. Div. Feb. 6, 2014) ....................................30

*Prunty v. Arnold & Itkin LLP*,
  753 F. App'x 731 (11th Cir. 2018) .................................................................33

*Rafferty v. Merck & Co., Inc.*,
  92 N.E.3d 1205 (Mass. 2018) .......................................................................28

*Reeder v. Palmer*,
  917 F.2d 560 (5th Cir. 1990) ........................................................................10

*Reeder v. Succession of Palmer*,
  736 F. Supp. 128 (E.D. La. 1990) ..................................................................10

*Regenicin, Inc. v. Lonza Walkersville, Inc.*,
  997 F. Supp. 2d 1304 (N.D. Ga. 2014) ...........................................................22

*Rego Indus., Inc. v. Am. Modern Metals Corp.*,
  91 N.J. Super. 447 (App. Div. 1966) ..............................................................31

*Rensel v. Centra Tech, Inc.*,
  2019 WL 2085839 (S.D. Fla. May 13, 2019) ................................................13, 16

*In re Rensin*,
  600 B.R. 870 (Bankr. S.D. Fla. 2019) .........................................................32, 33

*Reott v. Asia Trend, Inc.*,
  55 A.3d 1088 (Pa. 2012)..............................................................................27

*Reves v. Ernst & Young*,
  494 U.S. 56 (1990)........................................................................... *passim*

*Rinker v. Carnival Corp.*,
  836 F.Supp.2d 1309 (S.D. Fla. 2011) .............................................................20

*Robinson Helicopter Co., Inc. v. Gangapersaud*,
  346 So. 3d 134 (Fla. Dist. Ct. App. 2022) ........................................................33

*Robinson v. Sunshine Homes, Inc.*,
  291 P.3d 628 (Okla. Civ. App. 2010) ..............................................................28

*Russell v. Dean Witter Reynolds, Inc.*,
  510 A.2d 972 (Conn. 1986) ..........................................................................22

*Salit Auto Sales, Inc. v. CCC Intelligent Sols. Inc.*,
  2021 WL 3783110 (D.N.J. Aug. 26, 2021) ...................................................................27

*Scott v. Experian Info. Sols., Inc.*,
  2018 WL 3360754 (S.D. Fla. June 29, 2018) ...............................................................35

*In re Seagate Tech. LLC Litig.*,
  233 F. Supp. 3d 776 (N.D. Cal. 2017) ........................................................................27

*SEC v. Ripple Labs, Inc.*,
  2023 WL 4507900 (S.D.N.Y. July 13, 2023) ...............................................6, 8, 9, 10

*SEC v. Telegram Grp. Inc.*,
  448 F. Supp. 3d 352 (S.D.N.Y. 2020)...................................................................9, 10

*SEC v. Terraform Labs Pte. Ltd.*,
  2023 WL 4858299 (S.D.N.Y. July 31, 2023) ...................................................6, 8, 9

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946)..................................................................................... *passim*

*Seeman v. Oxfordshire*,
  LLC, 2011 WL 8956202 (Vir. Cir. Ct. Oct. 12, 2011) ...............................................22

*Slater v. A.G. Edwards & Sons, Inc.*,
  719 F.3d 1190 (10th Cir. 2013) ..................................................................................15

*Smit v. Charles Schwab & Co.*,
  2011 WL 846697 (N.D. Cal. Mar. 8, 2011)..................................................................29

*Smith v. Cooper/T. Smith Corp.*,
  846 F.2d 325 (5th Cir. 1988) ......................................................................................22

*Smith v. Wells Fargo Bank, N.A.*,
  158 F. Supp. 3d 91 (D. Conn. 2016)...........................................................................21

*Solomon v. Blue Cross & Blue Shield Ass'n*,
  574 F. Supp. 2d 1288 (S.D. Fla. 2008) .......................................................................23

*Source Prod. & Equip. Co. v. Schehr*,
  612 F. Supp. 3d 646 (E.D. La. 2020)...........................................................................28

*State Farm Mut. Auto. Ins. Co. v. Performance Ortho. & Neurosurgery, LLC*,
  278 F. Supp. 3d 1307 (S.D. Fla. 2017) ..................................................................22, 24

*Student A v. Liberty Univ.*,
  602 F. Supp. 3d 901 (W.D. Va. 2022) .........................................................................21

*Suchanek v. Sturm Foods, Inc.*,
  2018 WL 6617106 (S.D. Ill. July 3, 2018) ...............................................................28

*Sync Labs LLC v. Fusion Mfg.*,
  2013 WL 4776018 (D.N.J. Sept. 4, 2013) ...................................................................6

*In re: Takata Airbag Prod. Liab. Litig.*,
  2016 WL 1266609 (S.D. Fla. Mar. 11, 2016)...........................................................29

*Teed v. Chen*,
  2022 WL 16839496 (N.D. Cal. Nov. 9, 2022) ...........................................................15

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F.Supp.2d 1365 (S.D. Fla. 2001) .......................................................................29

*Thompson v. Procter & Gamble Co.*,
  2018 WL 5113052 (S.D. Fla. Oct. 19, 2018).............................................................24

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  695 F. Supp. 2d 1165 (D.N.M. 2010) .......................................................................15

*Tietsworth v. Sears, Roebuck & Co.*,
  2009 WL 3320486 (N.D. Cal. Oct. 13, 2009).............................................................27

*TocMail Inc. v. Microsoft Corp.*,
  2020 WL 9210739 (S.D. Fla. Nov. 6, 2020)...............................................................27

*Tolentino v. Mossman*,
  2007 WL 4404447 (E.D. Cal. Dec. 13, 2007) .............................................................7

*TSI Prod., Inc. v. Armor All/STP Prod. Co.*,
  2019 WL 4600310 (D. Conn. Sept. 23, 2019)............................................................27

*Tucker v. Sierra Builders*,
  180 S.W.3d 109 (Tenn. Ct. App. 2005) ....................................................................21

*Turk v. Pershing LLC*,
  2014 WL 12572906 (N.D. Tex. Dec. 8, 2014) ....................................................20, 21

*U.S. Legal Support, Inc. v. Hofioni*,
  2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ...........................................................22

*Underwood v. Coinbase Glob., Inc.*,
  2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023)...............................................................15

*Union Nat'l Bank of Little Rock v. Farmers Bank, Hamburg, Ark.*,
  786 F.2d 881 (8th Cir. 1986) .....................................................................................8

*Urling v. Helms Exterminators, Inc.*,
   468 So. 2d 451 (Fla. Dist. Ct. App. 1985) ............................................................29

*Vliet v. Liberty Mut. Pers. Ins. Co.*,
   2022 WL 768156 (E.D. Pa. Mar. 14, 2022).......................................................21

*Volt, LLC v. Volt Lighting Grp. LLC*,
   369 F. Supp. 3d 1241 (M.D. Fla. 2019).............................................................34

*W.H. v. R.C.*,
   2020 WL 1041390 (D.N.J. Mar. 4, 2020)..........................................................31

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ........................................................................32

*Warren v. Ajax Navigation Corp.*,
   1995 WL 688421 (S.D. Fla. Feb.3, 1995) .........................................................20

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
   792 F.3d 1313 (11th Cir. 2015) ........................................................................31

*Weingartner v. Draper James LLC*,
   2016 WL 8678544 (S.D. Fla. Oct. 4, 2016).......................................................34

*Wiatt v. Winston & Strawn LLP*,
   838 F. Supp. 2d 296 (D.N.J. 2012) .............................................................30, 31

*Wildes v. BitConnect Int'l PLC*,
   25 F.4th 1341 (11th Cir. 2022) ...................................................................15, 16

*Williams v. Obstfeld*,
   314 F.3d 1270 (11th Cir. 2002) ........................................................................18

*In re Xunlei Ltd. Sec. Litig.*,
   2019 WL 4276607 (S.D.N.Y. Sept. 10, 2019)......................................................7

*Yachera v. Westminster Pharms., LLC*,
   477 F. Supp. 3d 1251 (M.D. Fla. 2020).............................................................27

*Youngers v. Virtus Inv. Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016).................................................................15

*Zendell v. Newport Oil Corp.*,
   544 A.2d 878 (N.J. App. Div. 1988)...................................................................13

**Statutes**

70 Pa. Stat.§ 1-502 .................................................................................................12

70 Pa. Stat. § 1-503 ...........................................................................................................17, 20

73 Pa. Stat. § 201-9.2 ...............................................................................................................29

Ala. Code §  8-6-17 ...................................................................................................................12

Ala. Code § 8-6-19 ...............................................................................................................17, 20

Ala. Code § 8-19-10 ..................................................................................................................28

Cal. Bus. & Prof. Code § 17082 ...............................................................................................28

Cal. Corp. Code § 25110 ...........................................................................................................12

Cal. Corp. Code § 25504 ...........................................................................................................17

Cal. Corp. Code § 25504.1 ....................................................................................................17, 20

Conn. Gen. Stat. § 36b-29 .................................................................................................12, 17, 20

Fla. Stat. § 48.193 .....................................................................................................................33

Fla. Stat. § 501.211 ...................................................................................................................28

Fla. Stat. § 517.211 .......................................................................................................... 12, 17, 20-21

La. Stat. § 51:714 ................................................................................................................17, 20

La. Stat. § 51:1409 ....................................................................................................................28

Mass. Gen. Laws ch. 93A, § 9 ..................................................................................................28

Mass. Gen. Laws ch. 110A, § 410 .....................................................................................12, 17, 20

N.J. Stat. § 2A:16-56 .................................................................................................................31

N.J. Stat. § 2A:16-57 .................................................................................................................31

N.J. Stat. § 49:3-51 ...................................................................................................................31

N.J. Stat. § 49:3-71(d) ......................................................................................................12, 17, 20

Okla. Stat. tit. 15, § 761.1 .........................................................................................................29

Okla. Stat. tit. 71, § 1-509 ....................................................................................................17, 20

Okla. Stat. tit. 71§ 1-102 ..........................................................................................................12

Tenn. Code § 47-18-109 .......................................................................................................22, 29

Tenn. Code § 48-1-104 ...................................................................................................12

Tenn. Code § 48-1-122 ..............................................................................................17, 20

Va. Code § 13.1-522 ...................................................................................................17, 20

Va. Code § 59.1-198 ........................................................................................................22

Va. Code § 59.1-204 ........................................................................................................29

**Regulations and Rules**

16 C.F.R. § 255.5 ............................................................................................................26

Fed. R. Civ. P. 9 ........................................................................................................ *passim*

Fed. R. Civ. P. 12 ..................................................................................................... 1-2, 32

Fed. R. Civ. P. 19 ................................................................................................... 1, 32-33

Defendants Mark Cuban, Dallas Basketball Limited d/b/a Dallas Mavericks (the "Mavs"), Robert Gronkowski, and Victor Oladipo ("Defendants") submit this Omnibus Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") and Memorandum of Law in Support Thereof (the "Omnibus Motion") under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), 12(b)(7) and 19.

## PRELIMINARY STATEMENT

Plaintiffs' core theory centers on the purported sale of unregistered securities in the form of Voyager's Earn Program Accounts ("EPA") and VGX token. But Defendants never sold these products—Voyager did. Under settled law, Defendants' alleged conduct comes nowhere near the exceptional level of participation required to be a "seller." *See* Point I.B. Plaintiffs' secondary securities liability theory is weaker still, as Defendants do not fall within the narrow category of qualifying relationships (*e.g.*, directors, officers, and agents). At most, the Mavs, Oladipo, and Gronkowski advertised Voyager's brand, not specific Voyager products. Cuban, personally, had no agreement with Voyager at all. No Defendant said anything substantive about VGX, and Gronkowski is not alleged to have said *anything* about the EPAs. *See* Point I.C.

The flaws in those claims run even deeper, as the EPAs are not securities: consistent with the Commodities and Futures Trading Commission's ("CFTC") recent public position in its lawsuit against Voyager CEO Stephen Ehrlich ("Ehrlich"), Voyager sold *commodities*, not securities. Voyager's EPAs allowed customers "to purchase, sell, trade, and store *digital asset commodities*," and Ehrlich allegedly unlawfully sold commodities in violation of the Commodity Exchange Act. *CFTC v. Ehrlich*, No. 23-cv-08962, ECF No. 1 at 9 (S.D.N.Y) (emphasis added; "CFTC Compl."). Voyager's EPAs, offered as an incentive to sign up customers, afford customers only a fixed rate of return, rather than any form of profit-sharing that depends on the issuer's efforts. Under Supreme Court precedent, this is not a security. Recent judicial decisions also confirm that cryptocurrency products are not inherently securities, and the "something more" that can turn a crypto transaction into a securities transaction is absent here. *See* Point I.A.

Plaintiffs' remaining potpourri of state law claims for "conspiracy," deceptive trade practices, consumer fraud, and the like suffer from defect after defect, while declaratory judgment relief is improperly invoked and indispensable party Voyager, of course, has not been and cannot be joined. *See* Points II-VII.

Beyond these omnibus bases for dismissal, there are yet simpler reasons to dismiss Cuban

and the Mavs. *First*, materials attached to the SAC make clear that Cuban and the Mavs expressly *rejected* the invitation to promote VGX, so there can be no liability associated as to that token. *See* Point III. *Second*, at all relevant times, Cuban never acted in his personal capacity but only as the Governor of the Mavs. Moreover, it is undisputed that he personally received no remuneration for the Mavs' sponsorship of Voyager. *Third*, this forum's law of personal jurisdiction would have to be twisted beyond recognition to retain Cuban and the Mavs in the case. Plaintiffs' allegations against them stem from conduct at an October 2021 press conference in Texas. The video was posted to YouTube, where certain Florida plaintiffs allegedly saw the video. Most notable about this theory is the total absence of any recognized jurisdictional hooks: the Mavs conducted no sales into Florida (they sold no products anywhere); they received no payments from Florida; one cannot purchase Voyager products on the Mavs' YouTube site; and the Mavs' sponsorship payment was a flat fee from Voyager, with no compensation tied to enrollment of Voyager customers in Florida or elsewhere. Rather than re-writing this Circuit's law to establish universal jurisdiction based on posting to a generally accessible website, the Court should dismiss the Mavs and Cuban. Cuban should also be dismissed for lack of jurisdiction because his alleged conduct consists of out-of-state acts undertaken in his corporate capacity with the Mavs. *See* Point VIII.

