**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No: 1:22-cv-22538 (Altman/Reid)**

PIERCE ROBERTSON, *et al.*,

     Plaintiffs,

v.

MARK CUBAN, *et al.*,

     Defendants.

_____/

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' OMNIBUS**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................................................1

**ARGUMENT** ...............................................................................................................................2

    I.    Plaintiffs State No Viable Securities Law Claims. ............................................... 2

        A.    The Voyager EPAs Are Not Securities........................................................ 2

            1.    The Voyager EPAs Are Not Investment Contracts Under *Howey*. .................................................................................. 2

            2.    The Voyager EPAs Are Not Security Notes Under *Reves*. ........... 3

        B.    Defendants Cannot Be Held Liable for Voyager's Sale of Alleged Securities..................................................................................................... 5

    II.    Plaintiffs State No Viable Consumer Fraud and Deceptive Trade Practice Claims. .................................................................................................................. 7

        A.    Plaintiffs Fail to Satisfy Rule 9(b), Which Applies Here. ......................... 7

        B.    Defendants' Statements Were Not Misleading or Deceptive. .................... 7

        C.    Plaintiffs Do Not Qualify As Customers or Consumers, the SAC Does Not Adequately Allege Causation, and "Lost Investments" Are Unrecoverable. ........................................................................................... 8

        D.    FDUTPA Does Not Apply to Securities Claims......................................... 9

    III.    Plaintiffs' Remaining Claims Fail. ..................................................................... 10

    IV.    Voyager is a Necessary Third Party Under Rule 19. .......................................... 11

    V.    Gronkowski and Oladipo Are Uniquely Entitled To Dismissal, As Plaintiffs' Opposition Confirms the Absence of Any Actionable Allegations Against Them............................................................................................................... 11

        A.    Gronkowski and Oladipo Did Not Violate Any Securities Laws. ............ 11

        B.    Gronkowski and Oladipo Did Not Violate Any Consumer Protection Laws........................................................................................................... 12

        C.    The SAC is an Impermissible Shotgun Pleading. ..................................... 13

    VI.    The Mavs and Cuban Should be Dismissed for Lack of Personal Jurisdiction.... 13

        A.    Plaintiffs Fail to Show Purposeful Availment. ......................................... 13

        B.    The Corporate Shield Doctrine Further Protects Cuban. .......................... 15

**CONCLUSION** .........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allyn v. Am. Bd. of Med. Specialties, Inc.*,
  2019 WL 297459 (M.D. Fla. Jan. 3, 2019)...............................................................8

*Am. United Life Ins. Co. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) ............................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................7

*Banco Espanol de Credito v. Sec. Pac. Nat. Bank*,
  763 F. Supp. 36 (S.D.N.Y. 1991)............................................................................3

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ..............................................................................3

*C.N.S. Enters., Inc., v. G & G. Enters., Inc.*,
  508 F.2d 1354 (7th Cir.1975) .................................................................................3

*Carmouche v. Carnival Corp.*,
  36 F. Supp. 3d 1335 (S.D. Fla. 2014) ...................................................................14

*Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*,
  270 F. Supp. 3d 1340 (S.D. Fla. 2017) ...................................................................9

*Contour Prods., Inc. v. Albecker*,
  2009 WL 10646653 (S.D. Fla. Jun. 2, 2009)...................................................14, 15

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ............................................................................12

*De Ford v. Koutoulas*,
  2023 WL 2709816 (M.D. Fla. Mar. 30, 2023) ........................................................6

*In re Ethereummax Inv'r*,
  2023 WL 6787827 (C.D. Cal. June 6, 2023) ...................................................10, 12

*Feng v. Walsh*,
  2021 WL 8055449 (S.D. Fla. Dec. 21, 2021)....................................................9, 10

*Friedman v. Az. World Nurseries Ltd. P'ship*,
  730 F. Supp. 521 (S.D.N.Y. 1990).......................................................................5, 6

*Friel v. Dapper Labs, Inc.*,
   2023 WL 2162747 (S.D.N.Y. Feb. 22, 2023) ..........................................................................3

*Full Sail, Inc. v. Spevack*,
   2003 WL 25277185 (M.D. Fla. Oct. 21, 2003) .....................................................................15

*Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*,
   198 F.3d 685 (8th Cir. 1999) ...................................................................................................4

*Hodges v. Monkey Cap., LLC*,
   2018 WL 9686569 (S.D. Fla. Aug. 14, 2018)..........................................................................9

*Inouye v. Adidas Am., Inc.*,
   2023 WL 2351654 (M.D. Fla. Mar. 3, 2023) ...........................................................................7

*Intelligent Digit. Sys., LLC v. Visual Mgmt. Sys., Inc.*,
   683 F. Supp. 2d 278 (E.D.N.Y. 2010) .....................................................................................4

*Kitroser v. Hurt*,
   85 So. 3d 1084 (Fla. 2012).....................................................................................................15

*Licciardello v. Lovelady*,
   544 F.3d 1280 (11th Cir. 2008) ........................................................................................14, 15

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
   124 F. Supp. 3d 1283 (S.D. Fla. 2015) ....................................................................................9

*Marty v. Anheuser-Busch Cos., LLC*,
   43 F. Supp. 3d 1333 (S.D. Fla. 2014) ....................................................................................13

*Matter of New Jersey Firemen's Ass'n Obligation*,
   166 A.3d 1125 (N.J. 2017).....................................................................................................11

*New York Packaging II LLC v. Priv. D Cap. Grp. Corp.*,
   2023 WL 2306690 (S.D. Fla. Mar. 1, 2023).............................................................................7

*In re Oreck Corp.*,
   2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ..........................................................................14

*Pinter v. Dahl*,
   486 U.S. 622 (1988)..................................................................................................................5

*Portes v. Tan*,
   2014 WL 463140 (N.J. Super. Ct. App. Div. Feb. 6, 2014) ...................................................10

*Reeder v. Succession of Palmer*,
   736 F. Supp. 128 (E.D. La. 1990) ............................................................................................4

*Risley v. Universal Navigation Inc.*,
　　2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023) ..........................................................................6

*S.E.C. v. Unique Fin. Concepts, Inc.*,
　　119 F. Supp. 2d 1332 (S.D. Fla. 1998) ...................................................................................4

*SEC v. 1 Glob. Cap. LLC*,
　　2019 WL 1670799 (S.D. Fla. Feb. 8, 2019) ...........................................................................3

*SEC v. Gordon*,
　　2021 WL 5086556 (N.D. Tex. Nov. 1, 2021) ..........................................................................3

*SEC v. Kik Interactive Inc.*,
　　492 F. Supp. 3d 169 (S.D.N.Y. 2020) .....................................................................................2

*SEC v. NAC Found., LLC*,
　　512 F. Supp. 3d 988 (N.D. Cal. 2021) .....................................................................................2

