**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No.: 22-cv-22538-ALTMAN/REID**

DOMINIK KARNAS, *et al*.,

                Plaintiffs,

v.

MARK CUBAN, *et al*.,

                Defendants.

_____

**DEFENDANTS MARK CUBAN'S AND DALLAS BASKETBALL LIMITED d/b/a
DALLAS MAVERICKS' OPPOSTION TO PLAINTIFFS' MOTION TO CERTIFY
NATIONWIDE ISSUE CLASSES, PURSUANT TO FEDERAL RULES 23(a), 23(b)(3),
AND 23(c)(4), AND INCORPORATED MEMORANDUM OF LAW [ECF NO. 231]**

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT .................................................................................................................... 8

I.   QUESTIONS REQUIRING INDIVIDUALIZED PROOF PREDOMINATE OVER
QUESTIONS COMMON TO THE CLASS ............................................................... 8

   A.  Whether Defendants Successfully Solicited Plaintiffs' Purchases Requires
Individualized
Proof, Precluding Certification Under Rule 23(b)(3) ...................................... 8

      1.  Unregistered Securities Claims Against Promoters Cannot Succeed Without
Individualized Proof.............................................................................. 8

      2.  The Proposed Class Should Not Be Certified Because Proof of a Successful
Solicitation
Is Unique to Each Plaintiff and Individual Issues Predominate .............. 12

   B.  A Nationwide Class Cannot Be Certified and Individual Questions as to Each State's
Law Preclude Certification Under Rule 23(b)(3) .......................................... 15

      1.  There Are Material Differences Among the States' Securities Laws.................... 15

      2.  Florida Choice of Law Rules Require Application of Each State's Law ............... 18

      3.  Differing Standards Under Each State's Law Create Individualized Issues and
Preclude Certification ...................................................................... 20

      4.  Differing Standards as to Plaintiffs' Theory of Secondary Liability Also Preclude
Certification ..................................................................................... 21

   C.  The *In Pari Delicto* Defense Will Test Individualized Proof, Precluding Certification
Under Rule 23(b)(3)...................................................................................... 22

   D.  Analysis of Damages Will Require Individualized Proof, Precluding Certification
Under Rule 23(b)(3)...................................................................................... 23

   E.  The Proposed Issue Classes Are an Attempt to Avoid the Predominance Requirement
and Are Not a Superior Method of Adjudicating the Case ............................ 24

II.  PLAINTIFFS' PROPOSED CLASS DEFINITION IS IMPERMISSIBLY BROAD AND
NOT ASCERTAINABLE ................................................................................... 25

   A.  Numerous Class Members Suffered No Injury................................................ 26

      1.  Class Members Are Disconnected from Defendants' Solicitation. ........................ 26

      2.  Class Members Recovered the Value of Their Investment ..................................... 27

      3.  Class Members Purchased Cryptocurrencies Outside of the Solicitation................ 27

      4.  Class Members Purchased "Non-Security" Crypto Assets...................................... 28

      5.  Class Members' Solicited Investment in Voyager................................................ 28

6.  Class Members Did Not Open Accounts in Their Own Name. ............................... 28

7.  Class Members Assert Claims For Deposits Far Exceeding the Promotion............ 28

B.  Class Membership is Not Ascertainable Based on Internal Records............................ 29

C.  Correcting the Class Definition Would Require Substantial Revisions ........................ 30

CONCLUSION.................................................................................................................... 30

REQUEST FOR HEARING................................................................................................. 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.S. Goldmen & Co. v. New Jersey Bureau of Sec.*,
  163 F.3d 780 (3d Cir. 1999)...................................................................................21

*Abrahamsen v. Laurel Gardens Ltd.*,
  276 N.J. Super 199 (App. Div. 1993) ...............................................................9, 16

*Allison v. Citgo Petroleum Co.*,
  151 F.3d 402 (5th Cir. 1998) ...............................................................................25

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...............................................................................7, 18, 21

*Andrews v. AT&T Co.*,
  95 F.3d 1014 (11th Cir. 1996) .............................................................................20

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)...............................................................................13, 22

*Bates v. Cook Inc.*
  509 So. 2d 1112 (Fla. 1987)..................................................................................18

*Bishop v. Florida Specialty Paint Co.*,
  389 So.2d 999 (Fla 1980).......................................................................................18

*Boca Raton Com. Hosp. Inc. v. Tenet Healthcare Corp.*,
  238 F.R.D. 679 (S.D. Fla. 2006)...........................................................................23

*Borrero v. United Healthcare of NY, Inc.*,
  610 F.3d 1296 (11th Cir. 2010) ...........................................................................25

*In re Bridgestone*,
  288 F.3d 1012 (7th Cir. 2002) .............................................................................20

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ...............................................................10, 14, 24

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
  562 F. App'x 782 (11th Cir. 2014) .............................................................7, 24, 27

*Capri v. Murphy*,
  856 F.2d 473 (2d Cir. 1998)....................................................................................9

*In re Cellco P'ship*,
663 F. Supp. 2d 363 (S.D.N.Y. 2009) ....................................................................................22

*Chaparro v. Nationstar Mortg. LLC*,
2016 WL 10952524 (S.D. Fla. Nov. 28, 2016) ................................................................13, 27

*In re Chiquita Brands Intl.*
331 F.R.D. 675 (S.D. Fla. 2019) .........................................................................................25

*In re CNL Hotels & Resorts, Inc.*,
2005 WL 2291729 (M.D. Fla. Sept. 20, 2005) ................................................................9, 26

*Coastal Neurology, Inc. v. State Farm Mut. Ins. Co.*,
458 Fed. App'x. 793 (11th Cir. 2012) ..................................................................................23

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ...............................................................................................7, 8, 23, 24

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) ...........................................................................................26

*CPC Int'l Inc. v. McKesson Corp.*,
70 N.Y. 2d 268 (1987) .........................................................................................................17

*Croy v. Campbell*,
624 F.2d 709 (5th Cir.1980) ................................................................................................27

*DA Air Taxi LLC v. Diamon Aircraft Indus.*,
2009 WL 10668159 (S. D. Fla. Nov. 5, 2009) .....................................................................19

*Dapeer v. Neutrogena Corp.*,
2015 WL 10521637 (S.D. Fla. Dec. 1, 2015) ......................................................................29

*De Ford v. Koutoulas*,
2023 WL 2709816 (M.D. Fla. Mar. 30, 2023) .....................................................................11

*Dennis v. Whirlpool Corp.*,
2007 WL 9701826 (S.D. Fla. March 13, 2007) ...................................................................20

*Dietrich v. Bauer*,
76 F. Supp.2d 312 (S.D.N.Y. 1999) .....................................................................................17

*Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co.*,
944 F.2d 809 (11th Cir. 1991) .............................................................................................18

*eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*,
519 F. Supp. 3d 1129 (S.D. Fla. 2021) ................................................................................18

*Foster v. Jesup & Lamont Sec. Co.*,
  759 F.2d 838 (11th Cir. 1985) ...................................................................10

*Fox Intl v. Fiserv. Secs. Inc.*,
   490 F.Supp.2d 590 (E.D. Pa. 2007) .........................................................18

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ...............................................................13

*Gelfound v. Metlife Ins. Co. of Conn*.
  313 F.R.D. 674 (S.D. Fla. 2016)...............................................................21

*Gilliland v. Hergert*,
  2007 WL 4105223 (W.D. Pa. Nov. 15, 2007) ..........................................18

*Griffin v. Painewebber*,
  Inc. 2001 WL 740764 (S.D.N.Y. June 29, 2000) .....................................11

*Grupo Televisa, SA v. Telemundo Commc'ns Grp., Inc.*,
  485 F.3d 1233 (11th Cir. 2007) ...........................................................18, 19

*Hamilton Partners, Ltd. v. Sunbeam Corp.*,
  2001 WL 34556527 (S.D. Fla. July 3, 2021)........................................11, 14

*Heaven v. Trust Co. Bank*,
  118 F.3d 735 (11th Cir. 1997) ........................................................23, 28, 30

*Hoffer v. States*,
  776 P.2d 963 (Wash. 1989) (*en banc*) .....................................................17

*Holworth v. BProtocol*,
  2021 WL 706549 (S.D.N.Y. Feb. 22, 2021).................................................9

*Houghton v. Leshner*,
  2023 WL 6826814 (N.D. Cal. Sept. 20, 2023) ..........................................11

*Howard v. Kerzner Int'l Ltd.*,
  2014 WL 714787 (S.D. Fla. Feb. 24, 2014) ..........................................15, 18

*Jackson v. Motel 6 Multipurpose, Inc.*,
  130 F.3d 999 (11th Cir. 1997) .....................................................................8

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  2023 WL 9035671 (S.D. Fla. Nov. 13, 2023)....................................11, 14, 15

*Jerue v. Drummond Co.*,
  2023 WL 6610603 (M.D. Fla. Aug. 25, 2023) ........................................26, 28, 30

*Karhu v. Vital Pharms., Inc.*,
  2014 WL 815253 (S.D. Fla. Mar. 3, 2014) ..................................................... *passim*

*Kerusa Co. LLC v. W10Z/515 Real Est. Ltd.*,
  12 N.Y.3d 236 (2009) ...................................................................................... 17

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) ..................................................................... 7, 20

*Klein v. Boyd*,
  1996 WL 230012 (E.D. Pa. May 3, 1996) ....................................................... 17

*Krukever v. TD Ameritrade, Futures & Forex LLC*,
  328 F.R.D. 649 (S.D. Fla. 2018) ..................................................................... 23

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 10

*Marc Irwin Sharfman, M.D. P.A., v. Infucare RX LLC*,
  2022 WL 18926792 (M.D. Fla. Nov. 16, 2022) .............................................. 14

*Melton v. Century Arms, Inc.*,
  243 F. Supp. 3d 1290 (S.D. Fla 2017) ....................................................... 18, 19

*Morris v. ADT Secs. Servs., Inc.*,
  2009 WL 10691165 (S.D. Fla. 2009) .............................................................. 15

*Newman v. Comprehensive Care Corp.*,
  794 F. Supp. 1513 (D. Or. 1992) .................................................................... 17

*Nguyen v. Raymond James & Assocs., Inc.*,
  2022 WL 4553068 (M.D. Fla. Aug. 12, 2022) ................................................ 26

*O'Neill v. Home Depot USA, Inc.*,
  243 F.R.D. 469 (S.D. Fla. 2006) ..................................................................... 25

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*,
  481 F. Supp. 3d 1258 (S.D. Fla. 2020) ..................................................... 26, 29

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*,
  2016 WL 7666179 (M.D. Fla. May 12, 2016) ................................................ 29

*Phillips Petroleum Co v. Shutts*,
  472 U.S. 797 (1985) ........................................................................................ 15

*Pinchasov v. Robinhood Fin. LLC*,
  2021 WL 4991159 (S.D. Fla. Sept. 21, 2021) ................................................ 18

*Pino v. Cardone Cap., LLC*,
    55 F. 4th 1253 (9th Cir. 2022) ............................................................11

*Pinter v. Dahl*,
    486 U.S 622 (1998) .................................................................. *passim*

*Polo v. Goodings Supermarkets, Inc.*,
    232 F.R.D. 399 (M.D. Fla. 2004) ..........................................................30

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014) .................................................23, 24, 25

*Rector, Wardens Vestrymen of Christ Church Cathedral of Indianapolis v. JP
    Morgan Chase & Co.*,
    2015 WL 2449556 (S.D. Ind. May 21, 2015) ........................................17

