# **EXHIBIT 27**

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Page 1

```
 1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2
 3   PIERCE ROBERTSON et al,    )
     on behalf of himself and   )
 4   others similarly           )
     situated,                  )
 5                              )
             Plaintiff,         )
 6                              )
     VS.                        )         CASE NO.:
 7                              ) 22-cv-22538-ALTMAN/Reid
     MARK CUBAN and DALLAS      )
 8   BASKETBALL LIMITED, d/b/a  )
     Dallas Mavericks, et al,   )
 9                              )
             Defendants.        )
10
     ----------------------------------------------------------
11
            CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
12
               ORAL AND VIDEOTAPED DEPOSITION OF
13                        MARK CUBAN
                       FEBRUARY 2, 2023
14                   (REPORTED REMOTELY)
     ----------------------------------------------------------
15
16           ORAL AND VIDEOTAPED DEPOSITION OF MARK CUBAN,
17   produced as a witness at the instance of the Plaintiff and
18   duly sworn, was taken in the above-styled and numbered
19   cause on Thursday, February 2, 2023, from 9:06 a.m. to
20   4:23 p.m., before Kari Behan, CSR, RPR, CRR, a Texas
21   certified machine shorthand reporter, at the offices of
22   Winston & Strawn LLP, 2121 N. Pearl Street, Suite 900,
23   Dallas, Texas, pursuant to the Federal Rules of Civil
24   Procedure 30.
25   Job No. 5681877
```

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Page 24

```
1        A.   It was in Bitcoin.  I wasn't sure what it was in.
2        Q.   Right.
3        A.   I presumed it was going to be in Voyager.  I was
4    -- I was incorrect.  But it turned out it was in Bitcoin.
5        Q.   Okay.  Did you do any investigation before the
6    press conference as to whether the tokens themselves were
7    unregistered securities?
8        A.   Yeah, and I -- just the tokens or tokens, in
9    general?
10       Q.   Voyager tokens, the ones that you're going to
11   promote.
12       A.   I had -- I -- first of all, I never promoted -- I
13   don't promote anything like that, and I don't promote
14   tokens.  I've been very clear over and over and over and
15   over and over and over again when discussing tokens that I
16   don't think that -- I think they're very speculative, and
17   I said multiple times that there are a variety of ways in
18   which they are securities, and I think they deserve
19   regulations.  So I made sure not to discuss tokens or
20   anything that I thought could be an unregistered security.
21       Q.   You made sure not to say that at the press
22   conference in October?
23            MR. MELSHEIMER:  Objection.
24   BY MR. MOSKOWITZ:
25       Q.   You said:  I made sure not to say it.  And I'm
```

1  just trying to understand.
2      A.  I -- I did not discuss any -- the only -- I made
3  a reference to MATIC in my personal experience there, and
4  I made a reference to Voyager, and that was -- and we
5  mentioned Bitcoin, and I think I made a reference to
6  Dogecoin and Shiba Inu.  But they were just references and
7  examples.
8      Q.  Okay.  You make a reference to the amount of
9  interest that's going to be paid back.  You say something
10 like:  Hey, it's 7 percent.
11          And then, when you're with Steve in the
12 press conference, he corrects you, and he says:  It's --
13 on some of it, USD, it's 9 percent, right?
14     A.  No, he said USDC, but yes.
15     Q.  USDC?
16     A.  Right.
17     Q.  Okay.  How did you think that they were going to
18 give these guaranteed 7 or 8 or 9 percent interest?
19 Because what I'm hearing today a lot of people say:  Hey,
20 how did you really think they were going to pay that
21 percentage?  Is -- you know, like, Madoff, how did you --
22 how can you get a guaranteed 7 percent?
23          What would be your response to that?
24          MR. BEST:  Objection, form.
25          THE WITNESS:  Through the securities

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Page 155

```
1    endorsers.  Sometimes, as the owner of the Mavs, you're
2    signing partnership agreements for the Mavs, correct?
3         A.   Incorrect.
4         Q.   Okay.  You don't sometimes do one versus the
5    other?  Sometimes you're the celebrity endorser, like you
6    talked about this morning with this platform.
7         A.   Sure.
8         Q.   Sometimes you're doing deals as the governor of
9    the Mavericks and you're a sponsor?
10        A.   Correct.  But you said I signed the deals.  I
11   don't sign the deals.
12        Q.   You don't sign any deals for the Mavericks?
13        A.   Correct.
14        Q.   Okay.  You may not even sign the deals when
15   you're doing the celebrity endorser; your lawyer may sign
16   them, right?
17        A.   No.  I typically sign them.
18        Q.   You do sign them?
19        A.   Yes.
20        Q.   Okay.  So I'm asking you, you don't know your
21   understanding in the crypto space today -- do you,
22   Mark Cuban, have an understanding or a conclusion, if I'm
23   a celebrity, like the brand ambassadors for FTX -- I mean,
24   you have to, you know, be -- be aware of this.  If you're
25   a celebrity endorser for FTX, do you have an opinion --
```

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Page 156

```
1    and I'm getting paid -- say, Kevin O'Leary, $10 million of
2    free stock to promote it, do you think that you have an
3    obligation to disclose that to the public?
4              MR. BEST:  Objection, form.
5              MR. MELSHEIMER:  Objection, form.
6              THE WITNESS:  I don't know what
7    Mr. Wonderful's deal was, or any of them are.  I just know
8    I can tell you this:  I would not promote a token.  I've
9    been asked to promote tokens.  I've been offered to
10   promote tokens.  I will not promote tokens.
11   BY MR. MOSKOWITZ:
12       Q.  Okay.  Forgetting the tokens, would you promote
13   Voyager as a platform?
14             MR. BEST:  Objection, form.
15   BY MR. MOSKOWITZ:
16       Q.  I mean, you did that?
17             MR. BEST:  Objection, form.
18             THE WITNESS:  Yeah, I mean, if they came to
19   me and -- in September or October of 2021, I would have
20   had the discussion.  I would -- but I would have been
21   clear, I would not do anything to promote their VGX token,
22   but I would have had the discussion to potentially work as
23   a brand ambassador, depending on the terms, for Voyager at
24   the time.
25   BY MR. MOSKOWITZ:
```