**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-22538-ALTMAN/Reid**

DOMINIK KARNAS *et al.*, on behalf of
himself and others similarly situated,

    Plaintiff,

v.

MARK CUBAN, *et al.,*

    Defendants.

_____/

# PLAINTIFFS' MOTION FOR RECONSIDERATION
# AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs, pursuant to Federal Rule 54(b), respectfully move this Court to reconsider its April 23, 2024 Order [ECF No. 263] (the "Order"), granting Defendants' Renewed Motion for Leave to File Under Seal [ECF No. 262] (the "Renewed Motion to Seal"), which sealed two important documents: (1) Exhibit 26, the sole "Voyager/Mavericks Sponsorship Agreement dated Oct. 29, 2021", hereafter "Mavs/Voyager Sponsorship Agreement") and (2) Exhibit 43 (the "One Email Exhibit", that discussed the Sponsorship Agreement). Plaintiffs expressly thank the Court for expeditiously considering and ruling on Defendants' Motion, and understand that it was logical to do so, based upon the Defendant's Certificate of Good Faith under Local Rule 7.1, which did not clearly state that Plaintiffs (in both the in-person and email discussions) strongly objected to Defendants' seeking to continue to keep sealed from the public any of their proposed Exhibits (including both Plaintiffs' testimony, <u>and the Mav/Voyager Sponsorship Agreement</u> and the one email discussing the Agreement). The Court's Order, in fact, cites to the Motion as: "Unopposed Renewed Motion for Leave to File Under Seal (the "Renewed Motion") [ECF No. 262]". However, the Motion was very much contested, because (as explained below) the Sponsorship Agreement itself, states that any possible confidentiality, has already expired (that was ***never relayed*** by Defendants to the Court).

**INTRODUCTION**

Before Defendants filed the Renewed Motion to Seal (April 17th), and during the four business days thereafter until the Court entered the Order (April 23rd), Plaintiffs were informing Defendants (via in-person conferral at the Maverick's deposition in Dallas and in numerous emails) that Plaintiffs in fact "opposed" sealing the Mavs/Voyager Sponsorship Agreement, consistent with their previous objections raised on numerous occasions.

Plaintiffs were in the process of drafting their Opposition to the Renewed Motion to Seal well in advance of the standard May 1, 2024 deadline, when the Court issued the Order, apparently under the impression the Renewed Motion was "Unopposed." Exhibit. *See, e.g.,* emails at **Exhibit A**, p. 8 ("Plaintiffs contest, object and do not agree with your 'Confidential' and/or 'Highly Confidential' . . . there is no basis under our Protective order for those designations" and including "PX007 – MAVSCUBAN00002840 (Voyager/Mavs Agreement)").[1]

*Why is it so important to respectfully reconsider the Order at this juncture?*

*First,* by its own clear terms, any confidentiality required by the Mavs/Voyager Sponsorship Agreement has *already unequivocally expired*;

*Second,* the Mavs/Voyager Sponsorship Agreement is currently at the heart and crux of the pending Plaintiffs' Motion for Class Certification (as well as the main issue in dispute) and thus all parties will need to extensively cite, quote and discuss, the Agreement in illustrating that the claims and defenses are the same for all class members (Defendants raise the exact same provisions in the Mavs/Voyager Sponsorship Agreement as defenses to each and every class member);

*Third*, all of the items enumerated on "Exhibit I" of the Mavs/Voyager Sponsorship Agreement specifically refute Defendants' main argument in their Opposition to Class Certification, namely "[a] primary problem with Plaintiffs' proposed class is it is untethered to Defendants' actual role in this case, which arises almost entirely, from a single press conference on October 27, 2021." Opposition at page 11 of 43;[2]

---

[1] Over the past year, including after the Defendants filed their Renewed Motion to Seal, Plaintiffs have repeatedly asked Defendants to provide *any* justification to support their claim that the Sponsorship Agreement could or should be deemed "Highly Confidential." Despite these requests, Defendants fail to provide even one declaration, supporting documents, or any support at all for this classification.

