IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 22-CV-22538-ALTMAN/REID**

DOMINIK KARNAS, *et al*.,

    Plaintiffs,

v.

MARK CUBAN, *et al*.,

    Defendants.

_____/

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS MARK CUBAN'S AND DALLAS BASKETBALL LIMITED D/B/A DALLAS MAVERICKS' MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF LEE REINERS

Defendants MARK CUBAN and DALLAS BASKETBALL LIMITED d/b/a DALLAS MAVERICKS ("the Defendants") submit this Reply Memorandum of Law in Support of their Motion to Exclude Expert Report and Testimony of Lee Reiners (ECF No. 253).

Case No. 22-CV-22538-ALTMAN/REID

## **PRELIMINARY STATEMENT**

The Report should be excluded because it contains improper legal conclusions and does not rely on competent facts and the Reiners Opp. raises no persuasive arguments to the contrary.[1]

First, Plaintiffs' suggestion that the Report be read "as an expert factual analysis" ignores the bald legal opinions that pervade it, and the lack of competent facts that underlie it. The Report violates the FRE because it plainly and directly tells the jury what legal conclusions to reach. *See e.g.* Report at ¶ 3.19 ("EPAs are also notes under *Reves*"). Plaintiffs also confusingly suggest that the Report's legal opinions are acceptable because either the Court will grant summary judgment in their favor, obviating the risk of sharing such opinions with a jury, or that a jury instruction can address it. Neither of these is a serious solution to the Report's problematic statements that attempt to usurp the role of the Court in determining the law and do not "help the trier of fact . . . determine a fact in issue," rendering it inadmissible. FRE 702.

Second, the Reiners Opp. does nothing to justify the Report's reliance on unsupported allegations and incompetent facts. The Reiners Opp. gives the misimpression that the Report relies on actual documents from Voyager or its application or website. This is simply false. A close review of the Report and Mr. Reiners' testimony shows a near-exclusive and improper reliance on allegations in the Second Amended Complaint ("SAC") and other complaints. But allegations are not facts, and the Report's and Mr. Reiners' blind reliance on them (*see* Reiners Mot. at 8) is fatal to the Report under FRE 702. Further, the only three primary-source documents that the Report cites, defunct or unhelpful third-party websites, do not support *any* of the facts in the Report.

Third, Plaintiffs' attempt to avoid a *Daubert* challenge at this stage by claiming the Report is not "critical" to the Cert. Motion does not withstand scrutiny. Plaintiffs' Cert. Motion repeatedly relies on and cites to the Report, and unless Plaintiffs withdraw the Cert. Motion's reliance on the Report, or their Cert. Motion entirely, or the Court denies certification, the Report must be evaluated under the FRE and *Daubert* as part of the certification inquiry.

---

[1] "Reiners Motion" or Mot. and "Reiners Opp." refer to Defendants' Motion to Strike the Reiners Report (the "Report") (D.E. 253) and Plaintiffs' Opposition thereto (D.E. 267), respectively. Cert. Motion and Cert. Opp. refer to Plaintiffs' Motion for Class Certification (D.E. 231) and Defendants' Opposition thereto (D.E. 265), respectively. "Report" refers to Mr. Reiners' Report, attached as Ex. A to the Reiners Motion (D.E. 253-1).

1

Finally, the Reiners Opp. egregiously mischaracterizes the issues before the Court when it states that the "sole question here is whether there are common issues and questions that can be answered on a class-wide basis." Plaintiffs would have the Court stick its head in the sand and disregard any analysis of the many issues, which will be present at trial, that require individualized proof. These ostrich tactics violate Rule 23 and are not a path to certification. As this Court has held (*see infra* at 9-10), to assess predominance at this stage it must evaluate the issues that will be present at trial and determine if there are sufficient issues susceptible to classwide proof or if individual issues would overwhelm a trial and render it unworkable. The Cert. Opp. shows that individual issues will predominate, and that the proposed class definition is not workable, and neither the Report nor any other arguments or evidence from Plaintiffs prove otherwise.

