# EXHIBIT 1
# (ECF No. 256-26)

# Plaintiffs' Exhibit 7

DocuSign Envelope ID: 241C584B-977C-47A4-8F6E-F973B8E01445



**DALLAS MAVERICKS**
1333 N. Stemmons Fwy. Suite 105 Dallas, Texas 75207

### SPONSORSHIP AGREEMENT

This Sponsorship Agreement ("**Agreement**"), made and entered into as of the 29th day of October 2021 (the "**Effective Date**"), is by and between Voyager Digital Holdings, Inc. (hereinafter called "**Sponsor**"), and Dallas Basketball Limited, a Texas limited partnership and doing business as the Dallas Mavericks (hereinafter called "**Club**"). Sponsor and Club may each be referred to as individually as a "**Party**" and collectively as the "**Parties**".

### PREMISES

WHEREAS, Club owns and operates a professional basketball team competing in the National Basketball Association ("**NBA**") operating under the name of the "Dallas Mavericks" ("**Mavericks**") and has the ability and is authorized to provide certain sponsorship rights with respect to the Mavericks; and

WHEREAS, Sponsor desires to become a sponsor of Club and to obtain certain other benefits from Club as hereinafter provided.

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements contained herein, the parties hereto, intending to be legally bound, do hereby represent, warrant, covenant and agree as follows:

### 1. **SPONSORSHIP PACKAGE:**

1.01 SPONSORSHIP PACKAGE. Sponsor agrees to purchase from Club, and Club agrees to provide Sponsor, a sponsorship package, subject to the limitations contained herein, as detailed on Exhibit I of this Agreement ("**Sponsorship Package**"). Exhibit I is attached hereto and incorporated herein in all respects.

### 2. **TERM AND INVESTMENT SCHEDULE:**

2.01 TERM. The Term of this Agreement shall be set forth on Exhibit II of this Agreement unless sooner terminated in accordance with the provisions hereof. Exhibit II is attached hereto and incorporated herein in all respects. Club may terminate the rights provided hereunder at any time during the Term if Sponsor shall not have timely paid all undisputed amounts due to Club and not cured such nonpayment within the cure period set forth in Section 11.01 below. Any such termination by Club shall not operate as a waiver of any of Club's rights to damages for Sponsor's breach.

2.02 INVESTMENT FEE. Sponsor agrees to timely pay to Club the sums detailed in Exhibit II of this Agreement ("**Investment Fee**"). Club shall invoice Sponsor at least thirty (30) days prior to a payment due date (except with respect to the first payment).

2.03 NET FEES. All sums paid by Sponsor pursuant to this Agreement

In addition, all taxes, duties and other charges of any nature (except for federal, state or local taxes imposed on the income of the Club) that may be levied, assessed or otherwise imposed in connection with this Agreement by any governmental authority shall be borne by Sponsor and shall, in such instance, not be deducted from the amounts payable to Club

120019604

**EXHIBIT**

7

hereunder. Sponsor shall be responsible for the remittance of any such taxes to the appropriate governmental authorities.

## 3.   **REPRESENTATIONS AND WARRANTIES:**

3.01    Each of the Parties hereto represents and warrants to the other that (i) it has the full exclusive right and authority to enter into this Agreement; (ii) all necessary corporate or other action has been taken to make this a fully binding and enforceable contract; (iii) when executed, this Agreement will constitute a legal, valid and binding obligation of such party, enforceable in accordance with its terms; and (iv) such party's business operations and performance hereunder shall comply with all applicable statutes, government rules, regulations, permits, codes and laws of any type (collectively, "**Laws**"), including Sponsor's offerings of tradable digital products, NFTs and other offering that Sponsor maintains.

3.02



3.03    Sponsor hereby represents, warrants and covenants as to the following:

a.      All tokens, cryptocurrencies and other tradeable digital products offered or promoted by Sponsor (including but not limited to non-fungible tokens ("**NFTs**") collectively, "**Tokens**") and all other offerings of sponsor by Sponsor ("**Other Offerings**") are in compliance with all applicable statutes, rules, regulations, permits, codes, regulatory guidance and laws of any type (collectively, "**Laws**") and Sponsor shall use its best commercially reasonable efforts to ensure that all Tokens and Other Offerings remain in compliance with Laws throughout the duration of the Term. Without limiting the foregoing, Sponsor operates, and shall continue to operate, in compliance with all anti-bribery, anticorruption, anti-money laundering Laws, and all trade and economic sanctions programs administered by the Office of Foreign Assets Control of the U.S. Department of Treasury ("**OFAC**") and any similar non-U.S. government body, and has and operates under policies, procedures and practices that that are in compliance with such Laws.

b.      Sponsor is authorized to conduct its business and make available the Tokens and Other Offerings within the United States. Without limiting the foregoing, Sponsor hereby represents and warrants that no Tokens or Other Offerings constitute securities under applicable Laws.

c.      All applicable licenses, registrations and permits required by any Law for Sponsor to obtain in order to issue, distribute, exhibit, trade, conduct or exploit any Token and Other Offerings have been properly obtained by Sponsor, including, without limitation, in the United States.

