**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:22-cv-22538 (Altman/Reid)**

**DOMINIK KARNAS, *et al.*,**

                **Plaintiffs,**

**v.**

**MARK CUBAN, *et al.*,**

                **Defendants.**

**DEFENDANTS MARK CUBAN AND DALLAS BASKETBALL LIMITED'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>RECONSIDERATION TO SEVER AND TRANSFER CLAIMS</u>**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

    A.    Factual Background ................................................................................. 3
    B.    The Court's Ruling on Defendants' Motion to Dismiss ......................... 7
    C.    Plaintiffs' Sudden Interest in a Transfer to Texas ................................. 8

ARGUMENT ...................................................................................................................... 8

I.      The Interest of Justice Strongly Disfavors a Transfer at this Stage of the Case. ................. 8

    A.    The Interest of Justice Does Not Require Transfer Where Plaintiffs Were Forum-Shopping. ....................................................................................................... 9
    B.    Plaintiffs' Previous Opposition to Transfer Further Militates Against Granting That Relief Three Years Later. ........................................................................ 11
    C.    Defendants and the Court Have Been Prejudiced by at Least Three Years of Unnecessary Litigation. ................................................................................. 12
    D.    Any Issues About Statutes of Limitations Do Not Warrant a Transfer Now. ...... 12
    E.    None of Plaintiffs' Cited Cases Supports Transfer Here. .................................... 13

II.    Severing the Claims Against Defendants Would Also Be Inappropriate. ......................... 14

CONCLUSION .................................................................................................................. 17

i

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**Cases:**

*AF Holdings, LLC v. Does 1-162*,
2012 WL 488217 (S.D. Fla. Feb. 14, 2012) .......................................................................14

*Aguate Consol. Mines, Inc. v. Deeprock, Inc.*,
566 F.2d 523 (5th Cir. 1978) ............................................................................................14

*Arvest Bank v. Miles*,
2023 WL 6065855 (N.D. Ga. Sept. 18, 2023) ...................................................................10

*Barboza v. Drummond Co.*,
2007 WL 9701028 (S.D. Fla. Nov. 20, 2007)..................................................................3, 8

*Brunswick Records Corp. v. Lastrada Ent. Co.*,
No. 21-cv-23580 (S.D. Fla. Dec. 27, 2022) (ECF No. 41) ................................................2

*Cont'l Ins. Co. v. M/V Orsula*,
354 F.3d 603 (7th Cir. 2003) .......................................................................................10, 13

*Coté v. Wadel*,
796 F.2d 981 (7th Cir. 1986) .......................................................................................10, 13

*Franco v. Mabe Trucking Co.*,
No. 2-16-cv-1291 (E.D. Tex.) (ECF No. 4) .....................................................................14

*Franco v. Mabe Trucking Co.*,
3 F.4th 788 (5th Cir. 2021) ...............................................................................................14

*Goldlawr v. Heiman*,
369 U.S. 463 (1962).......................................................................................................9, 13

*Gubagoo, Inc. v. Orlando*,
2020 WL 6826357 (S.D. Fla. Nov. 20, 2020)...................................................................14

*Hapaniewski v. City of Chi. Heights*,
883 F.2d 576 (7th Cir. 1989) ............................................................................................13

*Hofmann v. De Marchena Kaluche & Asociados*,
642 F.3d 995 (11th Cir. 2011) ..........................................................................................15

*Howe v. Samsung Elecs. Am., Inc.*,
2018 WL 2212982 (N.D. Fla. Jan. 5, 2018) ............................................................9, 10, 13

*Johnson v. Takata Corp.*,
    2020 WL 11191810 (N.D. Ga. Apr. 22, 2020) ...................................................................9, 10

*Jones v. Campbell Univ.*,
    322 F. Supp. 3d 106 (D.D.C. 2018) .........................................................................................14

*Koock v. Sugar & Felsenthal, LLP*,
    2011 WL 13176487 (M.D. Fla. Mar. 30, 2011) ......................................................................11

*Last Chance Mining Co. v. United States*,
    12 Cl. Ct. 551 (1987), *aff'd*, 846 F.2d 77 (Fed. Cir. 1988) ....................................................11

*McCullough v. Royal Caribbean Cruises, Ltd.*,
    268 F. Supp. 3d 1336 (S.D. Fla. 2017) .......................................................................14, 15, 16

*Nettles v. Daphne Utils.*,
    2014 WL 1668535 (S.D. Ala. Apr. 28, 2014).....................................................................15, 16

*Nichols v. G.D. Searle & Co.*,
    991 F.2d 1195 (4th Cir. 1993) ..........................................................................................3, 9, 12

*Novelty, Inc. v. RCB Distrib., Inc.*,
    2008 WL 2705532 (S.D. Ind. July 9, 2008)............................................................................12

*Oaks of Woodlake Phase III, Ltd. v. Hall, Bayoutree Assocs., Ltd. (In re Hall,
    Bayoutree Assocs., Ltd.)*,
    939 F.2d 802 (9th Cir. 1991) ..................................................................................................10

*Pedzewick v. Foe*,
    963 F. Supp. 48 (D. Mass. 1997) ............................................................................................13

*Plabable Ltd. v. Medrevisions, Inc.*,
    2025 WL 4091523 (N.D. Fla. Dec. 5, 2025) .....................................................................11, 13

*Schmidt v. Washington Newspaper Pub. Co.*,
    2018 WL 6422705 (S.D. Fla. Dec. 6, 2018) .........................................................3, 9, 11, 13

*SE Prop. Holdings, LLC, v. Green*,
    2020 WL 9396383 (S.D. Ala. Sept. 1, 2020),
    *adopted*, 2020 WL 5637400 (S.D. Ala. Sept. 18, 2020).........................................................15

*Seville v. Maersk Line, Ltd.*,
    53 F.4th 890 (5th Cir. 2022) ...............................................................................................9, 11

*Stanifer v. Brannan*,
    564 F.3d 455 (6th Cir. 2009) ..............................................................................................9, 13

*Toll v. North*,
  644 F. Supp. 3d 1050 (S.D. Fla. Dec. 5, 2022)........................................................................15

**Statutes:**

28 U.S.C. § 1404(a) ...........................................................................................................1, 5, 8

