UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-22538-ALTMAN/Reid

DOMINIK KARNAS, *et al., on behalf of*
*themselves and all other similarly situated*,

      *Plaintiffs*,

v.

MARK CUBAN, *et al.*,

      *Defendants*.

_____/

## ORDER

In December 2025, we granted the Defendants' Motion to Dismiss (the "MTD") [ECF No. 155], finding that we lacked personal jurisdiction over the Defendants.[1] *See* Motion to Dismiss Order (the "Order") [ECF No. 363] at 29. Our Plaintiffs have since filed two motions. In the first, a Motion to Reopen [ECF No. 364], the Plaintiffs ask us to reopen the case for the "limited, procedural purposes" of (1) "exercis[ing] the continuing jurisdiction . . . to supervise notice, final approval, and implementation of the previously preliminarily approved class settlements with . . . Rob Gronkowski, Victor Oladipo, and Landon Cassill"; and (2) "consider[ing] . . . [a] contemporaneously filed motion seeking reconsideration[.]" *Id.* at 1. In the second, a Motion for Reconsideration [ECF No. 365], the Plaintiffs request that we "sever the claims against the Defendants and, rather than dismiss, transfer them to the Northern District of Texas." *Id.* at 1; *see also ibid.* ("The Defendants themselves proposed that transfer, even if personal jurisdiction was found wanting.").

---

[1] Our Order used the term "Defendants" to refer only to Mark Cuban and the Dallas Mavericks, since the Plaintiffs reached settlements with Rob Gronkowski, Victor Oladipo, and Landon Cassill in March 2024. *See* Joint Motion to Stay Case [ECF No. 226] at 1. We'll repeat that convention here.

The Defendants "take no position" on the Motion to Reopen "to the extent it asks the Court to reopen the case to complete settlement proceedings already approved by the Court[.]" Partial Opposition to Motion to Reopen ("Response I") [ECF No. 372] at 1. But, as to the Motion for Reconsideration, the Defendants contend that "the interest of justice does not require (or even suggest) that the Court now reopen the case and transfer the claims against Defendants to Texas." Opposition to Motion for Reconsideration ("Response II") [ECF No. 371] at 3. As they see it, the transfer request "disregards the wasted efforts and expense that could have been avoided during the past three years if [the] Plaintiffs had not opposed [the] Defendants' transfer motion." *Id.* at 2; *see also ibid.* ("Plaintiffs cite no authority for the proposition that a court should (much less must) transfer a case where the transfer request was not made until *after* the court had dismissed the case for lack of jurisdiction and where the plaintiff had previously *opposed* the defendant's effort to transfer the case to the same forum to which the plaintiff belatedly asked to move."). The Defendants thus warn that, should we "reopen the case to consider [the] Plaintiffs' motion to sever and transfer," they "intend to refile their motion for Rule 11 sanctions against [the] Plaintiffs' counsel for having brought jurisdictionally baseless claims against them in this District." Response I at 1.[2]

We'll start with the Motion for Reconsideration, which relies "primarily" on 28 U.S.C. §§ 1631 and 1406—but also, in an "abundance of caution," on 28 U.S.C. § 1404. Motion for Reconsideration at 5. "Section 1631 provides that a court lacking jurisdiction over a 'civil action' must transfer that action to the proper court if such transfer is 'in the interest of justice.'" *Griham v. United States*, 842

---

[2] In May 2023 and June 2023, the Defendants moved for sanctions. *See* Motion for Sanctions [ECF No. 128]; Motion for Sanctions [ECF No. 159]. We struck those motions in June 2023, explaining that the Defendants could "refile their Motion for Sanctions at the end of this case." Paperless Order [ECF No. 153]; *see also* Paperless Order [ECF No. 160]. Later, in March 2024, the Defendants filed a Motion for Sanctions Against Plaintiffs' Counsel for Violations of the Stipulated Protective Order [ECF No. 246]. In April 2024, U.S. Magistrate Judge Reid granted in part and denied in part that motion. *See* Sealed Order [ECF No. 259] (granting the Defendants' request for attorney's fees but not for expert costs and damages).