      With each new iteration, Plaintiffs' complaint has ballooned—more paragraphs, more bold type and exclamation points, more diatribes and fanciful rhetoric. But no matter how much noise a litigant makes—how many celebrities named, how many photos of famous athletes splattered across a complaint, how many issues of the day sounded off on—the courts are not an Instagram platform, the standard under Rule 12(b) still applies, and the SAC should be dismissed.

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

### I.    Voyager's Cryptocurrency Platform and Earn Program Accounts

      Founded in 2018, Voyager Digital Limited Canada, with its subsidiaries ("Voyager"), operates a crypto platform and phone application for the purchase, sale, trading, and storage of crypto (the "Voyager App").[1] Ehrlich, a former senior executive at E*Trade, co-founded Voyager and served as CEO and a Director. Since 2018, Voyager "quickly bec[a]m[e] one of the most utilized avenues for investors to purchase and invest in cryptocurrency." SAC ¶¶ 119, 121.

---

[1] Unless otherwise noted, allegations are taken from the SAC and its incorporated voluminous discovery, which the Court may consider on a motion to dismiss. *See* Legal Standard, *infra*. Plaintiffs attach 33 exhibits to the SAC, including the Voyager-Mavs Sponsorship Agreement, transcripts of the depositions of Cuban, Ehrlich and others. *See* ECF No. 155-1-33.

Plaintiffs allege Voyager falsely stated that it had deep pools of liquidity and that trades on its platform were commission-free. *Id.* ¶ 124-26. But Defendants did not make those statements.

In October 2019, to increase its customer base, Voyager began offering EPAs, allowing customers to earn rewards based on their crypto deposits. *Id.* ¶¶ 138-39. The EPAs are like savings accounts, with Voyager paying interest in the form of the crypto that customers held as principal.

## II.   Allegations Regarding the Mavs and Mark Cuban

In August 2021, Voyager contacted the Mavs to discuss a possible sponsorship. ECF No. 91, Mackey Decl. ¶ 3. Voyager and the Mavs negotiated a corporate sponsorship deal, but Cuban made clear that the Mavs would not promote a specific cryptocurrency (like VGX). ECF No. 155-30, Cuban Dep. Tr. ("Cuban Tr.") at 156:7-10, 156:18-24. In October 2021, the Mavs and Voyager Digital Ltd. entered into an official Sponsorship Agreement (the "Sponsorship Agreement"), which Plaintiffs attached to the SAC. ECF No. 155-2. The agreement specifically allocated ad space within the American Airlines Center where the Mavs agreed to display Voyager content, in exchange for a flat, season-based fee. *Id.* Exs. I, II (pp. 16-21). Though Plaintiffs name Cuban as a defendant, both the agreement and Cuban's deposition testimony—also attached to the SAC— show he was not a party to the Sponsorship Agreement, nor to any other agreement with Voyager. *See* ECF No. 155-2, Sponsorship Agr.; ECF No. 155-30, Cuban Tr. at 60:1-5.

On October 27, 2021, Ehrlich and Cuban met for the first time, and, live in Dallas, publicly announced Voyager and the Mavs' business arrangement. ECF No. 41-2, Cuban Decl. ¶ 5; SAC ¶¶ 200, 204. Ehrlich and Cuban discussed the sponsorship during the 30-minute event (the "Press Conference") (SAC ¶¶ 209-13), which none of the Plaintiffs allege they viewed live (*see id.* at ¶¶ 66-113). Cuban stated individuals should "always be careful" with their money and avoid "rush[ing] into" making significant deposits with Voyager. ECF No. 155-1 ("Press Conf. Tr.") at 19:6-7, 30:20-22. Cuban shared his perspective on USDC—a popular stable coin with a value tethered to the U.S. dollar—stating, "I'm not trying here to tell you it's 100% risk free, but it's as close to risk free as you're going to get in the crypto universe." *Id.* at 13:25-14:3. In discussing Voyager, Ehrlich stated, "Texas itself is a state that is really becoming a crypto hub . . . and we felt like Dallas is where a lot of our customers are today," noted that one of Voyager's lead marketing employees "lives in Austin," and that "about four other staff" do too. *Id.* at 8:1-6; 23:3-10. At no point during the Press Conference was there any reference to Florida.

Voyager offered a 48-hour promotional discount code ("MAVS100") after the Press

Conference. *Id.* at 3:23-24, 4:4-6. *Voyager* paid customers who used the MAVS100 code $100 in bitcoin as an incentive for opening an account, provided they contemporaneously deposited $100 and executed a trade. *Id.* at 9:14-10:20.

## III.   Allegations Regarding Victor Oladipo

Plaintiffs allege, in or about April 2021, pursuant to a written agreement, Oladipo contracted with "Voyager to provide it with spokesperson and marketing services" in exchange for "a substantial total compensation package" that "included Voyager stock options subject to a 1 year vesting and VGX tokens." SAC ¶¶ 269-79. On May 13, 2021, Voyager issued a press release announcing its "partnership" with Oladipo, *id.* ¶¶ 273-78, and shortly thereafter announced the "partnership" on social media, after which Oladipo "engaged with the [sic] Voyager on social media throughout his season . . . ." *Id.* ¶¶ 279-80. Plaintiffs claim that "Oladipo had a financial incentive to induce Plaintiffs to invest with Voyager" and that "Oladipo's Voyager promotions were published on public social media accounts, accessible to plaintiffs nationwide . . . ." *Id.* ¶¶ 281, 284. Critically, Plaintiffs do not allege that they followed Oladipo on social media, saw his "promotions" or posts concerning Voyager, or were induced by him to open Voyager accounts.

## IV.   Allegations Regarding Robert Gronkowski

Plaintiffs allege that Gronkowski's company, Gronk Endorsements LLC ("Gronk"), "entered two marketing agreements to promote Voyager" in July 2021 and March 2022. *Id.* ¶¶ 244-46. Plaintiffs included these agreements in an exhibit to the SAC. ECF No. 155-29 at 284-308. (Due to Voyager's bankruptcy, Gronk received nothing for the March 2022 agreement, so Plaintiffs allege only what he was "to be paid." SAC ¶ 246.) The agreements provide that "Gronk's status hereunder is that of an independent contractor and not an employee or agent of Voyager," and that the agreements "shall not be construed as constituting an agency, partnership, or joint venture between Gronk and Voyager." ECF No. 155-29 at 288-89, 299.

Gronk contracted to promote only the Voyager Platform, not EPAs or VGX tokens. The agreements state: "Gronk shall not make any representation, recommendation, or provide any advice with respect to, any investment (including any security or Digital Asset) of any kind, including with respect to Voyager's publicly listed or privately held securities (VYGVF or VYGR.CN) . . . or Voyager's utility token (VGX)." *Id.* at 287-88, 298-99.

***The SAC does not contain a single substantive statement by Gronkowski about EPAs or VGX.*** The term "EPA" does not appear anywhere in the 26 paragraphs of the SAC relating to

Gronkowski. SAC ¶¶ 243-68.

Instead, Plaintiffs complain that Gronkowski posed with a dog. Specifically, a Shiba Inu, which is associated with Dogecoin (not EPAs or VGX) and is "meant to symbolize crypto in general." *Id.* ¶ 253. Plaintiffs do not allege that Gronkowski promoted a particular product or security, only that he endorsed Voyager as a platform for "crypto in general." *Id.* Gronkowski appeared in advertising in which Voyager offered a chance to win free bitcoin or VGX tokens to Twitter users who followed him or played a game by solving clues. *Id.* ¶¶ 254-56, 259-60. In another ad, Voyager offered "$25 in bitcoin" (not EPAs or VGX) as an incentive to new users "who used promotion code GRONK" to sign up. SAC ¶ 256. But the SAC does not allege that ***any*** Plaintiffs used the "GRONK" code.

In fact, ***none*** of the Plaintiffs signed up with Voyager as a result of Gronkowski's ads. Plaintiffs assert that, "[as] outlined in the Section entitled Parties, Plaintiffs . . . invested in Voyager in reliance on Gronkowski's statements" (SAC ¶ 268), but the SAC's "Section entitled Parties" actually alleges the opposite: only two Plaintiffs claim to have known about Gronkowski's promotion—Dorn and Dagnoli—and both admit they signed up ***before*** Gronkowski's promotion began on September 8, 2021. SAC ¶¶ 91, 103, 251. Thus, the assertion that they acted "in reliance on" Gronkowski is demonstrably false. Likewise, Plaintiffs' assertion that "Gronkowski did not disclose that he was being compensated" is also demonstrably false. SAC ¶ 263. Gronkowski made clear that he was a paid endorser by including "Paid partnership," "#VoyagerPartner" and/or "#ad" in his posts. SAC ¶¶ 254-59. The only supposedly "deceptive" thing Gronkowski allegedly said was that the "Voyager app is so easy to use right from the start" (SAC ¶ 264), but Plaintiffs do not—and could not—allege this non-actionable puffery was false.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "[A] formulaic recitation of the elements" is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Claims sounding in fraud must "state with particularity the circumstances constituting fraud or mistake" with respect to each defendant's participation. Fed. R. Civ. P. 9(b); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

On a motion to dismiss, the Court may consider documents attached to the complaint, like

the SAC's 33 exhibits. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

ARGUMENT

**I.      Plaintiffs State No Viable Securities Law Claims.**

Plaintiffs allege Defendants are liable for the sale of unregistered securities, namely Voyager EPAs and Voyager VGX tokens. But the Voyager EPAs are not securities. In any event, Defendants' limited discussion of Voyager is plainly insufficient to make them "sellers" of the EPAs or VGX or to support secondary liability for Voyager's alleged violation.

**A.      The Voyager EPAs Are Not Securities.**

Under Florida law, as in other states, an investment may qualify as a security under two tests: (i) as an "investment contract" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), or (ii) as the type of "note" that constitutes a "security" under *Reves v. Ernst & Young*, 494 U.S. 56 (1990).[2] Recent crypto decisions are in accord—while outcomes may differ, the courts in *SEC v. Ripple Labs, Inc.*, 2023 WL 4507900 (S.D.N.Y. July 13, 2023) and *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 4858299 (S.D.N.Y. July 31, 2023) find common ground in their starting point: crypto products are not inherently securities, and courts must apply tests like *Howey* to assess if something more can be found in the economic realities sufficient to make a crypto transaction a securities transaction. *See Ripple Labs*, 2023 WL 4507900, at *7-8; *Terraform Labs*, 2023 WL 4858299, at *12.

Here, the Voyager EPAs are individual accounts where customers earn only a pre-determined, market interest rate, with no pro rata share in Voyager profits and losses. Voyager offered its EPAs as an incentive for new customers and generally *lost* money on these incentives.[3] Under *Howey*, *Reves*, and recent crypto decisions, these are not securities.

**1.      The Voyager EPAs Are Commodities, Not Securities.**

After months of investigation and review of the Voyager Platform, the United States, by and through the CFTC and **not** the SEC, sued Voyager's CEO, Stephen Ehrlich, for fraud and

---

[2] *See, e.g.*, *Brown v. Rairigh*, 363 So. 2d 590, 592 (Fla. Dist. Ct. App. 1978) (adopting the *Howey* definition of investment contract); *Hosner v. State*, 353 So. 3d 74, 75 (Fla. Dist. Ct. App. 2022) (adopting the *Reves* definition of notes); *Sync Labs LLC v. Fusion Mfg.*, 2013 WL 4776018, at *8 (D.N.J. Sept. 4, 2013) (New Jersey courts look to "cases interpreting the federal Securities Act of 1933 when determining whether an investment is a security under" New Jersey law.).

[3] For example, in filings with Canadian securities regulators, Voyager stated, in fiscal year 2021, it paid out $47.1 million in interest, but received only $21 million in loan fees). Voyager Digital Ltd.*, Management's Discussion and Analysis* at 10 (Oct. 28, 2021).

registration failures related to Voyager's operation of an unregistered commodity pool and the Voyager Platform more generally. *See* CFTC Compl. The CFTC determined the commodity pool structure used by Voyager was not a security. Instead, the CFTC alleges Voyager "solicited, accepted, or received ***digital asset commodities*** for the purpose of trading commodity interests with those assets." *Id.* ¶ 137 (emphasis added). It then transferred those pooled assets to another entity that Voyager understood would further pool the assets to trade commodity interests and generate revenue to pay Voyager returns. *Id.* Voyager planned to use those returns to fund its reward program and make payments to its customers. *Id.*[4] The United States' determination that these Voyager assets were commodities, not securities, illustrates how "not all tokens or token sales . . . involve securities," *In re Xunlei Ltd. Sec. Litig.*, 2019 WL 4276607, at *8 n.8 (S.D.N.Y. Sept. 10, 2019), and is consistent with the outcome under *Howey* and *Reves*, discussed next.

## 2. The Voyager EPAs Are Not Investment Contracts Under *Howey*.

Under *Howey*, an instrument is an "investment contract" where there is (i) an investment of money, (ii) in a common enterprise, (iii) in which the purchaser has a reasonable expectation of profits, (iv) with such profits derived solely from the efforts of others. 328 U.S. at 299. In this Circuit, a "common enterprise" requires funds to be pooled and profits shared pro rata ("horizontal commonality") or investors to be "dependent upon the expertise or efforts of the investment promoter for their returns" ("vertical commonality"). *See Alunni v. Dev. Res. Grp., LLC*, 2009 WL 2579319, at *7 (M.D. Fla. Aug. 18, 2009), *aff'd*, 445 F. App'x 288 (11th Cir. 2011).

Under this test, the outcome is clear: the EPAs are not securities.