*Skypoint Advisors, LLC v. 3 Amigos Prods.*
　　LLC, 2021 WL 6118098 (M.D. Fla. Dec. 27, 2021) ..........................................................9, 10

*Snow v. DirecTV, Inc.*,
　　450 F.3d 1314 (11th Cir. 2006) ...............................................................................................15

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*,
　　266 So. 3d 207 (Fla. Dist. Ct. App. 2019) ...............................................................................9

*Thompson v. Procter & Gamble Co.*,
　　2018 WL 5113052 (S.D. Fla. Oct. 19, 2018) ..........................................................................8

*Tietsworth v. Sears, Roebuck & Co.*,
　　2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ........................................................................13

*TocMail Inc. v. Microsoft Corp.*,
　　2020 WL 9210739 (S.D. Fla. Nov. 6, 2020) ..........................................................................12

*Vibra-Tech Engineers, Inc. v. Kavalek*,
　　849 F. Supp. 2d 462 (D.N.J. 2012) .........................................................................................10

*Wiatt v. Winston & Strawn LLP*,
　　838 F. Supp. 2d 296 (D.N.J. 2012) .........................................................................................10

*Wildes v. BitConnect International*,
　　25 F.4th 1341 (11th Cir. 2022) .....................................................................................6, 11, 12

*Yachera v. Westminster Pharms., LLC*,
　　477 F. Supp. 3d 1251 (M.D. Fla. 2020) .................................................................................12

*Young v. Grand Canyon Univ., Inc.,*
    57 F.4th 861 (11th Cir. 2023) ...................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................................................7

Fed. R. Civ. P. 9 ....................................................................................................................1, 7, 10

Fed. R. Civ. P. 19 ........................................................................................................................1, 11

## PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition (ECF No. 195, the "Opposition") confirms that this suit is a misguided effort to salvage stayed claims against Voyager—an effort marked by counsel swapping plaintiffs, defendants, allegations, and theories for over a year—which still has come up empty.

Unable to sue the seller of the crypto products at issue (Voyager), Plaintiffs argue that various sports-world Defendants were the sellers. That goes nowhere: Defendants did not "solicit" any sales, instead merely promoting Voyager as a company, nor did Defendants have the requisite financial interest or act as Voyager's partners or agents. Cuban and the Mavs declined even to *mention* VGX, and none of the Defendants "urge[d] or persuade[d]" anyone to buy anything as required by Eleventh Circuit law.

Plaintiffs cannot even sustain the essential premise that the products were securities. For all its verbiage, the Opposition fails to meaningfully contest Defendants' core showing that EPA holders lacked the essential "skin in the game" characteristic of equity, instead earning interest payments, like holders of savings accounts, which Voyager offered as incentives to increase its customer base. Not only do *Howey*, *Reves*, and recent cryptocurrency decisions confirm Defendants' position, Plaintiffs' response to news that the CFTC (rather than SEC) is pursuing these products is a non sequitur on administrative law that misses entirely the implication of the United States' charging decision: these products are not securities.

Plaintiffs' backup claims, such as for purported violations of state consumer fraud laws, fare just as poorly. In addition to other problems such as causation, damages, and failure to satisfy Rule 9(b), the core problem is that Plaintiffs have sued the wrong party. The critical statements were made by *Voyager*, not Defendants, and Plaintiffs' effort to scour the record for statements by Defendants turns up nothing close to actionable. Nor do wild-eyed notions of "conspiracy" go anywhere, particularly on allegations so threadbare as to be unintelligible.

Thus, Plaintiffs struggle (and fail) to explain why Voyager is not an indispensable party under Rule 19. Indeed, Voyager's absence is the fundamental problem with this lawsuit: at most, Plaintiffs might have claims against Voyager, but the effort to swap in these sports-world Defendants in Voyager's stead simply does not work. The SAC should be dismissed.

In addition, after months of jurisdictional discovery, the Opposition concedes a lack of

---

[1] Unless otherwise indicated, all defined terms have the same meaning as set forth in Defendants' Omnibus Motion to Dismiss the SAC (ECF No. 189, the "Motion").

jurisdiction over the Mavs and Cuban, declining even to address the Eleventh Circuit's relevant law of purposeful availment and contesting not a single jurisdictional fact. Having abandoned key jurisdictional allegations that had no basis in reality, Plaintiffs are left with nothing to support purposeful availment, absent a radical rewrite of Eleventh Circuit jurisdictional law. The Mavs and Cuban should be dismissed for this additional reason.

ARGUMENT

**I.      Plaintiffs State No Viable Securities Law Claims.**

**A.      The Voyager EPAs Are Not Securities.**

The Voyager EPAs are not securities under *Howey* or *Reves*. Per the SAC, the EPAs: (i) provided only interest, not pro rata profits and losses; (ii) were commercial replacements for savings or money market accounts; and (iii) were not tradable on a secondary market. *See* Mot. at 6-16. Stuck with these facts, Plaintiffs seek to expand the concept of equity far afield of the quintessential "skin in the game" by which investors risk profit or loss on the efforts of others.

**1.      The Voyager EPAs Are Not Investment Contracts Under *Howey*.**

Critically, Plaintiffs do not claim EPA holders were entitled to share pro rata in Voyager profits and losses. *See* Opp. at 9-10, 11-12. Having conceded the EPA holders' mere entitlement to interest, adjustable by Voyager but *not* contingent on other customers' deposits, SAC ¶¶ 39, 201, 212, 228, or Voyager's performance,[2] Plaintiffs cannot satisfy *Howey*.

Plaintiffs seek refuge in initial coin offering ("ICO") cases, but those only show what "skin in the game" actually looks like, underscoring its absence here. In the ICO cases, defendants minted tokens and sold them, using the proceeds to develop infrastructure and operate their companies, and, critically, the tokens' value experienced huge variations based solely on defendants' performance. *See SEC v. NAC Found., LLC*, 512 F. Supp. 3d 988, 996 (N.D. Cal. 2021) (ICO funded development and "fortunes of ICO participants—as measured by either the trading value of [the tokens]—were linked to the fortunes of defendants" (quotations omitted)); *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 178 (S.D.N.Y. 2020) (defendant used ICO

---

[2] Plaintiffs allege their EPAs entitled them to interest at rates set by Voyager monthly. SAC ¶ 145 (entitling Plaintiffs to "interest earned on [their] account"); *see* Voyager Earn Program Terms & Conditions ¶ (a), http://web.archive.org/web/20211022071931/https://rewards. investvoyager.com/interest/ (archived from Oct. 22, 2021) (the "Voyager T&C") (Voyager announced "rewards rates once per month"). While Voyager could periodically adjust rates, just as banks revise savings accounts' rates, Voyager was obligated to pay the promised rate.

proceeds to construct digital ecosystem and "investors reaped their profits [via] increased [token] value"). Simply put, investors bet on the defendant's and token's success (not solvency). If the company made good use of raised funds, purchasers faced unbounded gains or losses. Here, by contrast, there was no such profit-sharing, merely interest.[3]

Indeed, Plaintiffs allege the EPAs were marketed to small businesses in lieu of traditional savings accounts and earned the promised interest, offered by Voyager as a customer incentive, regardless of Voyager's profits or losses. SAC ¶ 189. Like all lenders, Plaintiffs had an interest in continued solvency, but mere solvency is not what success means under *Howey*. *See* Mot. at 9.