*Rensel v. Centra Tech, Inc.*,
    2 F. 4th 1359 (11th Cir. 2021) ............................................................29

*Rensel v. Centra Tech Inc.*,
    2019 WL 2085839 (S.D. Fla. May 13, 2019) .....................................9, 29

*Rensel v. Centra Tech, Inc.*,
    2021 WL 4134984 (S.D. Fla. Sept. 10, 2021) .......................................30

*Rondeau v. Wood*,
    155 A.D.2d 751 (3d Dep't 1989) ..........................................................17

*In re Rospatch Sec. Litig.*,
    1992 WL 226912 (W.D. Mich. July 8, 1992) ........................................18

*Ryder Int'l Corp. v. First Am. Nat'l Bank*,
    749 F. Supp. 1569 (N.D. Ala. 1990) .....................................................26

*Ryder Int'l. Corp., v. First Am. Nat'l. Bank*,
    943 F.2d 1521 (11th Cir. 1991) ................................................... *passim*

*Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs. Inc.*,
    601 F.3d 1159 (11th Cir. 2010) .........................................14, 15, 20, 21

*SEC v. Terraform Labs Pte. Ltd.*,
    2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) ........................................28

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946).......................................................................13, 28

*Sikes v. Teleline, Inc.*,
    281 F.3d 1350 (11th Cir. 2002) ...........................................................20

*Stanaford v. Genovese*,
   2016 WL 4198146 (S.D. Fla. Mar. 14, 2016).................................................................11, 14

*Teggerdine v. Speedway, LLC*,
   2018 WL 2451248 (M.D. Fla. May 31, 2018)...............................................................21

*Tershakovec v. Ford Motor Co*.,
   79 F.4th 1299 (11th Cir. 2023) ...................................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)......................................................................................................7

*Valley Drug. Co. v. Geneva Pharms., Inc*.,
   350 F.3d 1181 (11th Cir. 2003) ...................................................................................7

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ...................................................................................11

*Verbal v. Tiva Healthcare Inc*.,
   2021 WL 9527858 (S.D. Fla. Aug. 19, 2021) ...........................................................8, 14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).......................................................................................................7

*Walewski v. Zenimax Media, Inc.*,
   502 F. App'x 857 (11th Cir. 2012) .......................................................................25, 26, 27, 30

*Ward v. EZCorp, Inc.*,
   679 F. App'x 987 (11th Cir. 2017) .......................................................................28, 29

*Wildes v. BitConnect Int'l PLC*,
   25 F.4th (11th Cir. 2022) .............................................................................................11

*Zendell v. Newport Oil Corp*.,
   226 N.J. Super. 431 (App. Div. 1988) .......................................................................8, 9, 16

**Statutes**

Cal. Corp. Code § 25110................................................................................................17

Fla. Stat. § 517.211(2)....................................................................................................29

N.J. Stat. § 49:3-49 .......................................................................................................22

N.J. Stat. § 49:3-60 .......................................................................................................8, 22

N.J. Stat. § 49:3-60(d)....................................................................................................22

N.J. Stat. § 49:3-60 *et. seq*. ..........................................................................................9

**Other Authorities**

Fed R. Civ. P. 23 .................................................................................................... *passim*

Fed. R. Civ. P. 23(a) ........................................................................................................7

Fed. R. Civ. P. 23(b) ...............................................................................................1, 2, 7, 8

Fed. R. Civ. P. 23(b)(3) ............................................................................................ *passim*

Fed. R. Civ. P. 23(c)(4) ...................................................................................................24

Restatement (Second) of Conflict of Laws § 6 ...............................................................19

Restatement (Second) of Conflict of Laws §§ 145-146 .................................................18

## PRELIMINARY STATEMENT

Plaintiff's Motion for Class Certification should be denied because it proposes a sweeping class of all Voyager EPA and VGX customers, the vast majority of whom have no connection whatsoever to any alleged conduct of Mr. Cuban or Dallas Basketball Limited ("Defendants"). In essence, Plaintiffs ask this Court to hold Defendants liable as if they were Voyager, the issuer, and not a limited promoter, contrary to the significant differences in liabilities for promoters. There is a reason no court has ever certified a class like this: the Motion asks the Court to forgo analysis of the predominance of individualized proof under Rule 23(b), disregard that most proposed class members have no relation to Defendants, and kick the can on this issue until a damages trial to help Plaintiffs shake down the last "deep pocket" left. This cannot be the law.

A primary problem with Plaintiffs' proposed class is it is untethered to Defendants' actual role in this case, which arises almost entirely from a single press conference on October 27, 2021. On that day, Mr. Cuban, as Governor of the Mavericks, discussed Voyager and announced a one-time promotion for new Voyager users, open for only 48 hours: open a new Voyager account using the MAVS100 code, deposit $100, make a qualifying trade and receive $100 of free bitcoin from Voyager. This was Defendants' first public comments about Voyager, yet Plaintiffs seek to certify a class of Voyager users that, among other things, did not use this code, or signed up years earlier.

Importantly, at this same time, Voyager had engaged no less than twenty other public figures or entities that were each promoting Voyager almost daily to their millions of followers. Plaintiffs know this: they filed suit *in this case* against Messrs. Gronkowski, Oladipo, and Cassill, but their proposed class would place all responsibility on Mr. Cuban and the Mavericks. In addition, Voyager and an array of other third parties publicly recirculated the MAVS100 code, allowing anyone on the internet to sign up for a Voyager account and receive the reward without any knowledge of Defendants' conduct. Further, many Voyager users themselves also received promotional rewards for successfully referring new users, conduct substantially the same as that for which Plaintiffs seek to hold Defendants liable.

The class Plaintiffs propose arising from these facts suffers from a fundamental legal deficiency, with multiple components, that precludes certification and cannot be resolved. Unlike claims against an issuer, the claims here turn on highly individualized proof of a "successful solicitation," *i.e.*, proof that each plaintiff purchased "as a result of" a specific promotion. But there is no classwide proof satisfying this element. Apart from the roughly 10,000 users that opened

accounts with the MAVS100 code, and even for those that used it, proof on this element will test individualized evidence from each of the one million Voyager users. As in the analogous "plaintiff reliance" cases, such highly individualized plaintiff-side proof invariably defeats a showing of Rule 23(b) "predominance," and requires denial of certification here.

Plaintiffs creatively propose avoiding this class-destroying issue by certifying a class of *all* one million Voyager account holders and focusing the Court's attention on a damages trial. This does not satisfy Rule 23, and would merely delay the court's consideration of an unworkable cavalcade of mini-trials to determine why each user signed up for Voyager. This obviously cannot happen and is why Rule 23 and its requirements exist.

Plaintiffs fail to address the need for individualized proof on other elements of their claims as well. First, they do not satisfy their basic burden of demonstrating what law applies to their claims. Under Florida's choice-of-law principles, the law of each Plaintiffs' state will apply, and Plaintiffs ignore the significant differences in state law that require the creation of an unworkably complex set of sub-classes that also defeats predominance and requires denial of certification. Similarly, Plaintiffs' proposed class fails to account for individualized affirmative defenses—based on Plaintiffs' conduct that mirrors that of the Defendants—nor do they offer a workable theory of classwide damages. Ultimately the solicitation claims Plaintiffs assert here against promoters are inherently unsuitable for class treatment, and the Court need not proceed further.

But an additional deficiency is yet more striking: the proposed class has almost nothing to do with the claims. Plaintiffs' proposed class reflects no consideration of 1) any temporal limitation to a user's trading activity; 2) any attempt to identify users that opened EPAs as a result of Defendants' solicitation; 3) any attempt to identify users that redeemed their purchases or recovered their value in bankruptcy; 4) any attempt to identify users that opened EPAs with an expectation of profit or that themselves solicited others' investments in EPAs; or 5) any attempt to identify users that otherwise lack standing. Indeed, when it was revealed that named plaintiff Mr. Gates had exclusively invested in assets not eligible for rewards, Plaintiffs promptly dismissed him from the case. When it was revealed that Mr. Robertson had fully redeemed his account prior to bankruptcy, he too was dismissed from the case.

Plaintiffs acknowledge this by proposing the use of the MAVS100 code to identify class members, which implicitly admits that the proposed class is overly broad and unascertainable. But that is but the starting point on a long journey to determine and apportion liability. Did users watch

the press conference and open an EPA for that reason, or did they simply seek out the free bitcoin promotion? Did users buy assets that were not eligible for rewards? Did other promotions influence the user's decisions? These issues and many others are critical evidence that Defendants are not liable for users' decisions that fall outside of the promotion or were made for unrelated reasons. Even if the Court believes otherwise, Defendants have an absolute right to litigate these issues and preserve their objections for appeal.

In the history of class certification, no court has ever followed the course recommended by Plaintiffs here. For good, sound reason. It will never work, and it unfairly denies Defendants absolute rights to have legal determinations made as regards to whether, in a particular case, the Defendants are legally responsible for a successful solicitation. A reasoned application of Rule 23 requires this Court to deny Plaintiffs' Motion.

## **FACTUAL BACKGROUND**

In 2018, Stephen Ehrlich, a former senior executive at E*Trade, co-founded Voyager Digital Limited Canada, (with its subsidiaries, "Voyager"), to operate a platform and phone application for the purchase, sale, trading, and storage of cryptocurrency (the "Voyager App"). Ex. 8 at ¶¶ 2, 8. In October 2019, Voyager began offering Earn Program Accounts ("EPAs"), allowing users to earn rewards when they (1) deposit or purchase certain qualifying assets in their EPA; 2) maintain a minimum monthly average balance of such assets; and 3) hold the account open through the date of the reward payment. *See, e.g.*, Ex. 11 at 4-5, Ex. 10 at 16-19, Ex. 9 at 10, Ex. 42 at 5.[1] The EPAs operated like savings accounts: Voyager paid rewards on certain cryptocurrencies in the form of the cryptocurrency that users held as principal. *Id*. EPA users could also purchase and hold assets that did not qualify to earn rewards on the platform, which would change in value based only on the change in market price of the asset. *See id.*

Voyager first contacted the Mavericks to discuss a possible sponsorship in August 2021. Ex. 25 at ¶ 3. Voyager and the Mavericks negotiated a corporate sponsorship deal, but Mr. Cuban made clear that the Mavericks would not promote a specific cryptocurrency (like VGX). Ex. 27 ("Cuban Tr.") at 156:7-10, 156:18-24, Ex. 43 ("one thing we can't do is push a token as being

---

[1] The assets that were eligible to earn rewards, the applicable reward rates, and the minimum monthly balances changed over time, thus, each user's potential to earn rewards changed even if their deposits stayed the same. *See Ex.* 11 at 3-5; Ex. 42 at 4 n.2 (discussing "Rewards Program"). Each month, Voyager identified assets eligible to earn rewards in an EPA, as well as their respective reward rates and required minimum balances. *See id*.

better than others"). In October 2021, the Mavericks and Voyager entered into a Sponsorship Agreement ("Agreement."). Ex. 26. In exchange for a flat, season-based fee, the Agreement provides Voyager with advertising rights in the Mavericks' arena in Dallas and on local broadcasts. *Id.* at 16-21. Though Plaintiffs name Mr. Cuban as a Defendant, he was not party to the Agreement, nor to any other agreement with Voyager. *See* Ex. 26, 27 at 60:1-5.