[2] Plaintiffs are being very careful not to quote the specific substance of any specific provisions of the Mavs/Voyager Sponsorship Agreement, in that Defendants have continued to insist that the entire Agreement (as well as over 23,000 pages of materials—almost every page produced in this case) is either protected as "Highly Confidential" or "Confidential."

*Fourth,* the Court just two weeks ago, held "[t]o file under seal, a party must 'set[ ] forth the factual and legal basis for departing from the policy that Court filings are public and that describes the information or documents to be sealed . . . with as much particularity as possible, but without attaching or revealing the content of the proposed sealed material[.]' S.D. FLA. L.R. 5.4(b)(1)." *Id.* The order went on to state that "the Defendants barely tell us what most of these exhibits even are[.]" *Id.*

*Fifth,* while Defendants can and will certainly raise various defenses to allegations regarding their conduct, public policy strongly advocates transparency in legal processes, particularly where, as here, the government and numerous state officials have already held that bankrupt Voyager, and its former CEO Steve Ehrlich, are permanently banned from handling consumers' assets based upon their fraudulent conduct regarding the subject of the Mavs/Voyager Sponsorship Agreement.

Several statements that Defendants made to the Court in their Renewed Motion to Seal that are rather troubling. In their Renewed Motion to Seal, Defendants state that the Mavs/Voyager Sponsorship Agreement:

- "contains within it a confidentiality term, which provides that the parties to the Agreement acknowledge that its terms and conditions are confidential and may not be disclosed," *Id.,* 4, and
- "contains proprietary and competitively sensitive business information of the Mavericks, and its disclosure would harm the Mavericks' competitive standing and negotiating posture," *Id.*, 5.

These statements, however, are incomplete to the extent that they can only be seen as an attempt to mislead the Court.

What Defendants fail to disclose to the Court is that the "confidentiality term" *only applies* until one year after the agreement is terminated. According to the Mavericks' own corporate representative testimony, the Mavs/Voyager Sponsorship Agreement terminated when Voyager filed for bankruptcy July 5, 2022, meaning that by its own terms the Mavs/Voyager Sponsorship Agreement was no longer "confidential" by July 5, 2023, nearly a year ago.

Further, the materials included in the form Mavs/Voyager Sponsorship Agreement — including the price term, which Defendants claim is so "competitively sensitive" that it would "harm" their "competitive standing"—are regularly disclosed publicly in court filings, especially when the agreement is central to the dispute.

For example, in *Ackerley Media Group, Inc. v. Sharp Elecs. Corp.*, 170 F. Supp. 2d 445 (S.D.N.Y. 2001), the terms of a sponsorship agreement with the Seattle Supersonics were publicly reviewed in detail in connection with a motion to dismiss, including the following discussion of the price terms in the order:

With respect to price, paragraph 7 of the [Team Sponsorship Agreement] states:

**7.     Sponsorship Fee**

a.     Annual Fee: In consideration for the rights granted herein, [Sharp] shall pay to Sonics the annual Sponsorship Fee which shall be as follows:

NBA Season

Annual Sponsorship Fee

| | |
|---|---|
| 1998–1999 | $144,200 gross / $122,570 net |
| 1999–2000 | $144,200 gross / $122,570 net plus an additional amount not to exceed 6% of previous season contract total. Such exact amount to be mutually agreed upon by both parties. |
| 2000–2001 | 1999–2000 contract amount plus an additional amount not to exceed 6% of previous season contract total. Such exact amount to be mutually agreed upon by both parties. |

*Id.*, at 447.

Similarly, in very recent litigation regarding ROKiT becoming the first ever jersey partner of the Houston Rockets, *Rokit Drinks LLC, et al., v. Landry's LLC, et al.*, No. 4:22-cv-01551 (S.D. Tex.), at issue was a sponsorship agreement with the Houston Rockets, which also was publicly filed with terms disclosed in connection with a motion to dismiss, including the price terms. *See* **Composite Exhibit B**. For example, included in the materials was a final arbitration award that awarded $11,225,000 for amounts owed under the sponsorship agreement, and which disclosed, among other things:

> The "Initial Term" of the Agreement was for the 2018-19 and 2019-20 National Basketball Association ("NBA") seasons and was to expire on June 30, 2020, with an option for additional years unless previously terminated. (Stone Ex. 1, ¶ 1.) In return, Respondent agreed to pay Claimant a
>
> Base Contract Price in the aggregate amount of Nin Million Seven Hundred Fifty Thousand Dollars ($9,750,000), which amount shall be due and payable as follows: Fifty Percent (50%) within ten (10) business days of the execution of this Agreement and Fifty Percent (50%) on or before January 15, 2019. For each subsequent Contract Year during the Term, the Base Contract Price shall be determined by increasing the Base Contract Price of the immediately preceding Contract Year by Ten Percent (10%), which amount shall be due and payable in full on or before July 1 of the then applicable Contract Year.

*See* Comp. Ex. B, 49.

In affirming a denial of a preliminary injunction regarding a sponsorship agreement with the Detroit Pistons in *Michigan First Credit Union v. Palace Sports & Entm't, LLC*, 340529, 2018 WL 1072639

(Mich. Ct. App. Feb. 27, 2018), the court discusses the terms of the sponsorship agreement and also cited the testimony of the Pistons' Chief Marketing Officer, who, "when asked how difficult it is to value sponsorship deals," responded:

> "It's very, very simple. It's a math problem and there are agencies that that's all they do." Metzger explained that buyers and sellers of sports team sponsorships regularly quantify sponsorship deals. There are metrics that buyers and sellers of sports team sponsorships use "having to do with awareness, opinion, consideration, and [social media engagements]." Community benefit and brand association are factored into quantifiable results; "when you put a deal together, whether you're buying, selling or evaluating, you look at these in totality." Companies exist whose business is valuing sponsorship relationships. When asked how difficult it would be to place a monetary value on the 2016 sponsorship agreement in this case, Metzger responded, "Very—very low degree of difficulty. I mean again this is done every single day in the world of sports marketing and business." Metzger indicated that there are outside consultants throughout the country who could readily provide such information to MFCU.

*Id.,* at *3.

As a final example, the Golden State Warriors even allowed the price of their Global Partnership with FTX to be publicly disclosed when that deal was announced, with sources reporting that "Cryptocurrency platform FTX will pay Golden State Warriors $10 million for global rights."[3]

Thus, as explained below, the Mavs/Voyager Sponsorship Agreement and One Email Exhibit should not be maintained under seal because: (1) this form NBA sponsorship agreement has historically not been treated as "confidential" agreements in the way Defendants claim, as they are NBA form agreements that are usually publicly disclosed, especially when they become the subject of litigation; (2) The information should not be entitled to confidential treatment, as it is not only a form NBA agreement, but Defendants agreed in the Mavs/Voyager Sponsorship Agreement itself that its terms should only be kept confidential until one year after it was terminated, which, according to Defendants, occurred when Voyager Digital declared bankruptcy on July 5, 2022; (3) the Mavs/Voyager Sponsorship Agreement contains only a historic annual price term that is detached from the Mavericks internal pricing components, which are not included in the Mavs/Voyager Sponsorship Agreement; (4) Defendants have already acknowledged (in materials that have been filed in this Action) that Voyager "overpaid" by "millions of dollars" for a "fluffy" deal that ensured

---

[3] https://www.cnbc.com/2021/12/14/ftx-to-pay-golden-state-warriors-10-million-for-global-rights.html (accessed April 25, 2024). To the extent that the full deal terms may not have been made public in that announcement, it is likely due to the same sort of confidentiality provision Defendants cite with their Mavs/Voyager Sponsorship Agreement, which is clearly intended to only remain in force during the life of the agreement (and up to a year after).

Defendant Cuban's public participation in the Voyager/Mavericks partnership and endorsement of Voyager's unregistered products; (5) Defendants have wholly failed to produce *any* evidence to justify why the materials should be maintained under seal, which is fatal to their request as there is no showing to rebut the presumption in favor of public access to documents; and (6) the Court should not allow Defendants' continued abuse of the Stipulated Protective Order (ECF No. 65), which they have done since the outset of this litigation through abusing blanket confidentiality designations for all documents produced in this litigation.