## ARGUMENT

### I. The Report Contains Improper and Unhelpful Legal Opinions

Plaintiffs attempt to justify admission of Mr. Reiners' legal opinions by asserting that the Report does not "definitively say that the Voyager EPAs and VGX are investment contracts or notes." Reiners Opp. at 1. This is just plain wrong. Among many examples of bald legal conclusions, ¶ 3.19 of the Report states "EPAs are also notes under *Reves v. Ernst & Young*, 494 U.S. 56 (1990)." Similarly, in referencing elements of the *Howey* test, Report ¶ 3.05 states, "EPAs have both 'horizontal commonality' and 'vertical commonality.'"[2] These conclusions are precisely like the legal conclusions that were excluded in the cases Defendants cited in the Reiners Mot. and must be excluded for the same reasons. *See Apple Inc. v. Corellium, LLC*, 2020 WL 5417197, at *4 n.2 (S.D. Fla. July 30, 2020) (excluding opinion, among others, that "the Corellium product does not fit the criteria set forth in Section 1201(b)(1)(A), (B), or (C)"); *Romano v. John Hancock Life Ins. Co.* (USA), 2022 WL 1447733, at *7, (S.D. Fla. May 9, 2022) (excluding opinion that "I would conclude that a prudent administrative fiduciary would or should, more likely than not conclude that the Defendant had committed a prohibited transaction."); *see also Omar v. Babcock,*

---

[2] *See also* ¶ 3.24 ("Applying the *Reeves* 'family resemblance' analysis to the Earn Program reveals the presence of a note."); ¶ 1.01 ("I conclude that the facts and circumstances surrounding all offers and sales of EPAs and VGX support the elements of an investment contract according to the *Howey* test articulated by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)."); ¶ 7 ("THE VGX TOKEN ALSO BEARS CHARACTERISTICS THAT MEET THE ELEMENTS OF THE *HOWEY* TEST."); ¶ 3.09; Ex. D at 91:7-14 ("I believe all EPAs are investment contracts.").

177 F. App'x 59, 63 n.5 (11th Cir. 2006) (affirming exclusion of testimony that "defendants consciously disregarded known signs of abuse").

Plaintiffs also attempt to justify admission of the Report by suggesting that it merely asserts that EPAs "support the elements of an investment contract" but does not conclude that the EPAs "are investment contracts." Reiners Opp. at 10. In addition to the fact that the Report does more than this as shown above, Plaintiffs fail to refute that this is a distinction without a difference. *See* Reiners Mot. at 6-7. Courts reject artful attempts to admit legal opinions because if an expert "track[s] the language of the applicable statute' or uses a term that 'has specialized legal meaning that is more precise than the lay understanding of the term,' the testimony is an impermissible legal conclusion." *See id.*, citing *Cordoves v. Miami-Dade Cnty.* 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015).[3] The Report does indeed reach "conclusions on the ultimate legal effect of defendants' behavior." Reiners Opp. at 11 n.17. The Report impermissibly opines that Defendants sold assets that "constituted the investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others," an impermissible (and wrong) legal conclusion that Defendants sold investment contracts. Report at ¶ 8.06.

Plaintiffs' suggestion that the Report may embrace an ultimate issue under FRE 704 (Reiner Opp. at 9) again fails to recognize the distinction between factual and legal conclusions. FRE 704 "does not lower the bars so as to admit all opinions" and the FRE still prohibit "opinions which would merely tell the jury what result to reach." FRE 704 Adv. Comm. Notes. Although "an expert may testify as to his opinion on an ultimate issue of fact . . . [a]n expert may not [] merely tell the jury what result to reach [and] may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir. 1990) *see also TOA Trading LLC, v. Mullen Auto., Inc*. 2023 WL 8476462, at *5, (S.D. Fla. Nov. 27, 2023) ("while an expert may testify regarding his opinions on an ultimate issue of