120019604

2

d.       None of Sponsor, its affiliates or any of their respective employees or agents is or has been the subject of, any internal, governmental or regulatory investigation or review regarding any alleged or possible violation by Sponsor of any securities, anti-bribery, anti-corruption or anti-money laundering law, rule or regulation or any trade or economic sanctions program administered OFAC or any similar non-U.S. government body.

e.       All necessary third-party consents and authorizations required to be acquired by Sponsor concerning tradable digital product, NFTs, and all elements therein other than team intellectual property/retired player attributes, have been secured.

f.       Sponsor shall not promote any specific cryptocurrency in connection with the Sponsorship Package, the rights provided under this Agreement, or Club.

g.       Sponsor acknowledges that Club is relying solely on Sponsor to ensure the legality of all advertising, marketing, promotion undertaken by Sponsor (including but not limited to the Sponsorship Package and any Make Goods) hereunder and all Sponsor Content included therein. This Agreement and all marketing and promotional activities to be distributed, exhibited, conducted or otherwise exploited by Sponsor hereunder shall comply with all Laws.

Upon the occurrence of any event that calls into question the legality of any Token or Other Offering (e.g., an adverse court decision, a government agency opinion, a civil lawsuit or a subpoena from a law enforcement agency) of which Sponsor has knowledge, Sponsor shall immediately provide written notice of such event to Club and the NBA.

Without limiting any other rights or remedies Club or the NBA may have under this Agreement, either Club or the NBA may terminate this Agreement by written notice given to Sponsor at any time in the event that (y) Sponsor materially breaches or violates any term of this Section 3.03(a)-(g) and does not cure such breach within ten (10) days of notice from Club, or (z) Sponsor or any Token or Other Offering  (i) is deemed by a court of law or any regulatory, enforcement, or governmental agency to be in violation of any Law, (ii) becomes the subject of any government complaint or enforcement action, or (iii) may have a materially negative effect on the business, reputation or the public's perception of Club or the NBA, as determined in the Club's and/or NBA's good faith, reasonable discretion.

3.04



120019604

CONFIDENTIAL                                                                                       MAVSCUBAN00002842

4.  **BROADCAST RIGHTS:**

4.01    Notwithstanding anything herein to the contrary, Club and the NBA shall be regarded for all purposes, including without limitation for purposes of federal copyright law, as the sole holder of all rights in and to all broadcasts of games as to which Sponsor may participate hereunder with all rights and obligations resulting there from, and shall have the exclusive right to authorize, consent to and control any and all replaying, rebroadcast, or other use of such broadcasts/telecasts.  Such authorization or consent of Club and the NBA must be in writing. Unless expressly provided for in Exhibit I, Sponsor shall have no right to participate in any broadcasting of games.

5.  **NBA AUTHORITY:**

5.01    This Agreement and Sponsor's rights hereunder are subject to the Constitution and By-Laws and all rules, regulations and agreements of the NBA as they presently exist or as they may, from time to time, be entered into, amended or adopted (**"NBA Rules"**).

5.02    Sponsor acknowledges that this Agreement (and any permitted international marketing/activity in connection herewith, including any applicable marketing plan) is subject to prior approval by the NBA under the NBA Rules and shall not be effective or enforceable until it is expressly approved by the NBA.  Sponsor shall not exercise any rights hereunder or receive any benefits under this Agreement until this Agreement is expressly approved by the NBA.

6.  **RIGHTS OF CLUB/COMPARABLE SERVICE:**

6.01    Notwithstanding anything in this Agreement to the contrary, in the event the Club (a) is prevented            from providing

, the Sponsorship Package (including but not limited to the broadcast or display any promotional material or advertisement or announcement) or portion thereof which are expressly provided for, if necessary, on Exhibit I of this Agreement, or to cause to be interrupted any of the same while in progress, then the Club shall notify Sponsor at the earliest possible time stating the reason for such interruption or cessation.  If for any reason (except for Force Majeure reasons provided in Section 10 below)

6.02



CONFIDENTIAL                                              MAVSCUBAN00002843



## 7. GOVERNMENTAL REGULATIONS:

7.01    This Agreement is subject to the terms of licenses held by radio and television broadcasters of Club's basketball games, and to applicable federal, state, and municipal laws, regulations and decisions either presently in existence or hereafter enacted, made or enforced, including without limitation regulations and actions of governmental administrative agencies and commissions.