28 U.S.C. § 1406..........................................................................................................1, 5, 8, 9

28 U.S.C. § 1631........................................................................................................1, 8, 10

**Other Authorities:**

Fed. R. Civ. P. 11 ............................................................................................... *passim*

Fed. R. Civ. P. 21 ...........................................................................................................14

iv

## PRELIMINARY STATEMENT

Plaintiffs' Motion for Reconsideration to Sever and Transfer the Claims Against Defendants Mark Cuban and the Mavericks to the Northern District of Texas (the "Motion" or "Mot.") raises a simple question:  does the "interest of justice" warrant a transfer under 28 U.S.C. §§ 1631, 1406, or 1404(a) where:

- Plaintiffs filed their claims against Texas-based Mr. Cuban and the Mavericks ("Defendants") in Florida, where personal jurisdiction clearly did not lie;

- Defendants began disputing the existence of personal jurisdiction in Florida and emphasizing Plaintiffs' forum-shopping more than *three years ago*, including by moving to dismiss for lack of personal jurisdiction, sending letters warning of the risk of sanctions, and eventually filing a motion for sanctions under Fed. R. Civ. P. 11;

- Defendants moved to transfer the case to the Northern District of Texas *three years ago*, in January 2023;

- Plaintiffs *opposed* Defendants' transfer motion (a fact they avoid mentioning to the Court in their current Motion);

- Defendants were forced to undergo years of extensive discovery on jurisdictional and other issues in this Court;

- The parties exhaustively briefed jurisdictional and merits issues;

- The Court (including the Magistrate Judge) was required to hold hearings on discovery and jurisdictional issues, including the October 15, 2024 hearing during which the Court repeatedly questioned Plaintiffs' counsel about their jurisdictional theories and expressed skepticism about counsel's arguments;

- Even after the October 2024 hearing, Plaintiffs insisted on litigating in this jurisdictionally inappropriate forum, did not attempt to reactivate Defendants' dormant motion to transfer the claims to Texas, and never even asked the Court to consider transferring the case as an alternative to dismissing it for lack of personal jurisdiction;

- The Court ultimately was required to write a detailed, 29-page opinion thoroughly rejecting Plaintiffs' assertions of personal jurisdiction; and

1

- After *losing* on their defense of personal jurisdiction, Plaintiffs suddenly changed their position and now ask for the same transfer relief they opposed three years ago?

In these circumstances, the interest of justice clearly supports denying the Motion and declining to reward Plaintiffs' intransigence and forum-shopping.  The Court should reject Plaintiffs' "oh well, never mind" attitude and their attempt to ignore the results of the three years of unnecessary and unsuccessful litigation they imposed on Defendants and this Court.

Plaintiffs' contention that Defendants would not be prejudiced by transfer to a forum that Defendants themselves had previously proposed disregards the wasted efforts and expense that could have been avoided during the past three years if Plaintiffs had not opposed Defendants' transfer motion.  Had Plaintiffs not rejected Defendants' transfer request *in January 2023*, the Court might well have granted the unopposed motion, and neither Defendants nor the Court would have been subjected to three years of avoidable discovery, briefing, supplemental briefing, hearings, and opinion-writing.  The Court should not rescue Plaintiffs from the foreseeable consequence of their own calculated tactic of bringing this case where it did not belong.

Plaintiffs cite no authority for the proposition that a court should (much less must) transfer a case where the transfer request was not made until *after* the court had dismissed the case for lack of jurisdiction and where the plaintiff had previously *opposed* the defendant's effort to transfer the case to the same forum to which the plaintiff belatedly asked to move.  In none of the cited cases had the plaintiffs previously *opposed* the transfer they later requested, and, in most of them, the plaintiffs appear to have requested transfer *before* (and as an alternative to) the dismissal for lack of jurisdiction, rather than after dismissal.  This Court's decision in *Brunswick Records Corp. v. Lastrada Entertainment Co.*, No. 21-cv-23580 (S.D. Fla. Dec. 27, 2022) (ECF No. 41), which Plaintiffs cite (at 6) without disclosing the critical procedural context, illustrates that line of cases: the plaintiffs there requested a transfer as part of their opposition to the defendants' motion to dismiss "'if this Court determines that it lacks personal jurisdiction.'"  *Id.* at 1.  The plaintiffs did not wait to raise the issue until *after* the Court had granted the motion to dismiss, and they had not previously *opposed* a transfer motion.

In contrast to the inapposite cases on which Plaintiffs rely, courts have not hesitated to *deny* transfer motions in the circumstances presented here.  For example, a court in this District held that the interests of justice did not warrant granting "reconsideration" and transferring a case

where, as here, the plaintiff had previously opposed transfer and did not request one until after his case had been dismissed for lack of personal jurisdiction.  "[R]elying on the adage that 'choices in life have consequences,'" the court "decline[d] to reward [plaintiff's] ill-conceived choice of forum by granting his belated request to transfer."  *Schmidt v. Washington Newspaper Pub. Co.*, 2018 WL 6422705, at *2 (S.D. Fla. Dec. 6, 2018).  "[F]ar from constituting manifest injustice, [plaintiff's] choice of forum was an intentional litigation strategy that ultimately proved to be unsuccessful.  [Plaintiff's] decision to pursue a risky litigation tactic that in hindsight revealed itself to be imprudent does not amount to manifest injustice."  *Id.* at *3; *accord, e.g.*, *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1202 (4th Cir. 1993) (affirming denial of reconsideration motion to transfer case to Illinois after dismissal for lack of personal jurisdiction in Maryland because plaintiffs "filed their actions in Maryland and imposed substantial costs over a period of five years on [defendant], which was forced to defend in a foreign and improper forum, and on the Maryland district court, which had no interest in their actions"); *see also, e.g.*, *Barboza v. Drummond Co.*, 2007 WL 9701028, at *3 (S.D. Fla. Nov. 20, 2007) (denying transfer motion made after dismissal for lack of personal jurisdiction).