F. App'x 425, 426 (11th Cir. 2021) (quoting § 1631). Section 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." And § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Because those statutes use "mandatory language," the Plaintiffs tell us, we "should not hesitate to revisit [our] prior ruling," given that "the requested relief has been requested by the Defendants themselves and is strongly supported by precedent." Motion for Reconsideration at 11 (quotation marks omitted). But that argument distorts the record.

To be sure, the Defendants *did* once seek to transfer the case to Texas. *See* Motion to Change Venue [ECF No. 90]. But that was back in January 2023, and the Plaintiffs concede that they "opposed" that request "at the time." Reply in Support of Motion for Reconsideration ("Reply II") [ECF No. 375] at 1. Given that years of litigation (and attendant expenses) ensued, we cannot accept the Plaintiffs' claim that the Defendants *today* stand to "suffer no prejudice from [a] transfer." *Id.* at 3; *see also* Response II at 17 ("Had Plaintiffs not opposed Defendants' transfer motion in January 2023, Defendants would have been spared the burdens and expense of *three years* of costly and unnecessary litigation, including four jurisdictional depositions, production of thousands of documents, and extensive briefing and hearings on jurisdictional issues.").

"Congress's apparent intent in codifying § 1631 . . . was to rescue cases *mistakenly filed* in the wrong court." *Castillo v. Att'y Gen. of United States*, 109 F.4th 127, 135 (3d Cir. 2024) (quotation marks omitted and emphasis added); *see also Paul v. INS*, 348 F.3d 43, 47 (2d Cir. 2003) ("[W]e reviewed the legislative history of § 1631 and found that Congress intended the provision to aid litigants who were *confused* as to the proper forum for review." (emphasis added)). Similarly, the Supreme Court has

3

explained that "Congress enacted § 1406 to avoid the injustice which ha[s] often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) (quoting *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962)); *see also* 14D Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3287 (4th ed. 2025) (explaining that *Goldlawr* "relied on the statute's underlying goal of avoiding the injustice that results from dismissing an action because the plaintiff had made an *honest mistake* as to where it could have been brought" (emphasis added)). And the "underlying premise of § 1404(a) is that courts should *prevent plaintiffs from abusing their privilege* under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 302–03 (5th Cir. 2024) (Willet, J.) (emphasis added); *see also ibid.* ("Plaintiffs are permitted to engage in a certain amount of forum shopping, though Congress has limited that privilege by enacting § 1404(a), through which defendants can protect themselves from the most blatant forum-shopping." (cleaned up)).

Our Plaintiffs ignore that context in invoking those transfer statutes. Filing in Florida instead of Texas—even if not an "obvious" error, Response II at 13—was a calculated risk, not "a result of venue quirks" unknown to "responsible plaintiffs," *Spar*, 956 F.2d at 394. That much is clear from the fact that the Plaintiffs opposed the Defendants' early attempt to move the case to Texas. Doing so was fair game. *See In re Google, L.L.C.*, 172 F.4th 450, 452 (5th Cir. 2026) (Ho, J.) ("It is no well-kept secret that litigation involves strategy, and a plaintiff's choice of venue involves strategic thinking." (cleaned up)). But strategic risk comes at a price. Parties cannot target a (supposedly) advantageous forum, stave off a timely request to relocate to the Defendants' home turf, and then double back if the gamble fails. To hold otherwise would be to incentivize plaintiffs to wage personal-jurisdiction battles and turn late-breaking transfer motions into a failsafe. But the "'interest of justice'

analysis . . . is . . . not a vehicle for resurrecting a claim lost because the plaintiff erred in her initial choice of forums." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986).