*First*, EPA holders did not share in profits and losses with each other or Voyager. Instead, participants received an interest payment set by Voyager, but based on the market rate of interest designed to retain them as customers. *See* SAC ¶¶ 141-42, 148, 154. Earning only pre-set interest, with no pro rata stake—EPA holders earned interest regardless of Voyager's profits or losses, the number of EPA accounts opened, or other holders' deposits—these holders lacked the essential skin in the game characteristic of equity, defeating any finding of horizontal or vertical commonality. *See Tolentino v. Mossman*, 2007 WL 4404447, at *4 (E.D. Cal. Dec. 13, 2007) (no commonality as "[p]laintiffs' allegations do not demonstrate that [d]efendants' profits were

---

[4] As of the filing of this Omnibus Motion, Voyager has not answered the CFTC Complaint. We fully expect by the time of the Reply that Voyager will have answered and not challenged the CFTC's position that its EPAs were indeed commodities and not securities.

dependent on the future success of" the alleged securities in question); *Deckebach v. La Vida Charters, Inc. of Fla.*, 867 F.2d 278, 282 (6th Cir. 1989) (no horizontal commonality where "[t]here was no pooling of profits or proration of losses" among plaintiffs). Indeed, Voyager would be hard-pressed to distribute pro rata profits from an incentive program that lost money.

*Second*, the conclusory allegation that "Voyager's efforts [were] critical to the success of the EPA" program, *see* SAC ¶ 154, highlights the same point. Only one variable dictated how "profitable" the EPA program was for customers: the preset, market-based interest that Voyager obligated itself to pay, no matter its profits or losses, in an effort to obtain customers. *See* SAC ¶¶ 141-42, 154; *see Harman v. Harper*, 1990 WL 121073, at *5 (9th Cir. Aug. 21, 1990) (after purchase, defendants' "efforts could not and did not make any difference"); *First Citizens Fed. Sav. & Loan Ass'n v. Worthen Bank & Tr. Co., N.A.*, 919 F.2d 510, 516 (9th Cir. 1990) (association "agreed to provide a certain percentage of [a] development loan for an agreed rate of interest"); *Union Nat'l Bank of Little Rock v. Farmers Bank, Hamburg, Ark.*, 786 F.2d 881, 884–85 (8th Cir. 1986); *Banco Espanol de Credito v. Sec. Pac. Nat'l Bank*, 763 F. Supp. 36, 44 (S.D.N.Y. 1991) (rate of return "consisted solely of the repayment of the principal plus a fixed rate of interest," and thus "did not fluctuate" based on another's efforts), *aff'd*, 973 F.2d 51 (2d Cir. 1992).

*Third*, recent out-of-Circuit crypto decisions underscore the point. Applying *Howey*, courts in *Ripple Labs* and *Terraform Labs* found certain crypto transactions amounted to investment contracts only where they satisfied *Howey's* prerequisite of investor expectations that the issuer's efforts would drive any returns. *See Terraform Labs*, 2023 WL 4858299, at *14 ("Under *Howey*, the SEC must adequately also plead that the investors . . . were led to believe that it was the efforts of the defendants or other third parties that could earn them a return on their investment"); *Ripple Labs*, 2023 WL 4507900, at *9-12 (no securities transaction where purchaser "did not derive [expectation of profit] from [crypto issuer]'s efforts (as opposed to other factors, such as general cryptocurrency market trends).")). Here, the EPA holder's return was a preset interest rate, which did not rise and fall with Voyager's success. Further, Voyager EPAs did not require use of Voyager's VGX token to hold the funds—the default was to use *non-Voyager* tokens for interest payments, and customers had an option to be paid a higher interest rate in VGX—and thus Plaintiffs cannot rely on *Terraform Labs* or *Ripple Labs* to argue that as Voyager's business improved, a corresponding increase in the value of VGX would translate into an increase in EPA value. *See* SAC ¶ 143 (alleging payment in VGX was optional, as "users *could*" increase interest

payments if they opted into Voyager's "Loyalty Program") (emphasis added).[5]

Indeed, even the crypto product in *Terraform Labs* that is closest to the EPAs is fundamentally different under the *Howey* analysis, possessing key features absent from the EPAs. Unlike Voyager EPA customers, who were guaranteed a specific rate of return regardless of Voyager's efforts, customers in Terraform Labs' "Anchor Protocol" received pro rata profits "[i]f [Terraform Labs'] deployment of funds within the Anchor Protocol was successful in generating returns." Am. Compl. ¶ 71, *Terraform Labs¸* No. 23-cv-01346, ECF No. 25 (S.D.N.Y. Apr. 3, 2023); *see Terraform Labs*, 2023 WL 4858299, at *13. Further, whereas the customers' principal in Anchor Protocol accounts was held in Terraform Labs' native token, whose value depended on Terraform Labs' efforts, Voyager EPA customers held a variety of *other companies'* native crypto tokens as principal. Plaintiffs do not allege Voyager did anything to increase the value of these other companies' tokens, as would be required for the EPAs to constitute investment contracts.

*Fourth*, that assets were "pooled," SAC ¶¶ 147, 154, does not matter where, as here, the pooling is not for sharing in profits and losses. *See Cooper v. King*, 1997 WL 243424, at *2 (6th Cir. May 9, 1997) ("The mere fact that funds of investors, such as Plaintiffs, were co-mingled . . . does not render this transaction a security."); *compare SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 369 (S.D.N.Y. 2020) (fortunes of investors tied together and to success of enterprise).

*Fifth*, that EPA holders faced insolvency risks does not transform their interest right into a "sharing of profits and losses." A lending institution may go bankrupt; that does not mean the loans it issued were equity all along. A baseline assumption of solvency is distinct from the type of dependence on firm success that matters under *Howey*. *See Harper*, 1990 WL 121073, at *5 (citing *Elson v. Geiger*, 506 F. Supp. 238, 242 (E.D. Mich. 1980) ("While the repayment of the mortgage may have depended on the solvency of the borrower, this is not the same as depending on entrepreneurial efforts")); *Intelligent Digit. Sys., LLC v. Visual Mgmt. Sys., Inc.*, 683 F. Supp. 2d 278, 284 (E.D.N.Y. 2010).

---

[5] The *Ripple Labs* decision illustrates yet another way the circumstances here fail to satisfy *Howey*. In *Ripple*, certain crypto transactions amounted to investment contracts only for a group of customers who knew and expected issuer efforts to drive profits; for a separate group, the transactions were not investment contracts, as they lacked such information or expectation. *See Ripple Labs*, 2023 WL 4507900, at *11-*13; *but see Terraform Labs*, 2023 WL 4858299, at *15 (declining to follow *Ripple Labs* on informational-gap reasoning). Here, the Court need not resolve questions about any information gap on behalf of EPA holders, as no expectation of deriving profit from Voyager's efforts is possible since the return is solely preset interest, not pro rata profits.

*Sixth*, Voyager customers could withdraw their crypto assets from their EPAs at any time, suggesting that they did not view their EPAs as an investment in Voyager. By contrast, the *Ripple Labs* court held lockup provisions are consistent with investments, as "a rational economic actor would not agree to freeze [assets]" if that individual did not expect a profitable return. 2023 WL 4507900, at *11 (quoting *Telegram Grp.*, 448 F. Supp. 3d at 373).

### 3.      The Voyager EPAs Are Not Security Notes Under *Reves*.

While the *Reves* analysis varies somewhat from that of *Howey*, the outcome is the same. A note is presumed a security unless it bears a "strong family resemblance" to instruments that are not securities, considering four factors: the (i) motivation of the parties; (ii) plan of distribution; (iii) expectations of the investing public; and (iv) availability of an alternative regulatory regime that "significantly reduces the risk of the instrument" for investors. *Reves*, 494 U.S. at 64–69.

Under *Reves*, the Voyager EPAs are not securities.

*First*, EPA customers opened accounts for commercial purposes—as replacements for traditional savings or money market accounts—to earn a return on their own assets, not as Voyager stakeholders. *See Banco Espanol de Credito*, 763 F. Supp. at 42-43 (where "overall motivation of the parties was the promotion of commercial purposes and not investments in a business enterprise," note is not likely a security). Indeed, Plaintiffs allege that during the Press Conference, Cuban stated he believed Voyager's interest payments would appeal to small businesses because such payments were superior to those of *savings accounts*, suggesting a commercial lending purpose. SAC ¶ 189. Because the EPAs are "most fittingly conceived as [] loan[s]," the first *Reves* factor weighs against a finding of a security. *Asset Prot. Plans, Inc. v. Oppenheimer & Co.*, 2011 WL 2533839, at *3 (M.D. Fla. June 27, 2011).

*Second*, Plaintiffs allege EPA customers were motivated by, and expected to collect, a reasonable, market rate of interest—not to speculate on Voyager's business enterprise or acumen. *See* SAC ¶ 154 (alleging 9% interest rate on USDC in Voyager EPAs). Plaintiffs allege that, as with savings accounts, EPA customers could withdraw assets at any time. *See id.* ¶ 168. Under the first and third *Reves* factors, the product is not a security, as the lender is not driven by speculative interest and the expectation of the "investing public" is "only that of loan repayment." *Reeder v. Succession of Palmer*, 736 F. Supp. 128, 131 (E.D. La. 1990), *aff'd sub nom. Reeder v. Palmer*, 917 F.2d 560 (5th Cir. 1990) (payments to participants in alleged Ponzi "travel club" not securities, where participants were promised 6% monthly return); *Asset Prot. Plans, Inc.*, 2011 WL 2533839,

at *3 (fixed-rate, short-term loan agreements were not securities); *Jeanne Piaubert v. Sefrioui*, 2000 WL 194149, at *3 (9th Cir. Feb. 17, 2000) ("Although the Limited Partnership, as the seller, may well have intended to raise general operating funds, no reasonable buyer would have been interested primarily in the profit the 6% note—as opposed to the Limited Partnership itself—would generate."); *Banco Espanol de Credito v. Sec. Pac. Nat'l Bank*, 973 F.2d 51, 55 (2d Cir. 1992) ("traditional loan participations do not qualify as securities" where one party wanted "short-term credit . . . to finance its current operations" and the other "sought a short-term return on excess cash"). Indeed, the demand for open-term loans through the EPA program—redeemable for full value at any time—reflected not confidence in Voyager's vision, but the desire for an attractive, market-based, fixed yield. *See* SAC ¶¶ 189, 215. By contrast, notes might be securities where a company teetering on bankruptcy offered notes at a high rate of interest, as note holders in that scenario would have "a genuine stake in the survival of the firm, for they could expect a higher return on their investments in the event the firm survived than in the event it was forced into bankruptcy." *Cocklereece v. Moran*, 532 F. Supp. 519, 528 (N.D. Ga. 1982). Plaintiffs have not alleged similar facts here.

*Third*, recent SEC guidance confirms that transactions involving loans *of securities* do not themselves require registration, even if the underlying securities are subject to registration requirements. The SEC recently confirmed that "parties to securities lending transactions are not currently required to report the material terms of those transactions." Reporting of Securities Loans, Release No. 34-98737 at 5 (Oct. 13, 2023), https://www.sec.gov/files/rules/final/2023/34-98737.pdf. Thus, even if the crypto assets in Plaintiffs' EPAs were securities, by depositing crypto in their EPAs, Plaintiffs would be lending securities to Voyager—which did not require registration. Voyager paid market interest on customers' crypto loans similar to what one would receive in a securities lending program.[6]

*Fourth*, the conclusory allegation that Voyager EPA customers "[c]learly . . . expected profits" in the form of interest payments, SAC ¶ 154, underscores how the first *Reves* factor weighs against them. "[I]n one sense every lender of money is an investor since he places his money at risk in anticipation of a profit in the form of interest." *Asset Prot. Plans*, 2011 WL 2533839, at *3.

---

[6] Voyager has publicly indicated that its crypto loans are analogous to loans of securities. *See In re Voyager Digital Holdings, Inc.*, Case No. 22-10943-mew, ECF No. 540 at 73 (Bankr. S.D.N.Y. Oct. 17, 2022).

That does not turn a note into a security. *See Intelligent Digital Sys.*, 683 F.Supp.2d at 284 (note is not a security where the seller's motivation "is not to invest in the future success of the buyer," as "the amount to be paid is contractually established, and must be paid"); *see also* Point I.A.2, *supra* (*Howey* test) (pre-set interest characteristic of loan, not security).

    *Fifth*, Plaintiffs do not allege the Voyager EPAs were transferrable or assignable, or otherwise tradeable or used for profit-seeking on a secondary market. Under the first and second *Reves* factors, this further confirms the parties were entering into loans, not speculative investing and establishes the EPAs' distribution was limited. Put differently, even if Voyager's interest payments could be considered a "distribution" at all, the loans were only offered to Voyager customers and had no secondary market. *See* SAC ¶¶ 141, 178 (only customers with "eligible" investments could participate in Voyager EPA); *compare Asset Prot. Plans*, 2011 WL 2533839, at *4 (loans not securities where offered individually and not traded on secondary market); *see also Banco Espanol de Credito*, 973 F.2d at 55 (short-term loan participations not securities where only institutional and corporate entities were solicited, and instruments prohibited resales); *Benedict v. Amaducci*, 1995 WL 413206, at *10 (S.D.N.Y. July 12, 1995).[7]

    **B.**     **Defendants' "Promotion" Does Not Give Rise to "Seller" Liability.**

    Even if, *arguendo*, Voyager sold securities, Plaintiffs' securities claims still fail. Plaintiffs base their claims on "promotion" or "tout[ing]" of Voyager or its products, *see* SAC ¶¶ 3, 8-9, but such conduct (even if it occurred) is insufficient. Under relevant state law, only certain individuals can be held liable for the sale of unregistered securities: (i) sellers and (ii) a narrow set of individuals—*e.g.*, directors, officers, partners, and agents—who "personally participate[]" (or in some states "materially assist[]") in the sale. *See J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So. 3d 316, 327 (Fla. Dist. Ct. App. 2017).[8] Defendants fall into neither category.

---

    [7] Where, as here, "the first three factors weigh[] so heavily against a finding" that the Voyager EPAs are securities notes, courts need not consider the fourth *Reves* factor. *See Intelligent Digital Sys.*, 683 F. Supp. 2d at 285.