Plaintiffs next assert that "[i]t is irrelevant whether [these] profits are fixed or pro rata; what matters is that participants reasonably expected a financial gain." Opp. at 12. But that is not the law, as, "[i]n one sense every lender . . . is an investor since he places his money at risk in anticipation of a profit in the form of interest." *C.N.S. Enters., Inc., v. G & G. Enters., Inc.*, 508 F.2d 1354, 1359 (7th Cir. 1975). Not all such loans are securities. *Banco Espanol de Credito v. Sec. Pac. Nat. Bank*, 763 F. Supp. 36, 44 (S.D.N.Y. 1991), *aff'd*, 973 F.2d 51 (2d Cir. 1992).

## 2. **The Voyager EPAs Are Not Security Notes Under *Reves*.**

Nor does the Opposition counter Defendants' arguments under *Reves*. *See* Mot. at 10-12.

As to the first *Reves* factor, the parties' motivations, the EPAs' salient features were that loans were short term and open-ended, receiving reasonable interest revised monthly. Voyager T&C ¶¶ (a), (c). The SAC is devoid of facts suggesting customers' motivations differed meaningfully from commercial lenders.[4] Unlike in Plaintiffs' case, *SEC v. 1 Glob. Cap. LLC*, where defendant expressly stated it would use funds to "expand its current business activities," the SAC is devoid of similar allegations regarding Voyager's use of EPA funds. 2019 WL 1670799, at *1 (S.D. Fla. Feb. 8, 2019); Opp. at 17-18. In fact, Voyager's Canadian filings, subject to judicial notice,[5] indicate Voyager sought to increase its customer base via the EPA program. Voyager did

---

[3] Plaintiffs only undermine their position by citing additional cases where investors allege the asset in question would fluctuate based on defendant efforts. *See Friel v. Dapper Labs, Inc.*, 2023 WL 2162747, at *12 (S.D.N.Y. Feb. 22, 2023) (sales of NFTs and transaction fees were "used to support and grow the blockchain" which was "necessary to the value of [the NFTs]"); *SEC v. Gordon*, 2021 WL 5086556, at *1-*2, *4 (N.D. Tex. Nov. 1, 2021) (investors purchased joint venture interests in rental properties, and defendants promised to use the funds to improve the properties and sell the units for profits, which would be distributed pro-rata to investors).

[4] Indeed, Plaintiffs even affirmatively allege Cuban stated he believed Voyager's interest payments would appeal to small businesses. *See* SAC ¶ 189.

[5] *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999).

not use profits from its EPA program to fund general business, as it *lost* money on the program, *e.g.*, paying $47.1 million in interest in 2021, while earning about $21.0 million on fees from crypto asset loans. Voyager Digital Ltd., *Mgmt's Discussion and Analysis* at 10 (Oct. 28, 2021).[6]

As to the second factor, Plaintiffs do not dispute the EPAs were non-transferrable, instead noting Voyager offered EPAs to the public. Opp. at 18. But not all instruments offered to the public are securities, especially where the lender's motivation was a return on excess capital, not a bet on enterprise value. *See Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 198 F.3d 685, 700 (8th Cir. 1999) (capital credits offered to coop members not securities where "credits were not freely transferable," "not traded on any securities exchange," and "had no secondary market").

The SAC also fails to allege that the investing public expected these products to be securities. Voyager marketed the EPAs as a way to "earn more . . . than from traditional financial applications." Opp. at 19 (citing SAC ¶ 8). EPA customers' "only expectation could be that of loan repayment with a fixed – albeit high – rate of interest." *Reeder v. Succession of Palmer*, 736 F. Supp. 128, 131 (E.D. La. 1990), *aff'd sub nom. Reeder v. Palmer*, 917 F.2d 560 (5th Cir. 1990).[7]

Finally, though the Court need not consider risk mitigation factors where the first three *Reves* factors favor Defendants, *see Intelligent Digit. Sys., LLC v. Visual Mgmt. Sys., Inc.*, 683 F. Supp. 2d 278, 285 (E.D.N.Y. 2010), in conceding the CFTC's jurisdiction over commodity pools (Opp. at 20), Plaintiffs admit there is an alternative regulator actively seeking to hold Voyager's founder responsible for misconduct.[8]

---

[6] Voyager's 2021 Management's Discussion and Analysis, submitted to Canadian regulators, is available on SEDAR+, https://www.sedarplus.ca/landingpage/, and can be accessed by searching for material filed by Voyager Digital Ltd. (profile # 000005648) in October 2021.

[7] Plaintiffs do not allege the EPAs were "investments," let alone in Voyager. Rather, Plaintiffs allege Cuban stated "*USDC* was a very wise, safe investment choice," SAC ¶ 68 (emphasis added), and do not allege Voyager or Defendants were involved in the creation or initial distribution of USDC, a popular, widely available stable coin.

[8] Plaintiffs' reference to the CFTC and SEC's concurrent jurisdiction is non-responsive. Even if the agencies hold concurrent jurisdiction, as in Plaintiffs' case, *S.E.C. v. Unique Fin. Concepts, Inc.*, where, unlike here, "gains and losses [were] apportioned amongst the individual investors," the SEC's inaction in the Voyager case—after years to investigate—indicates it does not consider the EPAs securities. 119 F. Supp. 2d 1332, 1337 (S.D. Fla. 1998), *aff'd*, 196 F.3d 1195 (11th Cir. 1999). Further, the state regulators who issued press releases related to the EPAs, *see* SAC ¶ 175, also seem to have decided that the EPAs are not securities, as they permitted Voyager's operations to continue.