On October 27, 2021, for the first time ever, Mr. Cuban and the Dallas Mavericks made public statements about Voyager. Ex. 27 at 280:21-281:6, Ex. 25 at ¶ 9. In Dallas, Texas, Mr. Ehrlich and Mr. Cuban met for the first time, and publicly announced the Agreement in a 30-minute "Press Conference." Ex. 29; Ex. 28 at ¶ 5. At the Press Conference, Mr. Cuban, as the Governor of the Mavericks and not in any personal capacity, explained three components of the sponsorship. First, the Mavericks and Voyager would educate the community on cryptocurrency; second, the sponsorship granted Voyager naming rights to the Mavs Gaming Hub; and third, the Mavericks and Voyager would develop promotions for Mavericks fans, including the Mavs100 promotional code. Ex. 29 at 2-4. The MAVS100 promotional code would be active from the time of the press conference to October 30, 2021 at 11:59 PM central time. *Id*. at 4. Those that used the promotional code to register a new account received $100 in Bitcoin from Voyager provided that they made a deposit of $100 in cash or cryptocurrency, and traded a minimum of $10 in their account. *See id*. at 3-4, 15. Mr. Cuban also publicly disavowed certain cryptocurrencies: he said that users should "always be careful. . . . [T]here's investments, and things like Shibu Inu and—or whatever it's called—and Dogecoin, those aren't investments, right?" *Id*. at 19. He also publicly disavowed the cryptocurrency token LUNA/LUNC, telling Fortune Crypto he never owned it. Ex. 18. Importantly, and despite contrary statements by Plaintiffs, Mr. Cuban made no statements at the Press Conference about VGX other than guessing that rewards would be paid in VGX, a mistake that Mr. Ehrlich immediately corrected. Ex. 29 at 3.

Following the Press Conference, the Mavericks never displayed any advertising of any particular tokens or Voyager products—all that was displayed was the Voyager name and logo. This was the singular event where Defendants made public statements about Voyager. *See, e.g.*, Ex. 27 at 280:21-281:6. Finally, the Mavericks promotional code MAVS100 was only for new users of Voyager who opened an account and there was never any further promotion to Voyager customers regarding higher minimum threshold balances (for example, no extra reward for depositing $1,000 or more) or rewards for staying on the Voyager platform. *See id*. at 187:4-13.

In the days following the press conference, new users who opened a Voyager account, deposited $100 and made a trade received $100 worth of bitcoin in their account for free. Ex. 29 at 3-4, 9-10. News of the free $100 in bitcoin promotion spread quickly across the internet through reposts that never once even mentioned Mr. Cuban or linked to the taped press conference. *See, e.g.,* Ex. 19, 22, and 30 (twitter post and screenshots). Social media and online chat discussions on Reddit evidence scores of people discussing this promotion without once mentioning Mr. Cuban. Ex. 19. Put another way, it was easy for users who had no awareness of Defendants' promotional activity to use the MAVS100 code and receive the reward. *See id.*

In the weeks after the October 27, 2021, press conference, many other individuals and entities promoted Voyager through other means. *See* Ex. 2 (Conroy Rpt.) at 8-11. Messrs. Gronkowski, Oladipo, and Cassill, who the Plaintiffs sued and subsequently settled with, promoted Voyager through the social media platform X, formerly known as Twitter. *See, e.g.*, Exs. 31-33. Mr. Gronkowski, at the time an NFL player, was referenced seven times by the Voyager Twitter account. Exs. 34-40. In one campaign, Voyager donated to Mr. Gronkowski's youth foundation every time a Voyager account was opened and funded with the "GRONK" code. Ex. 34. Mr. Gronkowski posted promotions to his own account as well. For example, on November 24, 2021, Mr. Gronkowski tweeted, "Feeling those good vibes when you [see] $25 in bitcoin hit your account from @investvoyager." Ex. 31. He also posted to his Instagram account on December 21, 2021, describing how to enter for a chance to win $1,000 from Voyager. Ex. 46.[2]

Duke Univ. Athletics, Univ. of Kansas Basketball and others also promoted Voyager through X. Ex. 12. Fifteen universities, with total followers well over one million people, sent out similar promotions at this time. *See, e.g.*, Exs. 12-15. Voyager records show new users' use of promotional codes when they opened their accounts, but for users that did not sign up with a code, there is no way to tell whether they read, watched or were otherwise influenced by a given promotion apart from such users' evidence that they may have done so. *See, e.g.*, Ex. 3 at 96:1-10.

Finally, ████████████████████████████████████████████ ████  *See, infra* Exs. 44, 45. Users could receive referral rewards in two ways. First, current users received rewards for referring new users to the Voyager platform. This reward varied over time and at one point amounted to $25 in BTC, $25 in VGX, or $50 in VGX. *See* Ex. 41. Second, users that opened accounts using a friends' referral code also were eligible for a reward. *See*

---

[2] In quarter ended Dec. 31, 2021, Voyager spent $35 million on marketing and sales. Ex. 47 at 13.

*id*. Both rewards generally were sent within 72 hours of the referred user's first deposit and subsequent purchase of at least $100 of cryptocurrency. *See id*. Of the sixteen named Plaintiffs,

████████████████████████. *See* Exs. 44 and 45 (excerpts of Voyager data showing that Plaintiffs Karnas, Ehrentraut, Dorn, Shnayderman, Newsom, Sugrue, Peters, Gold, Sayed and Ayer each ████████ ████████████████████████

On July 1, 2022, Voyager announced it was suspending operations and on July 6, 2022, Voyager announced it had commenced voluntary Chapter 11 bankruptcy proceedings. Ex. 8.

On August 10, 2022, Plaintiffs initiated this action by filing a class action complaint. ECF No. 1. On June 9, 2023, Plaintiffs filed the operative and second amended complaint ("SAC") in this action. ECF No. 155. On October 27, 2023, Defendants filed an Omnibus Motion to Dismiss the SAC, which remains pending today. ECF No. 189. The parties are proceeding with discovery, which is scheduled to be completed by July 2, 2024. ECF No. 192.

Thus far, Defendants deposed four plaintiffs: Mr. Garrison, Mr. Webb, Ms. Gold, and Mr. Robertson. Each offered unique testimony as to their connection, or lack thereof, to the Defendants. For example, Ms. Gold learned about Voyager from a friend. *See* Ex. 4 (Gold Tr.) at 77:2-4. Even though Mr. Cuban did not publicly comment on Voyager prior to October 27, 2021, Mr. Robertson claims to have heard about Voyager from Mr. Cuban in early 2021. Ex. 5 at 108:11-109:5. Mr. Garrison claimed to have watched the Press Conference around Oct. 27, 2021, but Ms. Gold claimed to have watched a video of it in early January 2022. *See* Ex. 4 at 136:22-137:6. In addition, the Plaintiffs' deposits in EPAs varied considerably, as some bought assets eligible for rewards, and some did not, and some first funded their accounts around the time of the Press Conference, but some did not. *See, e.g.*, Ex. 20 (no reward-bearing token purchased) and 21 (threshold not met on reward-bearing tokens between Nov. 23, 2021 and Jan. 31, 2022).

Critically, Messrs. Garrison and Webb, and Plaintiffs' own purported expert each testified that the only way to determine whether proposed class members opened and funded a reward-bearing EPA due to Defendants' promotional activity would be to ask each one individually.[3]

---

[3] Ex. 3 at 94:10-96:10; Ex. 6 at 44:20-45:14. Plaintiffs' proposed expert, Lee Reiners, acknowledged the same variation of individual issues among the named plaintiffs. *See* Ex. 7 (Reiners Tr.) 66:9-67:6 ("It would depend on the information that those specific individuals had access to and that had been communicated to them.").

Plaintiffs moved for class certification on March 15, 2024, and proposed two classes:

A "security class" of "All persons or entities in the United States who, from applicable statutes of limitation through July 5, 2022, purchased, repurchased, invested, reinvested, deposited, held and/or transferred additional funds to an EPA and/or purchased, repurchased, invested, and/or reinvested in VGX Tokens."

And a "solicitation class" of "All persons or entities in the United States who, from October 27, 2021, through July 5, 2022, purchased, repurchased, invested, reinvested, deposited, held and/or transferred additional funds to an EPA and/or purchased, repurchased, invested, and/or reinvested in VGX Tokens." *See* Mot. at 4-5 (proposed classes and excluded parties).

## LEGAL STANDARD

Plaintiffs "seeking to maintain a class action 'must affirmatively demonstrate [their] compliance' with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). To do so, Plaintiffs must prove by a preponderance of the evidence that the requirements of Rule 23(a) have been met, and "through evidentiary proof at least one of the provisions of Rule 23(b)." *Id*. at 27 (cleaned up).

Plaintiffs here propose a class based on Rule 23(b)(3), and under this prong, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) (noting predominance inquiry "is far more demanding" than Rule 23(a)'s commonality requirement). "'Where members of a proposed class will need to present evidence that varies from member to member,' individual questions predominate over common questions, precluding certification." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up).

To determine whether plaintiffs satisfy Rule 23's requirements, the court must conduct a "rigorous analysis of the motion and the evidence upon which it relies. *Wal-Mart*, 564 U.S. at 351. The Eleventh Circuit has held that "class certification is an evidentiary question, not just an analysis of the pleadings." *Bussey v. Macon Cnty. Greyhound Park, Inc*., 562 F. App'x 782, 790 (11th Cir. 2014). The Supreme Court and the Eleventh Circuit instruct district courts to "probe behind the pleadings" to "determine that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim"; *Comcast*, 569 U.S. at 33, 35; *Valley Drug. Co. v. Geneva Pharms., Inc*., 350 F.3d 1181, 1188 n.15 (11th Cir. 2003) (trial court "should consider the merits . . . to the degree necessary to determine whether the requirements of Rule 23 will be satisfied").[4]

---

[4] *See also Kirkpatrick v. J.C. Bradford & Co*., 827 F.2d 718, 722-23 (11th Cir. 1987) ("it is often necessary for a district court to consider, for example, a deposition of a named plaintiff").

Plaintiffs here seek certification of the issues of whether Defendants solicited Plaintiffs purchases of unregistered securities under N.J. Stat. § 49:3-60. Mot. at 1-2. The elements of this claim are (1) a successful (2) solicitation by Defendant; (3) of the Plaintiffs' purchase; (4) of an unregistered security; (5) for damages if plaintiffs cannot tender the security; (6) subject to any affirmative defenses, such as unclean hands, and a defendants' good faith defense. *See generally Zendell v. Newport Oil Corp.*, 226 N.J. Super. 431, 439-41 (App. Div. 1988).

## ARGUMENT

## I.   QUESTIONS REQUIRING INDIVIDUALIZED PROOF PREDOMINATE OVER QUESTIONS COMMON TO THE CLASS

To certify their proposed class, Plaintiffs must show, among other things, that "questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3). "The predominance inquiry . . . is far more demanding than Rule 23(a)'s commonality requirement" and involves the same principles. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997); *Comcast Corp.*, 569 U.S. at 33.

Here, Plaintiffs' proposed class "is not suitable for certification" because, even "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Verbal v. Tiva Healthcare Inc.*, 2021 WL 9527858, at *7, (S.D. Fla. Aug. 19, 2021) (*Altman, J.*) (cleaned up). As shown below, Plaintiffs' claims inherently require individualized proof to establish: A) whether Defendants "successfully solicited" each Plaintiffs' purchase; B) the applicability of 50 states' laws; C) the *in pari delicto* defense; and D); Plaintiffs' alleged damages. Relatedly, a class action is not a superior method of adjudicating this dispute.