## FACTUAL BACKGROUND

On April 11, 2024, the Defendants filed their Motion for Leave to File Under Seal Unredacted Versions of Defendants' Opposition to Plaintiffs' Motion for Class Certification [ECF No. 256] (the "First Motion to Seal"), which was granted in part and denied in part in an order entered on April 15, 2024 [ECF No. 258]. Specifically, the Court ruled that unredacted portions of the Expert Report of Patrick Conroy shall be filed under seal and that the court denied sealing the remaining documents provided by the Defendant.

The Court's reasoning for denying the request to seal the remaining documents was clearly set out in the order. Specifically, the order stated that "[t]o file under seal, a party must 'set[ ] forth the factual and legal basis for departing from the policy that Court filings are public and that describes the information or documents to be sealed . . . with as much particularity as possible, but without attaching or revealing the content of the proposed sealed material[.]' S.D. FLA. L.R. 5.4(b)(1)." *Id.* The order went on to state that "the Defendants barely tell us what most of these exhibits even are[.]" *Id.*

Despite the conclusory nature of the request, the Court gave the Defendants until April 17, 2024 to file the Renewed Motion for Leave. Plaintiffs conferred in person with Defendants at the deposition of the Mavericks' corporate representative, and confirmed that, while they would not object to any of *Plaintiffs'* documents being filed publicly, they would object to Defendants' continued insistence that the Mavs/Voyager Sponsorship Agreement and the One Email Exhibit be filed under seal. Plaintiffs have maintained the position for the entirety of this litigation that neither of these documents contain material that should be designated confidential, and they should be made available to the public immediately. After the Mavericks deposition, counsel for Plaintiffs further explained to Defendants in email correspondence that they were specifically contesting Defendants' attempt to designate the entire deposition transcript and all exhibits (which included the Mavs/Voyager Sponsorship Agreement) as "Confidential" or "Highly Confidential" pursuant to the Protective Order.

*See, e.g.,* Ex. A. Defendants acknowledged the challenge but have yet to respond substantively to the request to confer, and have to date not substantiated any of their designations.

Defendants filed their Renewed Motion for Leave on April 17, 2024, including their ambiguous certificate and Plaintiffs began working on their Opposition, which would have been due May 1, 2024.  On April 23, 2024, four (4) business days later, the Court entered its Order specifically referring to the Defendants' Renewed Motion to Seal as "Unopposed," and granting Defendants' request. But Plaintiffs strongly opposed the sealing of the Mavs/Voyager Sponsorship Agreement and the One Email. Importantly, Plaintiffs have contested these specific documents, and the over designation of tens of thousands of documents marked "Confidential" or "Highly Confidential" during this litigation.  Plaintiffs contend Defendants have weaponized the Stipulated Protective Order [ECF No. 65] by designating nearly 100% of all documents produced in this case as such.[4]

## LEGAL STANDARD

Federal Rule of Civil Procedure 54 provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Courts have interpreted this provision to allow for the filing of motions for reconsideration with respect to orders that do not constitute final judgments." *Hall v. Sargeant*, No. 18-80748-CIV, 2019 WL 13067291, at *1 (S.D. Fla. June 11, 2019) (quoting *Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*, No. 07-22326-CIV, 2008 WL 11333262, at *3 (S.D. Fla. Apr. 29, 2008)). While Rule 54(b) does not specify a standard for reconsideration, "the Advisory Committee Notes make clear that 'interlocutory judgments . . . are left subject to the complete power of the court rendering them to afford such relief as justice requires.'" *Grupo Televisa v. Telemundo Communs. Grp., Inc.*, No. 04-20073-CIV, 2007 WL 4699017, at *3 (S.D. Fla. Oct. 12, 2007) (quoting FED. R. CIV. P. 54(b), advisory committee's note).

Generally, the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D. Fla. 2002). "Reconsideration of an order is appropriate in cases of '(1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice.'" *Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 504 F.Supp.2d 1307, 1311 (S.D. Fla. 2007) (quoting *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D.

---

[4] Such a Motion will be conducted before Magistrate Reid.