---

[3] The two cases Plaintiffs cite where courts admitted testimony about the *Howey* test are inapposite, out-of-circuit and concern experts, unlike Mr. Reiners, with practical securities law expertise. *See SEC v. Lowery*, 633 F. Supp. 2d 466, 481-84 (W.D. Mich. 2009) (allowing testimony from expert who had "requisite training, education and experience to testify as an expert on this issue, that he reviewed sufficient documents to intelligently apply general principles to the facts of this case, and that his reasoning is sound and persuasive"); *People v. Lawrence*, 487 P.3d 1066, 1074 (Colo. App. 2019) (allowing testimony from "Colorado's Securities and Exchange Commissioner [who] was qualified as an expert in securities law" and testified "about materiality only generally").

fact, he 'may not testify as to his opinions regarding ultimate legal conclusions'") (quoting *US v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009); *see also Romano*, 2022 WL 1447733, at *9 (same). That is exactly what the Report does and is why it must be excluded. *See Montgomery*, *infra*.

Plaintiffs also ignore their burden of establishing the admissibility of the Report by suggesting that it could either be shielded from a jury or presented with a jury instruction. *See* Reiners Opp. at 8. Even if Plaintiffs could assume their way past certification, it is their burden to establish the Report's admissibility at summary judgment and trial. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty*., 402 F.3d 1092, 1107-14 (11th Cir. 2005) ("proponent of the expert testimony [bears burden on] admissibility" and affirming exclusion of expert report at trial); FRCP 56(c)(2) (party may object to material that would not be admissible). The Federal Rules of Evidence still apply at these stages, and proposing a jury instruction at this stage or suggesting that the Court would not be inappropriately swayed by Mr. Reiners' opinions on the law do not address the core problems that negate the Report's admissibility.

Lastly, Plaintiffs attempt to salvage Mr. Reiners' Report for the limited purpose of providing "background information on the legal landscape of securities regulation." But the Report does not cover this topic and, even if it did, Mr. Reiners would not be qualified to do so. *First*, the Report does not provide any general overview of the applicable securities statutes and their purpose. After covering Mr. Reiners' background and an overview of EPAs in Sections 1 and 2, the Report reviews "Legal and Regulatory Issues with Cryptocurrency Interest Accounts," but this consists of merely Mr. Reiners' analysis of the EPAs under the *Howey* and *Reves* tests. Report at P. 5-10. Sections 4-8 contain Mr. Reiners' summary of recent non-precedential regulatory actions and case law concerning cryptocurrencies, Mr. Reiners' attempts to bolster the arguments in Plaintiffs' Opposition to motion to dismiss, his analysis of VGX under the *Howey* test, and a general conclusion. *Id*. at 10-23. The Report is "in essence [] another legal brief [that] does not assist the [c]ourt . . . but rather presents a legal argument."[4] The Report cannot be admitted to summarize and explain the securities laws because the Report does no such thing.

*Second*, even if it did contain an overview of the securities law, Mr. Reiners would not be qualified to provide it. Mr. Reiners is not a lawyer, not a law professor, nor even a professor on

---

[4] *RCTV Int'l Corp. v. Rosenfeld*, No-13-23611-CIV, D.E. 194 at 3-5 (S.D. Fla. Sept. 28, 2015).

Duke's faculty in any subject matter. *See* Ex. D at 38:10-14, 46:5-49:24. Mr. Reiners has 6 years of experience working at the Federal Reserve, and 7 years of experience as a lecturer on economic and policy issues, but no formal education, training or professional experience in the federal securities laws. *See id*. at 26:14-16; 38:10-14; 46:5-6 ("Do you have a degree in anything relating to the federal securities laws? A. No."; "Q. Are you a law professor at Duke? A. No."). In each case Plaintiffs cite where courts allowed expert opinion on complex legal regimes (Reiners Opp. at 11-12) the proffered expert was a lawyer with significant experience practicing in or teaching the relevant laws.[5] Unlike those experts, Mr. Reiners simply lacks the qualifications to provide anything helpful to the finder of fact with respect to the federal securities laws, and his Report should be excluded for this reason as well.

## II. The Report Relies on Allegations and Other Complaints Rather Than Competent Evidence

The Report also should be excluded because it does not rely on competent evidence or "sufficient facts or data" under FRE 702. *See* Reiners Mot. at 7-9. Defendants rely on *Mosby*, *Yellen*, *Rowe*, *and Wasilewski* for this argument, but the Reiners Opp. ignores these cases and does not dispute that FRE 702 requires courts to exclude expert opinions that are based on allegations and other insufficient and unreliable facts like the Report.