## 8. ADVERTISING:

8.01    Any advertising copy and/or radio and television spots (collectively "**Advertising Copy**") which are expressly provided for on Exhibit I of this Agreement shall be produced by Sponsor at Sponsor's sole cost. The design, layout and content of all Advertising Copy to the extent provided for on Exhibit I shall be subject to the prior approval by Club, such approval not to be unreasonably delayed or withheld. Club shall not be responsible for any errors in the Advertising Copy including, without limitation, design, text or printing errors. Sponsor is solely responsible for submitting any Advertising Copy to Club on time and in reproducible form for broadcast or for printing in publications to the extent provided for on Exhibit I. Club shall endeavor to give Sponsor at least fifteen (15) days' notice prior to Advertising Copy deadlines. Sponsor acknowledges and agrees that, due to publication obligations of Club, if Advertising Copy is not printed in any of the publications referenced herein due to Sponsor's failure to meet a deadline, then Sponsor shall not be relieved from paying any of the compensation provided for herein.

## 9. INTELLECTUAL PROPERTY; CUSTOMER DATA:

9.01    **CLUB'S MARKS:** Subject to the provisions of this Agreement, Club hereby grants to Sponsor the right to use the trademarks, trade names, logos, service marks, designs, identifications and other symbols and devices associated with the Dallas Mavericks basketball franchise (the "**Club's Marks**") in its Advertising Copy solely in connection with the activities expressly contemplated by this Agreement, provided that Club and/or NBA shall receive and pre-approve each use of the Club's Marks. Club's approval shall not be unreasonably delayed or withheld. Club represents and warrants to Sponsor that it owns or has the legal right to use the Club's Marks and the use of the Club's Marks by Sponsor as contemplated herein will not infringe or violate any third party intellectual property rights. Upon termination of this Agreement, Sponsor shall cease using Club's Marks. Sponsor agrees to use Club Marks only in the form and manner as reasonably prescribed by Club and/or as established by Club's standard quality control and trademark guidelines and Club's organizational values, as published and amended from time to time by Club in its sole discretion.

120019604

5

CONFIDENTIAL                                                                    MAVSCUBAN00002844

9.02 **SPONSOR'S MARKS:** Subject to the provisions of this Agreement, Sponsor hereby grants to Club the right to use Sponsor's trademarks, trade names, service marks, brand logos, label designs, product identifications, decals and artwork (collectively known as the "**Sponsor's Marks**") solely for the activities expressly contemplated in this Agreement. Sponsor shall have the opportunity to review and pre-approve all uses of the Sponsor's Marks. Sponsor's approval shall not be unreasonably delayed or withheld. Sponsor represents and warrants to Club that it owns or has the legal right to use the Sponsor's Marks and the use of the Sponsor's Marks by Club as contemplated herein will not infringe or violate any third party intellectual property rights. Upon termination of this Agreement, Club shall cease using the Sponsor's Marks. Club agrees to use Sponsor Marks only in the form and manner as reasonably prescribed by Sponsor and/or as established by Sponsor's standard quality control and trademark guidelines and Sponsor's organizational values, as published and amended from time to time by Sponsor in its sole discretion and as generally applicable to all licensees of Sponsor.

9.03 **RESERVATION:** The Sponsor's Marks, displayed in advertising or elsewhere, shall remain the sole and exclusive property of Sponsor. Any and all rights under trademark or copyright law or otherwise relating to such items shall inure to the benefit of Sponsor. The contingent right to use the Sponsor's Marks, as permitted under this Agreement, is limited, revocable, non-assignable, nonexclusive, and nontransferable by Club.

The Club's Marks shall remain the sole and exclusive property of Club and/or the NBA and any and all rights under trademark or copyright law or otherwise shall inure to the benefit of Club and/or the NBA (as applicable). The contingent right to use the Club's Marks', as permitted under this Agreement, is limited, revocable, non-assignable, nonexclusive, and nontransferable by Sponsor.

The Parties covenant that they will not, and will not permit others to: (a) take any action inconsistent with or adverse to or otherwise challenge a Party's ownership or rights in and to the other Party's marks; (b) change or alter the other Party's marks in any way, including without limitation, in appearance or spelling or change the case of letters; (c) incorporate the other Party's marks in their own brand name, trade name, corporate name, trademarks, service marks, logos or domain names (unless expressed written permission to do so by the authorizing Party); (d) file any application or obtain any registration containing the other Party's marks or any mark confusingly similar to the other Party's marks in any country; and (e) conduct business in a manner that reflects unfavorably at any time upon the other Party's marks. In addition, use of the Club's Marks may, in some instances, be subject to the NBA's written approval.