The Court has already closed this case as to Defendants.  In light of Plaintiffs' prior refusal to agree to a transfer and their insistence on forum-shopping in this District despite numerous warnings about the futility of that effort, the interest of justice does not require (or even suggest) that the Court now reopen the case and transfer the claims against Defendants to Texas.  It is time to stop this unreasonable and vexatious multiplication of proceedings and to put this case to rest as to Mr. Cuban and the Mavericks.[1]

## STATEMENT OF FACTS

### A.   Factual Background

Plaintiffs filed this case against Defendants and others in August 2022 (ECF No. 1) and filed their Amended Complaint in October 2022 (ECF No. 34).

On November 18, 2022, Defendants moved to dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction (ECF No. 41) and submitted sworn Declarations from the Mavericks'

---

[1]   Moreover, Plaintiffs' "reconsideration" motion is not a true motion for reconsideration in the first place.  Plaintiffs do not dispute—much less seek reconsideration of—the Court's personal-jurisdiction ruling or the resulting dismissal of all claims against Mr. Cuban and the Mavericks.  What Plaintiffs seek instead is a post-dismissal transfer of claims that the Court has already dismissed—relief that has no bearing on (and does not disturb) the Court's prior order.

CFO and Mr. Cuban (ECF Nos. 41-1, 41-2) explaining why personal jurisdiction did not exist in Florida.  The Declarations attested that (*i*) Mr. Cuban and the Mavericks were Texas residents; (*ii*) the only agreement between either Defendant and any Voyager entity was the 2021 Sponsorship Agreement, which had been negotiated and executed in Dallas; (*iii*) all obligations undertaken pursuant to the Sponsorship Agreement had been performed from Dallas, and the Mavericks had not been involved in any promotional activity in Florida; (*iv*) Mr. Cuban had met Voyager's CEO, Stephen Ehrlich, only twice, both times in Dallas; and (*v*) Mr. Cuban had never discussed Voyager with anyone while in Florida and had never performed any Voyager-related activities there.  *See* White Decl. ¶¶ 28-37.[2]

Instead of responding to Defendants' motion, Plaintiffs moved for an extension of time so they could conduct jurisdictional discovery.  ECF No. 48.  The Court granted Plaintiffs' request and authorized them to take jurisdictional discovery, including depositions of Mr. Cuban and the Mavericks' CFO.  ECF No. 59; White Decl. ¶¶ 39-41.

Jurisdictional discovery began in December 2022.  On December 7, 2022, Mr. Cuban and the Mavericks responded to Plaintiffs' interrogatories and stated that (*i*) the only agreement between either Defendant and any Voyager entity was the 2021 Sponsorship Agreement, which had been negotiated and executed entirely in Dallas; (*ii*) the Mavericks had not been involved in any promotional activity in Florida, and all obligations under the Sponsorship Agreement had been performed from Dallas; (*ii*) Mr. Cuban had met Mr. Ehrlich only twice, both times in Dallas; and (*iv*) Mr. Cuban's statements at the October 27, 2021 press conference in Dallas had not been made in, directed to, or targeted at Florida.  White Decl. ¶¶ 42-44.

Magistrate Judge Reid held a hearing on Plaintiffs' request for jurisdictional discovery on December 20, 2022, and directed that discovery continue, including with a deposition of Mr. Cuban.  White Decl. ¶¶ 45-52.

On January 3, 2023, Defendants' counsel produced 524 documents (approximately 1,100 pages) in response to Plaintiffs' requests for jurisdictional discovery, together with a detailed letter summarizing the discovery record to date.  The letter explained that discovery had confirmed the accuracy of the previously submitted Declarations and had shown that (*i*) Mr. Cuban had never met Voyager's CEO in Florida, had never spoken about Voyager while in Florida, and had never

---

[2]     The Declaration of Jonathan D. White (the "White Decl.") compiles the lengthy history of this case and is attached as Exhibit A.

engaged in any Voyager-related business while in Florida, and (*ii*) the Mavericks' only connection to Florida had consisted of NBA away games and shipping 12 basketballs from Dallas to Miami for a youth event.  White Decl. ¶¶ 54-56.

Defendants' counsel's letter urged Plaintiffs to dismiss their complaint as jurisdictionally unsound, and it warned Plaintiffs "to consider the Rule 11 implications of pursuing claims against parties who lack any requisite jurisdictional ties to Florida."  White Decl. ¶¶ 57-58.  A January 12, 2023 letter from Defendants' counsel reiterated those points.  *Id*. ¶ 59.

On January 6, 2023, Magistrate Judge Reid held another hearing on Plaintiffs' discovery requests.  Plaintiffs sought full merits discovery, claiming that merits-related documents were relevant to personal-jurisdiction issues and that bifurcated discovery therefore would be inappropriate.  The court agreed not to bifurcate discovery and proposed that Mr. Cuban and all other witnesses be deposed only once on all issues.  White Decl. ¶¶ 60-66.

Because of the court's ruling, plenary discovery began, and, by the time it ended, Defendants had produced 7,683 documents (nearly 23,000 pages), including the previously produced documents that Defendants had considered to be purely jurisdictional discovery. Defendants also responded to more interrogatories, and Plaintiffs deposed a Mavericks Rule 30(b)(6) witness and four other deponents.  None of this discovery revealed any information supporting Plaintiffs' jurisdictional allegations.  White Decl. ¶¶ 67, 107-08.

On January 31, 2023, while discovery was in progress, Defendants offered Plaintiffs a way out of the jurisdictional mess they had created for themselves:  Defendants proposed to transfer the case to the Northern District of Texas, where personal jurisdiction undisputedly exists, pursuant to 28 U.S.C. §§ 1404(a) and/or 1406.  During the required pre-motion meet-and-confer, Defendants' counsel told Plaintiffs' counsel that transfer was warranted because the majority of the witnesses lived in Texas, all relevant events had occurred in Texas, and a transfer would serve the convenience of the parties and the interest of justice.  But Plaintiffs' counsel nevertheless said they would oppose the transfer motion, and Defendants so informed the Court when they filed the motion later that day.  ECF No. 90 at 20; *see* White Decl. ¶¶ 69-75.[3]

---

[3]      Although Plaintiffs' counsel had stated during the meet-and-confer that they would oppose transfer, they never filed a formal response to the motion, and the motion was not resolved.  The motion might have gotten overlooked during a temporary stay of proceedings between February 23, 2023, and May 1, 2023.  *See* ECF Nos. 110, 112, 117.