That's the problem here. Our Plaintiffs offer no justification for their previous opposition to the Defendants' transfer request. They decline to explain why their current about-face should be excused—or why they didn't seek a transfer earlier, while they were litigating the MTD. And they never actually say they'd be unable to pursue their claims without a transfer. *See* Motion for Reconsideration at 7 ("[T]he Defendants *likely will argue certain claims are time-barred*, regardless of their merit." (emphasis added)); Reply II at 3 ("The decision before the Court is thus whether to require refiling, resulting in wasted work and *added limitations risk*, or instead to transfer and preserve the parties' and the Court's work in the one forum everyone agrees is proper." (emphasis added)); Reply in Support of Motion to Reopen ("Reply I") at 1 (arguing that "not transferring the case *could* fatally prejudice Plaintiffs by introducing statute of limitations risks" (emphasis added)); *but see United States v. Kinsey*, 428 F. App'x 965, 965 (11th Cir. 2011) ("While we have not defined precisely what the 'interest of justice' means in the context of a § 1631 transfer, one important factor is whether a denial of a transfer would effectively bar the plaintiff from relief in the proper court."); *Bond v. Ivy Tech State Coll.*, 167 F. App'x 103, 106 (11th Cir. 2006) ("Plaintiff has failed to present evidence or allege that she could not refile the case in Indiana.").

Instead, the Motion for Reconsideration reads as a last-ditch effort to rewind the clock. *See Cote v. Wadel*, 796 F.2d 981, 984 (7th Cir. 1986) (Posner, J.) ("Ordinarily, . . . [a] transfer is sought by the defendant rather than the plaintiff; if the plaintiff had wanted to be in another district (where the suit could have been brought) he would have brought his suit there in the first place."); *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021) ("A plaintiff is the master of his or her complaint."). But, given everything we've said above, the "[P]laintiff[ ]s' choice of forum [i]s not

outweighed by other factors." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).[3]

"Because courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice, whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Doe 2 v. Congregation of the Sacred Hearts of Jesus & Mary*, 2026 WL 239045 (2d Cir. Jan. 29, 2026) (cleaned up). We won't wield that discretion and allow the Plaintiffs to weaponize §§ 1631, 1406, and 1404.

That leaves the Motion to Reopen. As we've said, the Plaintiffs ask us to reopen the case for two reasons—to "exercise . . . continuing jurisdiction" over the "previously preliminarily approved class settlements" and to transfer the case to Texas. Motion to Reopen at 1. As to the former, the Plaintiffs say that, once we reopen the case, they'll "separately move for entry of an order approving a notice plan and scheduling a final fairness hearing." *Id.* at 4. But the administrative closure doesn't prevent the Plaintiffs from filing their motion, so we need not reopen the case today. *See Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001) ("[A]n administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records

---

[3] Relevant factors (at least in the first instance) include "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). But courts "have long made clear that it is obviously not in the interest of justice to allow § 1406 to be used to aid a non-diligent plaintiff[.]" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 897 (5th Cir. 2022) (Oldham, J.) (cleaned up); *see also Spar*, 956 F.2d at 393 ("While we believe that § 1406 should be read liberally, we cannot conclude that Spar, whose own failure to pursue its claim diligently . . . has resulted in a procedural bar, should be permitted to transfer the action and essentially forum shop."); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1202 (4th Cir. 1993) ("We see no indication that Congress intended district courts, in addressing whether to transfer an action under section 1404(a) or section 1406(a), to disregard our well-recognized systemic norm that litigants are bound by the actions of their attorneys."). And that reality analysis cuts against the Plaintiffs in any statutory context. *See North v. Ubiquity, Inc.*, 72 F.4th 221, 229 (7th Cir. 2023) ("Because the interests of justice do not require transfer under § 1631, they do not under § 1404(a) either.").

associated with the case to an appropriate storage repository." (quotation marks omitted)).

**CONCLUSION**

Accordingly, we **ORDER and ADJUDGE** as follows:

1. The Plaintiffs' Motion to Reopen [ECF No. 364] is **DENIED**.

2. The Plaintiffs' Motion for Reconsideration [ECF No. 365] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on May 26, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record