    [8] Plaintiffs assert claims under: (i) New Jersey Statutes Section 49:3-71(d) (Count 1); (ii) the Florida Securities and Investor Protection Act Section 517.211 (Count 6); (iii) Louisiana Section 51:705 (Count 8) (iv) Code of Alabama, Chapter 6, Section 8-6-17 (Count 10); (v) Code of Virginia Section 13.1-522 (Count 12); (vi) California Corporate Code Section 25110(b) (Count 14); (vii) 70 Pennsylvania Statute Section 1-502 (Count 16); (viii) Tennessee Code Section 48-1-104(a) (Count 18); (ix) 17 Oklahoma Statute Section 1-102(32) (Count 20); (x) Mass. Gen. Laws ch. 110A, § 410(b) (Count 22); and (ix) Conn. Gen. Stat. § 36b-29(c) (Count 24).

Florida and other states[9] look to federal jurisprudence for the definition of "seller," as articulated in *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). *See, e.g.*, *Beltram v. Shackleford, Farrior, Stallings & Evans*, 725 F. Supp. 499, 500 (M.D. Fla. 1989) (applying *Pinter*'s definition of "seller" to Florida securities law); *Zendell v. Newport Oil Corp.*, 544 A.2d 878, 882-83 (N.J. App. Div. 1988) (applying *Pinter* definition to New Jersey securities law).

Under *Pinter*, a party is a "seller" only if he either (i) passed title of the alleged security or (ii) "***successfully*** solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *3 (S.D. Fla. May 13, 2019) (quoting *Pinter*, 486 U.S. at 647) (emphasis added).

Here, it is undisputed Defendants did not "pass title" to Voyager products. Accordingly, Plaintiffs' "seller" theory relies entirely on *Pinter*'s second prong, "solicitation." *See* SAC ¶¶ 231-36. But that theory comes up short for multiple reasons.

*First*, lacking privity with a purchaser, Plaintiffs fail *Pinter*'s direct financial motivation prong. *See Pinter*, 486 U.S. at 654–55; *De Ford v. Koutoulas*, 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023), *recons. denied*, 2023 WL 3584077, at *16 (M.D. Fla. May 22, 2023) (no seller liability for alleged crypto solicitation, given no allegation defendant "received value or made these solicitations to serve his own financial [interest]"); *In re CNL Hotels & Resorts, Inc.*, 2005 WL 2291729, at *5 (M.D. Fla. Sept. 20, 2005) (even a commission may be insufficient, absent other profits, incentives, or promotions); *Montcalm Cnty. Bd. of Comm'rs v. McDonald & Co. Sec., Inc.*,

---

[9] While choice of law is ultimately a moot issue, as Plaintiffs fail to adequately state claims under any of the relevant states' laws, Plaintiffs' assertion that New Jersey law applies to all claims is incorrect. SAC ¶¶ 337-41. "Florida resolves conflict-of-laws questions according to the most significant relationship test outlined in the Restatement (Second) of Conflict of Laws." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Courts assess (a) the location of injury, (b) the location of defendants' conduct, (c) the parties' residence and citizenship, and (d) the "place where the relationship, if any, . . . is centered." *eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1134 n.4 (S.D. Fla. 2021) (quotation marks omitted). The first factor—where the injury occurred—"is generally the most important, as absent special circumstances, [t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law." *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1299 (S.D. Fla. 2017) (quotation marks omitted). Here, no relevant factor favors New Jersey. *Contra* SAC ¶¶ 337-42. The location of the alleged injuries, the most important factor, is where Plaintiffs opened their Voyager accounts, which is not New Jersey for each Plaintiff other than Rahil Sayed. Moreover, Defendants' alleged conduct took place outside New Jersey, Defendants do not reside in New Jersey, and they had no relationship with Plaintiffs in New Jersey (or in any other state).

833 F. Supp. 1225, 1233 (W.D. Mich. 1993) (no seller liability, though defendant earned 42% of income through securities sales, absent claim of "profits, incentive or promotion" from the sales).

As to Cuban and the Mavs, Plaintiffs fail the test in at least three ways: (i) the payment the Mavs received was not for sales at all, but only a flat sponsorship fee to the Mavs, (ii) Cuban received no fee whatsoever, and (iii) the fee was in no way contingent on or tied to the success of any particular sale of a security. *See* SAC ¶¶ 39, 201, 212, 228. Plaintiffs' conclusory allegation that Cuban and the Mavs' financial interest "depended on getting users to sign up for Voyager," SAC ¶ 193, is contradicted by documents incorporated in the SAC. The Sponsorship Agreement (ECF No. 155-2, Ex. II) details Voyager's payments to the Mavs, making clear the payments were not contingent on the number of Voyager EPAs opened, the quantity of VGX sold, or on Voyager's success generally.[10] Likewise, Cuban (in testimony attached to the SAC) explained the Mavs' fee was not dependent on the number of people who opened and funded Voyager EPAs or "contingent upon the success of the Mavericks sponsorship of Voyager" (ECF No. 155-30, Cuban Tr. 279:12-280:19);[11] further, he himself was not paid by Voyager, and did not have any agreement with Voyager personally (*id.* at 145:14-20).[12]

Similarly, as to Gronkowski, Plaintiffs do not allege that he received any compensation if customers opened EPAs or purchased VGX. His company, Gronk, received a fixed fee regardless of whether anyone opened EPAs or bought VGX. SAC ¶¶ 245-246. At most, his charity received VGX if customers simply "used" the Voyager app. SAC ¶¶ 245-246.[13]

---

[10] Exhibit II also refutes Plaintiffs' false assertion Defendants were "paid in Voyager's own token," as it lists all Voyager payments to the Mavs in USD. *See id.* (for example requiring a USD payment from Voyager if the Mavs made the first round of the NBA playoffs).

[11] Further, as supposed support for their claim that Cuban promoted EPAs as a way to earn interest on users' USDC holdings, Plaintiffs point to Cuban's November 4, 2021 tweet promoting the idea of earning interest on USDC holdings, *generally*, without any mention of Voyager. ECF No. 155-29 at p. 370 (suggesting people "convert to USDC [and] earn 7% on DeFi [decentralized finance]"). Indeed, Ehrlich felt the need to reply and direct people to open a Voyager EPA. *Id.* Cuban did not respond. *Id.*

[12] By contrast, a federal district court recently held that securities claims against Paul Pierce could proceed past a motion to dismiss because he owned and sold "approximately 8.4 trillion [of the crypto tokens in question] that were valued at around $5,500,000," plaintiffs alleged that Pierce sold off a "massive number of [those tokens]," and Pierce publicly bragged that he "'made more money' from [the token] in a month than he did in a year from his ESPN contract." *In re Ethereummax Investor Litig.*, 2023 WL 6787827, at *3, *12 (C.D. Cal. Jun. 6, 2023).

[13] Voyager users could use the app to trade non-Voyager products, such as bitcoin, which

*Second*, general promotion of Voyager through sponsorship agreements does not make Defendants "sellers." *Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at *9 (S.D.N.Y. Feb. 1, 2023); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *9-*10 (C.D. Cal. May 5, 2011) ("[e]ven participation in road shows to promote the sale of stock does not" make party a "seller"); *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (making "marketing materials available on [its] website and other channels" insufficient); *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1220 (D.N.M. 2010), *on recons. in part,* 824 F. Supp. 2d 1214 (D.N.M. 2011), *aff'd sub nom. Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013) (creation of offering documents insufficient).

*Coinbase* is instructive. There, the court rejected plaintiffs' attempt to hold exchange Coinbase liable as a "seller" under *Pinter* for alleged solicitation of tokens plaintiffs argued were unregistered securities. *Coinbase*, 2023 WL 1431965, at * 9-*10. Coinbase's participation in direct promotions for the tokens—distributing free tokens to increase trading volume and publishing updates on token price movements—were "a piece with the marketing efforts" that are "insufficient to establish active solicitation by a defendant." *Id.* at *9.

Here, allegations about Defendants' activities as "Voyager Brand Ambassador[s]" (*see, e.g.*, SAC ¶ 2) are far weaker, amounting only to general advertising efforts. "[F]or solicitation to occur, a person must urge or persuade another to buy *a particular security*." *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) (emphasis added; quotation marks omitted). As to Cuban and the Mavs, Plaintiffs allege the Mavs (not Cuban) displayed Voyager's logo courtside at Mavs home games (*id.* ¶ 228), and that *Voyager* paid customers $100 in bitcoin if they used the "MAVS100" code. ECF No. 155-1, Press Conf. Tr. at 3:23-24. Plaintiffs allege Cuban promoted Voyager when he stated on behalf of the Mavs that, for example, he believed it was "never too late" to start learning about crypto (*id.* ¶ 214) and that he liked Voyager's app because it was easy to use (*id.* ¶¶ 211, 216). As for Oladipo, the SAC uses the hyperbolic heading that he engaged in a "sustained and aggressive promotion and advertising campaign," SAC at 104, but fails to support that heading. Instead, Plaintiffs allege Voyager issued a press release and tweeted about its agreement with Oladipo, who merely posed in "Voyager" branded clothes and, on apparently four occasions, responded to tweets about Voyager. *Id.* ¶¶ 273-80.

---

Plaintiffs do not claim is a security. *See Teed v. Chen*, 2022 WL 16839496, at *11-*12 (N.D. Cal. Nov. 9, 2022) (dismissing securities claim and rejecting argument that bitcoin is a security).

Plaintiffs do not allege that Gronkowski tried to "urge" or "persuade" them to buy *anything*. The only statements attributed to him were about the use of the Voyager App. *Id.* ¶¶ 252-60. He is not alleged to have said anything about the merits of EPAs or VGX, or about interest rates, rates of return, profits, or the like. Plaintiffs merely allege he said the "Voyager app is so easy to use" and posed with a dog to symbolize "crypto in general." *Id.* ¶¶ 253-64. That is not enough.

*Third*, parties "who merely assist in another's solicitation efforts," like Defendants at most allegedly did here, are not liable as sellers, *see Pinter*, 486 U.S. at 651 n.27, as "collateral participants" are not "seller[s]." *Beltram*, 725 F. Supp. at 500; *see also In re Cendant Corp. Sec. Litig.*, 190 F.R.D. 331, 340 (D.N.J. 1999). The Mavs assisted Voyager in promoting their brand, not in soliciting purchases of the EPAs or VGX (*see generally* ECF No. 155-2, Sponsorship Agr.), and Cuban did not personally promote any Voyager products (ECF No. 155-30, Cuban Tr. at 15:15-19). Similarly, Gronkowski and Oladipo are not even alleged to have "assisted" Voyager's alleged solicitation of securities.

*Finally*, Plaintiffs cannot claim Defendants "successfully" solicited their purchase of any Voyager security. *Pinter* requires a plaintiff seeking to impose seller liability to plead and prove the defendant "***successfully*** solicit[ed] the purchase." 486 U.S. at 647 (emphasis added); *see also Wildes*, 25 F.4th at 1346 ("the solicitation must succeed"); *Rensel*, 2019 WL 2085839, at *3 (quoting *Pinter*); *Dillon v. Axxys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005), *aff'd* 185 F. App'x 823 (11th Cir. 2006). As to Gronkowski, only two of the named Plaintiffs—Dorn and Dagnoli—allege they were "aware of Gronkowski's promotion of the Voyager Platform." SAC ¶¶ 92, 104. Yet they concede that they opened their Voyager accounts ***before*** such alleged promotion, announced on September 8, 2021. *Id.* ¶ 251.[14] Dorn opened his account on February 12, 2021, and Dagnoli opened her account on September 2, 2021. *Id.* ¶¶ 91, 103. Thus, they did not open their accounts because of Gronkowski, who cannot have "successfully" solicited them to do what they had already done. Similarly, no Plaintiffs—other than Edwin Garrison and Todd Webb (*id.* ¶¶ 70, 101)—allege they used the MAVS100 code that Voyager offered in connection with its announcement of the Mavs' sponsorship of Voyager, and 12 of the 16 Plaintiffs allege they opened Voyager EPAs ***before*** Cuban or the Mavs first made public statements about

---

[14] Gronkowski's Twitter ads also are alleged to have begun on September 8, 2021. *Id.* ¶ 254.

**DEFENDANTS' OMNIBUS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**
**Page 16**

Voyager.[15] Likewise, for Oladipo, the SAC does not allege that any of the Plaintiffs purchased Voyager products based upon his alleged promotions. Instead, the SAC merely alleges that he was incentivized to promote Voyager products and did so. *Id.* ¶¶ 281-85. There is no allegation that Oladipo successfully solicited the purchase of anything by any Plaintiff.

### C.   Defendants Are Not Secondarily Liable.

Defendants are not secondarily liable for Voyager's sale of allegedly unregistered securities because (i) only certain individuals, such as directors, agents, or legal partners of the issuer, can be held liable for another's unregistered sale of securities, and even then, only if (ii) that individual "personally participated" or "materially assisted" in the primary violation.[16] Plaintiffs fail to satisfy these requirements.

Most critically, Plaintiffs do not adequately allege Defendants were Voyager's legal partners or agents, as is required for these state law statutes to apply.[17]

As an initial matter, that Defendants and Voyager may have colloquially referred to each other as "partners" is unavailing. "To establish a partnership [under Florida law], there must be a '[1] community of interest in performance of a common purpose, [2] joint control or right of control, [3] joint propriety of interest in subject matter, [4] right to share in the profits, and [5] duty to share in any losses which may be sustained. These requirements are strictly construed and the

---

[15] *See* SAC ¶¶ 76 (Rahil Sayed: Feb. 3, 2021); 79 (Christopher Ehrentraut: Jun. 17, 2021); 82 (Todd Maganiello: May 9, 2021); 85 (Dan Newsom: Mar. 25, 2021); 88 (William Ayer: Feb. 1, 2021); 91 (Anthony Dorn: Feb. 12, 2021); 94 (Dameco Gates: May 6, 2021); 97 (Marshall Peters: Dec. 7, 2020); 103 (Lisa Dagnoli: Sept. 2, 2021); 106 (Anthony Shnayderman: Apr. 8, 2021); 109 (Katharine Sugrue: Sept. 6, 2021); and 112 (Lisa Provino: May 3, 2021).