**B.    Defendants Cannot Be Held Liable for Voyager's Sale of Alleged Securities.**

Plaintiffs also fall far short in arguing Defendants are liable as "sellers" for sales actually carried out by Voyager. Defendants' alleged conduct comes nowhere near the exceptional level of participation required, given their (i) mere promotional activity, (ii) lack of privity with purchasers, (iii) mere assistance in solicitation, and (iv) lack of successful solicitation. Mot. at 12-17. Plaintiffs' secondary liability theory is weaker still, as Defendants do not fall within the narrow category of qualifying relationships, nor do Plaintiffs successfully allege Defendants "materially" or "personally" assisted primary violations. *Id.* at 17-21. Plaintiffs' response that Defendants "successfully solicit[ed]" Voyager's sales, motivated "by a desire to serve" their or Voyager's financial interests, Opp. at 13, fails for several reasons.[9]

*First*, Defendants did not have the requisite financial interest. Because Plaintiffs cannot dispute that Defendants' payment was not contingent on Voyager enrolling new customers, Mot. at 14, they seek to grossly expand liability to anyone who unwittingly assisted in a Voyager sale, so long as they were paid for their services and hoped to work with Voyager again. *See* Opp. at 15 ("expectations of being long-term brand ambassadors"). That strains "seller" beyond its ordinary meaning, as it is "uncommon to say that the buyer 'purchased'" anything from an entity simply because it provided services to the seller and sought to continue the relationship. *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Indeed, this exceptionally broad definition would capture attorneys, accountants, and bankers, all of whom might assist an issuer and hope the issuer will be a repeat client—exactly what *Pinter* sought to avoid. *Id.* at 651 (rejecting interpretation of "seller" that would include "securities professionals, such as accountants and lawyers"). Under Plaintiffs' theory, anyone appearing in a company's commercial may be liable for the company's securities violations—or at least will need to defend such actions through discovery.[10]

In assessing financial motivations, courts look for payments "[o]ther than the usual fees for professional services rendered in connection with the" alleged solicitation. *Friedman v. Az. World*

---

[9] Plaintiffs do not respond to Defendants' argument that Plaintiff Rachel Gold's claims fail because she did not open a Voyager account in her own name and thus did not purchase anything, Mot. at 21 n.23, thereby conceding this point.

[10] Plaintiffs' argument Cuban was financially motivated to increase the number of EPA customers because he was "a Voyager customer" misses the mark. Opp. at 7. By opening an EPA, Cuban was entitled only to interest on the amount he held as principal. *See* Voyager T&C ¶ (a). Cuban's interest payments were set by Voyager each month and did not fluctuate based on the number of new Voyager customers. *Id.*

*Nurseries Ltd. P'ship*, 730 F. Supp. 521, 542 (S.D.N.Y. 1990), *aff'd sub nom. Frost v. Az. World*, 927 F.2d 594 (2d Cir. 1991). Individuals have insufficient financial motivation where "no financial gain, *i.e.*, commissions or finders' fees, is alleged." *Id.*; *see also* Mot. at 13-14. Plaintiffs' reliance on *Wildes v. BitConnect International* is thus misguided, as promoters there "earned a commission on . . . investments." 25 F.4th 1341, 1343 (11th Cir. 2022). And *De Ford v. Koutoulas*, relied on by both parties, Mot. at 13; Opp. at 9, 14, is instructive. There, the court permitted claims against certain defendants to proceed where they allegedly solicited sales of tokens in which they held significant positions, 2023 WL 2709816, at *3 (M.D. Fla. Mar. 30, 2023), while claims against another defendant were dismissed for absence of similar allegations, *i.e.*, there were "no allegations [to] show Defendant Norden received value or made [the alleged] solicitations to serve his own financial [interests]," *id.* at *16. Defendants here are analogous to Norden, as Plaintiffs do not sufficiently allege Defendants' financial interest was contingent on Voyager sales. *See* Mot. at 14.

*Second*, Plaintiffs allege only that Defendants promoted Voyager generally, which is insufficient for "successful solicitation." While solicitation can take place online, here statements attributed to Defendants do not amount to successful solicitation as a matter of law. Simply put, general promotion—such as the display of the Voyager logo on the Mavs' court (SAC ¶ 228)—is not successful solicitation. *Risley v. Universal Navigation Inc.*, 2023 WL 5609200, at *19 (S.D.N.Y. Aug. 29, 2023); *see also* Mot. at 15-16. *Risley* found no solicitation where the plaintiffs alleged the defendant tweeted that the platform on which allegedly unregistered securities could be purchased was "secure" and "for many people," as such conduct was "too attenuated to state a claim." *Id.* at *19. The court reasoned, "[p]laintiffs [were] looking for a scapegoat for their claims because the defendants they truly seek are unidentifiable," as was "evidenced by [p]laintiffs' inclusion of literally hundreds of paragraphs of solicitation claims directed at" other parties. *Id.* Here, too, Defendants' general promotion of Voyager is too attenuated from Voyager's alleged sales; instead, Plaintiffs seek to hold Defendants liable as scapegoats for their losses because they cannot recover from bankrupt Voyager, as evidenced by the large portions of the SAC still devoted solely to discussion of Voyager's alleged misconduct. *See, e.g.*, SAC ¶¶ 119-59, 182-96.

*Third*, Plaintiffs do not meaningfully dispute that Defendants are not Voyager's agents or partners, falling back on conclusory allegations that a colloquial reference to a "partnership" somehow created a legal partnership, *see id.* at 15, despite binding authority to the contrary, *see* Mot. at 17-18. Plaintiffs do not dispute that Defendants' agreements with Voyager make clear no

partnership or agency relationship existed and do not cite authority finding an agency or partnership relationship in any analogous situation. *See* Mot. at 18-20.

*Finally*, Plaintiffs fail to refute that materials attached to the SAC clearly indicate Cuban and the Mavs expressly declined to promote VGX. *See* Mot. at 30.[11] Cuban and the Mavs cannot be said to have "sold" a token they never referenced in any way (nor can Oladipo or Gronkowski be said to have sold the token).[12]

## II.    Plaintiffs State No Viable Consumer Fraud and Deceptive Trade Practice Claims.

### A.    Plaintiffs Fail to Satisfy Rule 9(b), Which Applies Here.

While Plaintiffs contest applicability of Rule 9(b), a recent decision unequivocally holds "Rule 9(b) applies to a FDUTPA claim sounding in fraud." *New York Packaging II LLC v. Priv. D Cap. Grp. Corp.*, 2023 WL 2306690, at *10 (S.D. Fla. Mar. 1, 2023); *see also Inouye v. Adidas Am., Inc.*, 2023 WL 2351654, at *3 (M.D. Fla. Mar. 3, 2023). Here, the Consumer Fraud Claims sound in fraud. Opp. at 23 (arguing Plaintiffs sufficiently pled "what [Defendants] gained by the alleged fraud"); *see also* SAC ¶¶ 5, 23 ("fraudulent scheme")).[13]

### B.    Defendants' Statements Were Not Misleading or Deceptive.

Under any pleading standard, Plaintiffs fail to identify deceptive conduct by Defendants. The statements identified are either non-actionable puffery or accurate, non-misleading statements, and the claims cannot be based on the alleged failure to disclose Voyager compensated Defendants.