### A.   Whether Defendants Successfully Solicited Plaintiffs' Purchases Requires Individualized Proof, Precluding Certification Under Rule 23(b)(3)

#### 1.   Unregistered Securities Claims Against Promoters Cannot Succeed Without Individualized Proof

Plaintiffs' claims in this matter revolve around whether Defendants "successfully solicited" the investments of each individual Plaintiff. As shown below, Section 12 caselaw uniformly establishes that "successful solicitation" requires individualized assessments that cannot be viewed in the aggregate, and that defeat the predominance element of Rule 23(b).

Plaintiffs' theory of liability as to the promoter Defendants proceeds under the second prong of *Pinter*, which requires proof that a defendant "successfully solicit[ed] the purchase [of a

security], motivated at least in part by a desire to serve his own financial interests or those of the securities owner." 486 U.S 622, 642, 647 (1998); *Ryder Int'l. Corp., v. First Am. Nat'l. Bank*, 943 F.2d 1521, 1531 (11th Cir. 1991).[5] To succeed under Section 12, plaintiffs must prove not just a solicitation, but one that is "successful." *Pinter*, 486 US at 646-47; *Ryder*, 943 F.2d at 1531. A "successful solicitation" requires proof that "[the defendant] persuaded [the plaintiff] to purchase [the security]." *Id*. at 1534; *Rensel v. Centra Tech Inc*., 2019 WL 2085839, at *4, (S.D. Fla. May 13, 2019) ("*Pinter* requires the Court to look at the defendants' relationship with the plaintiff-purchaser."); *In re CNL Hotels & Resorts, Inc.,* 2005 WL 2291729, at *5, (M.D. Fla. Sept. 20, 2005) ("plaintiff must [show] not only that the defendant actively solicited investors, but that the plaintiff purchased securities as a result of that solicitation.") Thus, a successful Section 12 claim against a promoter requires proof that each plaintiff received defendants' solicitation and "purchased securities as a result." *Rensel,* 2019 WL 2085839, at *4 (granting promoter's motion to dismiss because "there are no allegations that this was a successful solicitation, that Mayweather had any contact with Plaintiffs, or that Plaintiffs even saw the posts."); *see also Ryder, infra;*.[6]

The Eleventh Circuit's decision in *Ryder* underscores the individualized inquiry required to determine promoter liability under Section 12. In *Ryder*, a plaintiff company asserted Section 12 and state law claims against a defendant bank based on purchases of unregistered securities.[7] The district court granted summary judgment for the defendant, and the Eleventh Circuit affirmed, finding that the defendant "is not a 'seller' for purposes" of Section 12. *Id*. at 1534. The Eleventh

---

[5] Plaintiffs seek to certify a nationwide class based upon the alleged sale of unregistered securities in violation of N.J. Stat. § 49:3-60 *et. seq*. *See* SAC at 135, (Count 1); Mot. at 1-2. New Jersey follows federal law with respect to the scope of primary liability for unregistered securities claims. *See Zendell,* 226 N.J. Super. at 439-41 (analyzing who is "seller" based in part on *Pinter)*; *Abrahamsen v. Laurel Gardens Ltd.,* 276 N.J. Super 199, 213 (App. Div. 1993). Therefore, to the extent that New Jersey law, or the law of other states that follow federal law on this point, applies, federal cases interpreting Section 12 are instructive on this issue. Alternatively, Section I.B. shows that the applicable law is the law of each Plaintiffs' state.

[6] *See also Capri v. Murphy*, 856 F.2d 473, 478-79 (2d Cir. 1998) (remand because "plaintiffs must show that LCG actually solicited their investment"); *see also Holworth v. BProtocol,* 2021 WL 706549 at *3 (S.D.N.Y. Feb. 22, 2021) (plaintiff did not show "that he purchased securities as a result of any active solicitations by Defendants.").

[7] *Ryder* concerned Section 12(2) claims, but as the *Ryder* court and the Supreme Court held, the issue of who is a statutory seller under Sections 12(a)(1) and 12(a)(2) are the same. *Ryder*, 943 F.2d at 1529 ("the . . . restrictions which *Pinter* emphasized [under] section 12(1) apply equally to section 12(2)."); *Pinter*, at 642 n.20 (the "language that governs §12(1) also govern[s] §12(2)").

Circuit quoted on an affidavit from Wallace Case, an employee of the plaintiff who made the purchase, that admitted for each relevant purchase "*there was nothing* [defendant's employee] *did or said which caused me to select* [the subject security] *over that issued by other companies*." *Id.* at 1532. That affidavit, and other evidence as to why the plaintiff bought the security "all establish that the bank did not specifically recommend or 'talk Ryder into buying' [the subject security]." At bottom, the Eleventh Circuit held that plaintiff "has not shown that [defendant] persuaded Case to purchase [the subject security.] This case 'is more similar to *Croy v. Campbell*, in which the defendant *did not attempt to persuade the plaintiff to buy*, and in which the plaintiff invested his money only after meeting the developer himself and *otherwise obtaining independent advice*." *Id.* at 1534 (quoting *Foster v. Jesup & Lamont Sec. Co.*, 759 F.2d 838, 846 (11th Cir. 1985). *Ryder* and the cases above all hold that a Section 12 claim against a promoter can succeed only when the defendant successfully persuades a plaintiff to buy, which requires proof that plaintiff's purchase occurred because of defendants' solicitation, and not other independent reasons. This is not a reliance requirement *per se*, but it is similar, and provides the necessary "causal connection between [plaintiff's] injury and [defendant's] conduct," lest defendant be held liable for "the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Indeed, the need for individualized proof to demonstrate reliance is often enough <u>alone</u> to preclude certification. In *Karhu*, the court concluded that "proving a class member's actual reliance upon VPX's representations would require individualized proof that the class member saw VPX's advertisements that Meltdown burns fat and bought Meltdown as a result . . . The potential need to prove actual reliance therefore threatens individualized factual inquiries depending upon each class member's location."[8] In *Brown*, the Eleventh Circuit vacated class certification on two issues that the district court had improperly concluded were susceptible to classwide proof, holding that it "cannot presume that the class members relied on any uniform misrepresentation [because] we have no inkling whether the class members saw *any* advertisements from Frigidaire . . . before they purchased their washing machines."[9] It further held that the "need to prove reliance on an individual basis . . . means that [the Texas claims] cannot proceed as a class action." Similarly, in

---

[8] *Karhu v. Vital Pharms., Inc.*, 2014 WL 815253, at *8, *3 (S.D. Fla. Mar. 3, 2014); ("allowing VPX to contest each affidavit would require a series of mini-trials and defeat" certification).

[9] *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1237 (11th Cir. 2016).

*Short Squeeze*, the court denied certification in part because many plaintiffs "may not have received Robinhood's misstatements" and "even if all members of the putative class here did receive the same message, the misrepresentations were not 'of such a nature that it can be presumed that all members of the class relied upon them' in deciding" to transact." *In re Jan. 2021 Short Squeeze Trading Litig*., 2023 WL 9035671, at *5, *35, (S.D. Fla. Nov. 13, 2023).[10] These cases confirm that certification is inappropriate where plaintiffs have a burden to show how defendants' statements persuaded them to transact, and, like here, plaintiffs cannot do so on a classwide basis.

Importantly, Plaintiffs' cases do not prove otherwise. *Wildes*, *Pino*, *De Ford* and *Houghton* are all motion to dismiss decisions—though they focus on allegations of defendants' solicitations, each confirms that Section 12 requires a successful solicitation, which requires a defendant to persuade a plaintiff to purchase a security. *Wildes* and *Pino* both turn on when a mass communication qualifies as a solicitation, but both confirm that under *Pinter,* the "result" of the solicitation is part of the inquiry and that "the solicitation must succeed." *Wildes v. BitConnect Int'l PLC*, 25 F.4th at 1341, 46 (11th Cir. 2022) (citing *Ryder*); *Pino v. Cardone Cap., LLC*, 55 F. 4th 1253, 1260 (9th Cir. 2022). The court in *Houghton v. Leshner*, also denied a motion to dismiss based on the solicitation issue, but noted that "the causal connection between the [defendants'] conduct and plaintiffs' purchasing decisions can be explored in discovery.") 2023 WL 6826814, at *4, n.5 (N.D. Cal. Sept. 20, 2023). In *De Ford v. Koutoulas,* as well the court held that against a non-issuer the plaintiff must assert that s/he "purchased securities as a result of that solicitation". 2023 WL 2709816, at *15, (M.D. Fla. Mar. 30, 2023) (citing *Griffin v. Painewebber*, Inc. 2001 WL 740764, at *1-2 (S.D.N.Y. June 29, 2000)).

More to the point, at class certification, where plaintiffs need to submit evidence that survives a "rigorous analysis," and where courts "look past the pleadings" to determine what issues will be present at summary judgment and trial, a bald allegation that Defendants solicited all purchases of EPAs is not enough. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (trial court "should consider the merits . . . to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."). The clear rule is that in cases against promoters who do not pass title, each plaintiff needs to submit proof of how the alleged solicitation was successful

---

[10] *See also Stanaford v. Genovese*, 2016 WL 4198146 (S.D. Fla. Mar. 14, 2016) (denying certification due to individual reliance issues because presumption of reliance does not apply); *Hamilton Partners, Ltd. v. Sunbeam Corp*., 2001 WL 34556527 (S.D. Fla. July 3, 2021) (same).

and persuaded him/her to buy the alleged unregistered security, which defeats certification here. *Ryder,* 943 F.2d at 1534. The need to establish individualized proof in support of a "successful solicitation" contradicts Plaintiffs' suggestion that the "Solicitation Issue" can be resolved with classwide proof and refutes their theory that evidence of only "the actions taken by [Mr.] Cuban and the Mavericks" is required. Mot. at 2, 4, 17-18. Plaintiffs' argument is a misstatement of law, and this fatal flaw demonstrates why predominance is not satisfied and the Motion must be denied.

2.      **The Proposed Class Should Not Be Certified Because Proof of a Successful Solicitation Is Unique to Each Plaintiff and Individual Issues Predominate**

Here Plaintiffs propose a class of essentially all people who opened an EPA in any form, and even the proposed "solicitation class" does not have any touchpoints to the alleged solicitation. *See* Mot. at 4-5. This proposal fails on many levels. Most importantly, the Motion oversimplifies the proof that will be needed if this case proceeds and fails to account for the great deal of individual factual inquires that would ensue before a finding of liability.

As set forth below, and in further detail in section II, *infra*, each plaintiff in this case would need to introduce proof on seven factual inquiries in order to demonstrate that the Defendants successfully solicited their purchases of EPAs.[11]

**First**, each plaintiff will need to provide evidence—*more than an affidavit*—that they watched the Oct. 27, 2021, press conference or other evidence of how they became aware of Defendants' promotion of EPAs. *See Karhu,* 2014 WL 815253, at *3 (denying certification in part because identifying the class "from existing documentary evidence" is not feasible, and "[a]ccepting affidavits of Meltdown purchases without verification would deprive [defendant] of its due process rights to challenge the claims of each putative class member . . . On the other hand, allowing [defendant] to contest each affidavit would require a series of mini-trials and defeat the purpose of class-action treatment.").[12]

**Second**, each plaintiff will need to establish that they opened an EPA account within two days of the Oct. 27, 2021, press conference. *See* Ex. 29 at 4:4-9 ("Mr. Cuban: Okay. Offer is only

---

[11] As shown in Section II.D, Plaintiffs lack adequate classwide evidence to support claims arising from the purchase of VGX tokens, and for that reason these arguments focus only on EPAs.