689, 694 (M.D. Fla. 1994)). A motion for reconsideration must clearly "set forth facts or law of a strongly convincing nature to demonstrate to the Court the reason to reverse its prior decision." *Am. Ass'n of People with Disabilities v. Hood*, 278 F.Supp.2d 1337, 1339, 1340 (M.D. Fla. 2003) (citations omitted). As such, a court may reconsider its prior ruling when there has been a "clear and obvious error" and the "interests of justice demand correction." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 6:11-cv-1637-Orl-31DAB, 2013 WL 425827, at *1 (M.D. Fla. Feb. 4, 2013).

## FACTUAL AND LEGAL ARGUMENT

***First***, the Order states the Renewed Motion to Seal was "Unopposed" *See* Order. On the contrary, and as stated in the Renewed Motion to Seal's Certificate of Good-Fath Conference, "[a]s to Exhibits 26 and 43,[5] Plaintiffs' position is that they should be filed publicly, and Defendants' position is that they should be withheld or redacted as set forth above." Additionally, the Order on Defendants' First Motion for Leave [ECF No. 258] did not establish a briefing schedule for the Plaintiffs to respond—it solely mandated that the Defendants, if they chose, file their Renewed Motion to Seal by April 17, 2024, which they did. Plaintiffs were therefore under the impression that Rule 6(d) of the Federal Rules of Civil Procedure applied, meaning they had the standard response time of 14 days (or until May 1, 2024) to file their Opposition. Under these circumstances, Plaintiffs respectfully submit that they were deprived an opportunity to oppose the Motion, and respectfully request the Court grant this motion for reconsideration to give them leave to do so now.

***Second,*** the Defendants have failed to demonstrate the good cause required to overcome the presumption of the public's right to access. The Eleventh Circuit recognizes a "presumptive common law right to inspect and copy judicial records." *United States v. Rosenthal*, 763 F.2d 1291, 1292–93 (11th Cir. 1985). This presumptive right can only be overcome by demonstrating good cause. *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007). In balancing these competing interests, the Court may consider "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Declan Flight, Inc. v. Textron Eaviation, Inc.* No: 5:23-cv-301-GAP-PRL 2015 WL 4847575 at *1 (M.D. Fla. July 28, 2023) (quoting *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007). Importantly, Defendants must support their proffer with *evidence* to establish why these

---

[5] And as confirmed in Plaintiffs' emails on the issue, *see* Ex. A.

materials are entitled to confidential treatment or to be otherwise kept under seal. *PayRange, Inc. v. KioSoft Technologies, LLC*, No. 20-cv-20970, 2021 WL 11726567 (S.D. Fla. Aug. 13, 2021) (denying motion to seal because "Defendants do not support their proffer with evidence, nor do they explain why this information is sensitive or why it would be damaging if publicly disclosed.").

The sole basis the Defendants provide to seal the two exhibits is that their disclosure would provide a "competitive advantage" to the Mavericks' competitors. However, they have never substantiated this claim with any specific demonstration of fact required under Local Rule 5.4(b)(1), which mandates setting forth the factual and legal basis for sealing with as much particularity as possible. Defendants fail to articulate how the release of these documents would cause any specific harm. They offer broad assertions rather than detailed evidence of potential damage, failing to meet the detailed standard required for sealing. *Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 17-23996-CV, 2018 WL 4111216 (S.D. Fla. Aug. 29, 2018) (highlighting the insufficiency of conclusory assertions in meeting the good cause threshold for sealing documents). The Defendants' failure to provide specific reasons is particularly glaring given the Court's previous admonition where it criticized the Defendants for not explaining why entire documents needed to be sealed rather than selectively redacting sensitive portions. *See* Order on First Motion to Seal [ECF No. 258]. That order explicitly required that any future motions to seal "specifically identify the particular parts of the record they wish to be filed under seal and explain why sealing is justified as to each particular part," which the Defendants have failed to do. *Id.*

Additionally, neither the disclosure of the Mavs/Voyager Sponsorship Agreement nor the One Email Exhibit would risk any competitive injury to the Mavericks. As explained above, *see* pp. 2–5, these agreements, including their price terms, which Defendants here have designated "HIGHLY CONFIDENTIAL," are regularly publicly filed and discussed in connection with litigation, even when they are ancillary matters at issue.