The Reiners Opp. does, however, give the misimpression that Mr. Reiners reviewed, analyzed and relied on Voyager's documents as part of his "expert factual analysis of the EPAs and VGX." This is false, as both Mr. Reiners' Report and his testimony make clear that he did not.

First, Mr. Reiners' Report specifically admits that he did not review any Voyager-produced documents for purposes of his analysis of EPAs. Section 2 of his Report contains his "Overview of EPAs" and Mr. Reiners states in paragraph 2.01 that his "analysis of EPAs is based upon

---

[5] *See U.S. v. Offill*, 666 F.3d 168, 174-77 (4th Cir. 2011) (admitting testimony of well-established legal scholar, attorney and law professor, and Commissioner of Texas State Securities Board); *Bancor Grp. Inc. v. Rodriguez*, 2023 WL 6310233, at *9 (S.D. Fla. June 13, 2023) (admitting testimony of internationally recognized lawyer and law firm partner with relevant practical experience); *U.S. v. Lundergan*, 2019 WL 3804239, at *1-4 (E.D. Ky. Aug. 12, 2019) (admitting testimony of former Chairman of FEC); *U.S. v. Bilzerian*, 926 F.2d 1285, 1294-95 (admitting testimony of renown legal scholar and professor); *U.S. v. Coffman*, 574 F. App'x 541, 52 (6th Cir. 2014) (admitting testimony from securities law professor); *see also Lowery,* and *Lawrence, supra* at n.3; compare *Maiz v. Virani,* 253 F.3d 641, 666-68 (11th Cir. 2001) (non-lawyer could only "opine on forensic accounting issues" not legal standards); and *U.S. v. Fogg*, 652 F.2d 551, 556-57 (5th Cir. 1981) (accountant can testify about his understanding of tax laws but not legal matters).

5

information included in the Plaintiffs' Section Amended Complaint (SAC), the Commodity Futures Trading Commission's ("CFTC") October 12, 2023, complaint against former Voyager CEO, Stephen Ehrlich, and other publicly available sources." This section of the Report cites only to the SAC, the CFTC complaint, and article about Mr. Ehrlich from CoinGeek, and an FTC press release, the latter two of which are the public sources referred to above. Importantly, ¶¶ 2.03, 2.04 and 2.05 contain assertions about Voyager's offering of EPAs and how Voyager generated rates of return and paid rewards, but all of these assertions come from allegations in the SAC, and there are no references to any documents produced by Voyager or by any party in this litigation.[6]

Mr. Reiners also admitted in his deposition that he did not review information directly from Voyager apart from allegations in the SAC and CFTC complaints. Mr. Reiners specifically said he did not review documents produced by the parties.[7] Mr. Reiners also confirmed that he did not review Voyager's website or application. Ex. D at 99:14-24 ("the document itself is not something you've looked at? A. Not to my recollection.").[8] When asked substantive questions about how to purchase an EPA from Voyager Mr. Reiners said that his "understanding on this question is informed by the [SAC], as well as the New Jersey Bureau of Securities' cease and desist order" (*id*. at 60:4-12), not his *actual* experience using the platform or his review of *actual* documents reflecting what users during the relevant period would have seen. When shown a screenshot from Voyager's website or application he confirmed that he had not seen it "in this form [but that] some of this information was included in other Voyager complaints." *Id*. at 99:14-20.

---

[6] FRCP 26(a)(2)(B)(ii) requires expert reports to disclose "facts or data considered by the witness" and footnotes are how the Report discloses this. *See also* Committee Notes on Rules—2010 Amendments ("the intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients.").

[7] Ex. D at 13:21-14:5 (Q. You mentioned reviewing two complaints, the motion to dismiss, the cease and desist order and other public documents. I'll represent to you that parties in this matter have made productions of confidential documents pursuant to discovery in this matter. Did you review any of those documents that were produced by any of the parties? A. No.").