Upon the expiration or termination of this Agreement, all rights and licenses granted to Sponsor hereunder shall terminate, and Sponsor shall cease all distribution, exhibition, conduct, exploitation and other uses of the Sponsorship Package, except that Sponsor shall not be required to cause any third party to cease any incidental use of prior uses of the Sponsorship Package (other than, as reasonably requested by Club, Sponsor shall notify third parties acting on behalf of or at the direction of Sponsor to cease any uses of the Sponsorship Package). The expiration or termination of this Agreement shall not relieve the parties of any obligations required to be performed up to the effective date of the expiration or termination or from those obligations that survive expiration or termination. In addition, notwithstanding anything else in this Agreement but subject to the terms of Section 6.01, in the event that the NBA requests in writing that Sponsor take down, remove or discontinue the Sponsorship Package (or remove the objectionable aspects thereof), Sponsor shall immediately comply with such request.

9.04 **TERRITORY:** As used herein in, "**Territory**" shall mean the following:

(a) if in the United States, the geographical area within which Club is authorized by the NBA or otherwise during the Term to grant the applicable rights and benefits set forth herein, as it may change from time to time. As of the date hereof, the Territory includes (a) the 150 mile radius around the American Airline Center (excluding the 75 mile radius around the Paycom Center in Oklahoma City, OK) and/or (b) all areas

6

120019604

within the State of Texas (excluding the 75-mile home territory of the Houston Rockets and San Antonio Spurs). Sponsor shall not distribute Advertising Copy outside Club Territory as provided in NBA Rules (**"National Territory"**);

(b)     the geographical area outside of the United States, but not Canada, for any part of the Sponsorship Package that includes (a) traditional television, radio, print and online advertising; (b) consumer sweepstakes; (c) digital marketing on Sponsorship digital channels; retail promotions; and private receptions and meet-and-greets. (**"International Territory"**). The International Territory rights provided by Club herein are for the 2021-22, 2022-23 and 2023-24 Seasons. Any International Territory rights provided to Sponsor beyond the 2023-24 Season shall be subject to NBA Rules. If, during the Term of this Agreement, the International Territory is not made available to Sponsor, then Sponsor shall be entitled to the Sponsor Election. Any reduction to the Investment Fee per the Sponsor Election shall be pro-rated based on the period of time of a season during which such International Territory is not available to Sponsor). The parties acknowledge that          of the Investment Fee is attributable to the International Territory.

Notwithstanding the forgoing, Sponsor shall receive all marketing rights and opportunities provided for in the NBA's International Team Marketing Program, which may include the ability to post Content on Sponsor's website/app and social media without national geo-fencing.

Nothing contained in this Agreement authorizes Sponsor to represent in any oral or written form or in any communication medium that any product or service of Sponsor or its Affiliates or subsidiaries has been endorsed, selected or approved by Club or its Affiliates (including but not limited to Club's employees, owners, players, coaches and staff and the NBA). Sponsor acknowledges that Club does not have the right to use or to license the use of the names, signatures, photographs, likeness, or image of any Dallas Mavericks employee (including any player, coach or any athlete, participant, employee or third party provider performing services in connection with the Sponsorship Package) and that any use by Sponsor must be approved by such individual. Sponsor also understands that no athlete, participant, employee, coach, or third party provider whatsoever shall have any obligation to endorse any Sponsor products under this Agreement.

9.05    **CUSTOMER DATA:** To the extent a Party obtains or collects any data regarding the other Party's customers in connection with the sponsorship rights contemplated by this Agreement (**"Customer Data"**), the other Party shall (i) comply with all applicable laws in collecting and protecting Customer Data and (ii) immediately provide a copy of Customer Data to the other Party, subject to applicable laws.

9.06    **SPONSOR SWEEPSTAKES & CONTEST PROMOTIONS:** For any Sponsor owned and/or themed promotional sweepstakes or contests conducted under this Agreement, Sponsor shall be responsible for the administration and execution of such sweepstakes or contests (including taking responsibility for creating any required sweepstakes rules and complying with any and all local, statewide, and national rules and regulations applicable to contests and sweepstakes, gaming or gambling). Sponsor will be the named sponsor in the Official Rules, and Club (either directly named or indirectly referenced as a "business partner" (or equivalent) of Sponsor) will be a "released party" (or equivalent) in the Official Rules.   Sponsor will use commercially reasonable efforts to send any rules to Club for review prior to the start of the promotion(s).

10.     **FORCE MAJEURE:**

10.01   Delay, interruption or diminution of the performance of this Agreement due to any cause beyond the control of Club or Sponsor, including without limitation, fire, flood, explosion, damage by third parties whether negligently or intentionally caused, power blackout, war, state

CONFIDENTIAL                                                      MAVSCUBAN00002846

of national emergency, pandemic, epidemic, act of God, strike, work stoppage, picketing, lockouts, damage or concerted action by any employee or any labor organization, or the laws or actions of any governmental authority ("**Force Majeure Event**"), shall not constitute a ground for termination of this Agreement and, except for Sponsor's obligation to make payments to Club hereunder for the delivery and performance of the Sponsorship Package and other obligations of Club hereunder, neither Party shall be liable or responsible to the other Party nor be deemed to have defaulted under or breached this Agreement.