As the litigation continued in Florida, depositions began.  Mr. Cuban was deposed on February 2, 2023, and he testified extensively about his lack of contacts with Florida, including that (*i*) the October 2021 Mavericks/Voyager press conference at which he had appeared had occurred in Dallas, had been streamed by Mavericks employees in Dallas, and had been promoted to Mavericks fans in Dallas; (*ii*) he owns two condominiums in Miami, but his personal travel to Florida had been limited and unrelated to Voyager, and he had never performed any Voyager-related activity while in Florida; (*iii*) his attendance at a December 2021 Bitcoin conference in Miami had been entirely personal and unrelated to Voyager, and he had not mentioned Voyager during any interview or appearance at the event; and (*iv*) he had not met or otherwise interacted with Voyager's CEO (Mr. Ehrlich) while in Florida.  White Decl. ¶¶ 76-79.

Mr. Ehrlich was deposed on February 21, 2023, and he confirmed Defendants' lack of Florida contacts.  So did two Mavericks employees who were deposed on February 14 and 16, 2023.  White Decl. ¶¶ 80-85.

On May 9, 2023, Plaintiffs moved for leave to file their Second Amended Complaint (the "SAC"), which, like the Amended Complaint, reasserted Plaintiffs' disproven jurisdictional allegations.  ECF No. 121; White Decl. ¶¶ 90-91.  The draft SAC attached to the motion again contended that personal jurisdiction existed in Florida because Defendants allegedly had engaged in nationwide promotional activities, broadcasts, or online content that had been accessible to or viewed by Florida residents.  The draft SAC again identified the October 27, 2021 press conference, which had been held in Dallas and livestreamed via mavs.com, as an alleged Florida contact, but it did not allege that the conference had involved any Florida-specific messaging or targeting.  ECF No. 121-1, ¶¶ 208, 229, 237.  The draft also alleged that Mr. Cuban had traveled to Miami in 2022, had "touted" Voyager at a cryptocurrency conference in Florida, and had met with Mr. Ehrlich there.  *Id.* ¶ 242.

In light of the uncontroverted discovery evidence refuting Plaintiffs' allegations and establishing a lack of personal jurisdiction in Florida, Defendants served Plaintiffs with a motion for Rule 11 sanctions on May 22, 2023.  The motion contended that all discovery evidence contradicted Plaintiffs' assertions that Mr. Cuban had traveled to Miami in early 2022 and had "touted" Voyager at a cryptocurrency conference.  Rather, the evidence showed that Mr. Cuban had not promoted Voyager and had not met with Mr. Ehrlich in Florida.  White Decl. ¶¶ 92-94.

But despite the multiple warnings about the jurisdictional defects in their claims and the risk of Rule 11 sanctions for pursuing them, Plaintiffs chose to file the draft SAC on June 9, 2023, without any changes, reasserting and expanding on their already disproven jurisdictional allegations.  ECF No. 155; White Decl. ¶ 95.

Three days later, on June 12, 2023, Defendants tried to meet and confer with Plaintiffs to convince them to withdraw their inaccurate allegations, but Plaintiffs' counsel declined Defendants' request for a conference.  Defendants therefore filed their Rule 11 motion with the Court on June 13, 2023.  ECF No. 157.  The Court denied it without prejudice to Defendants' refiling it at the end of the case.  ECF No. 160; *see* White Decl. ¶¶ 96-97.

On October 15, 2024, the Court held a hearing on Defendants' motion for class certification.  The Court asked numerous questions that suggested skepticism about Plaintiffs' theory that personal jurisdiction could be obtained over Defendants based on nationwide (or worldwide) promotions and social-media posts that had *not* taken place in or been directed at Florida.  For example, the Court observed that "it does seem to be widely accepted law that the fact that you say something that happens to be broadcasted nationally standing alone isn't sufficient to confer personal jurisdiction in all 50 states . . . ."  White Decl. Ex. 4, Oct. 15, 2024 Tr. at 8:24-9:3.  The Court also quoted a case holding that "'courts have uniformly rejected the argument that a tweet not specifically directed to a forum state is a sufficient minimum contact to confer personal jurisdiction. . . .'"  *Id.* at 19:3-9 (citing *Miller v. Gizmodo Media Grp.*, 383 F. Supp. 3d 1365, 1375 (S.D. Fla. 2019)).  But Plaintiffs did not take the hint, and they continued to press their untenable arguments.  White Decl. ¶¶ 112-19.

Even after that hearing, Plaintiffs made no effort to reactivate Defendants' motion to transfer the case to Texas.  Nor did Plaintiffs request either at the hearing or in any of their written submissions that the Court consider transfer as an alternative to dismissal if the Court were to conclude that personal jurisdiction does not exist.  Instead, Plaintiffs pressed forward with discovery and continued to burden the Court with supplemental submissions in support of their opposition to Defendants' Motion to Dismiss.  White Decl. ¶¶ 120-24.

### B.      The Court's Ruling on Defendants' Motion to Dismiss

On December 30, 2025, the Court granted Defendants' Motion to Dismiss for lack of personal jurisdiction.  ECF No. 363.  The Court soundly rejected Plaintiffs' arguments and held that the record showed no Florida-directed conduct that could support specific, much less general,

jurisdiction.  The Court also rejected Plaintiffs' alternative theory of conspiracy-based jurisdiction. The Court dismissed the case "without leave to amend," noting that Plaintiffs had already taken "extensive jurisdictional discovery" and had not sought leave to file an amended pleading.  *Id*. at 29 & n.13.  The Court therefore closed the case.  White Decl. ¶¶ 125-26.

### C.      Plaintiffs' Sudden Interest in a Transfer to Texas

On January 27, 2026, nearly a month after dismissal and three years after opposing transfer to Texas, Plaintiffs had a change of heart and filed their "reconsideration" motion requesting severance and transfer of the claims against Defendants—the same relief they could have had in January 2023.  The motion contends that post-dismissal transfer "best satisfies the interests of justice" (Mot. at 1), although it ignores the substantial and unnecessary burdens that Plaintiffs' forum-shopping imposed on the Court and Defendants over the past three years.  White Decl. ¶ 127.