[16] While certain states do not require *partners* to personally participate or materially assist in the alleged unlawful conduct (*see* Ala. Code § 8-6-19(c); Cal. Corp. Code § 25504; Conn. Gen. Stat. § 36b-29(c); La. Stat. § 51:714(B); Mass. Gen. Laws ch. 110A, § 410(b); N.J. Stat. § 49:3-71(d); Okla. Stat. tit. 71, § 1-509(G)(2); 70 Pa. Stat. § 1-503(a); Tenn. Code § 48-1-122(g); Va. Code § 13.1-522(C)), all relevant states require *agents* to have some level of individual engagement in the primary violator's conduct (*see* Ala. Code § 8-6-19(c); Cal. Corp. Code §§ 25504, 25504.1; Conn. Gen. Stat. § 36b-29(c); Fla. Stat. § 517.211(1); Mass. Gen. Laws ch. 110A, § 410(b); N.J. Stat. § 49:3-71(d); Okla. Stat. tit. 71, § 1-509(G)(4); 70 Pa. Stat. § 1-503(a); Tenn. Code § 48-1-122(g); Va. Code § 13.1-522(C)). Unlike other states, Louisiana does not extend secondary liability to agents, instead limiting secondary liability to a "dealer or salesman" "who participates in any material way in the [unlawful] sale." La. Stat. § 51:714(B).

[17] While Cal. Corp. Code § 25504.1 does not require an agency or partnership relationship to impose secondary liability, Plaintiffs' California securities claims (Count 14) still fail for the reasons discussed below—namely that Defendants' general promotion of Voyager without any direct interfacing with any of the Plaintiffs does not make them secondarily liable.

absence of even one is fatal to the finding of a partnership." *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 439 (Fla. Dist. Ct. App. 1997); *see Williams v. Obstfeld*, 314 F.3d 1270, 1275 (11th Cir. 2002).[18] Here, Defendants and Voyager were not engaged in a common purpose—Voyager operated a crypto platform, the Mavs operate a basketball franchise, Cuban is Governor of the franchise, and Gronkowski and Oladipo are professional athletes. There is no allegation Defendants had any right to control Voyager or *vice versa*, or that Defendants shared in Voyager profits and losses. Though Plaintiffs repeatedly refer to the Sponsorship Agreement between Voyager and the Mavs as the "Global Partnership Agreement" or "Partnership Agreement," that is inaccurate. *See, e.g.*, SAC ¶¶ 12, 25, 41 (referencing territorial restrictions of Sponsorship Agr. § 9.04 (ECF No. 155-2 at § 9.04), but falsely insinuating the relevant provision was found in a separate, non-existent "Partnership Agreement"). In fact, the only agreement between Voyager and the Mavs is titled "Sponsorship Agreement" (*id.* at p. 2), and it expressly states Voyager and the Mavs are not legal partners (*id.* § 14). Similarly, the SAC merely alleges Gronkowski and Oladipo were compensated to promote Voyager. SAC ¶¶ 249, 270. Gronkowski's and Oladipo's promotion agreements expressly provide that they were "independent contractor[s] and not [] employee[s] or agent[s] of Voyager." ECF No. 155-29 at pp. 340-41; *id.* at p. 289. Gronkowski's agreement further states "[the] agreement does not constitute, and shall not be construed as, constituting an agency, a partnership, or joint venture between Gronk and Voyager." *Id.* at p. 288-89.

Plaintiffs' "agency" allegation is equally unavailing. Plaintiffs fail to allege facts suggesting any reasonable Voyager customer could believe Defendants had authority to make decisions on Voyager's behalf. A reasonable consumer understands companies pay sports franchises and athletes for ads to increase brand exposure or advertise products. *See Carroll v. Diamond Resorts Mgmt. Inc.*, 2015 WL 11202373, at *9 (S.D. Fla. Oct. 19, 2015) (quoting *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003) ("If advertising is the stuff of agency then every advertisement by a franchisee with the franchisor's mark would confirm an agency.")).

---

[18] Other states impose the same limitations and would bar a hypothetical claim of an "oral" partnership. *See, e.g.*, *Porter v. Porter*, 821 So. 2d 663, 671 (La. Ct. App. 2002) (requiring parties to mutually agree to form a partnership in which they shared profits and losses); *People v. Park*, 151 Cal. Rptr. 146, 153 (Cal. Ct. App. 1978) ("[T]he essential elements of . . . partnership are a sharing of profits as well as losses and a right to joint management and control of the business.").

At best, Plaintiffs appear to rely on apparent agency,[19] as the Sponsorship Agreement—like Gronkowski and Oladipo's agreements—expressly states Voyager and the Mavs "shall be and act as independent contractors and under no circumstances shall this Agreement be construed as one of agency, partnership, joint venture or employment . . . ." ECF No. 155-2, Sponsorship Agr. § 14; *see* SAC ¶ 391.[20] But for apparent agency, a plaintiff must show: (1) the principal held out the agent as possessing sufficient authority to embrace the particular act at issue, or permitted the agent to have such authority; (2) the plaintiff reasonably believed the agent had that authority; and (3) the plaintiff relied thereon in good faith. *Kahan Novoa v. Safra Nat. Bank of New York*, 313 F. Supp. 2d 1347, 1354-55 (S.D. Fla. 2003); *see also Checchio v. Evermore Fitness, LLC*, 271 A.3d 829, 833 (N.J. App. Div. 2022) (similar requirements). Florida courts consistently reject conclusory apparent agency allegations, like Plaintiffs' here, that "[t]he average and reasonable person" would believe that "Voyager held out Defendants as possessing sufficient authority to sell securities" on Voyager's behalf. *See* SAC ¶ 391.

In fact, Florida courts have held that, as a matter of law on a motion to dismiss, there is no formal agency relationship between parties with even *closer* ties than the sponsor-sponsored relationship here. *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120–21 (Fla. 1995); *Madison v. Hollywood Subs, Inc.*, 997 So. 2d 1270, 1271 (Fla. Dist. Ct. App. 2009). In *Mobil Oil*, the Florida Supreme Court held no reasonable consumer would believe a Mobil franchisee was acting as Mobil's agent, as "it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions." 648 So. 2d at 120; *see also Madison*, 997 So. 2d at 1271 (affirming dismissal of franchisor based on alleged conduct of franchisee). Here, Defendants' relationship to Voyager is even further removed than that of franchisor and franchisee, and thus, Plaintiffs have insufficiently pleaded apparent agency.

Even assuming *arguendo* Plaintiffs sufficiently alleged the first two elements for apparent

---

[19] Actual agency requires "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt v. Holman*, 571 So.2d 422, 425 n. 5 (Fla. 1990).

[20] The Sponsorship Agreement further emphasizes the lack of an actual agency relationship, stating that "[n]either Party has any right, power or authority to assume or create any obligation of any kind or to make any representation or warranty on behalf of the other Party or to bind the other party in any respect." ECF No. 155-2, Sponsorship Agr. § 14.

agency, Plaintiffs "raise[] no allegations indicating how [they] 'acted' or relied on [their] purported belief" regarding this supposed agency. *Farrell v. Royal Caribbean Cruises, Ltd.*, 2013 WL 178242, at *4 (S.D. Fla. Jan. 2, 2013); *Rinker v. Carnival Corp.*, 836 F.Supp.2d 1309, 1319 (S.D. Fla. 2011) (dismissing claims for insufficient reliance where plaintiff did not state how injury would have been avoided had he "known the doctor and nurses were independent contractors"); *Warren v. Ajax Navigation Corp.*, 1995 WL 688421, at *3–4 (S.D. Fla. Feb. 3, 1995) ("Plaintiff must . . . show . . . he relied or changed his position in reliance on his alleged belief that Dr. Nodarse was defendants' agent."). Plaintiffs do not allege *any facts* indicating they would have acted differently had they known, for example, the Mavs were Voyager's independent contractor and Cuban had no relationship with Voyager whatsoever. To allege apparent agency Plaintiffs must do more than "simply repeat[] the term 'reliance' or the phrase 'relied upon' throughout the pleadings." *Gavigan v. Celebrity Cruises, Inc.*, 843 F.Supp.2d 1254, 1262–63 (S.D. Fla. 2011).[21]

Plaintiffs' failure to plead facts showing that Defendants were Voyager's agents or partners is fatal to their secondary liability claims. Yet Plaintiffs' claims fail for two further reasons.

*First*, Plaintiffs allege only that Defendants generally advertised Voyager's business, which falls far short of the requirement a secondary defendant "personally participate" or "materially aid" in the primary violator's sale of unregistered securities.[22] Plaintiffs only allege that Defendants assisted in the general marketing of Voyager, not in the opening of Voyager EPAs or in the sale of VGX. *See* Point I.B, *supra*. "[I]nvolvement in general corporate business" is not enough to impute secondary liability. *Dillon*, 385 F. Supp. 2d at 1309, 1313; *Turk v. Pershing LLC*, 2014 WL 12572906, at *4 (N.D. Tex. Dec. 8, 2014) (dismissing FSA claim, as allegations that defendant was a "behind-the-scenes actor" did not amount to inducement). Notably absent from the SAC is any allegation that Defendants participated in Voyager's operations, let alone in

---

[21] If, *arguendo*, Defendants were Voyager's agents, then the action must be arbitrated. Voyager's Customer Agreement, which governs the relationship between customers and Voyager, requires customers to arbitrate all disputes with "Voyager," defined to include Voyager's agents. Voyager Digital, LLC Customer Agreement (Aug. 20, 2021) § 27 (arbitration provision), https://web.archive.org/web/20211019173126/https://www.investvoyager.com/useragreement/; *id.* (defining "Voyager" as "Voyager Digital, LLC, and its agents and assigns . . .").

[22] *See* Fla. Stat. § 517.211(1) (requiring a partner or agent to "personally participate[] or aid[] in making the sale"); *see* N.J. Stat. § 49:3-71(d); Ala. Code § 8-6-19(c); Va. Code § 13.1-522(C); Cal. Corp. Code § 25504.1; 70 Pa. Stat. § 1-503(a); Tenn. Code § 48-1-122(g); Okla. Stat. tit. 71, § 1-509(G)(4); La. Stat. § 51:714(B); Mass. Gen. Laws ch. 110A, § 410(b); Conn. Gen. Stat. § 36b-29(c) (all requiring agents to materially aid in the sale).

enrollment and use of EPAs or sale of VGX. In fact, the SAC does not identify a single statement by Gronkowski or Oladipo about EPAs, or by any Defendant concerning VGX.

*Second*, Plaintiffs fail to allege interfacing between Plaintiffs and Defendants. The SAC never alleges Defendants had any involvement in Plaintiffs' opening of Voyager EPAs or in their trading decisions. Indeed, 12 of the 16 Plaintiffs allege they opened Voyager EPAs **before** Cuban or the Mavs first made public statements about Voyager (*see* n.15, *supra*), the only two Plaintiffs who claim to have been aware of Gronkowski's campaign opened their EPAs **before** that campaign began, and 9 of the 16 Plaintiffs allege they opened Voyager EPAs **before** Voyager publicized its agreement with Oladipo on May 13, 2021 (SAC ¶ 273). Further, the SAC is bereft of allegations that Oladipo induced any Plaintiff to open Voyager EPAs. Plaintiffs thus fail to satisfy the requirement a defendant personally participate or aid in making a sale, which necessarily "implies some activity in inducing the purchaser to invest." *See Dillon*, 385 F. Supp. 2d at 1311; *see also Hines v. FiServ, Inc.*, 2010 WL 1249838, at *6 (M.D. Fla. Mar. 25, 2010) (dismissing FSA claims in absence of allegations defendant "had any part in inducing the purchase" or "any contact [with allegedly unregistered broker-dealer] beyond the purchase of investments made at the direction of the plaintiffs"); *Turk*, 2014 WL 12572906, at *4.[23]

## II.    Plaintiffs State No Viable Consumer Fraud and Deceptive Trade Practice Claims.

All eleven of the state law consumer fraud and deceptive trade practices statutes that Plaintiffs invoke (the "Consumer Fraud Statutes") share the following common elements: (i) unlawful conduct by the Defendant; (ii) actual damages to Plaintiff; and (iii) causation.[24] Plaintiffs

---

[23] Plaintiff Rachel Gold's claims also must be dismissed because she alleges that she did not open a Voyager account in her own name, and thus did not "purchase" either a Voyager EPA or VGX. SAC ¶ 67 (Gold's husband, Eric Rares, opened the Voyager account that serves as the basis for Gold's claims). As addressed in Cuban and the Mavs' Rule 11 Motion (ECF No. 157 § III(D)), only purchasers of securities, not their spouses, have standing to bring claims. *See* Fla. Stat. § 517.211(2) (providing standing to those who "***purchas[ed] the security***" (emphasis added)).

[24] *Lynn v. Fort McClellan Credit Union*, 2013 WL 5707372, at *6 (N.D. Ala. Oct. 21, 2013); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014); *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn. 2016); *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. Dist. Ct. App. 2012); *Alfasigma USA, Inc. v. EBM Med., LLC*, 2018 WL 1604961, at *5 (E.D. La. Apr. 3, 2018); *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 633 F. Supp. 3d 425, 452 (D. Mass. 2022); *Hoffman v. Hampshire Labs, Inc.*, 963 A.2d 849, 854 (N.J. App. Div. 2009); *Hampton v. Gen. Motors, LLC*, 631 F. Supp. 3d 1041,1049-50 (E.D. Okla. 2022); *Vliet v. Liberty Mut. Pers. Ins. Co.*, 2022 WL 768156, at *2 (E.D. Pa. Mar. 14, 2022); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005); *Student A v. Liberty Univ.*, 602 F. Supp. 3d 901, 917 (W.D. Va. 2022).

fail to state claims for violations of these statutes (the "Consumer Fraud Claims").

*First*, all or nearly all of the Consumer Fraud Statutes have no application to securities transactions.[25] If the core premise of Plaintiffs' case—that VGX and the Voyager EPAs are securities—is correct, Plaintiffs' Consumer Fraud Claims must fail.