---

[11] Though Plaintiffs characterize VGX as "Voyager's native token," SAC ¶ 47, Opp. at 1, Voyager did not actually create VGX. Rather, Voyager acquired LGO Europe SAS in December 2020 and converted that entity's LGO token into what became VGX. PR Newswire, *Voyager Digital Completes Historic Token Merger*, https://www.prnewswire.com/news-releases/voyager-digital-completes-historic-token-merger-301365631.html (Aug. 31, 2021).

[12] Plaintiffs argue promotion of Voyager was necessarily a promotion of VGX. Opp. at 27. To the contrary, the SAC alleges the default was customers were paid whatever token they held as principal (often not VGX), but Voyager customers had an option to be paid a higher interest in VGX. *See* SAC ¶ 143 (payment in VGX optional, as "users could" increase interest if they were paid in VGX); Voyager T&C ¶ (b) ("Rewards will be paid in kind (i.e., in the type of cryptocurrency that is earning rewards)."). Plaintiffs fall back on a conclusory allegation that "endorsement of the Voyager Platform" caused them to purchase VGX. Opp. at 27. But such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] Further, Plaintiffs fail to cite authority that Rule 8 applies to their non-Florida Consumer Fraud Claims, failing to address the numerous cases to the contrary cited in the Motion. Mot. at 22 n. 27; *see also Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (applying Rule 9(b) to intentional misrepresentations and violations of Arizona Consumer Fraud Act).

Cuban's statements that Voyager's pricing was "really good" and USDC was "as close to risk free as you're going to get in the crypto universe" and Oladipo's statements that Voyager was the "perfect platform for anyone getting into the crypto market" and the Voyager App was "easy and fun to use," Opp. at 24-25, are the type of non-measurable, "vague and highly subjective" statements upon which reasonable consumers could not rely. *Thompson v. Procter & Gamble Co.*, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018); *see* Mot. at 24-25, 27.

Plaintiffs cite *Thompson* in noting the Consumer Fraud Claims should not be viewed in a vacuum, but then proceed to ignore that very context. Opp. at 24. Cuban *expressly warned* potential Voyager customers that investing in crypto was *not* risk free, SAC ¶ 8, they should "always be careful" with their money, ECF No. 155-1, Press Conf. Tr. at 19:6-7, and they should not "rush into" anything or "put all your money" into a Voyager account, *id.* at 30:21-22.

Further, several statements identified cannot support Consumer Fraud Claims as Plaintiffs fail to allege facts indicating the statements are false, and a true statement cannot suffice. *Allyn v. Am. Bd. of Med. Specialties, Inc.*, 2019 WL 297459, at *7 (M.D. Fla. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 293277 (M.D. Fla. Jan. 23, 2019). Plaintiffs claim Cuban's statements that customers could "earn more from Voyager's platforms than from traditional financial applications" and that he "earn[ed] more when [he] went over to Voyager" were deceptive. Opp. at 19. But Plaintiffs fail to allege facts contradicting these statements, as the SAC does not allege Cuban did not earn more when he opened a Voyager account than before opening an EPA or that Plaintiffs did not receive the higher interest Voyager promised. Indeed, Plaintiffs allege Voyager offered "competitive interest rates," Opp. at 12, of up to 9% (for USDC holdings), SAC ¶ 154, which is consistent with Cuban's statements. Plaintiffs' reliance that "Cuban personally touted Voyager as the way for investors to 'increase their wealth,'" Opp. at 24, also fails. As is clear from materials attached to the SAC, it is Plaintiffs' framing in the Opposition, not Cuban's statement, that is misleading: when Cuban made the statement, he was discussing how the Mavs sought to "introduce[] educational community programs to educate people **on crypto and how they can use it to increase their wealth**." ECF 155-1, Press Conf. Tr. at 3:6-8 (emphasis added). Plaintiffs fail to allege that investment in crypto cannot increase one's wealth or that the Mavs did not plan to introduce the referenced educational programs.

### C. Plaintiffs Do Not Qualify As Customers or Consumers, the SAC Does Not Adequately Allege Causation, and "Lost Investments" Are Unrecoverable.

Even if the FDUTPA applied to securities claims and Defendants made misleading

statements (not so), there is no dispute Plaintiffs purchased *Voyager's* products, not Defendants' products. *See* Mot. at 22. Voyager, not Defendants, contracted with Plaintiffs and caused alleged injuries. *Id.* at 28-29. Plaintiffs admit they must allege a "sufficient causal connection" to the alleged injury, but fail to do so. Opp. at 24 n.23. Where, as here, Plaintiffs are damaged by a third party, the causal chain is broken. *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015). Plaintiffs cannot explain, for example, how alleged non-disclosure of compensation or an alleged statement the Voyager App was "easy to use" could lead them to lose their investment. Mot. at 28. And causation is impossible for Plaintiffs who allege they opened EPAs *before* Defendants made statements about Voyager. *Id.*

Plaintiffs also do not dispute that consequential damages, such as "lost investments," SAC ¶ 356, are not recoverable under FDUTPA. *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 214 (Fla. Dist. Ct. App. 2019); MTD at 28-29. Plaintiffs cite *Hodges v. Monkey Cap., LLC*, which does not contradict the actual damages requirement, but rather holds that lost crypto can be recovered—*if* it constitutes actual damages. 2018 WL 9686569, at *7 (S.D. Fla. Aug. 14, 2018). "Consequential or special damages are those which do not necessarily result from the injury complained of or which the law does not imply as the result of that injury." *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017). In *Hodges*, plaintiffs sued a company that purported to launch an ICO but instead pocketed plaintiffs' crypto, and thus the loss was a "necessary[] result from" defendants' conduct. 2018 WL 9686569, at *1. But here, loss of Plaintiffs' EPA holdings was not an inevitable result of Defendants' alleged conduct, but rather caused by Voyager's failings. Indeed, those claiming to have opened accounts because of Defendants might have *profited*, if they withdrew before bankruptcy.

### D.    FDUTPA Does Not Apply to Securities Claims.

The SAC improperly asserts both securities and FDUTPA claims. *See* Mot. at 22. As recently confirmed in *Feng v. Walsh*, "[FDUTPA] does not apply to securities claims." 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022); *see id.* ("Because [p]laintiffs' allegations . . . are rooted in securities transactions, [FDUTPA] does not apply"). Plaintiffs fail to sidestep *Feng*, as they cite cases (*see* Opp. at 20 n.16) either pre-dating *Feng* (*Hodges*, 2018 WL 9686569, at *7–*8), or from outside this District (*Skypoint Advisors, LLC v. 3 Amigos Prods*. LLC, 2021 WL 6118098, at *7 (M.D.