[12] *See also Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1310 n.6 (11th Cir. 2023) (individual issues predominate where reliance cannot be presumed because buyer "may choose to rely on any of a number of marketing and branding representations.").

available for the first 48 hours and starts right now."); *see also Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1267 (11th Cir. 2006) (plaintiffs lacked "standing to bring this claim because they did not buy the stock until long after the impact of the sale was realized.")

**Third**, each plaintiff will need to establish that they made an "initial investment" in an EPA in an asset eligible for rewards above the minimum required threshold and maintained such holding for enough time to receive a reward. *See* Ex. 11 (identifying minimum monthly balance for EPA assets that were eligible to receive rewards); Ex. 2 (Conroy Rpt.) at 19-20 (no expectation of profit in EPA absent qualification for reward).[13]

**Fourth**, each plaintiff will need to establish that they purchased within their EPA an asset that Mr. Cuban promoted and did not disavow. *See* Ex. 29 at 19 ("Mr. Cuban: "look, there's investments, and things like Shibu Inu and . . . Dogecoin, those aren't investments, right?").

**Fifth**, each plaintiff will need to provide proof—*more than an affidavit*—that they took the four steps above because Defendants solicited them to do so, and not due to other reasons such as the many other contemporaneous promotions, or other independent reasons unrelated to the Defendants' conduct. *See Ryder*, 943 F.2d at 1532 (granting summary judgment in part because "the bank did not specifically recommend or 'talk Ryder into buying' [the security and plaintiff] "would make up his own mind on which securities would be appropriate to purchase."); *see also* Ex. 2 (Conroy Rpt.) at 8-14 (identifying promotional activity unrelated to Defendants' conduct).

**Sixth**, Defendants will assert the affirmative defense of unclean hands as to plaintiffs that promoted EPAs and received rewards for referring others that opened an EPA. Each plaintiff that Defendants identify as receiving such rewards will need to respond with proof as to whether this defense applies to them. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985) (securities claim may barred under *in pari delicto* doctrine where "(1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public."); *see* Ex. 44, 45 (reflecting rewards paid to numerous Plaintiffs for referring friends that opened accounts).

**Seventh**, each Plaintiff will need to establish that s/he did not redeem their EPA or did not receive 100% of its value in the bankruptcy proceeding. *See Chaparro v. Nationstar Mortg. LLC*, 2016 WL 10952524, at *4, (S.D. Fla. Nov. 28, 2016) (plaintiff who "has not experienced damages

---

[13] *See generally SEC v. W.J. Howey Co.,* 328 U.S. 293, 298 (1946) (expectation of profit).

within the meaning of the statute" lacks "standing to sue"). In addition, as to each of these issues, Defendants still have the right to challenge Plaintiffs' evidence, and they have already shown that the claims of some named Plaintiffs cannot withstand scrutiny. *See* Ex. 4 at 150:17-156:4; Ex. 16.

Plaintiffs' obligation to "introduce a great deal of individualized proof" on these seven issues "strongly suggests that individual issues . . . are important" and that common issues will not predominate. *Verbal*, 2021 WL 9527858 at *8 (*Altman, J.*) (citing *Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs. Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010)). Each plaintiff in the class will require "the presentation of significant amounts of new evidence" bearing on these seven factual matters, and the significant number of issues that cannot be answered on a class-wide basis precludes certification. *Id.*; *Brown*, 817 F.3d at 1238 ("What matters to class certification [. . . is . . .] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."). Indeed, courts in this Circuit often deny certification due to a single substantive issue that will require "evidence [that is] different from one class member to the next . . . [and will] result in individual issues taking over," and the court here should do so too for the same reasons.[14] *See Karhu, Brown, Short Squeeze, Hamilton* and *Stanaford, supra.*

Importantly, Plaintiffs' own proposed representatives and expert also acknowledge the need for individualized inquiries on these topics. Mr. Garrison was asked how to determine which videos, tweets, advertisements, or other solicitations influenced each EPA-buyer's investment decision, including if they "saw Mr. Cuban's video and made investment decisions accordingly." He responded: "You would have to ask them. Q: Individually? A: Yes." Ex. 3 at 94:10-96:10.[15] Mr. Webb provided nearly the same answer, recognizing that each plaintiff would need to be asked.[16] In addition, Plaintiffs' proposed expert also admitted that individualized inquiries would be necessary as to the third issue above regarding certain EPA deposits' eligibility for rewards. To determine why one who invested in a non-reward bearing asset in an EPA would expect profit from the efforts of others, Mr. Reiners stated that he "would need to have additional information about what this person knew about the broader operations of the EPA program." Ex. 7 at 101:9-

---

[14] *Marc Irwin Sharfman, M.D. P.A., v. Infucare RX LLC*, 2022 WL 18926792, at *14, *19 (M.D. Fla. Nov. 16, 2022) (denying certification due to individualized evidence).

[15] *See generally Short Squeeze,* 2023 WL 9035671, at *35 ("it would be odd to presume the class members relied on this information when several Plaintiffs themselves disclaim knowledge of it.").

[16] *See* Ex. 6 at 44:6-45:24 (admitting need to ask Plaintiffs individually).

103:17; *see also id.* at 66:19-67:6 ("It would depend on the information that those specific individuals had access to and that had been communicated to them."); Ex. 5 at 221:23-222:13.

At bottom, Plaintiffs' position is similar to the position <u>rejected</u> in *Short Squeeze:* "if a defendant makes uniform, public misrepresentations as part of common course of conduct, claims on this basis are suitable for class treatment regardless of whether the plaintiffs received the statements or the dubious nature of their reliance on the statements." *Short Squeeze,* 2023 WL 9035671, at *36. Just like Judge Altonaga rejected that position and denied certification because of "the dubious causal connection between [defendants'] acts and Plaintiffs' trading," the Court here should do the same. *Id.*

**B.**     <u>A Nationwide Class Cannot Be Certified and Individual Questions as to Each State's Law Preclude Certification Under Rule 23(b)(3)</u>

Plaintiffs propose a nationwide class of unregistered securities claimants based on New Jersey law. Mot. at 1-2. No court has ever certified such a class before, and particularly because Plaintiffs do not even provide the necessary choice-of-law analysis, this Court should not be the first. As shown below, Florida choice-of-law rules govern, and under such rules the law of each Plaintiffs' states will apply. Due to the significant differences among the states' law as to both primary liability based on the applicability of *Pinter v. Dahl*, and secondary liability for "agents" that provide "material aid," common issues will not predominate, and a class cannot be certified.

**1.**     **There Are Material Differences Among the States' Securities Laws**

The first step in any analysis of class certification is to determine what law applies. *See Morris v. ADT Secs. Servs., Inc.*, 2009 WL 10691165, at *6 (S.D. Fla. 2009). And the first step in any choice of law analysis is to determine if there is a conflict of law, because if the potentially applicable laws do not conflict, then there is no need to perform such an analysis.[17]

As an initial matter, the proponent of the class bears the burden of conducting an "extensive analysis of state law variations to reveal whether these pose insuperable obstacles." *Humana*, 601 F.3d at 1180. Plaintiffs fail to do so here, and this is reason alone to deny their Motion. *Id.* ("Undeniably, it falls to the plaintiff to demonstrate the homogeneity of the different states' laws, or at least to show that any variation they contain is manageable.").[18]

---

[17] *See Phillips Petroleum Co v. Shutts*, 472 U.S. 797, 816 (1985); *see also Howard v. Kerzner Int'l Ltd.,* 2014 WL 714787, at *2 (S.D. Fla. Feb. 24, 2014).

[18] Plaintiffs also assert that New Jersey law applies, but cite primarily federal law on these issues and fail to analyze if New Jersey follows federal law on these points. *See* Mot. at 2-4, 8-10, 14.

More substantively, there are significant differences in the applicable state law for unregistered securities claims. The primary difference among the states is in whether they apply the Supreme Court's holding of *Pinter v. Dahl* to determine who is a statutory seller or solicitor of the sale of unregistered securities, or a different, unique standard. As shown below, some states apply *Pinter*, but three states require privity, two states do not recognize a private right of action for the sale of an unregistered security, seven states expand potential liability to an extent possibly greater than *Pinter*, and one state applies an inconsistent or unclearly defined standards. *See* Ex. 1 (citations for each state's approach).

### i.     Twenty-Nine States Apply Federal Standards Set Forth in *Pinter v. Dahl*

Federal courts analyzing claims under Section 12 of the Securities Act apply the standard set by the U.S. Supreme Court in *Pinter*. 486 U.S. at 653-55. As set forth above, and in motion to dismiss briefing, a central issue in this case is whether Defendants may be liable under Section 12 for "successfully solicit[ing] the purchase [of EPAs]." *See* ECF No. 189 at 13 (quoting *Pinter*, 486 U.S. at 647). Plaintiffs, however, allege their claims under New Jersey Law. *See* Mot. at 2. Therefore, a threshold issue is whether claims for the sale of an unregistered security under New Jersey or other states' law would be governed by federal decisions arising under *Pinter*.

New Jersey is one of the states that embraces *Pinter* regarding the scope of liability under its Blue Sky laws. *See Zendell*, 226 N.J. Super. at 439-41 (embracing *Pinter* and rejecting the substantial factor test).[19] There are twenty-seven other states and the District of Colombia that also adopted *Pinter*'s analysis of statutory sellers under their laws.[20] For these states, federal decisions concerning Section 12 claims are instructive or possibly controlling. The remainder of the states, however, do not follow *Pinter* and have their own standards under their unique laws.

### ii.     California, Indiana and Oregon Require Privity.

*Pinter* established two prongs to determine if a party is a statutory seller: if he (i) passed title of the alleged security; or (ii) "successfully solicits the purchase." *Pinter*, 486 U.S. at 647. These three states eliminated the second prong and require privity, allowing liability only if there

---

[19] *See also Abrahamsen,* 276 N.J. Super. at 213.

[20] See Ex. 1 (citing cases from CO, CT, DE, FL, GA, ID, KS, KY, LA, MD, MA, MI, MN, MS, MO, NE, NH, NC, NJ, OH, OK, SC, TN, TX, UT, VA, WV, WY and DC). The two proposed class representatives are from Oklahoma and Florida. *See* ECF Nos. 40-4, 40-3.

are claims "brought [] by the purchaser of the security against the actual seller."[21] There is no
dispute that Defendants are not in privity with any Plaintiffs here, and therefore no claims in this
case can proceed under California, Indiana or Oregon law. *See id.*

### iii. Two States Do Not Allow Any Private Right of Action.

In both New York and Rhode Island, a private litigant cannot assert a claim against a seller
of an unregistered security for a recission or for damages at all. *See CPC Int'l Inc. v. McKesson
Corp.*, 70 N.Y. 2d 268, 278 (1987) (New York and Rhode Island do not "provide [] civil liability"
for sale of unregistered security); *see also* 6, Loss, Securities Regulation, at 3814; *Rondeau v.
Wood*, 155 A.D.2d 751, 752 (3d Dep't 1989) (no private cause of action under any portion of the
Martin Act). Although the Attorneys General of New York and Rhode Island may bring claims,
regular buyers, like Plaintiffs, cannot. *See Kerusa Co. LLC v. W10Z/515 Real Est. Ltd.*, 12 N.Y.3d
236, 244 (2009) (NYAG "bears sole responsibility for implementing and enforcing the Martin
Act"). For this reason, no claims can proceed in this case under New York or Rhode Island as well.