Moreover, the information in question pertains to a contract that not only terminated over two years ago but did so under circumstances—Voyager's bankruptcy—that have materially altered the competitive landscape. Given the dramatic changes in the cryptocurrency market, including the bankruptcies of other major players like FTX and Binance.US, it is hard to imagine how any information regarding the deal then could provide a competitive advantage to another entity now. *F.T.C. v. AbbVie Products LLC*, 713 F.3d 54, 69 (11th Cir. 2013) (holding that the passage of time significantly shifted the balance between competitive injury and the value of public access, warranting that the document be made publicly accessible); *see also Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-01370-

BLF, 2020 WL 836737 (N.D. Cal. Feb. 20, 2020) (concluding defendants "failed to establish compelling reasons" for sealing email that "discusse[d] only historical prices that the customer had previously paid for Sumotext's services," which meant "the potential for future harm is not obvious" and that "Defendants have failed to explain how disclosure would cause significant competitive harm to them with any specificity") (citing *DIRECTV, Inc.*, 2017 WL 840379, at *2).

Next, while Defendants refer to the Sponsorship Agreement's confidentiality provision, they do not disclose to the Court that it specifically stated it would only survive at most a year beyond the termination of the Sponsorship Agreement (which here is a year after July 5, 2022). This means that at the time the Sponsorship Agreement was entered into, neither party anticipated a long-term need to protect any of this information. This fact alone questions the necessity of sealing this document indefinitely, as the Defendants request, especially when weighed against the public's interest in matters of significant public concern, such as those involving allegations of unlawful business practices. *Donoff v. Delta Air Lines, In*c., Case No. 18-81258-cv WL 13066867 at *3 (S.D. Fla. Nov. 7, 2019).

**Third**, the presumptive right of public access of documents is heightened when the documents are being used in connection with class actions and in pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith. *Romero v. Drummond Co.*, Inc. 480 F. 3d 1234, 1245 (11th Cir. 2007) (citing *Chicago Tribune v. Bridgestone/Firestone, Inc.* 263 F.3d 1304, 1312 (11th Cir. 2001). To this end, "[a] motion that is 'presented to the court to invoke its powers or affect its decisions,' whether or not characterized as dispositive, is subject to the public right of access." *Romero v. Drummond Co., Inc.* 480 F. 3d 1234, 1245 (11th Cir. 2007) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995).

The documents in question, the Mavs/Voyager Sponsorship Agreement and the One Email Exhibit, have been presented by the Defendants to oppose the Plaintiff's Motion to Certify Nationwide Issue Classes, Pursuant to Federal Rule 23(a), 23(b)(3), and 23(c)(4) and Incorporated Memorandum of Law [ECF No. 231]. Plaintiffs cite to specific provisions in the Sponsorship Agreement (which of course are identical for all class members) in support of Class Certification and just last week, Defendants' again asked their own Mavericks Corporate Representative many questions, about specific provisions of the Sponsorship Agreement to support their defenses against all proposed class members.[6]

---

[6] *See* April 16, 2024 Transcript of Dallas Basketball Limited Corporate Representative Billy Phillips, 271:24–281:12. Plaintiffs do not file the Transcript as Defendants have attempted to impose a blanket

The Eleventh Circuit has emphasized that decisions central to the merits of a case, like class certification, necessitate a higher level of public access due to their potential to significantly influence legal and public outcomes. *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245-46. Moreover, the *Callahan v. United Network for Organ Sharing* decision reinforces this by noting that documents tied to dispositive issues require judicial resolution on the merits, thereby attracting heightened public interest and access *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1362 (11th Cir. 2021)