[8] *See also* Ex. D at 79:21-80:22 ("Q. Did you review any documentation from the Voyager website or the Voyager application in your determination as to whether or not a specific token on the Earn Program Account is a security? . . . A. . . . I did not download the app, so I have not reviewed anything on the app. . . . I do not recall reviewing anything that Voyager produced that provided a glimpse into their thought process around which tokens would be lent out"); and 95:2-4 ("Q. Did you read from the Voyager website Voyager's terms of service; yes or no? A. I don't recall.").

Despite this, the Reiners Opp. claims that Mr. Reiners reviewed Voyager's website, white paper, marketing materials and terms of use solely for purposes of his analysis of the VGX token—but a close review of the Report shows that this is not true. The Reiners Opp. cites the Report at 7 for the claim that he reviewed Voyager's website, but the paragraph this refers to (¶ 3.13) shows that the Report relies on allegations "provided in the SAC and the CFTC complaint" for this point, and not Voyager website, or even a paragraph of the SAC. Similarly, Reiners Opp. at P. 6 refers to the Report at 21, which has three citations (footnotes 67-69) that purportedly support the assertions about the operation of the VGX token and contain the Voyager White Paper. But these documents simply are not there or are not competent evidence. Footnote 67 cites to a page on Coinbase's website concerning VGX—it is inadmissible hearsay, it links to Voyager webpages that are not accessible, and in this form it cannot support any competent facts from the relevant period. *See* Ex. A. Footnote 68 cites to a Voyager website, which currently only contains information about the Voyager bankruptcy proceeding, and not anything in the Report. *See* Ex. B. And footnote 69, which supposedly cites to Voyager's White Paper, cites to a part of Voyager's website that is not currently accessible. *See* Ex. C. [9] These citations do not support *any* asserted facts and like allegations in a complaint, they are not competent evidence or "sufficient facts or data" that could support a reliable expert opinion. *Mosby v. Railey*, 2005 WL 8159837, at *3 (M.D. Fla. July 29, 2005) (excluding report for this reason under FRE 702).[10]

The failure of the Report to identify the documents it relies on also frustrates any effort to cross-examine Mr. Reiners about them.[11] As shown above, a reader of the Report looking for the

---

[9] *See* Ex. D at 61:16-22 (A. "I went to the Voyager website after the bankruptcy. It may have been through the Wayback Machine, though. I'm not sure if the website is still operating on its own.").

[10] The Reiners Opp. also suggests that the Report is reliable because it cites a New Jersey regulator's Cease and Desist Order. Opp. at 7. But a regulator's filings in a non-adversarial proceeding are only allegations and are not competent facts. *See generally Lipsky v. Commw. United Corp.*, 551 F.2d 887, 894 (2d Cir. 1976) (federal agency filing for which "there was no hearing or rulings or any form of decision on the merits by the district court" is not evidence); *see also* Reiners Mot. at 7-8 ("allegations are not the proper foundation for expert testimony.").

[11] Plaintiffs cite *Schwartzben v. Nat'l Fire & Marine Ins. Co.*, 2023 WL 2931410, at *3 (S.D. Fla. Apr. 13, 2023) for the point that factual disputes "are best addressed on cross-examination." But unlike the report in that case, which relied on an expert's "visual inspection" and contained "the facts that he relied upon to reach his conclusions" the Report here does not even adequately identify the documents on which it is based, which frustrates any effort to cross Mr. Reiners about them.

version of the Voyager White Paper that it relied on cannot find it in evidence, and at this point cannot even find it on the internet. *See generally Nunez v. Coloplast Corp.*, 2020 WL 2315077, at *6 (S.D. Fla. May 11, 2020) (granting motion to exclude because "it is unclear what Dr. Molavi can offer the jury that is elevated above [her] understanding of the facts of the case."). The Report's reliance on allegations from the SAC rather than competent facts would frustrate any attempt at cross examination because it does not identify the facts upon which it is based. Like the *Mosby* court found, expert reports that rely on allegations are neither reliable nor helpful to the finder of fact and must be excluded under the federal rules lest lawyers masquerading as experts testify before the jury as to their conflicted opinions. *See also Wasilewski v. Abel Womack, Inc.*, 2016 WL 183471, at *3 (D. Conn. Jan. 14, 2016) (same).