## 11. **DEFAULT:**

11.01 In the event either Party defaults in the performance of any of its obligations hereunder and if such default is not cured                        after the other Party gives written notice thereof to the defaulting party, or if any of the events listed in Section 11.02 below occurs, the non-defaulting party shall have, subject to the limitations set forth in Sections 11.03, 11.04 and 11.05 below,

11.02 In addition to a party's non-performance of any obligation under this Agreement that is not cured within the notice and cure period referenced above (if applicable), the following occurrences shall also be defaults under this Agreement (with no notice and cure period being applicable):

        (i)     the making by a party of an assignment for the benefit of creditors;

        (ii)    the appointment of a trustee, receiver or similar officer of any court for a party or for a substantial part of the property of a party, whether with or without the consent of the other party; or

        (iii)   the institution of bankruptcy, composition, reorganization, insolvency or liquidation proceedings by or against a party without such proceedings being dismissed within thirty (30) days from the date of the institution thereof.

11.03 If this Agreement is terminated because of the default of Club prior to the end of a period for which Sponsor has paid Club

11.04 In no event shall Club, or its officers, directors, partners, Affiliates or employees, be liable to Sponsor for any special, indirect, incidental, or consequential damages of any kind, including, but not limited to, loss of profits or damage to business reputation however caused and on any theory of liability, whether in an action for contract, strict liability, tort (including

120019604

8

negligence) or otherwise, whether or not Club has been advised of the possibility of such damage and notwithstanding the failure of essential purpose of any remedy. The maximum liability of Club shall be the amount paid by Sponsor to Club under the current terms of this Agreement. Notwithstanding any other provision of this Agreement, this limitation of liability provision shall not extend to any liability arising out of Club's obligation to indemnify Sponsor under the terms of this Agreement.

11.05  In no event shall Sponsor, or its officers, directors, Affiliates or employees, be liable to Club for any special, indirect, incidental, or consequential damages of any kind, including, but not limited to, loss of profits or damage to business reputation however caused and on any theory of liability, whether in an action for contract, strict liability, tort (including negligence) or otherwise, whether or not Sponsor has been advised of the possibility of such damage and notwithstanding the failure of essential purpose of any remedy.  The maximum liability of Sponsor shall be the amount paid by Sponsor to Club under the current terms of this Agreement.  Notwithstanding any other provision of this Agreement, this limitation of liability provision shall not extend to any liability arising out of Sponsor's obligation to indemnify Club under the terms of this Agreement.

12.   **INDEMNIFICATION AND HOLD HARMLESS:**

12.01  Sponsor shall be solely responsible for, and shall defend, indemnify and hold harmless Club, the NBA, NBA Properties, Inc. ("**NBAP**"), NBA Media Ventures, LLC other NBA member teams, and each of their respective Affiliates, and their respective  owners, directors, governors, officers, employees and agents (collectively, the "**NBA Parties**") against any and all third party losses, liability, claims, demands, disputes, causes of action or damages including reasonable attorneys' fees and expenses and court costs ("**Claims**") relating to, referring to or arising or resulting from (i) the performance of, or failure to perform, the obligations of Sponsor under this Agreement; (ii) Sponsor or Sponsor's Affiliates' breach of this Agreement, any of its representations warranties or obligations or failure to comply with the terms and conditions contained in this Agreement; (iii) any injury to or death of persons or any loss of or damage to property in any manner occurring as a direct or proximate result of any act or omission of Sponsor or Sponsor's agents, employees and independent contractors  in connection with the subject matter of this Agreement; (iv) any claims by a third party that Sponsor or Sponsor's Marks infringe on any trademark, service mark, brand logo, designs, identifications, or any other symbols, devises or intellectual property of such third party; (v) negligence or misconduct by Sponsor, or its agents, employees and independent contractors, ; (vi) failure of Sponsor or Sponsor's agents, employees and independent contractors to comply with any applicable Law that may affect the obligation of Sponsor hereunder; (vii)  any data breach on Sponsor or its agents, employees and independent contractors behalf; (viii) any materials, products or services offered or supplied by Sponsor in connection with the subject matter of this Agreement; (ix) the Advertising Copy as provided by Sponsor in connection with the subject matter of this Agreement; (x) use or occupancy of any exhibit, display or equipment by Sponsor, Sponsor's agents, employees and independent contractors or their invited guests and defects in the exhibits, display or equipment provided by Sponsors or Sponsor's agents, employees and independent contractors in connection with this Agreement; (xi) promotions, sweepstakes, contest, raffles, gift giveaways or drawings provided, conducted, operated or administered by Sponsor or Sponsor's agents, employees and independent contractors.  Club agrees to give Sponsor prompt notice of any claim or suit coming within the purview of this indemnity (provided that the failure to provide prompt notice will not relieve Sponsor of its obligations hereunder except to the extent it causes prejudice to Sponsor), Club shall furnish the Sponsor with all relevant facts in its possession or under its control, and Club shall cooperate fully with Sponsor (at Sponsor's expense) in its defense of such action.