### ARGUMENT

The interest of justice does not favor a transfer where, as here, (*i*) Plaintiffs waited until *after* their claims had been dismissed for lack of personal jurisdiction to request transfer, (*ii*) they previously had *opposed* the same transfer they now seek, and (*iii*) their willful forum-shopping imposed three years of substantial and avoidable burdens on the Court and Defendants.  Moreover, severing the claims against Mr. Cuban and the Mavericks and sending them to Texas would unjustifiably multiply the number of courts considering related matters concerning Voyager.

### I.      The Interest of Justice Strongly Disfavors a Transfer at this Stage of the Case.

Plaintiffs' transfer request invokes 28 U.S.C. §§ 1631, 1406, and 1404(a), all of which authorize transfer in certain circumstances "in the interest of justice."  Inasmuch as the "interest of justice" standard applies to all three statutes, Defendants will not focus here on any technical differences among them because under *no* conceivable construction of that phrase would the interest of justice be served by granting a transfer request that was not made until *after* the Court had dismissed the claims against Defendants based on an obvious lack of personal jurisdiction and *after* Plaintiffs had previously opposed the very same transfer request three years earlier, thereby subjecting Defendants and the Court to three years of unnecessary litigation.[4]

---

[4]      In fact, it is not even clear that the Court has *jurisdiction* to grant a transfer motion that was not made until after dismissal of the claims for lack of personal jurisdiction.  *See, e.g., Barboza*, 2007 WL 9701028, at *3 ("As the case against [defendants] has already been dismissed, the action

**A.** **The Interest of Justice Does Not Require Transfer Where Plaintiffs Were Forum-Shopping.**

The Supreme Court held long ago in *Goldlawr v. Heiman*, 369 U.S. 463, 466 (1962), which Plaintiffs repeatedly cite, that the "interest of justice" supports a transfer instead of a dismissal for lack of personal jurisdiction where a plaintiff "made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." However, as the Fourth Circuit has explained, "[t]he negative implication of the Court's statement [in *Goldlawr*] is that where a plaintiff's attorney files in the wrong jurisdiction not 'because they . . . made an erroneous guess with regard to an elusive fact,' but because he/she made an obvious error, transfer under section 1406 is inappropriate." *Nichols*, 991 F.2d at 1201 (quoting *Goldlawr*, 369 U.S. at 466); *accord, e.g.*, *Stanifer v. Brannan*, 564 F.3d 455, 458-59 (6th Cir. 2009) ("In speaking of a mistake resulting from 'the uncertainties of improper venue,' the *Goldlawr* court cannot have intended that dismissal of a complaint filed, deliberately or carelessly, in the wrong district should be excused as a 'justice-defeating technicality.'") (quoting *Goldlawr*, 369 U.S. at 466-67).

Accordingly, a transfer from an improper forum is "not in the interest of justice" where "the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper." *Nichols*, 991 F.2d at 1202.

Courts throughout the country have emphasized this distinction and have refused to allow transfers where plaintiffs had forum-shopped and intentionally filed in jurisdictionally risky fora. *See, e.g.*, *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022) (affirming refusal to transfer case where request had been made in opposition to motion to dismiss for lack of personal jurisdiction; "where a 'plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper,' courts 'often dismiss rather than transfer under Section 1406(a)' on the idea that 'similar conduct should be discouraged'") (quoting 14D Charles Alan Wright *et al.*, Federal Practice and Procedure § 3827 (4th ed. 2021)); *Howe v. Samsung Elecs. Am., Inc.*, 2018 WL 2212982, at *6 (N.D. Fla. Jan. 5, 2018) (dismissing for lack of personal jurisdiction and denying transfer where "it must have been obvious to [plaintiffs] from the outset that their attempt

---

against them cannot be transferred."); *see also, e.g.*, *Schmidt*, 2018 WL 6422705, at *3 (finding *Barboza*'s analysis "instructive"); *cf. Johnson v. Takata Corp.*, 2020 WL 11191810, at *8 (N.D. Ga. Apr. 22, 2020) ("it would be improper to transfer a case in order to achieve personal jurisdiction over a party which has been dismissed from the litigation"). However, the Court need not reach that jurisdictional issue to deny Plaintiffs' transfer motion.

to pursue their claims in Florida was unlikely to succeed or at least would pose a substantial risk of failure," and "plaintiffs had no good reason to file this action in Florida in the first place").[5]

The *Howe* court explained why a transfer should not be granted as a consolation prize to reward a plaintiff for unsuccessful jurisdictional gamesmanship:

> [I]f a plaintiff could be assured that a claim would be transferred, not dismissed, even when so clearly filed in the wrong jurisdiction, a plaintiff wishing to impose the maximum burden on a defendant would have little incentive not to file in the wrong jurisdiction.  The result would be what it has been here:  a defendant would be required to appear and contest jurisdiction in a forum in which, under the Due Process Clause, the defendant could not properly be required to appear at all.

*Id.*

As shown above and in this Court's opinion (ECF No. 363), Plaintiffs lacked a reasonable basis for suing Defendants in Florida.  Extensive discovery confirmed the absence of any such basis; Defendants' correspondence and Rule 11 motion explained the jurisdictional deficiencies and warned of sanctions; and the Court's questioning at the October 15, 2024 hearing put Plaintiffs on notice of the Court's skepticism.  But Plaintiffs disregarded those red flags and refused to change course.  *See* White Decl. ¶¶ 112-24.  Only after losing resoundingly did Plaintiffs request transfer to the proper forum, which was clear from the start.

---

[5]      *See also, e.g.*, *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003) (affirming dismissal for improper venue and denial of transfer because "'there was nothing obscure' about the proper forum") (quoting district court); *Oaks of Woodlake Phase III, Ltd. v. Hall, Bayoutree Assocs., Ltd. (In re Hall, Bayoutree Assocs., Ltd.)*, 939 F.2d 802, 806 (9th Cir. 1991) (affirming dismissal and denial of transfer because "dismissal is proper where filing in an improper forum evidences bad faith"); *Coté v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (affirming dismissal for lack of personal jurisdiction and denial of transfer because plaintiff's jurisdictional "mistake was elementary," and "[e]lementary prudence would have indicated to her lawyer that he must file a protective suit in [another forum] because there was only a slight probability of obtaining personal jurisdiction in [original forum]"); *Arvest Bank v. Miles*, 2023 WL 6065855, at *4 (N.D. Ga. Sept. 18, 2023) (dismissing for lack of personal jurisdiction and denying plaintiff's motion to transfer because "these are problems of [plaintiff's] own making by filing suit against [defendant] without being prepared to establish how this Court has personal jurisdiction over him"); *Johnson*, 2020 WL 11191810, at *8 (denying transfer after dismissal for lack of personal jurisdiction because "transfer in the interest of justice under Section 1631 is typically reserved for cases where the plaintiff had a good faith basis for filing a lawsuit in a particular jurisdiction and was simply confused") (internal quotation marks omitted).