*Second*, because Plaintiffs are not "customers" or "consumers" of any Defendant (but are rather Voyager customers), Plaintiffs' Consumer Fraud Claims under Virginia (Count 11), California (Count 13), Pennsylvania (Count 15), and Massachusetts (Count 21) law all fail.[26]

### A.  Plaintiffs Fail to Allege Consumer Fraud With Particularity Under Rule 9(b).

Even if Plaintiffs' Consumer Fraud Claims were legally permissible, they fail to meet Rule 9(b)'s particularity requirements.[27] Under Rule 9(b), Plaintiffs must allege (a) the precise statements, documents, or misrepresentations made; (b) the time, place, and person responsible for the statement; (c) the content and manner in which these statements misled the plaintiffs; and (d) what the defendants gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,

---

[25] *Lee v. First Union Nat. Bank*, 971 A.2d 1054, 1061 (N.J. 2009); *Feng v. Walsh*, 2021 WL 8055449, at *13-14 (S.D. Fla. Dec. 21, 2021); *Smith v. Cooper/T. Smith Corp.*, 846 F.2d 325, 328 (5th Cir. 1988), *modified*, 886 F.2d 755 (5th Cir. 1989) (La.); *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004); *Baker v. Summit Bank*, 64 F. Supp. 2d 466, 467-68 (E.D. Pa. 1999); Tenn. Code § 47-18-109(h); *Russell v. Dean Witter Reynolds, Inc.*, 510 A.2d 972, 978 (Conn. 1986); *cf. In re Moon*, 1997 WL 34625685, at *21 (E.D. Va. Dec. 17, 1997) (quoting Va. Code § 59.1-198). Defendants could not locate any authority addressing Alabama (Count 9) or Oklahoma (Count 19) law on this point.

[26] *See U.S. Legal Support, Inc. v. Hofioni*, 2013 WL 6844756, at *15 (E.D. Cal. Dec. 20, 2013); *Am. Express Bank, FSB v. Martin*, 200 A.3d 87, 97 (Pa. Super. 2018); *Seeman v. Oxfordshire*, LLC, 2011 WL 8956202, at *8 (Vir. Cir. Ct. Oct. 12, 2011); *AnywhereCommerce, Inc. v. Ingenico Inc.*, 2023 WL 2694043, at *23 (D. Mass. Mar. 29, 2023) (all dismissing consumer fraud claims, under applicable state law, because plaintiff was not a consumer of defendant's services).

[27] Rule 9(b) applies to all of the Consumer Fraud Claims. *See Regenicin, Inc. v. Lonza Walkersville, Inc.*, 997 F. Supp. 2d 1304, 1314-15 (N.D. Ga. 2014); *State Farm Mut. Auto. Ins. Co. v. Performance Ortho. & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017); *Brand Coupon Network, LLC v. Cataline Mkg. Corp.*, 2014 WL 6674034, at * 5 (M.D. La. Nov. 24. 2014); *Devane v. L'Oreal USA, Inc.*, 2020 WL 5518484, at *4 (S.D.N.Y. Sept. 14, 2020) (assessing the Alabama Deceptive Trade Practices Act); *Gurwell v. Sea World Parks & Ent. LLC*, 2021 WL 4168503, at *4 (E.D. Va. Aug. 11, 2021); *Munifi v. Abraham*, 2022 WL 1422813, at *3 (C.D. Cal. Apr. 19, 2022); *Dolan v. PHL Variable Ins. Co.*, 2017 WL 4812308, at *4 (M.D. Pa. Oct. 25, 2017); *Harding v. BMW of N. Am., LLC*, 2020 WL 5039439, at *2 (M.D. Tenn. Aug. 26, 2020); *Lee v. Enter. Fin. Grp.*, 2009 WL 1362605, at *3 (W.D. Okla. May 14, 2009); *Martorana v. Progressive Direct Ins. Co.*, 2023 WL 2465639, at *8 (D. Mass. Mar. 10, 2023); *Dubois v. Maritimo Offshore Pty Ltd.*, 422 F. Supp. 3d 545, 561 (D. Conn. 2019).

116 F.3d 1364, 1371 (11th Cir. 1997). "In sum, the Plaintiff must set forth in the complaint as to each Defendant the 'who, what, when, where and how' about the fraud that took place." *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008).

Plaintiffs flunk Rule 9(b)'s particularity requirement. Fourteen Plaintiffs either allege they were exposed to the Mavs' or Cuban's statements or allege generally they were exposed to "some or all of Defendants' misrepresentations." *See* SAC ¶¶ 105–113. Only two Plaintiffs—Dorn and Dagnoli—make any reference whatsoever to Gronkowski. SAC ¶¶ 92, 104. None reference Oladipo. Generic allegations that fail to allege any precise misrepresentation, or even the person who made it, are insufficient under Rule 9(b). *Fernau v. Enchante Beauty Prod., Inc.*, 847 F. App'x 612, 621–22 (11th Cir. 2021) (plaintiffs must plead "the manner in which they relied on defendants' statements"; allegation they "would not have invested into the company" if there had been "full and accurate disclosure" was insufficient); *Am. Dental Ass'n*, 605 F.3d at 1291–92.

Plaintiffs fail to specify both "precisely what statements" they were exposed to and "the manner in which they misled [] plaintiff[s]." *Brooks*, 116 F.3d at 1371. Plaintiffs do not attribute their investment to a specific statement or explain how they were misled by being "aware" of the "endorsement" of the Voyager Platform.

Several statements attributed to Cuban and the Mavs fail the particularity requirement, as the allegations are directly contradicted by documents that Plaintiffs attach to the SAC:[28]

"*100% Commission-Free*." Plaintiffs falsely allege that Cuban described the Voyager Platform as "100% commission free" (SAC ¶¶ 326, 352). Plaintiffs fail to allege the time, place, and person who made this statement, as neither *Cuban nor the Mavs ever made this statement*. Such statement nowhere appears in the Press Conference transcript (ECF No. 155-1), which contains the only public statements that Cuban made about Voyager.

"*FDIC Insured*." Plaintiffs' allegation that Defendants stated that Voyager was FDIC insured (SAC ¶ 372) is similarly fabricated. Neither the Press Conference transcript, the SAC, nor any SAC exhibits indicate that Cuban or the Mavs made this statement.

*Defendants' "Specific Roles and Interests"* and "*Instill[ing] Trust*." Plaintiffs fail to allege that Cuban or the Mavs had any undisclosed "roles" or ownership "interests" in Voyager, making impossible any claims based on these statements. This vague and conclusory pleading does

---

[28] Plaintiffs' false allegation' concerning the "100% Commission-Free" and "FDIC Insured" statements are the subject of Defendants' Rule 11 motion. *See* ECF No. 157 § IV(A).

not identify the allegedly deceptive statements at issue and therefore does not satisfy Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Am. Dental Ass'n*, 605 F.3d at 1291-92 (dismissing claims where plaintiffs did not identify a single specific misrepresentation by defendants regarding how plaintiffs would be compensated); *State Farm*, 278 F. Supp. 3d at 1328.[29]

Likewise, as to the only two Plaintiffs who mention Gronkowski, Dorn and Dagnoli merely allege that they were "aware of Gronkowski's promotion of the Voyager Platform" and his "endorsement of the Voyager platform." SAC ¶¶ 92, 104. Plaintiffs do not allege in any way precisely what statements they were exposed to, or how they were misled by being "aware" of the promotion or the "endorsement" of the Voyager Platform. *See Brooks*, 116 F.3d at 1371.

**B.      Defendants' Alleged Conduct Is Not Unfair, Deceptive, or Unlawful.**

The SAC fails to plead unlawful conduct by the Defendants, as required by the Consumer Fraud Statutes. *See* n.24, *supra.* Unlawful conduct typically means conduct that is objectively likely to mislead the reasonable consumer. *E.g., State Farm*, 278 F. Supp. 3d at 1326; *SuccessfulMatch.com*, 70 F. Supp. 3d at 1075. California requires plaintiffs to prove actual reliance too. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010).

**1.      The Mavs' Statements Are Not Materially Misleading.**

The Mavs' statements, including those made by Cuban as Governor of the Mavs, when viewed in their "full context" are not materially misleading. *See Thompson v. Procter & Gamble Co.*, 2018 WL 5113052, at *3 (S.D. Fla. Oct. 19, 2018). Plaintiffs ignore that Cuban expressly warned potential Voyager customers that investing in crypto was *not* risk free (SAC ¶ 8), they should "always be careful" with their money (ECF No. 155-1, Press Conf. Tr. at 19:6-7), and they should not "rush into" anything or "put all your money" into a Voyager account (*id.* at 30:21-22).

Further, Cuban's statements on behalf of the Mavs that USDC was "as close to risk free as you're going to get in the crypto universe," (SAC ¶ 218), that Voyager offered a "huge opportunity" to make money (*id*), that its pricing was "really good" (*id.* ¶¶ 218-19), and that "Voyager was an easy-to-use platform" (*id.* ¶ 213) are each "subjective terms that constitute non-actionable puffery." *Fitzpatrick v. Vital Pharms., Inc.*, 2021 WL 6776238, at *8 (S.D. Fla. June 7,

---

[29] The SAC also improperly pleads the Consumer Fraud Claims against Defendants by lumping them together. As discussed in Section VI, *infra*, shotgun pleadings are improper under 8(b), but even more egregious under Rule 9(b)'s heightened pleading standard. *See, e.g. Bruhl v. Pricewaterhousecoopers, Int'l*, 2007 WL 997362, at *3 (S.D. Fla. Mar. 27, 2007) (Rule 9(b) "require[s] plaintiffs to differentiate their allegations when suing more than one defendant.").

2021); *see In re Ethereummax Investor Litig.*, 2023 WL 6787827 at *29 (dismissing consumer fraud claims against Floyd Mayweather as puffery based on statement that there would be "another cryptocurrency just as large as Bitcoin someday," made while wearing a t-shirt promoting the token in question); *Marksman Sec. Corp. v. P.G. Sec., Inc.*, 2021 WL 6498217, at *14 (S.D. Fla. Oct. 12, 2021), *report and recommendation adopted in part*, 2021 WL 5832329 (S.D. Fla. Dec. 8, 2021) (dismissing FDUTPA claims based on statements that a company was the "best," "[a] great company," "[a] great company to work for," and kept "buildings safe and comfortable"). State consumer protection laws "presume[] a relatively (but realistically) savvy consumer – the general idea being that some statements are just too boosterish to justify reasonable reliance." *See, e.g.*, *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019). A reasonably savvy consumer viewing the Press Conference and seeing various Voyager promotions at Mavs games or on television, would understand that Voyager was a paid Mavs sponsor, and would not believe that Defendants had any official position or role at Voyager.

## 2.    Plaintiffs Do Not Allege Unlawful Conduct Attributed to Oladipo.

The only statements attributed to Oladipo are derived from Voyager's press release, wherein Oladipo is quoted as purportedly saying that Voyager is "bringing the future of finance to everyone," has an "unbeatable combination of . . . assets," and has an "app that is easy and fun to use . . . ." SAC ¶¶ 274. This quintessential puffery cannot serve as the predicate for a fraud claim.

## 3.    Plaintiffs Fail to Allege Unlawful Conduct By Gronkowski.

Plaintiffs attribute only two supposedly deceptive things to Gronkowski: (1) he "did not disclose that he was being compensated by" Voyager; and (2) he allegedly said the "Voyager app is so easy to use right from the start." SAC ¶¶ 263-64.[30]

The first of these assertions is demonstrably false, as the social media posts identified in the SAC include the phrases "Paidpartnership" or "#VoyagerPartner", or "#ad". SAC ¶¶ 254-59.[31] Thus, Gronkowski *did* expressly disclose that he was being compensated.

---

[30] This statement is actually from the press release authored by Voyager (SAC ¶ 252) not Mr. Gronkowski's social media posts. In fact, none of the social media posts identified in the SAC contain any statements regarding the Voyager App's useability.

[31] Conveniently, for one of the Twitter posts in the SAC, Plaintiffs omitted the "#voyagerpartner" disclosure from the screenshot. SAC ¶ 254 n.57. The Court can consider the full tweet. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (stating that "a document need not be physically attached to a pleading to be incorporated by reference into it" and may be considered on a motion to dismiss if it is "(1) central to the plaintiff's claim and (2) undisputed").

In any event, the promotions were not misleading because reasonable consumers expect Gronkowski, a former NFL superstar who regularly appears on television and in ads, to be compensated for promoting Voyager. Gronkowski "is among the most recognizable sports celebrities to play for a Florida franchise in recent years." SAC ¶ 116. Therefore, it was not necessary for Gronkowski to disclose that he was paid, but he did so anyway.

Nor was it necessary for him to disclose the amount he was paid. Courts look to the FTC for guidance in evaluating unfair or deceptive practices. *Fed. Trade Comm'n v. All US Mktg. LLC*, 2017 WL 9398643, at *13 n.9 (M.D. Fla. Apr. 13, 2017), *report and recommendation adopted sub nom. Fed. Trade Comm'n Fla. v. All US Mktg. LLC*, 2017 WL 2256650 (M.D. Fla. May 22, 2017); *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1526394, at *7 (N.D. Cal. Apr. 15, 2010); *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 644 (S.D.N.Y. 2016). The FTC promulgated a Guide Concerning the Use of Endorsements and Testimonials in Advertising, which provides an on-point example:

> A film star endorses a particular food product in a television commercial . . . regardless of whether the star's compensation for the commercial is a $1 million cash payment or a royalty for each product sold by the advertiser during the next year **no disclosure is required because such payments likely are ordinarily expected by viewers.**

16 C.F.R. § 255.5 (Ex. 2) (emphasis added). Celebrities like Gronkowski do not and are not required to disclose in each ad how much they are being paid, because reasonable consumers understand that they receive compensation for product promotions. Plaintiffs' position would mean every commercial use of a celebrity without fully disclosing his or her pay would automatically result in injury—which is absurd. Conclusory allegations that an ad is unlawful due to non-disclosure of amounts paid cannot survive a motion to dismiss. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (applying California's UCL). "Endorsement contracts by athletes and entertainers are commonplace and most consumers are well aware that the celebrities are being paid when they appear as a spokesperson for a product in a traditional advertisement." *See* Consumer Protection and the Law § 11:23.[32]

The only allegedly deceptive statement attributed to Gronkowski—that the Voyager App

---

[32] For the same reasons, Plaintiffs cannot base their Consumer Fraud Claims against the Mavs on the fact that the Mavs did not disclose that team members were paid to appear at the Press Conference (SAC ¶ 206), as reasonable consumers understand that professional athletes are paid for their public appearances.

is "easy to use right from the start"—is non-actionable puffery. *Yachera v. Westminster Pharms.*, *LLC*, 477 F. Supp. 3d 1251, 1266 (M.D. Fla. 2020) ("[B]ald assertions of superior quality are puffery if they lack detailed claims that could be measured or tested."); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014) ("Specific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are 'mere puffery' that cannot.").[33]

Statements like "easy to use" are too vague and devoid of qualitative meaning to give rise to a misrepresentation and are therefore nonactionable puffery. *See, e.g., IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 857 (11th Cir. 2016) (calling the plan "thoughtful," "effective," and "optimal," was nonactionable puffery); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 794 (N.D. Cal. 2017) (statements that product was "simple," "intuitive," and "easy" were nonactionable puffery); *Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *7 & n.5 (N.D. Cal. Oct. 13, 2009) (statement that appliances were "easy to use" constituted puffery); *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 903 (Pa. 1975) (statement that helicopter was "easy to operate" was puffery), *abrogated on other grounds by Reott v. Asia Trend, Inc.*, 55 A.3d 1088 (Pa. 2012); *TSI Prod., Inc. v. Armor All/STP Prod. Co.*, 2019 WL 4600310, at *10 (D. Conn. Sept. 23, 2019) (statements that product was "fast," easy," "convenient," and "a breeze" were puffery).