Fla. Dec. 27, 2021);[14] *In re Ethereummax Inv'r*, 2023 WL 6787827, at *17 (C.D. Cal. June 6, 2023)).[15] And Plaintiffs' attempt to distinguish *Feng*, arguing the alleged conduct here involves both deceptive practice and securities, Opp. at 20-21 n.17, fails. *Feng* rejected this argument: "various state unfair trade practices acts do not apply to securities transactions in part, because the purchase and sale of securities are already heavily regulated by state and federal laws that give plaintiffs an appropriate civil remedy and because [FDUTPA] is modeled after the FTC Act, which precludes coverage for securities claims." 2022 WL 8055449 at *13 (quotations omitted).[16]

## III.      Plaintiffs' Remaining Claims Fail.

Plaintiffs fail to allege conspiracy with Rule 9(b) particularity,[17] failing to sufficiently allege that any Defendant "intended to commit an unlawful act." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1055 (11th Cir. 2007); Mot. at 30. Plaintiffs respond that they alleged the existence of agreements between Voyager and Defendants. Opp. at 28. But not every business agreement is a "conspiracy," and Plaintiffs fail to allege these agreements were intended to "inflict a wrong against or injury upon another," rather than for a lawful purpose. *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 317 (D.N.J. 2012). Plaintiffs claim a conspiracy because Defendants knew Voyager sought to increase its customer base. Opp. at 28 (citing *Vibra-Tech Engineers, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 494 (D.N.J. 2012)). But *Vibra-Tech* shows how plaintiffs must allege an understanding of the conspiracy's *unlawful* objectives, as plaintiffs there alleged the co-conspirators agreed to unlawfully divert business from the company to which they owed a fiduciary duty. 849 F. Supp. 2d at 494. Here, Plaintiffs only allege Defendants' general understanding of Voyager's *lawful* objectives—to increase its customer base—without sufficiently alleging Defendants were aware of wrongdoing.[18]

Similarly, Plaintiffs' request for a declaratory judgment that Voyager sold securities is improper. "[T]here is ordinarily no reason to invoke the provisions of the Declaratory Judgments

---

[14] *Skypoint* was issued on December 21, 2021, after issuance of the report and recommendation in *Feng*, but before the district court's adoption of the *Feng* decision.

[15] The same is true for other jurisdictions. *See* Mot. at 22 n.27 (citing cases).

[16] While Plaintiffs argue they *could have* alleged the Consumer Fraud Claims in the alternative, this point is moot, as Plaintiffs failed to do so in the SAC.

[17] Plaintiffs do not contest that Rule 9(b) applies to conspiracy claims. *See* Mot. at 30.

[18] Further, as Plaintiffs fail to sufficiently allege a consumer fraud claim (*see* Section II, *supra*; Mot. § II), Plaintiffs' conspiracy claims must fail. *Portes v. Tan*, 2014 WL 463140, at *10 (N.J. Super. Ct. App. Div. Feb. 6, 2014).

Act where another adequate remedy is available," *Matter of New Jersey Firemen's Ass'n Obligation*, 166 A.3d 1125, 1135 (N.J. 2017) (quotations omitted), and Plaintiffs' assert unregistered securities claims requiring proof that Voyager's products are securities.

**IV.     Voyager is a Necessary Third Party Under Rule 19.**

As demonstrated, *see* Mot. at 32, it is *Voyager* that made allegedly misleading statements and *Voyager* that sold the products Plaintiffs purchased. Plaintiffs respond by misstating Rule 19's requirements, proceeding from the premise Voyager's joinder is "feasible." *See* Opp. at 30 (citing Rule 19(a) cases). But it cannot be reasonably disputed that Voyager's joinder currently is "not feasible," and thus the inquiry proceeds under Rule 19(b), not Rule 19(a).[19] Yet the Opposition presents no argument on Rule 19(b). Because Voyager cannot be joined, "equity and good conscience" requires dismissal. *See* Fed. R. Civ. P. 19(b); Mot. at 32-33.

**V.     Gronkowski and Oladipo Are Uniquely Entitled To Dismissal, As Plaintiffs' Opposition Confirms the Absence of Any Actionable Allegations Against Them.**

While the bulk of the Opposition is spent on Cuban and the Mavs, Plaintiffs' discussion of Gronkowski and Oladipo is very thin. Plaintiffs improperly conflate them with others—and others' alleged statements. As pleaded, they did not say anything to persuade anyone to invest in anything. As such, in addition to the reasons above, the claims against them should be dismissed.

**A.     Gronkowski and Oladipo Did Not Violate Any Securities Laws.**

Plaintiffs admit solicitation only occurs when a person "urges or persuades" someone to buy a security. Opp. at 3. *Wildes* requires, "for solicitation to occur, a person must '***urge*** or ***persuade***' another to buy a ***particular*** security." 25 F.4th at 1346 (citation omitted; emphasis added). Plaintiffs flunk this test. They merely claim Gronkowski is a "hugely popular celebrity" who "promoted Voyager" and "wore Voyager branded merchandise" to, generically, "bring crypto investing to the mainstream." Opp. at 6, 15. Yet the Opposition ***does not identify any specific statement by Gronkowski*** recommending a particular Voyager investment or product. Likewise for Oladipo, Plaintiffs merely claim he is a "famous basketball player" who "promoted Voyager" by "retweet[ing]" or "lik[ing]" Voyager's social media postings. *Id.* at 6.

But Plaintiffs do not allege that either of them "urge[d] or persuade[d]" anyone to make any "particular" investment as required by *Wildes*. Neither of them touted any potential gains from

---

[19] Rule 19(b) addresses when a required party "cannot be joined," whereas Rule 19(a) applies only when joinder is feasible. Fed. R. Civ. P. 19.

investing in VGX tokens. And Gronkowski, in particular, is not alleged to have touted the EPAs' high interest rates. They simply did not "urge or persuade ***anyone*** to buy ***anything***.[20]

### B.    Gronkowski and Oladipo Did Not Violate Any Consumer Protection Laws.

Plaintiffs fail to address, let alone refute, that (1) reasonable consumers expect Gronkowski, a former NFL superstar who regularly appears in ads, to be paid for promoting Voyager (Mot. at 26)[21]; (2) under FTC guidance and relevant caselaw, celebrity endorsers need not disclose their compensation because "such payments likely are ordinarily expected by viewers" (*id.*); and (3) Plaintiffs do not and cannot explain how the alleged non-disclosure of Gronkowski's financial compensation or his alleged statement that the Voyager App was "easy to use" could lead them to lose their investment. Mot. at 28.[22] The same is true with respect to Oladipo.