### iv. Seven States Expand Liability More Broadly Than *Pinter*.

*Pinter* abrogated the "substantial factor" test that previously applied in some federal courts.
*See Pinter,* 486 U.S. at 648. Seven states, however, continue to apply a substantial factor based
analysis, permitting plaintiffs to sue any defendant who was a substantial contributive factor in the
sale. *See Hoffer v. States*, 776 P.2d 963, 964-65 (Wash. 1989) (*en banc*) (rejecting *Pinter* and
applying "substantial contributive factor" test under the Washington Securities Act).[22] Thus for
these twelve states, facts different than those that matter under *Pinter* would be at issue.

### v. Ten States Have Minimal Case Law or an Inconsistent Standard.

In ten states, courts have applied inconsistent or unclear standards to unregistered securities
claims. For example, in Pennsylvania there are courts that have recently applied the standards of
1) *Pinter*; 2) privity, or 3) the substantial factor test to unregistered securities claims.[23]

---

[21] *See* Ex. A (citing *Dietrich v. Bauer*, 76 F. Supp.2d 312, 351 (S.D.N.Y. 1999) (analyzing Cal.
Corp. Code § 25110); *Rector, Wardens Vestrymen of Christ Church Cathedral of Indianapolis v.
JP Morgan Chase & Co.*, 2015 WL 2449556, at *8 (S.D. Ind. May 21, 2015) (Indiana Securities
Act "requires either privity between the seller and purchaser, or that the person charged have
offered the security to the purchaser."); *Newman v. Comprehensive Care Corp.*, 794 F. Supp. 1513,
1526-26 (D. Or. 1992) ("Unlike § 12 of the Securities Act., O.R.S. 59.114 only refers to sellers,
not to offerors. Therefore, O.R.S. only refers to persons who pass title.")).

[22] See also Ex. 1 (similar law for AL, AZ, MT, NV, NM, VT, and WA).

[23] *See Klein v. Boyd*, 1996 WL 230012, at *13 (E.D. Pa. May 3, 1996) (citing *Pinter* and noting

At bottom, the different standards applied by different states to the issue of who may be liable for the alleged unregistered sale of a security are substantive conflicts of law on this issue.

### 2.    Florida Choice of Law Rules Require Application of Each State's Law

Given the conflict among the states' laws, the Court must next determine what law applies to Plaintiffs' claims. *See Pinchasov v. Robinhood Fin. LLC*, 2021 WL 4991159, at *2 (S.D. Fla. Sept. 21, 2021) ("court must understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination [on] certification"). It is Plaintiffs' burden to satisfy Rule 23(b)(3), and therefore their burden to show that common questions of law predominate. *See Amchem*, 521 U.S. at 614. This requires a choice of law analysis, and a federal court sitting in diversity applies the choice of law provisions of the forum state. *Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co.,* 944 F.2d 809, 812 (11th Cir. 1991).

Florida's choice of law standard is the "significant relationship test" as set forth in the Restatement (Second) of Conflict of Laws §§ 145-146. *Bates v. Cook Inc.* 509 So. 2d 1112, 1114, (Fla. 1987) citing *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999 (Fla 1980).[24] To apply the significant relationship test, courts assess four factors: (a) the location of the injury; (b) the location of defendants' conduct; (c) the parties' residence and citizenship, and (d) the "place where the relationship, if any, . . . is centered." *eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1134 n.4 (S.D. Fla. 2021). As set forth below, these factors support applying the law of each Plaintiff's state, not New Jersey law.

**First, the location of the injury factor** analyzes where Plaintiffs were allegedly injured and it "is generally the most important, as absent special circumstances, the state where the injury occurred would . . . be the decisive consideration in determining the applicable [] law." *Melton v. Century Arms, Inc*., 243 F. Supp. 1290, 1299 (S.D. Fla 2017); *see also Howard*, 2014 WL 714787, at *2 ([u]nless [a] state has a more significant relationship, "the local law of the states where the injury occurred" applies). Here, Plaintiffs allege an injury based upon their purchase of

---

that seller requirement of Pa. Act is similar to § 12(2) of federal act); *Fox Intl v. Fiserv. Secs. Inc.,* 490 F.Supp.2d 590, 603 (E.D. Pa. 2007) (applying privity standard); *Gilliland v. Hergert,* 2007 WL 4105223, at *4 (W.D. Pa. Nov. 15, 2007) (one "substantially involved" in sale can be seller); Ex. 1 (unclear standards under AK, AR, HI, IL, IA, ME, ND, PA, SD and WI law).

[24] *See also Grupo Televisa, SA v. Telemundo Commc'ns Grp., Inc*., 485 F.3d 1233, 1240 (11th Cir. 2007); *In re Rospatch Sec. Litig.,* 1992 WL 226912 (W.D. Mich. July 8, 1992) (applying Florida's significant relationships test to determine which law applies to securities fraud claims).

EPAs, which took place in their home state. *See* Ex. 3 at 49:11-25. Therefore, this factor weighs heavily in favor of applying the law of each Plaintiff's state and it is "decisive" under the circumstances here. *See Melton,* 243 F. Supp. 3d at 1299.

**Second, the location of defendants' conduct factor** here is Texas: the October 27, 2021, press conference took place in Dallas, Texas, and any further alleged promotional activity took place either in Dallas at the Mavericks' arena, or at Mr. Cuban's home. *See generally* Mot. at 6. This could support applying Texas law, but it provides no reason to apply New Jersey law.

**Third, the parties' residence and citizenship factor** supports the application of each states' law. Defendants are residents and citizens of Texas, but the Plaintiffs are residents and citizens of the various states. Where Plaintiffs are from a great many states this factor supports applying the law of each Plaintiff's state. *See DA Air Taxi LLC v. Diamon Aircraft Indus*., 2009 WL 10668159, at *4, (S. D. Fla. Nov. 5, 2009) ("laws of numerous states" apply because "defendant is not a Florida corporation and . . . many putative class members purchased their aircrafts outside of Florida from non-Florida dealers").

**Fourth, the relationship between the parties factor** does not carry weight because, as discussed above, the only potential touchpoints between the parties are public statements by Mr. Cuban and other promotional activity by the Dallas Mavericks. Under these circumstances there is no real relationship between the parties. *See Grupo Televisa*, 485 F.3d at 1242.

Because the law of the state of the injury presumptively applies, and no factor supports applying New Jersey law[25], the Court should join the many other courts that have analyzed comparable issues and apply the law of each Plaintiff's state. *See Karhu,* 2014 WL 815253, at *10, ("Taking all of these factors together, the Court concludes that the state with the most significant relationship to each class member's claims is the states where the individual purchased Meltdown. This conclusion is buttressed by the interest each state has in enforcing its unfair trade practices laws for the well-being of its own consumers." (collecting cases)).

---

[25] Florida's choice-of-law rules also weigh factors concerning the policies of the forum, and interests of other states. *See* Restatement (Second) of Conflict of Laws § 6. Here, none of these factors support the application of New Jersey law and Plaintiffs' bald suggestions that the interests of New Jersey and Voyager support applying New Jersey law (Mot. at 10) does not make sense given that neither is before the Court, and Plaintiffs have argued that "Voyager is not a necessary third party". ECF No. 195 at 30.

### 3.     Differing Standards Under Each State's Law Create Individualized Issues and Preclude Certification

Given that the law of each Plaintiff's state applies, it would be impermissible error to grant certification, and courts in this Circuit routinely deny certification under similar circumstances. *See Humana*, 601 F.3d at 1183 (given "substantial variations among the six bodies of state law that apply . . . we have little difficulty concluding that the district court's certification of this class was an abuse of discretion."); *see also Kirkpatrick,* 827 F.2d at 730 (affirming denial of certification because "[w]e agree with the district court that the state law claims would require application of the standards of liability of the state in which each purchase was transacted."); *Andrews v. AT&T Co*., 95 F.3d 1014, 1024 (11th Cir. 1996) (affirming denial of certification in part because analyzing law of "fifty jurisdictions complicates matters exponentially" and in such circumstances "district court [should not attempt] the impossible task of instructing a jury on the relevant law") (cleaned up).[26]

Judge Cohn's ruling in *Karhu,* on similar facts is instructive. In *Karhu*, plaintiff sought to certify a nationwide class of state law claimants. The court denied applying a uniform federal standard, and instead analyzed Florida's choice-of-law factors and held that the applicable law "is the law of the states where he purchased [defendants' product]."[27] The court then analyzed the state laws and noted that they "differ . . . [for example] in whether they require proof of . . . privity". *Id*. at *8. The court expressly held that [w]hether a lack of privity defeats each class member's claim thus poses an individualized inquiry based upon the class member's location." For this reason, "varied states law would govern the [] claims of class members across the country, imposing different legal requirements and overshadowing the common factual bases of the claims" such that "individualized legal and factual issues predominate over the common aspects of the [proposed] claims, rendering class certification inappropriate." *Id*.[28]

---

[26] *See also Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1367 n.44 (11th Cir. 2002) (if "laws of all fifty states apply, that alone would render the class unmanageable.") *abrogated on other grounds by Bridge v. Phoenix Bond Indem. Co.,* 553 U.S. 639 (2008); *In re Bridgestone*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("single nationwide class is not manageable" because all 50 states' laws apply).

[27] *Karhu*, 2014 WL 815253, at *9. The court also criticized plaintiffs' failure to "address the impact of the many potentially applicable state laws in any real depth." *Id*. at *8.

[28] *See also Dennis v. Whirlpool Corp.*, 2007 WL 9701826, at *3 (S.D. Fla. March 13, 2007) (collecting cases and denying certification because courts "reject[] efforts to ignore state law variations" and that render "putative class actions unmanageable"); *Teggerdine v. Speedway, LLC*,

Individual issues arising from differences in state law preclude certification here for the same reasons. As shown above, there are significant differences in how states apply their unregistered security statutes: some states follow federal law, but twenty-three states apply meaningfully different standards to the issue Plaintiffs propose for certification. *See supra* at I.B. These significant differences in the law of solicitation are precisely the types of "different legal requirements [that] overshadow[] the common factual bases of the claims" and preclude certification." *Karhu*, at *8; *see also Humana*, 601 F.3d at 1183 (analyzing differences in state law and finding that "substantial variations among [. . .] state law [. . . give us] little difficulty [in] concluding that the district court's certification of this class was an abuse of discretion.").[29]

The Rules Enabling Act also prohibits certification here, where applying New Jersey law, *e.g.*, to plaintiffs from states that require privity would modify Defendants' rights to defend on that basis. *See Amchem*, 521 U.S. at 613 (application of Rule 23 cannot "modify any substantive right").

Finally, Plaintiffs' citation to *AS Goldmen* does not affect this determination or prove otherwise. *See* Mot. at 9-10 (citing *A.S. Goldmen & Co. v. New Jersey Bureau of Sec.*, 163 F.3d 780 (3d Cir. 1999)). *Goldmen* concerned the question of whether a New Jersey regulator's application of New Jersey law to sales taking place outside the state offends the dormant commerce clause of the US Constitution. The Third Circuit held it did not because the law applied primarily to in-state conduct, and the effect on out-of-state conduct was incidental, but also noted that "when an offer is made in one state and accepted in another . . . both states have an interest in regulating the terms and performance of the contract." *Id.* at 787-89. *Goldmen* does not apply here because Defendants do not contest the application of NJ law under the dormant commerce clause. *Goldmen* says <u>nothing</u> about certifying a nationwide class under a single state's law under Rule 23, but the cases cited above demonstrate that substantial variations in state law prohibit certification here and would be reversible error.