In this case, much like in *Kelly v. Walt Disney Parks and Resorts*, the Defendants' Renewed Motion to Seal documents used for class certification purposes lacks a thorough justification. *Kelly v. Walt Disney Parks and Resorts,* Case No: 6:22-cv-1919-RBD-DCI 2024 WL 895338 (M.D. Fla. March 1, 2024). There, the court emphasized the defendant's failure to provide an analysis that justified sealing documents critical to class certification because the defendants neglected to discuss or analyze the public's interest in transparency and access. *Id.* at *3. Similarly, here the Defendants focus narrowly on the potential competitive injury they might face, mirroring the competitive injury concerns discussed in *Kelly*, while offering little to no discussion of the public's significant interest in accessing judicial documents related to such a substantive legal matter. *Id.* The court in *Kelly* pointedly criticized the tendency to seal documents based on generic claims of competitive injury, noting:

> If every case involving important business interests that could affect the financial interests and competitiveness of litigant companies were sealed based solely on the parties' agreement or their designation of documents as 'confidential,' federal decisions would become opaque, without precedential value, and meaningless to other litigants, lawyers, the public, and the press. And, on the other hand, if the information at issue is necessary to the Court's decision on the certification issue, the Court may—and very likely will—discuss it in an eventual, publicly filed order. Thus, the confidential information at issue may become public regardless of whether the Court allows the parties to seal their briefing and exhibits.

*Id.* at *4.

Furthermore, as recognized in *Donoff v. Delta Air Lines, Inc.*, class action lawsuits for unlawful business practices are matters of public concern and substantial public interest, which justify leaving documents unsealed *Donoff*, 2019 WL 13066867 at *3. Moreover, "in class actions—where by definition 'some members of the public are also parties to the [case]'—the standards for denying public access to the record 'should be applied with particular strictness." *Reed v. CRST Van Expedited, Inc.*, 8:17-CV-199-T-27CPT, 2018 WL 5077179, at *1 (M.D. Fla. Apr. 17, 2018) (quoting *Shane Grp., Inc. v.*

---

confidentiality designation for the whole Transcript and all exhibits, but it is available to submit to the Court, should the Court request it.

*Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (alteration in original) (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001).

This entire lawsuit centers on the relationship between Voyager and the Mavericks, a relationship that was formalized through this Mavs/Voyager Sponsorship Agreement, with its deal terms further discussed in the One Email Exhibit. These documents are not only central to the case, but are critical for the court's understanding and adjudication of the claims presented. Given their significance, it is nearly impossible for the court to effectively adjudicate the claims in this case without referencing or relying on these documents. Sealing such pivotal information would obscure key aspects of the case, impede the public's understanding of the court's decisions, and diminish the transparency that the Eleventh Circuit has said is vital for maintaining trust in the judicial process.

**Fourth**, public policy strongly advocates for transparency in legal processes, particularly when the underlying issues bear significant implications for future business practices and public welfare. In *F.T.C. v. AbbVie Products LLC*, the court decided to unseal the Tulip FA document recognizing that making this document accessible would further the public's understanding of a legal issue—specifically, whether the reverse payments discussed were anticompetitive under antitrust laws. *F.T.C. v. AbbVie Products LLC*, 713 F.3d 54 (11th Cir. 2013) This decision was underscored by the recognition that the issue "inherently possesses public significance" and has impacted public and legal discourse since the controversy first appeared in court. *AbbVie Products*, 713 F.3d at 71.

In the current case involving the Mavericks and Voyager, similar principles apply. The relationship established through the Mavs/Voyager Sponsorship Agreement and detailed within the One Email Exhibit encompasses activities that are now known to be illegal and fraudulent. By allowing public access to these documents, the court would not only bolster the public's understanding of the legal issues at hand but also facilitate a broader understanding of how such business agreements might skirt or violate established law. The Sponsorship Agreement between Voyager and the Mavericks potentially serves as a case study in how business deals, especially those in emerging—and previously unregulated—markets like cryptocurrency, might pose legal risks or encourage practices that could be deemed unlawful.

**Fifth**, the Defendants have continually weaponized the Stipulated Protective Order by designating almost every document in this case as either "Confidential" or "Highly Confidential," designating nearly 100% of the tens of thousands of documents produced in this case as such. These sweeping designations raise concerns about the defendants' adherence to the principles of good faith and proportionality applying the Stipulated Protective Order. As demonstrated in *Patheon Inc. v. Procaps*

*S.A.*, indiscriminate and overly broad designations of confidentiality can severely handicap the opposing party's ability to litigate effectively and "discovery, trial preparation, and trial are made more difficult and expensive." *Procaps S.A. v. Patheon*, Inc. No. 12–24356–CIV 2015, WL 4430955 at *6 (S.D. Fla. July 20, 2015) (quoting *Arvco Container Corp. v. Weyerhaeuser*, No. 1:08–cv–548, 2009 WL 311125, at *6 (W.D. Mich. Feb. 9, 2009).