**III.     Plaintiffs' Motion for Class Certification Relies On Mr. Reiners' Report**

Curiously, and incorrectly, the Reiners Opp. suggests that Plaintiffs "did not rely on [the Report] in support of certification" and instead that they only "previewed [Mr.] Reiners' expert analysis in their certification motion for clarity and for full disclosure." Reiners Opp. at 2 (emphasis added).[12] The truth, of course, is that Plaintiffs cite the Report throughout the Cert. Motion, and indeed that is exactly why Defendants seek an order excluding the Report and his testimony from consideration as part of the Cert. Motion. *See* Reiners Mot. at 9. For example, the Cert. Motion relies on ¶¶ 1.02 and 8.06 of the Report as the sole citations that support the claim that the "security question" and the "solicitation question" are "common and predominant issues capable of swift resolution by this Court on a class-wide basis . . . making class treatment appropriate." Cert. Motion at 7-8; *see also id.* at 14 and 19 (citing the same paragraphs). The Cert. Motion also cites the Report for background facts regarding what Voyager did with EPA assets, and what Voyager told its customers with respect to the VGX token. Cert. Motion at 5.[13]

Having cited the Report in their Cert. Motion and filed it as an exhibit thereto, Plaintiffs cannot avoid a *Daubert* analysis by deeming it unnecessary or not "critical" to certification. Opp.

---

[12] *See also* Reiners Opp. at 3 (Reiners' opinion "is not 'critical' to deciding certification"); and at 4 ("no need to engage [in a] *Daubert* analysis"). Plaintiffs do not, however, dispute that Mr. Reiners admitted this his Report does not address issues relevant to certification. *See* Reiners Mot at 3-4.

[13] Indeed, all facts asserted in the Cert. Motion cite to the SAC, the Report, the declarations of the proposed class representatives, and three other docket entries reflecting Voyager's testimony and the Florida residents that used the MAVS100 code. *See* Cert. Motion at 5-8.

8

at 4. In each case that Plaintiffs cite for this argument, the court vacated or declined to grant certification, in whole or in part, and found it unnecessary to resolve *Daubert* motions as to plaintiffs' experts because it did not grant plaintiffs' motion for certification in whole or in part.[14] Plaintiffs even cite *Short Squeeze*, which supports *Defendants'* certification arguments. *See* Cert. Opp. at 11, 14 and 15. Defendants certainly agree that there are persuasive, independent reasons to deny certification that do not relate to the Report, which denial would render moot the Reiners Mot., and the Court should do so for the reasons set forth in the Cert. Opp.[15] But in any event, the Court should not rely on the Report for certification or for any future motions as set forth above.

### IV. Plaintiffs Incorrectly Describe the Inquiry for Class Certification

Plaintiffs also incorrectly suggest that "the sole question here is whether there are common issues and questions that can be answered on a class-wide basis." Reiners Opp. at 3; *see also id*. at 2 (same). This is flat out wrong and betrays a stunning misunderstanding of the requirements of Rule 23. Focusing on the predominance issue,[16] as this Court has recognized in prior cases, a "proposed class is not suitable for certification if, 'after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims.'"

---

[14] *See In re Jan. 2021 Short Squeeze Trading Litig.*, 2023 WL 9035671, at *37, (S.D. Fla. Nov. 13, 2021) ("the Court's denial of class certification renders moot Robinhood's challenges to Dr. Adam Werner's testimony on market efficiency and damages."); *Noel v. MHC Heritage Plantation, LLC*, 2023 WL 2633328, (S.D. Fla. Feb. 24, 2023) (denying certification because "several different individualized factual and legal inquiries will be required to evaluate Plaintiffs' claims in light of the alleged facts and affirmative defenses"); *Las Olas Co. v. Florida Power & Light Co*., 2020 WL 9874296, at *8 (Fla. 17th Cir. Ct. Dec. 14, 2020) (expert report concerned damages but applicable case management order "specifically provides that 'Daubert motions' [as to damages] will be considered only at the second phase of this case, and only if the Court first certified the requested liability class"); *Local 703 I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp*., 762 F.3d 1248, 1258 n.7 (11th Cir. 2014) (finding *Daubert* motion moot because court relied on expert report only for materiality, which was precluded from consideration at this stage).