12.02  Club shall be solely responsible for, and shall defend, indemnify and hold harmless Sponsor, its affiliates and each of their respective, owners, directors, governors, officers, employees and agents (collectively, the "**Sponsor Parties**") from and against any and all

120019604

CONFIDENTIAL                                                              MAVSCUBAN00002848

third party Claims relating to, referring to or arising or resulting from (i) the performance of, or failure to perform, the obligations of Club under this Agreement; (ii) Club's breach of this Agreement, any of its representations warranties or obligations or failure to comply with the terms and conditions contained in this Agreement; (iii) any claims by a third party that Club or Club's Marks infringe on any trademark, service mark, brand logo, designs, identifications, or any other symbols, devises or intellectual property of such third party; (iv) negligence or misconduct by Club, , its agents, employees, or independent contractors; (v) failure of Club or Club's agents employees and independent contractors to comply with any applicable Law, including compliance with any regulations and requirements of the NBA; (vi) any data breach on Club's or Club agents, employees or independent contractors behalf; (vii)

; and (viii)

. Sponsor agrees to give Club prompt notice of any claim or suit coming within the purview of this indemnity (provided that the failure to provide prompt notice will not relieve Club of its obligations hereunder except to the extent it causes prejudice to Club), Sponsor shall furnish the Club with all relevant facts in its possession or under its control, and Sponsor shall cooperate fully with Club (at Club's expense) in its defense of such action.

13. **ASSIGNMENT:**

13.01 Neither party may assign or delegate any of its rights or obligations under this Agreement without the prior written consent of the other, which consent shall not be withheld unreasonably. Notwithstanding the foregoing, either party may assign this Agreement to a subsidiary, parent or affiliated company ("**Affiliate**"); provided, however, that no such assignment shall in any way discharge the liability of the assigning party to the other party hereto.

14. **INDEPENDENT CONTRACTOR:**

14.01 The Parties shall be and act as independent contractors and under no circumstances shall this Agreement be construed as one of agency, partnership, joint venture or employment between the parties. The Parties shall each be solely responsible for the conduct of their respective employees and agents in connection with the performance of their obligations hereunder. Neither Party has any right, power or authority to assume or create any obligation of any kind or to make any representation or warranty on behalf of the other Party or to bind the other party in any respect.

15. **HEADINGS:**

15.01 Headings and captions are supplied for convenience only and are not to be construed as an interpretation of any of the language of this Agreement.

16. **GOVERNING LAW; WAIVER OF JURY TRIAL; ARBITRATION:**

16.01 **THIS AGREEMENT, AND ALL MATTERS OF ISSUE COLLATERAL, THERETO, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY WITHIN THE STATE OF NEW YORK. FOR ACTIONS THAT ARE NOT SUBJECT TO MANDATORY ARBITRATION UNDER THIS SECTION, SPONSOR SUBMITS AND IRREVOCABLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL AND STATE COURTS LOCATED IN NEW YORK. THE PARTIES SHALL, AND HEREBY DO, IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY DISPUTE, CONTROVERSY, CLAIM OR CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT (EITHER WITH RESPECT TO AN ALLEGED BREACH OR ENFORCEMENT).**

120019604

10

CONFIDENTIAL                    MAVSCUBAN00002849

16.02 **EXCEPT TO THE EXTENT A PARTY SEEKS INJUNCTIVE OR OTHER EQUITABLE RELIEF TO ENFORCE PROVISIONS OF THIS AGREEMENT, ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF (A "*DISPUTE*"), SHALL BE RESOLVED BY ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES (THE "*RULES*"). THE ARBITRATION SHALL BE COMMENCED BY WRITTEN REQUEST OF ANY PARTY, MADE IN ACCORDANCE WITH THE NOTICE PROVISIONS OF THIS AGREEMENT, AND SHALL BE CONDUCTED BY A SINGLE ARBITRATOR APPOINTED IN ACCORDANCE WITH THE RULES IN THE ENGLISH LANGUAGE IN DALLAS, TEXAS, IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT. THE AWARD OF THE ARBITRATOR MAY BE ENTERED IN ANY COURT OF COMPETENT JURISDICTION. THE ARBITRATOR SHALL HAVE THE POWER IN THE AWARD TO ORDER EQUITABLE RELIEF, INCLUDING SPECIFIC PERFORMANCE. THE PARTIES AGREE THAT IT IS ESSENTIAL THAT ANY DISPUTE BE RESOLVED AS RAPIDLY AS POSSIBLE. TO THAT END, THE ARBITRATOR, BY ACCEPTING APPOINTMENT, UNDERTAKES TO EXERT HIS OR HER BEST EFFORTS TO CONDUCT THE PROCESS SO AS TO ISSUE AN AWARD WITHIN THREE (3) MONTHS OF THE APPOINTMENT OF THE ARBITRATOR (PROVIDED, HOWEVER, THAT FAILURE TO MEET THAT TIMETABLE SHALL NOT AFFECT THE VALIDITY OF THE AWARD).**