In these circumstances, "it is obviously not 'in the interest of justice' to allow [transfer] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district." *Seville*, 53 F.4th at 894 (internal quotations omitted).

In the *Schmidt* case, for example, the court denied a request for reconsideration and transfer made after dismissal for lack of personal jurisdiction because the plaintiff "should have anticipated jurisdictional issues," given his knowledge of the defendant's state of incorporation and principal place of business and his awareness that the defendant "strongly disagreed with his choice of forum." 2018 WL 6422705, at *3. The court concluded that justice did not favor extricating the plaintiff from "an intentional litigation strategy that ultimately proved to be unsuccessful." *Id.* The court also noted that the transfer argument was "improper and untimely" because the plaintiff had raised it "for the first time in his motion for reconsideration," *id.* at *4; *accord, e.g.*, *Plabable Ltd. v. Medrevisions, Inc.*, 2025 WL 4091523, at *1 (N.D. Fla. Dec. 5, 2025) (denying motion to alter or amend judgment to provide for transfer rather than dismissal, because "Plaintiff could have moved to transfer this action at any point prior to this Court's order of dismissal. It did not and its failure to do so is fatal."). The same is true here.

## B. Plaintiffs' Previous Opposition to Transfer Further Militates Against Granting That Relief Three Years Later.

A post-dismissal transfer to Texas would be particularly unwarranted here because Plaintiffs *rejected* the same transfer when Defendants proposed it *three years ago*—a fact that Plaintiffs' Motion avoids mentioning. The *Schmidt* court faced the same situation: after the plaintiff had opposed the defendant's transfer motion, the court dismissed the case for lack of personal jurisdiction, and the plaintiff then sought "reconsideration" to request the same transfer he had previously opposed. The court noted the plaintiff's prior opposition to transfer as yet another reason to deny a post-dismissal transfer motion. 2018 WL 6422705, at *3. The court also observed that "choices in life have consequences," *id.* at *2 (internal quotations omitted), and that the plaintiff—like Plaintiffs here—had made his choice. *Accord, e.g.*, *Koock v. Sugar & Felsenthal, LLP*, 2011 WL 13176487, at *2 (M.D. Fla. Mar. 30, 2011) (denying reconsideration motion requesting transfer rather than dismissal for lack of personal jurisdiction where plaintiffs had previously opposed transfer but now "have changed their tune"); *see Last Chance Mining Co. v. United States*, 12 Cl. Ct. 551, 559 (1987) (declining to transfer under 28 U.S.C. § 1651 where plaintiff had previously rejected transfer), *aff'd*, 846 F.2d 77 (Fed. Cir. 1988).

### C.   Defendants and the Court Have Been Prejudiced by at Least Three Years of Unnecessary Litigation.

Despite their prior opposition to a transfer, Plaintiffs now assert (at 1) that Defendants would not be prejudiced by a transfer instead of dismissal because Defendants had proposed the same transfer three years ago.  That claim is ludicrous.  Plaintiffs' game-playing has subjected Defendants to serious prejudice.  Had Plaintiffs not opposed Defendants' transfer motion in January 2023, Defendants would have been spared the burdens and expense of *three years* of costly and unnecessary litigation, including four jurisdictional depositions, production of thousands of documents, and extensive briefing and hearings on jurisdictional issues.  White Decl. ¶¶ 27-68, 76-85, 98-109.  Those costs and burdens, plus the risk that at least some of them might need to be duplicated in a new forum, constitute significant prejudice to Defendants and other witnesses and parties, militating against a transfer.  *See, e.g.*, *Novelty, Inc. v. RCB Distrib., Inc.*, 2008 WL 2705532, at *5 (S.D. Ind. July 9, 2008) (dismissing for lack of personal jurisdiction and denying transfer because plaintiff had chosen "a clearly inappropriate forum" and had forced defendant to incur "significant expenses to defend itself in a distant forum").

Defendants' transfer motion had provided Plaintiffs with an easy exit and would have obviated three years of proceedings in this Court.  But Plaintiffs rejected it.  Now, having been forced to pay the price of Plaintiffs' forum-shopping, Defendants are not willing to agree to a transfer that they requested three years ago.

Moreover, Plaintiffs' erroneous claim about lack of prejudice ignores the burdens that Plaintiffs' tactics imposed on this Court.  As discussed above, Magistrate Judge Reid was required to hold multiple hearings on jurisdictional and other discovery issues, and this Court was required to wade through extensive briefing and supplemental filings on jurisdictional issues, to hold a hearing on jurisdiction and other issues, and to write a 29-page opinion—all of which could have been avoided had Plaintiffs consented to Defendants' transfer motion in January 2023.  *See* White Decl. ¶¶ 27-37, 45-52, 60-67, 98-105, 112-19, 125-27; *see, e.g.*, *Nichols*, 991 F.2d at 1201-02 (affirming refusal to transfer instead of dismissal where plaintiffs' "obvious error" as to personal jurisdiction had imposed burdens on the court, "which had no interest in" plaintiffs' suit).

### D.   Any Issues About Statutes of Limitations Do Not Warrant a Transfer Now.

Plaintiffs vaguely raise the possibility that their claims might be time-barred if Plaintiffs were to refile in Texas or elsewhere (Mot. at 7), although Plaintiffs do not actually assert that limitations problems would exist.  But in any event, any such potential problems would be of

Plaintiffs' own making.  Had Plaintiffs not forum-shopped in this Court, and had they not opposed Defendants' motion to transfer to Texas more than three years ago, in January 2023, they would have avoided any potential limitations issues in Texas.