Here, the statement "so easy to use right from the start" cannot be objectively tested, as it is vague, subjective, and lacks qualitative meaning. A user might consider an app "easy to use" based on its intuitive layout, signup or login process, or something else. Such a statement necessarily depends on a user's subjective values and is, therefore, mere puffery.

### C.    Plaintiffs Fail to Plead Causation and Damages.

Critically, Plaintiffs also fail meet the Consumer Fraud Claims' causation requirement, as they fail to identify which specific statements they were exposed to, how they were misled by such statements, and how that conduct caused their injuries. *See, e.g.*, SAC ¶ 66 (claiming to have been "exposed to some or all" of "Defendants' misrepresentations"); *Am. Dental Ass'n*, 605 F.3d at 1292 (plaintiffs must "allege the manner in which they were misled by the documents").[34]

---

[33] Whether a statement is mere puffery may be determined on a motion to dismiss. *TocMail Inc. v. Microsoft Corp.*, 2020 WL 9210739, at *4 (S.D. Fla. Nov. 6, 2020).

[34] Causation is required for all of Plaintiffs' Consumer Fraud Claims. *See Salit Auto Sales,*

A plaintiff must "prove a causal nexus between the alleged [misrepresentation] and his or her damages." *Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1121 (N.J. Super. Ct. App. Div. 2005) (quotation marks omitted); *see also Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015). The causal nexus must be "direct, rather than remote or speculative." *Pop v. Lulifama.com LLC*, 2023 WL 4661977, at *4 (M.D. Fla. July 20, 2023); *Durell*, 183 Cal. App. 4th at 1363.

Here, *Voyager*, not Defendants, caused Plaintiffs' injuries. Where, as here, Plaintiffs are damaged by another's actions, the causal chain is broken and the FDUTPA claim fails. *See Lombardo*, 124 F. Supp. 3d at 1290. Further, causation is impossible for Plaintiffs who allege that they opened Voyager EPAs before Defendants first made any public statements about Voyager. *See* Point I.C, n.15, *supra*. As to Gronkowski, Plaintiffs fail to explain how the alleged non-disclosure of the financial terms of his promotion of Voyager caused them to lose their investment or result in "undisclosed commissions." Plaintiffs do not allege they or other reasonable consumers would not have purchased Voyager products had they known the precise amount of Gronkowski's compensation. Nor do they assert that Gronkowski's statement that the "Voyager app is so easy to use right from the start" was false, let alone assert that they lost their investment due to the Voyager app *not* being easily usable. Thus, even if Plaintiffs' "lost investments" were properly recoverable as damages, and they are not, such losses are not causally related to Gronkowski's alleged statements.

Plaintiffs fail to allege actual damages caused by Defendants' alleged misconduct, as required under all or nearly all of the Consumer Fraud Statutes.[35] Plaintiffs allege damages from

---

*Inc. v. CCC Intelligent Sols. Inc.*, 2021 WL 3783110, at *4 (D.N.J. Aug. 26, 2021); *Source Prod. & Equip. Co. v. Schehr*, 612 F. Supp. 3d 646, 656 (E.D. La. 2020); *Suchanek v. Sturm Foods, Inc.*, 2018 WL 6617106, at *5 (S.D. Ill. July 3, 2018) (citing *Billions v. White and Stafford Furniture Co., Inc.*, 528 So.2d 878, 890 (Ala. Civ. App. 1988)); *Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*, 2020 WL 12991889, at *7 (Va. Cir. Ct. Nov. 13, 2020); *California Med. Ass'n v. Aetna Health of California Inc.*, 532 P.3d 250 (Cal. 2023); *Piccioli v. Faust Heating & A/C Co.*, 2023 WL 3270881, at *6 (Pa. Super. Ct. May 5, 2023); *Brichant v. Wells Fargo Bank, N.A.*, 2012 WL 4461668, at *5 (M.D. Tenn. Sept. 25, 2012); *Robinson v. Sunshine Homes, Inc.*, 291 P.3d 628, 634 (Okla. Civ. App. 2010); *Rafferty v. Merck & Co., Inc.*, 92 N.E.3d 1205, 1222 (Mass. 2018); *Edwards v. McMillen Cap., LLC*, 574 F. Supp. 3d 52, 70 (D. Conn. 2021), *aff'd*, 2022 WL 16984534 (2d Cir. Nov. 17, 2022), *cert. denied*, 143 S. Ct. 2432 (2023).

[35] *See* Ala. Code § 8-19-10 (limiting to "actual damages"); Cal. Bus. & Prof. Code § 17082 (West) (same); Fla. Stat. § 501.211 (same); La. Stat. § 51:1409(A) (same); Mass. Gen. Laws ch.

"paying undisclosed commissions on cryptocurrency trades" and "in the amount of their lost investments." SAC ¶ 381. But the appropriate measurement of actual damages arising from alleged "undisclosed commissions" is not "the amount of [Plaintiffs'] lost investments" but rather the amount of the alleged "undisclosed commissions." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. Dist. Ct. App. 1985) (defining actual damages as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered"). Plaintiffs' alleged "lost investments," on the other hand, are consequential damages, which cannot be recovered. *See, e.g.*, *Orkin Exterminating Co. v. DelGuidice*, 790 So. 2d 1158, 1162 (Fla. Dist. Ct. App. 2001) (FDUTPA does not afford a remedy for consequential damages, which include "diminution in value type damages"); *Smit v. Charles Schwab & Co.*, 2011 WL 846697, at *9 (N.D. Cal. Mar. 8, 2011) (plaintiff cannot recover the diminution in value of an investment where the investment was never paid to the defendant).

### D.     The Court Should Strike State Law Claims Asserted Under the Laws of States in Which No Plaintiff Resides.

Plaintiffs lack standing to assert claims against Defendants on behalf of putative class members pursuant to state consumer laws under which no named Plaintiff has allegedly purchased Voyager products. *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365, 1371-72 (S.D. Fla. 2001) (no standing to assert state law claims of states in which the named plaintiffs had not suffered injury); *In re Checking Acct. Overdraft Litig.*, 694 F.Supp.2d 1302, 1324–25 (S.D. Fla. 2010) ( "Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state"); *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) (same); *Feldman v. BRP US, Inc*., 2018 WL 8300534, at *6 (S.D. Fla. Mar. 28, 2018) (same). Only two named Plaintiffs—Dorn from California and Dagnoli from Massachusetts—claim to have been aware of Gronkowski's promotion of Voyager. SAC ¶¶ 92, 104. Because they are residents of California and Massachusetts, respectively, and did not allegedly purchase Voyager products in

---

93A, § 9 (same); Okla. Stat. tit. 15, § 761.1 (same); 73 Pa. Stat. § 201-9.2 (same); Tenn. Code § 47-18-109 (same) Va. Code § 59.1-204 (same); *see also Meshinsky v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1067 (N.J. 1988) ("ascertainable loss" is an essential element of a private cause of action for a violation of New Jersey's Consumer Fraud Act); *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 190 (2d Cir. 2020) (same for Connecticut's Unfair Trade Practices Act).

any state but their own, the New Jersey Nationwide class and the subclasses for all other states must be struck as to Gronkowski.

## III.    Cuban and the Mavs Did Not Promote VGX.

On the merits, all claims against the Mavs and Cuban based on any alleged promotion of or deceptive trade practices related to VGX must fail for the simplest of reasons: when asked to promote that product, these defendants said no. Thus, even if VGX were a security—and the Court should not so rule—no claim could lie against Cuban or the Mavs concerning VGX. In materials incorporated into the SAC, Cuban testified he was wary of the Mavs' endorsement of any crypto token, as "there's a good argument that [VGX] could be securities." *See* ECF No. 155-30, Cuban Tr. at 23:9-10. Accordingly, Cuban—who did not himself promote any Voyager products and acted only in his capacity as Governor of the Mavs—"made sure not to discuss tokens" at the Press Conference or in promotional materials (*id.* at 24:12-20; *see generally* ECF No. 155-1), and the Mavs rejected entirely Voyager's offer to promote VGX (*id.* at 156:20-21). Cuban and the Mavs cannot be held liable for sale of a token that they declined even to promote, much less sell.

## IV.    Plaintiffs State No Viable Conspiracy Claims.

Plaintiffs' Count 4, alleging civil conspiracy "to [v]iolate and [a]ssist" in the violation of the New Jersey Consumer Fraud Act, also fails. *First*, conspiracy claims fail "in the absence of a claim for an underlying tort," and there is none here. *Portes v. Tan*, 2014 WL 463140, at *10 (N.J. Super. Ct. App. Div. Feb. 6, 2014). *See* Point II, *supra*. *Second*, Plaintiffs fail to plead with Rule 9(b) specificity any agreement to commit an unlawful act. Civil conspiracy claims require two or more persons "acting in concert to commit an unlawful act . . . [with] an agreement . . . to inflict a wrong against or injury upon another, and an overt act that results in damage." *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 317 (D.N.J. 2012) (quotation marks omitted). Allegations of "joint action" and the "conduct, time, place, and persons responsible" are required—but lacking. *Lynn v. Christner*, 184 F. App'x 180, 185 (3d Cir. 2006)). At best, the SAC alleges separate advertising contracts between Voyager and each Defendant, but fails to allege an agreement to inflict a wrong or injury. *See Wiatt*, 838 F. Supp. 2d at 317. The SAC focuses on Defendants' brief, isolated public statements, and alleges that the Mavs, Oladipo, and Gronk agreed to advertise Voyager's brand. The SAC lacks allegations of: (i) a specific agreement to cause injury, (ii) a concerted plan to further such an agreement, (iii) Defendants' and Voyager's roles in any such concerted plan, or (iv) what precise injury the alleged "agreement" was designed to inflict. *See*

*Wiatt*, 838 F. Supp. 2d at 318 ("passive receipt of [fees] from a paying client" not sufficient as overt act); *W.H. v. R.C.*, 2020 WL 1041390, at *10 (D.N.J. Mar. 4, 2020) (no agreement to commit wrong).

## V.       Plaintiffs State No Viable Claim Under the DJA.

Plaintiffs' claim under the New Jersey Declaratory Judgments Act ("DJA") (Count 3), is also defective. *First*, the claim cannot be sustained on behalf of any Plaintiff other than New Jersey resident Rahil Sayed. *See* N.J. Stat. § 49:3-51 (limiting claims under the New Jersey Securities Act to in-state commerce). *Second*, Plaintiffs invoke the DJA for an improper purpose, as "another adequate remedy is [alleged to be] available." *Rego Indus., Inc. v. Am. Modern Metals Corp.*, 91 N.J. Super. 447, 452-53 (App. Div. 1966). Here, Plaintiffs' allege *twenty-three* other Counts that would necessarily resolve the factual issues for which Plaintiffs seek a declaratory judgment. *See id.* at 452-53 (dismissing claim under DJA where "the parties have reached a stage where rights have been breached" and "all [plaintiff] has left is a claim for damages"). Plaintiffs' "rights" with respect to the Voyager Platform and EPAs were allegedly violated when Plaintiffs opened Voyager EPAs, and the issue of whether Defendants participated in the alleged violations would necessarily be resolved by Plaintiffs' twenty-three other claims.[36]

## VI.      Plaintiffs' SAC Is an Impermissible "Shotgun" Pleading.

Courts must reject "shotgun" pleadings in which plaintiffs fail to specify "which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Plaintiffs may not "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

Here, Plaintiffs assert all 24 causes of action against "Defendants" collectively, regardless of whether the state law invoked in each cause of action actually applies to a particular Defendant vis-à-vis a Plaintiff in that state. *See, e.g.*, SAC ¶ 348 ("Defendants materially assisted in and actively participated in Voyager's offer and sale of" alleged securities) and ¶ 352 ("representations

---

[36] Furthermore, the DJA precludes declaratory relief that would impact the rights of a non-party. *See* N.J. Stat. § 2A:16-56; N.J. Stat. § 2A:16-57. Accordingly, as set forth more fully in Part VII, *infra*, Plaintiffs' claim under the DJA cannot survive because Voyager is not party to this suit, but its rights would be impacted by a declaration as to whether the EPAs are unregistered securities, the Voyager Platform works as represented, or Voyager paid Cuban any money (it did not). *See Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.*, 376 N.J. Super. 48, 56. (App. Div. 2005) (dismissing DJA claim where indispensable parties were not joined).

and omissions made by Defendants"); *see also id.* ¶¶ 354, 360, 368, 371-74, 379, 384, 391, 398, 408, 413, 424, 428, 430, 437, 441, 442, 443, 446, 448, 454, 466, 473, 483, 488, 495, 500, 511, 515, & 526. Additionally, Plaintiffs' specific legal counts themselves are fatally deficient, as they improperly attribute statements made by one individual to all Defendants (*see, e.g.*, *id.* ¶¶136, 455) or lack any detail whatsoever. Merely incorporating all of the previously alleged factual allegations without making any effort to connect those alleged facts to specific Defendants and to the legal elements of the claim being asserted is improper. *See id.* ¶¶ 375, 394, 409, 425, 439, 452. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278-79 (11th Cir. 2006) (dismissing claims "insufficiently linked to the large fact section that precede[ed] the counts").