Plaintiffs do not seriously dispute the only allegedly misleading statement attributed to Gronkowski—that the Voyager App was "easy to use"—and to Oladipo—that Voyager was the "perfect platform"—are non-actionable puffery. Rather, Plaintiffs seek to avoid the obvious legal conclusion by contending this argument is "premature." Opp. at 23-24. This ignores consistent authority reflecting that courts routinely dismiss non-actionable puffery on the pleadings. *See e.g.*, *TocMail Inc. v. Microsoft Corp.*, 2020 WL 9210739, at *4 (S.D. Fla. Nov. 6, 2020) (holding whether a statement is mere puffery may be determined on a motion to dismiss); *Yachera v. Westminster Pharms., LLC*, 477 F. Supp. 3d 1251, 1266 (M.D. Fla. 2020) (granting motion to

---

[20] Nor can Cuban and the Mavs be said to have urged or persuaded Plaintiffs to purchase "a particular security." *Wildes*, 25 4th at 1346. While defendants in *Wildes* promoted a particular token as part of a Ponzi scheme, *id.* at 1344, Cuban and the Mavs declined to promote VGX, Mot. at 30, and instead the Mavs agreed to sponsor Voyager generally, rather than a "particular" Voyager product. *See generally* ECF No. 155-2, Sponsorship Agr.

[21] Gronkowski did, in fact, disclose he was a paid endorser, and Plaintiffs "omitted the hashtag #voyagerpartner from the screenshot" of a Twitter post (Opp. at 25 n.25). Plaintiffs deny this but the link in their footnote proves the point: the screenshot ends in (1/2)", signaling that there is a second part. Part two, which Plaintiffs neglected to include, contains the "#voyagerpartner" disclosure (*id.*). The Court can consider the entire post. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Plaintiffs provide no support for their contention that "#partner" or "voyagerpartner" would not be a sufficient disclosure. *See In re Ethereummax Inv.*, 2023 WL 6787827, at *27 ("hashtags are a commonly used mechanism of communicating information on social media platforms and one would reasonably expect to see such an advertising disclaimer in the form of a hashtag below the substance of the post").

[22] Similarly, Plaintiffs fail to refute the Mavs' argument that Plaintiffs cannot premise the Consumer Fraud Claims on the fact that the Mavs did not disclose that team members were paid to appear at the Press Conference (SAC ¶ 206), as reasonable consumers understand that professional athletes are paid for their public appearances. *See* Mot. at 26 n.32.

dismiss as to subjective statements); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014) (granting motion to dismiss finding "general, subjective, unverifiable claims are 'mere puffery'"); *Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *7 & n.5 (N.D. Cal. Oct. 13, 2009) (dismissing claims based on non-actionable puffery); Mot. at 26-27.

## C.    The SAC is an Impermissible Shotgun Pleading.

Plaintiffs' Opposition says very little about Gronkowski or Oladipo at all. Most of it is about Voyager, its former CEO, Ehrlich, and Cuban. Plaintiffs concede it is improper to collectively refer to "Defendants" without specifying which allegations apply to which defendants. Opp. at 29. Yet that is what they do. *First*, Plaintiffs fail to identify *any* specific allegations they did anything in reliance on Gronkowski or Oladipo. Instead, the Opposition, like the SAC, lumps "Defendants" together and cites allegations about "Cuban and the Mavericks" rather than Gronkowski or Oladipo. Opp. at 27 (citing SAC ¶¶ 68 ("Cuban's and the Mavericks' endorsement of the Voyager platform caused Ms. Gold to purchase, repurchase, invest, reinvest"), 71, 74, 77, 80, 83, 86, 89, 95, 98, 101)). Plaintiffs likewise cite these paragraphs in support of their argument "[a]ll Plaintiffs (not just Dorn and Dagnoli)" have standing. Opp. at 26-27. No Plaintiff other than Dorn and Dagnoli allege they were even aware of, let alone relied on, Gronkowski's promotion.

*Second*, Plaintiffs have no response to Gronkowski and Oladipo's arguments that they failed to attribute their investment decisions to any specific statement by them or explain how they were misled by being "aware" of their "endorsement" of the "Voyager Platform." Mot. at 23. Plaintiffs' assertion the SAC "separately describes each alleged statement or action that forms the basis for its claims . . . and indicates exactly which Defendants made each statement or performed such action," Opp. at 29, is false: the SAC asserts all 24 causes of action against "Defendants" collectively, without identifying any specific act or statement by Gronkowski or Oladipo.[23]

## VI.    The Mavs and Cuban Should be Dismissed for Lack of Personal Jurisdiction.

Plaintiffs effectively concede the jurisdictional issue as to the Mavs and Cuban, failing to address the Eleventh Circuit's relevant law of purposeful availment and contesting none of the relevant facts. Given the plain lack of availment, the Mavs and Cuban should be dismissed.

### A.    Plaintiffs Fail to Show Purposeful Availment.

As previously demonstrated, statements on a generally accessible website (such as the

---

[23] SAC ¶¶ 348, 354, 360, 368, 371-74, 379, 384, 391, 398, 408, 413, 424, 428, 430, 437, 441-43, 446, 448, 454, 466, 473, 483, 488, 495, 500, 511, 515, & 526.

Mavs' YouTube or social media sites) are not sufficient for availment in this Circuit, and none of the additional factors that can sometimes suffice are present here: (i) the Mavs and Cuban conducted no sales into Florida, (ii) one cannot purchase Voyager products on the Mavs' website, (iii) payment to the Mavs was made by New Jersey-based Voyager and not dependent on Voyager sales (in Florida or anywhere); and (iv) Voyager content at Mavs home games likewise amounted to generally viewable statements televised throughout the United States, with no reference to Florida, no interactivity, and no Mavs sales into Florida. *See* Mot. at 34-35.

Following months of jurisdictional discovery and notwithstanding their heightened burden, *see* Mot at 33,[24] Plaintiffs contest none of the foregoing facts. *See* Opp. at 33.[25] More significantly, they fail to contest the law, addressing none of the Motion's authorities establishing the Eleventh Circuit's standard for availment based on a website, and presenting no contradictory cases. Instead, their cursory availment argument relies on an out-of-Circuit, unreported, lower-court decision concerning advertising. *See id.* at 34 (citing *In re Oreck Corp.*, 2012 WL 6062047, at *8 (C.D. Cal. Dec. 3, 2012)). But even that case only underscores the lack of purposeful availment here: in *Oreck*, a deceptive advertising case, the defendant sold its offending products into the forum. *Id.* at *1-2. Here, it is undisputed the Mavs and Cuban did *not* sell their products into the forum.

Plaintiffs also cite *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), but only for the uncontroversial proposition that a lack of surprise at being haled into a forum is consistent with jurisdiction. *See* Mot. at 33. But rather than identifying facts showing the Mavs and Cuban should not be surprised to be haled into Florida, they simply assume that conclusion, based on the same insufficient contentions about generally accessible websites. Opp. at 34. More fundamentally, the quoted portion of *Lovelady* applies the "effects test" of *Calder v. Jones*, an alternate test to purposeful availment. But Plaintiffs nowhere argue that purposeful availment is the wrong test and the *Calder* "effects test" should instead apply. Opp. at 33-34. For good reason: the "effects test"

---

[24] Following jurisdictional discovery, Plaintiffs must establish personal jurisdiction "by a preponderance of the evidence." *Contour Prods., Inc. v. Albecker*, 2009 WL 10646653, at *2 (S.D. Fla. Jun. 2, 2009). And where, as here, a defendant provides an evidentiary challenge to jurisdiction, Plaintiffs "may not merely rely upon factual allegations set forth in the complaint." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1338 (S.D. Fla. 2014).