### 4. Differing Standards as to Plaintiffs' Theory of Secondary Liability Also Preclude Certification

The Motion also seeks certification of a theory that Defendants are secondarily liable as

---

2018 WL 2451248, at *8, (M.D. Fla. May 31, 2018) (same).

[29] *See also Amchem*. 521 U.S. at 628-29 (nationwide class might be "the most secure, fair and efficient means of compensating victims," but class treatment is impermissible where "aggregation techniques" would violate the Act by "modifying substantive rights); *Gelfound v. Metlife Ins. Co. of Conn.* 313 F.R.D. 674, 679 (S.D. Fla. 2016) (denying certification due to state law issues)).

agents who materially aided in the sale of securities. *See* Mot. at 2, 19 (citing N.J. Stat. § 49:3-60). Differences in the fifty states' laws precludes certification as to this theory as well.

As an initial matter, Plaintiffs have not adduced *any* evidence to survive the "rigorous analysis" of this theory required at this stage. Defendants cannot be secondarily liable for Voyager's actions when Voyager is not before the Court, but will soon be able to access reserves, and Defendants could not be secondarily liable without a prior finding of primary liability.[30]

Even if the Court allows this theory to proceed, under either New Jersey or other states' law it is not a certifiable question. New Jersey does not allow for liability of <u>any</u> agent—only an agent of a "broker-dealer [or] investment adviser . . . who materially aids in the sale," which is consistent with the statutory definition of an agent.[31] Defendants are neither of those, and the Motion does not adduce any, much less adequate, evidence to maintain this theory. *See* Mot. at 2, 19 (citing no evidence or applicable authority). Moreover, the laws of the fifty states, not just New Jersey, applies, and the sizable variations of the states' secondary liability statutes and definitions of "agent" also negate predominance and preclude certification.[32]

### C.     The *In Pari Delicto* Defense Will Test Individualized Proof, Precluding Certification Under Rule 23(b)(3)

The Court should also deny certification for the independent reason that affirmative defenses will require individual proof and defeat predominance. Defendants will assert the *in pari delicto* defense as to plaintiffs who themselves successfully solicited others to open an EPA and received compensation from Voyager. *See Berner*, 472 U.S. at 310-11 (*in pari delicto* defense bars claims where "(1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public."). For example, ██████████████████████████████████████

---

[30] *See* ECF No. 189 (MTD) at 32; *In re Cellco P'ship*, 663 F. Supp. 2d 363, 378 n.24 (S.D.N.Y. 2009) ("Joint and several liability is not an independent basis for liability, but a means of allocating responsibility for an award of damages where multiple actors have already been found liable."); *see also* 22-11068 (S.D.N.Y. Bk.) ECF No. 11548-2 (dismissal of FTX preference claim).

[31] N.J. Stat. § 49:3-60(d); 49:3-49 ("Agent means any individual other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities.").

[32] *See* Ex. 1 (noting differences in secondary liability statutes and definition of "agent").

██████████████████████████████. *See* Ex. 4 at 124:11-125:11; Ex. 17; Ex. 45.

Assessing this defense will require individualized analysis of certain plaintiffs' trading history and their solicitation of other purchases of EPAs. *See* Exs. 17, 20-21, 44-45. This type of individualized inquiry is yet another reason that common issues will not predominate, and that the Court should deny certification. *See Heaven v. Trust Co. Bank*, 118 F.3d 735, 738 (11th Cir. 1997) (affirming denial of class certification in part because defendants' counterclaims would require plaintiffs to assert "individual defenses", which "would require the court to engage in multiple separate factual determinations" weighing against finding of predominance).[33]

### D. Analysis of Damages Will Require Individualized Proof, Precluding Certification Under Rule 23(b)(3)

The Court should also deny class certification for the independent reason that Plaintiffs do not and cannot offer a damages model acceptable under *Comcast*. To satisfy Rule 23(b)(3)'s predominance requirement, the Supreme Court requires plaintiffs to show that damages are measurable on a classwide basis using a common methodology that is consistent with their theory of liability and measures only damages attributable to that theory. *Comcast Corp.*, 569 U.S. at 35. If plaintiffs do "not even attempt to do that, [they] cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* (methodology cannot rely on "speculative" inferences)

Courts in this District interpret *Comcast* as requiring "lower courts to conduct a 'rigorous analysis' to determine whether the purposed damages model fits the liability case." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696-98 (S.D. Fla. 2014) (denying certification because plaintiff could not show that damages are "measurable on a class-wide basis through use of a common methodology"); *see also Krukever v. TD Ameritrade, Futures & Forex LLC*, 328 F.R.D. 649, 662 (S.D. Fla. 2018) (denying certification when it was "impossible" to "[c]alculat[e] damages using 'readily available' data and a plug-and-chug formula . . . without conducting complex and fact specific inquiries").[34]

---

[33] *See also Coastal Neurology, Inc. v. State Farm Mut. Ins. Co.*, 458 Fed. App'x. 793, 794 (11th Cir. 2012) (affirming denial of certification due to "individualized defenses . . . to the proposed class members' claims"); *Boca Raton Com. Hosp. Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 694 (S.D. Fla. 2006) (denying certification due to affirmative defenses).

[34] Though some variations within class damages are permissible in a 23(b)(3) class action, "individual damages defeat predominance if computing them 'will be so complex, fact-specific

Despite *Comcast's* warnings, Plaintiffs here proffer no damages formula of any sort other than to suggest that the "evidence will be readily conductive [sic] to proving damages at trial" by reference to the "MAVS100 referral code" and unnamed other "specific promotional codes." This effort falls far short and does not even qualify as a methodology. This is precisely the sort of "speculative" conception of damages that "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35.[35] Plaintiffs' failure to propose a theory of classwide damages is yet another reason that individual issues will predominate and certification should be denied. *See Bussey*, 562 F. App'x at 790 (reversing certification because it is "unclear . . . how the district court [could] allocate liability and damages among the various defendants" and remanding for court "to conduct the 'rigorous analysis' required by" *Comcast).*

A further reason that damages issues preclude certification here is that there is no methodology tied to Plaintiffs' theory that could address damages on a classwide basis. As Defendants' expert, Dr. Conroy, explains at least three issues prohibit a classwide analysis of damages. *First*, Plaintiffs' proposed class does not allow for a way to identify which investors were "successfully solicited" by the Defendants. *See* Ex. 2 (Conroy Rpt.) at 15. *Second*, Plaintiffs' do not propose a way to identify which investments were made as a result of the Defendants' successful solicitation. *Id*. at 16-17. *Third*, there is no common formula for a rescission calculation and any proposed formula will result in intra-class conflicts. *Id*. at 17-19.

**E.   The Proposed Issue Classes Are an Attempt to Avoid the Predominance Requirement and Are Not a Superior Method of Adjudicating the Case**

Rather than seeking certification of their claims in full, Plaintiffs propose that the Court certify two "issue classes" under FRCP 23(c)(4). This concept is disfavored in this District and should be rejected because it is not "superior to other available methods for fairly and efficiently adjudicating the case." Fed. R. Civ. P. 23(b)(3).

Although the Eleventh Circuit has not directly addressed "the propriety of partial class

---

and difficult that the burden on the court system would be simply intolerable" and when "they are accompanied by 'significant individualized questions going to liability.'" *Brown*, 817 F.3d at 1240.

[35] Plaintiffs' proposal to "prov[e] damages at trial" without establishing that they are susceptible to classwide proof is an attempted end run around the predominance requirement, and is an improper and unworkable way to delay consideration of how Plaintiffs would attempt to establish damages at trial. *Randolph*, 303 F.R.D. at 698 (denying certification for this reason).

certification,"[36] most courts in this District have adopted the view of the Fifth Circuit and disprove of issue certification. Courts in this District frequently agree with *O'Neill v. Home Depot USA, Inc.*, 243 F.R.D. 469, 481-82 (S.D. Fla. 2006), which declined "to certify a single issue when the case as a whole fails to meet the requirements of Rule 23" in part because "courts have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement." (citing *Allison v. Citgo Petroleum Co.,* 151 F.3d 402, 422 n.17 (5th Cir. 1998)).[37]

Plaintiffs propose issue certification to avoid addressing the required individualized proof on other issues and based primarily on out-of-District cases. *See* Mot. at 8-9. At bottom, the Court should reject issue certification because "it would do very little to increase the efficiency of the litigation." *In re Chiquita Brands Intl*. 331 F.R.D. 675 (S.D. Fla. 2019 (denying issue certification because "prevalence of individual issues" does not support piecemeal certification). If the Court were to certify the two proposed issues (it should not for the reasons set forth herein), still needing adjudication would be individualized inquiries as to which Plaintiffs were successfully solicited, which are subject to affirmative defenses, and how to assess damages. *See* Sections I.A, C and D. Common questions do not predominate over these individualized issues, and certifying issue classes would not be a superior method of adjudicating the case, and would lead to numerous "difficulties in managing [such] a class action." Fed. R. Civ. P. 23(b)(3)(D); *O'Neill*, 281 F.R.D. at 482 (denying certification because "reading Rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over . . . individual issues would eviscerate the predominance requirement of rule 23(b)(3) . . . [which] could not have been intended.").

## II.   PLAINTIFFS' PROPOSED CLASS DEFINITION IS IMPERMISSIBLY BROAD AND NOT ASCERTAINABLE

"Before a district court may grant a motion for class certification, a plaintiff . . . must establish that the proposed class is adequately defined and clearly ascertainable." *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012). Plaintiffs utterly fail to meet this burden because their proposed classes[38] "include[] persons who suffered no harm due to the actions

---

[36] *See Borrero v. United Healthcare of NY, Inc.*, 610 F.3d 1296, 1310 (11th Cir. 2010).

[37] *See also Randolph*, 303 F.R.D. at 700 (rejecting issue certification, citing *O'Neill*, and collecting cases).

[38] The Security Class includes persons whose sales occurred as early as the "applicable statutes of limitation" whereas the Solicitation Class includes persons whose sales occurred on or after

of a defendant," *Nguyen v. Raymond James & Assocs., Inc.*, 2022 WL 4553068, at *8 (M.D. Fla. Aug. 12, 2022), and are "defined through vague or subjective criteria." *Jerue v. Drummond Co.*, 2023 WL 6610603, at *17 (M.D. Fla. Aug. 25, 2023).

A.   **Numerous Class Members Suffered No Injury.**

Plaintiffs' proposed class should "not be certified [because] it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019); *see also Walewski*, 502 F. App'x at 861 (certification should be denied where the proposed class "impermissibly includes members who have no cause of action."); *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 481 F. Supp. 3d 1258, 1276 (S.D. Fla. 2020) (denying class certification because the proposed definition included *all* purchasers of a model of body armor even though the alleged defect only affected a limited subset of  consumers). Under Plaintiffs' definition, the proposed classes predominantly consist of parties that were unharmed by Defendants because they: (A) purchased assets lacking any connection to Defendants' solicitation; (B) redeemed or recovered their interest in or before the bankruptcy; (C) did not purchase assets that conformed to the solicitation; (D) purchased "non-security" assets; (E) are subject to the *in pari delicto* defense; (F) did not open accounts in their own names; or (G) failed to use the EPA in conformity with the threshold investment solicited.

1.   **Class Members Are Disconnected from Defendants' Solicitation.**

As shown above, a Section 12 claim hinges on establishing a "successful solicitation." *See* section I.A, *supra*. Even assuming *arguendo* that the at-issue tokens qualify as securities, which Defendants dispute, promoter liability requires "a paid participant who ***actually contacted a buyer*** and urged the buyer to purchase. . .." *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 749 F. Supp. 1569, 1579 (N.D. Ala. 1990) (emphasis added).  This requires proof that "the plaintiff ***purchased securities as a result of that solicitation***." *In re CNL Hotels & Resorts, Inc.*, 2005 WL 2291729, at *5  (emphasis added).