In *Procaps*, the court dealt with a scenario where an overwhelming 95% of documents were designated as "Highly Confidential," a percentage deemed not just exceptionally high but presumptively improper. Federal courts, while not establishing a bright-line test for when an such designations exceed reasonable bounds, have condemned such high percentages. For instance, designations of 79% and 99% were labeled as "absurdly high" and a "gross abuse." *Id.*, 2015 WL 4430955 at *6 (citing *THK Am., Inc. v. NSK Co. Ltd.*, 157 F.R.D. 637, 645 (N.D. Ill. 1993); *In re Ullico Inc.*, 237 F.R.D. 314, 317–18 (D.D.C. 2006)). This practice was seen as not only an abuse of the designation process but also as a flagrant and unwarranted action that unfairly burdened the opposing party. The Patheon court underscored that such excessive designations likely do not meet the good faith standard required by stipulated confidentiality orders and mandated a re-review and re-designation of documents to rectify this imbalance with a warning that failure to comply could lead to more severe sanctions. *Id.*, at *11.

Here, the Defendants have clearly abused the designation process throughout this litigation, and Plaintiffs are now taking appropriate steps to ensure that all of these blanket designations are removed and that Defendants finally begin to abide by the protective order they argued so vociferously for. Given that the Defendants have not been forthcoming with the Court as to their claims of why these materials should be entitled to confidential treatment, their complete lack of supporting evidence for their claims, and their demonstrated pattern of abusing designations as a means of hindering Plaintiffs' prosecution of these claims, the Court should not only grant reconsideration and deny Defendants' Renewed Motion to Seal in its entirety, it should also consider whether to sanction Defendants for their repeated misconduct, be it pursuant to Rule 37 of the Federal Rules of Civil Procedure, § 1927, the Court's inherent authority, or otherwise.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant this Motion for Reconsideration, vacate the Order, deny the Renewed Motion to Seal, and any other relief that this Court deems just and proper.

**S.D. Fla. L.R. 7.1 Certification**

Plaintiffs' Counsel certify that they have conferred with Defendants' Counsel in a good faith effort to resolve the issues raised in this Motion. Defendants oppose the Court granting any relief that results in the Mavs/Voyager Sponsorship Agreement or the One Email Exhibit being publicly filed.

Dated: April 26, 2024                                          Respectfully submitted,

**By: /s/ Adam M. Moskowitz**
Adam M. Moskowitz
Florida Bar No. 984280
Joseph M. Kaye
Florida Bar No. 117520
Barbara C. Lewis
Florida Bar No. 118114
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Miami, FL 33133
**Mailing Address:**
P.O. Box 653409
Miami, FL 33175
Office: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com
barbara@moskowitz-law.com

*Co-Counsel for Plaintiffs and the Class*

**By: /s/ Jose M. Ferrer**
Jose M. Ferrer
Florida Bar No. 173746
Desiree Fernandez
Florida Bar No. 119518
**MARK MIGDAL HAYDEN LLP**
8 SW 8th Street, Suite 1999
Miami, FL 33130
Office: 305-374-0440
jose@markmigdal.com
desiree@markmigdal.com

*Co-Counsel for Plaintiffs and the Class*

**By: /s/ David Boies**
David Boies
(Admitted Pro Hac Vice)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Phone: (914) 749–8200
dboies@bsfllp.com

**By: /s/ Stephen Neal Zack**
Stephen Neal Zack
Florida Bar No. 145215
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., Suite 2800
Miami, FL 33131
Office: 305-539-8400
szack@bsfllp.com

*Co-Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was filed on April 26, 2024, with the Court via CM/ECF system, which will send notification of such filing to all attorneys of record

By: /s/ *Adam M. Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280