[15] As the Cert. Opp. explained, certification should be denied because individual issues predominate, and the proposed class is overbroad, among other reasons, with respect to the users who deposited into EPAs assets that were not interest-bearing, or that were not promoted by Defendants. These arguments relate to the proposed "security class", and it is incorrect to suggest that Defendants conceded anything relating to this proposed class. *See also* Cert. Opp. at n.38.

[16] The Court must also address the superiority prong of Rule 23(b), and the problems with issue certification and the proposed class definition as set forth in the Cert. Opp. ECF No. 265 at 24-30.

9

*Verbal v. Tiva Healthcare, Inc.*, 2021 WL 9527858, at *7 (S.D. Fla. Aug. 19, 2021) (*Altman, J.*) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)).[17]

Plaintiffs' position is apparently that the Court should hide its head in the sand and decide on a classwide basis only 1) whether the EPAs and VGX are securities, and 2) "whether Defendants' conduct amounts to 'solicitation,' [but] not whether it was 'successful solicitation'" nor any of the other elements of Plaintiffs' claims, which presumably can be ignored until proceeding with tens of thousands of individualized trials. Reiners Opp. at 4 n.8; *see also id*. at 2 and n.4. Adopting these ostrich tactics would violate Rule 23. The Court's task is to look holistically at what trial would entail to determine if common issues predominate, or if individual issues would overwhelm a trial and render it unworkable. *See Verbal, supra*.[18] As Defendants' Cert. Opp. showed, the issues of "successful solicitation," affirmative defenses and damages all require individualized proof, Plaintiffs' proposed class is impermissibly broad and not ascertainable, and for those reasons class certification should be denied.[19]

## CONCLUSION

For the reasons state above, Defendants respectfully request that the Court exclude Mr. Reiners' Report in its entirety and his testimony from consideration as part of Plaintiffs' Motion for Class Certification due to its failure to comply with Fed. R. Evid. 702.

---

[17] *See also Klay,* at 1255 (relying on *Perez v. Metabolife Int'l, Inc*., 218 F.R.D. 262, 273 (S.D. Fla. 2003)) (denying certification in part because "any efficiency gained by deciding the common elements will be lost when separate trials are required for each class member in order to determine each member's entitlement to the requested relief.") (cleaned up).

[18] *See also Brown v. Electrolux Home Prods., Inc.,* 817 F.3d 1225, 12335 (11th Cir. 2016) (after identifying "parties' claims and defenses and their elements . . . [the] court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial. Common questions are ones where the same evidence will suffice for each member and individual questions are ones where the evidence will vary from member to member. . . . After identifying the common and individual questions, the district court should determine whether the common questions predominate over the individual ones. . . . District courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.") (cleaned up) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

[19] Defendants decline to return the Reiners Opp.'s *ad hominem* and irrelevant attacks on counsel.

10

Respectfully submitted this first day of May 2024.

Respectfully submitted,

*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:     (305) 789-9201

*-and-*

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@lawsonhuckgonzalez.com

LAWSON HUCK GONZALEZ PLLC
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (305) 441-2299
Telecopier: (305) 441-8849

*-and-*

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email: sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email: rwolkinson@brownrudnick.com

DANIEL L. SACHS, ESQ.
*Pro Hac Vice*
Email: dsachs@brownrudnick.com

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
Telephone (202) 536-1755

*-and-*

JONATHAN D. WHITE, ESQ.
*Pro Hac Vice*
Email: jwhite@brownrudnick.com

**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 209-4903

*Attorneys for Defendants Mark Cuban and Dallas Mavericks Limited d/b/a Dallas Mavericks*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2024, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via the Court's CM/ECF which will send notification of such filing to all attorneys of record.

*/s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Fla. Bar No. 607363
Email: cknight@fowler-white.com