16.03 **NOTWITHSTANDING ANYTHING TO THE CONTRARY STATED HEREIN, CLUB SHALL NOT BE REQUIRED TO CONTINUE TO DISPLAY OR BROADCAST ANY ADVERTISING COPY (TO THE EXTENT PROVIDED FOR IN EXHIBIT I) WHICH SHALL BE VIOLATIVE, IN CLUB'S SOLE DISCRETION, OF ANY APPLICABLE STATE OR FEDERAL LAW, OR WRONGFULLY INFRINGING UPON A THIRD PARTY'S RIGHTS, AND CLUB MAY, AFTER GIVING WRITTEN NOTICE TO SPONSOR, CEASE THE DISPLAY OR BROADCAST OF SUCH ADVERTISING COPY AT ANY TIME, AND (I) TERMINATE SPONSOR'S OBLIGATION TO PAY HEREUNDER, OR (II) INSTALL ALTERNATE ADVERTISING COPY PROVIDED BY SPONSOR.**

17. **NOTICES:**

17.01 Any notice required or permitted to be given under the terms of this Agreement shall be in writing and may be hand delivered or shall be deemed to be delivered on the third business day following deposit thereof in the United States mail, return receipt requested, postage prepaid, registered or certified mail, to the addresses set forth below, or to such other person or address as either party may designate by written notice to the other party as herein provided:

| | |
|---|---|
| **If to Club:** | Ryan Mackey, Senior Vice President – Sponsorships<br>Dallas Mavericks<br>1333 N. Stemmons Freeway, Suite 105<br>Dallas, Texas 75207 |
| **With copy to** | Sekou Lewis, General Counsel<br>Dallas Mavericks<br>1333 N. Stemmons Freeway, Suite 105<br>Dallas, Texas 75207 |
| **If to Sponsor:** | Steve Ehrlich, CEO<br>Voyager Digital Holdings, Inc.<br>33 Irving Place, 3rd Floor<br>New York, NY 10003 |
| **With copy to:** | Legaldept@investvoyager.com |

11

120019604

18.    **WAIVER; AMENDMENT:**

18.01  No waiver, amendment or modification of any of the terms of this Agreement shall be binding or enforceable unless in writing and executed by the Parties hereto. No delay of or omission in the exercise of any right, power or remedy accruing to any Party under this Agreement shall impair any such right, power or remedy, nor shall it be construed as a waiver of any future exercise of any right, power or remedy.

19.    **TIME OF ESSENCE:**

19.01  Time shall be of the essence with respect to all matters set forth herein.

20.    **SEVERABILITY AND INTERPRETATION:**

20.01  The Parties hereto intend all provisions of this Agreement to be enforced to the fullest extent permitted by law; if a court of competent jurisdiction determines that any provision hereof is too broad as written, then the parties intend that the court should reform such provision to such narrower scope as it determines to be enforceable. If, however, any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future law, then such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision were never a part hereof, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance. In the event of any conflict between any of the terms set forth in the main body of this Agreement and/or in the Exhibit pages attached hereto, the provisions of this Agreement shall control.

21.    **BINDING EFFECT:**

21.01  This Agreement shall be binding upon the Parties hereto and their successors and assigns.

22.    **CONFIDENTIALITY:**

22.01  Each Party acknowledges and agrees that any proprietary or confidential information of a Party, including the terms and conditions of this Agreement, are confidential ("**Confidential Information**"). Sponsor further acknowledges and agrees that any and all proprietary or confidential data or information that may be provided by Club to Sponsor concerning Club's games, customers, or fans is Confidential Information. Each Party agrees that it will not use for any unauthorized purpose or permit the duplication, use or disclosure of any such Confidential Information to any person (other than its and its Affiliates' respective employees, agents, officers, directors, members, managers, partners, advisors, attorneys or representatives who have a need to know), unless such duplication, use or disclosure is specifically authorized in writing by the other Party or otherwise required by Law or court order. Notwithstanding the foregoing, (i) the disclosure of any information that is or becomes generally available to the public (other than as a result of any action or inaction of the disclosing party in violation of this Section 22) shall not be deemed to be a disclosure in violation of this Section 22, and (ii) no Party shall not be under any obligation to provide any data or information to the other Party. This Section 22 shall survive until one (1) year after the termination or expiration of this Agreement.