Plaintiffs' own willful and erroneous strategic choices created whatever limitations problems might exist in a proposed transferee forum, and this Court, like many others, should not hesitate to deny transfer regardless of any impact on statutes of limitations in these circumstances. *See, e.g.*, *Schmidt*, 2018 WL 6422705, at *3 (denying transfer after dismissal for lack of personal jurisdiction even though limitations would prevent refiling, because plaintiff had lacked reasonable basis to sue in original forum and had previously opposed transfer); *Howe*, 2018 WL 2212982, at *6 (dismissing case and denying transfer despite limitations bar to refiling because plaintiffs should have known personal jurisdiction did not exist in original forum).[6]

### E.     None of Plaintiffs' Cited Cases Supports Transfer Here.

None of the ten cases (including *Goldlawr*) that Plaintiffs cite in support of their motion remotely resembles the situation here.  None appears to have involved plaintiffs who had *opposed* a transfer they later requested to avoid a jurisdictional dismissal, as Plaintiffs did here.  Thus, none of those plaintiffs had forced the defendants and the courts to bear the burden of avoidable litigation before the plaintiffs changed their mind about forum.

Moreover, in seven of those ten cases, the plaintiffs appear to have requested a transfer as an *alternative* to a jurisdictional dismissal.  They do not appear to have sandbagged the defendants

---

[6]     *See also, e.g.*, *Stanifer*, 564 F.3d at 460 (affirming dismissal and denial of transfer even though new suit would be time-barred; district court "was within its discretion to hold that the plaintiff, having engaged in the misuse of the court's processes, should not be permitted to by means of a transfer to resurrect a claim which might be lost due to a complete lack of diligence in determining the proper forum in the first place") (internal quotations omitted); *Cont'l Ins. Co.*, 354 F.3d at 608 (affirming dismissal and denial of transfer even though statute of limitations had run on new suit; proper choice of venue "was not elusive"); *Hapaniewski v. City of Chi. Heights*, 883 F.2d 576, 580 (7th Cir. 1989) (affirming dismissal and denial of transfer because plaintiffs' conduct did not justify transfer despite time bar); *Coté*, 796 F.2d at 985 (affirming dismissal and denial of transfer despite time bar because plaintiffs' mistake as to personal jurisdiction was "elementary"); *Plabable Ltd.*, 2025 WL 4091523, at *1 (possibility that claims "may otherwise be time-barred" is "not a basis to grant the motion" to alter or amend judgment to provide for transfer rather than dismissal); *Pedzewick v. Foe*, 963 F. Supp. 48, 51-52 (D. Mass. 1997) (denying transfer instead of dismissal despite limitations issues because plaintiffs had lacked reasonable jurisdictional basis for suing in original forum).

and the courts and to have waited until *after* losing on jurisdiction to seek transfer, as Plaintiffs did here.[7]

For all these reasons, the interest of justice requires denying Plaintiffs' belated change of position on transferring this case to Texas now that the Court has dismissed it.

## II.     Severing the Claims Against Defendants Would Also Be Inappropriate.

Not only would a transfer be unwarranted, but Plaintiffs also have not proffered any legitimate basis for the Court to sever their claims against Mr. Cuban and the Mavericks from related claims against other defendants before this Court.  To the contrary, severance would result in duplicative litigation in multiple courts and would not serve the interest of justice.

Fed. R. Civ. P. 21 empowers courts to "sever any claim against a party," and courts have "considerable discretion" as to whether severance is appropriate.  *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1352 (S.D. Fla. 2017) (internal quotations omitted).  In exercising that discretion, "the court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer."  *Id.* at 1353 (quoting *Liaw Su Teng v. Skaarup Shipping Co.*, 743 F.2d 1140, 1148 (5th Cir. 1984)).  The touchstone of the inquiry is "whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did."  *AF Holdings, LLC v. Does 1-162*, 2012 WL 488217, at *2 (S.D. Fla. Feb. 14, 2012) (internal quotations omitted).

Courts hold that severance is inappropriate "if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places."  *McCullough*, 268 F. Supp. 3d at 1353 (quoting *Liaw Su Teng*, 743 F.2d at 1148); *see also Gubagoo, Inc. v. Orlando,* 2020 WL 6826357, at *5 (S.D. Fla. Nov. 20, 2020) (courts consider "whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate

---

[7]     The only two cases in which the plaintiffs appear to have requested transfer *after* dismissal are *Aguate Consolidated Mines, Inc. v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978), and *Jones v. Campbell University*, 322 F. Supp. 3d 106, 108-09 (D.D.C. 2018).  However, as noted above, the plaintiffs in those cases had not previously *opposed* transfer, as did Plaintiffs here.  And in *Franco v. Mabe Trucking Co.*, 3 F.4th 788 (5th Cir. 2021), the *defendant*, not the plaintiff, moved to dismiss for lack of personal jurisdiction and, alternatively, to transfer before any discovery occurred.  *See Franco v. Mabe Trucking Co.*, No. 2-16-cv-1291 (E.D. Tex.) (ECF No. 4) (*defendant's* motion to dismiss and, alternatively, motion to transfer venue).

settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied") (internal quotations omitted).  Accordingly, courts deny severance, even while granting motions to dismiss, to avoid litigation of related issues in multiple courts, the risk of conflicting judgments, and inefficiencies for the judiciary, the litigants, and related parties.

For example, in *McCullough*, the court dismissed certain defendants for lack of personal jurisdiction and denied a motion to sever the claims against them because splitting the claims and parties into separate actions would have resulted in "the same facts and issues being litigated in three different judicial districts," which would not be "in the interests of justice."  268 F. Supp. 3d at 1353 (internal quotations omitted); *accord, e.g.*, *SE Prop. Holdings, LLC, v. Green*, 2020 WL 9396383, at *8 (S.D. Ala. Sept. 1, 2020) (Report & Recommendation) (granting motion to dismiss and denying severance, which would have resulted in related claims' proceeding in different districts; "interests of efficiency and judicial economy strongly suggest that these related claims should be resolved by one court instead of two"), *adopted*, 2020 WL 5637400 (S.D. Ala. Sept. 18, 2020); *Nettles v. Daphne Utils.*, 2014 WL 1668535, at *2 (S.D. Ala. Apr. 28, 2014) (denying severance because "fracturing this case into three separate lawsuits would be inefficient, and would not advance the objectives of convenience, judicial economy, expediting resolution of disputes and eliminating unnecessary litigation . . . .  By contrast, it would likely require overlapping discovery in triplicate and similar motion practice to be conducted by the same lawyers thrice.").[8]

Those concerns for judicial efficiency weigh against severance here.  Severing and transferring the claims against Mr. Cuban and the Mavericks to Texas would result in litigation of related facts and issues in *four courts*:  one each in Florida and Texas, and two in New York.