## VII.   Voyager is a Necessary Third Party Under Rule 19.

Voyager is a necessary third party under Rule 19, and if, *arguendo*, the Court does not dismiss the SAC on other grounds, this case cannot proceed in the Voyager debtor's absence. This case is about the conduct of Voyager and Ehrlich. Under Rules 12(b)(7) and 19(a), "[i]f the [absent] party is a required party, the court must order that the person be made a party." *Barbachano v. Standard Chartered Bank Int'l (Americas) Ltd.*, 2014 WL 29595, at *4 (S.D. Fla. Jan. 3, 2014) (quotation marks and citations omitted); *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 847-48 (11th Cir. 1999). The SAC alleges the *Voyager debtors'* conduct is fundamental to and at the core of this litigation. Plaintiffs allege the *Voyager debtors*, not Defendants, are the ones who violated state securities laws through the sale of allegedly unregistered securities (*see* SAC ¶¶ 138-59); "*Voyager* Misrepresented its Products and Deceived the Public" (*id.* ¶¶ 125-37 (emphasis added)); and *Voyager* allegedly misrepresented that "offered trades that were '100% Commission-Free'" (*id.* ¶ 125); while "*Voyager* secretly charged exorbitant commissions on each trade" (*id.* ¶¶ 128-33 (emphasis added)). The Court will need to evaluate Voyager's conduct, as Plaintiffs seek in part to hold Defendants secondarily liable for *Voyager's* alleged primary violations. As the Voyager debtors are required parties, they must be named defendants. If Plaintiffs cannot do so due to the bankruptcy stay, then "equity and good conscience" requires dismissal of the case under Rule 19(b). *In re Rensin*, 600 B.R. 870, 888 (Bankr. S.D. Fla. 2019).[37]

---

[37] Courts should also consider if "a judgment rendered in the person's absence might prejudice that person or the existing parties" and if plaintiff "would have an adequate remedy if the action were dismissed for non-joinder." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011). *In re Rensin* is instructive: the Court dismissed claims pursuant to

## VIII.   The Mavs and Cuban Should be Dismissed for Lack of Personal Jurisdiction.

Plaintiffs' claims against Cuban and the Mavs are also deficient because Plaintiffs' fail to meet the requirements of both Florida's long-arm statute and the Due Process Clause. Following jurisdictional discovery, Plaintiffs must establish personal jurisdiction "by a preponderance of the evidence." *Contour Prods., Inc. v. Albecker*, 2009 WL 10646653, at *2 (S.D. Fla. Jun. 2, 2009). Plaintiffs may not rely on vague and conclusory allegations contradicted by sworn affidavits. *Carmouche v. Carnival Corp.*, 36 F. Supp.3d 1335 (S.D. Fla. 2014). To show that exercise of jurisdiction comports with due process, Plaintiffs must establish that (1) their claims "arise out of or relate" to the relevant Florida contacts, (2) defendants' "purposeful[] avail[ment]," and (3) exercise comports with "traditional notions of fair play and substantial justice."). *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

### A.   No Jurisdiction Under Florida Long-Arm Statute.

Plaintiffs invoke three specific-jurisdiction provisions of Florida's long-arm statute: Fla. Stat. § 48.193(1)(a)(1), § 48.193(1)(a)(2), and § 48.193(1)(a)(6). None apply here.

*First*, the Court can easily dispense with § 48.193(1)(a)(6) and § 48.193(1)(a)(1). The former concerns conduct outside Florida causing injury within Florida, but the section does not apply to economic injury, as alleged here. *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735-36 (11th Cir. 2018); *Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992, 994 (Fla. 1987); *see, e.g.*, SAC ¶¶ 32, 356. The latter concerns claims arising from a defendant doing business in Florida, § 48.193(1)(a)(1), but Plaintiffs allege Defendants' subject "business" was located in Texas, not Florida. *See* SAC ¶¶ 114-15, 224-25, 228-30.

*Second*, § 48.193(1)(a)(2), which concerns in-State torts, is not satisfied. It only applies to torts, which are not alleged. *See Blackwell v. Kleemann*, 2010 WL 11507770, at *5 (M.D. Fla. July 1, 2010). Further, the section requires the tort be committed in Florida, focusing not on where Plaintiffs "ultimately felt damages, but where a defendant's tortious conduct occurred." *Robinson Helicopter Co., Inc. v. Gangapersaud*, 346 So. 3d 134, 140 (Fla. Dist. Ct. App. 2022); *see*

---

Rule 19(b), as the bankruptcy trustee was a necessary third party in an action seeking a declaratory judgment concerning the trustee's contractual rights, since the court could not bind the third party and there was "no way to tailor the relief to make this Court's ruling binding." 600 B.R. at 888. Here, Plaintiffs seek a judgment that Voyager violated the Consumer Fraud Statutes, and they "would have an adequate remedy if the action were dismissed for non-joinder" because they can sue Voyager once the bankruptcy stay is lifted. *See Molinos Valle*, 633 F.3d at 1344.

*KrunchCash LLC v. Craig*, 2023 WL 2487230, at *9 (S.D. Fla. Mar. 13, 2023). Here, the Press Conference occurred in Texas, and the alleged Florida connection is that certain Plaintiffs were injured in Florida after viewing the Press Conference online and opening EPAs in Florida.

### B.    Defendants Cannot Satisfy Due Process Standard of Purposeful Availment.

That a website is globally accessible is not enough for purposeful availment under the Due Process Clause. *See Mosseri*, 736 F.3d at 1357-58. Substantially more is required. Nothing here approaches purposeful availment.

*First*, Defendants undisputedly conducted no sales into Florida, distinguishing cases where availment included defendant's sales into the forum. *See Mosseri*, 736 F.3d at 1358 (defendant sold and distributed infringing goods into Florida through website); *Kumbrink v. Hygienic Corp.*, 2016 WL 5369334, at *3 (S.D. Fla. Sept. 26, 2016) (defendant operated fully interactive website and "processed sales to Florida customers"); *Weingartner v. Draper James LLC*, 2016 WL 8678544, at *5 (S.D. Fla. Oct. 4, 2016) (defendant "sold and distributed infringing goods to Florida consumers through its interactive website").

*Second*, one cannot purchase Voyager crypto or open an EPA on the Mavs' website or social media accounts, *see* SAC ¶ 211 n.46, distinguishing cases where a website is sufficiently "interactive" to transact at-issue commerce. *See Mosseri*, 736 F.3d at 1358 (sales through website); *Kumbrink*, 2016 WL 5369334, at *3 (same); *Weingartner*, 2016 WL 8678544, at *5 (same).

*Third*, the only relevant "product" here is Voyager's—not the Mavs'. *See* SAC ¶¶ 19, 60, 119-59, 324. No matter how many customers redeemed "MAVS100" codes, all such commerce was with New Jersey-based Voyager, not Defendants. Nor does the MAVS100 code constitute a Florida-based contact, since the SAC does not allege Cuban and the Mavs intentionally targeted Florida residents, as confirmed by jurisdictional discovery. Plaintiffs allege Defendants advertised Voyager in Florida, but "a defendant [does not] 'target' a state and establish 'minimum contacts' solely by creating a website that a consumer in the state might access." *See Volt, LLC v. Volt Lighting Grp. LLC*, 369 F. Supp. 3d 1241, 1248 (M.D. Fla. 2019).

*Fourth*, while Voyager paid the Mavs (but not Cuban) under the Sponsorship Agreement, that payment was made by New Jersey-based Voyager. *See* SAC ¶ 19 (Voyager based in New Jersey); ECF No. 155-2, Sponsorship Agr. § 2.02 (Voyager paid the Mavs, not Cuban). Further, Voyager's payment to the Mavs was not contingent on Voyager's success in signing up customers or selling VGX, in Florida or elsewhere. *See id.* Ex. II; ECF No. 155-30, Cuban Tr. 279:12-280:19.

*Fifth*, the Voyager content displayed at nationally televised Mavs games, *see* SAC ¶¶ 205, 224-25, 228-30, is more of the same: generally viewable statements televised throughout the United States, with no targeting of Florida, no reference to Florida, no "interactivity," and no enabling of Mavs sales to Florida.[38] That is not a Florida jurisdictional contact.

## C.     Fiduciary Shield Doctrine Confirms Lack of Jurisdiction Over Cuban.

Plaintiffs' jurisdictional allegations as to Cuban are even weaker. Under Florida's fiduciary shield doctrine, "acts performed by a person exclusively in his corporate capacity not in Florida but *in a foreign state* may not form the predicate for the exercise of personal jurisdiction . . ." *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012). Here, Plaintiffs rely on allegations of conduct in Texas in Cuban's corporate capacity, including his "role in managing the Voyager/*Mavericks* negotiations" by requesting to be copied on correspondence (SAC ¶ 40 (emphasis added)), and Press Conference statements announcing the deal between Voyager and the Mavs (*see id.* ¶¶ 209, 211, 213, 215, 222; ECF No. 155-1, Press Conf. Tr. at 2:18-20). Indeed, Plaintiffs expressly refer to Cuban as "Mark Cuban (Governor, Dallas Mavericks)." SAC at p. 63. While Plaintiffs' summarily allege Cuban "personally" promoted Voyager (SAC ¶¶ 8, 30), the SAC exhibits refute this, as Voyager was "a [Mavs'] customer, and anything [Cuban] did at the [P]ress [C]onference was on behalf of the [Mavs]." ECF No. 155-30, Cuban Tr. at 15:13-15.[39]

## CONCLUSION

For the foregoing reasons, Plaintiffs' SAC should be dismissed with prejudice.

---

[38] While Plaintiffs first alleged Cuban promoted Voyager on trips to Miami, jurisdictional discovery contradicted this claim, after which Plaintiffs caveated a similar allegation on "information and belief." SAC ¶ 242. While that phrase is not a license to repeat falsehoods, and the allegation is subject to sanctions practice, ECF No. 157 Arg. § IV(B), this cursory allegation is merely a talismanic recitation of a legal requirement and plainly insufficient. *See Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018). In reality, Cuban attended a crypto conference in Miami and discussed cryptocurrency during an impromptu interview with the mayor of Miami. *See* ECF No. 155-30, Cuban Tr. at 205:6-18, 207:10-208:1. He never mentioned Voyager during either. *See id.* at 282:24-283:4.

[39] By contrast, when Cuban personally endorses a product or company, he has "a personal contractual relationship with them," but that he had not done so in this instance. *Id.* at 15:15-19.

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), Defendants respectfully request that the Court hear oral argument on the Omnibus Motion because this case involves myriad legal issues and statutory schemes. Defendants believe oral argument would further the Court's understanding of the multiple grounds for dismissal with prejudice. Defendants submit that thirty minutes per side is sufficient for the parties to argue the issues presented.

Respectfully submitted this 27th day of October 2023

**Counsel for Defendant Victor Oladipo:**

*/s/ Jonathan S. Feldman*
JONATHAN S. FELDMAN, ESQ.
Florida Bar. No. 12682
Primary Email: feldman@katiephang.com

**PHANG & FELDMAN, PA**
One Biscayne Tower, Suite 1600
2 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 614-1223
Fax: (305) 614-1187

**Counsel for Defendant Robert Gronkowski:**

*/s/ R. Craig Mayfield*
R. CRAIG MAYFIELD, ESQ.
Fla. Bar No. 429643
Email:  cmayfield@bradley.com

ALEXIS BUESE, ESQ.
Fla. Bar No. 1028599
Email: abuese@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5525
Fax: (813) 229-5946

CHARLES E. ELDER, ESQ.
Pro Hac Vice
Email: celder@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Tel: (615) 244-2582

**Counsel for Defendants Mark Cuban and Dallas
Basketball Limited d/b/a Dallas Mavericks:**

*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

**FOWLER WHITE BURNETT, P.A.**
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:     (305) 789-9200
Facsimile:      (305) 789-9201

*-and-*

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@lawsonhuckgonzalez.com

**LAWSON HUCK GONZALEZ, PLLC**
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (850) 825-4334

*-and-*
STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email:  sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email:  rwolkinson@brownrudnick.com

**BROWN RUDNICK LLP**
601 Thirteenth Street NW Suite 600
Washington, DC 20005

Telephone (202) 536-1755

*-and-*

SIGMUND WISSNER-GROSS, ESQ.
*Pro Hac Vice*
Email:  swissner-gross@brownrudnick.com

JESSICA N. MEYERS, ESQ.
*Pro Hac Vice*
Email:  jmeyers@brownrudnick.com

**BROWN RUDNICK LLP**
Seven Times Square
New York, NY  11036
Telephone:  (212) 209-4930

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2023, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

## SERVICE LIST

Adam M. Moskowitz, Esq.
Joseph M. Kaye, Esq.
Barbara C. Lewis, Esq.
Howard M. Bushman, Esq.
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, Florida 33134
E-mail: adam@moskowitz-law.com
Email: joseph@moskowitz-law.com
Email: barbara@moskowitz-law.com
Email: howard@moskowitz-law.com

*Counsel for Plaintiffs and the Proposed
Classes*

**VIA CM/ECF**

Stephen Neal Zack, Esq.
szack@bsfllp.com
Hon. Ursula Ungaro (Retired), Esq.
uungaro@bsfllp.com
Tyler E. Ulrich, Esq.
tulrich@bsfllp.com
Boies Schiller Flexner LLP
100 S.E. 2nd St., Suite 2800
Miami, FL 33131

*Co-Counsel for Plaintiffs and the Proposed
Classes*

**VIA CM/ECF**

David Boies, Esq.
*Pro Hac Vice*
Boies Schiller Flexner LLP
333 Main Street
Armonk, NY 10504
Email:  dboies@bsfllp.com

*Co-Counsel for Plaintiffs and the Proposed
Classes*

**VIA CM/ECF**

Jose M. Ferrer, Esq.
Mark Migdal & Hayden
80 S.W. 8th Street, Suite 1999
Miami, FL 33130
Email: jose@markmigdal.com

*Co-Counsel for Plaintiffs and the Proposed
Classes*

**VIA CM/ECF**