[25] Plaintiffs repeat in passing that Defendants "aimed at individuals in Florida," but they offer no record support, revealing that rhetoric to be nothing more than a legal contention that by making generally accessible statements on a website that could be viewed in Florida, Defendants inherently "targeted" Florida. As discussed, that is plainly insufficient. *See* Mot. at 34-35.

requires, *inter alia*, the conduct be "*expressly aimed* at a *specific individual* in the forum," 544 F.3d at 1287-88 (emphasis added), and mere "foreseeability" does not suffice. *Id.* at 1287; *compare* Opp. at 33 (arguing it was "foreseeable" website would be viewed in Florida and citing no specific Florida resident expressly targeted by the Mavs or Cuban).[26]

Given the absence of any showing of purposeful availment, jurisdiction cannot lie, and the Court thus need not wade into Plaintiffs' flawed long-arm statute arguments.[27]

### B.    The Corporate Shield Doctrine Further Protects Cuban.

Plaintiffs agree that under Florida's corporate shield doctrine, corporate acts outside of Florida "may not form the predicate" for jurisdiction. *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012); *see* Opp. at 34. Plaintiffs do not contest that Cuban's conduct was performed in his corporate capacity, but incorrectly imply the conduct did not take place outside the state. Opp. at 34. In fact, all of Cuban's relevant conduct took place in Texas. ECF No. 41-2, Cuban Decl. ¶¶ 5, 8. Plaintiffs provide no contradictory evidence, much less a preponderance thereof, impermissibly relying on the SAC's unfounded allegations. *Contour Prods.*, 2009 WL 10646653, at *2.[28]

## CONCLUSION

For the foregoing reasons, and those stated in the Motion, Plaintiffs' SAC should be dismissed with prejudice.

---

[26] In *Lovelady*, the "specific individual" was a Florida singer whose name the defendant plastered on his website in an attempt to trade on that singer's reputation. *Id.* That, indeed, is "targeting" of a specific resident, but there is nothing of that sort here. *See also Full Sail, Inc. v. Spevack*, 2003 WL 25277185, at *6 (M.D. Fla. Oct. 21, 2003) (no purposeful availment under *Calder* based on operation of a website where the injury was "necessarily [] felt only in Florida," where the company was located, but "the targeted audience presumably exists throughout the entire United States" and plaintiff "submitted no evidence in contravention of that assumption").

[27] Plaintiffs narrow their long-arm argument to a single provision, concerning in-state torts, *see* Opp. at 31-33, but as the alleged conduct occurred outside Florida and did not target Florida residents (unlike in defamation and other intentional tort cases), Plaintiffs' contention remains flawed. Plaintiffs' Hail-Mary argument that there is a "conspiracy" between the Mavs, Cuban, and other Defendants, *see* Opp. at 33, is plainly insufficient given Plaintiffs' inadequate conspiracy allegations, *see* Point III, *supra*, and the requirement that they establish personal jurisdiction by a preponderance of the evidence, *Contour Prods.*, 2009 WL 10646653, at *2. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (conclusory conspiracy allegations "insufficient to establish a prima facie case of personal jurisdiction").

[28] While Plaintiffs rely on the intentional tort exception to the corporate shield doctrine based on FDUTPA allegations against Cuban (Opp. at 35), the exception is unavailing, because Plaintiffs fail to sufficiently assert the Consumer Fraud Claims. Point II, *supra*.

Respectfully submitted this 6th day of December 2023

**Counsel for Defendant Victor Oladipo:**

*/s/ Jonathan S. Feldman*
JONATHAN S. FELDMAN, ESQ.
Florida Bar. No. 12682
Primary Email: feldman@katiephang.com

**PHANG & FELDMAN, PA**
One Biscayne Tower, Suite 1600
2 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 614-1223
Fax: (305) 614-1187

**Counsel for Defendant Robert Gronkowski:**

*/s/ R. Craig Mayfield*
R. CRAIG MAYFIELD, ESQ.
Fla. Bar No. 429643
Email:  cmayfield@bradley.com

ALEXIS BUESE, ESQ.
Fla. Bar No. 1028599
Email: abuese@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5525
Fax: (813) 229-5946

CHARLES E. ELDER, ESQ.
Pro Hac Vice
Email: celder@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Tel: (615) 244-2582

**Counsel for Defendants Mark Cuban and Dallas**
**Basketball Limited d/b/a Dallas Mavericks:**

*/s/ Christopher E. Knight* _____
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

**FOWLER WHITE BURNETT, P.A.**
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:      (305) 789-9201

*-and-*

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@lawsonhuckgonzalez.com

**LAWSON HUCK GONZALEZ, PLLC**
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (850) 825-4334

*-and-*

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email:  sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email:  rwolkinson@brownrudnick.com

**BROWN RUDNICK LLP**
601 Thirteenth Street NW Suite 600

Washington, DC 20005
Telephone (202) 536-1755

*-and-*

SIGMUND WISSNER-GROSS, ESQ.
*Pro Hac Vice*
Email:  swissner-gross@brownrudnick.com

JESSICA N. MEYERS, ESQ.
*Pro Hac Vice*
Email:  jmeyers@brownrudnick.com

**BROWN RUDNICK LLP**
Seven Times Square
New York, NY  11036
Telephone:  (212) 209-4930

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 6, 2023, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Christopher E. Knight*

CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

## SERVICE LIST

Adam M. Moskowitz, Esq.
Joseph M. Kaye, Esq.
Barbara C. Lewis, Esq.
Howard M. Bushman, Esq.
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, Florida 33134
E-mail: adam@moskowitz-law.com
Email: joseph@moskowitz-law.com
Email: barbara@moskowitz-law.com
Email: howard@moskowitz-law.com

*Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**

Stephen Neal Zack, Esq.
szack@bsfllp.com
Hon. Ursula Ungaro (Retired), Esq.
uungaro@bsfllp.com
Tyler E. Ulrich, Esq.
tulrich@bsfllp.com
Boies Schiller Flexner LLP
100 S.E. 2nd St., Suite 2800
Miami, FL 33131

*Co-Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**

David Boies, Esq.
*Pro Hac Vice*
Boies Schiller Flexner LLP
333 Main Street
Armonk, NY 10504
Email:  dboies@bsfllp.com

*Co-Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**

Jose M. Ferrer, Esq.
Mark Migdal & Hayden
80 S.W. 8th Street, Suite 1999
Miami, FL 33130
Email: jose@markmigdal.com

*Co-Counsel for Plaintiffs and the Proposed Classes*

**VIA CM/ECF**