Here, Plaintiffs' proposed definition fails because it includes numerous users that have no connection to Defendants' solicitation. For example, the Security Class includes users who invested prior to October 27, 2021, including ████████████████████████████ ████████████████████████████████████. *See* Mot. at 4-5, Ex. 24. Both classes also include members that engaged in unrelated transactions *after* the promotion ended on October 30,

---

October 27, 2021.  (*See* Mot. at 4-5.)  They are treated the same except where noted.

2021, including three named plaintiffs ████████████████████████ Ex. 4 at
80:8-12. Similarly, the proposed class definition includes individuals that never listened to the
press conference, including named plaintiff Ms. Gold who learned about Voyager from her friend.
*Id*. at 77:2-4. Worse still, the class includes individuals that either did not use the MAVS100 promo
code, or used other promo codes, and thus did not purchase securities ***as a result of*** Defendants'
solicitation. The failure to exclude individuals that neither used the MAVS100 code nor listened
to the press conference renders the class overbroad. *See, e.g.*, *Walewski*, 502 F. App'x 857 (class
of *all* video game purchasers was overbroad because it included individuals that lacked privity
with the defendant or did not experience a product defect).

### 2. Class Members Recovered the Value of Their Investment

The class definition is also overbroad because it includes investors that recovered the value
of their investment and have no injury under Section 12. A plaintiff who redeemed her EPA or
recovered its value in bankruptcy "has not experienced damages within the meaning of the statute"
and lacks "standing to sue". *Chaparro*, 2016 WL 10952524, at *4. Because the class definition
fails to exclude successfully solicited but uninjured parties it is fatally overbroad. *See, e.g.*, *Bussey
v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782 (11th Cir. 2014) (class improperly included
those that lost money in individual *game*s but broke even at the *session* level).

### 3. Class Members Purchased Cryptocurrencies Outside of the Solicitation

The proposed class definition also improperly includes users that were not successfully
solicited because the type of assets they acquired were either not subject to promotion or were
advocated against by Defendants. *See, e.g.*, *Ryder Int'l Corp.*, 943 F.2d at 1527; *Croy v. Campbell*,
624 F.2d 709 (5th Cir.1980). For instance, the proposed class includes all investors that "deposited,
held and/or transferred additional funds to an EPA" including assets that Mr. Cuban affirmatively
advocated *against*. Mr. Cuban consistently and publicly discredited LUNA, LUNC, DOGE, and
SHIBU tokens, including at the Press Conference where he likened DOGE and SHIBU to "lottery
tickets." Ex. 29 at 19:6-13. Likewise, the class includes members that only "purchased . . . VGX
Tokens," and not an EPA, even though Defendants ***never promoted VGX***. Mr. Cuban—who did
not himself promote any Voyager products and acted only in his capacity as Governor of the
Mavs—"made sure not to discuss [VGX] tokens" at the Press Conference or in promotional
materials, and rejected any request to promote VGX. Ex. 27 (Cuban Tr.) at 24:12-20, 156:20-21;
Ex. 43 at 2; *see generally* ECF No. 189 (MTD) at 30.

**4.      Class Members Purchased "Non-Security" Crypto Assets.**

The proposed class also improperly includes class members that purchased assets that did not earn rewards and therefore do not qualify as securities. Even under a liberal reading of *Howey,* digital assets qualify as securities only if investors expected profits from the efforts of others in the form of, *e.g.*, reward payments. *See, e.g., SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) (stablecoin qualified as security because depositors were promised 20% yield). An EPA earned rewards only if a user made an "initial investment" in certain assets above the minimum threshold and maintained such holding through reward payment. *See* Ex. 11 (identifying assets and minimum monthly balance for assets eligible to receive rewards); *see also* Ex. 2 (Conroy Rpt.) at 19-20 (no expectation of profit in EPA absent qualification for rewards). Numerous proposed class members ███████████████████ *See, e.g*., Exs. 20-21, 24. Accordingly, Plaintiffs' proposed class includes differently situated parties whom either have no claim under Section 12 or have a sufficiently distinguishable claim such that their inclusion renders the class definition nonsensical. *See, e.g.*, *Ward v. EZCorp, Inc.*, 679 F. App'x 987 (11th Cir. 2017) (class of *all* pawn broker pledgors was overbroad as it did not distinguish customers charged a fee for "a missing pawn ticket from those that were charged regardless of presenting a pawn ticket.").

**5.      Class Members' Solicited Investment in Voyager.**

The proposed class definition includes Voyager users that solicited third parties to open an EPA, and are thus barred from recovery. For instance, some plaintiffs ██████████████ ████████████████ *See* Exs. 24, 44-45. Pursuant to the *in pari delicto* defense, such claimants do not have viable claims against Defendants.  *See, e.g., Heaven*, 118 F.3d at 738. The failure to exclude these class members renders the class definition overbroad.  *See Jerue*, 2023 WL 6610603, at *17 (class of "all persons that own any residential real property in [class area]" failed to exclude recent purchasers who benefitted from the decrease in prices).

**6.      Class Members Did Not Open Accounts in Their Own Name.**

The proposed class definition is also overbroad because it includes individuals that signed up for Voyager accounts in names other than their own and therefore lack standing. For instance, plaintiff Ms. Gold did not open an account in her own name. Ex. 4 at 67:3-5. Such class members lack standing. *See* Fla. Stat. § 517.211(2) (standing for those who "purchas[ed] the security").

**7.      Class Members Assert Claims For Deposits Far Exceeding the Promotion**

Finally, the proposed class fails because it includes users that made initial deposits that far exceed the amount solicited in the Press Conference. The promotion allowed for rewards for users that made an initial deposit of $100, but no additional reward for deposits above that amount. *See* Ex. 9 at 4. The proposed class includes both users that deposited $100, and those who deposited amounts far in excess. Users that deposited and seek rescission of excess amounts are subject to the argument that the excess deposits were not solicited, and this distinction is another characteristic that renders the class overbroad. *See Ward,* 679 F. App'x at 987 (overbroad class did not distinguish between class members who did and did not have claims for improper fees).

**B.**    **Class Membership is Not Ascertainable Based on Internal Records.**

Plaintiffs' proposed class members cannot be identified through "objective criteria" and thus the class cannot be certified as "clearly ascertainable." *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, 2016 WL 7666179, at *19 (M.D. Fla. May 12, 2016). Instead, Plaintiffs' bald "[a]ssert[ion] that class members can be identified using the Defendant's records is insufficient to establish ascertainability [and] a plaintiff must prove that those records are useful for identifying the supposed class members." *Dapeer v. Neutrogena Corp.*, 2015 WL 10521637, at *7 (S.D. Fla. Dec. 1, 2015) (cleaned up); *Ohio State Troopers Ass'n, Inc.*, 481 F. Supp. 3d at 1277 (class was not ascertainable where records did not identify retail purchases). Indeed, the only record Plaintiffs cite is a document tracking the use of the MAVS100 code.  Mot. at 12-13 (class ascertained "from Voyager's own corporate records" but only identifying "[c]orporate records regarding the identity of individuals who used [the MAVS100] promo codes"). This document merely reflects the use of a promo code and cannot, among other things, discern which class members watched the Press Conference and opened an EPA as a result, nor does it identify the state in which the transactions took place, whether the assets in the EPA were subject to rewards, or whether the plaintiff themselves successfully solicited other customers to open an EPA.[39]

Plaintiffs' reliance on *Rensel v. Centra Tech, Inc.*, 2 F. 4th 1359 (11th Cir. 2021) is misplaced.  *Rensel* concerned claims against an *issuer*[40] and there was no need to limit the class to "successfully solicited" investors. The class could be ascertained through internal records "identif[ying] all of the investors who purchased digital tokens issued by [the issuer]." *Rensel v.*

---

[39] Plaintiffs also use vague terms in their class definition, such as "***additional funds***."

[40] Because claims against the promoter were dismissed, ascertainability was only assessed as to claims against the issuer.  *Rensel,* 2021 WL 4134984, at *3.

*Centra Tech, Inc.*, 2021 WL 4134984, at *6 (S.D. Fla. Sept. 10, 2021). Here, by contrast, a record identifying all Voyager users would not furnish objective criteria for ascertaining class which specific users were solicited by Defendants and opened an EPA as a result.

### C.     Correcting the Class Definition Would Require Substantial Revisions

In light of Plaintiffs' overbroad and unascertainable class definition, the Court is obligated to consider subclassification." *Heaven*, 118 F.3d at 738. Nonetheless, the court should deny certification because drastic changes are needed to remedy the deficiencies. *See, e.g.*, *Karhu*, 2014 WL 815253, at *11 ("[T]he Court declines to drastically redefine the action *sua sponte* as one only on behalf of New York consumers."); *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 409 (M.D. Fla. 2004); *Walewski*, 502 F. App'x at 861; *Jerue*, 2023 WL 6610603, at *19 (refusing to revise class definition where it would have required "strik[ing] a form of damages . . . impos[ing] its own temporal restriction on the class, excising some potential class members").

No class should be certified[41], but if the Court considers redefining the class, it should at minimum exclude those that suffered no harm due to Defendants' conduct. Thus, in the alternative, Defendants propose a class definition of: All persons or entities in the United States who:

1. Opened a Voyager EPA using the MAVS100 promotional code between October 27, 2021, and October 29, 2021;

2. Made an initial deposit of $100, and an initial investment in an asset listed on the Voyager Earn Program of an amount greater than the minimum threshold balance;

3. Held that threshold balance for the requisite period to earn a reward from Voyager, and

4. Did not recover the entirety of that initial investment as a result of Voyager's bankruptcy.

5. Excluding any persons or entities in the United States who:

    a. Made an initial investment in LUNC, LUNA, DOGE, or SHIBU;

    b. Received referral rewards on their account;

    c. Seeks damages of an amount exceeding $100; or

    d. Opened accounts in other's names, traded under another person's account, or otherwise knowingly violated the User Agreement.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion and decline to certify any class in this matter.

---

[41] Defendants reserve all rights to appeal any order certifying a class for the reasons set forth herein.

**REQUEST FOR HEARING**

In accordance with LR 7.1(b)(2), Defendants respectfully request oral argument on the instant motion of thirty minutes per side to allow further explanation and debate of the many complex legal and factual issues at bar.

Date: April 10, 2024

Respectfully submitted,

*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

**FOWLER WHITE BURNETT, P.A.**
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

*-and-*

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@lawsonhuckgonzalez.com

**LAWSON HUCK GONZALEZ, PLLC**
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (850) 825-4334

*-and-*

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email: sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email: rwolkinson@brownrudnick.com

DANIEL L. SACHS, ESQ.
*Pro Hac Vice*
Email: dsachs@brownrudnick.com

**BROWN RUDNICK LLP**
601 Thirteenth Street, N.W.
Suite 600
Washington, DC 20005
Telephone:    (202) 536-1737
Facsimile:    (202) 536-1701

*-and-*

JONATHAN D. WHITE, ESQ.
*Pro Hac Vice*
Email: jwhite@brownrudnick.com

**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 209-4903

*Attorneys for Defendants Mark Cuban and
Dallas Mavericks Limited d/b/a Dallas Mavericks*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2024, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via the Court's CM/ECF which will send notification of such filing to all attorneys of record.


*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com