23.    **INSURANCE:**

23.01  Each Party shall obtain and maintain throughout the Term Commercial General Liability insurance with a per occurrence limit of not less than
providing coverage for bodily injury and property damage and personal and advertising injury,

120019604

12

including contractual liability and products/completed operations liability coverage and (ii) workers' compensation and employer's liability insurance with statutory benefits as required by applicable state or federal law. Each Party shall cause the other Party (and in the case of Club, also the NBA Parties, and in the case of Sponsor, also the Sponsor Parties) to be included as additional insureds on such insurance. Such insurance policy shall also provide that the other Party (and in the case of the Club, also the NBA) receive written notice within thirty (30) days prior to the effective date of the cancellation, non-renewal or any material change in coverage. Each Party shall furnish the other Party (and in the case of the Club, also the NBA) with certificates of insurance evidencing compliance with the above requirements.

24.  **ANNOUNCEMENTS/PRESS RELEASES:**

24.01  Neither Party shall, during the Term, issue any press release or other communication, or hold any press conference with respect to this Agreement, Club, Sponsor or any employee, owner, player or Affiliate of Club or Sponsor without the prior written consent of the Parties, and approval of the NBA. Neither Party shall include information with respect to this Agreement, Club or Sponsor or the name of any employee, owner, player or Affiliate of Club or Sponsor in any press release, advertisement or on any website maintained by a Party without the prior written consent of the Parties.

25.  **THIRD PARTY BENEFICIARY:**

25.01  NBAP is an intended third-party beneficiary of Sponsor's obligations and liabilities under this Agreement and, as such, shall have the right to enforce this Agreement to the same extent as Club.

26.  **SURVIVAL:**

26.01  The provisions of this Agreement that state that they will survive the expiration or termination of this Agreement, as well as any provisions that by their nature are appropriate to apply after expiration or termination, will survive the expiration or termination of this Agreement.

27.  **ENTIRE AGREEMENT:**

27.01  This Agreement contains the entire agreement between Club and Sponsor, supersedes all prior written or oral agreements, if any, and may be amended only by an instrument in writing signed by both parties.

28.  **EXECUTION IN COUNTERPARTS:**

28.01  This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which shall be deemed to be one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including via portable document format (PDF)) or other transmission method and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes. Copies of signatures will be deemed to have the same legal effect as original signatures.

*[Signature page follows.]*

120019604

13

CONFIDENTIAL                                                                 MAVSCUBAN00002852

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth above.

**CLUB:**                                                    **SPONSOR:**

DALLAS BASKETBALL LIMITED                                    VOYAGER DIGITAL HOLDINGS, INC.

By: _____                             By: _____
    (Authorized Officer Name)                                   (Authorized Officer Name)

Printed Name:  Matt Wojciechowski                           Printed Name:  Steve Ehrlich

Title:  Chief Financial Officer                             Title:  Chief Executive Officer

Date:  October 29, 2021                                     Date:  October 29, 2021

120019604

CONFIDENTIAL
MAVSCUBAN00002853

## EXHIBIT I

### Sponsorship Package



CONFIDENTIAL



120019604

CONFIDENTIAL                                                                                    MAVSCUBAN00002855



120019604

CONFIDENTIAL



120019604

MAVSCUBAN00002857



Sponsor Initials     Club Initials

CONFIDENTIAL                    MAVSCUBAN00002858

## EXHIBIT II

**TERMS AND CONSIDERATION:**

The term of this sponsorship is for the *2021-22* through the completion of the- *2025-26*
Dallas Mavericks regular seasons (each a "**Season**" and collectively the "**Initial Term**"). Upon
mutual agreement between the Parties, sixty (60) days prior to the expiration date of the Initial
Term or a given Renewal Term, this Agreement may be extended for up to two (2) additional
separate one-year renewal terms for the *2026-27* NBA Season and/or the *2027-28* NBA
Season, (each a "**Renewal Term**" and collectively with the Initial Term, the "**Term**"). Any Renewal
Term shall be on the same terms and conditions set forth in this Agreement, except that Club
shall be able to deliver a comparable substitute to any Club Asset provided in Exhibit I to fulfill
Club's obligations in the Agreement and the investment total shall be based upon the then
current market rate for the relevant Club Asset.

Subject to NBA regulations or restrictions and availability, Sponsor may have the option to
purchase applicable regular season marketing assets for each playoff round for a Season. Rates
for playoff sponsorship assets ("**Playoff Fee**") will be in addition to the investment total (provided
below). Any purchase of playoff tickets, parking and hospitality will be, in addition to the Playoff
Fee and available at face value, should Sponsor wish to purchase.



Sponsor Initials        Club Initials

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    MAVSCUBAN00002859