- Plaintiffs' claims against the National Basketball Association, McCarter & English, LLP, Ketchum, Inc., and various individual defendants remain pending in this Court, and those claims arise from many of the same events that underlie the claims against Mr. Cuban and the Mavericks.  *See Karnas v. McCarter & English*, No. 1:24-cv-20480-RKA (ECF No. 14 at 3-4); White Decl. ¶¶ 22-26.  Proposed settlements with other defendants in the *Karnas v. Cuban* case also are pending before this Court.  *See* ECF No. 304.

---

[8]    The sole severance decision that Plaintiffs cite (at 9), *Toll v. North*, 644 F. Supp. 3d 1050, 1052 n.1 (S.D. Fla. Dec. 5, 2022), is inapposite because the transferred claim was the only one active when severance was granted.  The other cited case, *Hofmann v. De Marchena Kaluche & Asociados*, 642 F.3d 995 (11th Cir. 2011), addressed only appellate jurisdiction.  And the district court in that case had ordered severance because the claims had been misjoined, *id.* at 997, meaning that they should not have been combined in one action in the first place.

- Related litigation is also in progress in the United States District and Bankruptcy Courts for the Southern District of New York, as well as in the U.S. Court of Appeals for the Second Circuit.  Plaintiffs say that, in addition to discovery they conducted against Defendants in this Court, they are coordinating "discovery arising from the Voyager bankruptcy proceedings in the Southern District of New York," including retaining separate bankruptcy counsel to "litigate related matters in the district and bankruptcy courts."  Mot. at 3.  Issues relating to Voyager's bankruptcy have been presented to *three different judges* in the Southern District of New York:  (*i*) the Bankruptcy Court is supervising Voyager's bankruptcy, *see In re Voyager Digit. Holdings, Inc.*, No. 1:22-10943-mew (Bankr. S.D.N.Y.); (*ii*) District Judge Engelmayer ruled on claims by the Plan Administrator for the Voyager Wind-Down Debtor against one of Voyager's banks for, among other things, sale of unregistered securities and statutory consumer fraud, *see Wyse v. Metro. Com. Bank*, No. 1:24-cv-9108 (S.D.N.Y. Aug. 4, 2025) (ECF No. 54);[9] and (*iii*) Chief District Judge Swain is hearing issues appealed from the Bankruptcy Court, *see In re Voyager Digit. Holdings, Inc*., No. 1:23-cv-02171-LTS (S.D.N.Y.). *See* White Decl. ¶¶ 12-16.

If this Court were now to transfer the claims against Mr. Cuban and the Mavericks to Texas, multiple courts would confront (or are already confronting) the same issues, such as the extent of Voyager's liability, whether Voyager's Earn Program Accounts are securities, which law applies to which alleged solicitations, the scope of statutory-seller liability (if any) for Voyager's promoters and service providers, and whether a class can be certified.  Such multiplication of proceedings in different courts would risk conflicting judgments and undermine the interest of justice.  Severance and transfer would waste judicial and the litigants' resources by requiring "overlapping discovery in triplicate and similar motion practice to be conducted by the same lawyers thrice."  *Nettles*, 2014 WL 1668535, at *2.

Severing the claims against Mr. Cuban and the Mavericks would also prejudice those Defendants because they could be forced to appear, testify, or submit to discovery in "***three*** different judicial districts."  *McCullough*, 268 F. Supp. 3d at 1353 (denying severance for that reason).  Although Plaintiffs contend that severance would resolve "justice-defeating technicalities" (Mot. at 7), Plaintiffs themselves created any such "technicalities" due to their deliberate choices *not* to proceed where Voyager's bankruptcy is pending and to sue Defendants in Florida despite being on notice of the clear lack of personal jurisdiction in this Court.  *See* ECF No. 157 at 15-16 (motion for sanctions).

---

[9]    The Plan Administrator's appeal to the U.S. Court of Appeals for the Second Circuit is pending.  *See Wyse v. Metro. Com. Bank*, No. 25-2106 (filed Sept. 2, 2025).  White Decl. ¶ 15.

The Court therefore should deny severance as contrary to the interest of justice.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' belated and unwarranted motion to sever and transfer the claims against Mr. Cuban and the Mavericks to the Northern District of Texas.

Dated:  March 13, 2026
       Miami, Florida

By: */s/ Christopher E. Knight*
CHRISTOPHER E. KNIGHT, ESQ.
Florida Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA, ESQ.
Florida Bar No. 510459
Email: egalicia@fowler-white.com

ALEXANDRA L. TIFFORD, ESQ.
Florida Bar No. 0178624
Email: atifford@fowler-white.com

**FOWLER WHITE BURNETT, P.A.**
Citigroup Center
201 S. Biscayne Blvd., 20th Floor
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

PAUL C. HUCK, JR., ESQ.
Fla. Bar No. 0968358
Email: paul@lawsonhuckgonzalez.com

**LAWSON HUCK GONZALEZ, PLLC**
121 Alhambra Plaza, Suite 1604
Coral Gables, Florida 33134
Telephone: (850) 825-4334

STEPHEN A. BEST, ESQ.
*Pro Hac Vice*
Email: sbest@brownrudnick.com

RACHEL O. WOLKINSON, ESQ.
*Pro Hac Vice*
Email: rwolkinson@brownrudnick.com

DANIEL L. SACHS, ESQ.
*Pro Hac Vice*
Email: dsachs@brownrudnick.com

**BROWN RUDNICK LLP**
1900 N Street NW, Suite 400
Washington, DC 20036
Telephone (202) 536-1700

JONATHAN D. WHITE, ESQ.
*Pro Hac Vice*
Email: jwhite@brownrudnick.com

**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4930

Counsel for Defendants Mark Cuban and
Dallas Basketball Limited d/b/a Dallas Mavericks

4919-1934-3755.3